IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Anas ELHADY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-375 |
| ) | Hon. Anthony J. Trenga |
| CHRISTOPHER M. PIEHOTA, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS'
EMERGENCY MOTION TO VACATE SCHEDULING ORDER**

**INTRODUCTION**

Defendants have moved for vacatur of the existing scheduling order (See Order of Sept. 6, 2016, ECF No. 14), staying discovery pending resolution of a motion to dismiss. Defendants have good cause for the requested relief for four reasons. First, the pending motion to dismiss, in part on jurisdictional grounds, is likely to resolve all of the claims in this matter. Second, Plaintiffs have indicated that they intend to file an Amended Complaint, which will impact the scope of the issues and require a renewed motion to dismiss, also potentially obviating the need for discovery. Third, if a motion to dismiss does not resolve all pending claims, a decision on pending issues should assist in determining the appropriate scope of discovery, if any. The most efficient resolution of this action would be to defer any discovery that may appropriately proceed until after resolution of the motion to dismiss. Fourth, the discovery already served implicates privileged and statutorily protected information, and the Court can and should avoid adjudicating those issues unnecessarily. Finally, Plaintiffs cannot show any prejudice from the short delay inherent in the court's consideration of a motion to dismiss if the Court vacates current discovery deadlines. Because current discovery deadlines are impending and will expire before this motion

1

would be heard in the ordinary course under Local Rule 7, Defendants request that this motion be decided on an expedited basis.

## BACKGROUND

The first Complaint (soon to be superseded we are told) was filed April 5, 2016, and served on July 2, 2016. ECF No. 1. Plaintiffs are thirteen U.S. citizens who allege they are in the TSDB, to which they refer as "the federal watch list." As a result, Plaintiffs claim that TSA and/or U.S. Customs and Border Protection (which is not a Defendant in this action) have subjected them to additional screening or inspection, including when they have attempted to leave and reenter the United States on commercial airplanes and at land ports of entry. They raise five claims challenging their purported placement on the TSDB and the adequacy of the DHS TRIP process.

On September 2, 2016, Defendants moved to dismiss all claims. *See* Defs.' Mot. to Dismiss, ECF No. 12; Defs.' Mem. In Support of Mot. to Dismiss, ECF No. 13. The Court lacks jurisdiction over the constitutional and statutory challenges to the adequacy of DHS TRIP. *See* Defs.' Mem. at Part II. As other courts have recently ruled, the Plaintiffs have all failed to state a claim under the procedural due process clause, the substantive due process clause, the equal protection clause, the non-delegation doctrine, and the APA. *See id.* at Parts III-VI; *Beydoun v. Lynch*, No. 14-CV-13812, 2016 WL 3753561, at *3-*4 (E.D. Mich. July 14, 2016), appeal filed, No. 16-2169 (6th Cir.); *Bazzi v. Lynch*, No. 16-10123, 2016 WL 4525240, at *3-*5 (E.D. Mich. Aug. 30, 2016). The motion has not been set for a hearing as the parties have attempted to work out a briefing schedule.

On September 6, 2016, the Court issued a scheduling order, setting a pretrial conference before a magistrate on September 28, 2016 and a final pretrial conference in January. *See* Scheduling Order, ECF No. 14. On September 9, 2016, Plaintiffs served discovery on

Defendants, including requests for production of documents, interrogatories and requests for admissions. *See* Exhibit 1 (Reqs. for Producs. and Interrogs. to Def. Piehota); Exhibit 2 (Reqs. for Admis. to Def. Piehota); Exhibit 3 (Reqs. for Admis. to Def. Kennedy); Exhibit 4 (Reqs. for Admis. to Def. Olsen). The discovery seeks detailed information about the alleged nomination of specific Plaintiffs to the TSDB, general information about the watchlisting process, and a broad array of information about alleged "dissemination" or use of information from the TSDB. Under the local and federal rules, Defendants' objections are due September 27, 2016, and responses October 12, 2016.

