# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

|  |  |  |
|---|---|---|
| ANAS ELHADY, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 1:16-cv-375 |
| CHRISTOPHER M. PIEHOTA, et al., | ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANTS' RESPONSE TO THE "*DOE*" PLAINTIFFS' MOTION TO PROCEED ANONYMOUSLY

DANA J. BOENTE
United States Attorney

BENJAMIN C. MIZER
Principal Deputy Asst. Attorney General, Civil Division

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

AMY POWELL
EMILY NEWTON
Trial Attorneys
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave, N.W.
Washington, D.C.  20001
Telephone:     (202) 514-9836
Facsimile:      (202) 616-8460
Email:            amy.powell@usdoj.gov

R.  JOSEPH SHER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Telephone:     (703) 299-3747
Fax:               (703) 299-3983
E-Mail:          joe.sher@usdoj.gov

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ................................................................................................................. i

**INTRODUCTION**............................................................................................................................ 1

**BACKGROUND** ............................................................................................................................. 1

**ARGUMENT**................................................................................................................................... 3

I.   **Allowing Plaintiffs To Proceed Under Pseudonyms Is Permitted Only In Exceptional Circumstances**................................................................................................. 3

I.   **The John Doe Plaintiffs Have Not Met Their Burden Of Demonstrating Exceptional Circumstances Justifying Their Use Of Pseudonyms In This Case** .......................................................................................................................... 5

**CONCLUSION** ............................................................................................................................. 11

## INTRODUCTION

Plaintiffs, Baby Doe 2 and John Does 1 to 4 have moved to proceed anonymously in this case. Defendants do not oppose allowing Baby Doe 2 to proceed under a pseudonym. But John Does 1 to 4 (the "John Doe Plaintiffs") have not made the extraordinary showing required to overcome the presumption of public proceedings. There is a general presumption that judicial proceedings be open. *See James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). And while the decision of whether to permit parties to proceed anonymously is committed to the Court's discretion, the Court "has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public interest in openness and any prejudice that anonymity would pose to the opposing party." *Company DOE v. Public Citizen*, 749 F.3d 246, 274 (4th Cir. 2014). The party requesting anonymity bears the burden of proof to demonstrate that such relief is appropriate. *CTH 1 Caregiver v. Owens*, No. CA 8:11-2215-TMC, 2012 WL 2572044, at *3 (D.S.C. July 2, 2012). The John Doe Plaintiffs have not made the extraordinary showing required to meet this burden.

## BACKGROUND

John Does 1 to 4 and Baby Doe 2[1] are among the twenty-five Plaintiffs in this lawsuit who allege that they have been placed in the Terrorist Screening Database ("TSDB"), which they refer to as "the federal watch list."[2] As a result of their alleged placement in the TSDB, they claim that they are subject to additional screening or inspection by the Transportation Security Administration ("TSA") and United States Customs and Border Protection ("CBP"), including

---

[1] "Baby Doe 2" appears to be so designated because he is the second of two minors proceeding under a pseudonym in a separate *Bivens* action brought by many of these same Plaintiffs against individual federal officers. *See Doe v. Piehota*, No. 16-cv-373. A motion to dismiss is pending in that matter.

[2] John Doe 4 also alleges that he is on the No Fly List. Am. Compl. ¶¶ 533-38.

when they have attempted to leave and reenter the United States on commercial airplanes and at land ports of entry. All of the Plaintiffs challenge their purported placement in the TSDB and the adequacy of the Department of Homeland Security's Travel Redress Inquiry Program ("DHS TRIP"), which provides redress for travel-related difficulties, including delayed or denied boarding.

