IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| Anas ELHADY, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 1:16-cv-375 (AJT/JFA) |
| CHARLES H. KABLE, et al., | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO QUASH PLAINTIFFS' RULE 45 SUBPOENAS

CHAD READLER
Principal Deputy Assistant Attorney General
Civil Division

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

AMY POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email: amy.powell@usdoj.gov

DANA J. BOENTE
United States Attorney

LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov

*Attorneys for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

ARGUMENT ................................................................................................................................. 5

    I.   Plaintiffs Have Not Demonstrated Exceptional Need for or Relevance of the Testimony Sought to the Underlying Litigation ................................................................................ 5

    II.  Plaintiffs Have Refused to Comply with Binding *Touhy* Regulations ………………….11

    III. Plaintiffs Proposed Dates and Locations are Unreasonable ........................................... 13

CONCLUSION ............................................................................................................................ 14

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 45(c)(1) and 26(c)(1),[1] Defendants hereby seek a court order quashing the subpoenas and notices served upon Michael Steinbach, former Executive Assistant Director of the National Security Branch, Federal Bureau of Investigation (FBI) (now retired); Christopher Piehota, Executive Assistant Director of the FBI's Science and Technology Branch (Former Director of the Terrorist Screening Center (TSC)); and Roderick Allison, Acting Assistant Administrator for the Office of Law Enforcement, Federal Air Marshal Service; and Acting Chief of Operations for Transportation Security Administration (TSA) (formerly, Acting Deputy Administrator of TSA).

Defendants ask the Court to quash these subpoenas because Plaintiffs have not demonstrated the need and relevance of the testimony sought to the underlying litigation, much less that there are extraordinary circumstances justifying the depositions of two current and one former high-ranking government officials. Plaintiffs' failure to do so is even more unjustified when considering their refusal of Defendants' proposed alternative means to discover the relevant information at issue. Mr. Steinbach is retired and no longer authorized to testify regarding FBI policies and procedures or to otherwise disclose information obtained by him during the course of and as a result of his official prior status with the FBI.[2] Messrs. Allison and

---

[1] "Although Rule 45 does not list irrelevance as reason for quashing a subpoena, the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Stoney Glen, LLC v. S. Bank & Tr. Co.*, No. 2:13CV8-HCM-LRL, 2013 WL 5514293, at *4 (E.D. Va. Oct. 2, 2013) (citing *Cook v. Howard*, No. 11–1601, 2012 WL 3634451, at *6 (4th Cir. Aug. 24, 2012) (per curiam)).

[2] Counsel does not represent any of the individuals in their individual capacity. Because Mr. Steinbach has no official capacity at all, counsel do not represent him. Defendants are nonetheless moving to quash the subpoena directed to him. While Mr. Steinbach is a non-party to this litigation because he is no longer employed by the federal government, Plaintiffs presumably seek his testimony regarding his knowledge and experience while employed by the FBI. *See United States v. Idema*, 118 Fed. Appx. 740, 744 (4th Cir.2005) ("Ordinarily, a party

Piehota are employed by TSA and FBI, respectively, but now hold different, high-ranking positions and are not appropriate deponents in this matter.

Moreover, the subpoenas are procedurally deficient, as Plaintiffs have failed to comply with applicable binding *Touhy* regulations, requiring counsel to identify the subject matter and relevance of the expected testimony.

## **BACKGROUND**[3]

The history and status of discovery in this litigation was recently summarized in detail in Defendants' Opposition to Plaintiffs' Motion to Compel, ECF No. 65, at 3-9, and as such, Defendants will limit this discussion to those facts relevant to the motion to quash pending before the Court.

On September 26, 2017, Plaintiffs attempted to serve two notices of deposition. One notice identified the witness as "Executive Assistant Director, National Security Branch, of the Federal Bureau of Investigation Michael Steinbach," while the second notice identified the witness as "Acting Deputy Administrator of the Transportation Security Administration Roderick Allison." *See* Exhibit A (September 26, 2017 Notices). Plaintiffs served these notices without first conferring with Defendants, despite the fact that the parties' Joint Proposed

---

does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena."). As a former employee of the FBI, a component of the Department of Justice, Mr. Steinbach may not disclose information obtained by him during the course of and as a result of his employment with the FBI, without prior Departmental approval. Moreover, Mr. Steinbach continues to be bound by nondisclosure agreements into which he entered as a condition of his employment with the FBI.

