## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.*, | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHARLES H. CABLE,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |

_____

### PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER LIMITING SCOPE OF DEFENDANTS' DEPOSITION QUESTIONING AS TO PLAINTIFFS MARK AMRI AND JD1

NOW COMES Plaintiffs, through their attorneys, Council on American-Islamic Relations ("CAIR") and Akeel and Valentine, PLC, hereby move this Honorable Court for a Protective Order Limiting Scope of Defendants' Disposition Questioning as to Plaintiffs Mark Amri and JD1. Specifically, Plaintiffs seek to exclude Defendants' questions regarding Mark Amri's international travel, and JD1's organizational bank accounts. Pursuant to the local and federal rules, Plaintiffs' counsel certifies they have conferred in good faith with counsel for Defendants, and Defendants have stated that they intend to pursue these lines of questioning and oppose the request.

WHEREFORE, for the reasons discussed in the accompanying Brief, Plaintiffs respectfully move this Honorable Court GRANT their Motion.

Respectfully submitted,

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS

BY:     /s/ Gadeir Abbas

1

GADEIR I. ABBAS (VA: 81161)*
LENA F. MASRI (P73461)
*Attorneys for Plaintiff*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420

*Gadeir Abbas is licensed in VA, not in D.C.
Practice limited to federal matters.*

AKEEL & VALENTINE, PLLC

SHEREEF H. AKEEL (P54345)
*Attorney for Plaintiffs*
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

Dated: February 2, 2018

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.*, | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHARLES H. CABLE,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |

_____

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER LIMITING SCOPE OF DEFENDANTS' DEPOSITION QUESTIONING AS TO PLAINTIFFS MARK AMRI AND JOHN DOE NO. 1

### INTRODUCTION

Plaintiffs and Defendants have cooperatively worked to schedule depositions in this case. Those depositions of the plaintiffs which have already occurred focused on the consequences to Plaintiffs' that they allege are attributable to their inclusion in the Terrorist Screening Database (hereinafter "TSDB"). Disputes have arisen, however, regarding the topical scope of these depositions. Plaintiffs accordingly request (1) the Court limit inquiry to Mr. Mark Amri's domestic activities, and exclude questioning regarding his international travel which Amri does not allege as having any evidence of any consequences attributable to Defendants' decision to place him on the watchlist. Plaintiffs additionally request (2) the Court limit Mr. John Doe No. 1's testimony regarding the closure of bank accounts to his personal and business accounts, while excluding any testimony surrounding the closure of a nonprofit's bank account, to which Mr. John Doe No. 1 was an authorized signatory, that would tend to make the nonprofit identifiable.

**LEGAL STANDARD**

The Federal Rules of Civil Procedure restrict discovery to information "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A court "must limit" the "extent of discovery" if it falls outside this scope. Fed. R. Civ. P. 26(b)(2)(C)(iii). Rule 26 further permits a court "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in the discovery process. Fed. R. Civ. P. 26(c)(1). Such a protective order may "forbi[d] inquiry into certain matters, or limi[t] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2036.

**ARGUMENT**

**I.   INQUIRY INTO JD1's AFFILIATED NON-PROFIT BANK ACCOUNTS SHOULD BE BARRED DUE TO ITS THREATENED CHILL ON PROTECTED ASSOCIATION**

As detailed in the Complaint, Mr. John Doe No. 1 contends that his inclusion on the watchlist caused the sudden closure of "many of his individual and business bank accounts," including with "JPMorgan Chase Bank, TCF Bank and PNC Bank." See 1A Complaint (Dkt. 22) ¶¶ 491-494. Mr. Doe No. 1 is prepared to testify about these shuttered accounts, to which Mr. Doe 1 was an authorized signatory, with one exception. He seeks a protective order allowing him to not answer questions that would identify in any way the name of the organization on behalf of which he became an authorized signatory. The non-profit organization is recognized by the IRS as a 501(c)(3) entity, receives its funding through lawful means, and otherwise operates in conformity with its tax-exempt purpose;

nevertheless, its donors, donations, associates, and account details are highly sensitive. Inquiry into Mr. Doe No. 1's affiliation with the organization could discourage other donors and volunteers and chill the organization's charitable operations. Mr. Doe No. 1 therefore requests the Court enter a protective order limiting Defendants' deposition inquiry to the closure of Mr. Doe No. 1's his bank accounts to matters that would not tend to identify the name of the nonprofit. Although relevant to the harm Mr. Doe No. 1 has experienced as a result of inclusion on Defendants' terror watch list, Mr. Doe No. 1 correspondingly agrees to not rely on the non-profit account's closure in support of his claims.

Under the First Amendment, "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble." Implicit in these guarantees is the "right of expressive association," which is the right of individuals to band together to amplify their voices. *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.* ("*FAIR*"), 547 U.S. 47, 68 (2006) (citing *Boy Scouts of America v. Dale*, 530 U.S. 640, 647–48 (2000)). Also implicit is the right to speak and associate anonymously. *See, e.g., Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 166–67 (2002). Weaving together these rights, the Supreme Court has repeatedly "held laws unconstitutional that require disclosure of membership lists for groups seeking anonymity." *FAIR*, 547 U.S. at 69; *accord NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958). These constitutional safeguards for a group's members apply equally to its donors: "The right to join together 'for the advancement of beliefs and ideas,' is diluted if it does not include the right to pool money through contributions, for funds are often essential if 'advocacy' is to be truly or optimally 'effective.'" *Buckley v. Valeo*, 424 U.S. 1, 65– 66 (1976) (quoting *NAACP v. Alabama*, 357 U.S. at 460). Donors are sufficiently integral to organizational operations that "[t]he First

Amendment protects the right to engage in charitable solicitation*." Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600, 611 (2003); *accord Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 787–89 (1988); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632–33 (1980).

Revealing association with a nonprofit organization threatens to expose members and donors to harassment and reprisals from those "opposed to the group or its objectives." *Roberts v. Pollard*, 283 F. Supp. 248, 256 (E.D. Ark. 1968) (three-judge court), *summarily affirmed* 393 U.S. 14 (1968).  Individuals may legitimately fear of any number of negative consequences from disclosure of their organizational affiliations, including harassment by the public, *e.g., NAACP v. State of Alabama*, 357 U.S. 449, 462-63 (1958), adverse government action, *e.g., Shelton v. Tucker*, 364 U.S. 479, 486-87 (1960), and reprisals by a union or employer, *e.g., Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. Waterfront Comm'n of N.Y. Harbor*, 667 F.2d 267, 272 (2d Cir. 1981).  Diminishing protected association results in classic chilling effects, and the "occurrence or apprehension of such reprisals tends to discourage the exercise of the rights which the Constitution protects." *Roberts*, 283 F. Supp. at 256. *Accord, e.g., Brown v. Socialist Workers '74 Campaign Committee (Ohio)*, 459 U.S. 87 (1982); *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539 (1963); *Louisiana ex rel. Gremillion v. NAACP*, 366 U.S. 293 (1961); *Shelton v. Tucker*, 364 U.S. 479 (1960); *Bates v. City of Little Rock*, 361 U.S. 516 (1960).

Because Mr. John Doe No. 1 has agreed to not rely on the closure of the nonprofit bank account in support of his claims, no purpose would be served by Defendants' inquiry into the nonprofit's financial activities or Mr. John Doe No. 1's affiliation with it.  Balancing the minimal importance of the account against the potential chill to the nonprofit and its donors

from disclosure, it is clear that discovery is unjustified.  *See, e.g., Perry v. Schwarzenegger*, 591 F.3d 1147, 1165 (9th Cir. 2010) (ordering district court to block discovery that would discourage the exercise of First Amendment rights). The Court should therefore limit the scope of Mr. John Doe No. 1's deposition to the closure of his personal accounts, while excluding inquiry into the nonprofit accounts for which he was a signer and that would tend to identify the nonprofit.

II.     **INQUIRY INTO MARK AMRI'S INTERNATIONAL TRAVEL SHOULD BE BARRED AS IRRELEVANT**

As detailed in the Complaint, Mark Amri has been denied boarding and subjected to heightened "SSSS" scrutiny when attempting to board domestic flights in California.  *See* First Amended Complaint (Dkt. 22) ¶¶ 366-380.  At times when he was not on the No Fly List, Mr. Amri engaged in some international travel, which is not detailed in the Complaint and not relevant to his claims in any manner.  Defendants, however, have indicated that they intend to inquire into Mr. Amri's history of international travel at his deposition.

These questions are particularly sensitive to Mr. Amri, because he has recently been questioned by law enforcement about his international travel in a controlled setting with counsel present policing the parameters of the interview.  To the extent Defendants seek information about Mr. Amri's international travel in tangential support of *other* Government investigations, unrelated to Mr. Amri's constitutional challenge, such discovery is plainly improper.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n. 17 (1978) ("[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.").  This Court should prohibit the defendants from

utilizing Amri's deposition to double back on his answers to questions regarding his international travel.

The alternative purpose of such questioning is evident, because Amri's international travel is not at issue in this case.  He does not rely upon any occurrence outside of US territory to support his watchlist claims.  Indeed, if the defendants want a stipulation disclaiming international events, Amri will readily provide it.  With this as context, any questions regarding his international travel would be wholly irrelevant.  "'[I]f the discovery sought has no bearing on an issue of material fact' – i.e., if it is not relevant – 'a protective order is proper.'"  *Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364 (M.D.N.C. 2014) quoting *Tilley v. United States,* 270 F.Supp.2d 731, 735 (M.D.N.C. 2003).

Plaintiffs respectfully request the Court issue a protective order excluding Mr. Amri's international travel from the topical scope of his deposition.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court GRANT their Motion for a Protective Order Limiting Scope of Defendants' Disposition Questioning.

Respectfully submitted,

COUNCIL ON AMERICAN-ISLAMIC RELATIONS

BY:     /s/ Gadeir Abbas
GADEIR I. ABBAS (VA: 81161)
LENA F. MASRI (P73461)
*Attorneys for Plaintiff*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420

*Gadeir Abbas is licensed in VA, not in D.C.
Practice limited to federal matters.*

8

AKEEL & VALENTINE, PLLC

BY:      /s/ Shereef Akeel
SHEREEF H. AKEEL (P54345)
*Attorney for Plaintiffs*
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

Dated: February 2, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2018, I electronically filed the foregoing by using the Court's ECF system.  I further certify that all participants in the case are registered ECF users and will be electronically served by the Court's ECF notification system.

Respectfully submitted,

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS

BY:     /s/ Gadeir Abbas
GADEIR I. ABBAS (VA: 81161)
LENA F. MASRI (P73461)
*Attorneys for Plaintiff*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420

*Gadeir Abbas is licensed in VA, not in D.C.*
*Practice limited to federal matters.*

AKEEL & VALENTINE, PLLC

BY:     /s/ Shereef Akeel
SHEREEF H. AKEEL (P54345)
*Attorney for Plaintiffs*
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

Dated: February 2, 2018