**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.*, | ) | |
| | ) | **Case No. 16-cv-00375 (AJT/JFA)** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CHARLES H. KABLE,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AGAINST DEFENDANTS' COUNSEL

Plaintiffs' motion for a Protective Order against Defendants' Counsel Antonia Konkoly is meritless and should be denied.  Without attaching any deposition transcripts to their motion, Plaintiffs allege that Ms. Konkoly has "engaged in a pattern of conducting abusive depositions," and they request an admonishment from this Court.  Pl.'s Mot. for a Prot. Ord. Against Defs.' Counsel Antonia Konkoly (hereinafter "Pl.'s Mot.") at 1, ECF No. 109.  Ms. Konkoly's conduct amounted to nothing of the sort.  This motion is unwarranted.

## BACKGROUND

Plaintiff Muhammad Khan was deposed on Thursday February 8, 2018, via video-teleconference (VTC).  *See* Khan Dep. Tr., attached as Ex. A.  Early in the deposition, Defendants' counsel Antonia Konkoly asked Mr. Khan questions pertaining to the signature on the verification to his supplemental interrogatory responses.  *See id.* at 15–24.  This line of questioning led to exchanges that are at issue in Plaintiffs' motion.   First, as set forth below, this issue – the veracity of the verification – was well within the scope of appropriate questioning.

1

Second, part of the reason for interruptions in the questioning on this topic was the fact that the deposition was – at Plaintiffs' request – taken by video-teleconference, and due to a lag in the VTC software, both attorneys and the deponent interrupted each other.  *See, e.g.*, Khan Dep. Tr. at 8:1–18 (parties struggling to hear due to microphone difficulties). The transcript includes multiple instances in which the court reporter indicated that the technology rendered the testimony inaudible.  *See generally id.* Khan Dep. Tr. (noting "(inaudible)" at least 93 times).

Moreover, after Plaintiffs' counsel indicated their intention to file this motion, Ms. Konkoly e-mailed opposing counsel, stating that although she did not agree with Plaintiffs' counsel's characterization of the deposition, she recognized that she had expressed her frustration with Mr. Khan's responses to certain questions, she meant no offense, and she indicated that she would be cognizant of the reactions of the deponents and of Plaintiffs' counsel in future depositions.  *See* Email from Antonia Konkoly, Trial Att'y, U.S. Dep't of Justice, to Gadeir Abbas, Senior Litig. Att'y, and Lena Masri, Nat'l Litig. Dir., Council on American-Islamic Relations, (Feb. 08, 2018 5:30 PM EST), attached as Ex. B; *see also* Decl. of Antonia Konkoly, Trial Att'y, U.S. Dep't of Justice, at ¶ 4, attached as Ex. E.

Notwithstanding Ms. Konkoly's prompt response, and without reviewing the transcript, Plaintiffs nonetheless proceeded to file this unnecessary and meritless motion.

## ARGUMENT

Defendants do not dispute that questioning during some of Mr. Khan's deposition became tense and was marked by interruptions.  But at no point did this questioning cross the line into purportedly abusive misconduct by Ms. Konkoly.  While depositions can sometimes involve contentious moments, tough questioning of a deponent does not constitute misconduct. *See Gurshin v. Bank of Am. Nat'l Ass'n*, No. 2:15–cv–323–GMN–VCF, 2017 WL 68650, slip

op. at 4 (D. Nev. Jan, 5, 2017) (finding that a deposition with "often contentious interactions," including interruptions, did not amount to improper conduct).  Plaintiffs' characterization of what transpired is neither fair nor accurate, and certainly does not call for any action by this Court.

The transcript of the deposition – which apparently Plaintiffs did not review before submitting the motion – does not support their accusations.  The transcript reflects that defense counsel did not engage in the type of abusive treatment that a court might admonish, such as calling the witness derogatory names, or otherwise saying insulting or degrading things, or anything of the sort.  *See, e.g.*, *Cruz-Aponte v. Caribbean Petroleum Corp.*, 123 F. Supp. 3d 276, 281 (D.P.R. 2015) (sanctions for an inappropriate comment about whether a deponent was going through menopause); *Laddcap Value Partners, LP v. Lowenstein Sandler P.C.*, 859 N.Y.S.2d 895 (Sup. Ct. 2007) (sanctioning an attorney for repeated "inappropriate, insulting, and derogatory remarks" based on a deponent's gender).

First, some of what may have been perceived as inappropriate was the result of technical issues.  Plaintiffs requested that this (and other) deposition occur via video-teleconference, and Defendants accommodated this request.  Such technology is subject to delays in exchanges where parties inadvertently talk over each other.  While cross-talk occurs even in face-to-face depositions, it was exacerbated in these circumstances, and likely contributed to the perception of the questioning by the witness, but viewed reasonably in context does not support an allegation of abusive conduct.  At a number of points in the deposition, an issue with the video teleconferencing lag seems to arise. The following example illustrates this issue:

Q: Okay. Can you estimate how many people you talked to about this incident at the time?

A: Just like I told you in the previous response, you know the number of people is not important, what the actual number is, but quite a few people, they know about my

traveling situation and they do know that I go through a lot. So I do talk to some friends yes.

Q: Okay, so Mr. Khan I'd just like to –

A: Oh.  (Inaudible.)

(Crosstalk)

Q: I'd like to clarify –

A: Yeah.  (Inaudible.)

(Crosstalk)

Ms. Masri: Sorry.  Toni, he was still responding again and you cut him off.

Q: That's not accurate . . .

*Id.* at 60:17–61:10.

Indeed, Ms. Konkoly noted for the record that she did not intend to be interrupting the witness, but that the VTC software made it seem to Ms. Konkoly that the witness had finished speaking.  *See id.* at 134:17 – 135:4. ("Ms. Konkoly: . . .  Lena, I'd also to note [sic] that doing this electronically there's some kind of pause or something in the background. I would appreciate if you would understand that I am not interrupting your client purposely. Sometimes it appears that he has spoken . . . .");  *see also* Decl. of Antonia Konkoly, Ex. E, at ¶ 5.

Second, Ms. Konkoly's questioning was also substantively proper.  She asked Mr. Khan a series of questions, beginning with several regarding the date on the signature verification to his interrogatory responses.  *See, id.* at 15–24.  These questions were well within the scope of counsel's obligation to engage in thorough fact-finding in discovery.  Indeed, the very subject matter of the questioning at issue goes to a core purpose of discovery: to test the veracity of the Plaintiff and his claims.

As this Court is aware from the January 19, 2018 hearing, counsel has had ongoing issues with Plaintiffs properly verifying their interrogatory responses, and the Court directed Plaintiffs to ensure that supplemental interrogatory responses were under oath.  *See* Hearing on Motions at 10–12, *Elhady v. Kable*, No. 16-375 (E.D. Va. Jan. 19, 2018) ("Hr'g Tr.").  Mr. Khan's

verification page to his Supplemental Interrogatory Response of February 2, 2018 appeared to counsel to be identical to the verification he included with his earlier interrogatory responses, but the date next to the signature appeared to have been altered from "1/6/2018" to "01/26/2018," to make it contemporaneous with the filing of the Supplement.  *See* Verifications of Plaintiff Khan, attached as Ex. C.  Defendants reasonably suspected that the two signatures were identical and that the date on the photo-copied page had simply been altered.  If correct that would call into question whether the particular Plaintiff had reviewed the supplemental responses as well as the veracity of those responses.  This is a proper, indeed routine, but important subject of inquiry at any deposition, and any tension that arose from such questioning was likely in part due to the subject of the inquiry.  When Mr. Khan stated to Ms. Konkoly that the two apparently identical signatures were in fact distinct, Ms. Konkoly properly pressed the issue.  *See* Khan Dep. Tr. at 15–24.  Although, in hindsight, the questioning could perhaps have concluded more quickly, there was nothing wrong with probing this topic to ascertain whether the witness was truthful and had actually reviewed sworn material when he attested that he had done so.

To be sure, in any circumstance, Ms. Konkoly knows that it is preferable to avoid contentious exchanges at depositions, and that very day expressed her regret if the tone of her questioning had offended the Plaintiff.  *See* Ex. B.  But nothing about this dispute rises to the level of abusive conduct on the part of Ms. Konkoly, who has practiced before this Court for years with professionalism and is aware of the high standards of conduct expected by this Court, especially by Government lawyers.

Lastly, Plaintiffs also argue that Ms. Konkoly's purportedly "abusive" conduct is part of an ongoing pattern: a "strategy . . . to be hostile, intimidating and disrespectful." *See* Pl.'s Mot. at 2.  They offer no evidence for this accusations whatsoever.  The sole fact proffered in support of

this contention Plaintiff is that Ms. Konkoly once asked another plaintiff in another deposition whether he "ever take(s) any illegal drugs," claiming that such questioning was a "clear and startling attempt to gauge his religious adherence."  *See* Pl's Mot. at 2. ¶ 5 (referring to deposition of Samir Anwar).  To the contrary, that question was intended as nothing more than a boilerplate inquiry to establish the deponent's capacity to be deposed.  Such a question has nothing whatsoever to do with religion.  In any event, once Plaintiffs' counsel brought to Defendants' counsel's attention their concern about this question, Defendants' counsel agreed to limit the scope of future questioning to the 48 hours prior to the deposition.  And in the deposition of Mr. Khan – the deposition at issue in *this* motion -- Ms. Konkoly adhered to this agreement and asked about drug and alcohol use within the past 48 hours.  *See* Khan Dep. Tr. at 7.  Plaintiffs' counsel offers nothing more than her own conclusory statements that Ms. Konkoly has some sort of strategy of hostility.

Defendants simply wish to complete discovery as efficiently and completely as possible—and motions like the one at hand make doing so difficult.  This Court should deny this motion.


Dated: February 14, 2018                    Respectfully submitted,


                                            TRACY DOHERTY-MCCORMICK
                                            Acting United States Attorney

                                            CHAD A. READLER
                                            Acting Assistant Attorney General
                                            Civil Division

                                            ANTHONY J. COPPOLINO
                                            Deputy Director, Federal Programs Branch
                                            CHRISTOPHER R. HEALY
                                            Trial Attorney
                                            Civil Division, Federal Programs Branch

United States Department of Justice
P.O. Box 883, Washington, DC 20044
Tel. (202) 514-8095; Fax (202) 616-8470
Email: christopher.healy@usdoj.gov


/s/ *Lauren A. Wetzler*
LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA. 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2018, I filed the foregoing via the CM/ECF system, which will send a Notification of Electronic Filing to all counsel of record.

/s/ *Lauren A. Wetzler*
LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA. 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov