**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **Anas ELHADY, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 1:16-cv-375** |
| ) | **Hon. Anthony J. Trenga** |
| **Charles Kable, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 1 –30(b)(6) notice to TSC**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.*, | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHRISTOPHER M. PIEHOTA,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |

---

### NOTICE OF 30(B)(6) DEPOSITION OF DEFENDANT TERRORIST SCREENING CENTER

Please take notice that, pursuant to Rule 30(b)(6), Plaintiff will take the depositions via oral examination, to be recorded by stenographic means and by video, at CAIR's office—453 New Jersey Avenue, Washington DC 20003 at 9 AM EST on February 23.  Defendant TSC is hereby requested to designate the person or persons with knowledgeable and prepared to testify on behalf of the defendant concerning the subject matter outlined below.

### Deposition Topics

(1)  The purposes served by the Selectee List, the No Fly List, and the Terrorist Screening Database

(2)  Information regarding how well the Selectee List, the No Fly List, and Terrorist Screening Database serve those purposes

(3)  The nomination process of the Selectee List, the No Fly List, and the Terrorist Screening Database

(4)  The process by which TSC removes persons from the Selectee List, the No Fly List, and the Terrorist Screening Database

(5)  All information regarding the effectiveness of the Selectee List, the No Fly List, and the Terrorist Screening Database

(6)  All information regarding whether the Selectee List, the No Fly List, and the Terrorist Screening Database has ever stopped or deterred an act of terrorism

(7)  All information TSC possesses about how non-federal government entities utilize TSDB information

(8)  All information regarding "handling codes" assigned to persons on the Selectee List, the No Fly List, and the TSDB.

(9)  All information regarding all uses of TSDB information

(10) The legal authority that TSC relies upon to operate and disseminate the Selectee List, the No Fly List, and the Terrorist Screening Database

(11) All information regarding how persons become authorized to submit watch list nominations to the TSC, how persons are trained to submit nominations to TSC, how TSC authorizes and trains

persons to accept or reject nominations, how TSC reviews nominations to determine whether to accept or reject them

(12) Technical information regarding the database server systems and client programs used by persons who participate in the watchlisting process

(13) Technical Information regarding the databases utilized to operate and disseminate the TSDB, Selectee List, and No Fly List, including how persons access these databases, and how they become authorized to access those databases

(14) Technical information regarding the information architecture and usage policies that pertain to the Selectee List, the No Fly List, and the TSDB

(15) All information regarding what entities have access to TSDB information of any kind

(16) Agreements with all entities regarding TSDB information

(17) All information regarding how TSC determines who has access to TSDB information and how TSC makes decisions regarding access to TSDB information

(18) All information regarding how all entities screen persons against the Selectee List, the No Fly List, and the TSDB.

(19) All technical information regarding how changes to the Selectee List, the No Fly List, and the TSDB are made and what data or records are created by these changes

(20) All technical information regarding how persons make queries of any kind regarding the Selectee List, the No Fly List, or the TSDB, and what records TSC's systems create when a person makes such a query.

(21) The leaked copy of the Watchlist Guidance 2013, TSC's response to that leak, and the consequences TSC believes are attributable to that leak.  That leaked document and the article describing it are available here: https://theintercept.com/2014/07/23/blacklisted/

(22) The role that the Watchlisting Guidance plays in the watchlisting process

(23) All information regarding the inclusion standards regarding the Selectee List, the No Fly List, and the TSDB

COUNCIL ON AMERICAN-
ISLAMIC RELATIONS

____/s/_____
Gadeir I. Abbas, Esq.
VA Bar No.: 81161
CAIR National Legal Defense Fund
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787
Facsimile: (202) 488-0833
Email: gabbas@cair.com

*Licensed in VA; not in DC*
*Practice limited to federal matters*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

|  |  |
|---|---|
| Anas ELHADY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Case No. 1:16-cv-375 |
| | )     Hon. Anthony J. Trenga |
| Charles Kable, et al.,     ) | |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 2 –3 2/16/2018 Hearing Transcript**

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                        Alexandria Division




------------------------------:
                              :
ANAS ELHADY, et al.,          :
            Plaintiffs,       :
                              :
    -vs-                      :     Case No. 1:16-cv-375
                              :
                              :
CHARLES H. KABLE, et al.,     :
            Defendants.       :
                              :
------------------------------:
```

HEARING ON MOTIONS

February 16, 2018

Before:  John F. Anderson, Mag. Judge

APPEARANCES:

Gadeir I. Abbas, Counsel for the Plaintiffs

Amy Powell, Lauren A. Wetzler, Anthony J. Coppolino, and
Antonia Konkoly, Counsel for the Defendants

2

1          NOTE:  The case is called to be heard at 11:08 a.m.

2    as follows:

3          THE CLERK:  Anas Elhady, et al. versus Charles H.

4    Kable, et al., civil action number 16-cv-375.

5          MR. ABBAS:  Good morning, Your Honor.  Gadeir Abbas

6    appearing for the plaintiffs.

7          THE COURT:  Good morning.

8          MR. WETZLER:  Good morning, Your Honor.  Lauren

9    Wetzler on behalf of the defendants.  With me at counsel table

10   are Amy Powell, Anthony Coppolino, and Antonia Konkoly from the

11   Federal Programs Branch.

12         Mr. Coppolino will be arguing the motion with respect

13   to Ms. Konkoly.  Ms. Powell will be arguing the remaining

14   motions.

15         THE COURT:  Okay.  All right.  Well, I'm going to cut

16   to the chase on two of these motions that are in front of me.

17         On the motion having to do with the protective order

18   having to do with the deposition that was taken, honestly, I

19   read the entire deposition transcript.  And I've got to say

20   that the portion of that transcript that begins on, I believe,

21   page 18 dealing with the signatures on the verification pages,

22   it's a tough call as to whether it crossed the line or not.

23         I expect more from the Government in dealing with

24   depositions like this.  You may disagree with an answer to a

25   deposition, but you don't argue with a witness.  You know, that

1    was covered multiple times.

2           Obviously, I couldn't catch the tone of how that was

3    going back and forth, but, you know, if you don't agree with a

4    witness, you get an answer, you confirm that's the answer, and

5    then you move on.  You don't argue with the witness during a

6    deposition.  You know, I have the sense that that was

7    recognized later on and atonement was made.

8           The issue having to do with the interrupting, you

9    know, I'm giving counsel the benefit of the doubt on that that

10   it was a technical issue.  And I honestly think it was.  I

11   appreciate the Government making the accommodation to do this

12   by video and not requiring the plaintiff to be here as the

13   plaintiff otherwise would have had to be here.

14          And there was a lot of back and forth.  I mean, the

15   witness was interrupting counsel.  Counsel was interrupting --

16   well, talking over.  I don't mean interrupting.  I think given

17   the lag in the situation, it was probably a technical issue and

18   not necessarily an intent of either counsel or the witness to

19   interrupt one over the other.

20          But, you know, this is -- these depositions are fact-

21   finding endeavors.  They're not -- they shouldn't really be

22   adversarial.  I mean, reading through is, you know, where did

23   you fly to?  What did you do?  Were you alone?  Were you this,

24   were you that?  I mean, it is just mere fact-finding

25   information.  You don't need to argue with the witness over

4

1    this.  What did you do to prepare?  Was it on the passport?  Is

2    it in your answers to interrogatories?

3            I mean, it can be done in a very matter of fact way,

4    I think, and not trying to be antagonistic.  And, you know, the

5    issue, I think I dealt with the issue before, and it was

6    mentioned in the papers, you know, about illegal drug use.

7    And, you know, I think we all know that, you know, you can only

8    talk about issues having to do with anything that would impact

9    their ability to respond appropriately during the discovery --

10   during the depositions.

11           So, you know, I have reviewed it.  I don't think

12   under -- reading the entire transcript and under the

13   circumstances it's appropriate for me to enter a protective

14   order, but I do -- I do caution both sides.  I mean, this --

15   you know, you will have time to argue your case.  Just get the

16   facts out in these depositions and move forward.

17           So I'm going to deny the motion for a protective

18   order.

19           On the motion to produce and motion to strike, I've

20   reviewed the pleadings that have been filed, including the

21   reply that we got yesterday, and have looked over the

22   authorities that have been cited.

23           And as I understand, looking at the privilege log

24   that was asserted, that this document was actually produced

25   back in, I believe it was -- was it November of 2017 while this

1    case was pending.  So when this first came up, I thought there

2    was some issue as to this being more of a diary situation than

3    something else.

4         But I don't see how there has been a waiver by having

5    someone to assist in typing material that is being provided to

6    that person to type.  You know, this is, again, an individual

7    who testified -- and obviously he testified in English, but he

8    also testified that English wasn't his first language, and he

9    had some difficult language barrier issues.  And even the small

10   part of the deposition that was provided in the moving papers,

11   it is indicative of somebody who might have been a little

12   uncomfortable in doing that.

13        And I honestly don't see there being any substantial

14   difference in him having gone to plaintiffs' counsel's office

15   and getting one of plaintiffs' counsel's secretaries or

16   assistants or something like to help him type up a document so

17   that it could be prepared.

18        So I'm going to deny the motion to compel the

19   document listed on the privilege log in the first part.

20        The motion to strike, you know, I was clear that, you

21   know, by January 19 the plaintiffs had to identify those

22   instances in which they were alleging any disruption in their

23   flights.  If you didn't do it by January 19, it's not coming

24   in.

25        So, you know, my concern was -- and again, I keep

6

1    going back to the numerator/denominator scenario, is we needed

2    to have the numerator locked in by January 19.  If there were

3    more flights that they came to find out about -- that is that,

4    you know, upon further reflection, I now remember that I went

5    from Detroit to Montreal or from whatever, you know, to make

6    the denominator bigger, then, you know, that is what I was

7    intending when I indicated that they had to go back and look

8    and could supplement.  Not that they could supplement those

9    flights in which they deemed to have had issues.

10          So I'm going to grant the motion to strike the trips

11   that -- the description of disruptions or inconveniences on

12   trips that had not been identified by January 19, 2018.

13          That brings us to what, you know, I really feel is

14   the -- certainly the more substantive and significant motion,

15   and that's the motion having to do with the 30(b)(6)

16   deposition.

17          And I guess I should probably hear from counsel for

18   the defendants first on that, and then I'll hear from the

19   plaintiff.

20          MR. POWELL:  Thank you, Your Honor.  Amy Powell for

21   the Government.

22          THE COURT:  Thank you.

23          MR. POWELL:  The plaintiffs' sole remaining claim is

24   their procedural due process claim, which will eventually

25   require the Court to consider whether they have been deprived

1   of a liberty interest and, if so, whether the process provided

2   to date is sufficient.

3          At the last -- what we thought would be the last

4   possible moment in discovery, they served a set of 23 sprawling

5   30(b)(6) topics that we think are confusingly worded, vague,

6   and in many parts tangential to the actual relevant topics in

7   this case.

8          We are not proposing that a deposition should not

9   take place.  We have proposed eliminating about five general

10  areas of concern and condensing the rest into a reasonably

11  worded set of topics that is concise and clear as to what we

12  would have to prepare the witness for.

13         But about five areas of general concern we think

14  should be eliminated altogether because they are too far afield

15  from the actual issues in this case.

16         The first we raised are the technical information

17  topics.  There are about five topics that ask specifically for

18  technical information, and they've asked for an IT expert to

19  explain how the TSDB, the Terrorist Screening Database, is

20  created, maintained, and queried.  The topics are so vaguely

21  and confusingly worded, they could require virtually any

22  technical information.

23         What plaintiffs' position focuses in on specifically

24  that they want access to are the database's data security

25  protocols, and who gets access to it, and how, and specifically

1   how that information is protected.  Not only is that

2   information not relevant to their procedural due process claim

3   that remains, it's among the most sensitive information that

4   could actually be asked about that database.

5          THE COURT:  Well, if it -- I think you recognize that

6   they have the right to know who this information is provided

7   to.  That is covered by one of the topics that you are

8   proposing.

9          MR. POWELL:  Yes, yes, Your Honor.  And we have tried

10  to propose a topic, I believe topic number 6, which covers

11  generally the sharing of information from the TSDB -- while

12  some of that information or the details in that information are

13  privileged, generally we have proposed that as a topic area

14  that can be explored.

15         THE COURT:  So --

16         MR. POWELL:  What we don't think is relevant are the

17  data security protocols and other IT information about the

18  database which don't have any relevance to their claims.

19         Next, and perhaps --

20         THE COURT:  Well, let me just go through this to make

21  sure I'm comfortable with what you're saying.  If -- and I know

22  the answer to this, but I just want to make sure you understand

23  where I'm coming from.

24         If this database was not kept in a secure environment

25  and anyone could have access to it by merely Googling it and,

1   you know, clicking a link, that would be a problem, right?

2              MR. POWELL:  Sure, yes, that would be a problem.

3              THE COURT:  That would be, you know, giving

4   unfettered access to that arguably sensitive information.

5              MR. POWELL:  Yes.

6              THE COURT:  So why isn't some investigation as to

7   what the parameters, or what one has to do, or how one -- and I

8   don't mean like the secret code or anything like that, but what

9   steps are taken to reasonably protect that information so that

10  it can only be accessed by those who you decide has access to

11  it?

12             MR. POWELL:  I think defendant is willing to testify

13  to who has access to that information in general.  I don't

14  think that requires testimony about the specific technical

15  safeguards that are in place that prevent other people from

16  having access to it.

17             If there were flaws in those technical safeguards,

18  that would not be a procedural due process problem.  It would

19  be another problem altogether.  And the fix for it would not be

20  giving plaintiffs additional process.  It would be additional

21  data security to make sure that it could not be Googled.

22             Their claims for additional process, in other words,

23  are not advanced by -- even if it were true, that the

24  Government just exercised terrible data security, which there

25  is no reason to think is true --

10

1          THE COURT:  And I don't want you to take that the

2    wrong way.  I'm just trying to go through why I think at least

3    some discussion as to what is -- and I'm trying to do it in a

4    broad way so that there is testimony that whoever has access

5    has to go through a security type protocol to get that

6    information.  That it is, granted, maintained in a secure

7    environment and not available to the public, something in that

8    range.

9          MR. POWELL:  I think that could be covered without

10   the sort of technical information they're seeking.  I take Your

11   Honor's point to mean that it seems to be relevant that there

12   is some sort of secure environment, but that doesn't seem to

13   require testimony about specific security protocols.  Only that

14   there are in fact protocols that prevent the public from having

15   access to it.  And that I think we could provide.

16          THE COURT:  Okay.

17          MR. POWELL:  But not using necessarily an IT expert.

18          THE COURT:  Okay.

19          MR. POWELL:  The second topic we proposed eliminating

20   altogether were the Handling Codes.  Plaintiffs opposition

21   makes this sound more like a miscommunication than anything.

22   But I don't understand how the term "Handling Codes"

23   corresponds at all to how they have defined it, which is

24   classification of people within the TSDB.  Those classification

25   or substantive classification decisions, like the Selectee

1    List, could conceivably be relevant to be sure, and I think are

2    amply covered by defendants' proposed topics in a way that they

3    are not covered by plaintiffs' proposed topics on Handling

4    Codes.

5          There are such things as Handling Codes which

6    different law enforcement agencies use for different purposes,

7    but those would not, we think, be within the proper scope of

8    discovery here.

9          Third, plaintiffs have proposed a topic or perhaps

10   two topics about what purports to be a stolen and leaked copy

11   of the 2013 Watchlisting Guidance that has been online.

12         As an initial matter, the actual 2013 Watchlisting

13   Guidance, even if it were authentic and not privileged in any

14   way, is no longer in effect and would not be a relevant topic

15   for a deposition since plaintiffs seek prospective relief.

16         Moreover, we think that if they wanted to try to

17   force the Government to authenticate or disclaim a document

18   that was stolen or purportedly stolen and leaked online, there

19   are ways that they could have done so in this list to date, and

20   they have not done so.

21         I think there is an orderly course of discovery that

22   could have been followed here if they thought that was relevant

23   and they needed to force the Government to authenticate or

24   disclaim.  They have not done so.  And I don't think that the

25   deposition topic makes sense in that context.

1          THE COURT:  Well, I guess -- and I'm trying to think

2     through this one as well, and maybe you can help me.  You have

3     asked for any disruptions that the plaintiffs have had for a

4     ten-year period of time.

5          MR. POWELL:  Yes.

6          THE COURT:  Right.  Why wouldn't the status of the

7     Watch List or information relating to what the guidelines were

8     on the Watch List that was in place at the time that they had

9     those disruptions be significant?

10          MR. POWELL:  So the disruptions that they experienced

11    we think are relevant to whether or not plaintiffs can

12    establish deprivation of the liberty interest.  I don't think

13    the policies and procedures that were in place ten years ago

14    actually go to that.

15          The policies and procedures that are in place now are

16    relevant because they are seeking to change them in some way.

17    And we have offered up a way to discuss those.  There is an

18    unclassified, nonprivileged document that summarizes

19    watchlisting policies and procedures.  And of course,

20    plaintiffs always have the option of moving to compel the

21    current version of the Watchlisting Guidance, which they have

22    not done to date despite having it on a privilege log as of

23    mid-November.

24          THE COURT:  Okay.

25          MR. POWELL:  The next topic that we propose to

13

1  exclude was the one that is purely about the legal authorities

2  for the watchlisting topic, does not seem to be an appropriate

3  area of fact deposition by --

4          THE COURT:  Well, why aren't they entitled to know

5  what you believe the basis is for your right to disburse this

6  information to who you are disbursing it to?

7          MR. POWELL:  Because it is purely a legal question.

8  Even if a witness testified as to a legal authority that was

9  wrong or incorrect, there could be a legal authority for what

10 they do.  The factual testimony of what they believe doesn't

11 actually change the outcome of the legal question, I don't

12 think.

13          THE COURT:  Well, I mean --

14          MR. POWELL:  Even if they thought that the Magna

15 Carta provided authority for dissemination of the Watch List,

16 that wouldn't change whether or not they had authority for

17 dissemination of the Watch List.

18          THE COURT:  But then they'd know what it is that

19 you're going to be arguing was the legal authority for

20 disseminating.

21          I mean, you know, we've got to get this ready -- case

22 in a position so that the parties can present it to the

23 District Judge for a decision.  And I think the plaintiff is

24 going to -- you know, has a certain -- or the plaintiffs, have

25 the ability to -- or should have the ability to understand what

1    your legal position is as to what you have the right to do and

2    the basis for that right to do it.

3              Whether a 30(b)(6) deposition is the right way to do

4    that, I don't know.  But, you know --

5              MR. POWELL:  My understanding is that a 30(b)(6)

6    deposition is still a factual deposition of a witness who has

7    facts to present, not legal arguments.

8              Maybe it would be appropriate through some

9    interrogatory or other manner, just -- it doesn't seem

10   appropriate through this means.

11             THE COURT:  Okay.

12             MS. POWELL:  The last category we proposed

13   eliminating altogether were several of their topics

14   incorporated discussions of the standards and processes that

15   apply specifically to the No Fly List.

16             As Judge Trenga found, none of the plaintiffs any

17   longer claim to be on the No Fly List or to have any difficulty

18   flying.  Those processes are in fact distinct and present

19   distinct issues, we think, and there is no reason we should

20   have to prepare a witness on them, which is an additional

21   burden.

22             With respect to the remainder of the topics, we have

23   tried to categorize them and make sure they are covered in the

24   alternative topics we proposed simply because we found their

25   topics confusing and vaguely worded, and they suggested that

15

1    TSC would be binding the Government as to things TSC does not

2    have knowledge or authority to bind the Government for.

3              I'm happy to discuss those individually --

4              THE COURT:  No.  I mean, I've looked through them.  I

5    think I understand those issues.  I need to hear a little bit

6    more from the plaintiffs' counsel as to their concerns relating

7    to them.

8              MR. POWELL:  Okay.

9              THE COURT:  Okay.  So, you know, I'm faced with a

10   notice of deposition that was served with a number of topics

11   that you're asking someone to come in and testify about.  The

12   idea that they're including things like the No Fly List

13   information causes me some concerns, and I don't understand why

14   in crafting what you knew was getting late in the game -- this

15   wasn't like a, you know, I've got plenty of time to send out,

16   you know, something and then let's negotiate over a month or a

17   period of time.  I mean, this was sent out very close to the

18   end of the discovery period with the understanding this was

19   going to have to be done, and it was in response to one of the

20   other times that we were here.

21             Sending out what you have sent out seems to -- and,

22   you know, there are two ways for me to deal with it.  One is to

23   just not try and be accommodating and just quash it, or try and

24   be somewhat sensitive as to trying to find out what it is you

25   really are trying to get at and why I think -- what you really

1  need.

2          And I think the Government has tried in good faith to

3  come up with, you know, what it believes are topics in which

4  there are -- they feel comfortable that they could adequately

5  prepare someone to testify about those topics in a 30(b)(6).

6          So with that preface, let me just hear a little bit

7  more from you as to either the specific topics that the

8  Government is trying to pull out of this and why the language

9  that they have set out in their eight or so topics as an

10  alternative that they are willing to produce somebody for in

11  short order wouldn't be sufficient for you.

12          MR. ABBAS:  Yes, yes, Your Honor.  And to

13  acknowledge, the Government's proposed topics do substantially

14  overlap unquestionably with the topics that plaintiffs have

15  served.  And plaintiffs recognize that 23 topics, generally

16  speaking, is a large number of 30(b)(6) topics.

17          I think one thing that counsels the language that

18  plaintiffs proposed in their 23 topics versus the language that

19  the defendants proposed in their eight topics, is that it's 23

20  topics that cover all 30(b)(6) deponents.  So there is not 23

21  different topics for the CBP, TSA, FBI depositions.  We're

22  really -- the plaintiffs are simply seeking for a basket of

23  information encompassed by those 23 topics.

24          And to be frank, the plaintiffs don't know and have

25  no idea who in those agencies has the information that

1    plaintiffs are looking for.  It's -- as part of the meet and

2    confer process with regards to these topics, TSC took the

3    position that it really doesn't know who all has access to the

4    TSDB information.  That it doesn't control what the purposes

5    are to which the TSDB information is put to.

6              That's news to plaintiffs.  And I think it counsels

7    against taking their language and utilizing our language

8    instead.  And some of the deposition topics are very, very

9    specific and are questions that we'll ask directly.  And we

10   tried to be as specific as possible about how TSC determines

11   who has access to TSDB information.  We don't know whether TSC

12   actually makes a determination or they just willy-nilly provide

13   that access to TSDB information.

14             It looks like, as far as plaintiffs can tell, that

15   they're disseminating it without any type of controls.  They're

16   exporting TSDB data without the ability to change the exported

17   information later if it's corrected.  And so, that's why I

18   think a broad control of the plaintiffs' topics is warranted.

19             But with regards to the five specific categories --

20   and I agree with the defendants that those are the -- there was

21   a good meet and confer process that I think did narrow to a

22   good extent the amount of the dispute.

23             But the technical information, for example, that

24   plaintiffs are looking for is primarily -- is for the purpose

25   of determining dissemination issues.  Determining the

18

1    consequences that are imposed on persons that are listed.  And

2    they're a high level overview of the watchlisting process

3    which -- we don't know -- we'll ask at the deposition, but were

4    -- certainly prepared for purposes of this litigation, can't be

5    just taking that face value.  Our sense going in is that the

6    Terrorist Screening Center really does not know who all has

7    access to TSDB information.  The Terrorist Screening Center

8    does not know what all the consequences are that are visited

9    upon people that are on the list.

10            And all of those things are -- go to one of the

11   Matthews factors, the risk of erroneous deprivation.  Is the

12   deprivation somehow being calibrated to the threat that is

13   being determined.  And a detailed understanding of how the

14   Watchlisting System works at a technical level will give

15   insight into whether the decisions about how to screen people

16   are completely divorced from the decisions about which

17   nominations to accept.

18            We believe that they are -- because, you know, in --

19   there was a discovery period in Mohamad's case that was before

20   Judge Trenga, and we looked at TSDB nominations over a

21   mutliyear period, and in 98.96 percent of TSDB nominations over

22   a multiyear period, I believe it was three or four years, were

23   accepted to the Terrorist Screening Database.

24            So the plaintiffs believe that through these 23

25   topics that TSC or the other agencies have information to

1    testify to, we'll be able to show that the Watch List is

2    100 percent ineffective, that the dissemination is unknowable

3    because it's so widespread.

4              THE COURT:  Okay.  Okay.

5              MR. ABBAS:  Your Honor, can I -- can I move on to

6    discuss the Watchlisting Guidance in 2013 and why that's

7    important?

8              THE COURT:  Yeah.

9              MR. ABBAS:  The Government is, in defending -- in

10   refusing to provide kind of basic morsels of information, like

11   inclusion standards, is claiming that to disclose those things

12   would cause some consequences to law enforcement operations.

13   Would involve some divulging of state secrets that would harm

14   national security.  And we know -- I mean, the Watchlisting

15   Guidance of 2013, it's a self authenticating document.  It's

16   clearly -- it is what it purports to be certainly, and there is

17   a whole host of indications in that document that

18   self-authenticate it.

19              And so, we want to know, have they made substantial

20   changes from the 2013 guidance to the 2015 guidance.  They

21   don't need to take a position on the authenticity of the leaked

22   document to tell us whether there have been substantial changes

23   to -- from the 2013 guidance.

24              We have a question that we would like to ask them

25   during the deposition, is the inclusion standard for the

1  Selectee List the same today as it was in 2013?  And we know,

2  and our sense from seeing how the Watchlisting System has

3  operated in the past several years, is it is the exact same

4  standard as it was in 2013.

5          But that question, again, does not require them to

6  acknowledge the authenticity of the document, and should be --

7  and is an appropriate basic question to ask at a deposition.

8          The final point, Your Honor, that I will make is with

9  regards to Handling Codes.  So the plaintiffs' position is

10  there really isn't such a -- there really isn't such a thing as

11  the No Fly List.  The No Fly List is the colloquial term that

12  the people in the Government and people on the No Fly List

13  refer to -- looks like a set of annotations within the

14  Terrorist Screening Database, just like the Selectee List is

15  just a set of annotations in the Terrorist Screening Database.

16          It appears that there are other types of annotations

17  in the Terrorist Screening Database, including an armed and

18  dangerous annotation in the Terrorist Screening Database that

19  if you are so annotated, every time you cross the border you

20  will be pulled out of your car at gunpoint and handcuffed and

21  detained for hours.  That happens automatically.

22          And the screeners actually have no idea why they're

23  doing it.  They're not told why they need to handcuff and pull

24  out of the person's car at gunpoint.

25          And so, they've acknowledged that there are Handling

21

1    Codes.  We have very little idea about how those handling codes

2    actually work.  And so, that's like a classic 30(b)(6)

3    deposition topic where there is a general area of relevant

4    interest that requires back and forth between a deponent and

5    the questioner to gather the factual information that will

6    ultimately be relevant to the plaintiffs' claims.

7             THE COURT:  Okay.  Thank you.

8             Well, you know, this is, again, an interesting issue,

9    and I appreciate the parties' briefing on this.

10            I think in -- for the most part, that the Government

11   has done an admirable job in trying to condense this into a

12   list of topics that construed fairly broadly -- and I want to

13   make that clear -- cover the information for the most part that

14   is not well described in the 23 topics that have been set out

15   in the Rule 30(b)(6).

16            A couple of tweaks to that.  And I don't want to, you

17   know -- I'm not going to try and reword them, but I want to

18   make it clear that in the conversations, like in paragraph 6,

19   the TSC sharing of information with other entities, I think it

20   is going to be appropriate to get on a very high level that

21   there is security protocols, and not the specific security

22   protocols, but some issue that deals with how that information

23   is stored and only shared in a secure environment.  Something

24   on a very high level there.  Not necessarily, you know, the

25   details on a granular basis, how that goes.

1          The dealing with the other issues that have come up

2     -- so I think that kind of takes care of the technical issue

3     there.

4          You know, I agree with the Government at this time

5     that the questioning about the 2003 Watchlist Guidance isn't

6     that direct -- 21, that they have done there, I don't think is

7     appropriate.

8          I think questions about, you know -- and I'm trying

9     to find:  The measures undertaken to assure the accuracy and

10    the reliability.  You know, I'm concerned that the Government

11    may take the position that this is a snapshot of what's done

12    exactly today, and not what -- to some extent what the history

13    is of this.

14         I mean, I'm -- I think there needs to be some

15    discussion as to how this has evolved over time, if it has

16    evolved over time.  And what period of time.

17         So I don't, you know, I don't think that just -- in

18    their role in doing things, this isn't their -- this has to be

19    put in some context of a continuum, not just on the day that

20    the deposition gets taken.

21         So, you know, I for the most part am -- well, I guess

22    I really am going to be granting the motion for a protective

23    order to limit the topics to the eight that have been set out.

24         You know, the legal authority issue is one that

25    troubled me a little bit.  You know, I -- and it's one of these

1    things where I'm not -- I don't really think that's the right

2    topic for a 30(b)(6) deposition.  But I do think it's something

3    that the plaintiffs are entitled to know even during the

4    discovery phase.

5            So what I'm going to do is I'm going to give leave

6    for the plaintiff to serve one additional interrogatory that

7    asks a question somewhat like that.  And then, you know, a

8    written response can be prepared that outlines, or objects, or

9    whatever appropriate, but I don't think that's something that

10   needs to be done in a 30(b)(6) deposition.

11           All right.  You know, I've got one motion to

12   continue, and then I've got another joint motion for an

13   extension of the discovery deadlines.

14           You know, I do think it's appropriate to allow the

15   Groh deposition to be taken on March 1.

16           I am confused about the one that got filed last

17   night.  Who's going to address that?

18           MR. ABBAS:  I am happy to go first, or if you would

19   like to go first --

20           THE COURT:  All right.  I mean, this is -- first of

21   all, it's got different dates in it that, you know, you're

22   asking for.  I don't understand that.  I don't understand how

23   you anticipate this would impact the other timing in the case.

24           You know, you've got -- one part you say you want to

25   go until the 23rd.  Another part you say you want to go until

1    the 30th.

2          You know -- so what is it you're asking for and why?

3    And why do you think that -- and this would obviously be a

4    second extension of the discovery period -- is appropriate,

5    other than that the Groh deposition that I've already taken

6    care of?

7          MR. POWELL:  So to be clear, we're asking for the

8    23rd.  I realize the 30th was left in there in one place.  That

9    was a clerical error.  The parties agreed to change those at

10   the last minute.

11         The parties have a number of outstanding depositions

12   that we have not been able to schedule.  Defendants believe

13   that defendants have been diligent in attempting to schedule

14   plaintiffs' depositions since sometime last October.  And that

15   we have been landed with these new notices of depositions on

16   defendants at the last possible moment in discovery.

17         That said, we have agreed to make this joint motion

18   for an extension in order to get them done.

19         THE COURT:  So this is only for the depositions?  All

20   the written discovery issues are not being extended for any

21   period of time?  Okay.

22         MR. POWELL:  That's correct.

23         THE COURT:  We are under that -- so this is only, and

24   only for depositions that have currently been noticed?

25         MR. POWELL:  Yes.

1       THE COURT:  So we're not opening up discovery for --

2  other than the one interrogatory that I have mentioned here

3  today.  Written discovery ends on the current timetable that we

4  have talked about?

5       MR. POWELL:  That's correct.

6       THE COURT:  No new deposition notices can be sent.

7  So it's only those that have been noticed to date to be

8  rescheduled at a time that would be concluded no later than

9  March 23?  Is that -- is that --

10      MR. POWELL:  Yes.

11      MR. ABBAS:  Yes, Your Honor.

12      THE COURT:  -- what we're talking about here?  How

13  does that impact the parties' ability to go to the final

14  pretrial conference on March 15?

15      MR. POWELL:  Do you want to field that one?  Because

16  I don't know.

17      MR. ABBAS:  Sure.  Your Honor, the plaintiffs

18  anticipate filing for summary judgment, and believe that this

19  case is resolvable on the papers at summary judgment.

20      And so, it's -- there are -- the Government will be

21  serving discovery responses next week.  We have discovery

22  responses to serve next week as well.  I imagine that there

23  might be some additional conflicts that arise.

24      The hope I think between both parties is that the

25  30(b)(6) -- the 30(b)(6) depositions will narrow the scope of

1   the dispute for written discoveries.  But it would be difficult

2   to wrap up discovery -- you know, even if we take -- even if

3   Your Honor grants the extension, it will be difficult to, you

4   know, prepare summary judgment motions while we're conducting

5   the 30(b)(6) depositions in March and the rest of the

6   plaintiffs' depositions.

7            So I don't believe that there is any type of trial

8   date set, is there, Your Honor?

9            THE COURT:  Well, no.  But in -- I'll tell you what

10  I'm going to do, and I'm just going to cut to the chase because

11  I am not going to move the final pretrial conference.  I am

12  going to indicate that the parties will appear in front of

13  Judge Trenga for the final pretrial conference.  That the

14  26(a)(3) disclosures won't be due at the final pretrial

15  conference.  And a timing for having them due and any briefing

16  on dispositive motions will be discussed with the District

17  Judge at the final pretrial conference.

18           The one thing, and I'll tell you why I'm doing that.

19  Is I want Judge Trenga to be in a position to set a trial date.

20  And if I delay the final pretrial conference another month,

21  your trial date is going to be bumped down.  And given we're

22  down a couple of judge from what we were several months ago,

23  the trial dates are getting longer and longer, and I want you

24  to get in line in March to get your trial date, which will

25  probably be more in the May/June timeframe than what typically

1    would have been the April/May timeframe.

2             So I'm going to grant it with that understanding.

3    That, you know, it's only for the depositions that have been

4    noticed to be concluded by the earlier date -- I guess it was

5    the 23rd.  That the parties are still will be appearing at the

6    final pretrial conference.  But I am not going to require you

7    to do your list of witnesses and list of exhibits that you

8    typically would need to do at a final pretrial conference

9    because I think you will need to finish up the depositions to

10   make sure that you've got that taken care of.  Okay?

11            All right.  Anything else?

12            MS. POWELL:  One quick question.

13            THE COURT:  Yes, ma'am.

14            MS. POWELL:  Which is just that plaintiffs -- sorry.

15   Plaintiffs still anticipate filing their motion to compel.  To

16   the extent that comes and necessitates additional briefing or

17   production of documents thereafter, I suppose that could change

18   dates as well.

19            THE COURT:  Well, hopefully not.  I mean, if they

20   file it, they file it.  We decide it.  If I order documents

21   produced, I order documents produced.  If I don't, then, you

22   know, I don't.  But --

23            MS. POWELL:  Then --

24            THE COURT:  Obviously, when I say written discovery,

25   I mean, you know, there are no new interrogatories being

1    served.   There are no new document requests being served.

2    There are, you know, no -- that we're now -- we can fight over

3    what has been served, but we can't start serving new document

4    requests and things like that.   Okay?

5              MS. POWELL:  Okay.

6              THE COURT:  Thank you.

7              NOTE:  The hearing concluded at 11:51 a.m.

8        -------------------------------------------------

9

10          C E R T I F I C A T E  of  T R A N S C R I P T I O N

11

12          I hereby certify that the foregoing is a true and

13    accurate transcript that was typed by me from the recording

14    provided by the court.  Any errors or omissions are due to the

15    inability of the undersigned to hear or understand said

16    recording.

17

18          Further, that I am neither counsel for, related to,

19    nor employed by any of the parties to the above-styled action,

20    and that I am not financially or otherwise interested in the

21    outcome of the above-styled action.

22

23                          /s/ Norman B. Linnell

24                          Norman B. Linnell

25                          Court Reporter - USDC/EDVA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| Anas ELHADY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 1:16-cv-375 |
| | )   Hon. Anthony J. Trenga |
| Charles Kable, et al.,         ) | |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 3 –Original Deposition Notices to TSA, CBP, FBI, compiled**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.*, | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHRISTOPHER M. PIEHOTA,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |

---

### NOTICE OF 30(B)(6) DEPOSITION OF DEFENDANT TRANSPORTATION SECURITY ADMINISTRATION

Please take notice that, pursuant to Rule 30(b)(6), Plaintiff will take the depositions via oral examination, to be recorded by stenographic means and by video, at CAIR's office—453 New Jersey Avenue, Washington DC 20003 at 9 AM EST on February 21, 2018. Defendant TSA is hereby requested to designate the person or persons with knowledgeable and prepared to testify on behalf of the defendant concerning the subject matter outlined below.

### Deposition Topics

(1) The purposes served by the Selectee List, the No Fly List, and the Terrorist Screening Database

(2) Information regarding how well the Selectee List, the No Fly List, and Terrorist Screening Database serve those purposes

(3) The nomination process of the Selectee List, the No Fly List, and the Terrorist Screening Database, and the role the TSA plays in that process

(4) TSA participation in any process that may lead to the removal of persons from the Selectee List, the No Fly List, and the Terrorist Screening Database

(5) All information regarding the effectiveness of the Selectee List, the No Fly List, and the Terrorist Screening Database

(6) All information regarding whether the Selectee List, the No Fly List, and the Terrorist Screening Database has ever stopped or deterred an act of terrorism

(7) All information TSA possesses about how non-federal government entities utilize TSDB information

(8) All information regarding "handling codes" assigned to persons on the Selectee List, the No Fly List, and the TSDB.

(9) All information regarding all uses of TSDB information and all dissemination of TSDB information.

(10) The legal authorities the TSA relies upon to participate in the operation and dissemination of the Selectee List, the No Fly List, and the Terrorist Screening Database

(11) All information regarding how persons become authorized to submit watch list nominations to the TSC, how persons are trained to submit nominations to TSC, how the TSA authorizes and trains persons to create and submit nominations, and what actions the TSA takes to ensure that the nominations submitted are in accordance with the law and agency policies.

(12) Technical information regarding the database server systems and client programs used by persons who participate in the watchlisting process

(13) Technical Information regarding the databases utilized to operate and disseminate the TSDB, Selectee List, and No Fly List, including how persons access these databases, and how they become authorized to access those databases

(14) Technical information regarding the information architecture and usage policies that pertain to the Selectee List, the No Fly List, and the TSDB

(15) All information regarding what entities have access to TSDB information of any kind

(16) Agreements with all entities regarding TSDB information

(17) All information regarding how FBI determines who has access to TSDB information and how FBI makes decisions regarding access to TSDB information

(18) All information regarding how all entities screen persons against the Selectee List, the No Fly List, and the TSDB.

(19) All technical information regarding how changes to the Selectee List, the No Fly List, and the TSDB are made and what data or records are created by these changes

(20) All technical information regarding how persons make queries of any kind regarding the Selectee List, the No Fly List, or the TSDB, and what records FBI's systems create when a person makes such a query.

(21) The leaked copy of the Watchlist Guidance 2013, FBI's response to that leak, and the consequences TSC believes are attributable to that leak.  That leaked document and the article describing it are available here: https://theintercept.com/2014/07/23/blacklisted/

(22) The role that the Watchlisting Guidance plays in the watchlisting process

(23) All information regarding the inclusion standards regarding the Selectee List, the No Fly List, and the TSDB

COUNCIL ON AMERICAN-
ISLAMIC RELATIONS

____/s/_____
Gadeir I. Abbas, Esq.
VA Bar No.: 81161
CAIR National Legal Defense Fund
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787
Facsimile: (202) 488-0833
Email: gabbas@cair.com

*Licensed in VA; not in DC*
*Practice limited to federal matters*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.*, | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHRISTOPHER M. PIEHOTA,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.*; | ) | |
| | ) | |
| Defendants. | ) | |

---

### NOTICE OF 30(B)(6) DEPOSITION OF DEFENDANT CUSTOMS AND BORDER PROTECTION

Please take notice that, pursuant to Rule 30(b)(6), Plaintiff will take the depositions via oral examination, to be recorded by stenographic means and by video, at CAIR's office—453 New Jersey Avenue, Washington DC 20003 at 9 AM EST on February 23, 2018.   Defendant CBP is hereby requested to designate the person or persons with knowledgeable and prepared to testify on behalf of the defendant concerning the subject matter outlined below.

### Deposition Topics

(1) The purposes served by the Selectee List, the No Fly List, and the Terrorist Screening Database

(2) Information regarding how well the Selectee List, the No Fly List, and Terrorist Screening Database serve those purposes

(3) The nomination process of the Selectee List, the No Fly List, and the Terrorist Screening Database, and the role the CBP plays in that process

(4) CBP participation in any process that may lead to the removal of persons from the Selectee List, the No Fly List, and the Terrorist Screening Database

(5) All information regarding the effectiveness of the Selectee List, the No Fly List, and the Terrorist Screening Database

(6) All information regarding whether the Selectee List, the No Fly List, and the Terrorist Screening Database has ever stopped or deterred an act of terrorism

(7) All information CBP possesses about how non-federal government entities utilize TSDB information

(8) All information regarding "handling codes" assigned to persons on the Selectee List, the No Fly List, and the TSDB.

(9) All information regarding all uses of TSDB information and all dissemination of TSDB information.

(10) The legal authorities the CBP relies upon to participate in the operation and dissemination of the Selectee List, the No Fly List, and the Terrorist Screening Database

(11) All information regarding how persons become authorized to submit watch list nominations to the TSC, how persons are trained to submit nominations to TSC, how the TSA authorizes and trains persons to create and submit nominations, and what actions the CBP takes to ensure that the nominations submitted are in accordance with the law and agency policies.

(12) Technical information regarding the database server systems and client programs used by persons who participate in the watchlisting process

(13) Technical Information regarding the databases utilized to operate and disseminate the TSDB, Selectee List, and No Fly List, including how persons access these databases, and how they become authorized to access those databases

(14) Technical information regarding the information architecture and usage policies that pertain to the Selectee List, the No Fly List, and the TSDB

(15) All information regarding what entities have access to TSDB information of any kind

(16) Agreements with all entities regarding TSDB information

(17) All information regarding how FBI determines who has access to TSDB information and how FBI makes decisions regarding access to TSDB information

(18) All information regarding how all entities screen persons against the Selectee List, the No Fly List, and the TSDB.

(19) All technical information regarding how changes to the Selectee List, the No Fly List, and the TSDB are made and what data or records are created by these changes

(20) All technical information regarding how persons make queries of any kind regarding the Selectee List, the No Fly List, or the TSDB, and what records FBI's systems create when a person makes such a query.

(21) The leaked copy of the Watchlist Guidance 2013, FBI's response to that leak, and the consequences CBP believes are attributable to that leak.  That leaked document and the article describing it are available here: https://theintercept.com/2014/07/23/blacklisted/

(22) The role that the Watchlisting Guidance plays in the watchlisting process

(23) All information regarding the inclusion standards regarding the Selectee List, the No Fly List, and the TSDB

COUNCIL ON AMERICAN-
ISLAMIC RELATIONS

\_\_\_\_/s/_____
Gadeir I. Abbas, Esq.
VA Bar No.: 81161
CAIR National Legal Defense Fund
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787
Facsimile: (202) 488-0833
Email: gabbas@cair.com

*Licensed in VA; not in DC*
*Practice limited to federal matters*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.,* | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHRISTOPHER M. PIEHOTA,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |

---

### NOTICE OF 30(B)(6) DEPOSITION OF DEFENDANT FEDERAL BUREAU OF INVESTIGATION

Please take notice that, pursuant to Rule 30(b)(6), Plaintiff will take the depositions via oral examination, to be recorded by stenographic means and by video, at CAIR's office—453 New Jersey Avenue, Washington DC 20003 at 9 AM EST on February 20, 2018.  Defendant FBI is hereby requested to designate the person or persons with knowledgeable and prepared to testify on behalf of the defendant concerning the subject matter outlined below.

### Deposition Topics

(1) The purposes served by the Selectee List, the No Fly List, and the Terrorist Screening Database

(2) Information regarding how well the Selectee List, the No Fly List, and Terrorist Screening Database serve those purposes

(3) The nomination process of the Selectee List, the No Fly List, and the Terrorist Screening Database, and the role the FBI plays in that process

(4) FBI participation in any process that may lead to the removal of persons from the Selectee List, the No Fly List, and the Terrorist Screening Database

(5) All information regarding the effectiveness of the Selectee List, the No Fly List, and the Terrorist Screening Database

(6) All information regarding whether the Selectee List, the No Fly List, and the Terrorist Screening Database has ever stopped or deterred an act of terrorism

(7) All information FBI possesses about how non-federal government entities utilize TSDB information

(8) All information regarding "handling codes" assigned to persons on the Selectee List, the No Fly List, and the TSDB.

(9) All information regarding all uses of TSDB information and all dissemination of TSDB information.

(10) The legal authorities the FBI relies upon to participate in the operation and dissemination of the Selectee List, the No Fly List, and the Terrorist Screening Database

(11) All information regarding how persons become authorized to submit watch list nominations to the TSC, how persons are trained to submit nominations to TSC, how the FBI authorizes and trains persons to create and submit nominations, and what actions the FBI takes to ensure that the nominations submitted are in accordance with the law and agency policies.

(12) Technical information regarding the database server systems and client programs used by persons who participate in the watchlisting process

(13) Technical Information regarding the databases utilized to operate and disseminate the TSDB, Selectee List, and No Fly List, including how persons access these databases, and how they become authorized to access those databases

(14) Technical information regarding the information architecture and usage policies that pertain to the Selectee List, the No Fly List, and the TSDB

(15) All information regarding what entities have access to TSDB information of any kind

(16) Agreements with all entities regarding TSDB information

(17) All information regarding how FBI determines who has access to TSDB information and how FBI makes decisions regarding access to TSDB information

(18) All information regarding how all entities screen persons against the Selectee List, the No Fly List, and the TSDB.

(19) All technical information regarding how changes to the Selectee List, the No Fly List, and the TSDB are made and what data or records are created by these changes

(20) All technical information regarding how persons make queries of any kind regarding the Selectee List, the No Fly List, or the TSDB, and what records FBI's systems create when a person makes such a query.

(21) The leaked copy of the Watchlist Guidance 2013, FBI's response to that leak, and the consequences TSC believes are attributable to that leak. That leaked document and the article describing it are available here: https://theintercept.com/2014/07/23/blacklisted/

(22) The role that the Watchlisting Guidance plays in the watchlisting process

(23) All information regarding the inclusion standards regarding the Selectee List, the No Fly List, and the TSDB

COUNCIL ON AMERICAN-
ISLAMIC RELATIONS

____/s/_____
Gadeir I. Abbas, Esq.
VA Bar No.: 81161
CAIR National Legal Defense Fund
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787
Facsimile: (202) 488-0833
Email: gabbas@cair.com

*Licensed in VA; not in DC*
*Practice limited to federal matters*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

_____

**Anas ELHADY, et al.,**                                      )
                                                            )
            **Plaintiffs,**                                  )
                                                            )
**v.**                                                       )            **Case No. 1:16-cv-375**
                                                            )            **Hon. Anthony J. Trenga**
**Charles Kable, et al.,**              )
                                                            )
            **Defendants.**                                  )
_____)

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 4 – 2.14.18 Email String to G. Abbas**

| | |
|---|---|
| **From:** | Powell, Amy (CIV) |
| **To:** | Gadeir Abbas; Roth, Dena M. (CIV); Konkoly, Antonia (CIV); Lena F. Masri, Esq.; Ahmed Mohamed; Jack Cooper; shereef@akeelvalentine.com |
| **Cc:** | Healy, Christopher (CIV) |
| **Subject:** | RE: Elhady -- additional depo notices |
| **Date:** | Wednesday, February 14, 2018 2:23:00 PM |
| **Attachments:** | image001.png |

All –

We have given further thought to two of Plaintiffs' proposals and are inclined to consent. Specifically, you asked if Defendants would consent to an extension of the discovery deadline for the purpose of completing depositions.  You also asked whether it made sense to table the issue of the FBI/TSA/CBP depositions and their appropriate scope until after the TSC deposition.   I think we can consent to both of those proposals as we understand them, with a few conditions:

1 –      The extension of discovery will be solely for the purpose of completing depositions noticed or scheduled to date (ie – Defendants are not consenting to additional depositions).

2 –      Defendants reserve all of their objections to the depositions of FBI/TSA/CBP.  We will not move to quash them solely on the basis that they are untimely but we can and will litigate the propriety of the noticed topics, and the proportionality of sprawling 30(b)(6) deposition topics at this late stage in discovery.  I understand that Plaintiffs are likely to want to "fill in the gaps" in TSC testimony using testimony from other agencies.  We think the "gaps" in *relevant* information may be quite limited and subject to discovery in some other, less burdensome way.  And maintain our objections to the topics, as explained on yesterday's call (and last Friday's motion).

3 –      The motion needs to be made ASAP, in time for it to be discussed, if necessary, at the hearing on Friday.  If you are ready to file it, we can send you some language reflecting the Government's position/consent.

I hope this approach permits us to resolve a few things without motions practice, at least for now. Please let us know what you think.

Amy Elizabeth Powell
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

---

**From:** Powell, Amy (CIV)
**Sent:** Tuesday, February 13, 2018 4:56 PM

**To:** 'Gadeir Abbas' <gAbbas@cair.com>; Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>; Lena F. Masri, Esq. <lmasri@cair.com>; Ahmed Mohamed <aMohamed@cair.com>; Jack Cooper <jCooper@cair.com>; shereef@akeelvalentine.com
**Cc:** Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** RE: Elhady -- additional depo notices

Gadeir –

The email is intended to memorialize today's conversation.

1.      Amri stipulation.  – Although you had raised the possibility of a stipulation between counsel instead of something signed by Plaintiff, the parties agreed that one signed by Plaintiff was more consistent with the Court's order and Plaintiffs' offer. You agreed that he will sign it and if you have any further changes to the draft we sent you, you will let us know ASAP, but otherwise, he may be able to sign it as soon as tomorrow.

2.      Withdrawal of plaintiffs –  We understand that Eraqi and JD1 still plan on stipulating to dismissal with prejudice.  You're waiting on a signature from JD1, and while you need further conferral with Eraqi, you do not anticipate any problems.

3.      Interrogatory responses (to defendants' second set).   We inquired about whether Plaintiffs anticipated standing on their "numbers of interrogatories" objections so that we could tee it up with the Court if necessary.  You're not completely certain but you are current attempting to track down all responsive information and anticipate that Plaintiffs will answer everything rather than standing on that objection.  That prediction was not a firm commitment but was made with a  "high degree of confidence."

4.      2 week extension:  We are considering your request for a 2 week extension and do not have an answer yet.   You confirmed that the extension would be solely for deponents already noticed, although you were continuing to give some consideration to deposing NCTC.   At one point, you indicated that it might be time to make an "emergency motion" to the Court.  I understand that timing is tight.  If you do so before we are able to get back to you, please just represent that Defendants have not yet taken a position and may want to file a response.

5.      Plaintiff scheduling:  we confirmed the following:
    o  Thurs 2/15 - Shahir Anwar
    o  Tues 2/20 – Osama Ahmed
    o  Thurs 2/22 - Anas Elhady
    o  Fri 2/23 – Halabi
    o  As for the remaining plaintiffs:
        ▪  You said that you intend to file this Friday 2/16 a motion to quash the noticed depositions of Saleem Ali (2/20) and ████ (2/21), despite those notices having been served 11 days in advance, and that you will not produce the plaintiffs on those noticed dates. We said that we will oppose that motion.
        ▪  You explained that Hakmeh is only available on 2/23 and you can produce him via VTC. We advised that EDMI is **not** available for VTC that day.
        ▪  You said that Amri is not available before close of discovery, so you would find a date for him within the 2 week extension you are seeking. I refer you back

to our response on that issue, *infra*.

- With respect to these four plaintiffs, Defendants are reserving on whether to move to dismiss for failure to appear/prosecute.

6.        New Defendants Depositions.  I indicated that we were considering moving to quash because the new notices (to FBI, TSA, CBP) are untimely, overbroad and duplicative, as well as the same concerns that animated our recent motion for a protective order to limit the topics directed at TSC.   The notices are obviously objectionable to Defendants in a number of ways, given that we are litigating an identical notice directed to TSC, and yet there is no time before the close of discovery to litigate those objections as applied to FBI, TSA, and CBP and hold a deposition.   That is particularly true in light of the need to prepare a witness on complex topics and work a deposition into the remaining busy discovery schedule and the generally busy schedules of a federal official, who has far more important duties.   Moreover, as I think I may have forgotten to mention on the phone, the notice to CBP was not even provided a full 11 days in advance and is presumptively untimely – it was served at or after midnight and is not timely.  But even you admitted that some of the topics are kind of a "reach" for Plaintiffs.

         I indicated that we might consider other options like trying to fill in gaps in TSC testimony after the fact with written discovery or much more limited topics.  In any case, the depositions cannot go forward as noticed, and we will move to quash unless we come to some agreement.   You indicated that you were fine with the TSC deposition going forward on March 1 as proposed and suggested that we reassess after that deposition.  That is fine, of course, but I don't know that we would concede that depositions noticed after 3/1 were timely.  We'll think further on this issue, and I hope you will as well.

7.        You raise a few other things.  First, you indicated an intention to try to move any hearing set for the 23rd.  I'm not sure that makes sense at this point, and we expect that we will have to notice our MPO for the 23rd in order to get it teed up and decided before discovery closes and in time to prep witnesses.  (I should probably note that you had previously indicated an ability and willingness to have Mr. Hakmeh's deposition proceed simultaneously with Mr. Halabi's on 2/23. Now that you know that Mr. Hakmeh's deposition will not happen that day, it seems to us that whoever was going to cover the deposition on your end should be free for any hearing scheduled that day, right?).  Second, you indicated an intention to file your long-anticipated motion to compel on Friday, although you will notice it for some future point.  Third, you indicated that you might end up having that hearing in Utah next week.  If that isn't moved and you need some specific relief or extension as a result, please let us know.

Amy Elizabeth Powell
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]

**Sent:** Tuesday, February 13, 2018 3:32 PM
**To:** Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Konkoly, Antonia (CIV)
<ankonkol@CIV.USDOJ.GOV>; Lena F. Masri, Esq. <lmasri@cair.com>; Ahmed Mohamed
<aMohamed@cair.com>; Jack Cooper <jCooper@cair.com>; shereef@akeelvalentine.com
**Cc:** Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>; Healy, Christopher (CIV)
<chhealy@CIV.USDOJ.GOV>
**Subject:** RE: Elhady -- additional depo notices

Take #2!

## Dial-in Number:
   (712) 451-0628

## Access Code:
   368427*

Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

Licensed to practice in VA, not in DC.
Practice limited to federal matters.

*[This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.]*

WEB | FACEBOOK | TWITTER

**From:** Roth, Dena M. (CIV) [mailto:Dena.M.Roth@usdoj.gov]
**Sent:** Tuesday, February 13, 2018 12:40 PM
**To:** Gadeir Abbas <gAbbas@cair.com>; Konkoly, Antonia (CIV) <Antonia.Konkoly@usdoj.gov>; Lena
F. Masri, Esq. <lmasri@cair.com>; Ahmed Mohamed <aMohamed@cair.com>; Jack Cooper
<jCooper@cair.com>; shereef@akeelvalentine.com
**Cc:** Powell, Amy (CIV) <Amy.Powell@usdoj.gov>; Healy, Christopher (CIV)
<Christopher.Healy@usdoj.gov>
**Subject:** RE: Elhady -- additional depo notices

Gadeir – happy to discuss this further at 3:30p, however, I will just say that we do not consider the link to his Facebook account to be a sufficient response consistent with your discovery obligations. We'd like to avoid litigating this, but will file a motion to compel if necessary.

---

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Tuesday, February 13, 2018 1:11 PM
**To:** Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>; Lena F. Masri, Esq. <lmasri@cair.com>; Ahmed Mohamed <aMohamed@cair.com>; Jack Cooper <jCooper@cair.com>; shereef@akeelvalentine.com
**Cc:** Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>; Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** RE: Elhady -- additional depo notices

Dena,

Please find here a link to Hassan's facebook account.  It's public and his social media posts about screening are in there: https://www.facebook.com/hshibly

We're working on other items, and I'll respond on a rolling basis as I find answers to your queries.

Regards,

Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**
‐
Licensed to practice in VA, not in DC.
Practice limited to federal matters.

*[This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.]*

WEB | FACEBOOK | TWITTER

---

**From:** Gadeir Abbas
**Sent:** Tuesday, February 13, 2018 11:37 AM
**To:** 'Roth, Dena M. (CIV)' <Dena.M.Roth@usdoj.gov>; Konkoly, Antonia (CIV)

<Antonia.Konkoly@usdoj.gov>; Lena F. Masri, Esq. <lmasri@cair.com>; Ahmed Mohamed
<aMohamed@cair.com>; Jack Cooper <jCooper@cair.com>; shereef@akeelvalentine.com
**Cc:** Powell, Amy (CIV) <Amy.Powell@usdoj.gov>; Healy, Christopher (CIV)
<Christopher.Healy@usdoj.gov>
**Subject:** RE: Elhady -- additional depo notices

Dena,

Please see my responses below.  Can we do the meet and confer at 3:30 est today?

Regards,

Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**
-
Licensed to practice in VA, not in DC.
Practice limited to federal matters.

*[This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any
review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or
authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this
message.]*

WEB | FACEBOOK | TWITTER

**From:** Roth, Dena M. (CIV) [mailto:Dena.M.Roth@usdoj.gov]
**Sent:** Tuesday, February 13, 2018 11:14 AM
**To:** Konkoly, Antonia (CIV) <Antonia.Konkoly@usdoj.gov>; Gadeir Abbas <gAbbas@cair.com>; Lena
F. Masri, Esq. <lmasri@cair.com>; Ahmed Mohamed <aMohamed@cair.com>; Jack Cooper
<jCooper@cair.com>; shereef@akeelvalentine.com
**Cc:** Powell, Amy (CIV) <Amy.Powell@usdoj.gov>; Healy, Christopher (CIV)
<Christopher.Healy@usdoj.gov>
**Subject:** RE: Elhady -- additional depo notices

Gadeir – hope you are doing well. A few items below for your attention. We would very much
appreciate a prompt reply on these.

- I am writing first and foremost to request a general meet & confer on some lingering issues
  such as the remaining deposition schedule, Plaintiffs' objections to Defendants' Second Set

of Interrogatories (that email chain reattached for your convenience), and the possible dismissals of Mr. Eraqi and JD1. We would like to kick off that conversation today, and are free to talk after 3:00pm ET this afternoon. Let us know when works for you.

We made those objections, but I do think that we'll end up—for the sake of avoiding additional disputes and to get the information you're asking for—just producing.  We're not there yet, but we're working towards it.  And we're close.

- Per the court's February 9 order, and our conversation following that hearing, I have attached for your consideration a draft stipulation for Mr. Amri. Given the short runway remaining, please let us know ASAP whether Mr. Amri agrees to this stipulation.

I'll have more detailed comments by our call later today, but on my first pass through, my sense is that it makes more sense for this stipulation to be something between the attorneys.  I think we're opposed to Amri signing, but we can sign something as a stip.  In any case, I'd like to hear a bit about why its fashioned as a stip that Amri signs.

Also on this item, given the other dates on the calendar, his schedule, and our schedules to prep for those other dates, Amri can't fit in until after the 23rd.  We'd propose a two week discovery extension for the purpose of conducting depositions only.  This will let us do a reasonable amount in a few weeks rather than a painful amount next week.  We think it's especially important in light of the 2/22 hearing that we just got summoned to appear at in Salt Lake City.  We also think that a slightly elongated schedule will dial down the temperature between counsel.

- During yesterday's deposition, Mr. Shibly testified regarding certain notes that he created describing his travel experiences over the years, and which he testified that he reviewed in preparation for his deposition and would need to refresh his recollection as to the travel incidents provided in his discovery responses. He also refers to documenting his travel experiences at approximately minute 12:00 of the audio file produced at Shibly-000456. Mr. Shibly further testified to having described his travel experiences in his Facebook posts. Please let us know when we can expect these now very overdue supplemental discovery responses, or else a privilege log.

I'll look into these items and get back to you.

Thanks again for your attention to these.

Dena

---

**From:** Konkoly, Antonia (CIV)
**Sent:** Monday, February 12, 2018 6:53 PM
**To:** Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; Ahmed Mohamed <aMohamed@cair.com>; Jack Cooper <jCooper@cair.com>; shereef@akeelvalentine.com
**Cc:** Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>; Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>

**Subject:** Elhady -- additional depo notices

Gadeir,

Please find attached deposition notices – each for Feb. 23, and each to take place in DC – for Doe 1, Eraqi, Amri, and Hakmeh. We will withdraw the notice for any plaintiff who dismisses his claims with prejudice prior to that date.

Toni

Antonia Konkoly
Trial Attorney
U.S. Department of Justice
Civil Division | Federal Programs Branch
Direct line:  (202) 514-2395
email:  Antonia.Konkoly@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

_____
                                                        )
**Anas ELHADY, et al.,**                    )
                                                        )
     **Plaintiffs,**                        )
                                                        )
**v.**                                                  )    **Case No. 1:16-cv-375**
                                                        )    **Hon. Anthony J. Trenga**
**Charles Kable, et al.,**    )
                                                        )
     **Defendants.**                      )
_____)

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 5 – 3.1.18 Email to G. Abbas**

| From: | Powell, Amy (CIV) |
|---|---|
| To: | gabbas@cair.com; Lena F. Masri, Esq.; Ahmed Mohamed |
| Cc: | Konkoly, Antonia (CIV); Roth, Dena M. (CIV); Healy, Christopher (CIV) |
| Subject: | TSA 30(b)(6) |
| Date: | Thursday, March 01, 2018 9:15:00 PM |

Gadeir –

With the TSC deposition out of the way, we thought it made sense to jump right into discussions about the other depositions you have noticed.  In particular, our likely TSA deponent has limited availability the week of the 19th and we would like to work them in the prior week if at all possible.

To kick off the discussion, it seems to us that there are very few remaining relevant topics to be covered, if any, and that it likely makes sense to have reasonably limited depositions primarily about the other agencies' relevant uses of TSDB information.  While we are still working on pounding out proposed topics (or possibly, alternative means of discovery) for other agencies, for TSA we would propose a deposition, limited to 2 hours on the record on the following topic:  TSA's use of information from the TSDB to conduct passenger pre-board screening.  Does that sound reasonable?  We would like to discuss tomorrow if at all possible, recognizing that it might be necessary to actually get a motion for a protective order on file tomorrow by 5 in order to have the deposition the week of the 12th.

Amy Elizabeth Powell
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

_____
                                                              )
**Anas ELHADY, et al.,**                          )
                                                              )
         **Plaintiffs,**                               )
                                                              )
**v.**                                                      )         **Case No. 1:16-cv-375**
                                                              )         **Hon. Anthony J. Trenga**
**Charles Kable, et al.,**              )
                                                              )
         **Defendants.**                           )
_____)

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 6 – 3.2.18 Email to G. Abbas**

| From: | Powell, Amy (CIV) |
|---|---|
| To: | "Gadeir Abbas"; Ahmed Mohamed; Konkoly, Antonia (CIV) |
| Cc: | Lena F. Masri, Esq.; Roth, Dena M. (CIV); Healy, Christopher (CIV) |
| Subject: | RE: TSA 30(b)(6) |
| Date: | Friday, March 02, 2018 10:53:00 AM |

Gadeir –

Thanks for chatting with us this morning.  This email is intended to memorialize our conversation.

First, we conferred about dates for remote depositions of JD3 and Ali.  You stated that JD3 is available 3/13-16, and that Ali is available and flexible the same week.  You agreed that the depositions should take place during normal business hours on the east coast.  We agreed to mail the deposition binders directly to the plaintiffs, with the condition that they not be unwrapped and opened until the deposition itself.  We expect the deponents to open the binders during the depositions and be prepared to state under oath that they have not previously opened the package.  Please send us their mailing addresses as soon as practicable at an address where they can receive packages.  We will propose specific dates and times during the week of the 12th for both deponents, and dates and times for test runs with the technology.  (Given the government status today, we probably won't be able to figure this out until Monday.)  I should note that we really view this as the last chance for these deponents, and if they cannot make themselves available that week, we will likely need to move to dismiss them for failure to prosecute.

Second, we conferred about the potential topics for remaining 30(b)(6) depositions.  You did not respond specifically to our proposed topic for TSA but indicated that you are working on proposed topics.  You are available to do depositions the week of the 12th, but that you definitely want 7 full hours for each remaining agency deposition, and that you want to depose FBI before you depose TSA.   It is a little unclear how far apart we are on the topics.  We are still considering whether we need to file a motion today to limit the topics for TSA.  We are firmly convinced that the deposition topics needed to "fill in the gaps" of the TSC deposition, as you put it previously, are actually quite limited.

Please let me know if I have misremembered or misconstrued anything in this email.

Thanks
Amy


Amy Elizabeth Powell
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Friday, March 02, 2018 10:03 AM
**To:** Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>; Ahmed Mohamed <aMohamed@cair.com>;
Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>
**Cc:** Lena F. Masri, Esq. <lmasri@cair.com>; Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Healy,
Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** Re: TSA 30(b)(6)

We are downstairs

Get Outlook for Android

---

**From:** Konkoly, Antonia (CIV) <Antonia.Konkoly@usdoj.gov>
**Sent:** Friday, March 2, 2018 9:27:18 AM
**To:** Gadeir Abbas; Powell, Amy (CIV); Ahmed Mohamed
**Cc:** Lena F. Masri, Esq.; Roth, Dena M. (CIV); Healy, Christopher (CIV)
**Subject:** Re: TSA 30(b)(6)

Gadeir,

We'd like to talk as early as possible today because, as we've previously explained, if we can't
reach a resolution on the depo scheduling issues -- including your provision of firm dates for
all remaining plaintiffs -- we need to file a motion today to preserve our interests.

Also, we need to follow up with you regarding Amy's email to you yesterday on the TSA 30b6
depo. We are discussing internally whether, given the limited time remaining, we may also
need to get any MPO that might be necessary on file today as well, but in any event need to
begin that conferral process.

Let's talk before the depo starts. We'll coordinate with Chris but will plan to have him initiate
a conference call when you arrive.

*Sent from my Verizon, Samsung Galaxy smartphone*

-------- Original message --------
From: Gadeir Abbas <gAbbas@cair.com>
Date: 3/2/18 8:48 AM (GMT-05:00)
To: "Konkoly, Antonia (CIV)" <ankonkol@CIV.USDOJ.GOV>, "Powell, Amy (CIV)"
<apowell@CIV.USDOJ.GOV>, Ahmed Mohamed <aMohamed@cair.com>
Cc: "Lena F. Masri, Esq." <lmasri@cair.com>, "Roth, Dena M. (CIV)"
<droth@CIV.USDOJ.GOV>, "Healy, Christopher (CIV)" <chhealy@CIV.USDOJ.GOV>
Subject: Re: TSA 30(b)(6)

We may be a few minutes late with some of this weather-related confusion, but Wael just

landed so we'll see you at 10 am est.

Toni - Unfortunately, I can't do a call at 930 am est this morning as I will be meeting with my client.  I can do the call during a break in the deposition whenever you all would like to.


Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
www.cair.com

---

**From:** Konkoly, Antonia (CIV) <Antonia.Konkoly@usdoj.gov>
**Sent:** Friday, March 2, 2018 7:43:17 AM
**To:** Gadeir Abbas; Powell, Amy (CIV); Ahmed Mohamed
**Cc:** Lena F. Masri, Esq.; Roth, Dena M. (CIV); Healy, Christopher (CIV)
**Subject:** Re: TSA 30(b)(6)

We've confirmed the court reporter. Can you please confirm that CAIR is able to move forward with the depo too?

Also, Gadeir, can we still talk at 9:30? I can initiate a conference call from home but will need your cell.


Sent from my Verizon, Samsung Galaxy smartphone


-------- Original message --------
From: Gadeir Abbas <gAbbas@cair.com>
Date: 3/2/18 7:47 AM (GMT-05:00)
To: "Powell, Amy (CIV)" <apowell@CIV.USDOJ.GOV>, Ahmed Mohamed <aMohamed@cair.com>
Cc: "Lena F. Masri, Esq." <lmasri@cair.com>, "Konkoly, Antonia (CIV)" <ankonkol@CIV.USDOJ.GOV>, "Roth, Dena M. (CIV)" <droth@CIV.USDOJ.GOV>, "Healy, Christopher (CIV)" <chhealy@CIV.USDOJ.GOV>
Subject: Re: TSA 30(b)(6)

He's scheduled to land at 830 am est.  We believe he's on the plane.

Gadeir Abbas, Esq.
**Senior Litigation Attorney**

logo-1359288842



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

---

**From:** Powell, Amy (CIV) <Amy.Powell@usdoj.gov>
**Sent:** Friday, March 2, 2018 6:34:20 AM
**To:** Ahmed Mohamed
**Cc:** Gadeir Abbas; Lena F. Masri, Esq.; Konkoly, Antonia (CIV); Roth, Dena M. (CIV); Healy, Christopher (CIV)
**Subject:** RE: TSA 30(b)(6)

Trying to figure that out ourselves and whether someone can get to the office.  Is the deponent available?  Did he make it to DC?

---

**From:** Ahmed Mohamed [mailto:aMohamed@cair.com]
**Sent:** Friday, March 02, 2018 7:06 AM
**To:** Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>
**Cc:** Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>; Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** Re: TSA 30(b)(6)

Hi Amy, et al

We are hearing that the government is closed today due to dangerous winds.  Can you confirm that today's deposition will proceed?

Ahmed

Sent from my iPhone

On Mar 1, 2018, at 9:15 PM, Powell, Amy (CIV) <Amy.Powell@usdoj.gov> wrote:

> Gadeir –
> With the TSC deposition out of the way, we thought it made sense to jump right into
> discussions about the other depositions you have noticed.  In particular, our likely TSA

deponent has limited availability the week of the 19th and we would like to work them in the prior week if at all possible.

To kick off the discussion, it seems to us that there are very few remaining relevant topics to be covered, if any, and that it likely makes sense to have reasonably limited depositions primarily about the other agencies' relevant uses of TSDB information. While we are still working on pounding out proposed topics (or possibly, alternative means of discovery) for other agencies, for TSA we would propose a deposition, limited to 2 hours on the record on the following topic:  TSA's use of information from the TSDB to conduct passenger pre-board screening.  Does that sound reasonable?  We would like to discuss tomorrow if at all possible, recognizing that it might be necessary to actually get a motion for a protective order on file tomorrow by 5 in order to have the deposition the week of the 12th.

Amy Elizabeth Powell
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

---

|  |  |  |
|---|---|---|
| **Anas ELHADY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:16-cv-375** |
| | ) | **Hon. Anthony J. Trenga** |
| **Charles Kable, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 7 – 3.6.18 Email Thread**

| | |
|---|---|
| **From:** | Powell, Amy (CIV) |
| **To:** | "Gadeir Abbas"; Ahmed Mohamed; Konkoly, Antonia (CIV) |
| **Cc:** | Lena F. Masri, Esq.; Roth, Dena M. (CIV); Healy, Christopher (CIV) |
| **Subject:** | RE: TSA 30(b)(6) |
| **Date:** | Tuesday, March 06, 2018 9:32:00 AM |

We'll wait to hear what you have to propose.  But if we have to litigate it, we will have to do so by filing Friday for a hearing on the 16th, which leaves virtually no time thereafter to prep witnesses and conduct depositions.  And we're not sure all of the prospective witnesses are even available that last week for prep and deposition.

Amy

Amy Elizabeth Powell
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Tuesday, March 06, 2018 9:24 AM
**To:** Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>; Ahmed Mohamed <aMohamed@cair.com>; Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>
**Cc:** Lena F. Masri, Esq. <lmasri@cair.com>; Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** Re: TSA 30(b)(6)

Amy,

The gaps are large, and as was the case in the TSC deposition, there is just so much about the watchlisting process that we don't know.  The Sentinel database, the Watchlisting Advisory Council, and on and on.  There's a lot that the FBI, TSA, and CBP are going to testify about that we can't anticipate.  We need the full 7-on-the-record-hours to explore those things.

With regards to topics, I don't think we're too far off.  But we'll issue the dep notices for the remaining three agencies today, and they'll be an adapted version of the TSC topics, with Judge Anderson's history and technical info caveats as additional topics as well.  Here's a few other things:

(1) We need the 7-on-the-record-hours.  There's a lot of ground to cover, we have no idea what the agencies will testify, and DOJ will certainly--as they did in the last deposition--make a litany of objections to almost every single question.  With 7 hours, these challenges can be managed in a way that doesn't produce conflict among the attorneys.  Also - the importance of this case warrants it; if the defendants want to put a million people in the TSDB, they can spare a single one of their tens of thousands of employees to testify for a full day.

For deposition time, we're not flexible on this.  We need the full 7 on the record hours.  The depositions will certainly last 7 on the record hours.

(2) We're open to any order.  We'd prefer FBI go first, but you've been flexible with us about plaintiff deposition order and we want to reciprocate.

(3) The dates you're proposing work.  We'd prefer 3/20 and 3/22 for TSA and CBP, respectively.

(4) The FBI dep works next week any day other than Amri's date.  I'll get this dep notice out to you in the next few hours, but it sounds like we might have some mild conflicts about the dep topics and duration of the deposition.  How do you suggest we tee them up?


Regards,

Gadeir Abbas, Esq.
**Senior Litigation Attorney**

logo-1359288842



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

---

**From:** Powell, Amy (CIV) <Amy.Powell@usdoj.gov>
**Sent:** Monday, March 5, 2018 2:22:49 PM
**To:** Gadeir Abbas; Ahmed Mohamed; Konkoly, Antonia (CIV)
**Cc:** Lena F. Masri, Esq.; Roth, Dena M. (CIV); Healy, Christopher (CIV)
**Subject:** RE: TSA 30(b)(6)


Gadeir –

As you no doubt noted, we did not file a motion for a protective order on Friday. We thought, based on our conversation, that there was some hope we could productively discuss narrowed topics. The parties agreed to revisit appropriate topics for 30(b)(6) depositions after the TSC deposition went forward. In light of the possible need to litigate the topics, prep the witnesses, and the impending close of discovery, we think it is urgent that we try to negotiate the scope of the topics immediately. Even if we schedule all 3 depositions you have noticed for the last week of discovery, there seems to be very little time left. When we talked on Friday, you were open to the idea of discussions and I understood that you would be working on topics. To reiterate, we had previously discussed using these remaining depositions to "fill in the gaps" of any TSC testimony where the TSC deponent could not testify about another agencies interests. We think there are really very few such gaps, if any. And we would also be willing to consider making further written responses in lieu of deposition testimony. In the interests of resolving this matter without further litigation, we make the following proposals.

**FBI:**
We do not anticipate that it would be appropriate to do a duplicative deposition about TSC policy and procedure from a different FBI official. To some extent, the FBI has an arguably separate interest in watchlisting as a nominator and as a consumer of TSDB information, which possibly could be appropriate for a reasonably delimited 30(b)(6) deposition of FBI. We are therefore willing to put up an FBI witness to supplement the proposed TSC deposition for a short deposition (of no more than 4 hours on the record) on the following limited topics:
- FBI's role and interest in the TSDB generally (excluding information related to the No Fly List and excluding TSC policy and procedure covered by the Groh Deposition)
- FBI's role in making nominations to the TSDB (excluding information related to the No Fly List and excluding TSC policy and procedure covered by the Groh Deposition)

The potential FBI witnesses all have very limited availability this month. If Plaintiffs agree to reasonable topics, we are willing to go forward with the deposition, on a date and at a location to be agreed upon by the parties, but this will be a particularly tricky one to pin down availability. It may be possible to pin down availability for a date next week. So, it would be best if we can figure out the topics quickly.

**TSA**
We are willing to put up a TSA witness for a short deposition (of no more than 4 hours on the record) on the following limited topics:
- TSA's role and interest in the TSDB generally (excluding its role and interest in the No Fly List and excluding information about vetting and credentialing)
- TSA's use of TSDB information in conducting passenger pre-board screening (excluding uses of the No Fly List and excluding information about vetting and credentialing)

Plaintiffs allegations about TSA in discovery are limited solely to the issue of passenger screening; so this seems like it should be a very limited deposition. We propose March 19 or 20.

**CBP**
We are willing to put up a TSA witness for a short deposition (of no more than 4 hours on the record) on the following limited topics:
- CBP's role and interest in the TSDB generally (excluding its role and interest in the

No Fly List)
- CBP's use of TSDB information in conducting inspections at the border. (excluding uses of the No Fly List)

Plaintiffs allegations about CBP in discovery are limited solely to the issue of border inspections; so this seems like it should be a very limited deposition.  We propose March 22 or 23.

For each agency, the proposed topics obviously encompass a great deal of privileged and protected information, and I anticipate that we would make a great many instructions not to answer as a result, but we are willing to go forward with the depositions, on dates and locations to be agreed upon by the parties.  Time, however, is of the essence, if we are going to get these done before the close of discovery.


Amy Elizabeth Powell
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov


---

**From:** Powell, Amy (CIV)
**Sent:** Friday, March 02, 2018 10:53 AM
**To:** 'Gadeir Abbas' <gAbbas@cair.com>; Ahmed Mohamed <aMohamed@cair.com>; Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>
**Cc:** Lena F. Masri, Esq. <lmasri@cair.com>; Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** RE: TSA 30(b)(6)


Gadeir –

Thanks for chatting with us this morning.  This email is intended to memorialize our conversation.

First, we conferred about dates for remote depositions of JD3 and Ali.  You stated that JD3 is available 3/13-16, and that Ali is available and flexible the same week.  You agreed that the depositions should take place during normal business hours on the east coast.  We agreed to mail the deposition binders directly to the plaintiffs, with the condition that they not be unwrapped and opened until the deposition itself.  We expect the deponents to open the binders during the depositions and be prepared to state under oath that they have not previously opened the package.  Please send us their mailing addresses as soon as practicable at an address where they can receive packages.  We will propose specific dates and times during the week of the 12th for both deponents,

and dates and times for test runs with the technology.  (Given the government status today, we probably won't be able to figure this out until Monday.)  I should note that we really view this as the last chance for these deponents, and if they cannot make themselves available that week, we will likely need to move to dismiss them for failure to prosecute.

Second, we conferred about the potential topics for remaining 30(b)(6) depositions.  You did not respond specifically to our proposed topic for TSA but indicated that you are working on proposed topics.  You are available to do depositions the week of the 12th, but that you definitely want 7 full hours for each remaining agency deposition, and that you want to depose FBI before you depose TSA.  It is a little unclear how far apart we are on the topics.  We are still considering whether we need to file a motion today to limit the topics for TSA.  We are firmly convinced that the deposition topics needed to "fill in the gaps" of the TSC deposition, as you put it previously, are actually quite limited.

Please let me know if I have misremembered or misconstrued anything in this email.

Thanks
Amy


Amy Elizabeth Powell
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

---

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Friday, March 02, 2018 10:03 AM
**To:** Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>; Ahmed Mohamed <aMohamed@cair.com>; Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>
**Cc:** Lena F. Masri, Esq. <lmasri@cair.com>; Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** Re: TSA 30(b)(6)

We are downstairs

Get Outlook for Android

---

**From:** Konkoly, Antonia (CIV) <Antonia.Konkoly@usdoj.gov>
**Sent:** Friday, March 2, 2018 9:27:18 AM

**To:** Gadeir Abbas; Powell, Amy (CIV); Ahmed Mohamed
**Cc:** Lena F. Masri, Esq.; Roth, Dena M. (CIV); Healy, Christopher (CIV)
**Subject:** Re: TSA 30(b)(6)

Gadeir,

We'd like to talk as early as possible today because, as we've previously explained, if we can't reach a resolution on the depo scheduling issues -- including your provision of firm dates for all remaining plaintiffs -- we need to file a motion today to preserve our interests.

Also, we need to follow up with you regarding Amy's email to you yesterday on the TSA 30b6 depo. We are discussing internally whether, given the limited time remaining, we may also need to get any MPO that might be necessary on file today as well, but in any event need to begin that conferral process.

Let's talk before the depo starts. We'll coordinate with Chris but will plan to have him initiate a conference call when you arrive.

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Gadeir Abbas <gAbbas@cair.com>
Date: 3/2/18 8:48 AM (GMT-05:00)
To: "Konkoly, Antonia (CIV)" <ankonkol@CIV.USDOJ.GOV>, "Powell, Amy (CIV)" <apowell@CIV.USDOJ.GOV>, Ahmed Mohamed <aMohamed@cair.com>
Cc: "Lena F. Masri, Esq." <lmasri@cair.com>, "Roth, Dena M. (CIV)" <droth@CIV.USDOJ.GOV>, "Healy, Christopher (CIV)" <chhealy@CIV.USDOJ.GOV>
Subject: Re: TSA 30(b)(6)

We may be a few minutes late with some of this weather-related confusion, but Wael just landed so we'll see you at 10 am est.

Toni - Unfortunately, I can't do a call at 930 am est this morning as I will be meeting with my client.  I can do the call during a break in the deposition whenever you all would like to.

Gadeir Abbas, Esq.
**Senior Litigation Attorney**

logo-1359288842

453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425

[www.cair.com](www.cair.com)

---

**From:** Konkoly, Antonia (CIV) <[Antonia.Konkoly@usdoj.gov](mailto:Antonia.Konkoly@usdoj.gov)>
**Sent:** Friday, March 2, 2018 7:43:17 AM
**To:** Gadeir Abbas; Powell, Amy (CIV); Ahmed Mohamed
**Cc:** Lena F. Masri, Esq.; Roth, Dena M. (CIV); Healy, Christopher (CIV)
**Subject:** Re: TSA 30(b)(6)

We've confirmed the court reporter. Can you please confirm that CAIR is able to move forward with the depo too?

Also, Gadeir, can we still talk at 9:30? I can initiate a conference call from home but will need your cell.

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Gadeir Abbas <[gAbbas@cair.com](mailto:gAbbas@cair.com)>
Date: 3/2/18 7:47 AM (GMT-05:00)
To: "Powell, Amy (CIV)" <[apowell@CIV.USDOJ.GOV](mailto:apowell@CIV.USDOJ.GOV)>, Ahmed Mohamed <[aMohamed@cair.com](mailto:aMohamed@cair.com)>
Cc: "Lena F. Masri, Esq." <[lmasri@cair.com](mailto:lmasri@cair.com)>, "Konkoly, Antonia (CIV)" <[ankonkol@CIV.USDOJ.GOV](mailto:ankonkol@CIV.USDOJ.GOV)>, "Roth, Dena M. (CIV)" <[droth@CIV.USDOJ.GOV](mailto:droth@CIV.USDOJ.GOV)>, "Healy, Christopher (CIV)" <[chhealy@CIV.USDOJ.GOV](mailto:chhealy@CIV.USDOJ.GOV)>
Subject: Re: TSA 30(b)(6)

He's scheduled to land at 830 am est.  We believe he's on the plane.

Gadeir Abbas, Esq.
**Senior Litigation Attorney**

logo-1359288842



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
[www.cair.com](www.cair.com)

---

**From:** Powell, Amy (CIV) <[Amy.Powell@usdoj.gov](mailto:Amy.Powell@usdoj.gov)>
**Sent:** Friday, March 2, 2018 6:34:20 AM
**To:** Ahmed Mohamed

**Cc:** Gadeir Abbas; Lena F. Masri, Esq.; Konkoly, Antonia (CIV); Roth, Dena M. (CIV); Healy, Christopher (CIV)
**Subject:** RE: TSA 30(b)(6)

Trying to figure that out ourselves and whether someone can get to the office.  Is the deponent available?  Did he make it to DC?

---

**From:** Ahmed Mohamed [mailto:aMohamed@cair.com]
**Sent:** Friday, March 02, 2018 7:06 AM
**To:** Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>
**Cc:** Gadeir Abbas <gAbbas@cair.com>; Lena F. Masri, Esq. <lmasri@cair.com>; Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>; Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** Re: TSA 30(b)(6)

Hi Amy, et al

We are hearing that the government is closed today due to dangerous winds.  Can you confirm that today's deposition will proceed?

Ahmed

Sent from my iPhone

On Mar 1, 2018, at 9:15 PM, Powell, Amy (CIV) <Amy.Powell@usdoj.gov> wrote:

> Gadeir –
> With the TSC deposition out of the way, we thought it made sense to jump right into discussions about the other depositions you have noticed.  In particular, our likely TSA deponent has limited availability the week of the 19th and we would like to work them in the prior week if at all possible.
>
> To kick off the discussion, it seems to us that there are very few remaining relevant topics to be covered, if any, and that it likely makes sense to have reasonably limited depositions primarily about the other agencies' relevant uses of TSDB information. While we are still working on pounding out proposed topics (or possibly, alternative means of discovery) for other agencies, for TSA we would propose a deposition, limited to 2 hours on the record on the following topic:  TSA's use of information from the TSDB to conduct passenger pre-board screening.  Does that sound reasonable?  We would like to discuss tomorrow if at all possible, recognizing that it might be necessary to actually get a motion for a protective order on file tomorrow by 5 in order to have the deposition the week of the 12th.
>
> Amy Elizabeth Powell
> Trial Attorney, Federal Programs Branch

Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

_____
                                        )
Anas ELHADY, et al.,                    )
                                        )
        Plaintiffs,                     )
                                        )
v.                                      )        Case No. 1:16-cv-375
                                        )        Hon. Anthony J. Trenga
Charles Kable, et al.,          )
                                        )
        Defendants.                     )
_____)

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 8 – 30(b)(6) Notice for FBI**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.*, | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHARLES H. CABLE,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |

---

### NOTICE OF 30(B)(6) DEPOSITION OF DEFENDANT FBI

Please take notice that, pursuant to Rule 30(b)(6), Plaintiff will take the deposition of Defendant Federal Bureau of Investigations ("FBI") via oral examination, to be recorded by stenographic means and by video, at CAIR's office—453 New Jersey Avenue, Washington DC 20003 at 9 AM EST on March 16, 2018. Defendant CBP is hereby requested to designate the person or persons with knowledge who are prepared to testify on behalf of the CBP concerning the subject matter outlined below.

1.  FBI's receipt and handling of Terrorist Screening Database ("TSDB") information.

2.  FBI's use and annotation of TSDB information for any purpose, including but not limited to performing its screening, intelligence-gathering, and investigative functions.

3.  FBI's role in terrorism watchlisting in general, including FBI's reporting of its encounters with persons listed in the TSDB, its role in compiling so-called "encounter information," its access to and use of information in the Sentinel database, and the Watchlisting Advisory Council.

4.  FBI's role or responsibility in disseminating and controlling TSDB information.

1

5.      FBI's role in the nominations process for the TSDB (including generally CBP's understanding of how and why individuals are placed in the TSDB).

6.      FBI's role in the redress process for persons placed in the TSDB.

7.      FBI's training to employees regarding how to handle both TSDB information and encounters with persons listed in the TSDB.

8.      The content of the Overview document (*see* bates numbers Elhady-FBITSC-001947 to -56), including the CBP's input into the standards for inclusion in the TSDB or subsets lists or annotations administered by the CBP.

9.      FBI's relationship and interaction with the FBI and TSC in performing CBP's screening and border control functions in connection with encounters with persons listed in the TSDB.

10.     The evolution and history of the TSDB, the Watchlisting Advisory Council, practices and policies regarding how agencies use and disseminate TSDB information, and the interagency processes regarding the watchlisting enterprise.

11.     The National Criminal Information Center database, how TSDB and Sentinel information is incorporated into the NCIC database, how many individuals have access of any kind to NCIC database, and how persons with access to the database query it.

CAIR LEGAL DEFENSE FUND

BY:     /s/ Lena Masri
LENA MASRI
GADEIR I. ABBAS (VA: 81161)
*Attorneys for Plaintiff*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420
Facsimile: (202) 488-0833
Email: gabbas@cair.com

 *Gadeir Abbas is licensed in VA, not in D.C. Practice limited to federal matters.*

AKEEL & VALENTINE, PLLC

BY:     /s/ Shereef Akeel
SHEREEF H. AKEEL (P54345)
Attorney for Plaintiffs
888 W. Big Beaver Rd., Ste. 910

Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

Dated: March 6, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2018, I emailed the foregoing to counsel of record

for Defendants in the case: antonia.konkoly@usdoj.gov; christopher.healy@usdoj.gov;

amy.powell@usdoj.gov; dena.m.roth@usdoj.gov.

CAIR LEGAL DEFENSE FUND

BY:    /s/ Gadeir I. Abbas, Esq.
GADEIR I. ABBAS (VA: 81161)
*Attorneys for Plaintiff*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420
Facsimile: (202) 488-0833
Email:  gabbas@cair.com

*Gadeir Abbas is licensed in VA, not in D.C.*
*Practice limited to federal matters.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

_____

Anas ELHADY, et al.,                          )
                                              )
      Plaintiffs,                        )
                                              )
v.                                            )          Case No. 1:16-cv-375
                                              )          Hon. Anthony J. Trenga
Charles Kable, et al.,            )
                                              )
      Defendants.                        )
_____)

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 9 – 30(b)(6) Notice for TSA**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.*, | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHARLES H. CABLE,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |

_____

### NOTICE OF 30(B)(6) DEPOSITION OF DEFENDANT TSA

Please take notice that, pursuant to Rule 30(b)(6), Plaintiff will take the deposition of

Defendant Transportation Security Administration ("TSA") via oral examination, to be

recorded by stenographic means and by video, at CAIR's office—453 New Jersey Avenue,

Washington DC 20003 at 9 AM EST on March 22, 2018.  Defendant TSA is hereby requested

to designate the person or persons with knowledge who are prepared to testify on behalf of

the TSA concerning the subject matter outlined below.

1.    TSA's receipt and handling of Terrorist Screening Database ("TSDB") information.

2.    TSA's use and annotation of TSDB information for any purpose, including but not limited to perform all screening functions.

3.    TSA's role in terrorism watchlisting in general, including CBP's reporting of its encounters with persons listed in the TSDB, its role in compiling so-called "encounter information," its access to and use of information in the Sentinel database, and the Watchlisting Advisory Council.

4.    TSA's role or responsibility in disseminating and controlling TSDB information.

1

5.      TSA's role in the nominations process for the TSDB (including generally TSA's understanding of how and why individuals are placed in the TSDB).

6.      TSA's role in the redress process for persons placed in the TSDB.

7.      TSA's training to employees regarding how to handle both TSDB information and encounters with persons listed in the TSDB.

8.      The content of the Overview document (*see* bates numbers Elhady-FBITSC-001947 to -56), including the TSA's input into the standards for inclusion in the TSDB or subsets (i.e. the Selectee List) administered by the TSA.

9.      TSA's relationship and interaction with the FBI and TSC in performing TSA's screening functions in connection with encounters with persons listed in the TSDB.

10.     The evolution and history of the TSDB, the Watchlisting Advisory Council, practices and policies regarding how agencies use and disseminate TSDB information, and the interagency processes regarding the watchlisting enterprise.

CAIR LEGAL DEFENSE FUND

BY:      /s/ Lena masri
LENA MASRI
GADEIR I. ABBAS (VA: 81161)
*Attorneys for Plaintiff*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420
Facsimile: (202) 488-0833
Email:  gabbas@cair.com

 *Gadeir Abbas is licensed in VA, not in D.C. Practice limited to federal matters.*

AKEEL & VALENTINE, PLLC

BY:      /s/ Shereef Akeel
SHEREEF H. AKEEL (P54345)
Attorney for Plaintiffs
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

Dated: March 6, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2018, I emailed the foregoing to counsel of record

for Defendants in the case: antonia.konkoly@usdoj.gov; christopher.healy@usdoj.gov;

amy.powell@usdoj.gov; dena.m.roth@usdoj.gov.

CAIR LEGAL DEFENSE FUND

BY:      /s/ Gadeir I. Abbas, Esq.
GADEIR I. ABBAS (VA: 81161)
*Attorneys for Plaintiff*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420
Facsimile: (202) 488-0833
Email:  gabbas@cair.com

*Gadeir Abbas is licensed in VA, not in D.C.*
*Practice limited to federal matters.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

_____
                                                    )
Anas ELHADY, et al.,                                )
                                                    )
            Plaintiffs,                             )
                                                    )
v.                                                  )        Case No. 1:16-cv-375
                                                    )        Hon. Anthony J. Trenga
Charles Kable, et al.,            )
                                                    )
            Defendants.                             )
_____)

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 10 – 30(b)(6) Notice for CBP**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.*, | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHARLES H. CABLE,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |

_____

**NOTICE OF 30(B)(6) DEPOSITION OF DEFENDANT CBP**

Please take notice that, pursuant to Rule 30(b)(6), Plaintiff will take the deposition of

Defendant Customs and Border Protection ("CBP") via oral examination, to be recorded by

stenographic means and by video, at CAIR's office—453 New Jersey Avenue, Washington DC

20003 at 9 AM EST on March 20, 2018.  Defendant CBP is hereby requested to designate the

person or persons with knowledge who are prepared to testify on behalf of the CBP

concerning the subject matter outlined below.

1.  CBP's receipt and handling of Terrorist Screening Database ("TSDB") information.

2.  CBP's use and annotation of TSDB information for any purpose, including but not limited to performing its screening and border control functions.

3.  CBP's role in terrorism watchlisting in general, including CBP's reporting of its encounters with persons listed in the TSDB, its role in compiling so-called "encounter information," its access to and use of information in the Sentinel database, and the Watchlisting Advisory Council.

4.  CBP's role or responsibility in disseminating or controlling TSDB information.

5.  CBP's role in the nominations process for the TSDB (including generally CBP's understanding of how and why individuals are placed in the TSDB).

1

6.      CBP's role in the redress process for persons placed in the TSDB.

7.      CBP's training to employees regarding how to handle both TSDB information and encounters with persons listed in the TSDB.

8.      The content of the Overview document (*see* bates numbers Elhady-FBITSC-001947 to -56), including the CBP's input into the standards for inclusion in the TSDB or subsets lists or annotations administered by the CBP.

9.      CBP's relationship and interaction with the FBI and TSC in performing CBP's screening and border control functions in connection with encounters with persons listed in the TSDB.

CAIR LEGAL DEFENSE FUND

BY:     /s/ Lena Masri
LENA MASRI
GADEIR I. ABBAS (VA: 81161)
*Attorneys for Plaintiff*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420
Facsimile: (202) 488-0833
Email:  gabbas@cair.com

*Gadeir Abbas is licensed in VA, not in D.C.*
*Practice limited to federal matters.*

AKEEL & VALENTINE, PLLC

BY:     /s/ Shereef Akeel
SHEREEF H. AKEEL (P54345)
Attorney for Plaintiffs
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

Dated: March 6, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2018, I emailed the foregoing to counsel of record

for Defendants in the case: antonia.konkoly@usdoj.gov; christopher.healy@usdoj.gov;

amy.powell@usdoj.gov; dena.m.roth@usdoj.gov.

CAIR LEGAL DEFENSE FUND

BY:      /s/ Gadeir I. Abbas, Esq.
GADEIR I. ABBAS (VA: 81161)
*Attorneys for Plaintiff*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420
Facsimile: (202) 488-0833
Email:  gabbas@cair.com

*Gadeir Abbas is licensed in VA, not in D.C.*
*Practice limited to federal matters.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

_____

Anas ELHADY, et al.,                         )
                                             )
        Plaintiffs,                          )
                                             )
v.                                           )        Case No. 1:16-cv-375
                                             )        Hon. Anthony J. Trenga
Charles Kable, et al.,                       )
                                             )
        Defendants.                          )
_____)

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 11 – 3.7.18 Email with Attachments re:
Defendants' Markup of TSA and CBP topics**

| | |
|---|---|
| **From:** | Powell, Amy (CIV) |
| **To:** | "Gadeir Abbas"; Ahmed Mohamed; Konkoly, Antonia (CIV) |
| **Cc:** | Lena F. Masri, Esq.; Roth, Dena M. (CIV); Healy, Christopher (CIV) |
| **Subject:** | 30(b)(6) topics |
| **Date:** | Wednesday, March 07, 2018 4:10:00 PM |
| **Attachments:** | image001.png |
| | Markup of plaintiffs topics - CBP - for transmission to Plaintiffs.docx |
| | markup of plaintiffs" topics - TSA - for transmission to plaintiffs.docx |

Gadeir –

Thanks for sending these along.   I am concerned that Plaintiffs are not making a real effort to identify gaps in the information already received.  For example, you sought and received extensive testimony about the interagency process for watchlisting and developing watchlisting policy.  And both TSC and DHS TRIP have described in great detail the redress process.   Instead of identifying information that Plaintiffs still do not know and haven't had a chance to ask, these notices seem to be seeking the same information again from different deponents.  Please bear in mind that witnesses who can speak on behalf of these large federal agencies as to matters of considerable national security significance are likely to be relatively senior, high level government officials.  It is not reasonable to demand that we prep high level government officials on multiple broad topics involving considerable detail to provide you with information that you already have.  Particularly when much of that information is, at best, tangential to Plaintiffs' sole remaining claim.

Given that, we continue to think that 7 hours of deposition is likely to be unreasonable but we may be flexible as to duration if we can come to some agreement as to topics.

The attached Word documents reflect our thoughts on where your proposed topics for TSA and CBP are vague, duplicative or confusing, overlap with other  deposition testimony already given, or are otherwise inappropriate.  For these agencies, we have also provided proposed alternative topics and excluded areas of testimony.  Since our previous proposal, we have expanded each set of proposed topics based on the general areas of inquiry that seem to concern you.    But generally, we maintain that the only arguable "gaps" in Plaintiffs' information at this point are: the other agencies' unique interests in TSDB watchlisting; and how they use TSDB information in ways that might arguably have affected plaintiffs.  Generally, our proposed topics are intended to be fairly broad and include the information we think Plaintiffs want.   If you think the excluded topics are relevant, please let me know why.  If you think the proposed topics are insufficient, please identify what is missing.

We're still working on the FBI topics, and hope to send you something shortly.  With the clock running out, it seems we need to fish or cut bait on agreed topics soon.  We would therefore appreciate getting a response as soon as practicable.

Amy Elizabeth Powell
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461

Phone: 919-856-4013
Email: amy.powell@usdoj.gov

---

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Tuesday, March 06, 2018 1:58 PM
**To:** Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>; Ahmed Mohamed <aMohamed@cair.com>; Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>
**Cc:** Lena F. Masri, Esq. <lmasri@cair.com>; Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** RE: TSA 30(b)(6)

Amy,

I'm attaching our dep notices here.  I've included specific dates and location, but as before, we're happy to accommodate.  I think deposing all three agencies in a single week would be grueling for everyone, but if that's our only option, that's our only option. If you feel the need for more time for prep, we're certainly not opposed to doing the dep the last week of March if Judge Anderson allows for it.

Regards,

Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

Licensed to practice in VA, not in DC.
Practice limited to federal matters.

*[This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.]*

Markup of Plaintiffs' topics – TSA

Things we should exclude from all topics:  DHSTRIP, No Fly List  (obviously including revised redress process); vetting and credentialing (which is a separate issue and separate redress process  and not a harm alleged by any of the Plaintiffs).

1. TSA's receipt and handling of information received from the Terrorist Screening Database ("TSDB") information.

2. TSA's use and annotation of TSDB information for any purpose. passenger pre-board screening including but not limited to perform all screening functions.

3. TSA's role and interest in the TSDBterrorism watchlisting in general, including CBP's TSA's reporting of its encounters with persons listed in the TSDB, its role in compiling so-called "encounter information," its access to and use of information in the Sentinel database, and TSA's role in the Watchlisting Advisory Council.

4. TSA's role or responsibility in disseminating and controlling TSDB information.

5. TSA's role in the nominations process for the TSDB (including generally TSA's understanding of how and why individuals are placed in the TSDB).

6. TSA's role in the redress process for persons placed in the TSDB.

7. TSA's training to employeespolicies regarding thehow to handling ofe both TSDB information and encounters with persons listed in the TSDB.

8. The content of the Overview document (see bates numbers Elhady-FBITSC 001947 to –56), including the TSA's input into the standards for inclusion in the TSDB or subsets (i.e. the Selectee List) administered by the TSA.

9. TSA's relationship and interaction with the FBI and TSC in performing TSA's screening functions in connection with encounters with persons listed in the TSDB.

10. The evolution and history of the TSDB, the Watchlisting Advisory Council, practices and policies regarding how agencies use and disseminate TSDB information, and the interagency processes regarding the watchlisting enterprise.

**Defendants' Proposed Topics:**

Excluding from all topics information about TSC policy and procedure, about the No Fly List, about DHS TRIP, and about TSA vetting and credentialing:

- TSA's role and interest in the TSDB generally
- TSA's dissemination of information received from the TSDB

---

**Commented [A1]:** Topics 1, 2, 4, 7 all seem more or less duplicative, and I'm not sure how they differ- they all seem to cover Handling, dissemination and use of information from the TSDB. I have topics below that more clearly delineate the information at issue:  handling, dissemination, use.

**Commented [A2]:** Not sure what this means but it's not relevant

**Commented [A3]:** Encounter information and WLAC adequately covered by TSC.  TSC testified at length about the interagency process. There is no "gap" here to fill in. That is a general question re: watchlisting policy/procedure properly directed to TSC, who did in fact cover it.

**Commented [A4]:** Covered by TSC

**Commented [A5]:** TSA's role was more than adequately covered by Dr. Moore (Manager of TSA' Transportation Security Redress Branch). Plaintiffs don't get another bite at the apple.

**Commented [A6]:** This largely overlaps with 1, 2, and 4, but training itself is too broad and covers too many potential things.  Remember TSA is a very large agency.  It is not reasonable to suppose that we could prep a witness on the details of training conducted in all part of the agency.

**Commented [A7]:** Covered by Groh or other topics here

**Commented [A8]:** I'm really not sure what this means. If you want anything more than a general description of TSA's role and interest in the TSDB, this is likely entirely privileged.

**Commented [A9]:** Not limited to TSA information and adequately covered by TSC deposition anyway, who spoke at length about the interagency process.

- TSA's use of information received from the TSDB in conducting passenger pre-board screening
- TSA's policies regarding the handling of information received from the TSDB

Markup of plaintiffs' topics - CBP

1. CBP's receipt and handling of Terrorist Screening Database ("TSDB") information.

2. CBP's use and annotation of information received from the TSDB information for conducting inspections at the border any purpose, including but not limited to performing its screening and border control functions.

3. CBP's role in terrorism watchlisting in general, including CBP's reporting of its encounters with persons listed in the TSDB, its role in compiling so-called "encounter information," its access to and use of information in the Sentinel database, and the Watchlisting Advisory Council.

4. CBP's role or responsibility in disseminating or controlling TSDB information.

5. CBP's role in the nominations process for the TSDB (including generally CBP's understanding of how and why individuals are placed in the TSDB).

6. CBP's role in the redress process for persons placed in the TSDB.

7. CBP's training to employees regarding how to handle both TSDB information received from TSDB and encounters with persons listed in the TSDB.

8. The content of the Overview document (see bates numbers Elhady-FBITSC-001947 to  56), including the CBP's input into the standards for inclusion in the TSDB or subsets lists or annotations administered by the CBP.

9. CBP's relationship and interaction with the FBI and TSC in performing CBP's screening and border control functions in connection with encounters with persons listed in the TSDB.

**Proposed topics**:

Excluding information about the No Fly List or TSC policy and procedure:

- CBP's role and interest in the TSDB generally
- CBP's dissemination of information received from the TSDB
- CBP's use of information received from the TSDB in conducting inspections at the border
- CBP's policies regarding the handling of information received from the TSDB

**Comments:**

**Commented [aep1]:** Vague, and apparently duplicative with 2, 4 and 7, at least in part.  I suggest streamlining per below

**Commented [aep2]:** This is the only allegation plaintiffs have made about CBP

**Commented [aep3]:** These issues are largely covered by TSC and do not think they would properly be a focus.

**Commented [aep4]:** Duplicative in part with 2 and 4, confusingly worded

**Commented [aep5]:** Covered by TSC

**Commented [aep6]:** Covered by TSC

**Commented [aep7]:** As with TSA, training is potentially a very broad topic and it would not be reasonable to prepare a witness about the weeds of training topics across a very large agency.

**Commented [aep8]:** Covered by TSC

**Commented [aep9]:** Again, I m not sure what this means. Information about CBP s role in general is otherwise covered by other topics, including encounter management. Other information is likely to be privileged; but again, I m just not sure what this means.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

_____
                                                        )
Anas ELHADY, et al.,                        )
                                                        )
            Plaintiffs,                             )
                                                        )
v.                                                      )        Case No. 1:16-cv-375
                                                        )        Hon. Anthony J. Trenga
Charles Kable, et al.,                        )
                                                        )
            Defendants.                          )
_____)

### DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS

**EXHIBIT 12 – 3.8.18 Plaintiffs Response Email with Attachments re:
Defendants' Markup of TSA and CBP topics**

| | |
|---|---|
| **From:** | Gadeir Abbas |
| **To:** | Powell, Amy (CIV); Ahmed Mohamed; Konkoly, Antonia (CIV) |
| **Cc:** | Lena F. Masri, Esq.; Roth, Dena M. (CIV); Healy, Christopher (CIV) |
| **Subject:** | Re: 30(b)(6) topics |
| **Date:** | Thursday, March 08, 2018 8:09:51 AM |
| **Attachments:** | image001.png |
| | Markup of plaintiffs topics - CBP - for transmission to Plaintiffs [g"s edits].docx |
| | markup of plaintiffs%27 topics - TSA - for transmission to plaintiffs [g"s edits].docx |

Amy,

It seems like the defendants' emerging strategy is to blame each other and disclaim full responsibility for what happens to people in the TSDB.  For this reason, we need every agency to provide binding testimony.  If you have a suggestion as to how that can be done short of asking each agency to provide binding testimony, we're all ears.

But until then, we expect each agency to provide binding testimony as to the basic information identified in our proposed topics with the mutual adjustments that our meet/confer has identified thus far--which is reflected in the documents attached.

[**note:** We'd also like to explore with you all whether the defendants want to put forward a witness to testify on behalf of the Watchlisting Advisory Council.  This ad hoc interagency body seems to have substantial authority over the watchlisting system, and it seems perfectly reasonable to want to hear more from a heretofore secret governmental body.  We're contemplating filing a motion for leave to conduct some discovery regarding WAC and it's periodic "statements of conclusions"]

At this point, my suggestion is that you all file something today and notice for hearing on 3/16.  I won't have access to electronics the remainder of the day and am not willing to interrupt Amri's dep to discuss things unrelated to Amri's dep.  I think we could make more progress on reaching an agreement with more time, but I'll be tied up all day with Amri's dep.

In the final analysis, I don't think we're too far away from each other, so if you start preparing your witnesses now, you'll have a bit of time to do some final prep in light of whatever the court decides on 3/16.  That said, if you all want another week, we certainly think that is reasonable and we think we should ask.  Perhaps another joint motion to extend discovery one more week for the purposes of completing the deps?  The court can't say we're not all trying our best to move as quickly as we can.

Regards,
Gadeir

PS - Unless Judge Anderson orders otherwise, we expect each deposition to last 7-on-the-record-hours.

Gadeir Abbas, Esq.
**Senior Litigation Attorney**



453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

---

**From:** Powell, Amy (CIV) <Amy.Powell@usdoj.gov>
**Sent:** Wednesday, March 7, 2018 3:49:44 PM
**To:** Gadeir Abbas; Ahmed Mohamed; Konkoly, Antonia (CIV)
**Cc:** Lena F. Masri, Esq.; Roth, Dena M. (CIV); Healy, Christopher (CIV)
**Subject:** RE: 30(b)(6) topics

Huh.  I guess I'm not sure what you mean by "fully adopt TSC's testimony by stipulation".  I guess we don't have a transcript to point to yet, but they would have to know what they were adopting.  It would be weird, for example, for TSA to "adopt" TSC testimony on TSC policy and procedure.  That's TSC's bailiwick, and no one's going to contradict them.  But they wouldn't "adopt" it, because they don't have agency knowledge about it.  On the other hand, TSA wouldn't "adopt" an answer like "I doesn't know" to something that TSA DOES know the answer to – that might be a topic appropriate for TSA testimony.  So . . . what kind of information would you think other agencies should "adopt"?  We're open to discussing!

---

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Wednesday, March 07, 2018 4:43 PM
**To:** Ahmed Mohamed <aMohamed@cair.com>; Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>; Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>
**Cc:** Lena F. Masri, Esq. <lmasri@cair.com>; Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** Re: 30(b)(6) topics

Thanks Amy. I'll do my best to review this evening. But with tomorrow's deposition and prep for it, it may be tough.

As an initial matter, are TSA, CBP, and FBI willing to fully adopt TSC's testimony via stipulation? That may get us somewhere if they are. But I agree with you that we don't have a lot of time to explore and I doubt your other agency clients would agree.

I think you can appreciate that, if everyone isn't signing up and adopting TSC's answers,

there has to be some overlap between the questions we pose to various agencies.


From: Powell, Amy (CIV)
Sent: Wednesday, March 7, 3:11 PM
Subject: 30(b)(6) topics
To: Gadeir Abbas, Ahmed Mohamed, Konkoly, Antonia (CIV)
Cc: Lena F. Masri, Esq., Roth, Dena M. (CIV), Healy, Christopher (CIV)


Gadeir –

Thanks for sending these along.    I am concerned that Plaintiffs are not making a real effort
to identify gaps in the information already received.  For example, you sought and received
extensive testimony about the interagency process for watchlisting and developing
watchlisting policy.  And both TSC and DHS TRIP have described in great detail the
redress process.    Instead of identifying information that Plaintiffs still do not know and
haven't had a chance to ask, these notices seem to be seeking the same information again
from different deponents.  Please bear in mind that witnesses who can speak on behalf of
these large federal agencies as to matters of considerable national security significance are
likely to be relatively senior, high level government officials.  It is not reasonable to demand
that we prep high level government officials on multiple broad topics involving considerable
detail to provide you with information that you already have.  Particularly when much of that
information is, at best, tangential to Plaintiffs' sole remaining claim.

Given that, we continue to think that 7 hours of deposition is likely to be unreasonable but
we may be flexible as to duration if we can come to some agreement as to topics.

The attached Word documents reflect our thoughts on where your proposed topics for TSA
and CBP are vague, duplicative or confusing, overlap with other  deposition testimony
already given, or are otherwise inappropriate.  For these agencies, we have also provided
proposed alternative topics and excluded areas of testimony.  Since our previous proposal,
we have expanded each set of proposed topics based on the general areas of inquiry that
seem to concern you.    But generally, we maintain that the only arguable "gaps" in
Plaintiffs' information at this point are: the other agencies' unique interests in TSDB
watchlisting; and how they use TSDB information in ways that might arguably have affected
plaintiffs.   Generally, our proposed topics are intended to be fairly broad and include the
information we think Plaintiffs want.   If you think the excluded topics are relevant, please let
me know why.  If you think the proposed topics are insufficient, please identify what is
missing.

We're still working on the FBI topics, and hope to send you something shortly.  With the
clock running out, it seems we need to fish or cut bait on agreed topics soon.  We would
therefore appreciate getting a response as soon as practicable.


Amy Elizabeth Powell
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice

310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Tuesday, March 06, 2018 1:58 PM
**To:** Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>; Ahmed Mohamed
<aMohamed@cair.com>; Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>
**Cc:** Lena F. Masri, Esq. <lmasri@cair.com>; Roth, Dena M. (CIV)
<droth@CIV.USDOJ.GOV>; Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** RE: TSA 30(b)(6)

Amy,

I'm attaching our dep notices here.  I've included specific dates and location, but as before,
we're happy to accommodate.  I think deposing all three agencies in a single week would
be grueling for everyone, but if that's our only option, that's our only option. If you feel the
need for more time for prep, we're certainly not opposed to doing the dep the last week of
March if Judge Anderson allows for it.

Regards,

Gadeir Abbas, Esq.

**Senior Litigation Attorney**



453 New Jersey Ave, SE

Washington, DC 20003

Tel: 202.742.6420 Fax: 202.488.0833

Dir: 202.640.4935 Cell: 720.251.0425

**www.cair.com**

Licensed to practice in VA, not in DC.

Practice limited to federal matters.

*[This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.]*

Markup of Plaintiffs' topics – TSA

Things we should exclude from all topics: DHSTRIP, No Fly List  (obviously including revised redress process); vetting and credentialing (which is a separate issue and separate redress process  and not a harm alleged by any of the Plaintiffs).

1. TSA's receipt and handling of information received from the Terrorist Screening Database ("TSDB") information.

2. TSA's use and annotation of TSDB information for any purpose,passenger pre-board screening including but not limited to perform all screening functions.

3. TSA's role and interest in the TSDBterrorism watchlisting in general, including CBP's TSA's reporting of its encounters with persons listed in the TSDB, its role in compiling so-called "encounter information," its access to and use of information in the Sentinel database, and TSA's role in the Watchlisting Advisory Council.

4. TSA's role or responsibility in disseminating and controlling TSDB information.

5. TSA's role in the nominations process for the TSDB (including generally TSA's understanding of how and why individuals are placed in the TSDB).

6. TSA's role in the redress process for persons placed in the TSDB.

7. TSA's training to employeespolicies regarding thehow to handling ofe both TSDB information and encounters with persons listed in the TSDB.

8. The content of the Overview document (see bates numbers Elhady-FBITSC-001947 to -56), including the TSA's input into the standards for inclusion in the TSDB or subsets (i.e. the Selectee List) administered by the TSA.

9. TSA's relationship and interaction with the FBI and TSC in performing TSA's screening functions in connection with encounters with persons listed in the TSDB.

10. The evolution and history of the TSDB, the Watchlisting Advisory Council, practices and policies regarding how agencies use and disseminate TSDB information, and the interagency processes regarding the watchlisting enterprise.

**Defendants' Proposed Topics:**

Excluding from all topics information about TSC policy and procedure, about the No Fly List, about DHS TRIP, and about TSA vetting and credentialing:

- TSA's role and interest in the TSDB generally
- TSA's dissemination of information received from the TSDB

---

**Comments:**

**Commented [A1]:** Don't agree - TSC did not testify about TSA's role.  DHS TRIP made clear that TSA plays a separate role in the redress process.

**Commented [A2]:** Don't agree – We'll ask about all TSA uses of TSDB information—including vetting and credentialing.

**Commented [A3]:** Several plaintiffs are impacted by TSDB-related vetting/credentialing issues.  For example, Osama Ahmed's job at the airport.

**Commented [A4]:** Topics 1, 2, 4, 7 all seem more or less duplicative, and I'm not sure how they differ- they all seem to cover Handling, dissemination and use of information from the TSDB. I have topics below that more clearly delineate the information at issue:  handling, dissemination, use.

**Commented [A5]:** AGREED

**Commented [A6]:** Not sure what this means but it's not relevant

**Commented [A7]:** DISAGREE. We need to ask about all uses, not just those related to "pre-board screening."

**Commented [A8]:** Encounter information and WLAC adequately covered by TSC.  TSC testified at length about the interagency process. There is no "gap" here to fill in. That is a general question re: watchlisting policy/procedure properly directed to TSC, who did in fact cover it.

**Commented [A9]:** We're not opposed to the revision necessarily, as it is general.  However, we'll expect the deponent to testify about all the examples listed after "including" as part of the general topic.

**Commented [A10]:** Covered by TSC

**Commented [A11]:** TSA's role was more than adequately covered by Dr. Moore (Manager of TSA' Transportation [...]

**Commented [A12]:** DISAGREE.

**Commented [A13]:** This largely overlaps with 1, 2, and [...]

**Commented [A14]:** Agree.

**Commented [A15]:** Covered by Groh or other topics here

**Commented [A16]:** DISAGREE.  I didn't ask TSC about a [...]

**Commented [A17]:** I'm really not sure what this means [...]

**Commented [A18]:** The FBI shows up at some airport [...]

**Commented [A19]:** Not limited to TSA information and [...]

**Commented [A20]:** DISAGREE - Judge Anderson said th [...]

**Commented [A21]:** DISAGREE – TSC gave the impressio [...]

**Commented [A22]:** See earlier comment re TRIP

**Commented [A23]:** If any TSA vetting/credentialing use [...]

- TSA's use of information received from the TSDB in conducting passenger pre-board screening
- TSA's policies regarding the handling of information received from the TSDB

**Commented [A24]:** DISAGREE.  We expect testimony on all the ways TSA uses TSDB information.

Markup of plaintiffs' topics - CBP

1. CBP's receipt and handling of Terrorist Screening Database ("TSDB") information.

2. CBP's use and annotation of information received from the TSDB information for conducting inspections at the border any purpose, including but not limited to performing its screening and border control functions.

3. CBP's role in terrorism watchlisting in general, including CBP's reporting of its encounters with persons listed in the TSDB, its role in compiling so-called "encounter information," its access to and use of information in the Sentinel database, and the Watchlisting Advisory Council.

4. CBP's role or responsibility in disseminating or controlling TSDB information.

5. CBP's role in the nominations process for the TSDB (including generally CBP's understanding of how and why individuals are placed in the TSDB).

6. CBP's role in the redress process for persons placed in the TSDB.

7. CBP's training to employees regarding how to handle both TSDB information received from TSDB and encounters with persons listed in the TSDB.

8. The content of the Overview document (see bates numbers Elhady-FBITSC-001947 to 56), including the CBP's input into the standards for inclusion in the TSDB or subsets lists or annotations administered by the CBP.

9. CBP's relationship and interaction with the FBI and TSC in performing CBP's screening and border control functions in connection with encounters with persons listed in the TSDB.

**Proposed topics:**

Excluding information about the No Fly List or TSC policy and procedure:

- CBP's role and interest in the TSDB generally
- CBP's dissemination of information received from the TSDB
- CBP's use of information received from the TSDB in conducting inspections at the border
- CBP's policies regarding the handling of information received from the TSDB

**Comments:**

**Commented [aep1]:** Vague, and apparently duplicative with 2, 4 and 7, at least in part. I suggest streamlining per below

**Commented [GA2]:** DISAGREE

**Commented [aep3]:** This is the only allegation plaintiffs have made about CBP

**Commented [GA4]:** DISAGREE. We need testimony on all CBP uses.

**Commented [aep5]:** These issues are largely covered by TSC and do not think they would properly be a focus.

**Commented [GA6]:** We are open to this so long as its clear that we expect testimony regarding the specific examples in our language.

**Commented [aep7]:** Duplicative in part with 2 and 4, confusingly worded

**Commented [GA8]:** AGREE

**Commented [aep9]:** Covered by TSC

**Commented [GA10]:** DISAGREE. For a lot of reasons. CBP must have some views about the nomination process that inform how it uses the outcome of that nomination process, which is TSDB information. We expect testimony on this. We also expect testimony on CBP s role in the WAC.

**Commented [aep11]:** Covered by TSC

**Commented [GA12]:** DISAGREE. No one has provided binding testimony about CBP s role in the redress process.

**Commented [aep13]:** As with TSA, training is potentially a very broad topic and it would not be reasonable to prepare a witness about the weeds of training topics across a very large agency.

**Commented [GA14]:** AGREE.

**Commented [aep15]:** Covered by TSC

**Commented [GA16]:** DISAGREE. All the CBP-regarding content has gotta be fair game.

**Commented [aep17]:** Again, I m not sure what this means. Information about CBP s role in general is otherwise covered by other topics, including encounter management. Other Information is likely to be privileged; but again, I m just not sure what this means.

**Commented [GA18]:** DISAGREE. CBP enlists the FBI at certain CBP-led encounters. We expect testimony on why that happens, how it happens, for what purposes, via what mechanisms, etc.

**Commented [GA19]:** DISAGREE. CBP, via WAC, plays some role in establishing/changing TSC operations.

**Commented [GA20]:** DISAGREE. All CBP uses of TSDB information are fair game.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

_____
                                                                    )
Anas ELHADY, et al.,                                   )
                                                                    )
          Plaintiffs,                                            )
                                                                    )
v.                                                                 )          Case No. 1:16-cv-375
                                                                    )          Hon. Anthony J. Trenga
Charles Kable, et al.,                                    )
                                                                    )
          Defendants.                                        )
_____)

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 13 – 3.8.18 Email with Attachment re:
Defendants' Markup of FBI topics**

| | |
|---|---|
| **From:** | Powell, Amy (CIV) |
| **To:** | "Gadeir Abbas"; Ahmed Mohamed; Konkoly, Antonia (CIV) |
| **Cc:** | Lena F. Masri, Esq.; Roth, Dena M. (CIV); Healy, Christopher (CIV) |
| **Subject:** | RE: 30(b)(6) topics |
| **Date:** | Thursday, March 08, 2018 6:18:00 PM |
| **Attachments:** | markup of plaintiffs" topics - FBI - for transmission to plaintiffs.docx |
| | image001.png |

Gadeir –

I'm sending along our markup of the FBI topics here.  I'm still not certain whether we have an FBI witness available that last week of discovery.

Since it seems likely we need to file a motion tomorrow on this, can we set a time to meet and confer?  I am mindful that we are not really all that far apart.  If you could agree to our topics with some tweaking or to your topics with our exclusions and some tweaking, we may yet be able to resolve this.  But for now, I assume we need to meet and confer on a motion for a protective order.

Two other things.  TSA's expected deponent has changed – we expect to designate Hao-y Froemling to testify for TSA.  Also, in  our email discussion of dates, I belatedly noticed that you switched the proposed dates for deponents.  We had stated that the 22nd was an available date for CBP and the 20th was an available date for TSA.  I'll confirm whether those dates are still available in light of the need to hear a motion on the 16th.

Thanks

Amy Elizabeth Powell
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

---

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Thursday, March 08, 2018 8:08 AM
**To:** Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>; Ahmed Mohamed <aMohamed@cair.com>; Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>
**Cc:** Lena F. Masri, Esq. <lmasri@cair.com>; Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** Re: 30(b)(6) topics

Amy,

It seems like the defendants' emerging strategy is to blame each other and disclaim full responsibility for what happens to people in the TSDB.  For this reason, we need every agency to provide binding testimony.  If you have a suggestion as to how that can be done short of asking each agency to provide binding testimony, we're all ears.

But until then, we expect each agency to provide binding testimony as to the basic information identified in our proposed topics with the mutual adjustments that our meet/confer has identified thus far--which is reflected in the documents attached.

[**note:** We'd also like to explore with you all whether the defendants want to put forward a witness to testify on behalf of the Watchlisting Advisory Council.  This ad hoc interagency body seems to have substantial authority over the watchlisting system, and it seems perfectly reasonable to want to hear more from a heretofore secret governmental body.  We're contemplating filing a motion for leave to conduct some discovery regarding WAC and it's periodic "statements of conclusions"]

At this point, my suggestion is that you all file something today and notice for hearing on 3/16.  I won't have access to electronics the remainder of the day and am not willing to interrupt Amri's dep to discuss things unrelated to Amri's dep.  I think we could make more progress on reaching an agreement with more time, but I'll be tied up all day with Amri's dep.

In the final analysis, I don't think we're too far away from each other, so if you start preparing your witnesses now, you'll have a bit of time to do some final prep in light of whatever the court decides on 3/16.  That said, if you all want another week, we certainly think that is reasonable and we think we should ask.  Perhaps another joint motion to extend discovery one more week for the purposes of completing the deps?  The court can't say we're not all trying our best to move as quickly as we can.

Regards,
Gadeir

PS - Unless Judge Anderson orders otherwise, we expect each deposition to last 7-on-the-record-hours.

Gadeir Abbas, Esq.
**Senior Litigation Attorney**



**Council on American-Islamic Relations**
453 New Jersey Ave, SE
Washington, DC 20003
Tel: 202.742.6420 Fax: 202.488.0833
Dir: 202.640.4935 Cell: 720.251.0425
**www.cair.com**

---

**From:** Powell, Amy (CIV) <Amy.Powell@usdoj.gov>
**Sent:** Wednesday, March 7, 2018 3:49:44 PM
**To:** Gadeir Abbas; Ahmed Mohamed; Konkoly, Antonia (CIV)
**Cc:** Lena F. Masri, Esq.; Roth, Dena M. (CIV); Healy, Christopher (CIV)
**Subject:** RE: 30(b)(6) topics

Huh.  I guess I'm not sure what you mean by "fully adopt TSC's testimony by stipulation".  I guess we don't have a transcript to point to yet, but they would have to know what they were adopting.  It would be weird, for example, for TSA to "adopt" TSC testimony on TSC policy and procedure.  That's TSC's bailiwick, and no one's going to contradict them.  But they wouldn't "adopt" it, because they don't have agency knowledge about it.  On the other hand, TSA wouldn't "adopt" an answer like "I doesn't know" to something that TSA DOES know the answer to – that might be a topic appropriate for TSA testimony.  So . . . what kind of information would you think other agencies should "adopt"? We're open to discussing!

---

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Wednesday, March 07, 2018 4:43 PM
**To:** Ahmed Mohamed <aMohamed@cair.com>; Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>; Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>
**Cc:** Lena F. Masri, Esq. <lmasri@cair.com>; Roth, Dena M. (CIV) <droth@CIV.USDOJ.GOV>; Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** Re: 30(b)(6) topics

Thanks Amy. I'll do my best to review this evening. But with tomorrow's deposition and prep for it, it may be tough.

As an initial matter, are TSA, CBP, and FBI willing to fully adopt TSC's testimony via stipulation? That may get us somewhere if they are. But I agree with you that we don't have a lot of time to explore and I doubt your other agency clients would agree.

I think you can appreciate that, if everyone isn't signing up and adopting TSC's answers, there has to be some overlap between the questions we pose to various agencies.

From: Powell, Amy (CIV)
Sent: Wednesday, March 7, 3:11 PM
Subject: 30(b)(6) topics

To: Gadeir Abbas, Ahmed Mohamed, Konkoly, Antonia (CIV)
Cc: Lena F. Masri, Esq., Roth, Dena M. (CIV), Healy, Christopher (CIV)

Gadeir –

Thanks for sending these along.    I am concerned that Plaintiffs are not making a real effort to identify gaps in the information already received.  For example, you sought and received extensive testimony about the interagency process for watchlisting and developing watchlisting policy.  And both TSC and DHS TRIP have described in great detail the redress process.   Instead of identifying information that Plaintiffs still do not know and haven't had a chance to ask, these notices seem to be seeking the same information again from different deponents.  Please bear in mind that witnesses who can speak on behalf of these large federal agencies as to matters of considerable national security significance are likely to be relatively senior, high level government officials.  It is not reasonable to demand that we prep high level government officials on multiple broad topics involving considerable detail to provide you with information that you already have.  Particularly when much of that information is, at best, tangential to Plaintiffs' sole remaining claim.

Given that, we continue to think that 7 hours of deposition is likely to be unreasonable but we may be flexible as to duration if we can come to some agreement as to topics.

The attached Word documents reflect our thoughts on where your proposed topics for TSA and CBP are vague, duplicative or confusing, overlap with other  deposition testimony already given, or are otherwise inappropriate.  For these agencies, we have also provided proposed alternative topics and excluded areas of testimony.  Since our previous proposal, we have expanded each set of proposed topics based on the general areas of inquiry that seem to concern you.    But generally, we maintain that the only arguable "gaps" in Plaintiffs' information at this point are: the other agencies' unique interests in TSDB watchlisting; and how they use TSDB information in ways that might arguably have affected plaintiffs.   Generally, our proposed topics are intended to be fairly broad and include the information we think Plaintiffs want.   If you think the excluded topics are relevant, please let me know why.  If you think the proposed topics are insufficient, please identify what is missing.

We're still working on the FBI topics, and hope to send you something shortly.  With the clock running out, it seems we need to fish or cut bait on agreed topics soon.  We would therefore appreciate getting a response as soon as practicable.


Amy Elizabeth Powell
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

**From:** Gadeir Abbas [mailto:gAbbas@cair.com]
**Sent:** Tuesday, March 06, 2018 1:58 PM
**To:** Powell, Amy (CIV) <apowell@CIV.USDOJ.GOV>; Ahmed Mohamed
<aMohamed@cair.com>; Konkoly, Antonia (CIV) <ankonkol@CIV.USDOJ.GOV>
**Cc:** Lena F. Masri, Esq. <lmasri@cair.com>; Roth, Dena M. (CIV)
<droth@CIV.USDOJ.GOV>; Healy, Christopher (CIV) <chhealy@CIV.USDOJ.GOV>
**Subject:** RE: TSA 30(b)(6)

Amy,

I'm attaching our dep notices here.  I've included specific dates and location, but as before,
we're happy to accommodate.  I think deposing all three agencies in a single week would
be grueling for everyone, but if that's our only option, that's our only option. If you feel the
need for more time for prep, we're certainly not opposed to doing the dep the last week of
March if Judge Anderson allows for it.

Regards,


Gadeir Abbas, Esq.

**Senior Litigation Attorney**




453 New Jersey Ave, SE

Washington, DC 20003

Tel: 202.742.6420 Fax: 202.488.0833

Dir: 202.640.4935 Cell: 720.251.0425

**www.cair.com**


Licensed to practice in VA, not in DC.

Practice limited to federal matters.


*[This email may contain confidential and privileged material for the sole use of the intended*

*recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.]*

Any proposal Defendants might accept would exclude from all topics information specifically about the No Fly List AND information about TSC policy and procedure.

1. FBI's receipt and handling of <u>information received from the</u> Terrorist Screening Database ("TSDB") ~~information.~~

2. FBI's use ~~and annotation of~~ <u>information received from the</u> TSDB ~~information for any purpose, including but not limited to performing its screening, intelligence gathering, and investigative functions.~~

3. FBI's role in ~~terrorism watchlisting~~<u>the TSDB</u> in general, ~~including FBI's reporting of its encounters with persons listed in the TSDB, its role in compiling so-called "encounter information," its access to and use of information in the Sentinel database, and the Watchlisting Advisory Council.~~

4. FBI's role or responsibility in disseminating and controlling <u>information received from the</u> TSDB ~~information.~~

5. FBI's role in the nominations process for the TSDB ~~(including generally CBP's understanding of how and why individuals are placed in the TSDB).~~

6. ~~FBI's role in the redress process for persons placed in the TSDB.~~<u>;</u>

7. FBI's training to employees regarding how to handle both TSDB information and encounters with persons listed in the TSDB.

8. ~~The content of the Overview document (see bates numbers Elhady FBITSC 001947 to -56), including the CBP's input into the standards for inclusion in the TSDB or subsets lists or annotations administered by the CBP.~~

9. ~~FBI's relationship and interaction with the FBI and TSC in performing CBP's screening and border control functions in connection with encounters with persons listed in the TSDB.~~

10. The evolution and history of the TSDB, the Watchlisting Advisory Council, practices and policies regarding how agencies use and disseminate TSDB information, and the interagency processes regarding the watchlisting enterprise

11. ~~The National Criminal Information Center database, h~~<u>H</u>ow ~~TSDB and Sentinel~~ information <u>from the TSDB</u> is incorporated into the NCIC database, how many individuals have access of any kind to NCIC database, and how persons with access to the database query it

**Defendants' Proposal:**

All topics exclude information about the No Fly List and information about TSC policy and procedure.

- FBI's role and interest in the TSDB generally;
- FBI's role in making nominations to the TSDB;
- FBI's dissemination and use of information received from the TSDB.

---

**Comments:**

**Commented [aep1]:** Inclined to delete altogether. "receipt and handling" seems duplicative with topics 2 and 4 and potentially 7. I think we propose to streamline per below proposal.

**Commented [aep2]:** Sentinel is an FBI case management system that is not limited to TSDB information. See generally https://www.fbi.gov/services/records-management/foipa/privacy-impact-assessments/sentinel. So "access to Sentinel" and Sentinel generally is not an appropriate topic. Its arguable relevance to the use and dissemination topic is covered by that to

**Commented [aep3]:** These topics are largely duplicative with TSC deposition. Groh testified at length about encounter information, and interagency processes. We are not opposed necessarily to testimony about any unique role FBI has, but do not want to prep another FBI witness on the same subjects and rehash the same subjects re: interagency process. FBI, after all, has already put forward a witness on these same facts

**Commented [aep4]:** Wholly covered by TSC and DHSTRIP, including the interagency process

**Commented [aep5]:** Per interrogatory responses, this training is provided by TSC, and Plaintiffs already had their chance at this one. FBI policy re: dissemination adequately covered elsewhere.

**Commented [aep6]:** Covered by TSC.

**Commented [aep7]:** Not sure what this means, and reference to CBP seems like a mistake

**Commented [aep8]:** Not limited to FBI information. Adequately covered by TSC.

**Commented [aep9]:** TSC could have (and did to some extent did) testify about this because they export the information. No need to re-hash with FBI.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

_____
                                        )
Anas ELHADY, et al.,                    )
                                        )
        Plaintiffs,                     )
                                        )
v.                                      )        Case No. 1:16-cv-375
                                        )        Hon. Anthony J. Trenga
Charles Kable, et al.,                  )
                                        )
        Defendants.                     )
_____)

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 14 – FBI Interrogatory Responses**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| ANAS ELHADY, *et al.*, ) | |
| ) | **Case No. 16-cv-00375** |
| Plaintiffs, ) | **Hon. Anthony J. Trenga** |
| ) | |
| v. ) | |
| ) | |
| CHARLES H. KABLE, Director of the ) | |
| Terrorist Screening Center; in his official ) | |
| capacity, *et al.*; ) | |
| ) | |
| Defendants. ) | |
| _____/ | |

## DEFENDANTS' OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO FBI

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants Charles H. Kable, Director of the Terrorist Screening Center ("TSC"); Kelli Ann Burriesci, Principal Deputy Director of TSC; Timothy P. Groh, Deputy Director for Operations at TSC; Deborah Moore, Director of Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP"); Russell Travers, Director of the National Counterterrorism Center ("NCTC"); David Pekoske, Administrator of the Transportation Security Administration ("TSA"); Christopher Wray, Director of the Federal Bureau of Investigation ("FBI"); and Kevin K. McAleenan, Acting Commissioner of U.S. Customs and Border Protection ("CBP"); hereby submit objections to the discovery requests titled, "Plaintiffs' First Set of Interrogatories to Defendant Wray," served January 24, 2018. Defendants will refer to these hereafter as the First Set of Interrogatories to FBI.

The Defendants' responses are provided in accordance with Federal Rule 26(b)(1), which permits the discovery of any information, not privileged, that is both (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case. The Defendants do not, by

1

providing such information, waive any objection to its admissibility on the grounds of relevance, proportionality, accessibility, materiality, or other appropriate ground. The inadvertent production by the Defendants of information protected by any privilege or protection shall not constitute a waiver of the applicable privilege or protection as to any information disclosed. The Defendants reserve the right to supplement or amend their responses should additional or different information become available.

## OBJECTIONS AS TO DEFINITIONS AND INSTRUCTIONS

1.      Defendants object to the Plaintiffs' Definition 1 (of "you" and "your" and "Defendant") to the extent that such definitions purport to apply to the Defendant or anyone else individually.  In responding to the Interrogatories, Defendant responds in each and every response on behalf of the FBI, based upon information in the agency's possession, custody, or control.

2.      Defendants object to other definitions because they define terms not actually used in this set of requests for production.  Defendants reserve all objections to such definitions if they are used in future discovery requests.

3.      Defendants object to the definition of TSC.  Plaintiffs have been repeatedly reminded of the publicly available information that Christopher Piehota is not the Director of the TSC.  The other agency Defendants are similarly misdefined.  *See generally* Dkt. No. 58 (Notice of Substitution of Defendants).

4.      Defendants object to the Definition of Plaintiffs to the extent this is intended to expand the total number of interrogatories available or affect only some of the Plaintiffs.  The

interrogatories are made on behalf of only a subset of the Plaintiffs but count against the permissible number of total interrogatories.

5.      Defendants object to Defendants object to the Plaintiffs' Definition 7 (of "TSDB" "Terrorism Screening Database" or "watch list") as vague to the point of meaningless. The actual database at issue is known as the "Terrorist Screening Database", or "TSDB", but Plaintiffs define it using a colloquial term without legal definition -- "the terrorism watch list" -- without giving the defined terms further content or definition. Defendants will assume those terms refer to the Terrorist Screening Database and will respond as such with respect to each and every interrogatory that uses these terms.

6.      Defendants object to Definition 14, which exceeds Defendants' obligations under the Federal Rules.   It is not clear that this definition applies to any of the interrogatories, which generally request identification of a "number" or some other noun which is not an "act, instance, occurrence, statement, event, transaction, or conduct."  To the extent it were intended to apply, defendants object on grounds of vagueness.  Moreover, the identification of documents, witnesses and other extraneous information about an "act" would require another interrogatory or request for production.

7.      Defendants object to Instruction 1 insofar as it implies that the witness is speaking on his own behalf or that of any other individual.  In responding to the Interrogatories, Defendant responds in each and every response on behalf of the FBI, based upon information in the agency's possession, custody, or control.

8.      Defendants object to Instruction 5 insofar as it applies to privileged communications between counsel, or between parties and their counsel, to the extent it conflicts

3

with the Parties' Joint Discovery Plan, as approved by the court, which specifically provides that: "If any discovery request is susceptible of a construction that calls for the production of such documents, those documents need not be produced or identified on any privilege log." It also conflicts with the Federal Rules of Civil Procedure and ordinary practice by supposing that privilege is waived if not asserted on such a log and by requiring identification of privileged documents beyond what is ordinarily required on a privilege log. With respect to each and every request, Defendants respond consistently with the Discovery Plan and the Federal Rules.

9.      Defendants object to Instruction 5 to the extent it imposes obligations in excess of those imposed by the Federal Rules, which do not require a particular form of a privilege log. As set forth in the discovery plan, Defendants reserve the right NOT to produce a specific privilege log when such a log would itself reveal privileged or protected information. Further, on its face, Instruction 5 appears to seek production or a log of documents, and is therefore inapplicable to these interrogatories. With respect to each and every request, Defendants respond consistently with the Discovery Plan and the Federal Rules.

10.     Defendants object to Instruction 6 to the extent it imposes obligations in excess of those imposed by the Federal Rules, which do not require identification of documents that no longer exist. Such an exercise is likely impossible, but in any event burdensome, disproportionate and not required by the Federal Rules. Further, on its face, Instruction 6 appears to seek production or an index of documents, and is therefore inapplicable to these interrogatories. Defendants will comply with the Federal Rules.

## OBJECTIONS

*Int. 1. Identify every incident in the last 15 years that the FBI considers an act of terrorism or an attempt to commit an act of terrorism. Limit your response to acts of terrorism and*

4

*attempted acts of terrorism occurring within the United States. Provide a prose description of each incident.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The interrogatory does not define "act of terrorism" or "attempt" or "prose description." Terrorism has several different legal definitions, depending on context, and the interrogatory could seek information about acts of domestic terrorism or international terrorism, acts of terrorism as punishable under various federal or state laws in the United States or the under laws of another country, or it could include related criminal or noncriminal activity directly or indirectly related to such acts or attempts or it could include nonpublic information about suspected terrorist activity, regardless of whether or not such activity culminated in violent attacks inside the United States. The request is also vague in that it seeks a response as to what the FBI "considers" to be an act of terrorism or attempted terrorism; the FBI does not maintain records reflecting "considered" criminal and terrorist acts. It also fails to define "acts . . . occurring with the United States;" the locations of an act could based solely on where the harm occurred, or it be based on where harm was intended to occur, where one or more of the conspirators or accomplices were located during the course of the act, where instrumentalities of the crime were located, or where necessary actions or processes forming part of the act or offense took place. FBI does not compile any of these specific categories of data and attempting to compile them would be unduly burdensome, likely impossible, and certainly disproportionate to the needs of the case.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case. Specific acts of terrorism and attempted terrorism within the United States do not provide a useful category of data

or benchmark to assess the propriety of the process available to plaintiffs. The effectiveness of the TSDB is not at issue; rather, the plaintiffs' challenge the adequacy of the process available for individuals who believe they are in the TSDB. Even if effectiveness of the TSDB were at issue, this information would not provide a useful metric for evaluating it. Defendants also object to the timeframe of the request as irrelevant and burdensome and disproportionate to the needs of the case. Plaintiffs seek forward-looking, injunctive relief. While their own past experiences are relevant to the deprivation of a liberty interest, the evaluation of the placement and redress process ten years ago is not remotely relevant to their claims.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). A comprehensive answer could include, for example, classified and privileged details about known and charged terrorist activity, as well as details about suspected terrorist plots, foiled terrorist plots, and ongoing investigations, regardless of whether or not such information has become public.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** The FBI stands on its objections.

***Int. 2. For all incidents responsive to Interrogatory 1, identify the total number—to the best of the FBI's ability—of persons the FBI believes perpetrated those incidents.***

**Objections:** Defendants hereby incorporate all of the objections to Interrogatory 1. Defendants further object to the further information sought in this interrogatory as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The phrase "perpetrated those incidents" is undefined, vague and susceptible to multiple interpretations.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case. The effectiveness of the TSDB is not at issue; rather, the plaintiffs' challenge the adequacy of the process available for individuals who believe they are in the TSDB. Even if effectiveness of the TSDB were at issue, this information would not provide a useful metric for evaluating it.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege and the law enforcement and investigatory files privilege. A comprehensive answer could include, for example, classified and privileged details about known and charged terrorist activity, as well as details about suspected terrorist plots, foiled terrorist plots, and ongoing investigations, regardless of whether or not such information has become public.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** The FBI stands on its objections.

*Int. 3. For all persons identified in Interrogatory 2, identify the total number of persons who*
*were in the TSDB at the time they committed or attempted to commit a violent act of*
*terrorism.*

**Objections:**   Defendants hereby incorporate all of the objections to Interrogatories 1 and 2.

Defendants further object to the additional information sought in this interrogatory as vague,

burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim

in the case concerning procedural due process.  Interrogatory 3 introduces the modifier "violent"

to act of terrorism, still without defining any of those terms, but the additional term suggests that

Plaintiffs may or may not be seeking a different subset of the previous information requested.

Defendants object to the request as seeking information not relevant to any claim or defense

in this case and disproportionate to the needs of the case.  The effectiveness of the TSDB is not at

issue; rather, the plaintiffs' challenge the adequacy of the process available for individuals who

believe they are in the TSDB.  Even if effectiveness of the TSDB were at issue, this information

would not provide a useful metric for evaluating it.

Defendants object to the interrogatory to the extent it seeks information that is subject to

the state secrets privilege and the law enforcement and investigatory files privilege.   A

comprehensive answer could include, for example, classified and privileged details about known

and charged terrorist activity, as well as details about suspected terrorist plots, foiled terrorist plots,

and ongoing investigations, regardless of whether or not such information has become public.

Defendants further object to the interrogatory because it seek information about the TSDB status

of particular individuals or categories of individuals at a specific point in time. That information

is subject to the law enforcement privilege and is SSI (including SSI that is not appropriate for

disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** The FBI stands on its objections.

*Int. 4. Explain how the FBI receives TSDB information and how and to what entities the FBI disseminates TSDB information*

**Objections:** Defendants object to the form of this interrogatory, which is in fact two interrogatories, not one, and should count as such against the total number of interrogatories. Defendants further object to the interrogatory as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The terms "explain", "receives", "and entities" and "TSDB information" are undefined and vague. The request may or may not seek information about, for example, FBI offices that have access to watchlist information exported from TSC, and individuals or companies working for the federal government. The term "disseminates" could include only external exports of TSDB data, or it could include instances of illicit access, screening conducted by and at FBI, further use or discussion of TSDB data of which FBI may or may not be institutionally aware, or any number of other possibilities. The broader readings are unduly burdensome and disproportionate to the needs of the case.

Defendants further object to the request as vague, confusing and overbroad insofar as it applies to TSC, which is administered by FBI.  TSC maintains the TSDB, rather than "receiving" TSDB information.  In responding, FBI will therefore exclude TSC from its response.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case.  Incidental or indirect access to TSDB data in ways that never have and never arguably could impact the Plaintiffs is not remotely relevant to their claims.  Investigative uses of TSDB data are not relevant to Plaintiffs' claims.  Moreover, the request goes beyond the uses of data that Plaintiffs allege have impacted them.  The term "how" suggests that Plaintiffs may be seeking information about the technical sharing of data and the form in which it is shared and even data security protocols.  Additionally, searching for information about entities with which FBI has no direct relationship would be burdensome or impossible, and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  Such information could include, for example, a full description of all uses of TSDB information, such as the details described in the definitions and instructions, sensitive technical information and/or the investigative uses of TSDB data.  Specific confidential communications with foreign liaisons are privileged as well.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally.

Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege

**Response:**  Subject to and without waiving the foregoing objections, the FBI responds that it regularly receives exports of TSDB data from TSC. The FBI disseminates data received from the TSDB in furtherance of national security and criminal investigations, in accordance with applicable law and FBI policies pertaining to required and permissive information sharing, to provide information as consistently and fully as possible to other agencies with relevant responsibilities to protect the United States from terrorism and other threats to the national security.

*Int. 5. Identify all restrictions and differential measures, including but not limited to restrictions on the ability to obtain licenses or security clearances, secure employment opportunities (for example, employment opportunities in the sterile areas of airports), that are imposed on individuals placed on the watchlist.*

**Objections:**  Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process.  The interrogatory does not specify by whom or what entities the "restrictions and differential measures" about which it seeks information, "are imposed." Further, to the extent the interrogatory is deemed limited to "restrictions and differential measures" imposed by defendants, the terms are not defined and therefore could be interpreted to include only final agency actions, or, more broadly to include investigative activity, ordinary security screening, or any number of other possibilities.  Moreover, the request for such measures "imposed on people on the watchlist" is vague, ambiguous and overbroad; grammatically, it includes ANY measures imposed on people on the watchlist, regardless of whether such measures are actually

11

related to the TSDB.  On its face, the interrogatory does not define any required degree of relationship between TSDB status and the agency action taken.  Accordingly, to the extent this interrogatory is deemed limited to actions by the FBI, it could seek identification of agency actions only taken with respect to people in the TSDB, actions taken solely as a result of TSDB status, actions taken after investigation that was motivated in part by TSDB status, or any of a number of other possibilities.  The broader readings are both burdensome and irrelevant, as they do not even arguably evidence any deprivation of a liberty interest.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case.  The interrogatory is not limited to uses of data that Plaintiffs allege have impacted them.  Additionally, searching for information about actions taken by other agencies or entities, including entities with which FBI has no direct relationship, would be burdensome or impossible, and disproportionate to the needs of the case.  Additionally, the interrogatory is misdirected, because FBI is not responsible for nor authoritative on actions taken by other agencies and cannot speak on their behalf.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  A comprehensive answer could theoretically require, for example, a full description of all end users of TSDB information, and the specific uses to which it is put and under what circumstances, including investigatory uses, analytical uses, and security precautions.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally.

Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, the FBI responds that it does not impose any restrictions on individuals placed on the No Fly or Selectee Lists.

*Int. 6. Identify all information the FBI believes indicates that the TSDB, Selectee List, or No Fly List is effective.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The terms "information" "indicates" and "effective" are vague and undefined and capable of multiple interpretations. The interrogatory could require simply a repetition of the Defendants' initial disclosures, or it could require an exhaustive analysis of how the TSDB prevents terrorist attacks or it could require a summary of the means by which TSC ensures that TSDB data is accurate and reliable. The broader interpretations would be extremely burdensome, wholly disconnected from Plaintiffs' claims and disproportionate to the needs of the case. This type of information is neither relevant nor useful to evaluating the Plaintiffs procedural due process claims. Insofar as the request is directed at the accuracy and reliability of data or its uses in screening, it is largely misdirected to FBI, which is only one of several nominating agencies, does not conduct screening, and cannot completely address the general effectiveness of screening measures on behalf of the United States.

Defendants further object to the relevance of the effectiveness of the TSDB, the No Fly List, and the Selectee List. The effectiveness of the TSDB, the No Fly List, and the Selectee List has no bearing on the propriety of the process available to plaintiffs or any relevance to any claim

13

or defense at issue in this case.  None of the Plaintiffs currently believes that they are on the No Fly List.  The Selectee List is not relevant to Plaintiffs' property or liberty interests.  Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

To the extent this interrogatory is directed at TSC as well, Defendants object to the interrogatory as duplicative and exclude TSC from the response.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, law enforcement and investigatory files privilege, or SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  The broadest interpretation of the request, for example, would entail a comprehensive analysis of counterterrorism information available to the Government, including classified, privileged and otherwise protected information.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving the foregoing objections, the FBI responds only that, to the extent "effective," refers to the means by which TSC ensures that TSDB data is accurate and reliable, the FBI refers plaintiffs to the Response to Interrogatory Number 25 in the First Set of Interrogatories to TSC, to TSC FAQs at Elhady-FBITSC-001306-1308, and to the Overview Document at Elhady-FBITSC-001947-1956.  The FBI believes that the TSDB is a highly

14

valuable counter-terrorism resource in furtherance of the FBI's mission to protect the national security of the United States.

### *Int. 7. Identify all uses of TSDB information by any entity.*

Objections:   Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process.   The FBI does not maintain records or information regarding all uses of the TSDB by any entity.  Defendants refer plaintiffs to TSC Responses to Plaintiffs' Interrogatory Nos. 1 - 3.  The terms "uses" and "entity" are not defined and vague.  Further, to the extent the interrogatory is deemed limited to uses of TSDB data by the FBI, the request may or may not seek information about, for example, FBI offices that have access to watchlist information, and individuals or companies working for the federal government, other agencies, or even entities with whom FBI has no direct relationship.  And "uses" could include only final agency action by FBI, or could include investigative activity, ordinary security screening, incidental consideration of such data untethered to any final action, further use or discussion of TSDB data of which FBI may or may not be institutionally aware, or any number of other possibilities.  The broader readings would be unduly burdensome and disproportionate to the needs of the case.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case.  Incidental or indirect access to TSDB data in ways that never have and never arguably could impact the Plaintiffs is not remotely relevant to their claims.  Investigative uses of TSDB data are not relevant to Plaintiffs' claims.  Moreover, the request goes beyond the uses of data that Plaintiffs allege have impacted them.  Additionally, searching for information about entities with which FBI has no direct relationship would be burdensome or impossible, and disproportionate to the needs of the case.

15

To the extent Plaintiffs seek information about uses by non-FBI entities, FBI is neither knowledgeable nor authoritative, and cannot speak on behalf of other agencies.

. Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). Such information could include, for example, a full description of all uses of TSDB information, such as the details described in the definitions and instructions, sensitive technical information and/or the investigative uses of TSDB data. Generally, the identities of foreign partners who receive information from TSC are protected by the law enforcement privilege, and in some instances the state secrets privilege, except as otherwise officially acknowledged. Specific confidential communications with foreign liaisons are privileged as well.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, the FBI responds that FBI personnel use TSDB data in furtherance of national security and criminal investigations, consistent with applicable law and FBI policies.

*Int. 8. Identify the categories and/or criteria by which the TSDB is searchable.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The phrase "categories and/or criteria" is not defined and could be

interpreted to mean the engines that are used to search the TSDB, the persons or agencies authorized to conduct such searches, the data fields available in the TSDB, the data fields in the basic search engine, all of the Boolean or text searches which could be conducted, or any number of other possibilities. It is moreover framed in the passive voice, making it unclear whether it is seeking information about FBI or other entities as well. FBI cannot respond on behalf of other entities.

To the extent this interrogatory is intended to encompass TSC as well, it is apparently duplicative with interrogatories directed to TSC, and Plaintiffs are directed to those responses.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case. The technical construction of the TSDB, such as how it is searchable, is not relevant to Plaintiffs' claims. Additionally, searching for information about actions taken by other agencies or entities, including entities with which FBI has no direct relationship, would be burdensome or impossible, and disproportionate to the needs of the case. Additionally, the interrogatory is misdirected, because FBI is not responsible for actions taken by other agencies and cannot address their capabilities.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). A comprehensive answer to the broadest interpretation could theoretically require, for example, a full description of all identifiers that could be maintained in the TSDB, law enforcement handling codes, and technical information about how data is maintained and could be searched.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, the FBI refers plaintiffs to the Responses to Interrogatory Numbers 9 and 24 in the Plaintiffs' First Set of Interrogatories to TSC.

*Int. 9. Identify the number of agents of the FBI who can nominate a person to the TSDB, Selectee List, or No Fly List.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The phrase "agents of the FBI" and "can nominate" are not defined and are subject to multiple interpretations. For example, the request could be limited to employees holding the job title of "Special Agent" or could be broader, to include anyone acting as an agent of the FBI, as principal, such as contractors and task force personnel. It could be seeking anyone with the technical capability and authority or only the number of people who actually would ordinarily have occasion to do so. The broader readings are unduly burdensome and disproportionate to the needs of the case.

The requested data does not provide any insight into the TSDB that is useful in evaluating the procedural due process claim. The number of people working on a particular phase of watchlisting at FBI is not remotely relevant to evaluating the due process available to individuals who believe they are in the TSDB.

18

Defendants also object to the timeframe of the request as irrelevant and burdensome and disproportionate to the needs of the case. Plaintiffs seek forward-looking, injunctive relief. While their own past experiences are relevant to the deprivation of a liberty interest, the evaluation of the placement and redress process ten years ago is not remotely relevant to their claims.

Defendants further object to the relevance of the No Fly List and the Selectee List. None of the Plaintiffs currently believes that they are on the No Fly List. The Selectee List is not relevant to Plaintiffs' property or liberty interests. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, any FBI personnel assigned to participate in an FBI national security investigation may submit a request to TSC that an individual be added to the TSDB, Selectee List or No Fly List. Typically this function is performed by the FBI Case Agent for a particular investigation. Because the figure sought by this interrogatory is fluid and constantly subject to change due to personnel movements, the FBI is not able to identify a specific number in response to this interrogatory.

*Int. 10. Explain how the persons identified in Interrogatory 9 are trained to nominate a person to the TSDB, Selectee List, or No Fly List. Include the approximate number of hours agents are trained to submit such nominations.*

**Objections:** Defendants hereby incorporate their objections to Interrogatory 9. Defendants further object to this request as vague, burdensome, irrelevant and disproportionate to the

discovery needed for the sole remaining claim in the case concerning procedural due process. The phrase "are trained to nominate" is vague and subject to multiple interpretations. And the second sentence uses the phrase "are trained to submit such nominations" which suggests it might be seeking a subset of the training hours responsive to the first sentence. The interrogatory could seek only information about the actual technical process of making nominations or it could include any terrorism-related education and training. The framing in the passive voice introduces additional ambiguity about whether it is seeking training beyond that conducted by or on behalf of FBI. The interrogatory could be seeking a general summary of basic substantive training available to all such employees, or it could be seeking all details about such training, other training mandatory for all FBI employees, like HR training, or incidental or one-off trainings on specific issues that arise, or any number of other possibilities. The broadest interpretations would be both incredibly burdensome, irrelevant and disproportionate to the needs of the case. It bears little or no relationship to the procedural due process claim remaining in the case.

Defendants further object to the relevance of the No Fly List and the Selectee List. None of the Plaintiffs currently believes that they are on the No Fly List. The Selectee List is not relevant to Plaintiffs' property or liberty interests. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, the state secrets privilege, or SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). A comprehensive response to the broadest interpretation of the request could include, a detailed

description of the highly sensitive information on which agency employees are trained, including specific factual scenarios.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, the FBI responds that formal guidance and training materials regarding the manner in which to request the addition of an individual to the TSDB and subsets of the TSDB, the Selectee List, or No Fly List, are available to all FBI personnel through TSC. TSC also presents live training periodically to investigative and support personnel at FBI Headquarters and in the FBI's 56 Field Offices nationwide upon request. In addition, FBI Agents new to this process receive on-the-job training and guidance from their Training Agents, from supervisory personnel, and from other experienced FBI employees. All Task Force Officers assigned to an FBI Joint Terrorism Task Force are required to complete a week-long course at the FBI Academy entitled "Joint Terrorism Task Force Operations," to familiarize them with the standard paperwork, policies, procedures, operations, case investigative techniques, and databases they will employ during the course of counterterrorism investigations, including those concerning watchlisting. This course includes instruction provided by TSC regarding watchlisting policy and guidelines. The FBI does not require personnel to report hours spent receiving informal instruction from other FBI personnel or reviewing or receiving formal TSC guidance or training concerning watchlisting.

*Int. 11. Since January 1, 2010, identify the total number of nominations agents of the FBI have made to the TSDB, Selectee List, or No Fly List.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The interrogatory uses the term "nomination" vaguely, and to seek irrelevant data. Generally, TSC uses to the term "nomination" to refer to any proposed change to TSDB information, including for example: adding a new individual, upgrading or downgrading individuals already in the TSDB, adding additional identifiers, changing or correcting identifiers, and removals from the TSDB. This data is not relevant to their procedural due process claim. The term "agents" is also vague and subject to multiple interpretations.

Defendants further object to the relevance of the No Fly List and the Selectee List. None of the Plaintiffs currently believes that they are on the No Fly List. The Selectee List is not relevant to Plaintiffs' property or liberty interests. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Defendants also object to the timeframe of the request as irrelevant and burdensome and disproportionate to the needs of the case. Plaintiffs seek forward-looking, injunctive relief. While their own past experiences are relevant to the deprivation of a liberty interest, the evaluation of the placement process ten years ago is not remotely relevant to their claims.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** The FBI stands on its objections.

*Int. 12. Identify each entity that has access to the National Crime Information Center.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The terms "entity" and "access" are not defined and are subject to multiple interpretations. It could include ad hoc or intermittent or indirect access by entities or individuals with whom the FBI has no direct relationship. Searching for information about entities with which FBI has no direct relationship would be burdensome or impossible, and disproportionate to the needs of the case. The requested information is not relevant to Plaintiffs' procedural due process claims because they have not established or alleged any arguable nexus between the NCIC and the deprivation of a liberty interest in connection with the claims at issue in this case. The request goes beyond the uses of data that Plaintiffs allege have impacted them. To the extent Plaintiffs seek information about uses by non-FBI entities, FBI is neither knowledgeable nor authoritative, and cannot speak on behalf of other agencies.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

23

**Response:**  Subject to and without waiving the foregoing objections, FBI responds: The FBI provides a host computer and telecommunication lines to a single point of contact in each of the 50 states, the District of Columbia, Puerto Rico, the U.S. Virgin Islands, Guam, and Canada, as well as federal criminal justice agencies, through which the National Criminal Information Center (NCIC) may be accessed. Those jurisdictions, in turn, operate their own computer systems, providing access to nearly all local criminal justice agencies and authorized non-criminal justice agencies nationwide.  Currently, there exist more than 18,000 city, university and college, county, state, tribal, and federal law enforcement agencies which are eligible to access NCIC.

*Int. 13. Identify all information the FBI possesses about handling codes assigned to persons on the TSDB, Selectee List, or No Fly List.*

**Objections:**   Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process.  The demand to "identify all information . . . about" a subject matter does not adequately identify the information sought.   The interrogatory could be seeking the handling codes themselves as well their meaning, or it could simply be seeking a definition of what "handling code" means in a particular context and what types of handling codes exist.  The phrase "handling codes assigned to persons on the TSDB" does not specify whether those codes are related to TSDB status or just codes that incidentally are assigned to some such persons. Compiling and defining different types of codes would be unduly burdensome and disproportionate to the needs of the case.

The requested information is not relevant to Plaintiffs' procedural due process claims. FBI's internal codes are not remotely relevant to the remaining claims.  To the extent Plaintiffs

seek information about non-FBI codes, FBI is neither knowledgeable nor authoritative, and cannot speak on behalf of other agencies.

Defendants further object to the relevance of the No Fly List and the Selectee List. None of the Plaintiffs currently believes that they are on the No Fly List. The Selectee List is not relevant to Plaintiffs' property or liberty interests. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). FBI's internal handling codes, as well as other agencies' codes, are of no arguable relevance to the litigation but do tend to reveal law enforcement privileged or even classified information and could be used to deduce additional sensitive information.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** The FBI stands on its objections.


*Int. 14. Since January 1, 2010, identify the total number of nominations agents of the FBI have made to the TSDB, Selectee List, or No Fly List that TSC has rejected.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning

procedural due process. The interrogatory uses the term "nomination" vaguely, and to seek irrelevant data. Generally, TSC uses to the term "nomination" to refer to any proposed change to TSDB information, including for example: adding a new individual, upgrading or downgrading individuals already in the TSDB, adding additional identifiers, changing or correcting identifiers, and removals from the TSDB. This data is not remotely relevant to their procedural due process claim. The term "agents" is also vague and subject to multiple interpretations.

Defendants further object to the relevance of the No Fly List and the Selectee List. None of the Plaintiffs currently believes that they are on the No Fly List. The Selectee List is not relevant to Plaintiffs' property or liberty interests. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Defendants also object to the timeframe of the request as irrelevant and burdensome and disproportionate to the needs of the case. Plaintiffs seek forward-looking, injunctive relief. While their own past experiences are relevant to the deprivation of a liberty interest, the evaluation of the placement process ten years ago is not remotely relevant to their claims.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

26

**Response:**  Subject to and without waiving the foregoing objections, the FBI stands on its objections and further avers that determining whether a response could be calculated and actually endeavoring to calculate, if possible, would both be unreasonably burdensome.

*Int. 15. Identify the number of FBI nomination to the TSDB, Selectee List, or No Fly List that the FBI has determined were submitted to TSC against FBI policy or practices. For each incident identified, explain what policy or practice was violated.*

**Objections:**  Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The interrogatory uses the term "nomination" vaguely, and to seek irrelevant data. Generally, TSC uses to the term "nomination" to refer to any proposed change to TSDB information, including for example: adding a new individual, upgrading or downgrading individuals already in the TSDB, adding additional identifiers, changing or correcting identifiers, and removals from the TSDB. This data is not remotely relevant to their procedural due process claim.

Defendants further object to the phrase "against FBI policy or practices" which could include any nomination containing clerical errors or any nomination which ultimately was determined not to meet the standards for inclusion in the TSDB, or could refer only to more serious violations of FBI norms and rules, or any of a number of other possibilities. The information sought, particularly for the broadest interpretation, would be incredibly burdensome and disproportionate to the needs of the case.

Defendants further object to the relevance of the No Fly List and the Selectee List. None of the Plaintiffs currently believes that they are on the No Fly List. The Selectee List is not relevant

to Plaintiffs' property or liberty interests. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Defendants also object to the timeframe of the request as irrelevant and burdensome and disproportionate to the needs of the case. Plaintiffs seek forward-looking, injunctive relief. While their own past experiences are relevant to the deprivation of a liberty interest, the evaluation of the placement process ten years ago is not relevant to their sole remaining claim.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). For example, if such information exists, a description of how the "policy or practice" was violated in a particular instance could theoretically require revealing sensitive underlying information about the particular nomination, including classified information, sensitive personnel information subject to the Privacy Act, or other privileged or protected information.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**      Subject to and without waiving the forgoing objections, the FBI responds that the number is zero.

For the Objections:                         Respectfully submitted,

                                            CHAD READLER
Dated: February 22, 2018                    Acting Asst. Attorney General, Civil Division

28

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

/s/    *Amy E. Powell*
AMY POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email: amy.powell@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was sent via electronic mail to

Counsel of Record in this case.

*/s/    Amy E. Powell*
AMY POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email: amy.powell@usdoj.gov

February 22, 2018

For the Responses:

I declare under penalty of perjury that the foregoing responses to the Interrogatories directed to

the FBI are true and correct to the best of my information and belief.

Matthew DeSarno
Deputy Assistant Director
Federal Bureau of Investigation
Washington, DC

February 22, 2018

31

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Anas ELHADY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **Case No. 1:16-cv-375** |
| ) | **Hon. Anthony J. Trenga** |
| Charles Kable, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO LIMIT 30(B)(6) TOPICS**

**EXHIBIT 15 – Excerpts from Ahmed Deposition**



Deposition of:

# Osama Ahmed

*February 20, 2018*

In the Matter of:

# Elhady vs. Kable

Veritext Legal Solutions

1075 Peachtree St. NE , Suite 3625
Atlanta, GA, 30309
800.808.4958 | calendar-atl@veritext.com  | 770.343.9696

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE EASTERN DISTRICT OF VIRGINIA

3               ALEXANDRIA DIVISION

4

5   ANAS ELHADY, et al.,

6                    Plaintiff,

7      v.                      Civil Action No.

8   CHARLES H. KABLE, et al.,     1:16-cv-375 (AJT/JFA)

9                    Defendant.

10

11                              Washington, D.C.

12                         Tuesday, February 20, 2018

13  Deposition of:

14               OSAMA AHMED

15  called for oral examination by counsel for Defendants,

16  pursuant to notice, at United States Department of

17  Justice, 20 Massachusetts Avenue NW, Washington, DC,

18  before Natalia Thomas, a Notary Public in and for the

19  District of Columbia, beginning at 10:00 a.m., when

20  were present on behalf of the respective parties:

21

22

Osama Ahmed                                          February 20, 2018
Elhady vs. Kable

1        A P P E A R A N C E S
2  On behalf of Plaintiffs:
3     GADEIR I. ABBAS, ESQUIRE
4     Council on American-Islamic Relations (CAIR)
5     453 New Jersey Avenue SE
6     Washington DC 20003
7     gabbas@cair.com
8     (202) 742-6420
9
10 On behalf of Defendants:
11    CHRISTOPHER HEALY, ESQUIRE
12    United States Department of Justice
13    20 Massachusetts Avenue NW
14    Washington DC 20001
15    christopher.healy@usdoj.gov
16    (202) 514-8095
17
18 Also Present:
19    MELISSA PACHIKARA, ESQUIRE, FBI
20    LILLIAN STEWART, ESQUIRE, FBI
21    MARY BEUCHERT, ESQUIRE, FBI
22    JENNIFER GREENBAND, ESQUIRE, TSA

1        C O N T E N T S
2  WITNESS:  OSAMA AHMED                    PAGE
3  By Mr. Healy                        7
4        E X H I B I T S
5  EXHIBIT DESCRIPTION                      PAGE
6  EXHIBIT A    Complaint              26
7  EXHIBIT D    Answers to Interrogatories    15
8  EXHIBIT E    Passport              12
9  EXHIBIT F    Boarding pass              39
10 EXHIBIT G    2011 Travel inquiry form      75
11
12       (Exhibits attached to transcript.)
13
14
15
16
17
18
19
20
21
22

1        P R O C E E D I N G S
2  WHEREUPON,
3        OSAMA AHMED
4  called as a witness, and having been sworn by the
5  notary public, was examined and testified as follows:
6     MR. HEALY:  Good morning.  My name is
7  Christopher Healy.  I'm an attorney here at the
8  Department of Justice.  I'll be taking your deposition
9  today.  Do you understand you're under oath?
10    THE WITNESS:  Yes.
11    MR. HEALY:  So, everything that you say has to
12 be the full and entire truth.
13    THE WITNESS:  Yes.
14    MR. HEALY:  I'd ask you just to make sure that
15 as we go through the questions today you give audible
16 answers, yeses and noes rather than just nodding your
17 head or saying um-hum.  Your attorney might object at
18 certain points; that's fine.  You can still answer the
19 question unless he instructs you not to.  Ask me if you
20 need me to clarify any particular questions.  If you
21 answer a question, I'm going to understand that you
22 understood the question, and if you didn't, feel free

1  to interrupt me and ask me.  Is there any reason you
2  can't answer questions I ask you today truthfully and
3  accurately?
4     THE WITNESS:  No.
5     MR. HEALY:  Okay.  Have you taken any
6  medications that might affect your memory or your
7  ability to answer these questions truthfully?
8     THE WITNESS:  No.
9     MR. HEALY:  Have you consumed any alcohol in
10 the last 48 hours?
11    THE WITNESS:  No.
12    MR. HEALY:  Have you consumed any illegal
13 drugs in the last 48 hours?
14    THE WITNESS:  No.
15    MR. HEALY:  Okay.  What did you do to prepare
16 for today's deposition?
17    MR. ABBAS:  Objection; calls for attorney-
18 client privileged information.  I'm going to instruct
19 the witness not to answer.
20    MR. HEALY:  Okay.  With the exception of any
21 privileged communications between you and your
22 attorney, what did you do to prepare for this

2 (Pages 2 - 5)

Usama Ahmed
Elhady vs. Kable
February 20, 2018

Page 54

1    A  No.

2    Q  You have not?

3    A  No.

4    Q  Okay.  Have you ever tried to do so?

5       MR. ABBAS:  Objection; calls for a legal

6  conclusion.  Objection, vague.  You can answer if you

7  know.

8    A  I don't know.

9    Q  Would you like me to restate the question?  Do

10  you understand the question?

11    A  Yes, please.

12    Q  Okay.  Have you ever tried to sponsor a family

13  member living outside the United States for immigration

14  to the United States?

15       MR. ABBAS:  Objection, vague.  Objection; it

16  calls for a legal conclusion.  You can answer if you

17  know.

18    A  I don't know.

19    Q  Okay.  Have you ever applied for a job with a

20  contractor that's a company that provides services to

21  the federal government?

22    A  No.

Page 55

1    Q  Do you own any firearms?

2    A  No.

3    Q  Have you ever tried to buy a firearm?

4    A  No.

5    Q  Have you ever ridden on a boat?  And by that,

6  I mean like a commercial, commercially-chartered

7  vessel, not like a fishing boat or a friend's boat, or

8  something like that?

9    A  No.

10    Q  You know, a cruise ship or something like

11  that?

12    A  No.

13    Q  Have you ever tried to ride on a commercial

14  boat and they denied access to a boat?

15    A  No.

16    Q  Have you ever tried to rent a boat?

17    A  No.

18    Q  Do you own a boat?

19    A  No, I get seasick.

20    Q  I do, too.  Do you know what a hazmat license

21  is?

22    A  No.

Page 56

1    Q  It's a license to be able to transport

2  hazardous materials.  Have you ever applied for a

3  hazmat license?  I assume you haven't.

4    A  I don't think so.

5    Q  Okay.  You would probably know if you did.

6  Okay.  I think I already know the answer to this, but

7  I'm going to ask it.  Have you ever applied to work in

8  an airport?

9    A  Yes.

10    Q  When did you apply to work in an airport?

11    A  Um, 2011.

12    Q  Okay.  And which airport?

13    A  Detroit Metro Airport.

14    Q  And why was it that you were interested in

15  getting a position at the airport?

16    A  My brother worked there.  I had some friends

17  that worked there.  It seemed like a decent job.

18    Q  Okay.  Were you interviewed for the position?

19    A  Yes.

20    Q  And you got the job?

21    A  Yes.

22    Q  Was there -- were there any issues related to,

Page 57

1  um -- did you have any trouble getting a job at the

2  airport that you believe was a result of your status on

3  a watch list?

4       MR. ABBAS:  Objection, vague.  Objection,

5  calls for a legal conclusion.  You can answer if you

6  know.

7    A  Um, I didn't apply until I -- because of what

8  happened with the FBI, and they told me I was on the

9  list.  So, I didn't apply until I got a lawyer.

10    Q  Okay.  And so how long did you wait until you

11  applied?

12    A  From, I think I applied in June.

13    Q  Okay.

14    A  From when I arrived.

15    Q  So, you traveled and you said you had these

16  interactions with the FBI starting after your flight to

17  Yemen in 2011, in either February or March.  And then

18  you said you had those interactions sometime over the

19  next two months.  And you said you applied in June of

20  that year?

21    A  Yeah.

22    Q  How long did you wait after being interviewed

15 (Pages 54 - 57)

Page 58

1 to be told that you got the job?
2    A  I don't remember.  A few, maybe a week or two.
3    Q  Okay.  Have you ever applied to work for an
4 airline?
5    A  No.
6    Q  Do you know how to pilot a plane?
7    A  No.
8    Q  Neither do I.  Have you ever applied for a
9 license from the Federal Aviation Administration to
10 operate or pilot an aircraft?
11    A  No.
12    Q  You reside in Michigan.  Do you have a
13 driver's license from Michigan?
14    A  I do.
15    Q  And how long have you had that driver's
16 license?
17    A  Since I was 16.
18    Q  Okay.  Have you maintained a driver's license
19 continuously since you were 16?
20    A  Yes.  I had an unpaid ticket that I wasn't
21 aware of and they suspended my license for maybe a week
22 or two.  When I found out, I paid that off and they

Page 59

1 reinstated it.
2    Q  Okay.  And you don't allege that anything
3 having to do with the suspension of your license
4 happened because of your status on a watch list?
5    A  No.
6    Q  Okay.  Do you own a car?
7    A  Yes.
8    Q  And what year did you purchase that car?
9    A  Last year.
10    Q  How many different cars have you owned since
11 2001?
12    A  I don't know.
13       MR. ABBAS:  He's not --
14    A  I don't buy new cars.
15    Q  You don't buy new cars?
16    A  Yeah.
17    Q  Okay.
18    A  I drive them until they die and then I get
19 another one.
20    Q  So, how many have you gone through, like more
21 than five?
22    A  Less than 10.

Page 60

1    Q  Less than 10, all right.  Have you ever been
2 told by a car dealer that they can't let you take a car
3 for a test drive?
4    A  No.
5    Q  Have you ever been told by a car dealer that
6 they can't let you purchase a car?
7    A  No.  That being said, I've never bought a car
8 from a dealer.
9    Q  Okay.  You bought them usually through word-
10 of-mouth?
11    A  Yeah.
12    Q  Okay.  Have you ever been pulled over by a
13 police officer while driving a car for a traffic
14 violation?
15    A  Yes.
16    Q  How many times since 2001?
17    A  A lot.
18    Q  More or less than 10 times?
19    A  Less than 20.
20    Q  Less than 20, okay.  Each time did the officer
21 tell you why you were being pulled over?
22    A  I think so.

Page 61

1    Q  Were you given a ticket each time?
2    A  I've been let go a couple of times.
3    Q  You got lucky.
4    A  Yeah.
5    Q  Do you allege that any of these instances had
6 to do with you being on the watch list?
7    A  No.
8    Q  Okay.  Have you ever been convicted of a
9 crime?
10       MR. ABBAS:  Objection; calls for a legal
11 conclusion.  You can answer if you know.
12    A  I don't think so.
13    Q  Okay.  Have you ever been charged with a
14 crime?
15       MR. ABBAS:  Objection; calls for a legal
16 conclusion.  You can answer if you know.
17    A  No, I don't think so.
18    Q  Okay.  Has your reputation been affected as a
19 result of your alleged watch list status?
20    A  I think so.
21    Q  Has your reputation among your friends or your
22 community --

16 (Pages 58 - 61)

Osama Ahmed
Elhady vs. Kable

Page 62

1    MR. ABBAS:  He answered.

2    A   Yes, I think so.

3    Q   And what does that entail?

4    MR. ABBAS:  Objection, vague.  You can answer

5    if you understand the question.

6    A   Um, I feel like people are more weary of me.

7    I feel like I'm approached less.  People try to stay

8    away so they're not mixed up into the -- end up in the

9    same position.  Those who do know -- not everybody

10   knows, but those who do know, I do feel like they do

11   try to distance themselves.

12   Q   Has anyone ever refused to travel with you as

13   a result?

14   A   No, because I've never asked anybody who I

15   don't think would want to travel with me.

16   Q   Um --

17   A   I feel people will, if I asked.

18   Q   With the exception of the FBI agents you

19   mentioned previously, has anyone else ever told you you

20   were on a watch list?

21   A   Uh, no.

22   Q   Are there any other jobs that you were

Page 63

1    refused?  Were you ever refused any other jobs that we

2    haven't spoken about previously?

3    A   No.

4    Q   Okay.  Are you aware of the DHS Travel Redress

5    Inquiry Program, DHS TRIP?

6    A   No.

7    Q   Have you ever submitted a complaint through

8    DHS TRIP?

9    MR. ABBAS:  Objection; calls for a legal

10   conclusion.  You can answer if you know.

11   A   I don't know.

12   Q   Have you ever submitted a form to anywhere

13   official complaining about your treatment at an

14   airport?

15   MR. ABBAS:  Objection; calls for a legal

16   conclusion.  You can answer if you know.  And objection

17   to the extent that the question calls for attorney-

18   client privilege communications.  I'm instructing the

19   witness not to provide any attorney-client privileged

20   communications.

21   Q   Okay.  To the extent that you know, with the

22   exception of any attorney-client privileged

Page 64

1    information, have you ever submitted any complaint form

2    about any of the instances we talked about today?

3    A   No.

4    Q   And why haven't you?

5    MR. ABBAS:  Objection; calls for a legal

6    conclusion.  Objection; you can answer if you know.

7    MR. HEALY:  I mean, it doesn't call for a

8    legal conclusion why he didn't submit a complaint form.

9    A   Because I had my --

10   MR. ABBAS:  Objection; I'm going to instruct

11   the witness not to provide any attorney-client

12   privileged communications.

13   MR. HEALY:  Okay.

14   BY MR. HEALY:

15   Q   So, was it because you didn't know that the

16   complaint forms existed that you didn't submit them, or

17   --

18   MR. ABBAS:  Objection; mischaracterizes prior

19   testimony.  Objection; calls for attorney-client

20   privileged communications.  Instructing the witness not

21   to provide any attorney-client privileged

22   communications in response to the question.  You can

Page 65

1    answer if you know.

2    MR. HEALY:  Okay.

3    BY MR. HEALY:

4    Q   Okay.  So, we discussed travels and I think

5    we've discussed everything else in the complaint.  Are

6    there any other consequences with the belief that

7    you're on a watch list that we didn't discuss today?

8    MR. ABBAS:  Objection, improper question.

9    Objection; you asked all these things.  If you want to

10   re-read the transcript, we can do that, but these types

11   of questions at the end of the deposition are

12   inappropriate.

13   MR. HEALY:  I'm just looking to give him an

14   opportunity to add anything that he didn't have a

15   chance to already add.

16   A   Yeah.  When I was working at the airport, they

17   took away my customs seal, which allows me to work in

18   the international area.

19   Q   What is a customs seal?

20   A   It allows the worker to work in an

21   international area.

22   Q   Okay.

17 (Pages 62 - 65)

Page 66

1     A   Around the customs officers and whatnot.  And
2  they -- while I was working at the airport, they took
3  away my customs seal without giving me any reason why
4  they did that.  And they told me that I will receive a
5  reason in the mail, which I didn't.
6     Q   And when you say they, who is they?
7     A   Customs.
8     Q   Okay.  Is it customs and border patrol that
9  make these decisions?
10    A   I don't know.
11    Q   Okay.  So, who told you that you didn't have a
12 customs seal?
13    A   So, there is a seal that's printed on the
14 badge, and I was told to go to the badging office, and
15 they gave me a new badge without that seal.
16    Q   Okay.  So you worked in domestic terminals?
17    A   Yes.
18    Q   Exclusively?
19    A   Yeah.
20    Q   And that was during the year that you were at
21 the airport, worked at the airport?
22    A   Over two years, and it was while I was working

Page 67

1  there.  And I was a supervisor, so it was kind of
2  difficult for me to supervise people working in an area
3  where I wasn't allowed to go to.
4     Q   And why did you leave your job at the airport?
5     A   I was fired.
6     Q   Okay.
7     A   It was a dispute.
8     Q   A dispute, not having to do with --
9     A   No, it hasn't to do with it.
10    Q   -- any watch list you said?
11    A   No.
12    Q   Okay.  Well, thank you very much.  We're going
13 to take a quick break and then we'll be back.
14        MR. ABBAS:  Okay, great.  Excellent.
15 BY MR. HEALY:
16    Q   A couple of questions about -- are we back?
17 Sorry.  Did you speak with anyone besides your attorney
18 during the break?
19    A   No.
20    Q   Okay.  A couple questions about losing your
21 job at the airport.  When did that happen?
22    A   I don't remember, maybe 2015, 2014.

Page 68

1     Q   And can you give us a little bit more
2  description about exactly what happened?
3     A   Me and the manager didn't get along.  And then
4  I don't want the responsibility of being a supervisor,
5  so I told him to demote me.  And after he demoted me,
6  he was putting me in positions where I didn't want to
7  work.  So, one day I confronted him about it and he
8  didn't like it, so he fired me.
9     Q   Okay.  And you mentioned that they, you said,
10 I think, they gave you a new badge without the customs
11 seal on it.  Was it your employer that --
12    A   The badging office.
13    Q   Is it the badging office that said that you
14 needed to get a new badge?
15    A   So, they contacted my employer.
16    Q   Okay.
17    A   My employer told me to go to the badging
18 office.
19    Q   This is your manager, your direct manager?
20    A   Yes.
21    Q   Okay.  Is this the same manager you were
22 talking about before?

Page 69

1     A   No, this is the general manager.
2     Q   Okay.  And that person contacted you and said
3  --
4     A   "You need to go and get a new badge.  They
5  took away your customs seal.  I don't know why."
6     Q   So, the manager told you that they took away
7  the customs seal or you just noticed it?
8     A   Yes.  No, they told me.
9     Q   Okay.  But the communication that you had was
10 just with your -- with the general manager?
11    A   About the customs seal?
12    Q   Yeah.
13    A   I told -- I mean, the manager knew because
14 they have to know if you have a customs seal if they
15 can place you in an area to work.
16    Q   Right.
17    A   So, they knew that when it was taken away, all
18 the managers knew that I didn't have it anymore.
19    Q   Right, okay.  So, but the communication that
20 you had, you personally --
21    A   It was the general manager.
22    Q   -- was with you and the general manager.

18 (Pages 66 - 69)

February 20, 2018

Page 70

1    A   Yeah.

2    Q   And not with anyone else?

3    A   No.

4    Q   Okay.  Um, you mentioned before that that

5  certain people try to distance themselves from you.

6  You were talking about your personal -- consequences to

7  your personal reputation.  How did those people that

8  you mentioned know about these issues?  Was it because

9  you told them?

10       MR. ABBAS:  Objection, compound.  You can

11  answer if you understand the question.

12    A   They could have found out multiple ways, from

13  hearing from other people or from me directly.  I also,

14  I volunteered for a video that was on YouTube, so they

15  could have seen the video.

16    Q   Okay.  Any of these people that you mentioned,

17  do you believe any of them were contacted by people in

18  the government?

19    A   No.

20    Q   No.  You mentioned before that that you

21  traveled with four friends during one of your trips.

22  During that trip, were any of those four friends

Page 71

1  screened normally?

2    A   Yes.

3    Q   Okay.  You mentioned during your testimony

4  that you've been pulled over multiple times.  Was there

5  anything out of the ordinary in the behavior of the

6  policemen in those instances in which you were pulled

7  over?

8       MR. ABBAS:  Objection, vague as to out of the

9  ordinary.  You can answer if you know.

10    A   You mean like traffic violations?

11    Q   Did you notice that they acted in a way that

12  was out of the ordinary, what you expected to be

13  ordinary?

14       MR. ABBAS:  Objection, vague as to out of the

15  ordinary.

16    A   Yeah.  I mean, everybody is different, so I

17  don't know what is out of the ordinary.

18    Q   But you didn't notice them acting in a way

19  that you thought was peculiar?

20       MR. ABBAS:  Objection, vague as to peculiar.

21    A   I don't know.

22    Q   Okay.  Um, have any of your family members who

Page 72

1  have -- who live abroad ever visited the United States?

2    A   That are -- no.

3    Q   Okay.

4    A   Not that I know of.

5    Q   That you know of?

6    A   Not that I know of.

7    Q   So, when you go see them, it's you going to

8  Yemen, it's not any of them coming to the United

9  States?

10    A   Correct.

11    Q   Are any of those family members who live in

12  Yemen green card holders or lawful permanent residents

13  of the United States?

14       MR. ABBAS:  Objection, calls for a legal

15  conclusion.  You can answer if you know.

16    A   No.

17    Q   How did you get here today; did you drive or

18  did you fly?

19    A   From Detroit?

20    Q   From Detroit.

21    A   I flew.

22    Q   You flew, okay.  Were there any issues

Page 73

1  arriving here today?

2    A   Arriving, no.

3    Q   Were there any issues at the airport --

4    A   No, there were no issues.

5    Q   -- during your travel?

6    A   It was very weird.

7    Q   Okay.  You mentioned during your flight in

8  January 2017 from Boston to Detroit that you were

9  questioned.  You mentioned specifically that you were

10  questioned by TSA.  Are you -- do you know that the

11  folks who questioned you were actually from TSA or were

12  they from CBP, from customs?

13    A   By TSA?

14    Q   Yeah.

15    A   No, I was not questioned by TSA.

16    Q   Okay.  So, you were questioned by --

17    A   I was questioned by customs, yes.

18    Q   -- customs, okay.  I just wanted to clarify.

19  I asked you before how much extra time you give

20  yourself at the airport.  How much total time do you

21  allow yourself at the airport for an international

22  flight?  How far before a flight would you arrive?

19 (Pages 70 - 73)