## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.,* | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHARLES H. KABLE,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |

---

### PLAINTIFFS' MOTION TO COMPEL

Pursuant to Fed R. Civ. P 37(a)(3)(B) and E.D. Va. L.R. 37, Plaintiffs hereby move to compel responsive discovery from Defendants.  The requested discovery includes documents pertaining to Defendants' inclusion standards for the TSDB, nomination procedures to the TSDB, dissemination of TSDB information, screening policies that utilize TSDB information, redress policies for those listed in the TSDB, and audit reports and statistical reports related to the effectiveness of the TSDB.

Pursuant to Federal Rule of Civil Procedure 26(c)(1), Plaintiffs' counsel certifies the parties have met and conferred in good faith, but have not been able to reach agreement as to the requested information.

Respectfully submitted,

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS

BY:     /s/ Gadeir Abbas
GADEIR I. ABBAS (VA: 81161)*
LENA F. MASRI (P73461)
*Attorneys for Plaintiff*

i

453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420

*Gadeir Abbas is licensed in VA, not in D.C.*
*Practice limited to federal matters.*

AKEEL & VALENTINE, PLLC

SHEREEF H. AKEEL (P54345)
*Attorney for Plaintiffs*
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

Dated: March 15, 2018

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.*, | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHARLES H. CABLE,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |

---

**<u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL</u>**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. iv

Table of Authorities ............................................................................................................. v

Index of Exhibits ................................................................................................................. vi

Introduction ......................................................................................................................... 1

Legal Standard ..................................................................................................................... 1

Argument ............................................................................................................................. 2

    I.    The Government Should Provide Its Watchlisting Nomination Policies And Inclusion
    Standards For The TSDB And Selectee Lists ............................................................. 2

    II.     The Government Should Provide TSDB Dissemination Policies and Practices .............. 6

    III.    The Government Should Provide Screening Policy Documents .................................... 9

    IV.    The Government Should Provide Redress Policy Documents ...................................... 10

    V.     The Government Should Provide Documents Related To TSDB Effectiveness ........... 11

    VI.    The Government's Privilege Assertions Lack Merit .................................................... 15

Conclusion ........................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Abilt v. CIA*,
   848 F.3d 305 (4th Cir. 2017) ................................................................. 21

*Hugler v. BAT Masonry Co.*, 6:15-cv-28,
   2017 U.S. Dist. LEXIS 49027 (W.D. Va. Mar. 31, 2017)................................ 19, 20

*In re Sealed Case*,
   856 F.2d 268 (D.C. Cir. 1988) ............................................................. 2, 19

*In re The City of New York*,
   607 F.3d 923 (2d Cir. 2010).......................................................... 2, 19, 20

*Mohamed v. Holder*, No. 1:11-cv-50,
   2015 U.S. Dist. LEXIS 92997 (E.D. Va. July 16, 2015) ................................. 2

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)........................................................................... 1

*Shirvinski v. U.S. Coast Guard*,
   673 F.3d 308 (4th Cir. 2012) ................................................................. 1

*Singletary v. Sterling Transp. Co., Inc.*,
   289 F.R.D. 237 (E.D. Va. 2012) .............................................................. 2

*United States v. Darby*, No. 2:16-cr-36,
   2016 U.S. Dist. LEXIS 178175 (E.D. Va. Aug. 12, 2016).................................. 19

*United States v. Matish*,
   193 F. Supp. 3d 585 (E.D. Va. 2016) ............................................... 2, 19, 20

*United States v. Reynolds*,
   345 U.S. 1 (1953)............................................................................. 21

**Statutes & Rules**

Federal Rule of Civil Procedure 26 ........................................................... 1

49 U.S.C. § 114............................................................................ 16, 17

49 U.S.C.S. § 44901(a) ....................................................................... 17

## INDEX OF EXHIBITS

| Exhibit | Description | Date |
|---|---|---|
| A | FBI and TSC Responses to 2nd Set of RFPs | December 22, 2017 |
| B | TSC Responses to 1st Set of Interrogatories | February 21, 2018 |
| C | FBI Responses to 1st Set of Interrogatories | February 22, 2018 |
| D | DHS TRIP Responses to 5th Set of RFPs | February 23, 2018 |
| E | TSC Responses to 1st Set of RFAs | October 11, 2017 |
| F | FBI TSC Privilege Log | November 15, 2017 |
| G | FBI TSC Privilege Log | November 30, 2017 |
| H | FBI TSC Privilege Log part 1 | December 22, 2017 |
| I | FBI TSC Privilege Log | December 22, 2017 |
| J | FBI TSC Privilege Log | February 16, 2018 |
| K | Plaintiffs Compelled Documents Off Of Privilege Log - Combined | March 15, 2018 |
| L | Hearing Transcript | February 16, 2018 |
| M | TSC Deposition Transcript – Excerpts | March 1, 2018 |
| N | DHS TRIP Deposition Transcript - Excerpts | December 20, 2017 |
| O | Overview of the U.S. Government's Watchlisting Process and Procedures | January 8, 2018 |

## INTRODUCTION

Throughout discovery in this action, the Government Defendants ("the Government") have refused to produce critical information bearing on Plaintiffs' procedural due process claim for placement in the federal Terrorist Screening Database ("TSDB"). This information is important to proving that the Government, by placing Plaintiffs in the TSDB, have deprived Plaintiffs of liberty interests through constitutionally inadequate procedures. *See Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012). The requested documents and information bear on the Government's interests in its current watch listing procedures, its possible additional or substitute procedural safeguards, and the risk of erroneous deprivation created by the Government's current procedures. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

This is an omnibus motion, seeking resolution of the discovery disputes arising from Defendants' objections and responses to Plaintiffs' Requests for Production, Interrogatories, and Requests for Admission—all of Plaintiffs' written discovery. For the ease of the parties and the court, the sought-after information has been grouped by substantive topic, followed by the particular requests at issue.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" considering, *inter alia*, "the importance of the issues at stake in the action," "the importance of the discovery in resolving the issues," and "the parties' relative access to relevant information." Fed. R. Civ. P. 26(b)(1). The burden on a motion to compel falls on the Government, who is "the party objecting to the discovery to establish that the challenged production should not be permitted." *Singletary v. Sterling Transp. Co., Inc.*, 289 F.R.D. 237, 241 (E.D. Va. 2012). To the extent the Government seeks to invoke any qualified

1

governmental privileges to avoid discovery, it bears the burden of showing that the privileges apply. *See United States v. Matish*, 193 F. Supp. 3d 585, 597 (E.D. Va. 2016) (citing *In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) and *In re Sealed Case*, 856 F.2d 268, 271-72 (D.C. Cir. 1988)).

Plaintiffs below set forth their basis for requesting the following documents, followed by a brief explanation as to why the Government's asserted privileges do not apply. Plaintiffs will address any detailed invocations of privileges by the Government in Plaintiffs' Reply.

## ARGUMENT

### I. The Government Should Provide Its Watchlisting Nomination Policies And Inclusion Standards For The TSDB And Selectee Lists

#### a. The Nominations Policies and Inclusion Standards Are Critical To Plaintiffs' Procedural Due Process Claim

As this Court has previously recognized, a relevant consideration for procedural due process claims is the "specific criteria" used by the Government to place persons in the Terrorist Screening Database. *See Mohamed v. Holder*, No. 1:11-cv-50, 2015 U.S. Dist. LEXIS 92997, at *44 (E.D. Va. July 16, 2015) (Trenja, J.) (setting forth factors for constitutionally adequate process regarding placement on No Fly List). The Court in this case later remarked that the Government's "internal processes" for watchlist management could amount to a "'trust us' approach" that "is inconsistent with the fundamental procedural protections applicable to the deprivation of a protected liberty interest, including the right to be heard." *See* Opinion on Motion to Dismiss, Dkt. 47 at 16.

Plaintiffs have accordingly requested that Defendants Terrorist Screening Center ("TSC") and Federal Bureau of Investigation ("FBI") produce documents setting forth:

- TSDB's inclusion standards. *See Defendants' Revised Responses to Plaintiffs' Second Set of Requests for Production of Documents*, Ex. A, RFP 1.

2

- The "reasonable suspicion" standard for inclusion, *see* Ex. A, RFP 18, 21.

- TSDB's nominations policies and procedures, *see* Ex. A, RFP 2

- Blank, standard-issue TSDB nomination and acceptance forms, *see* Ex. A, RFP 48

The TSC and FBI agreed to "search for and process policies and procedures that embody the current inclusion standards for the TSDB," "the 'reasonable suspicion' portion of the inclusion standards for the TSDB," the "policies and procedures for acceptance of nominations to the TSDB," and "any blank hard-copy forms currently used for nominating information to the TSDB." *See* Ex. A, RFP Responses 1, 2, 18, 21, 48.  Defendants said they would list these documents on privilege logs "as appropriate." *Id.*

**Watchlisting Guidance.**  At its 30(b)(6) deposition, the TSC testified that its "policies and procedures generally are governed by whatever the current Watch Listing Guidance is, which is promulgated by … the Watch Listing Advisory Council."  *See* Ex. M, TSC Depo. Tr. at 15.  Defendants have not produced the current Watchlisting Guidance. Plaintiffs understand the 2015 version listed on Defendants' Privilege Log to be the current version.  *See* Ex. F, 11/15/2017 Privilege Log Document # TSCA0019.

**Selectee List Inclusion Standards**.  The TSC has further testified that there are differential inclusion standards applied within the TSDB – the answer is "no" to the question whether the TSC applies "the same standard to every person" in the TSDB.  Ex. M, TSC Depo. Tr. at 67.  The TSC testified that "There are certainly additional standards for outside of the [known or suspected terrorist] standard. For instance, the criteria for no fly and selectee subcomponents of the TSDB." *See* Ex. M, TSC Depo. Tr. at 62-63.  The No Fly and Selectee Lists require additional unknown information, above and beyond the ordinary reasonable suspicion standard for nomination to the TSDB.  *See id*.  Defendants have not produced any

3

documents or portions of documents bearing upon what differentiates individuals on the Selectee List from those included in the TSDB more generally.

   ***DHS and DOS Exceptions to Inclusion Standards.***   The TSC also testified that since 2009 there has been an "exception" to the ordinary reasonable suspicion standard which has made it "more permissive":  "There are limited purposes for which individuals who do not meet the reasonable suspicion standard can be included in the Terror Screening Database in order to facilitate screening processes specifically for the Department of Homeland Security and Department of State."  Ex. M, TSC Depo. Tr. at 65.   There are documents which memorialize these exceptions.  Ex. M, TSC Depo. Tr. at 68-69.   But when asked to even name the titles of the documents, counsel instructed the TSC to not answer.  Counsel further instructed the TSC to not answer questions regarding why and for what screening purpose these exceptions exist.  Ex. M, TSC Depo. Tr. at 69-70.   No documents regarding this exception have been produced.  There is one document listed on Defendants' privilege log (Ex. I) that appears to relate to this exception, "Email: Watchlisting Policy Exception," (TSCD0006).  It is not clear, however, in light of TSC's deposition refusing to identify other documents bearing on the exception, whether this email and/or guidance and training materials identified on the privilege log set forth an adequate understanding of the exception.

   ***Practical Application of Inclusion Standards.***  In January 2018, the Defendants did produce an unclassified *Overview of the U.S. Government's Watchlisting Process and Procedures* (Ex. O) which the Watchlisting Advisory Council had custom-prepared over the prior year, seemingly, for purposes of litigation.  *See* Ex. M, TSC Depo. Tr. at 328-329.  The TSC testified that the *Overview* document contains the reasonable suspicion standard (*see* Ex. O at 4), "but to further break down the practical application of these standards is found in the

guidance and the training materials for each one of those clauses." *See* Ex. M, TSC Depo. Tr. at 329-331, 337-338.  The TSC in response to an interrogatory broadly described the Nominations and Data Integrity Unit's *Basic Analyst Course* regarding training on nominations policies and procedures, but did not provide any details as to the contents of those trainings.  *See* Ex. B, TSC Interrogatory Response 34.  Similarly, the FBI in response to an interrogatory broadly described its *Joint Terrorism Task Force Operations* training program, which includes a watchlisting policy and guideline subcomponent, but did not provide any details as to the contents of those trainings.  *See* Ex. C, FBI Interrogatory Response 10.  The contents of those trainings would be reflected in the training documents themselves.  Defendants have not produced any of these watchlisting nominations training materials.

      b.      <u>The Nominations Policies and Inclusion Standards Documents Listed On Defendants' Privilege Logs Should Be Produced</u>

The TSC and FBI appear to have listed on their privilege logs the core, pertinent policy, procedure, and training materials regarding inclusion standards and TSDB nominations.  This information relates directly to the nominations policies, procedures, and inclusion standards the Government currently employs, and has employed over time.  As this Court recognized last month when discussing the scope of 30(b)(6) deposition topics: "I'm concerned that the Government may take the position that this is a snapshot of what's done exactly today, and not … what the history is of this. I mean, I'm -- I think there needs to be some discussion as to how this has evolved over time, if it has evolved over time."  *See* Ex. L, 2/16/2018 Hearing Transcript at 22.

Accordingly, Plaintiffs respectfully request the Court compel the TSC and FBI to produce the watchlisting guidance, nominations, and training documents identified on their privilege log, as compiled at Exhibit K, p. 1-2.  To the extent these documents reflect near-

duplicates or iterative versions of similar documents (i.e. "TSC Overview PowerPoint"),

Plaintiffs only request the most recent version, plus one major version per year.

       c.    <u>Defendants Should Provide Specific Answers To Other Nominations Policies and Inclusion Standards Inquiries</u>

Further related to the inclusion standards, the TSC and FBI have refused to provide, in

any manner, the following information.  To the extent this information is not gleanable from

production of the 2015 Watchlisting Guidance and related documents listed in Exhibit K, p. 1-2,

Plaintiffs respectfully request the following information:

- The differences between current watch listing guidance and the 2013 watch listing guidance.  *See* Ex. B, TSC Interrogatory Responses 10 and 11.

- Information as to whether any children are included in the TSDB, including the aggregate number of children under age 10 or under 5 included in the TSDB.  *See* Ex. M, TSC Depo. Tr. at 345-350, Ex. B, TSC Interrogatory Responses 21, 22

- Whether being a friend, relative, or associate of a watchlistee constitutes reasonable suspicion of terrorist activities sufficient for inclusion on the TSDB.  *See* Ex. E, TSC Response to RFAs 20-21; Ex. M, TSC Depo. Tr. at 342-343.

- Whether and under what circumstances non-investigatory subjects are placed in the TSDB.  Ex. E, TSC Response to RFA 24; Ex. A, RFP Responses 19, 22, 23.

- Documents which refer to or cite specified Islamic terms in the context of setting forth whether those terms practically satisfy TSDB inclusion standards. Ex. A, RFP Response 47.

## II.    <u>The Government Should Provide TSDB Dissemination Policies and Practices</u>

In a prior opinion, this Court recognized that the extent of the Government's

dissemination of TSDB information bears on Plaintiffs' liberty interests.  *See* Dkt. 47 at 14-15.

The Court there found that "Plaintiffs' factual allegations plausibly allege that the dissemination

of the Watch List may be so widespread that it is tantamount to public disclosure, even if only

distributed to other government and private entities that need the information for official

objectives."  *See id.*

In order to convert their dissemination allegations into conclusive facts, Plaintiffs have promulgated significant discovery regarding entities who have access to any form of TSDB information.  These include requests that the TSC and FBI produce documents setting forth:

- TSDB access by federal screening agencies, including the CBP and TSA, *see* Ex. A, RFP 15.

- TSDB access by non-federal entities, including state, and local governments, *see* Ex. A, RFP 5.

- TSDB access by courts. *see* Ex. A, RFP 14.

- TSDB access by foreign governments, *see* Ex. A, RFP 9.

- TSDB access by private partners, including banks, airlines, gun sellers, private contractors, ship captains, private background check screeners, and private screening entities.  *see* Ex. A., RFP 3, 4, 5, 6, 7, 8, 10, 11, 12, 13.

Defendants agreed to search for and process "current policies and procedures for sharing TSDB data with other federal entities" as well as "non-federal entities" and "current TSC training materials on that subject."  Ex. A, RFP Response 5, 15.  Defendants said they would list these documents on privilege logs "as appropriate."  Defendants refused to answer whether any form of TSDB access is given to courts.  *See* Ex. A, RFP Response 14.

Although the Government has provided the number of countries it shares TSDB data with, Defendants have refused to provide all but a few documents related to TSDB access by foreign governments.  *See* Ex. A, RFP Responses 9, 14.  With regards to private entities, Defendants refused to provide any information related to dissemination to private entities, with the exception of banks.  *See* Ex. A, RFP Responses 4, 6, 7.

Following discussion among the parties, Plaintiffs seek to compel the following additional information from the Government related to dissemination.

***Downstream permission to further disseminate.***  At its deposition, TSC admitted that it does not control *how* downstream agencies utilize TSDB information: "We provide the

7

information, and then they exercise their mission pursuant to their own authorities. They make their own decisions with what to do with it." Ex. M, TSC Depo. Tr. at 151.  To the extent there are limitations on that use, "those will be memorialized in a memorandum of understanding with whoever those partner agencies are." *Id.* at 112-114, 157-158.  In response to Plaintiffs' RFPs, Defendants listed on their privilege logs a few dissemination and information sharing policy documents, including those related to the Secure Flight Program and immigration and visas. Accordingly, Plaintiffs request the court compel Defendants to produce the documents related to information sharing, the Secure Flight Program, and immigration and visas, that are identified at Exhibit K at 3.

The Government's privilege logs also list numerous other Memorandums of Understanding with federal agencies and foreign government policies regarding the sharing of TSDB information.  As to these remaining Memorandums of Understanding, Plaintiffs agree that for the most part the mere fact of these documents' existence suffices to establish TSDB dissemination to those agencies.  However, for Plaintiffs' understanding of dissemination to be complete, the Government should answer whether, and on what terms, downstream agencies and foreign governments can further disseminate TSDB information to *other* entities. Therefore, Plaintiffs' request the Court compel production of only the portions of listed documents that relate to the scope of each entities' TSDB access and downstream TSDB information sharing.[1] A list of these MOUs and foreign policies which Plaintiffs believe likely contain terms related to dissemination is attached at Exhibit K at 4-5.  Alternatively, Plaintiffs would accept a single document or declaration summarizing those terms.

---

[1] With respect to foreign partners, Plaintiffs only request non-classified information.

*Dissemination to private partners.*  The Government should not be permitted to categorically refuse to disclose whether it provides any access to the TSDB to private partners. With respect to private partners, the TSC responded in an interrogatory that it "does not *directly* export TSDB data to 'for profit companies'" but otherwise stood on its objections.  *See* Ex. B, TSC Interrogatory Response 30 (emphasis added).  In the TSC's deposition, the witness stated that aside from airlines, "I am not aware of any" non-governmental entities receiving access to TSDB information.  Ex. M, TSC Depo. Tr. at 241-242.  Plaintiffs seek to compel a simple list: what private entities, either directly or indirectly through downstream dissemination, receive TSDB information?  If the answer is "none," the Government can simply say that.

*Government Contractors.*  The TSC testified at its deposition that more than half of its total workforce, amounting to hundreds of workers, are government contractors.  These workers come from two companies:  Strategic Operation Solutions ("StopSo"), which supplies contractors who may review and make recommendations regarding TSDB nominations, and Sotera, which provides technical and IT services to TSC.  Ex. M, TSC Depo. Tr. at 245, 251-262.  Similarly, DHS Trip testified that it employs six contractors from the company Dynamis to assist with processing redress reports.  Ex. N, DHS TRIP Depo. Tr. at 60-61. The Government should provide its contractual agreements with StopSo, Sotera, and Dynamis related to their access to and dissemination of TSDB information.  These documents are squarely responsive to Plaintiffs' request for information about dissemination to private contractors.  *See* Ex. A, RFP 7.

## III.  The Government Should Provide Screening Policy Documents

The screening procedures applied to Plaintiffs, or any individuals listed on the TSDB, bear on the deprivations of liberty they experience.  Public humiliation and censure, handcuffing or harassing behavior, interrogations and detainment, and hindrances on travel are all harms

9

inflicted upon Plaintiffs due to their presence in the TSDB.  Relevant to this analysis, therefore, are the actual screening procedures applied by Defendants, particularly the screening agencies TSA and CBP.

Plaintiffs requested documents reflecting the policies and practices surrounding TSDB information and its use by "CBP and TSA, and any other screening agency."  Ex A, RFP 15.  In response, Defendants agreed to "search for and process current policies and procedures for sharing TSDB data with other federal entities," subject to applicable privileges.  Ex A, RFP Response 15.  Instead of producing such screening policies, however, Defendants elected to log them.  Plaintiffs therefore request production of the screening policies documents, in whole or in part, listed on the privilege log, identified in full at Exhibit K, p. 5.

## IV.    The Government Should Provide Redress Policy Documents

The redress procedures afforded to Plaintiffs bear directly on whether Defendants post-deprivation redress procedures are constitutionally adequate.  Accordingly, Plaintiffs asked for TSC and FBI's documentation of and involvement in DHS TRIP's redress procedures.  *See* Ex. A, RFP 25. The Government responded that the "TSC and FBI will search for and process current policies and procedures that describe TSC and FBI's involvement in the DHS TRIP Process," subject to applicable privileges.  *See* Ex. A, RFP Response 25.

Years ago, DHS TRIP's redress policies were modified due to litigation concerning the constitutionality of the procedural due process provided to individuals listed on the No Fly List. Ex. N, DHS TRIP Depo. Tr. at 24.  These changes affected *only* the No Fly List, while leaving redress procedures for the Selectee List and the more general TSDB untouched.  *Id.* at 26-28. During the 30(b)(6) deposition of DHS TRIP, the agency labeled this the "Glomar" policy, more formally titled the "implementation plan of the U.S. Government for No Fly individuals."  *See*

10

Ex. N, DHS TRIP Depo. Tr. at 139-141.  Two 2015 documents related to DHS TRIP and

watchlist redress policies are listed on the Government's privilege log (TSCA0014 and

TSCD051) and should be produced.  They are entitled "U.S. Government Redress

Implementation Plan" and "TSC - Redress Program Standard Operating Procedure."  These

documents bear on the current processes applied to Selectee and TSDB listees, as well as

alternative processes which may be available, such as those afforded to No Fly listees. The

compiled privilege log information is attached at Exhibit K, p. 6.

**V.      The Government Should Provide Documents Related To TSDB Effectiveness**

a.      Effectiveness Documentation Is Critical To Plaintiffs' Procedural Due Process
Claim

The Government has stated that the goal of the TSDB is to identify "persons who intend

to commit acts of terrorism," to provide a "common operating picture" to screening and law

enforcement agencies who may encounter these persons, and thereby to help prevent future

terrorist attacks.  *See* Ex. M, TSC Depo. Tr. at 81-82, 283.  Whether or not the TSDB actually

accomplishes these stated goals relates directly to the strength of the Government's interests in

placing persons in the TSDB, as well as the Government's interests in maintain its current

watchlisting procedures.  As the GAO publicly recognized back in May 2012, prior changes to

federal watchlisting guidance had led to "increasing volumes of information and related

challenges in processing this information."  *See* Government Accountability Office, *Routinely

Assessing Impacts of Agency Actions Since the December 25, 2009 Attempted Attack Could Help

Inform Future Efforts* (May 2012)*, available at* https://www.gao.gov/assets/600/591312.pdf.

These increasing amounts of information, as implemented through the Secure Flight program,

had let to "more individuals [who] have been denied boarding aircraft or subjected to additional

physical screening;" although "these actions are intended to enhance homeland security, [they]

have also impacted agency resources and the traveling public." *Id.* This reality led to the GAO's recommendation that "Routine assessments could help decision makers and Congress determine if the watchlist is achieving its intended outcomes and help infor[m] future efforts." *Id.*

### b. The Government Should Produce Its Audit And Effectiveness Reports

Plaintiffs have accordingly requested the information that the Government has regarding how it assesses watchlist effectiveness, including why it believes the watchlist is effective. *See* Ex. C, FBI Interrogatory Response 6; Ex. B, TSC Interrogatory Response 25-28. In response, the Government has provided a high-level description of how it selects, verifies, and reviews the specific names included in the TSDB. *See id.* But this is largely non-responsive. The pertinent question is *not* whether the TSDB accurately reflects a list of individuals who the Government has deemed to satisfy the inclusion standards. The question is whether the TSDB list is *actually and effectively helping prevent terrorism*, particularly when weighed against its mistakes, the human suffering those mistake's cause, and its statistically implausible theory of effectiveness. To that end, Plaintiffs seek precisely what the GAO recommended occur: namely, any error reports, effectiveness reports or audits, cost-benefit analyses, or aggregate data bearing on the necessary statistics to calculate such effectiveness in the first instance.

As detailed above, *see* Section I-B, Plaintiffs also requested information on watchlisting and nominations policies, which Defendants agreed to search for and log, as applicable. Such overarching policy information should encompass audits of those same policies. Plaintiffs have more specifically requested documents pertaining to the "Department of Justice's March 2014 Audit of the Federal Bureau of Investigation's Management of Terrorist Watchlist," which Defendants have refused to answer. *See* Ex. A, RFP 20. Plaintiffs further requested documents relating to acceptance and nominations of individuals "that the federal government does not have

12

evidence pertain[ing] to a threat to aviation," which Defendants also refused to answer. *See* Ex. A, RFP 23.

In light of Defendants' answers to date, Plaintiffs specifically seek to compel the assessment documents on Defendants' privilege log. Defendants list three documents on their privilege log which appear to relate to TSDB audits or assessments. These include:

- TSCC0010, DOJ OIG Audit of the FBI's Management of Terrorist Watchlist Nominations

- TSCC0011, FBI TSC Privacy Impact Assessment

- TSCD0067, GAO Report re: Terrorist Watch List Screening

Further privilege log information with respect to these documents is provided at Exhibit K, p. 6. With respect to the 2014 DOJ OIG Audit, Plaintiffs do *not* seek any still-classified information. Plaintiffs do, however, request that considering the passage of time and Plaintiffs' needs for discovery Defendants and the Court ought to determine whether any portions of these documents which were previously redacted may now be disclosed.

c.   The Government Should Provide Statistical Data Bearing On TSDB Effectiveness

A core allegation in Plaintiffs' Complaint is that "Defendants' watch listing system would perform similarly if inclusion on the watch list was done via random selection instead of the existing inclusion standards Defendants utilize." *See* Amended Complaint, Dkt. 22 at ¶ 28. In order to substantiate that assertion, Plaintiffs need aggregate statistical information regarding watchlist contents and operations. This information bears upon the Government's interest in its current watchlist practices and procedures, as well as the risk of erroneous deprivation of Plaintiffs' liberty interests.

***Aggregate Statistics.*** Plaintiffs have requested documents and information regarding aggregate statistics about the contents of the TSDB over the last five to ten years. Defendants

have helpfully provided some of the requested information, however much remains outstanding.

Whether through documents or interrogatory responses, Plaintiffs currently seek to compel the

following numerical information, which the Government has refused or failed to provide.

- Total number of nominations by the FBI (the domestic nominating agency) to the watchlist, and the number of those nominations which where rejected. *See* Ex. C, FBI Interrogatory Response 11, 14.

- The yearly average number of persons nominated to the No Fly List as well as the yearly average number of those nominations TSC accepted. *See* Ex. B, TSC Interrogatory Response 7. Plaintiffs would also accept a raw total by year for each of the last five years.

- Total individuals on the No Fly List for each year from 2012 until present, *see* Ex. A, RFP 24.

- Total times individuals on the No Fly List have been permitted to fly. *See* Ex. B, TSC Interrogatory Response 20,

- The yearly average number of persons nominated to the Selectee List as well as how many of those nominations were accepted. *See* Ex. B, TSC Interrogatory Response 7. Plaintiffs would also accept a raw total by year for each of the last five years.

- Total individuals on the Selectee List for each year from 2012 until present. *See* Ex. A, RFP 24.

- Total United States citizens on the Selectee List for each year from 2012 until present. *See* Ex. A, RFP 24.

- Total individuals currently on the TSDB that have not been charged or convicted of a terrorism-related offense. *See* Ex. A, RFP 24.

- Total individuals nominated or accepted for inclusion in the TSDB with the words "Islam" or "Muslim" contained in the nomination. *See* Ex. A, RFP 24.

- The yearly average number of encounters with individuals placed on the watch list that were recorded by TSC. *See* Ex. B, TSC Interrogatory Response 7.

- The number of terrorist attacks committed within the United States within the last decade. *See* Ex. A, RFP 24; Ex. C, FBI Interrogatory Response 1.

- The number of perpretrators of terrorist attacks within the United States within the last decade. *See* Ex. C, FBI Interrogatory Response 2.

14

- The number of perpetrators of terrorist attacks within the United States within the last decade who were listed in the TSDB. *See* Rog 2 (1ˢᵗ Set) to FBI; *see* Ex. A, RFP 24.   The TSC has testified that it "could determine" the number of persons "who have committed an act of terrorism inside the United States [and] have not been in the TSDB at the time they committed their act of terrorism."  *See* Ex. M, TSC Depo. Tr. at 284.

*Statistical Reports.* The Government has also disclosed that it prepares regular statistical reports regarding both the TSC's operation of the TSDB, and DHS TRIP's operation of its Redress System. *See* Ex. A, RFP 25; Ex. D, RFP 4, 8 to DHS TRIP.  Instead of producing these reports, however, the Government has listed them on its privilege log.  At TSC's headquarters, these include "a number of different periodic reports, everything from daily to weekly to monthly reports that we look at in all different aspects of our operations across TSDB and across encounters" and including a "Redress" report.  Ex. M, TSC Depo. Tr. at 380.  The TSC listed three categories of statistical reports on its privilege log, which should be compelled:

- TSCC0001, TSDB Director's Monthly Statistical Reports

- TSCC0002, TSDB Weekly Statistical Reports

- TSCD0043, TSC monthly statistical reports

Further privilege log information regarding these documents is at Exhibit K, p. 6.

## VI.    The Government's Privilege Assertions Lack Merit

The Government asserts three primary privileges with respect to the information Plaintiffs seek:  Sensitive Security Information, State Secrets Privilege, and Law Enforcement Privilege [2]  Each of these assertions are, at a minimum, grossly overbroad.  Plaintiffs therefore request the Court order production of Plaintiffs' above-requested information from the

---

[2] Plaintiffs do not seek any Classified portions of any document, but would seek instead unclassified summaries of such documents.

Government, subject only to more narrowly tailored, line-by-line withholdings which the Government affirmatively establishes deserve protection from discovery disclosures.

      a.    <u>The Assertion of the Sensitive Security Information Privilege is Improper,</u> <u>because the Information Withheld has not been and cannot be designated SSI</u>

The Defendants assert the SSI privilege over TSCA0001 - TSCA0013 – TSCA0019, TSCC0011, TSCB0002, TSCB0004 - TSCB0010, TSCB0012 - TSCB0013, TSCB0015 - TSCB0016 - TSCB0037, TSCC0001 – 0002, TSCC0004 - TSCC0006, TSCC0010, TSCD0003 - TSCD0004, TSCD0010, TSCD0011 - TSCD0012, TSCD0019 - TSCD0023, TSCD0027 - TSCD0028, TSCD0030 - TSCD0031, TSCD0039, TSCD0059, TSCD0071, TSCD0043, TSCD0049, TSCD0052, and TSCD0054.  But none of these documents, based on what their titles suggest they contain, have information affirmatively designated as SSI in writing by TSA—the only agency in this action with SSI designation authority—and the documents do not otherwise fit into categories of information the regulations pre-designate as SSI.

Section 49 U.S.C. § 114(r) gives the TSA administrator authority to "prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act or under chapter 449 of this title if the Under Secretary decides that disclosing the information would be…detrimental to the security of transportation."  49 U.S.C. § 114(r).  This language creates two primary limitations on what information TSA can designate as SSI.  First, the information must be "obtained or developed" by TSA, and not some other agency.  Second, the information must be created by TSA as it carries out its statutory authority to secure transportation.  *Id.*  Section 114(r) explicitly limits TSA's SSI designation authority to matters of transportation.  And Chapter 449 and the Aviation and Transportation Security Act does the same.

Chapter 449 gives TSA the authority to screen passengers and property "that will be carried aboard a passenger aircraft." 49 U.S.C.S. § 44901(a). The Aviation and Security Act provides the TSA administrator with additional authority regarding "security responsibilities over other modes of transportation that are exercised by the Department of Transportation." 49 U.S.C. § 114(d). Thus, the limitation on transportation-regarding information begins with Section 114(r) and is carried through to both Chapter 449 and the Aviation and Transportation Security Act.

But this Court need not parse out for what purpose the TSDB-regarding information contained in the documents identified above was collected, because the information contained in the watchlist was not "obtained or developed" by TSA. 49 U.S.C. § 114(r). It's TSC's information. TSDB information such as the contents of the No Fly List is owned and developed not by TSA but by TSC. *See* Ex. N, DHS TRIP Depo. Tr. at 168. TSC is "administered by the Federal Bureau of Investigation" and only the NCTC and FBI submit nominations to the TSC's watchlist. *See* Ex. O, *Overview* at 2-3. TSC alone is "responsible for determining if the associated [nomination] information meets criteria for inclusion" on the No Fly and Selectee Lists. *Id*. at 4. This means that TSDB information is not "obtained or developed" by TSA. 49 U.S.C. § 114(r). Simply put, TSA lacks the authority to designate information as SSI where the agency has not "obtained or developed" the information. The information in the documents identified above, produced in response to document requests to the FBI and TSC, are not eligible for SSI designation.

In addition to the TSDB-regarding information contained in the documents identified above not being "obtained or developed" by TSA, it was also not "obtained or "developed" pursuant to TSA's enumerated statutory authorities regarding transportation. *Id*. TSC

disseminates a variety of TSDB information subsets—as the defendants have acknowledged—for reasons wholly unrelated to transportation security, including for purposes related to "diplomatic, military, intelligence, law enforcement, immigration…[and] visa" functions.  *Id*. Customs and Border Protection use TSDB information for "vetting and inspection of travelers seeking entry to the United States."  *See* Ex. O, *Overview* at 5.  The Department of State uses it for "visa and passport screening."  The Department of Defense uses TSDB information for "base access screening," and the FBI uses TSC's information for "investigations and domestic law enforcement screening."  *Id*.  USCIS uses it for "immigration screening."  *Id*.  None of these functions are performed by TSA, and none are statutory missions assigned to TSA by Chapter 449 or the Aviation and Transportation Security Act.

TSA does utilize TSDB information for transportation purposes by "compar[ing] passenger and non-traveler information to the No Fly and Selectee List components of the Terrorist Screening Database." *See Privacy Impact Assessment for Secure Flight* at 1, available https://www.dhs.gov/sites/default/files/publications/pia_tsa_secureflight_18%28h%29_july2017.pdf  But the information remains TSC's and only regards a small subset of TSDB-regarding information.  *Id.* at 4 (the Selectee and No Fly Lists "are used by" TSA, not obtained or developed by the agency).  TSC disseminates other TSDB subsets for reasons wholly unrelated to transportation security, including for purposes related to "diplomatic, military, intelligence, law enforcement, immigration…[and] visa" functions.  *See* Terrorist Screening Center, Frequently Asked Questions, *available at* https://www.fbi.gov/file-repository/terrorist-screening-center-frequently-asked-questions.pdf.

In short, the government has asserted the SSI privilege over documents that are clearly not SSI in whole or in part.  This Court should order defendants to assert their SSI privilege with

more particularity, and in doing so, the scope of their assertion will certainly shrink.   In

particular, Defendants only assert that the documents may contain *some* SSI information, not that

the *entire* contents of all withheld documents are eligible for that protection.  To the extent the

protection applies at all, any non-SSI information within these documents should be produced to

Plaintiffs.

      b.    <u>The Assertion of Law Enforcement Privilege is Overbroad</u>

The law enforcement privilege is a qualified and not an absolute privilege.  *See United*

*States v. Matish*, 193 F. Supp. 3d 585, 597 (E.D. Va. 2016) (citing *In re The City of New York*,

607 F.3d 923, 944 (2d Cir. 2010) and *In re Sealed Case*, 856 F.2d 268, 271-72 (D.C. Cir. 1988)).

For the law enforcement privilege to apply, Defendants "must show that the documents

contain information that the law enforcement privilege is intended to protect."  *Matish*, 193 F.

Supp. 3d at 597.  This includes: (1) information pertaining to law enforcement techniques and

procedures, (2) information that would undermine the confidentiality of sources, (3) information

that would endanger witness and law enforcement personnel, (4) information that would

undermine the privacy of individuals involved in an investigation, or (5) information that would

seriously impair the ability of a law enforcement agency to conduct future investigations.  *United*

*States v. Darby*, No. 2:16-cr-36, 2016 U.S. Dist. LEXIS 178175, at *10-11 (E.D. Va. Aug. 12,

2016); *accord Matish*, 193 F. Supp. 3d at 597; *Hugler v. BAT Masonry Co.*, 6:15-cv-28, 2017

U.S. Dist. LEXIS 49027, at *11-13 (W.D. Va. Mar. 31, 2017).

The Government asserts generally, across all documents for which it claims the law

enforcement privilege, that "the disclosure of this sensitive law enforcement information would

impede or impair the effectiveness of an investigative technique, method or procedure and/or

could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of

the FBI."  In further support, the Government sometimes adds that "discussion of watchlisting

policies and processes … would provide valuable insight to terrorist adversaries." The Government does not, however, specify which *portions* of each document are protected, nor demonstrate that those portions are not *already* publicly disclosed or generally known. More detail is needed.

Even if the Government "successfully shows that the privilege applies, the district court then must balance the public interest in nondisclosure against the need of a particular litigant for access to the privileged information." *Matish*, 193 F. Supp. 3d at 597 (internal quotation omitted). The privilege should be lifted if Plaintiffs can show (1) that their suit is non-frivolous and brought in good faith, (2) that the information sought is not available through other discovery or from other sources, and (3) they have a compelling need for the information. *Hugler*, 2017 U.S. Dist. LEXIS 49027, at *13 (citing *In re The City of New York*, 607 F.3d at 945). The Plaintiffs' interest is critical: "It is not fair for the government," to take adverse legal action against a person, "and then hide behind a privilege information that might exonerate that person." *Miller v. Holzmann*, No. 95-cv-01231, 2007 U.S. Dist. LEXIS 16117 *8 (D.D.C. Mar. 8, 2007) *magistrate recommendation adopted by district court*, 2007 U.S. Dist. LEXIS 21681 *5 n.1 (D.D.C. Mar. 9, 2007) (compelling production of FBI investigative file). Plaintiffs have brought a constitutional challenge to Defendants' watchlisting procedures in good faith, based on the havoc that placement in the TSDB has wreaked in their lives. In order to challenge the adequacy of the procedures Defendants actually use, Plaintiffs need access to the inclusion standards, nomination training materials, redress procedures, and effectiveness assessments that Defendants promulgate, apply to Plaintiffs in order to deprive them or liberty, and yet refuse to disclose.

      c.    <u>Any Assertion of State Secrets Privilege is Premature</u>

Defendants have not yet formerly invoked the State Secrets Privilege in this case. Indeed, though the defendants' privilege log refers to the States Secrets Privilege dozens of times, they have not yet determined the scope of their assertion.  The government's casual, imprecise assertions that documents and information "may" contain states secrets are not enough when it comes to the exercise of such grave authority.

Invocation of the State Secrets Privilege can only be accomplished by the head of the United States department which has control over the matter, who has actually and personally considered each item's disclosure.  *See, e.g., Abilt v. CIA*, 848 F.3d 305, 311 (4th Cir. 2017) (citing *United States v. Reynolds*, 345 U.S. 1, 10 (1953)).  The Fourth Circuit has recognized that "when the privilege is validly asserted, the result is unfairness to individual litigants" like Plaintiffs.  Therefore, courts must "critically … examine instances of its invocation," turning "a very careful, indeed a skeptical, eye," to the Government's assertions, which should not be "accept[ed] at face value" lest "intolerable abuses" result.  *Albit*, 848 F.3d at 312.

The government cannot withhold documents and information based on a privilege it has not invoked.  This Court should order the defendants to either invoke the privilege in accordance with procedure or waive that privilege.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court GRANT their Motion to Compel.

Respectfully submitted,

COUNCIL ON AMERICAN-ISLAMIC RELATIONS

BY:     /s/ Gadeir Abbas
GADEIR I. ABBAS (VA: 81161)
LENA F. MASRI (P73461)

21

*Attorneys for Plaintiff*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420

*Gadeir Abbas is licensed in VA, not in D.C.*
*Practice limited to federal matters.*

AKEEL & VALENTINE, PLLC

BY:      /s/ Shereef Akeel
SHEREEF H. AKEEL (P54345)
*Attorney for Plaintiffs*
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

Dated: March 15, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2018, I electronically filed the foregoing by using the Court's ECF system.  I further certify that all participants in the case are registered ECF users and will be electronically served by the Court's ECF notification system.

Respectfully submitted,

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS

BY:     /s/ GADEIR I. ABBAS
GADEIR I. ABBAS (VA: 81161)
LENA F. MASRI (P73461)
*Attorneys for Plaintiff*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420

*Gadeir Abbas is licensed in VA, not in D.C.
Practice limited to federal matters.*

AKEEL & VALENTINE, PLLC

BY:     /s/ Shereef Akeel
SHEREEF H. AKEEL (P54345)
*Attorney for Plaintiffs*
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

Dated: March 15, 2018