On September 13, 2016, Plaintiffs' counsel informed Defendants that they also intend to file an amended complaint on or before September 23, 2016, naming additional plaintiffs with similar fact patterns, adding certain agencies as defendants, and changing some allegations in response to the motion to dismiss. It is our understanding that Plaintiffs intend to file a motion today that seeks to suspend briefing of the currently pending motion to dismiss while Plaintiffs complete preparation of an amended complaint. Defendants have not taken a position with respect to that motion and will confer with plaintiffs' counsel with respect to scheduling after Defendants have seen the amended complaint. Regardless of what schedule is reached with respect to a motion to dismiss the anticipated amended complaint, Defendants' position is that the current pretrial scheduling order should be vacated, suspending discovery while jurisdictional and pleading issues are resolved.

## ARGUMENT

### I. The Court Has Broad Authority to Control Discovery.

The Court's "power to control its own docket," *Clinton v. Jones*, 520 U.S. 681, 706 (1997), includes the discretion and "wide latitude" to control discovery. *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003) (quoting *Ardrey v. United Parcel Serv.*, 798 F.2d

679, 682 (4th Cir. 1986)). The Supreme Court instructs that "judges should not hesitate to exercise appropriate control over the discovery process," *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Lismont v. Alexander Binzel Corp.*, No. 2:12CV592, 2014 WL 12515341, at *2 (E.D. Va. Mar. 12, 2014) (Davis, J.) (unpublished).

Rule 26(b) (2) (C) of the Federal Rules of Civil Procedure allows district courts to limit the "extent of discovery otherwise allowed" if the "discovery sought is unreasonably cumulative," if the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive," or if the "burden and expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, ... the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." *See Lismont*, 2014 WL 12515341, at *2. Accordingly, a trial court "may, for good cause," Fed. R. Civ. P. 26(c), grant protection to a party from whom discovery is sought. *See Watson v. Lowcountry Red Cross*, 974 F.2d 482, 485 (4th Cir. 1992) (quoting Fed. R. Civ. P. 26(c)). Such protection may include "an order that the discovery not be had." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). Of course, although "a plaintiff who must shoulder the burden of proving [his claim] should not normally be denied the information necessary to establish that claim, . . . a trial court has the inherent power to stay discovery until preliminary questions that may dispose of the case are determined," *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)); *Lismont*, 2014 WL 12515341 at *2. Federal Rule of Civil Procedure 26(c) vests the court with discretion to stay discovery pending resolution of a dispositive motion. *See Thigpen v. United States*, 800 F.2d 393, 396–97 (4th Cir. 1986), overruled on other grounds by *Sheridan v. United States*, 487 U.S. 392 (1988).

**II.     The Pending Motion to Dismiss is Likely to Resolve All Claims.**

Defendants' motion to dismiss pursuant to 12(b)(1) and 12(b)(6) is likely to resolve all claims currently before the Court.  In particular, courts in another district have rejected nearly identical claims regarding watchlisting, holding that challenges to DHS TRIP should be brought in the Court of Appeals and that plaintiffs claiming to be in the TSDB failed to state constitutional and statutory claims with respect to due process.  *See Mokdad v. Lynch*, 804 F.3d 807 (6th Cir. 2015); *Beydoun v. Lynch*, 2016 WL 3753561; *Bazzi v. Lynch*, 2016 WL 4525240; Defs.' Motion to Dismiss at Parts II, III, VII (ECF No. 12, 13).  Plaintiffs have failed to state equal protection claims.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Defs.' Mem. at 33-34.  And Plaintiffs' novel efforts to invoke the nondelegation doctrine run afoul of any and all case law on the subject.  Defs.' Mem. at 37-39.  The Court should address whether these claims may proceed before permitting discovery in furtherance of them.

A stay of merits discovery is particularly appropriate until the Court has assured itself that it has jurisdiction over the claims at issue.  *See McCook Metals LLC v. Alcoa, Inc.,* 249 F.3d 330, 333 (4th Cir. 2001) (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999)).  *See also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) ("Without jurisdiction the court cannot proceed at all in any cause."); *U.S. Catholic Conf. v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79-80 (1988) (distinguishing between jurisdictional discovery which may be appropriate prior to a decision under 12(b)(1), from a subpoena related to merits discovery, which is impermissible where the court lacks jurisdiction); *Al-Fayed v. CIA*, 229 F.3d 272, 276 (D.C. Cir. 2000) ("the district court must have jurisdiction . . . before the discovery rules become operative.").  Because this Court lacks jurisdiction over challenges to the adequacy of DHS TRIP, discovery regarding the DHS TRIP process is plainly inappropriate at this time.

The Court should preserve the resources of the Court and the parties unless and until Plaintiffs state a viable claim. Here, permitting discovery pending motions to dismiss is likely to result in unnecessary burden, expense, and confusion for the Court and parties. The Supreme Court has reiterated, on multiple occasions, that plaintiffs should not be permitted to embark on expensive and burdensome discovery based on unsubstantiated or conclusory allegations that are vulnerable to attack on a Rule 12 motion. *See Iqbal*, 556 U.S. at 678-79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559-60 (2007); *see also United Transp. Serv. Emp. of Am., CIO, ex rel. Wash. v. Nat'l Mediation Bd.*, 179 F.2d 446, 454 (D.C. Cir. 1949) ("Where a complaint fails to state a claim upon which relief can be granted, . . . [a] defendant should not be put to the trouble and expense of any further proceeding, and the time of the court should not be occupied with any further proceeding . . . ."). And, if the Court grants the motion to dismiss, either because the Court lacks jurisdiction or because Plaintiffs have failed to state a claim upon which relief can be granted, it would obviate the need for the parties to engage in discovery, conduct the Rule 26(f) conference, prepare the conference report, make their initial disclosures, identify an administrative record, negotiate protective orders or ask this court to adjudicate myriad, rapidly ripening discovery disputes regarding the plaintiffs' demands for classified, law-enforcement privileged and statutorily-protected information. [1]

---

[1] Plaintiffs' separate, pending *Bivens* actions against many of the same Defendants in their individual capacities provides an independent reason to delay discovery in this matter. *See Baby Doe v. Piehota*, Case No. 1:16-cv-373 (E.D. Va.) (action by many of these Plaintiffs, as well as others, against Defendants in their individual capacities). As the Supreme Court reaffirmed in *Iqbal*, qualified immunity protects a defendant not only from discovery directed at him, but from any discovery that could require the defendant's involvement. *Iqbal*, 556 U.S. at 685; *Lescs v. Martinsburg Police Dep't*, 138 F. App'x 562, 564 (4th Cir. 2005) ("The district court was required to rule on Defendants' dispositive motion to dismiss or for (*footnote cont'd . . .*)

Plaintiffs' first Complaint is rife with errors, *see* Compl. ¶¶ 13, 16, 24-25 (describing individuals who are not parties to the action); ¶ 40 (describing "plaintiffs" on the No Fly List despite the fact that none of the current plaintiffs in this action claim to be on the No Fly List). It sets forth vague and unclear claims insufficient to establish that any of the plaintiffs are on a watchlist or would have standing to challenge watchlisting procedures. *See* Defs.' Mem. at 16 n.9. It includes John Doe plaintiffs who have not sought leave of court to proceed under pseudonyms. *Id*. at 13-14. And the Complaint repeats claims that thus far have been rejected by courts. *See Beydoun v. Lynch*, 2016 WL 3753561, at *5 (rejecting procedural due process claims by alleged Selectees); *Bazzi v. Lynch*, 2016 WL 4525240, at *5-*8 (same). It simply is not a Constitutional violation to subject individuals to additional screening at airports or inspection at ports of entry. Nor are individuals entitled to an evidentiary hearing prior to such reasonable security precautions. There is no reason to expect that an amended complaint will be more coherent or plausible. Of course, if the amended complaint is going to include substantially different claims or allegations, that too will define the scope of discovery and proper objections. In these circumstances, the Supreme Court's direction to exercise "appropriate control over the

---

(. . . *footnote cont'd*) summary judgment raising sovereign and qualified immunity issues prior to allowing any discovery"); *Ransaw v. United States*, No. 10cv1672, 2011 WL 1752160, at *2 (N.D. Ohio May 5, 2011) (staying all discovery against United States because defendants in related case had pending qualified immunity motion and allowing discovery as to the United States would allow plaintiffs to circumvent defendants' qualified immunity defense). The principle of qualified immunity may be substantially compromised by allowing discovery by the same parties against the same defendants in their official capacity. Here, the currently pending interrogatories and requests for admission directed to the defendants in their official capacity could require their personal involvement. Those forms of discovery would, in effect, be discovery against the individual federal defendants, particularly where there is such extensive overlap between the parties, the allegations and the claims in the two cases. At a minimum, the individual federal defendants would still need to participate to "ensure the case does not develop" to "prejudice [] their position." *Iqbal*, 556 U.S. at 685. There is ample opportunity for confusion of the issues between the two cases, and this Court should avoid discovery that would provide an opportunity for compromising the qualified immunity of these individuals.

7

discovery process" encompasses the obligation to avoid unnecessary discovery and amply applies here.

### III. Even if Some Claims Survive, Resolution of the Motion to Dismiss Will Define the Proper Scope of Discovery.

Vacatur of the existing scheduling order and a stay of discovery pending resolution of threshold dispositive motions are also appropriate because, at the very least, resolution of a dispositive motion will likely define the scope of appropriate discovery, if any. *See Sai v. DHS*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015). A jurisdictional dismissal of all challenges to the adequacy of DHS TRIP, for example, would render irrelevant almost all of the discovery directed at DHS TRIP. *See* Defs.' Mem. at Part II. Similarly, a decision that any remaining claim would be properly subject to review under the APA would render all discovery inappropriate. *Fort Sumter Tours, Inc. v. Babbitt,* 66 F.3d 1324, 1335–36 (4th Cir.1995) (finding that judicial review of agency action is "generally confined to the administrative record"); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 793 (E.D. Va. 2008) ("even where plaintiffs have asserted constitutional claims, 'wide-ranging discovery is not blindly authorized at a stage in which an administrative record is being reviewed.'"). Dismissal of Plaintiffs' conclusory and meritless equal protection claims would obviate much of the Plaintiffs' broad discovery.

### IV. A Stay is Necessary to Prevent Litigation of Sensitive, Privileged or Statutorily Protected Information.

Vacatur of the scheduling order is also appropriate because Plaintiffs' proposed discovery could implicate at least three kinds of protected information. Should this case proceed beyond the issues presented in the motions to dismiss, it is possible that issues directly relevant to the merits of the claims may involve law enforcement protected information, statutorily protected information, and classified national security information subject to the state secrets privilege. While these privileges can be asserted in the context of discovery, that would serve only to

substantially and unnecessarily complicate this case before threshold issues have been addressed. Accordingly, the Court should exercise its inherent powers to structure and order proceedings to resolve threshold issues before addressing privilege issues or embarking on discovery that could lead to privilege assertions. *See United States v. Reynolds*, 345 U.S. 1, 7-8, 10-11 (1953) (chastising the parties for forcing a showdown on the state secrets privilege); *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 389-90 (2004) (encouraging courts "whenever possible" to "explore other avenues" to avoid forcing an assertion of Executive privilege that may not be necessary); *Freeman v. Seligson*, 405 F.2d 1326, 1338 (D.C. Cir. 1968) (matters of privilege can "appropriately be deferred").

The proposed discovery includes requests about information related to the purported watchlisting of particular plaintiffs. *See, e.g.,* Exhibit 1, at p. 10 (seeking "[a]ll documents reviewed or relied upon for each of the individual Plaintiffs that resulted in the acceptance of their nomination and/or placement on the watch list"); Exhibit 1, at p. 14 (demanding that Defendant Piehota "[i]dentify, for each of the Plaintiffs, the individuals that made their nominations to the watch list and the agency they work for, and the date that their nominations to the watch list were accepted"); Exhibit 2, at p. 7-13 (requesting information about the alleged nomination of specific plaintiffs); Exhibit 3, at p. 7-14 (same); Exhibit 4, at p. 5-11 (same). Any substantive response to these requests would require confirming or denying the watchlist status of particular plaintiffs. As a general matter, subject to certain exceptions, the Government does not disclose the status of any individual with respect to the TSDB, the Selectee List, or the No Fly List. Watchlist status is protected by the law enforcement privilege, and the No Fly List and Selectee List are statutorily protected as Sensitive Security Information (SSI) pursuant to 49 U.S.C. § 114(r). *See, e.g., Blitz v. Napolitano*, 700 F.3d 733, 737 n.5 (4th Cir. 2012) ("The pertinent regulations deem the following to be sensitive security information that may not be

publicly released: . . . the identities of individuals on no-fly and selectee lists[.]"); *Scherfen v. DHS*, 3:cv-08-1554, 2010 WL 456784, at *8 n.5 (M.D. Pa. Feb. 2, 2010) ("Because the TSDB status of Plaintiffs can neither be confirmed nor denied, this Court cannot discuss . . . the contents of [documents revealing Plaintiffs' status] submitted for *in camera* review[.]"); *see also* 49 C.F.R. § 1520.5(b)(9)(ii) (SSI includes "information and sources of information used by a passenger or property screening program or system, including an automated screening system").[2] A plaintiff who merely alleges placement on a watchlist should not be permitted to force complex privilege disputes upon the Government and court without first showing that their claims may proceed past the threshold of dismissal.

In addition, in the context of civil litigation in federal district court, Congress has created a statutory mechanism that allows for the possibility that individuals, who are not otherwise covered persons with a need to know, may obtain access to certain SSI subject to specific conditions and strict controls. Section 525(d) of the DHS Appropriations Act, 2007, Pub. L. 109-295, § 525(d), 120 Stat. 1355 (Oct. 4, 2006), as reenacted, ("Section 525(d)")[3] provides that

---

[2] The law enforcement privilege provides an independent basis for withholding much of the requested information, including watchlist status, information related to watchlisting policies and procedures, and information about law enforcement techniques and procedures. "[L]aw enforcement agencies must be able to investigate crime without the details of the investigation being released to the public in a manner that compromises the investigation." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 574 (4th Cir. 2004). "The purpose of th[e] [law enforcement] privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of the City of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988).

[3] Section 525 has never been codified, but Section 525(d) has been reenacted in each subsequent act of Congress providing appropriations to the Department of Homeland Security. See Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, Div. E, § 522, 121 Stat. 1844, 2073-74 (Dec. 26, 2007); Consolidated Security, Disaster Assistance, and Continuing Appropriations Act, 2009, Pub. L. No. 110-329, Div. D, § 510, 122 Stat. 3574, 3682 (Sept. 30, 2008); Legislative Branch Appropriations and Continuing Appropriations Resolution of 2010, Pub. L. 111-68, Div. B, § 101, 123 Stat. 2023, 2044 (Oct. 1, 2009); Department of Homeland

a party or party's counsel seeking access to specific SSI must demonstrate to TSA, among other requirements, a "substantial need" for relevant SSI in the preparation of their case, and the district court must enter a protective order that protects the SSI from unauthorized or unnecessary disclosure. But there is no valid reason for the parties to litigate the propriety of disclosures of sensitive information under Section 525(d) at this stage. Plaintiffs certainly will not be able to demonstrate "substantial need" while a motion to dismiss is pending, and the entry of such a protective order is simply not appropriate while a dispositive motion is pending that may resolve the case. Otherwise, the mere filing of a lawsuit again would enable discovery of possible watchlist status even before a court decides that such a claim may proceed.

The proposed discovery also includes requests for any derogatory information that would underlie the alleged watchlisting decisions. *See, e.g.*, Ex. 1, at p. 10 (seeking "[a]ll documents reviewed or relied upon for each of the individual Plaintiffs that resulted in the acceptance of their nomination and/or placement on the watch list"). While the Government does not confirm or deny watchlist status of any particular individual, information underlying terrorist watchlisting decisions often involves classified information. Such information would be subject to a proper invocation of the state secrets privilege. *Gen. Dynamics Corp. v. United States,* 563 U.S. 478, 484 (2011) ("We have recognized the sometimes-compelling necessity of governmental secrecy

---

Security Appropriations Act, 2010, Pub. L. No. 111-83, Div. B, § 510, 123 Stat. 2142, 2170 (Oct. 28, 2009); Department of Defense and Full-Year Continuing Appropriations Act, 2011, Pub. L. No. 112-10, §§ 1101(a)(3), 1104, 125 Stat. 38, 102 (Apr. 15, 2011); Consolidated Appropriations Act, 2012, Pub. L. No. 112-74, Div. D, § 510, 125 Stat. 786, 971 (Dec. 23, 2011); Consolidated and Further Continuing Appropriations Act, 2013, Pub. L. No. 113-6, Div. D, § 510, 127 Stat. 198, 369 (Mar. 26, 2013); An Act Making Continuing Appropriations for the Fiscal Year Ending September 30, 2014, Pub. L. No. 113-46, Div. A, § 101(a)(4), 127 Stat. 558, 558 (Oct. 17, 2013); Consolidated Appropriations Act of 2014, Pub. L. No. 113-76, Div. F, § 510 (Jan. 17, 2014); Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, Div. L, §101, 128 Stat. 2130, 2767 (Dec. 16, 2014); Department of Homeland Security Appropriations, 2015, Pub. L. No. 114-4, Sec. 510 (a), 129 Stat. 263 (March 4, 2015); Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, Division F, Sec. 510(a), 129 Stat. 2513, 2514 (December 18, 2015).

by acknowledging a Government privilege against court-ordered disclosure of state and military secrets."); *El-Masri v. United States,* 479 F.3d 296, 304 (4th Cir. 2007). The Court can and should avoid the potential need for an assertion of the state secrets privilege until plainly necessary and certainly not until after a determination that the Court has jurisdiction and claims have sufficient merit to proceed. *See Aulaqi v. Obama*, 727 F. Supp. 2d 1, 53-54 (D.D.C. 2010) (observing that the Government "also correctly and forcefully observed that this Court need not, and should not, reach their claim of state secrets privilege because the case can be resolved on other grounds they have presented," and declining to address privilege).

### V. Plaintiffs Cannot Show Prejudice.

Finally, Plaintiffs cannot plausibly show any prejudice that would result from delaying discovery for the amount of time necessary for the Court to rule on a motion to dismiss. Defendants are prepared to notice a hearing on the present motion to dismiss or a new motion to dismiss the amended complaint for the earliest practicable date. Neither the 12(b)(1) nor 12(b)(6) motions are premised on factual assertions by the Defendants. Rather, the allegations fail as a matter of law. If the Court ultimately finds that there are legally sufficient claims, nothing then prevents Plaintiffs from attempting to seek discovery in support of those claims at a later date. Recognizing the Court's interest in a speedy adjudication of claims, the most orderly and efficient resolution of this matter involves first deciding a motion to dismiss.

### CONCLUSION

For the foregoing reasons, the Court should vacate the Order dated September 6, 2016, staying further discovery proceedings pending the resolution of a motion to dismiss.

Respectfully submitted this 15th day of September 2016,

DANA J. BOENTE
United States Attorney

12

BENJAMIN C. MIZER
Principal Deputy Asst. Attorney General, Civil Division

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

AMY POWELL
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave, N.W.
Washington, D.C.  20001
Telephone:    (202) 514-9836
Facsimile:    (202) 616-8460
Email:           amy.powell@usdoj.gov

/s/ *R. Joseph Sher*
R.  JOSEPH SHER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Telephone:    (703) 299-3747
Fax:              (703) 299-3983
E-Mail:         joe.sher@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on September 15, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent a notification of such filing (NEF) to the following counsel of record:

Gadeir Abbas
The Law Office of Gadeir Abbas
1155 F Street NW, Suite 1050
Washington, D.C. 20004
Telephone: (720) 251-0425
Fax: (720) 251-0425
Email: gadeir.abbas@gmail.com


/s/ *R. Joseph Sher*
R. JOSEPH SHER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Telephone:     (703) 299-3747
Fax:               (703) 299-3983
E-Mail joe.sher@usdoj.gov