In particular, each Plaintiff alleges that he believes he is on the federal watchlist, that he was not given notice of the "deprivation" or an opportunity to respond, that he "remains on the federal watch list,"[3] that his "nomination to the federal watch list was made based solely upon a hunch (based upon his race, ethnicity, national origin, religious affiliation, or First Amendment protected activities)," and that his watchlist status is widely "disseminated" to public and private entities. *See, e.g.*, Am. Compl. ¶¶ 160-64, 169-72, 196-200, 214-18, 228-34, 244-49, 264-65.[4]

In their original Complaint in this case, Plaintiffs listed as Doe Plaintiffs only John Does 1 to 3. ECF No. 1 (Apr. 5, 2016). In their Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Complaint, Defendants argued that the Doe Plaintiffs should be dismissed because they had appeared without leave of court and had not even attempted to make the extraordinary showing required to proceed anonymously. ECF No. 13 at 13-14 (Sept. 2, 2016). Plaintiffs filed an Amended Complaint on September 23, 2016, adding Plaintiffs John Doe 4 and Baby Doe 2, ECF No. 22. In their Memorandum in Support of their Motion to Dismiss Plaintiffs' Amended Complaint ("Defendants' Memorandum"), Defendants argued again that the Doe Plaintiffs should be dismissed for failing to obtain leave of court or to make the requisite showing

---

[3] John Doe 2 does not include the allegation that he remains on a watchlist.

[4] A more detailed summary of the factual allegations of each Plaintiff, including each Doe Plaintiff, can be found in Defendants' motion to dismiss Plaintiffs' Amended Complaint. *See* ECF No. 29 (Nov. 4, 2016).

to proceed anonymously. ECF No. 29 (Nov. 4, 2016) ("Defs.' Mem."). On December 2, 2016, Plaintiffs filed a motion for a protective order and to keep the names of the Doe Plaintiffs under seal. ECF No. 32 ("Pls.' Mot.").

As noted above, Defendants do not oppose allowing Baby Doe 2 to proceed under a pseudonym, provided Plaintiffs reveal to Defendants under an appropriate protective order Baby Doe 2's identity at the earliest possible opportunity in order to allow Defendants to respond to the claims on behalf of Baby Doe 2. The John Doe Plaintiffs, however, have not carried their burden to show that exceptional circumstances justify allowing them to proceed under pseudonyms.

## ARGUMENT

### I. ALLOWING PLAINTIFFS TO PROCEED UNDER PSEUDONYMS IS PERMITTED ONLY IN EXCEPTIONAL CIRCUMSTANCES.

Courts have recognized a "general presumption of open trials[,] including identification of parties and witnesses by their real names." *Jacobson*, 6 F.3d at 242. Indeed, the Federal Rules of Civil Procedure "do not provide for suits by persons using fictitious names or for anonymous plaintiffs." *Id.* Instead, they require that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a).

"This rule embodies the presumption, firmly rooted in American law, of openness in judicial proceedings." *Doe v. Merten*, 219 F.R.D. 387, 390 (E.D. Va. 2004). Indeed, it "dates back to the English common law and finds constitutional support in First Amendment protections of freedom of speech and press." *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 806 (E.D. Va. 2012) (citing *Merten*, 219 F.R.D. at 390). "Identifying the parties to judicial proceedings is a vital component of the courts' facilitation of public access to and public scrutiny of judicial proceedings." *Id.* (internal citations omitted).[5] Thus, the "general presumption of openness of

---

[5] Hereinafter, internal citations and quotations are omitted unless otherwise indicated.

judicial proceedings applies to party anonymity as a limited form of closure." *Jacobson*, 6 F.3d at 238. In short, "[t]he people have a right to know who is using their courts." *Candidate No. 452207*, 42 F. Supp. 3d at 807.

Proceeding by pseudonym is therefore a "rare dispensation." *Jacobson*, 6 F.3d at 238; *see also Doe v. Pittsylvania Cty., Va.*, 844 F. Supp. 2d 724, 728 (W.D. Va. 2012) (it is "the exceptional case in which a court allows a party to proceed anonymously" (collecting cases)). And "the litigant seeking to proceed anonymously or under pseudonym . . . bears the burden to demonstrate a legitimate basis for proceeding in that manner." *CTH 1 Caregiver*, 2012 WL 2572044, at *3 (citing *Qualls v. Rumsfeld,* 228 F.R.D. 8, 13 (D.D.C.2005)). To do so, the litigant must demonstrate "exceptional circumstances," showing that the "stated interest in anonymity" outweighs "the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Pub. Citizen*, 749 F.3d at 273-74.

In *Jacobson*, the Fourth Circuit identified at least five factors for courts to consider in determining whether a litigant has demonstrated exceptional circumstances to proceed anonymously: "[1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent nonparties; [3] the ages of the person whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." 6 F.3d at 238. As set forth below, these factors weigh against permitting the John Doe Plaintiffs to proceed anonymously here.

4

### II. THE JOHN DOE PLAINTIFFS HAVE NOT MET THEIR BURDEN OF DEMONSTRATING EXCEPTIONAL CIRCUMSTANCES JUSTIFYING THEIR USE OF PSEUDONYMS IN THIS CASE.

Defendants acknowledge that, within the guidance of *Jacobson,* the Court has discretion to grant the Plaintiffs' motion. And the Government takes seriously any concern that a plaintiff would be subject to any retaliatory physical or mental harm by participation in litigation. Using the *Jacobson* factors, however, the evidence the John Doe Plaintiffs have submitted does not establish the extraordinary circumstances required for a party to proceed anonymously.

The first *Jacobson* factor—whether a sensitive and highly personal matter would be implicated if the John Doe Plaintiffs were required to proceed under their true names—does not weigh in favor of anonymity here. *See Senior Executives Ass'n v. United States*, No. 8:12-CV-02297-AW, 2012 WL 6109108, at *2 (D. Md. Dec. 7, 2012) (recognizing "birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families" as such sensitive and highly personal matters). Plaintiffs argue that this case presents such a matter because the John Doe Plaintiffs will be required to "disclose their religious beliefs," which are of a sensitive and highly personal nature, in the course of litigating this case. *See* Pls.' Mot. 4-5. But Plaintiffs have presented no reason to believe that this litigation will require them, including the John Doe Plaintiffs, to disclose their private religious beliefs. Plaintiffs note that this lawsuit puts at issue whether they have been placed on a watchlist based on their religious status and free exercise of religion. Pls.' Mot. 4-5. It is not apparent, however, why litigation of these claims would require the John Doe Plaintiffs to disclose their private religious beliefs. The John Doe Plaintiffs appear to contend simply that because their religion is an element of their claims, they are entitled to anonymity. But they have not alleged that their religious affiliation is private or not otherwise publically known, and the law does not support granting pseudonym status merely

5

because a claim of religious discrimination arises. Many plaintiffs, including other plaintiffs in this case, bring claims of religious discrimination without proceeding anonymously.

For these reasons, Plaintiffs' reliance on *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981), and *Doe v. Pittsylvania Cty., Va.*, 844 F. Supp. 2d 724 (W.D. Va. 2012), is misplaced, as both cases are readily distinguishable. In both *Stegall* and *Pittsylvania Cty.*, the plaintiffs brought Establishment Clause claims, challenging prayer and other religious activities taking place in public institutions. *See Stegall*, 653 F.2d at 186 (challenging prayer and Bible reading exercises in Mississippi public schools); *Pittsylvania Cty.*, 844 F. Supp. 2d at 727 (challenging a county board's practice of opening its meetings with Christian prayer). While both courts found that the first *Jacobson* factor favored anonymity, they did so because the claims necessarily involved "revelations about the[] [plaintiffs'] personal beliefs and practices," putting their religious beliefs "at the core of th[eir] suit to vindicate establishment clause rights." *Stegall*, 653 F.2d at 186; *Pittsylvania Cty., Va.*, 844 F. Supp. 2d at 729 ("Religion lies at the heart of this case," and "prosecution of this case will require plaintiff to reveal her beliefs concerning the proper interaction between government and religion, which concerns can implicate privacy matters similar to those associated with actual religious teachings and beliefs."). No such circumstances appear to exist in this case. It is not apparent why adjudication of their claims, including their Equal Protection claim, would involve delving into Plaintiffs' particular religious beliefs at all. At most, and as noted, adjudication of Plaintiffs' claims would reveal only the John Doe Plaintiffs' religious status. *See* Pls.' Mot. 4 (alleging that Plaintiffs were "wrongful[ly] designat[ed] . . . on the basis of their religious status as Muslims"). Plaintiffs have not even alleged that such information is private, and in any event, it does not rise to the level of "personal information of the utmost intimacy that warrants abandoning the presumption of openness of judicial proceedings." *Merten*, 219 F.R.D. at 392 (quoting *S. Methodist Univ. Ass'n of Women Law Students v. Wynne &*

*Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)). As such, consideration of this factor counsels against anonymity.

With respect to the second *Jacobson* factor—whether identification of the John Doe Plaintiffs "poses a risk of retaliatory physical or mental harm" to them or innocent third parties, *Jacobson,* 6 F.3d at 238—the evidence Plaintiffs have presented does not satisfy this factor. In their motion, Plaintiffs allege first that the "very publication of the stigmatizing label of 'known or suspected terrorist' is likely to translate to adverse consequences not only to these Plaintiffs, but their family members." Pls. Mot. at 5. Again, the Government takes seriously any threat of retaliation against any plaintiff, or any third party, for participation in litigation, but Plaintiffs have not presented any evidence that they would be subject to the type of retaliatory physical or mental harm identified in *Jacobson*. And general concerns about harm to reputation are not sufficient to proceed anonymously. *Candidate No. 452207*, 42 F. Supp. 3d at 809.

The John Doe Plaintiffs and their family members contend they would face "adverse actions taken by state and local law enforcement, financial institutions, car dealerships, employers, and other private entities," Pls.' Mot. 5, if the John Doe Plaintiffs' identities were revealed. But the specific "adverse actions" Plaintiffs identify do not rise to the level of retaliatory physical or mental harm. John Does 1 and 3 specifically allege that they have had their bank accounts closed and have lost employment opportunities, *see* Pls.' Mot. 5-6, suggesting that the John Doe Plaintiffs and their families believe they would face similar actions in the future if their identities were revealed in this litigation. But "the threat of economic harm does not merit anonymity." *Doe v. New Ritz, Inc.*, No. CIV. WDQ-14-2367, 2015 WL 4389699, at *2 (D. Md. July 14, 2015) (citing cases); *see also Pub. Citizen*, 749 F.3d at 274 ("[C]ourts consistently have rejected anonymity requests to prevent speculative and unsubstantiated claims of harm to . . . reputational or economic interests."). Instead, the retaliation factor "requires a showing that identification poses a risk of

7

retaliatory *physical or mental harm* to the requesting party." *K-Beech, Inc. v. Does 1-29*, 826 F. Supp. 2d 903, 905 (W.D.N.C. 2011) (emphasis added).[6]

Harms alleged by the other John Doe Plaintiffs also do not satisfy the second *Jacobson* factor. John Doe 4 alleges that the "public disclosure of the stigmatizing label of 'known or suspected terrorist' to his fiancé is likely to adversely impact their relationship." Pls.' Mot. 6. Again, such harm is not the kind of physical or mental retaliatory harm for which proceeding anonymously may be justified. Rather, the reputational harms alleged by John Doe 4 "are not sufficient to outweigh the public interest in the openness of this litigation." *Candidate No. 452207*, 42 F. Supp. 3d at 809; *see also Pub. Citizen*, 749 F.3d at 270 ("unsupported claim of reputational harm falls short of a compelling interest sufficient to overcome the strong First Amendment presumptive right of public access").

John Doe 4 also alleges that local law enforcement officials have already retaliated against him as a result of his inclusion on the federal terror watch list. Pls.' Mot. 6. He specifically alleges that he was pulled over for traffic violations and that police officers purportedly "approached [his] vehicle with their hand on their gun read to shoot." Am. Compl. ¶¶ 543, 545. Even assuming this resulted from his alleged watchlisting status, this allegation does not fall within the *Jacobson* standards. The potential for traffic stops is simply insufficient to proceed anonymously, and the fact that a police officer may have approached a vehicle ready to draw a weapon is not the kind of

---

[6] Even if such economic harm could be sufficient to counsel in favor of anonymity, Plaintiffs' bare allegations that bank accounts were closed and employment opportunities lost as a result of the Plaintiffs' placement in the TSDB are not sufficient to establish a risk of retaliatory harm. Plaintiffs aver with no support that John Doe No. 3 "lost lucrative employment opportunities as a result of being designated as a 'known or suspected terrorist,'" Pls.' Mot. 6 (citing Am. Compl. ¶ 523), and Plaintiffs' allegations that their bank accounts were closed due to their designations is unsupported and undermined by Plaintiffs' admission that the banks provided no "notice or . . . explanation of the reasons why [the accounts] w[ere] being closed." Pls.' Mot. 6; *see also id.* at 5.

physical retaliatory harm of concern under the *Jacobson* factors.[7] Further, while John Doe 4 alleges he was detained in a holding cell overnight, he does not allege that his detention was due to his purported status in the TSDB. *See* Am. Compl. ¶¶ 546-47. As such, this allegation is facially insufficient to show that local law enforcement have retaliated against John Doe 4 based on his purported watchlist status, much less that he is at risk of being retaliated against in the future if he proceeds under his true name in this case.[8]

The fourth *Jacobson* factor also weighs against anonymity in the circumstances of this case where Plaintiffs are suing the Government. As a general matter, the Fourth Circuit has recognized that "the public interest in . . . litigation is especially compelling" where the plaintiff "sue[s] a federal agency." *Pub. Citizen*, 749 F.3d at 274 (citing, *inter alia*, *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir.2000) (noting that "the public has an important interest in access to legal proceedings, particularly those attacking . . . properly enacted legislation")).[9] And while in some settings a court may be more likely to allow a plaintiff to proceed anonymously in a suit against

---

[7] Indeed, the claim that one may, in the future, be subjected to negative encounters with law enforcement is insufficient to support *any* claim for equitable relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

[8] The third *Jacobson* factor does not appear to apply to the John Doe Plaintiffs. While "[c]ourts are often more willing to allow parties to proceed anonymously in order to protect the privacy rights of children," *Doe v. N. Carolina Cent. Univ.*, No. 98-01095, 1999 WL 1939248, at *4 (M.D.N.C. Apr. 15, 1999), Plaintiffs have not alleged that any of the John Doe Plaintiffs are minors, and Defendants do not oppose allowing Baby Doe 2 to proceed under a pseudonym, provided, as noted above, that appropriate disclosures are made to Defendants under protective order should this case proceed past the preliminary stage.

[9] As explained in Defendants' Memorandum, *see* Defs.' Mem. at 5-6, Congress directed TSA to establish procedures for notifying appropriate officials "of the identity of individuals" who are "known to pose, or suspected of posing, a risk of air piracy or terrorism or a threat to airline or passenger safety." 49 U.S.C. § 114(h)(2). This mandate requires TSA, "in consultation with other appropriate Federal agencies and air carriers," *id.* § 114(h)(3), "to use information from government agencies to identify [travelers] who may be a threat to civil aviation or national security," *id.* § 114(h)(3)(A), and to "prevent [those] individual[s] from boarding an aircraft, or take other appropriate action with respect to that individual," *id.* § 114(h)(3)(B). *See also id.* § 114(h)(1).

the Government than against a private party, *see* Pls.' Mot. 6 (citing *Candidate No. 452207*, 42 F. Supp. at 810), it does not follow that the fourth *Jacobson* factor weighs in favor of anonymity every time a plaintiff sues the Government. *See Merten*, 219 F.R.D. at 394 (granting the fourth "factor dispositive effect would lead, inappropriately, to granting anonymity to any plaintiff suing the government to challenge a law or regulation"); *see also CTH 1 Caregiver*, 2012 WL 2572044, at *4 ("The simple fact that plaintiff sues a governmental entity does not give the court more reason to grant her request for anonymity." (quoting *Pittsylvania Cty.*, 2012 WL 370023 at *4)). Indeed, "very rarely is anonymity justified in a case challenging the government." *Ashbourne v. Geithner*, No. CIV.A. RWT-11-2818, 2012 WL 2874012, at *1 (D. Md. July 12, 2012), *aff'd,* 491 F. App'x 429 (4th Cir. 2012). Accordingly, the presence of government defendants cannot sustain the John Doe Plaintiffs' request to proceed anonymously here.

Finally, the John Doe Plaintiffs' proposal for dealing with the fifth *Jacobson* factor—unfairness to the opposing party—by filing an Amended Complaint with the identity of the Doe Plaintiffs under seal, is not sufficient to permit them to proceed anonymously. As Plaintiffs appear to recognize, *see* Pls.' Mot. 7-8, Defendants must know the identity of the Doe Plaintiffs in order to litigate this case, including, for example, to challenge their standing. And should this litigation proceed in spite of the numerous threshold deficiencies in Plaintiffs' Amended Complaint, *see* Defs.' Mem. 20-51, Defendants likely would be hampered in their ability to explore and challenge the John Doe Plaintiffs' claims if they are permitted to proceed anonymously. As such, this factor likewise counsels against permitting anonymity. *See Merten*, 219 F.R.D. at 394 (fifth factor weighed against allowing the plaintiffs to proceed anonymously because the issue of standing depended upon the plaintiffs' identities). Even if these burdens could be overcome through sealed filings, such a proposal is "not a sound basis for resolving the anonymity question" where the "other factors weigh significantly against anonymity for plaintiffs." *Merten*, 219 F.R.D. at 395.

In short, where the other four *Jacobson* factors weigh heavily against anonymity, the possibility of disclosing to Defendants under seal the John Doe Plaintiffs' identities does not outweigh the public's significant constitutional interest in open proceedings.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Plaintiffs' motion to permit the John Doe Plaintiffs to proceed in this litigation using pseudonyms and order Plaintiffs either to amend their complaint by disclosing the real names of the John Doe Plaintiffs, as required by the Federal Rules of Civil Procedure, or dismiss them from this suit.

Dated: December 16, 2016

Respectfully submitted,

BENJAMIN C. MIZER
PRINCIPAL DEPUTY ASSISTANT ATTORNEY
GENERAL
CIVIL DIVISION

DANA BOENTE
UNITED STATES ATTORNEY

ANTHONY J. COPPOLINO
DEPUTY BRANCH DIRECTOR
FEDERAL PROGRAMS BRANCH

AMY POWELL
EMILY NEWTON
TRIAL ATTORNEYS
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS
BRANCH
20 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, D.C. 20001
TELEPHONE:   (202) 514-9836
FAX:         (202) 616-8460
E-MAIL:      amy.powell@usdoj.gov

 /S/
R. JOSEPH SHER
ASSISTANT UNITED STATES ATTORNEY

11

OFFICE OF THE UNITED STATES ATTORNEY
JUSTIN W. WILLIAMS UNITED STATES ATTORNEYS BUILDING
2100 JAMIESON AVE.,
ALEXANDRIA, VA. 22314
TELEPHONE:   (703) 299-3747
FAX:              (703) 299-3983
E-MAIL         JOE.SHER@USDOJ.GOV

COUNSEL FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

      I certify that on December 16, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent a notification of such filing (NEF) to the following counsel of record:

Gadeir Abbas
The Law Office of Gadeir Abbas
1155 F Street NW, Suite 1050
Washington, D.C. 20004
Telephone: (720) 251-0425
Fax: (720) 251-0425
Email: gadeir.abbas@gmail.com

                                        /s/ *R. Joseph Sher*
                                        R. JOSEPH SHER
                                        Assistant United States Attorney
                                        Office of the United States Attorney
                                        2100 Jamieson Ave.,
                                        Alexandria, VA. 22314
                                        Telephone:     (703) 299-3747
                                        Fax:             (703) 299-3983
                                        E-Mail joe.sher@usdoj.gov