[3] As described and summarized in the Court's Memorandum Opinion and Order of September 5, 2017, dismissing most of the original claims in the Amended Complaint but holding that a factual record was necessary to evaluate the adequacy of the post-deprivation redress process available to plaintiffs who have alleged that they were placed in Terrorist Screening Database ("TSDB"), which they refer to as "the federal watch list." *See* Slip Op. at 16. *See also* Memorandum in Support of Defendants' Motion for Protective Order, ECF No. 56 at 3.

2

Discovery Plan represented to the Court that "the parties agree that they will make reasonable efforts to agree on dates for any depositions convenient to the deponent, counsel and the parties." ECF No. 51 at 8. By letter dated October 6, 2017, Defendants objected to these notices as deficient and improper in a number of respects, including the fact that neither of the named individuals holds the position described in the notices, and that the current officeholders have extraordinary demands on their time and focus. Defendants also alerted Plaintiffs to the applicable *Touhy* requirements, and proposed that Plaintiffs identify Federal Rule of Civil Procedure 30(b)(6) topics for discussion instead. *See* Exhibit B (Letter from Amy Powell to Gadeir Abbas, dated October 6, 2017).

After receiving no written or other response from Plaintiffs' counsel for two weeks, Defendants raised the topic of the deposition notices during an October 19, 2017 meet-and-confer phone call with Plaintiffs' counsel, at which time Plaintiffs' counsel indicated that he had not seen the Defendants' letter and asked Defendants' counsel to resend it; Defendants' counsel promptly did so. *See* Exhibit C (email from Amy Powell to Gadeir Abbas, dated October 20, 2017). During the same phone call, Plaintiffs' counsel stated that Plaintiffs want to depose both Mr. Allison and Mr. Steinbach about their declarations in a separate civil action that involved different claims, despite their subsequent changes in titles, job duties and employment. *See* Exhibit D (email from Amy Powell to Gadeir Abbas memorializing the call, also dated October 20, 2017). The parties agreed to revisit the issue. Thereafter, on several occasions, Defendants again raised their proposal that they will identify current agency officials who could testify on behalf of the federal agencies if Plaintiffs identified Fed. R. Civ. P. 30(b)(6) topics, and re-stated Defendants' willingness to fold into those topics arguably relevant portions of the Steinbach and

Allison declarations filed in a separate matter. *See, e.g.,* Exhibits E, F (Nov. 6, 2017 email from Powell to Abbas and Nov. 9, 2017 email from Powell to Abbas).

The parties were unable to come to agreement, and Plaintiffs later insisted on adding a deposition of Christopher Piehota, even though he is no longer affiliated with the Terrorist Screening Center and now holds a different, high-ranking position in the FBI unrelated to watchlisting. These individuals previously have provided testimony in other cases, related solely to the No Fly List, and Plaintiffs have not explained how their testimony would be relevant here. Moreover, Mr. Steinbach is now a private citizen no longer employed by the federal government and who therefore cannot testify on behalf of the Government or in connection with current Government policies. To date, Plaintiffs have refused to identify their 30(b)(6) topics[4].

On November 13, 2017, Plaintiffs' counsel informed Defendants that "[w]ith regards to the Allison and Steinbach declaration, I'm just going to serve third party subpoenas on them…" Exhibit G (email from Gadeir Abbas to Amy Powell). After further conferral about possible alternatives and dates, Plaintiffs served the subpoenas and notices on November 28, 2017. Exhibits H (Allison – subpoena and notice), I (Piehota – subpoena and notice), J (Steinbach – subpoena and notice). Each subpoena seeks a video-taped deposition with a court reporter in the above-captioned action at the D.C. offices of Plaintiffs' counsel, the week of December 18, 2017. None of them are at the locations or times that Defendants indicated the deponents might be available if the depositions were ordered to go forward. And none of the subpoenas indicate the topics, relevance, expected length, or other information about the deposition. Counsel for

---

[4] Plaintiffs have noticed one 30(b)(6) deposition for December 20, 2017 related to DHS TRIP. The parties are still discussing the details of the proposed deposition, including topics.

Defendants again attempted to confer about alternative means of providing the information sought, but no agreement was reached.

**ARGUMENT**

I. **Plaintiffs Have Not Demonstrated Exceptional Need Or Relevance of the Testimony Sought to the Underlying Litigation.**

Plaintiffs have not shown that depositions of Mr. Piehota, Mr. Allison and Mr. Steinbach would be reasonable and proportionate to the needs of the case, much less that there are extraordinary circumstances justifying depositions of high-ranking government officials such as Messrs. Allison and Piehota, or a former government official like Mr. Steinbach.

a. **Plaintiffs Must Show Exceptional Circumstances to Depose High Level Officials**

"[A]ny subpoena that seeks evidence that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, or that is so overbroad that compliance with its demands will necessarily require production of irrelevant evidence, seeks evidence outside the scope of Rule 26(b)(1). Such a subpoena creates an undue burden because it necessarily imposes greater hardship than is necessary to obtain proper discovery." *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.,* No. CV 3:16-MC-1, 2016 WL 1071016, at *5 (E.D. Va. Mar. 17, 2016).

High-ranking government officials have extraordinary demands on their time and focus, and should not be required to submit to depositions without a showing of exceptional circumstances, particularly when other means of discovery of the same information is available in a way that will impose fewer burdens on the proper functioning of the Government. *See Nw. Univ. v. City of Evanston*, No. 00 C 7309, 2001 WL 743756, at *4 (N.D. Ill. June 29, 2001) ("before a deposition [of a public official] can be taken, there must be a showing that some

5

relevant information will come out of that deposition, so as not to waste any time"); *Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 440 (S.D.N.Y. 2014) ("This doctrine applies to both current and former high-ranking officials. Although the doctrine applies to former officials, the fact that they are not current high-ranking officials is a factor when considering whether the information can be obtained through less burdensome means and whether the deposition will interfere with the official's government duties."). In *Community Federal Savings & Loan v. Federal Home Loan Bank Board*, 96 F.R.D. 619, 621 (D.D.C. 1983), the court explained this well-recognized basis for protecting high-ranking government officials from depositions:

> [P]ublic policy requires that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases. Considering the volume of litigation to which the government is a party, a failure to place reasonable limits upon private litigants' access to responsible governmental officials as sources of routine pre-trial discovery would result in a severe disruption of the government's primary function.

Absent such limits, there is "a tremendous potential for abuse or harassment." *K.C.R. v. County of Los Angeles*, No. CV 13-3806 PSG (SSx), 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014) (quotation omitted). *See, e.g., United States v. Morgan*, 313 U.S. 409, 421-22 (1941) (criticizing a district court's decision to allow "the deposition of the Secretary," because "it was not the function of the court to probe the mental processes of the Secretary"); *In re McCarthy*, 636 F. App'x 142, 143 (4th Cir. 2015) ("high-ranking government officials may not be deposed or called to testify about their reasons for taking official actions absent extraordinary circumstances."); *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) ("to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be

obtained through other, less burdensome or intrusive means."). Without significant limits, these officials "would be inundated with discovery obligations involving scores of cases . . . [and] the litigation related burdens placed upon them would render their time remaining for government service significantly diluted or completely consumed." *United States v. Wal-Mart Stores, Inc.*, 2002 WL 562301, at *1 (D. Md. Mar. 29, 2002).

As one district court in the Fourth Circuit has explained, "[a] review of the case law surrounding the issue discloses that a deposition of a high ranking Government official will not be permitted unless

> (1) that official has personal knowledge of the facts at issue; (2) *extraordinary circumstances* or a "special need" exists for the deposition; and (3) the information is not available from an alternative source.

*Murray Energy Corp. v. McCarthy*, 2015 WL 7017009, at *2 (N.D. W. Va. Nov. 12, 2015) (emphasis added). Plaintiffs have not demonstrated that these three individuals have personal knowledge of the facts at issue in this litigation; that "extraordinary circumstances" or a "special need" exists for the deposition; or that there is no alternative source for the information. As explained below, not only do alternative sources exists, but the alternative sources are far more appropriate than those Plaintiffs are pursuing.

### b. Plaintiffs Have Made No Showing of Relevance, Much Less Exceptional Need.

Plaintiffs have not demonstrated exceptional circumstances that warrant the depositions of these high-ranking officials or made any showing that the testimony sought from these three individuals is even relevant to this litigation. Two of the subpoenaed witnesses are current, high-ranking government officials with extraordinary demands on their time and focus, and should not be required to submit to depositions in this matter, particularly when other means of discovery of

the same information is available. And the same principles hold true for the third witness, who was a former senior official.

Plaintiffs have offered only scant verbal representations as to why they want to depose these witnesses, referring to declarations that the witnesses executed in a separate matter – *Mohamed v. Holder* – involving a subject matter that is not at issue in this litigation --. In that case, the plaintiff argued, *inter alia*, that he was placed on the No Fly List and denied boarding in violation of his substantive and procedural due process rights. The individuals whose testimony is sought served as declarants on behalf of the agencies where they were employed at the time, as part of their official duties.

Mr. Allison was then the Acting Deputy Administrator, as well as the head of the Federal Air Marshal Service (FAMS), and he submitted a declaration in support of the Motion for Partial Summary Judgment on the Substantive Due Process claim. The declaration thus served to justify generally the need for a No Fly List in light of the then-current threat environment. *See* Exhibit K (redacted Allison Declaration, *Mohamed v. Lynch*, dated March 2, 2016). Although the declaration included a few other paragraphs with background on TSA's general mandate and processes, those processes were not the primary purpose of the declaration, and the legal question before the Court concerned whether the Government is constitutionally permitted to prevent U.S. persons from boarding a commercial aircraft. In this case, general background information, as it pertains to alleged delays resulting from screening due to watchlisting, would be more efficiently and appropriately obtained through other sources, such as a potential 30(b)(6) deposition focused on particular topics related to the subject areas of this case. The justification for the No Fly List is not relevant to the claims of these Plaintiffs, none of whom claim to be on the No Fly List. Mr. Allison, in charge of the FAMS, was uniquely situated to speak about the

need for a No Fly List and the types of threats that can evade screening procedures. The threat analysis has evolved and new threat information has emerged since the time of the declaration, and Mr. Allison is not the deponent best able to speak about threats addressed specifically by screening. In his current position as Acting COO, Mr. Allison oversees the day-to-day execution of Agency operations, and specifically provides leadership, direction, and guidance on behalf of the Administrator of TSA concerning Security Operations, Law enforcement, Global Strategies, Security Capability, Security Policy and Industry Engagement, Intelligence and Analysis and supporting operations. Whatever record is required here can be provided by a different witness that can focus on the particular claims and issues in this case.

Mr. Piehota was the Deputy Director, and later the Director, of the Terrorist Screening Center at FBI. Accordingly, in his official capacity, he submitted at least two declarations (in 2011) in *Mohamed* in support of the Government's dispositive motions, which generally addressed watchlisting procedures at TSC. *See, e.g.*, Exhibit L (Piehota Declaration, *Mohamed v. Holder*, dated June 2011). Mr. Piehota has since left TSC. He is currently the Assistant Director of the FBI's Science and Technology Branch. In this role, Mr. Piehota is responsible for, among other things, overseeing all operations of the FBI's Criminal Justice Information System, Laboratory Division, and its Operational Technology Division. He has no responsibility for watchlisting for TSC and cannot reasonably be expected to testify as to TSC authorities, policies and procedures as they pertain to the claims in this case merely because he addressed similar issues concerning the No Fly List several years ago. His statements about prior policies and procedures are now dated and in any event not relevant to this matter, which seeks injunctive relief as to current policies and procedures – for which he is not the appropriate authority. There are, of course, appropriate ways to seek discovery about current policies and procedures and the

current justifications therefore – including document requests, interrogatories, and 30(b)(6) depositions. And TSC has put forward a witness in their initial disclosures on this very topic – the current deputy director of TSC. With many alternative and more efficient ways to seek relevant information, Plaintiffs should not be permitted to depose a current high level official who has no current involvement with this matter or the underlying policies and procedures.

During the *Mohamed* matter, Mr. Steinbach was the Assistant Director of the FBI's Counterterrorism Division, and then the Executive Assistant Director of the FBI's National Security Branch. As the Executive Assistant Director of the FBI's National Security Branch, Mr. Steinbach was responsible for, among other things, overseeing the national security operations of the FBI's Counterintelligence Division, Counterterrorism Division, High-Value Detainee Interrogation Group, Terrorist Screening Center, Weapons of Mass Destruction Directorate, and all other FBI functions supporting the agency's national security mission to defeat national security threats directed against the United States. He submitted declarations in the *Mohamed* matter, including in support of the motion for summary judgment. His declarations described, *inter alia*, the FBI's role in nominating individuals to the TSDB at that time, with a particular focus on nominations to the No Fly List, and FBI's role in the revised DHS TRIP process (as it pertains to U.S. persons who are denied boarding). *See, e.g.*, Exhibit M (Steinbach Declaration from *Mohamed v. Lynch*, dated March 2016). Mr. Steinbach's prior testimony related to the No Fly List, and the revised redress process, is not relevant to this litigation because none of the Plaintiffs allege that they are on the No Fly List. To the extent that any other portion of his declaration is relevant, Mr. Steinbach is now a private citizen who should not be burdened with the needs of this litigation, and he cannot testify on behalf of the FBI or in connection with the current policies, procedures, and institutional interests of, or

threats known by, the FBI. Considering the multiple alternative means Defendants have offered to discover any relevant testimony discussed *infra*, Plaintiffs' subpoena of Mr. Steinbach's testimony is plainly unreasonable.

### c. Defendants Have Proposed Alternative Means to Discover the Relevant Information at Issue

As noted above, Defendants have proposed alternative means to discover the relevant information at issue. First, Federal Rule of Civil Procedure 30(b)(6) permits Plaintiffs to seek binding testimony on topics reasonably described by the deposition notice. Defendants have indicated to Plaintiffs that it seems likely that the parties could agree, at least to some extent, on a set of proper topics for discovery and that defendant agencies would then designate appropriate agency officials who can speak on behalf of their respective agencies. At the very least, Plaintiffs should be required to first attempt to satisfy their need for information through 30(b)(6) depositions before deposing high level or retired officials who are no longer in a position to testify on behalf of the defendant agencies concerning relevant issues. Second, in at least one other watchlisting-related case, the parties agreed on a set of stipulated facts setting forth relevant unclassified, nonprivileged aspects of the watchlisting process and redress process. *See generally Latif v. Holder*, No. 10-cv-750 (D. Ore.) (stipulated facts at ECF Nos. 41, 84, 173). Defendants may be willing to attest to a set of stipulated facts in this litigation as well. The parties should be able to agree on some basic facts concerning the watchlisting and redress process.

### II. Plaintiffs Have Refused to Comply with Binding *Touhy* Regulations.

Both the Department of Homeland Security (DHS), of which the TSA is a component, and the Department of Justice (DOJ), of which the FBI is a component, have promulgated *Touhy* regulations under their general "housekeeping" authority conferred by 5 U.S.C. § 301. *See*

*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). These regulations generally prohibit disclosure of official information absent authorization from appropriate agency officials and require a party seeking testimony to provide a written statement setting forth, with as much specificity as possible, the nature and relevance of the official testimony sought. *See* 28 C.F.R. § 16.21 *et seq* (applicable DOJ *Touhy* regulations); 6 C.F.R. §§ 5.41 – 5.49 (applicable DHS *Touhy* regulations).[5]

Moreover, according to several opinions by this Court, enforcement of *Touhy* regulations is proper even where the Government is a party. In *United States v. Rosen*, 518 F.Supp.2d 798 (E.D. Va. 2007) and 520 F. Supp. 2d 802 (E.D. Va. 2007), this Court recognized that *Touhy* regulations are a valid means by which the government can ensure that confidential information is not improperly disclosed, even in situations where the government is a party. *See Rosen*, 518 F. Supp. 2d at 800 n. 5 ("Again, *Touhy* notices are not designed to be discovery devices for the prosecution, but are instead designed to enable government agencies to make a determination

---

[5] According to DHS's *Touhy* regulations, "[n]o employee, or former employee, of the Department shall, in response to a demand or request, including in connection with any litigation, provide oral or written testimony by deposition, declaration, affidavit, or otherwise concerning any information acquired while such person is or was an employee of the Department as part of the performance of that person's official duties or by virtue of that person's official status, unless authorized to do so by the Office of the General Counsel." 6 C.F.R. § 5.44. Further, "[i]f official information is sought, through testimony or otherwise, by a request or demand, the party seeking such release or testimony must (except as otherwise required by federal law or authorized by the Office of the General Counsel) set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought." 6 C.F.R. § 5.45. DOJ's *Touhy* regulations contain the same two requirements. *See* 28 C.F.R. § 16.23(a) ("[a]n attorney shall not reveal or furnish any material, documents, testimony or information . . . without the express prior approval by the Assistant Attorney General in charge of the division responsible for the case or proceeding"); 28 C.F.R. § 16.23(c) ("If oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished. . .").

regarding the release of confidential government information that a defendant seeks to elicit at trial."). *See also United States v. Soriano-Jarquin*, 492 F.3d 495, 504-05 (4th Cir. 2007) (upholding—against a Sixth Amendment challenge—the government's refusal to produce a witness in the face of the defendant's failure to comply with *Touhy*); *United States v. Guild*, 341 F. App'x 879, 886 (4th Cir. 2009).

Because the subpoena here is directed at witnesses who are covered by DHS and DOJ's respective *Touhy* regulations, to the extent Plaintiffs seek Government information, the subpoena cannot be enforced unless the requester has satisfied the procedural prerequisites set forth in the regulations. The requester must provide DHS and DOJ, respectively, a written request for the information sought, setting forth the nature of the information and its relevance with specificity. Only after such a request has been made, and only after authorization has been granted by DHS and DOJ, may the testimony be provided. This is not a burdensome requirement, and is particularly important in a case such as this one that potentially involves sensitive information and Government privileges. Notice of likely topics permits witnesses and counsel to be prepared to invoke privileges properly. Plaintiffs were specifically informed of the requirement in early October, *see* Ex. B, but they continue to refuse to comply.

### III. Plaintiffs' Proposed Dates and Locations are Unreasonable.

As explained above, Defendants believe these depositions are unreasonable and should not take place. If the Court denies this motion, however, Plaintiffs should be ordered to take depositions at the dates and locations proffered by Defendants. Defendants offered up dates and locations at which Steinbach and Allison could be available if the Court were to deny this motion. Specifically, Mr. Allison is likely to be available on December 19, 2017 (when Plaintiffs' counsel are also available, since they noticed a different deposition for that day). Mr.

13

Steinbach is available the week of January 8, 2018. Mr. Piehota has now also confirmed that he is available that week. Mr. Piehota and Mr. Allison would need to do the depositions at their respective office buildings. As explained above, they are high-ranking government officials with extraordinary demands on their time and forcing them to take time to commute to the deposition is yet more of an imposition on their time and the proper functioning of their respective agencies. Plaintiffs' counsel previously indicated a willingness to consider alternative dates and locations but has not responded to more specific inquiries about the noticed dates and locations.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to quash Plaintiffs' subpoenas served upon Mr. Allison, Mr. Piehota, and Mr. Steinbach.


Dated: December 1, 2017                     Respectfully submitted,

DANA J. BOENTE
United States Attorney

CHAD READLER
Principal Deputy Assistant Attorney General
Civil Division

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

AMY POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email: amy.powell@usdoj.gov

/s/ *Lauren Wetzler*
LAUREN WETZLER
Assistant United States Attorney

Office of the United States Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov

*Attorneys for Defendants*

# **CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2017, I filed the foregoing via the CM/ECF system, which will send a Notification of Electronic Filing to all counsel of record.


/s/ *Lauren Wetzler*
LAUREN WETZLER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov