# Exhibit A

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| **ANAS ELHADY,** *et al.,* | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHARLES H. KABLE,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

/

## <u>DEFENDANTS' REVISED RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO TSC AND FBI</u>

Pursuant to Federal Rule of Civil Procedure 26 and 33, Defendants Charles H. Kable, Director of the Terrorist Screening Center ("TSC"); Kelli Ann Burriesci, Principal Deputy Director of TSC; Timothy P. Groh, Deputy Director for Operations at TSC; and Christropher Wray, Director of the Federal Bureau of Investigation, hereby submit revised  objections and responses to the discovery requests titled, "Plaintiffs' First Requests for Production of Documents to Defendants Piehota, Mabeus, Grigg and Wray," served October 6, 2017.  Defendants Kable, Burriesci, and Groh are automatically substituted for the previous officeholders, pursuant to Rule 25(d).  The Defendants' responses are provided in accordance with Federal Rule 26(b)(1), which permits the discovery of any information, not privileged, that is both (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case.  The Defendants do not, by providing such information, waive any objection to its admissibility on the grounds of relevance, proportionality, accessibility, materiality, or other appropriate ground. The inadvertent production by the Defendants of information or documents protected by any privilege or protection shall not

constitute a waiver of the applicable privilege or protection as to any information or documents disclosed. The Defendants reserve the right to supplement or amend their responses should additional or different information become available.

## OBJECTIONS AS TO DEFINITIONS AND INSTRUCTIONS

1.      Defendants object to the Plaintiffs' Definition 1 (of "you" and "your" "Official-Capacity Defendants" and "Defendant") to the extent that such definitions purport to apply to any of the Defendants individually.  In responding to the Requests for Production, Defendants respond in each and every response as the TSC or FBI, based upon information in the agency's possession, custody, or control.

2.      Defendants object to the Plaintiffs' Definition 7 (of "TSDB" "Terrorism Screening Database" or "watch list") as vague to the point of meaningless.  The actual database at issue is known as the "Terrorist Screening Database", or "TSDB", but Plaintiffs define it using a colloquial term without legal definition -- "the terrorism watch list" -- without giving the defined terms further content or definition.  Defendants will assume those terms refer to the Terrorist Screening Database and will respond as such with respect to each and every RFP that uses these terms.

3.      Defendants object to other definitions (including, but not limited to, Definitions 5, 6, and 14) because they define terms not actually used in this set of requests for production. Defendants reserve all objections to such definitions if they are used in future discovery requests.

4.      Defendants object to Instructions 3 and 4 regarding privileged communications between counsel, or between parties and their counsel, to the extent they conflict with the Parties' Joint Discovery Plan, as approved by the court, which specifically provides that: "If any discovery request is susceptible of a construction that calls for the production of such documents, those

2

documents need not be produced or identified on any privilege log." They also conflict with the Federal Rules of Civil Procedure and ordinary practice by supposing that privilege is waived if not asserted on such a log and by requiring identification of privileged documents beyond what is ordinarily required on a privilege log. With respect to each and every request, Defendants respond consistently with the Discovery Plan and the Federal Rules.

5.      Defendants object to Instruction 5 to the extent it imposes obligations in excess of those imposed by the Federal Rules, which do not require identification of documents that no longer exist. Such an exercise is likely impossible, but in any event burdensome, disproportionate and not required by the Federal Rules. Defendants will comply with the Federal Rules.

6.      Defendants object to Instruction 7 to the extent it imposes obligations in excess of those imposed by the Federal Rules. Particularly in combination with the RFPs served September 26, 2017, Plaintiffs have served broad, overlapping discovery requests and the exercise of identifying which documents respond to which of several involved requests would be burdensome, pointless, and disproportionate to the needs of the case. Defendants will comply with the Federal Rules.

## OBJECTIONS

*RFP 1: All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information and/or other documents that relate or refer to the inclusion standards on the TSDB.*

**Objections:**   Defendants object to the request as duplicative with RFP 1 to TSC, served September 26, 2017. Defendants further object to the request as overbroad and seeking information not relevant to any claim or defense in this case. The inclusion standards on the TSDB

3

possibly could be relevant to the claims which were dismissed; they are not necessary to evaluate the adequacy of the process available to people who believe they are on the watchlist due to their travel experiences.  Even if the inclusion standards were somehow relevant, it would be overbroad, burdensome and disproportionate to the needs of the case to require a search for all documents "that relate" to the inclusion standards on the TSDB at every point since its creation.  Read broadly in connection with RFP 2, Plaintiffs' requests could encompass nearly every document at the TSC, which is responsible for maintaining the TSDB.  Defendants object to the terms "records," "written computer generated embodiments", and "statistical information" as being so vague as to be meaningless.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under

4

Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege. Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving all of the foregoing objections, TSC and FBI will search for and process policies and procedures that embody the current inclusion standards for the TSDB.  To the extent any nonprivileged, non-SSI documents exist, they will be produced beginning November 15, 2017, and thereafter on a rolling basis.  Consistent with Defendants' proposal in the Discovery Plan, including limitations on identifying classified information, privilege logs will be provided as appropriate with the rolling production of documents.

> *RFP 2:       All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information and/or other documents that relate or refer to the acceptance of nominations to the TSDB.*

**Objections:** Defendants object to the request as duplicative with RFP 2 to TSC, served September 26, 2017.  Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case.  Even if the acceptance of nominations generally is relevant, the

request is overbroad, burdensome and disproportionate to the needs of the case because it appears to require a search for all documents "that relate" to the "acceptance of nominations" on the TSDB at every point since its creation.   The request is so vague as to be meaningless, and read broadly, such a request could encompass nearly every document at the TSC, including documents reflecting policies, documents about every individual nomination ever received, and just about everything else.  Defendants object to the terms "records," "written computer generated embodiments", and "statistical information" as vague.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise

6

protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege. Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving all of the foregoing objections, TSC and FBI will search for and process current policies and procedures for acceptance of nominations to the TSDB. To the extent any nonprivileged, non-SSI documents exist, they will be produced beginning November 15, 2017, and thereafter on a rolling basis. Consistent with Defendants' proposal in the Discovery Plan, including limitations on identifying classified information, privilege logs will be provided as appropriate with the rolling production of documents.

*RFP 3: All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information, and/or other documents that relate to the dissemination of any information contained in the TSDB to banks and other financial institutions, including, but certainly not limited to JPMorgan Chase Bank, TCF Bank, PNC Bank, and Western Union.*

**Objections:** Defendants object to the request as overbroad and seeking irrelevant information. Even if the dissemination of TSDB information generally could be relevant, the request is overbroad, burdensome and disproportionate to the needs of the case because it appears to require a search for all documents "that relate" to the sharing of "any information" in the TSDB at every

point since its creation.  Defendants object to the terms "records," "written computer generated embodiments", "statistical information" and "dissemination" as vague.  Moreover, read broadly, it is potentially extraordinarily burdensome.  TSC does not export TSDB information to financial institutions as a general matter, and Defendants are not required to search every FBI file in the country to determine whether it has ever happened as an ad hoc matter.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or

constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  In light of the Court's ruling of October 27, 2017 (Dkt. No. 61), Defendants clarify that they withdraw "and seeking irrelevant information" from the first sentence of the first paragraph above. Subject to and without waiving any of the remaining foregoing objections, TSC and FBI will search for and process any current policies and procedures regarding dissemination of TSDB information to banks and other financial institutions.  Defendants do not currently believe that any responsive documents exist.  To the extent any nonprivileged, non-SSI documents exist, they will be produced beginning November 15, 2017, and thereafter on a rolling basis.  Consistent with Defendants' proposal in the Discovery Plan, including limitations on identifying classified information, privilege logs will be provided as appropriate with the rolling production of documents.

> *RFP 4:     All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information, and/or other documents that relate or refer to the dissemination of any information contained in the TSDB to airlines and airline personnel, whether to screen passengers or to screen airline personnel for employment at airports.*

**Objections:** Defendants object to the request as overbroad and seeking irrelevant information. None of the Plaintiffs makes an allegation that they were denied employment at an airport, and

there is a separate procedural mechanism for individuals to challenge employment decisions. Even if the dissemination of TSDB information generally could be relevant, the request is overbroad, burdensome and disproportionate to the needs of the case because it appears to require a search for all documents "that relate" to the sharing of "any information" in the TSDB at every point since its creation. Defendants object to the terms "records," "written computer generated embodiments", "statistical information" and "dissemination" as vague. Moreover, read broadly, it is potentially extraordinarily burdensome. TSC does not export TSDB information directly to airlines as a general matter. Rather, TSC exports certain subsets of TSDB data to TSA for use in screening. To the extent the request seeks information about how TSA uses that data, the request is mis-directed to TSC and FBI.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants. Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information. Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security

Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  In light of the Court's ruling of October 27, 2017 (Dkt. No. 61), Defendants clarify that they withdraw "and seeking irrelevant information" from the first sentence of the first paragraph above, as well as the second sentence of the same paragraph. Based on the remaining foregoing objections, Defendants will not respond.

> *RFP 5:    All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information, and/or other documents that relate or refer to the dissemination of any information contained in the TSDB to non-federal government agencies, including states, and all state and local law enforcement agencies.*

**Objections**: Defendants object to the request as duplicative with RFP 4 to TSC, served September 26, 2017.  Defendants object to the request as overbroad and seeking irrelevant information.   Even if the dissemination of TSDB information generally could be relevant, the request is overbroad,

burdensome and disproportionate to the needs of the case because it appears to require a search for all documents "that relate" to the sharing of "any information" in the TSDB at every point since its creation.  Defendants object to the terms "records," "written computer generated embodiments", "statistical information" and "dissemination" as vague.  Moreover, read broadly, it is potentially extraordinarily burdensome.  TSC does not export TSDB information directly to state and local government authorities as a general matter, and Defendants are not required to search every FBI file in the country to determine whether it has ever happened as an ad hoc matter.  Rather, TSC exports certain subsets of TSDB data to NCIC, which may be queried by state and local law enforcement.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under

Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** In light of the Court's ruling of October 27, 2017 (Dkt. No. 61), Defendants clarify that they withdraw "and seeking irrelevant information" from the second sentence of the first paragraph above. Subject to and without waiving any of the remaining foregoing objections, TSC and FBI will search for and process current policies and procedures for sharing TSDB data with non-federal government entities, as well as current TSC training materials on that subject.  To the extent any nonprivileged, non-SSI documents exist, they will be produced beginning November 15, 2017, and thereafter on a rolling basis, to the extent any such documents exist.  Consistent with Defendants' proposal in the Discovery Plan, including limitations on identifying classified information, privilege logs will be provided as appropriate with the rolling production of documents.

*RFP 6:       All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information,*

***and/or other documents that relate or refer to the dissemination of any information***

***contained in the TSDB to gun sellers.***

**<u>Objections</u>**: Defendants object to the request as duplicative with RFP 4 to TSC, served September 26, 2017.  Defendants object to the request as overbroad and seeking irrelevant information.  None of the Plaintiffs makes an allegation that they were denied the ability to purchase a gun, and there is a separate procedural mechanism for individuals to challenge such decisions.  Even if the dissemination of TSDB information generally could be relevant, the request is overbroad, burdensome and disproportionate to the needs of the case because it appears to require a search for all documents "that relate" to the sharing of "any information" in the TSDB at every point since its creation.  Defendants object to the terms "records," "written computer generated embodiments", "statistical information" and "dissemination" as vague.  Moreover, read broadly, it is potentially extraordinarily burdensome.  Defendants do not share TSDB information directly with gun sellers as a general matter, and Defendants are not required to search every FBI file in the country to determine whether it has ever happened as an ad hoc matter.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  In light of the Court's ruling of October 27, 2017 (Dkt. No. 61), Defendants clarify that they withdraw "and seeking irrelevant information" from the second sentence of the first paragraph above, as well as the third sentence of the same paragraph. Based on the remaining foregoing objections, Defendants will not respond.

*RFP 7:        All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information, and/or other documents that relate or refer to the dissemination of any information contained in the TSDB to private contractors.*

15

**<u>Objections</u>**: Defendants object to the request as overbroad and seeking irrelevant information. None of the Plaintiffs makes an allegation that they have been affected by "private contractors." Even if the dissemination of TSDB information generally could be relevant, the request is overbroad, burdensome and disproportionate to the needs of the case because it appears to require a search for all documents "that relate" to the sharing of "any information" in the TSDB at every point since its creation.  Defendants object to the terms "private contractors" "records," "written computer generated embodiments", "statistical information" and "dissemination" as vague. Moreover, read broadly, it is potentially extraordinarily burdensome.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law

No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** In light of the Court's ruling of October 27, 2017 (Dkt. No. 61), Defendants clarify that they withdraw "and seeking irrelevant information" from the first sentence of the first paragraph above, as well as the second sentence of the same paragraph. Based on the remaining foregoing objections, Defendants will not respond.

> ***RFP 8:        All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information and/or other documents that relate or refer to the dissemination of any information contained in the TSDB to captains of sea-faring vessels.***

**Objections:**  Defendants object to the request as overbroad and seeking irrelevant information. None of the Plaintiffs makes an allegation that they have been affected by "captains of sea-faring vessels."  Even if the dissemination of TSDB information generally could be relevant, the request is overbroad, burdensome and disproportionate to the needs of the case because it appears to require a search for all documents "that relate" to the sharing of "any information" in the TSDB at every point since its creation.  Defendants object to the terms "captains of sea-faring vessels"

"records," "written computer generated embodiments", "statistical information" and "dissemination" as vague.  Moreover, read broadly, it is potentially extraordinarily burdensome.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of

any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  In light of the Court's ruling of October 27, 2017 (Dkt. No. 61), Defendants clarify that they withdraw "and seeking irrelevant information" from the first sentence of the first paragraph above, as well as the second sentence of the same paragraph. Based on the remaining foregoing objections, Defendants will not respond.

*RFP 9:        All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information and/or other documents that relate or refer to the dissemination of any information contained in the TSDB to foreign governments.*

**Objections:**  Defendants object to the request as duplicative with RFP 4 to TSC, served September 26, 2017.  Defendants object to the request as overbroad and seeking irrelevant information.  None of the Plaintiffs makes an allegation that they have been affected by "foreign governments."  Even if the dissemination of TSDB information generally could be relevant, the request is overbroad, burdensome and disproportionate to the needs of the case because it appears to require a search for all documents "that relate" to the sharing of "any information" in the TSDB at every point since its creation.  Defendants object to the terms "records," "written computer generated embodiments", "statistical information" and "dissemination" as vague.  Moreover, read broadly, it is potentially extraordinarily burdensome.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  In light of the Court's ruling of October 27, 2017 (Dkt. No. 61), Defendants clarify that they withdraw "and seeking irrelevant information" from the second sentence of the first paragraph above, as well as the third sentence of the same paragraph. Based on the remaining foregoing objections, Defendants will not respond.

> ***RFP 10:       All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information and/or other documents that relate or refer to using information contained in the TSDB in any way to conduct background checks pertaining to employment with the federal government.***

**Objections:**  Defendants object to the request as overbroad and seeking irrelevant information. None of the Plaintiffs makes an allegation that they have been affected by "background checks pertaining to employment with the federal government."   Even if the dissemination of TSDB information generally could be relevant, the request is overbroad, burdensome and disproportionate to the needs of the case because it appears to require a search for all documents "that relate" to the sharing of "any information" in the TSDB at every point since its creation. Defendants object to the terms "records," "written computer generated embodiments", "statistical information" and "dissemination" as vague.   Moreover, read broadly, it is potentially extraordinarily burdensome.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

21

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  In light of the Court's ruling of October 27, 2017 (Dkt. No. 61), Defendants clarify that they withdraw "and seeking irrelevant information" from the first sentence of the first paragraph above, as well as the second sentence of the same paragraph, insofar as the request is

seeking information about alleged dissemination. Based on the remaining foregoing objections, Defendants will not respond.

> ***RFP 11:     All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information and/or other documents that relate or refer to using information contained in the TSDB in any way to conduct background checks pertaining to the issuance of Hazmat licenses, FAA licenses, and any other license issued by the federal government.***

**Objections:**   Defendants object to the request as overbroad and seeking irrelevant information. None of the Plaintiffs makes an allegation that they have been affected by "the issuance of Hazmat licenses, FAA licenses, and any other license issued by the federal government."  Even if the dissemination of TSDB information generally could be relevant, the request is overbroad, burdensome and disproportionate to the needs of the case because it appears to require a search for all documents "that relate" to the sharing of "any information" in the TSDB at every point since its creation.  Defendants object to the terms "records," "written computer generated embodiments", "statistical information" and "dissemination" as vague.  Moreover, read broadly, it is potentially extraordinarily burdensome.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate. Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense

of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  In light of the Court's ruling of October 27, 2017 (Dkt. No. 61), Defendants clarify that they withdraw "and seeking irrelevant information" from the first sentence of the first paragraph above, as well as the second sentence of the same paragraph, insofar as the request is seeking information about alleged dissemination . Based on the remaining foregoing objections, Defendants will not respond.

***RFP 12:***      ***All directives, written policies, protocols, practices, procedures,***
***agreements, memorandums, memorandums of understanding, contracts, records,***
***communications, written/computer generated embodiments, statistical information***
***and/or other documents that relate or refer to using information contained in the***
***TSDB in any way to conduct background checks pertaining to expedited screening***
***programs, including, but not limited to, Nexus, TSA Precheck, Global Entry and***
***CLEAR.***

**<u>Objections:</u>**  Defendants object to the request as overbroad and seeking irrelevant information. None of the Plaintiffs makes an allegation that they have been affected by "background checks pertaining to expedited screening programs."  Even if the dissemination of TSDB information generally could be relevant, the request is overbroad, burdensome and disproportionate to the needs of the case because it appears to require a search for all documents "that relate" to the sharing of "any information" in the TSDB at every point since its creation.  Defendants object to the terms "records," "written computer generated embodiments", "statistical information" and "dissemination" as vague.  Moreover, read broadly, it is potentially extraordinarily burdensome.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate. Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon

the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  In light of the Court's ruling of October 27, 2017 (Dkt. No. 61), Defendants clarify that they withdraw "and seeking irrelevant information" from the first sentence of the first paragraph above, as well as the second sentence of the same paragraph, insofar as the request is seeking information about alleged dissemination. Based on the remaining foregoing objections, Defendants will not respond.

*RFP 13:*        *All directives, written policies, protocols, practices, procedures,*

*agreements, memorandums, memorandums of understanding, contracts, records,*

> *communications, written/computer generated embodiments, statistical information*
>
> *and/or other documents that relate or refer to using information contained in the*
>
> *TSDB in any way to conduct background checks pertaining to employment*
>
> *opportunities with the federal government.*

**Objections:**  Defendants object to the request as duplicative with RFP 10, *supra*.  Defendants refer Plaintiffs to Defendants' objections in response to RFP 10.

**Response:**  Based on the foregoing objections, as revised in the response to RFP 10, Defendants will not respond.

> *RFP 14:        All directives, written policies, protocols, practices, procedures,*
>
> *agreements, memorandums, memorandums of understanding, contracts, records,*
>
> *communications, written/computer generated embodiments, statistical information*
>
> *and/or other documents that relate or refer to the dissemination of any information*
>
> *contained in the TSDB to federal, state, municipal, local, or any other court.*

**Objections:**  Defendants object to the request as overbroad and seeking irrelevant information. None of the Plaintiffs makes an allegation that they have been affected by "dissemination of any information contained in the TSDB to federal, state, municipal, local, or any other court."  Even if the dissemination of TSDB information generally could be relevant, the request is overbroad, burdensome and disproportionate to the needs of the case because it appears to require a search for all documents "that relate" to the sharing of "any information" in the TSDB at every point since its creation.  Defendants object to the terms "records," "written computer generated embodiments", "statistical information" and "dissemination" as vague.  Moreover, read broadly, it is potentially extraordinarily burdensome.   TSC does not export TSDB information directly to state and local

government authorities as a general matter, and Defendants are not required to search every FBI file in the country to determine whether it has ever happened as an ad hoc matter. Rather, TSC exports certain subsets of TSDB data to NCIC, which may be queried by state and local law enforcement.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate. Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants. Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information. Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege. Nothing contained in the following responses shall be

construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** In light of the Court's ruling of October 27, 2017 (Dkt. No. 61), Defendants clarify that they withdraw "and seeking irrelevant information" from the first sentence of the first paragraph above, as well as the second sentence of the same paragraph. Based on the remaining foregoing objections, Defendants will not respond.

> ***RFP 15:*** *All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information and/or other documents that relate or refer to access information contained in the TSDB in any way to CBP and TSA, and any other screening agency.*

**Objections:** Defendants object to the request as so confusing and vague as to be meaningless, as well as overbroad and seeking irrelevant information. Defendants object to the term "access information," as undefined and ambiguous. Defendants also object to the terms "records," "written computer generated embodiments", "statistical information" and "dissemination" as vague. Moreover, read broadly, it is potentially extraordinarily burdensome.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate. Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense

of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving all of the foregoing objections, TSC will search for and process current policies and procedures for sharing TSDB data with other federal entities, to the extent any such documents exist.  To the extent any nonprivileged, non-SSI documents exist, they will be produced beginning November 15, 2017, and thereafter on a rolling basis.  Consistent with Defendants' proposal in the Discovery Plan, including limitations on identifying classified

information, privilege logs will be provided as appropriate with the rolling production of documents.

>    ***RFP 16:       All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information and/or other documents that relate or refer to the following statement made by Defendant Healy before the Senate Homeland Security and Governmental Affairs Committee:***
>
>>    ***TSC accepts nominations into the Terrorist Watchlist when they satisfy two requirements. First, the biographic information associated with a nomination must contain sufficient identifying data so that a person being screened can be matched to or disassociated from a watchlisted terrorist. Second, the facts and circumstances pertaining to the nomination must meet the "reasonable suspicion" standard of review established by terrorist screening Presidential Directives. Reasonable suspicion requires "articulable" facts which, taken together with rational inferences, reasonably warrant a determination that an individual is known or suspected to be or has been engaged in conduct constituting, in preparation for, in aid of or related to terrorism and terrorist activities, and is based on the totality of the circumstances. Due weight must be given to the reasonable inferences that a person can draw from the facts. Mere guesses or inarticulate "hunches" are not enough to constitute reasonable suspicion.***

**<u>Objections:</u>** Defendants object to the request as duplicative with RFP 1 and RFP 2, *supra*, to the extent that this uncited quote refers to or summarizes the inclusion standards and acceptance of nominations into the TSDB.   Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case.  The inclusion and nomination standards on the TSDB possibly could be relevant to the claims which were dismissed; they are

not necessary to evaluate the adequacy of the process available to people who believe they are on the watchlist due to their travel experiences.  Read broadly in connection with RFP 1 and RFP 2, Plaintiffs' requests could encompass nearly every document at the TSC, which is responsible for maintaining the TSDB.  Defendants should not be required to search its records for documents relating to a portion of purported congressional testimony quoted out of context in Plaintiffs' discovery requests. Defendants object to the terms "records," "written computer generated embodiments", and "statistical information" as being so vague as to be meaningless.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise

32

protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections, Defendants will not respond.


>*RFP: 17*        *All directives, written policies, protocols, practices, procedures,*
>*agreements, memorandums, memorandums of understanding, contracts, records,*
>*communications, written/computer generated embodiments, statistical information*
>*and/or other documents, including all correspondences, that relate or refer to the*
>*following statement made by Deputy Director of the National Counterterrorism Center*
>*Russel E. Travers at a March 10, 2010 Senate Homeland Security Hearing:  "[t]he*
>*entire federal government is leaning very far forward on putting people on the list,"*
>*and that the watch list is "getting bigger, and it will get even bigger."*

**Objections:**  Defendants object to the request as so confusing and vague as to be meaningless, as well as overbroad and seeking irrelevant information.  Defendants further object that this request is nonsensical and potentially extraordinarily burdensome.  Defendants should not be required to search its records for documents relating to a single sentence of purported congressional testimony quoted out of context in Plaintiffs' discovery requests. Defendants also object to the terms "records," "written computer generated embodiments", "statistical information" and "dissemination" as vague.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections, Defendants will not respond.

***RFP 18:***      ***All directives, written policies, protocols, practices, procedures,***

***agreements, memorandums, memorandums of understanding, contracts, records,***

***communications, written/computer generated embodiments, statistical information***

***and/or other documents that relate or refer to the "reasonable suspicion" standard of***

***review.***

**Objections:** Defendants object to the request as overbroad and seeking information not relevant

to any claim or defense in this case.  The "reasonable suspicion" standard of review of the TSDB

possibly could be relevant to the claims which were dismissed; they are not necessary to evaluate

the adequacy of the process available to people who believe they are on the watchlist due to their

travel experiences.  Even if the "reasonable suspicion" standard of review was somehow relevant,

it would be overbroad, burdensome and disproportionate to the needs of the case to require a search

for all documents "that relate" to the "reasonable suspicion" standard of review on the TSDB at

every point since its creation.  Read broadly, Plaintiffs' requests could encompass nearly every

document at the TSC, which is responsible for maintaining the TSDB.  Defendants object to the

terms "records," "written computer generated embodiments", and "statistical information" as

being so vague as to be meaningless.

Defendants further object to any document request that seeks the disclosure of policies and

procedures not currently in effect; the complaint seeks only injunctive relief and past policies and

procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material

to include all predecisional and deliberative material, which is not relevant to any claim or defense

of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery

of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege. Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving all of the foregoing objections, TSC and FBI will search for and process any current policies and procedures regarding the "reasonable suspicion" portion of the inclusion standards for the TSDB.  To the extent any nonprivileged, non-SSI documents exist, they will be produced beginning November 15, 2017, and thereafter on a rolling basis.  Consistent with Defendants' proposal in the Discovery Plan, including limitations on identifying classified information, privilege logs will be provided as appropriate with the rolling production of documents.

> ***RFP 19:      All directives, written policies, protocols, practices, procedures,***
> ***agreements, memorandums, memorandums of understanding, contracts, records,***
> ***communications, written/computer generated embodiments, statistical information***
> ***and/or other documents that relate or refer to the nomination or acceptance of "non-***
> ***investigatory subjects" on the TSDB.***

**Objections:** Defendants object to the request as duplicative with RFP 1 and RFP 2, *supra*, to the extent that this request relates to the inclusion standards and acceptance of nominations into the TSDB.  Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case.  The inclusion and nomination standards on the TSDB possibly could be relevant to the claims which were dismissed; they are not necessary to evaluate the adequacy of the process available to people who believe they are on the watchlist due to their travel experiences.  Defendants object to the terms "non-investigatory subjects," "records," "written computer generated embodiments", and "statistical information" as being so vague as to be meaningless.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon

the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections, Defendants will not respond.

*RFP 20:        All correspondences, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, written/computer generated embodiments, and statistical information, and/or other documents pertaining to (1) the March 2013 Watchlisting Guidance (Dkt. 22-2); (2) the Directorate of Terrorist Identities (DTI): Strategic Accomplishments (2013) (Dkt. 22-*

***3); and (3) Department of Justice's March 2014 Audit of the Federal Bureau of
Investigation's Management of Terrorist Watchlist (Dkt. 22-4).***

**Objections:**   Defendants object to this request insofar as the Government has not confirmed nor
denied the authenticity, content or accuracy of these purportedly leaked documents.

Defendants object to the terms "written computer generated embodiments" and "statistical
information" as being so vague as to be meaningless.

Defendants further object to any document request that seeks the disclosure of policies and
procedures not currently in effect; the complaint seeks only injunctive relief and past policies and
procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material
to include all predecisional and deliberative material, which is not relevant to any claim or defense
of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery
of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon
the Defendants.  Defendants will neither search for nor produce documents reflecting draft or
predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified
and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory
protection pertaining to such information.  Defendants object to this request to the extent it seeks
information subject to the law enforcement and investigatory files privilege, Sensitive Security
Information (including Sensitive Security Information that is not appropriate for disclosure under
Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law
No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise
protected by the deliberative process privilege, the attorney-client privilege, the work product

doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections, Defendants will not respond.


> ***RFP 21:       All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information and/or other documents that relate or refer to the following inclusion standard articulated in the March 2013 Watchlisting Guidance (Dkt. 22-2): "[t]ravel for no known lawful or legitimate purpose to a locus of terrorist activity" being a basis for inclusion on the watch list.***

**Objections:**  Defendants object to this request insofar as the Government has not confirmed nor denied the authenticity, content or accuracy of this purportedly leaked document.

Defendants object to the terms "records," "written computer generated embodiments," and "statistical information" as being so vague as to be meaningless.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense

of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving all of the foregoing objections, TSC and FBI will search for and process policies and procedures that embody the current inclusion standards for the TSDB.  To the extent any nonprivileged, non-SSI documents exist, they will be produced beginning November 15, 2017, and thereafter on a rolling basis.  Consistent with Defendants' proposal in the Discovery Plan, including limitations on identifying classified information, privilege logs will be provided as appropriate with the rolling production of documents.

***RFP 22:       All directives, written policies, protocols, practices, procedures,***

***agreements, memorandums, memorandums of understanding, contracts, records,***

***communications, written/computer generated embodiments, statistical information***

***and/or other documents that relate or refer to a review of a nomination for inclusion***

***on the TSDB subsequent to the acquittal or dismissal of terrorism-related charges of***

***an American citizen.***

**Objections:**  Defendants object to the request as duplicative with RFP 1 and RFP 2, *supra*, to the

extent that this request relates to the inclusion standards and acceptance of nominations into the

TSDB.  Defendants object to the request as overbroad and seeking information not relevant to any

claim or defense in this case.  The inclusion and nomination standards on the TSDB possibly could

be relevant to the claims which were dismissed; they are not necessary to evaluate the adequacy

of the process available to people who believe they are on the watchlist due to their travel

experiences.  Defendants object to the terms "terrorism-related charges," "records," "written

computer generated embodiments", and "statistical information" as being so vague as to be

meaningless.

Defendants further object to any document request that seeks the disclosure of policies and

procedures not currently in effect; the complaint seeks only injunctive relief and past policies and

procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material

to include all predecisional and deliberative material, which is not relevant to any claim or defense

of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery

of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants. Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information. Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege. Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Based on the foregoing objections, Defendants will not respond.

*RFP 23:* *All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information and/or other documents that relate or refer to the acceptance or nomination of*

*individuals on the TSDB that the federal government does not have evidence*

*pertaining to a threat to aviation.*

**Objections:**  Defendants object to the request as duplicative with RFP 1 and RFP 2, *supra*, to the extent that this request relates to the inclusion standards and acceptance of nominations into the TSDB.  Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case.  The inclusion and nomination standards on the TSDB possibly could be relevant to the claims which were dismissed; they are not necessary to evaluate the adequacy of the process available to people who believe they are on the watchlist due to their travel experiences.  Defendants object to the terms "threat to aviation," "records," "written computer generated embodiments", and "statistical information" as being so vague as to be meaningless.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security

Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections, Defendants will not respond.

*RFP 24         Statistical information pertaining to (1) the number of individuals currently on the TSDB, (2) the number of individuals currently on the TSDB that have not been charged or convicted of a terrorism-related offense, (3) the number of nominations made for inclusion in the TSDB for fiscal years 2012 until the present, (4) the number of acceptances of nominations made for inclusion in the TSDB for fiscal years 2012 until the present, (5) the number of individuals on the No Fly List for fiscal years 2012 until the present, (6) the number of United States citizens on the No Fly List for fiscal years 2012 until the present, (7) the number of individuals on the Selectee List for fiscal years 2012 until the present, (8) the number of United States citizens on the Selectee List for fiscal years 2012 until the present, (9) the number of rejections of nominations for inclusion in the TSDB for fiscal years 2012 until the present, (10) the number of individuals on the TSDB that were approached by federal agents to act as*

*government informants, (11) the number of terrorist attacks committed within the*

*United States in the last decade, (12) the number of terrorist attacks committed within*

*the United States in the last decade by United States citizens, (13) the number of*

*terrorist attacks committed within the United States in the last decade by individuals*

*included on the TSDB at the time of the terrorist attack, (14) the number of terrorist*

*attacks committed within the United States in the last decade by United States citizens*

*included on the TSDB at the time of the terrorist attack, (15) the number of individuals*

*on the TSDB and the words "Islam" or "Muslim" (or any variation of those words)*

*was contained in the nomination to the TSDB, and (16) the number of individuals that*

*were accepted for inclusion on the TSDB and the words "Islam" or "Muslim" (or any*

*variation of those words) was contained in the nomination to the TSDB.*

**Objections:**  Defendants object to the request as overbroad and seeking information not relevant

to any claim or defense in this case.  Defendants further object to this request as burdensome and

disproportionate because the TSDB does not include all of these categories of data.  The requested

information is not necessary to evaluate the adequacy of the process available to people who

believe they are on the watchlist due to their travel experiences.  Defendants object to the terms

"statistical information" and "terrorist attack" as being so vague as to be meaningless.  Defendants

object to this request as burdensome, overbroad, and disproportionate to the needs of the case

because Defendants should not be required to do a word search of every document for particular

words.

Defendants further object to this request to the extent it seeks information that is classified

and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory

protection pertaining to such information.  Defendants object to this request to the extent it seeks

information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving all of the foregoing objections, TSC will search for and process existing, formal, official TSC reports from 2012 to present, reflecting the information requested in categories (1), (3), (4), (7), (8), and (9).  Based on the foregoing objections, Defendants will not respond to requests for the remaining categories. To the extent any such nonprivileged, non-SSI documents exist, they will be produced beginning November 30, 2017, and thereafter on a rolling basis.  Consistent with Defendants' proposal in the Discovery Plan, including limitations on identifying classified information, privilege logs will be provided as appropriate with the rolling production of documents.

*RFP 25:*        *All directives, written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, records, communications, written/computer generated embodiments, statistical information*

*and/or other documents that relate or refer to your involvement in the DHS TRIP process.*

**Objections:** Defendants object to the request as overbroad and seeking irrelevant information. Defendants object to the phrase "your" to the extent that Plaintiffs are requesting information from the Defendants individually. In responding to this request, the Defendants respond as the TSC and the FBI, based upon information in the agencies' possession, custody, or control. Defendants object to the terms "involvement," "record," "written computer generated embodiments," and "statistical information" as being so vague as to be meaningless.

Defendants further object to any document request that seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants. Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information. Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law

No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving all of the foregoing objections, TSC and FBI will search for and process current policies and procedures that describe TSC and FBI's involvement in the DHS TRIP process.  To the extent any nonprivileged, non-SSI documents exist, they will be produced beginning November 30, 2017, and thereafter on a rolling basis.  Consistent with Defendants' proposal in the Discovery Plan, including limitations on identifying classified information, privilege logs will be provided as appropriate with the rolling production of documents.

> ***RFP 26:***       ***Any and all records, communications, written/computer generated embodiments, notes, and/or other documents pertaining to any and all Plaintiffs that were provided by you to any and all persons or entities that are not federal agencies.***

**Objections:**  Defendants object to this request as overbroad and vague, and because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan. In particular, Defendants object to any request that is wholly divorced from whether the watchlist redress process available to Plaintiffs comports with the requirements of due process, *see* Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are

under investigation, and other wholly irrelevant information.  Defendants will not consent to the

disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding

Plaintiffs. It should not be necessary to disclose such records to the Plaintiffs in discovery in order

to adjudicate the procedural due process question.  Indeed, such disclosures to Plaintiffs in

discovery would not be appropriate, and would risk harm to national security because they would

enable individuals who merely allege they are on a watchlist to determine whether the TSC and

FBI maintain records on them.

Defendants object to the phrase "you" to the extent that Plaintiffs are requesting

information from the Defendants individually. In responding to this request, the Defendants

respond as the TSC and the FBI, based upon information in the agencies' possession, custody, or

control.  Defendants object to the terms "record" and "written computer generated embodiments"

as being so vague as to be meaningless.

Defendants further object to this request to the extent that it defines the requested material

to include all predecisional and deliberative material, which is not relevant to any claim or defense

of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery

of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon

the Defendants.  Defendants will neither search for nor produce documents reflecting draft or

predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified

and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory

protection pertaining to such information.  Defendants object to this request to the extent it seeks

information subject to the law enforcement and investigatory files privilege, Sensitive Security

Information (including Sensitive Security Information that is not appropriate for disclosure under

Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

*RFP 27:        Any and all records, communications, written/computer generated embodiments, notes, and/or other documents that relate or refer to any and all DHS TRIP inquiries filed by Plaintiffs.*

**Objections:**  Defendants object to this request as overbroad; all documents mentioning Plaintiffs' names would not be relevant to an evaluation of the adequacy of the post-deprivation process. Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs. It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.  Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them.  Defendants also object to the terms "record" and "written computer generated embodiments" as being so vague as to be meaningless.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

***RFP 28:***     ***Any and all records, communications, written/computer generated embodiments, notes, and/or other documents that relate or refer to any and all entries to the United States by Plaintiffs.***

**Objections:** Defendants object to this request as overbroad and vague, and because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan. In particular, Defendants object to any request that is wholly divorced from whether the watchlist redress process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information. Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs. It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question. Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them related to their alleged entries into the United States. Moreover, Plaintiffs should be aware whether and when they entered the United States.

Defendants further object to this request to the extent it seeks information not within the purview or control of the TSC and FBI. Defendants object to the terms "record" and "written computer generated embodiments" as being so vague as to be meaningless.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery

of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants. Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information. Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege. Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Based on foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

*RFP 29:      Any and all records, communications, written/computer generated embodiments, notes, and/or other documents that relate or refer to interrogations or questioning of any and all Plaintiffs by federal agents.*

**<u>Objections:</u>**  Defendants object to this request as overbroad and vague, and because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan. In particular, Defendants object to any request that is wholly divorced from whether the watchlist redress process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information.  Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs.  It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.   Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them related to any "interrogations or questioning . . . by federal agents." Moreover, Plaintiffs should be aware whether and when any such instances have occurred.

Defendants further object to this request to the extent it seeks information not within the purview or control of the TSC and FBI.   Defendants object to the terms "interrogations," "questioning," "federal agents," "record," and "written computer generated embodiments" as being so vague as to be meaningless.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon

the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

*RFP 30:        The data downloaded from Plaintiff Yaseen Kadura's phone when it was confiscated at the Peace Bridge Port of Entry in Port Huron, Michigan when he attempted to reenter the United States on September 22, 2012, or at any other time from any of his electronic devices by you, and any and all records, communications,*

*written/computer generated embodiments, notes, and/or other documents that relate or*

*refer to the data.*

**Objections:**   Defendants object to this request to the extent it seeks information not within the purview or control of the TSC and FBI.  Defendants further object to this request because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan.   In particular, Defendants object to any request that is wholly divorced from whether the watchlist redress process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information.  Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs.  It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.   Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them.   Moreover, Plaintiffs should be aware and in possession of any such data on their own electronic devices.

Defendants object to the terms "data," "electronic devices," "record," and "written computer generated embodiments" as being so vague as to be meaningless.  Defendants also object to the phrase "at any other time" as overbroad and seeking information not relevant to Plaintiff's claims and allegations.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense

of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

> *RFP 31:*        *Any and all records, communications, written/computer generated embodiments, notes, and/or other documents that relate or refer to Plaintiff Yaseen Kadura and any financial institution, including Western Union.*

**Objections:**  Defendants object to this request to the extent it seeks information not within the purview or control of the TSC and FBI.  Defendants further object to this request because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan.   In particular, Defendants object to any request that is wholly divorced from whether the watchlist redress process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information.  Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs.  It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.   Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them.

Defendants object to the terms "record" and "written computer generated embodiments" as being so vague as to be meaningless.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

> ***RFP 32:***        ***The data downloaded from Plaintiff Osama Ahmed's USB flash drive when it was confiscated by the FBI, or at any other time from any of his electronic devices by you, and any and all records, communications, written/computer generated embodiments, notes, and/or other documents that relate or refer to the data.***

**Objections:**  Defendants object to this request because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan.  In particular, Defendants object to any request that is wholly

divorced from whether the watchlist redress process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information.  Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs.  It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.  Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them.   Moreover, Plaintiffs should be aware and in possession of any such data on their own electronic devices.

Defendants further object to this request to the extent it seeks information not within the purview or control of the TSC and FBI.  Defendants object to the terms "data," "electronic devices," "you," "record," and "written computer generated embodiments" as being so vague as to be meaningless.  Defendants also object to the phrase "at any other time" as overbroad and seeking information not relevant to Plaintiff's claims and allegations.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory

protection pertaining to such information.  Defendants object to this request to the extent it seeks

information subject to the law enforcement and investigatory files privilege, Sensitive Security

Information (including Sensitive Security Information that is not appropriate for disclosure under

Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law

No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise

protected by the deliberative process privilege, the attorney-client privilege, the work product

doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or

constitutional or common law privilege.  Nothing contained in the following responses shall be

construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of

any objection or privilege generally. Inadvertent disclosure of information subject to a claim of

privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on

Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.


*RFP 33:*        *The data downloaded from Plaintiff Ahmad Ibrahim Al-Halabi's phone*

*when it was confiscated by CBP, or at any other time from any of his electronic devices*

*by you, and any and all records, communications, written/computer generated*

*embodiments, notes, and/or other documents that relate or refer to the data.*

**Objections:**  Defendants object to this request to the extent it seeks information not within the

purview or control of the TSC and FBI.  Defendants further object to this request because it seeks

information not relevant to any claim or defense in this case, and outside the proper scope of

discovery as proposed in Defendants' Position in the Joint Discovery Plan.  In particular,

Defendants object to any request that is wholly divorced from whether the watchlist redress

process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information.  Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs.  It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.   Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them.   Moreover, Plaintiffs should be aware and in possession of any such data on their own electronic devices.

Defendants object to the terms "data," "electronic devices," "record," and "written computer generated embodiments" as being so vague as to be meaningless.  Defendants also object to the phrase "at any other time" as overbroad and seeking information not relevant to Plaintiff's claims and allegations.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks

information subject to the law enforcement and investigatory files privilege, Sensitive Security

Information (including Sensitive Security Information that is not appropriate for disclosure under

Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law

No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise

protected by the deliberative process privilege, the attorney-client privilege, the work product

doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or

constitutional or common law privilege.  Nothing contained in the following responses shall be

construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of

any objection or privilege generally. Inadvertent disclosure of information subject to a claim of

privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on

Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.


> ***RFP 34:       The documents provided to Plaintiff Hassan Shibly in response to
> Freedom of Information Act Requests he submitted to you, and any and all records,
> communications, written/computer generated embodiments, notes, and/or other
> documents that relate or refer to the request.***

**Objections:**  Defendants object to this request to the extent it seeks information not within the

purview or control of the TSC and FBI, and already in Plaintiffs' possession.  Defendants further

object to this request because it seeks information not relevant to any claim or defense in this case,

and outside the proper scope of discovery as proposed in Defendants' Position in the Joint

Discovery Plan.  Further, it should not be necessary to disclose such records to the Plaintiff

because, as the request acknowledges, Plaintiff was already provided them.  Defendants object to

the request as overbroad.  Even if Plaintiff's FOIA request were relevant, all documents relating to it are not.  Defendants object to the terms "you," "record," and "written computer generated embodiments" as being so vague as to be meaningless.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on

Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

> *RFP 35:*        *Any and all records, communications, written/computer generated*
>
> *embodiments, notes, and/or other documents that relate or refer to Plaintiff Ibrahim*
>
> *Awad and the Chevrolet car dealership located in Sterling Heights, Michigan.*

**Objections:**  Defendants object to this request to the extent it seeks information not within the

purview or control of the TSC and FBI.  Defendants further object to this request because it seeks

information not relevant to any claim or defense in this case, and outside the proper scope of

discovery as proposed in Defendants' Position in the Joint Discovery Plan.   In particular,

Defendants object to any request that is wholly divorced from whether the watchlist redress

process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16,

and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are

under investigation, and other wholly irrelevant information.  Defendants will not consent to the

disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding

Plaintiffs.  It should not be necessary to disclose such records to the Plaintiffs in discovery in order

to adjudicate the procedural due process question.   Indeed, such disclosures to Plaintiffs in

discovery would not be appropriate, and would risk harm to national security because they would

enable individuals who merely allege they are on a watchlist to determine whether the TSC and

FBI maintain records on them.

Defendants object to the terms "record" and "written computer generated embodiments"

as being so vague as to be meaningless.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

**RFP 36:**       *Any and all records, communications, written/computer generated embodiments, notes, and/or other documents that relate or refer to Plaintiff Ibrahim Awad and the New York Police Department.*

**<u>Objections:</u>**  Defendants object to this request to the extent it seeks information not within the purview or control of the TSC and FBI.  Defendants further object to this request because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan.   In particular, Defendants object to any request that is wholly divorced from whether the watchlist redress process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information.  Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs.  It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.   Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them.

Defendants object to the terms "record" and "written computer generated embodiments" as being so vague as to be meaningless.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon

the Defendants.   Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.   Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.   Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**   Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

> *RFP 37:*        *The data downloaded from Plaintiff Saleem Ali's phones when they were confiscated by CBP, or at any other time from any of his electronic devices by you, and any and all records, communications, written/computer generated embodiments, notes, and/or other documents that relate or refer to the data.*

**<u>Objections:</u>**   Defendants object to this request to the extent it seeks information not within the purview or control of the TSC and FBI.  Defendants further object to this request because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan.   In particular, Defendants object to any request that is wholly divorced from whether the watchlist redress process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information.  Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs.  It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.   Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them.   Moreover, Plaintiffs should be aware and in possession of any such data on their own electronic devices.

Defendants object to the terms "data," "electronic devices," "you," "record," and "written computer generated embodiments" as being so vague as to be meaningless.  Defendants also object to the phrase "at any other time" as overbroad and seeking information not relevant to Plaintiff's claims and allegations.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon

the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

*RFP 38:        The data downloaded from Plaintiff Samir Anwar's phone when it was confiscated by CBP, or at any other time from any of his electronic devices by you, and any and all records, communications, written/computer generated embodiments, notes, and/or other documents that relate or refer to the data.*

**<u>Objections:</u>**   Defendants object to this request to the extent it seeks information not within the purview or control of the TSC and FBI.  Defendants further object to this request because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan.   In particular, Defendants object to any request that is wholly divorced from whether the watchlist redress process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information.  Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs.  It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.   Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them.   Moreover, Plaintiffs should be aware and in possession of any such data on their own electronic devices.

Defendants object to the terms "data," "electronic devices," "you," "record," and "written computer generated embodiments" as being so vague as to be meaningless.  Defendants also object to the phrase "at any other time" as overbroad and seeking information not relevant to Plaintiff's claims and allegations.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon

the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

*RFP 39:*       *The data downloaded from Plaintiff Zuhair El-Shwehdi's electronics each and every time they were confiscated by TSA or any other federal agents, or at any other time from any of his electronic devices by you, and any and all records, communications, written/computer generated embodiments, notes, and/or other documents that relate or refer to the data.*

**Objections:**   Defendants object to this request to the extent it seeks information not within the purview or control of the TSC and FBI.  Defendants further object to this request because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan.   In particular, Defendants object to any request that is wholly divorced from whether the watchlist redress process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information.  Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs.  It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.   Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them.   Moreover, Plaintiffs should be aware and in possession of any such data on their own electronic devices.

Defendants object to the terms "data," "electronic devices," "you," "record," and "written computer generated embodiments" as being so vague as to be meaningless.  Defendants also object to the phrase "at any other time" as overbroad and seeking information not relevant to Plaintiff's claims and allegations.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon

the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

*RFP 40:*        *The data downloaded from Plaintiff Mahmoud Eraqi's phone when it was confiscated by CBP, or at any other time from any of his electronic devices by you, and any and all records, communications, written/computer generated embodiments, notes, and/or other documents that relate or refer to the data.*

75

**Objections:**  Defendants object to this request to the extent it seeks information not within the purview or control of the TSC and FBI.  Defendants further object to this request because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan.   In particular, Defendants object to any request that is wholly divorced from whether the watchlist redress process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information.  Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs.  It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.   Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them.    Moreover, Plaintiffs should be aware and in possession of any such data on their own electronic devices.

Defendants object to the terms "data," "electronic devices," "you," "record," and "written computer generated embodiments" as being so vague as to be meaningless.  Defendants also object to the phrase "at any other time" as overbroad and seeking information not relevant to Plaintiff's claims and allegations.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon

the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.


*RFP 41:       Any and all records, communications, written/computer generated embodiments, notes, and/or other documents that relate or refer to Plaintiff John Doe No. 1 and any financial institution, including, but not limited to, JPMorgan Chase Bank, TCF Bank and PNC Bank.*

**Objections:**   Defendants object to this request to the extent it seeks information not within the purview or control of the TSC and FBI.  Defendants further object to this request because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan.   In particular, Defendants object to any request that is wholly divorced from whether the watchlist redress process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information.  Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs.  It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.   Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them.

Defendants object to the terms "record" and "written computer generated embodiments" as being so vague as to be meaningless.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

*RFP 42:*        *Any and all records, communications, written/computer generated embodiments, notes, and/or other documents that relate or refer to Plaintiff John Doe No. 3 and any financial institution, including, but not limited to, JPMorgan Chase Bank.*

**Objections:**  Defendants object to this request to the extent it seeks information not within the purview or control of the TSC and FBI.  Defendants further object to this request because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of

discovery as proposed in Defendants' Position in the Joint Discovery Plan.   In particular, Defendants object to any request that is wholly divorced from whether the watchlist redress process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information.   Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs.   It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.   Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them.   TSC does not export TSDB information to financial institutions as a general matter, and Defendants are not required to search every FBI file in the country to determine whether it has ever happened as an ad hoc matter.

Defendants object to the terms "record" and "written computer generated embodiments" as being so vague as to be meaningless.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.   Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory

protection pertaining to such information.  Defendants object to this request to the extent it seeks

information subject to the law enforcement and investigatory files privilege, Sensitive Security

Information (including Sensitive Security Information that is not appropriate for disclosure under

Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law

No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise

protected by the deliberative process privilege, the attorney-client privilege, the work product

doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or

constitutional or common law privilege.  Nothing contained in the following responses shall be

construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of

any objection or privilege generally. Inadvertent disclosure of information subject to a claim of

privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on

Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.


> ***RFP 43:***      ***Any and all records, communications, written/computer generated***
>
> ***embodiments, notes, and/or other documents that relate or refer to Plaintiff John Doe***
>
> ***No. 4 and any state or local law enforcement agency, including Clinton Township and***
>
> ***Warren Police Departments in Michigan.***

**Objections:**  Defendants object to this request to the extent it seeks information not within the

purview or control of the TSC and FBI.  Defendants further object to this request because it seeks

information not relevant to any claim or defense in this case, and outside the proper scope of

discovery as proposed in Defendants' Position in the Joint Discovery Plan.  In particular,

Defendants object to any request that is wholly divorced from whether the watchlist redress

process available to Plaintiffs comports with the requirements of due process, see Slip Op. at 16, and instead seeks to find out what the TSC and FBI knows about the Plaintiffs, whether they are under investigation, and other wholly irrelevant information.  Defendants will not consent to the disclosure to Plaintiffs in discovery of records, if any, that TSC and FBI maintain regarding Plaintiffs.  It should not be necessary to disclose such records to the Plaintiffs in discovery in order to adjudicate the procedural due process question.  Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine whether the TSC and FBI maintain records on them.

Defendants object to the terms "record" and "written computer generated embodiments" as being so vague as to be meaningless.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law

No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege.  Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.


> ***RFP 44:*** ***All documents reviewed or relied upon for each of the individual Plaintiffs that resulted in the acceptance of their nomination and/or placement on the watch list.***

**Objections:**  Defendants object to the request as duplicative with RFP 5 to TSC, served September 26, 2017.  Defendants object to this request as overbroad and vague, and because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan.  In particular, Defendants object to any request that would tend to confirm or deny the watchlist status of particular individuals or any information underlying such alleged placement.  The only remaining claim in this case concerns the adequacy of the post-deprivation redress *process* available to plaintiffs who have alleged that they were placed on a watchlist.  *See* Slip Opinion at 16 (holding that a factual record is necessary to determine "the ultimate merits" of the procedural due process claim).  Defendants will not consent to the disclosure to Plaintiffs in discovery of whether or not

any plaintiff is on a watchlist.  It should not be necessary to disclose to the Plaintiffs in discovery the actual watchlist status of the individuals, much less the underlying information, in order to adjudicate the procedural due process question.  Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine their status merely by filing a lawsuit and seeking discovery.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege. Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of

any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

> *RFP 45:*        *All documents that relate, refer, or pertain to the distribution of any*
> *information from the TSDB regarding each of the individual Plaintiffs to any local*
> *authority, state authority, state or municipal court, foreign government, airline,*
> *financial institution, private corporation, private entity and/or private individual.*

**Objections:**  Defendants object to the request as duplicative with RFP 6 to TSC, served September 26, 2017.  Defendants object to this request as overbroad and vague, and because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan.  In particular, Defendants object to any request that would tend to confirm or deny the watchlist status of particular individuals.  The only remaining claim in this case concerns the adequacy of the post-deprivation redress *process* available to plaintiffs who have alleged that they were placed on a watchlist.  *See* Slip Op. at 16 (holding that a factual record is necessary to determine "the ultimate merits" of the procedural due process claim).  Defendants will not consent to the disclosure to Plaintiffs in discovery of whether any plaintiff is on a watchlist.  It should not be necessary to disclose to the Plaintiffs in discovery the actual watchlist status of the individuals, much less the underlying information, in order to adjudicate the procedural due process question.  Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national

security because they would enable individuals who merely allege they are on a watchlist to determine their status merely by filing a lawsuit and seeking discovery.

Defendants object to the request as overbroad and seeking irrelevant information. Not a single Plaintiff has made a claim related to the alleged dissemination of the watchlist to a "state authority", "foreign government", "private corporation", "private entity", or "private individual." Even if the dissemination of TSDB information generally could be relevant, the request is overbroad, burdensome and disproportionate to the needs of the case because it appears to require a search for all documents "that relate" to the sharing of the TSDB at every point since its creation.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants. Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information. Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or

constitutional or common law privilege. Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  In light of the Court's ruling of October 27, 2017 (Dkt. No. 61), Defendants clarify that they withdraw "and because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan," in the first sentence of the first paragraph above, as well as the remainder of that paragraph.  Defendants further withdraw "and seeking relevant information" from the first sentence of the second paragraph, as well as the second sentence of that paragraph. Defendants further clarify, however, that Defendants continue to object to any request that would tend to confirm or deny the past or current watchlist status of particular individuals, based on the remaining foregoing objections. Subject to and without waiving any of the remaining foregoing objections, TSC and FBI will search for and process current policies and procedures for exporting TSDB data, as specifically agreed to in response to other requests herein.

> ***RFP 46:***        ***A complete copy of any and all documents, records, communications and other written or computer generated embodiments relating, referring, or pertaining to each of the Plaintiffs.***

**Objections:**  Defendants object to the request as duplicative with RFP 7 to TSC, served September 26, 2017.  Defendants object to this request as overbroad and vague, and because it seeks information not relevant to any claim or defense in this case, and outside the proper scope of discovery as proposed in Defendants' Position in the Joint Discovery Plan. In particular,

Defendants object to any request that would tend to confirm or deny the watchlist status of particular individuals, including whether TSC maintains records about them.  The only remaining claim in this case concerns the adequacy of the post-deprivation redress *process* available to plaintiffs who have alleged that they were placed on a watchlist.  *See* Slip Op. at 16 (holding that a factual record is necessary to determine "the ultimate merits" of the procedural due process claim).  Defendants will not consent to the disclosure to Plaintiffs in discovery of whether any plaintiff is on a watchlist. It should not be necessary to disclose to the Plaintiffs in discovery the actual watchlist status of the individuals, much less the underlying information, in order to adjudicate the procedural due process question.  Indeed, such disclosures to Plaintiffs in discovery would not be appropriate, and would risk harm to national security because they would enable individuals who merely allege they are on a watchlist to determine their status merely by filing a lawsuit and seeking discovery.

Defendants object to the request as overbroad.  Even if Plaintiffs' watchlist status were somehow relevant, all documents mentioning their names would not be relevant to an evaluation of the process.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory

protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege. Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections and the Court's October 27, 2017 ruling on Defendants' Motion for Protective Order, ECF No. 61, Defendants will not respond.

> ***RFP 47:       All written policies, protocols, practices, procedures, agreements, memorandums, memorandums of understanding, contracts, employee handbooks, educational and/or training materials of TSC personnel, and/or other documents that contain the words "Islam," "Muslim," "mosque(s)," "masjid(s)," "Qur'an," "Koran," "Mecca," "Makkah," "Hajj," "pilgrimage," "Fajr," "morning prayer," "Ramadan," "Imam," or any other Islamic term.***

**Objections:**  Defendants object to the request as duplicative with RFP 8 to TSC, served September 26, 2017.  Defendants object to this request as irrelevant, overbroad, and outside the proper scope of discovery.  The only remaining claim in this case concerns the adequacy of the post-deprivation

redress *process* available to plaintiffs who have alleged that they were placed on a watchlist.  *See* Slip Op. at 16 (holding that a factual record is necessary to determine "the ultimate merits" of the procedural due process claim). Defendants further object to this request as burdensome, overbroad, and disproportionate to the needs of the case because Defendants should not be required to do a word search of every document for particular words.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege. Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of

any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Based on the foregoing objections, Defendants will not respond.

*RFP 48:*          *The paperwork that is filled out in order to nominate and/or accept individuals onto the watch list.*

**Objections:**  Defendants object to the request as duplicative with RFP 9 to TSC, served September 26, 2017.  Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case.  Even if the acceptance of nominations generally could be relevant, the request is overbroad, burdensome and disproportionate to the needs of the case because the word "paperwork" is undefined.  The request is so vague as to be meaningless, and read broadly, such a request could encompass nearly every document at the TSC, which is responsible for maintaining the TSDB.

Defendants further object to the extent that this document request seeks the disclosure of policies and procedures not currently in effect; the complaint seeks only injunctive relief and past policies and procedures are not relevant to determining whether the process currently available is adequate.

Defendants further object to this request to the extent that it defines the requested material to include all predecisional and deliberative material, which is not relevant to any claim or defense of any party, not relevant to the subject matter of the action, and not likely to lead to the discovery of admissible evidence and, as such, are overbroad and impose an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants further object to this request to the extent it seeks information that is classified and/or may be subject to an assertion of the state secrets privilege or other appropriate statutory protection pertaining to such information.  Defendants object to this request to the extent it seeks information subject to the law enforcement and investigatory files privilege, Sensitive Security Information (including Sensitive Security Information that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), national security information, or information otherwise protected by the deliberative process privilege, the attorney-client privilege, the work product doctrine, the Privacy Act (5 U.S.C. § 552a), or any other appropriate statutory protection or constitutional or common law privilege. Nothing contained in the following responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving the foregoing objections, Defendants will search for and process any blank hard-copy forms currently used for nominating information to the TSDB. To the extent any nonprivileged, non-SSI documents exist, they will be produced beginning November 15, 2017, and thereafter on a rolling basis.  Consistent with Defendants' proposal in the Discovery Plan, including limitations on identifying classified information, privilege logs will be provided as appropriate with the rolling production of documents.

> *RFP 49:        A copy of any and all documents, ESI, and tangible things disclosed or referenced in Defendants' Initial Disclosures.*

**Objections:**   Defendants object to the extent that this request exceeds Defendants' obligations under the Federal Rules of Civil Procedure.

**Response:**   Subject to and without waiving all of the foregoing objections, FBI and TSC will process unclassified, nonprivileged, non-SSI policies and procedures as described in response to Section B, items (1) and (2) of Defendants' Initial Disclosures.  They will be produced beginning November 30, 2017, and thereafter on a rolling basis.  Consistent with Defendants' proposal in the Discovery Plan, including limitations on identifying classified information, privilege logs will be provided as appropriate with the rolling production of documents.

Dated: December 22, 2017                    Respectfully submitted,

DANA J. BOENTE
United States Attorney

CHAD READLER
Acting Asst. Attorney General, Civil Division

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/     Amy E. Powell*_____
AMY POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was sent via electronic mail to

Counsel of Record in this case.

*/s/     Amy E. Powell*_____
AMY POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

December 22, 2017

# Exhibit B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.,* | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHARLES H. KABLE,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |
| | / | |

**DEFENDANTS' OBJECTIONS TO PLAINTIFFS' FIRST**
**SET OF INTERROGATORIES TO TSC**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants Charles H. Kable,

Director of the Terrorist Screening Center ("TSC"); Kelli Ann Burriesci, Principal Deputy Director

of TSC; Timothy P. Groh, Deputy Director for Operations at TSC; Deborah Moore, Director of

Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP"); Nicholas J.

Rasmussen, Director of the National Counterterrorism Center ("NCTC"); David Pekoske,

Administrator of the Transportation Security Administration ("TSA"); Christopher Wray, Director

of the Federal Bureau of Investigation ("FBI"); and Kevin K. McAleenan, Acting Commissioner

of U.S. Customs and Border Protection ("CBP"); hereby submit objections to the discovery

requests titled, "Plaintiffs' First Set of Interrogatories to Defendant Piehota," served January 22,

2018.  Defendant Charles Kable, the current Director of TSC, pursuant to Federal Rule of Civil

Procedure 25(d), has been substituted for Christopher Piehota.  Defendants will refer to these

hereafter as the First Set of Interrogatories to TSC.

1

The Defendants' responses are provided in accordance with Federal Rule 26(b)(1), which permits the discovery of any information, not privileged, that is both (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case. The Defendants do not, by providing such information, waive any objection to its admissibility on the grounds of relevance, proportionality, accessibility, materiality, or other appropriate ground. The inadvertent production by the Defendants of information protected by any privilege or protection shall not constitute a waiver of the applicable privilege or protection as to any information disclosed. The Defendants reserve the right to supplement or amend their responses should additional or different information become available.

## OBJECTIONS AS TO DEFINITIONS AND INSTRUCTIONS

1.      Defendants object to the Plaintiffs' Definition 1 (of "you" and "your" and "Defendant") to the extent that such definitions purport to apply to the Defendant individually. In responding to the Interrogatories, Defendant responds in each and every response on behalf of the TSC, based upon information in the agency's possession, custody, or control.

2.      Defendants object to other definitions (including, but not limited to, Definitions 4, 5, 6, 9, 10, 11, 12, 13, 14) because they define terms not actually used in this set of requests for production. Defendants reserve all objections to such definitions if they are used in future discovery requests.

3.      Defendants object to the definition of TSC. Plaintiffs have been repeatedly reminded of the publicly available information that Christopher Piehota is not the Director of the TSC. The other agency Defendants are similarly misdefined. *See generally* Dkt. No. 58 (Notice of Substitution of Defendants).

2

4.     Defendants object to the Definition of Plaintiffs to the extent this is intended to expand the total number of interrogatories available or affect only some of the Plaintiffs. The interrogatories are made on behalf of only a subset of the Plaintiffs but count against the permissible number of total interrogatories.

5.     Defendants object to the Plaintiffs' Definition 7 (of "TSDB" "Terrorism Screening Database" or "watch list") as vague to the point of meaningless. The actual database at issue is known as the "Terrorist Screening Database", or "TSDB", but Plaintiffs define it using a colloquial term without legal definition -- "the terrorism watch list" -- without giving the defined terms further content or definition. Defendants will assume those terms refer to the Terrorist Screening Database and will respond as such with respect to each and every interrogatory that uses these terms.

6.     Defendants object to Definition 14, which exceeds Defendants' obligations under the Federal Rules.  It is not clear that this definition applies to any of the interrogatories, which generally request identification of a "number" or a "reason", neither of which is an "act, instance, occurrence, statement, event, transaction, or conduct."  To the extent it were intended to apply, defendants object on grounds of vagueness.  Moreover, the identification of documents, witnesses and other extraneous information about an "act" would require another interrogatory or request for production.

7.     Defendants object to Instruction 1 insofar as it implies that the witness is speaking on his own behalf or that of any other individual.  In responding to the Interrogatories, Defendant responds in each and every response on behalf of the TSC, based upon information in the agency's possession, custody, or control.

3

8.      Defendants object to Instruction 5 insofar as it applies to privileged communications between counsel, or between parties and their counsel, to the extent it conflicts with the Parties' Joint Discovery Plan, as approved by the court, which specifically provides that: "If any discovery request is susceptible of a construction that calls for the production of such documents, those documents need not be produced or identified on any privilege log." It also conflicts with the Federal Rules of Civil Procedure and ordinary practice by supposing that privilege is waived if not asserted on such a log and by requiring identification of privileged documents beyond what is ordinarily required on a privilege log. With respect to each and every request, Defendants respond consistently with the Discovery Plan and the Federal Rules.

9.      Defendants object to Instruction 5 to the extent it imposes obligations in excess of those imposed by the Federal Rules, which do not require a particular form of a privilege log. As set forth in the discovery plan, Defendants reserve the right NOT to produce a specific privilege log when such a log would itself reveal privileged or protected information. Further, on its face, Instruction 5 appears to seek production or a log of documents, and is therefore inapplicable to these interrogatories. With respect to each and every request, Defendants respond consistently with the Discovery Plan and the Federal Rules.

10.      Defendants object to Instruction 6 to the extent it imposes obligations in excess of those imposed by the Federal Rules, which do not require identification of documents that no longer exist. Such an exercise is likely impossible, but in any event burdensome, disproportionate and not required by the Federal Rules. Further, on its face, Instruction 6 appears to seek production or an index of documents, and is therefore inapplicable to these interrogatories. Defendants will comply with the Federal Rules.

## OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

*Int. 1. Identify the names of the non-federal government entities that TSC has information about which indicates that the non-federal government entity has access of any kind to TSDB information.*

**Objections:** Defendants object to the request as vague to the point of meaningless. The lack of punctuation makes it difficult to discern the meaning of this sentence, including which prepositional phrases modify which verbs or nouns. "Non-federal government entities" is not defined and could include, for example, only those agencies or governments with which TSC works directly, or could include individuals or companies working for the federal government, such as IT contractors who service software used at TSC and might have incidental access to data. Moreover, the phrase "access of any kind" is undefined, vague and overbroad. It could include, for example, only external exports of TSDB data, or it could include instances of illicit access, screening conducted by and at TSC, further use of TSDB data by an end user of which TSC may not be institutionally aware, or other possibilities. "TSDB information" could mean information within the TSDB or information about the TSDB. To the extent this interrogatory simply seeks information in TSC's custody or control about entities that receive TSDB exports, Defendants further object to the interrogatory as duplicative with Interrogatory 2.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case. Incidental or indirect access to TSDB data in ways that never have and never arguably could impact the Plaintiffs is not relevant to their claims. Moreover, the request goes beyond the uses of data that Plaintiffs allege have impacted them. Additionally, searching for information about entities with which TSC has

no direct relationship would be unduly burdensome or impossible, and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, and Sensitive Security Information ("SSI") (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). Such information could include, for example, details about foreign partners, or a full description of all end users of TSDB information, such as the details described in the definitions and instructions, that would harm law enforcement investigations. Generally, the identities of foreign partners who receive information from TSC are protected by the law enforcement privilege, and in some instances the state secrets privilege, except as otherwise officially acknowledged.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**      Subject to and without waiving the foregoing objections, see Response to Interrogatory 2. Otherwise, TSC stands on its objections.

*Int. 2. Identify the names of the non-federal government entities that have access of any kind to TSDB information.*

**Objections:**      Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. "Non-federal government entities" is not defined and

could include, for example, only those agencies or governments with which TSC works directly, or could include individuals or companies working for the federal government, such as IT contractors who service software used at TSC and might have incidental access to data. Moreover, the phrase "access of any kind" is undefined, vague and overbroad. It could include, for example, only external exports of TSDB data, or it could include instances of illicit access, screening conducted by and at TSC, further use of TSDB data by an end user of which TSC may not be institutionally aware, or other possibilities. "TSDB information" could mean information within the TSDB or information about the TSDB. Defendants further object to the interrogatory as duplicative with Interrogatory 1.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case. Incidental or indirect access to TSDB data in ways that have never impacted the Plaintiffs is not relevant to their claims. Moreover, the request goes beyond the uses of data that Plaintiffs allege have impacted them. Additionally, searching for information about entities with which TSC has no direct relationship would be unduly burdensome or impossible, and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). Such information could include, for example, details about foreign partners, or a full description of all end users of TSDB information, such as the details described in the definitions and instructions, that would harm law enforcement investigations. Generally, the identities of foreign partners who receive information

from TSC are protected by the law enforcement privilege, and in some instances the state secrets privilege, except as otherwise officially acknowledged.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**      Subject to and without waiving the foregoing objections, TSC responds: TSC exports a subset of TSDB data to the National Crime Information Center (NCIC), which makes that information available to single points of contact in each of the 50 states, the District of Columbia, Puerto Rico, the U.S. Virgin Islands, Guam, and Canada, which then make the information available to federal, state, and local law enforcement organizations in their respective areas. TSC does not directly export information to state and local law enforcement organizations. TSC exports TSDB data to the Department of Homeland Security (DHS). DHS and its component agencies may share this information with non-federal government entities, such as airlines and/or port authorities, in individual cases to facilitate their mission. TSC exports subsets of TSDB data to foreign partners (including all Visa Waiver Program countries) with which TSC has entered into foreign partner arrangements. Information pertaining to most of these partnerships is classified, sensitive, or otherwise not releasable. However, publically releasable information pertaining to some foreign partnerships is available on the Department of State Treaty Office website, specifically:

Albania (https://www.state.gov/documents/organization/264334.pdf)

Bulgaria (https://www.state.gov/documents/organization/264667.pdf)

Slovenia (https://www.state.gov/documents/organization/197956.pdf)

Hungary (https://www.state.gov/documents/organization/278373.pdf)

As to all other information responsive to this Interrogatory, TSC stands on its objections.


*Int. 3. Identify the names of the federal government entities that have had access of any kind to TSDB information.*

**Objections:**       Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case.  "Federal government entities" is not defined and could include, for example, only those agencies with which TSC works directly, or could include individuals or companies working for the federal government, such as IT contractors who service software used at TSC and might have incidental access to data.  Moreover, the phrase "access of any kind" is undefined, vague and overbroad. It could include, for example, only external exports of TSDB data, or it could include instances of illicit access, screening conducted by and at TSC, further use of TSDB data by an end user of which TSC may not be institutionally aware, or other possibilities. "TSDB information" could mean information within the TSDB or information about the TSDB.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case.  Incidental or indirect access to TSDB data in ways that have not impacted the Plaintiffs is not relevant to their claims. Moreover, the request goes beyond the uses of data that Plaintiffs allege have impacted them. Additionally, searching for information about entities with which TSC has no direct relationship would be burdensome or impossible, and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate

9

for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).   Such information could include, for example, a full description of all end users of TSDB information, and the details described in the definitions and instructions.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**        Subject to and without waiving the foregoing objections, TSC refers plaintiffs to the privilege logs produced in response to plaintiffs' requests for production of documents and further responds:  TSC exports subsets of TSDB information to the following federal government entities:  DHS (for use by Customs and Border Protection (CBP), TSA, U.S. Citizenship and Immigration Services (USCIS), and U.S. Immigration and Customs Enforcement (ICE)), Department of State (DOS), NCIC, FBI, and the Department of Defense.   For other agencies and events, TSC runs lists of names against the TSDB and reports the results to the agency requester.   As to all other information responsive to this interrogatory, TSC stands on its objections.

***Int. 4. Identify all legal limitations on TSC's authority to disseminate TSDB information.***

**Objections:**        Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case.  "Legal limitations" is not defined and could include, for example, only direct statutory restrictions on TSC, or it could also include regulations, common practices and norms, whether they bind TSC or other agencies, and even hypothetical legal

challenges that have never been brought.  Moreover, the term "disseminate" is undefined, vague

and overbroad. It could include, for example, only external exports of TSDB data, or it could

include screening conducted by and at TSC, further use of TSDB data by an end user of which

TSC may not be institutionally aware, any use of TSDB information (regardless of whether or not

the information leaves TSC control), or other possibilities.     Hypothetical questions about

incidental or indirect access to TSDB data in ways that have not impacted the Plaintiffs is not

relevant to their claims.  "TSDB information" could mean information within the TSDB or

information about the TSDB.  Moreover, the request goes far beyond the uses of data that Plaintiffs

allege have impacted them.  Additionally, searching for information and legal theories about

entities with which TSC has no direct relationship would be burdensome or impossible, and

disproportionate to the needs of the case.

Defendants object to the request as overbroad and seeking information not relevant to any

claim or defense in this case and disproportionate to the needs of the case.  That is not an

appropriate use of interrogatories.  It poses an expanding hypothetical legal question about what

hypothetical "dissemination" of TSDB information could run afoul of some statute, regulation, or

case law.  Defendants are not required to provide such legal analysis in response to a hypothetical

use or dissemination of TSDB data.

Defendants object to the interrogatory to the extent it seeks information that is subject to

the work product doctrine, deliberative process privilege, attorney-client privilege, the law

enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for

disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of

2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  Such information could include, for

example, sensitive internal practices and data security protocols governing TSDB information,

including but not limited to the kinds of details described in the definitions and instructions, that would harm law enforcement investigations or security operations.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**        Subject to and without waiving the foregoing objections, TSC responds: TSDB information is "For Official Use Only//Law Enforcement Sensitive//Sensitive Security Information" and its dissemination is, accordingly, restricted by applicable rules, regulations, and statutes governing the dissemination of information subject to these privileges.  Under certain circumstances, TSDB information may also be classified and/or subject to other legal restrictions on dissemination.  Additionally, without limitation, dissemination or use of TSDB information could be subject to limitations under the Privacy Act, the Administrative Procedure Act, and Executive Orders (including, without limitation, Executive Order 13526).

*Int. 5. Explain how and to what entities TSC disseminates TSDB information regarding a person's placement on the Selectee List, the No Fly List.*

**Objections:**        Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case.  "Entities" is not defined and could include, for example, only those agencies with which TSC works directly, or could include individuals or companies working for the federal government, such as IT contractors who service software used at TSC and might have incidental access to data.  Moreover, the term "disseminates" is undefined, vague and overbroad. It could include, for example, only external exports of TSDB data, or it could include

12

instances of illicit access, screening conducted by and at TSC, further use of TSDB data by an end
user of which TSC may not be institutionally aware, or any number of other possibilities. The
phrase "information regarding a person's placement on the Selectee List, the No Fly List" is vague
and overbroad; for example, the term "regarding" may or may not encompass a great deal beyond
status with respect to those lists, and the term "a person" potentially expands the interrogatory
beyond the general sharing of such information to any incidental, accidental or one-time sharing.
"TSDB information" could mean information within the TSDB or information about the TSDB.
The phrase further seems to lack a conjunction or some other word, which could dramatically alter
the meaning of the phrase.

Defendants object to the request as overbroad and seeking information not relevant to any
claim or defense in this case and disproportionate to the needs of the case. Incidental or indirect
access to the TSDB data in ways that have not impacted the Plaintiffs is not relevant to their claims.
Moreover, the request goes far beyond the uses of data that Plaintiffs allege have impacted them.
For example, Plaintiffs have no claims related to the No Fly List. Additionally, searching for
information about entities with which TSC has no direct relationship would be burdensome or
impossible, and disproportionate to the needs of the case. Additionally, it seeks information about
"how" such data is shared, which is not remotely relevant to their claims.

Defendants object to the interrogatory to the extent it seeks information that is subject to
the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate
for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act
of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). A comprehensive answer would
require, for example, a full description of all end users of TSDB information, such as the details
described in the definitions and instructions, and sensitive information about how data is

13

maintained and shared, and other information that would harm law enforcement investigations. Generally, the identities of foreign partners who receive information from TSC are protected by the law enforcement privilege, and in some instances the state secrets privilege, except as otherwise officially acknowledged. Specific categories of TSDB information that Defendants share with foreign partners is subject to the law enforcement privilege.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**        Subject to and without waiving the foregoing objections, TSC responds: Identification of No Fly or Selectee status is, without limitation, included in TSC's exports to DHS, DOS, and FBI. Specific information TSC shares with foreign partners is law enforcement sensitive and TSC otherwise stands on its objections.


*Int. 6. Identify all restrictions and differential measures, including but not limited to restrictions on the ability to obtain licenses or security clearances, secure employment opportunities (for example, employment opportunities in the sterile areas of airports), that are imposed on individuals placed on the watchlist.*

**Objections:**        Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The interrogatory does not specify by whom or what entities the "restrictions and differential measures" about which it seeks information, "are imposed." Further, to the extent the interrogatory is deemed limited to "restrictions and differential measures" imposed by defendants, the terms are not defined and therefore could be interpreted to

include only final agency actions, or, more broadly, to include investigative activity, ordinary

security screening, or any number of other possibilities.   Moreover, the request for such measures

"imposed on people on the watchlist" is vague, ambiguous and overbroad; grammatically, it

includes *any* measures imposed on people on the watchlist, regardless of whether such measures

are actually related to the TSDB.   On its face, the interrogatory does not define any required degree

of relationship between TSDB status and the agency action taken.   Accordingly, to the extent it is

deemed limited to actions by TSC, it could seek identification of agency actions only taken with

respect to people in the TSDB, actions taken solely as a result of TSDB status, actions taken after

investigation that was motivated in part by TSDB status, or any of a number of other possibilities.

The broader readings are both burdensome and irrelevant, as they do not even arguably evidence

any deprivation of a liberty interest.

Defendants object to the request as overbroad and seeking information not relevant to any

claim or defense in this case and disproportionate to the needs of the case.   The interrogatory is

not limited to uses of data that Plaintiffs allege have impacted them.   Additionally, searching for

information about actions taken by other agencies or entities, including entities with which TSC

has no direct relationship, would be burdensome or impossible, and disproportionate to the needs

of the case.   Additionally, the interrogatory is misdirected, because TSC is not responsible for nor

authoritative on actions taken by other agencies and cannot speak on their behalf.

Defendants object to the interrogatory to the extent it seeks information that is subject to

the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate

for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act

of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).   A comprehensive answer could

theoretically require, for example, a full description of all end users of TSDB information, and the

15

specific uses to which it is put and under what circumstances, including specific security operations.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**       Subject to and without waiving the foregoing objections, TSC responds: TSC exports subsets of TSDB data to partner agencies and foreign partners for use by those partners in a variety of lawful terrorist screening functions (see Responses 2 and 3). Agencies and officials authorized or required to conduct terrorist screening or to use information for diplomatic, military, intelligence, law enforcement, immigration, transportation security, visa, and protective processes are given access to terrorism information to facilitate their respective missions. TSC is not responsible for, nor does it oversee, the screening functions performed by partner agencies or foreign partners. Otherwise, TSC stands on its objections.

*Int. 7. For the last ten years, identify the following: (i) the yearly average number of persons nominated to the TSDB as well as how many of those nominations were accepted, (ii) the yearly average number of persons nominated to the Selectee List as well as how many of those nominations were accepted, (iii) the yearly average number of persons nominated to the No Fly List as well as the yearly average number of those nominations TSC accepted, (iv) the number of persons placed on the watch list who were arrested, charged, or indicted for committing or attempting to commit a terrorism offense, (v) the number of the persons identified in (iv) who were acquitted or had the charges or indictments dismissed, (vi) the*

*number of persons identified in (v) who remained or were added to the watch list after they were acquitted or had charges or indictments dismissed, (vii) the number of times the TSDB, Selectee List, or the No Fly List has prevented an act of terrorism, (viii) the yearly average number of encounters with individuals placed on the watch list that were recorded by TSC, (ix) the number of those encounters with individuals placed on the watch list which led to an arrest for a terrorism offense.*

**Objections:** Defendants object to the form of the interrogatory; in fact, this interrogatory is at least nine individual interrogatories, several with subcategories that should be properly counted as more than one, and all should be counted as such against the total interrogatories available. Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. These categories of data do not provide any insight into the TSDB that is useful in evaluating the procedural due process claim. Nor are the categories of data defined in any useful way to target information about people allegedly similarly situated to the plaintiffs. The categories are also vague and poorly defined. For example, several of the requests seek a "yearly average number" without defining that phrase or how it is to be calculated. It could be the average number per day, week or month over the course of a year. Or it could be the total number over the course of a year, with the numbers over the course of 10 years averaged to reach a single "yearly average", or a few other possibilities. For another example, the interrogatory uses the term "nomination" vaguely and inconsistently, and to seek irrelevant data. Generally, TSC uses to the term "nomination" to refer to any proposed change to TSDB information, including for example: adding a new individual, upgrading or downgrading individuals already in the TSDB, adding additional identifiers, changing or correcting identifiers, and removals from the TSDB.

Defendants also object to the timeframe of the request as irrelevant and burdensome and disproportionate to the needs of the case.  Plaintiffs seek forward-looking, injunctive relief.  While their own past experiences are relevant to the deprivation of a liberty interest, the evaluation of the placement and redress process ten years ago is not relevant to their claims.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

In addition to the foregoing objections, Defendants object to each category of information sought as follows:

(i)  Defendants object to the phrases "yearly average" and "nominated"/"nominations". Defendants further object to the use of passive voice, as it does not on its face limit the request to final acceptance of nominations by TSC.  Depending on how the vague terms are interpreted, the responsive numbers are protected by the law enforcement privilege and are SSI.

(ii) Defendants object to the phrases "yearly average" and "nominated"/"nominations". Defendants further object to the use of passive voice, as it does not on its face limit the request to final acceptance of nominations by TSC.  Defendants object on the ground of relevance because the Selectee List is not relevant to Plaintiffs' property or liberty interests. To the extent this request is intended to seek the precise numbers of total unique individuals nominated to and placed on the Selectee List over time, those numbers are protected by the law enforcement privilege and are SSI.

(iii)  Defendants object to the phrases "yearly average" and "nominated"/"nominations".
Defendants further object to the use of passive voice, as it does not on its face limit the request to
final acceptance of nominations by TSC.   Defendants also object as to the relevance of No Fly
List-related data.  To the extent this request is intended to seek the precise numbers of total unique
individuals nominated to and placed on the No Fly List over time, those numbers are protected by
the law enforcement privilege and are SSI.

(iv)  Defendants object to this interrogatory because the requested information is irrelevant
to any claim or defense in this case concerning the propriety of the process available to plaintiffs
to challenge their alleged inclusion in a watchlist.  Further, defendants object on the ground that
the interrogatory is unduly burdensome and overbroad. This data is not tracked by the TSDB, or
by TSC.  It might be theoretically possible to individually assess each and every U.S. person in the
TSDB and conduct research into underlying derogatory information and criminal records related
to such individuals, but that assessment would be incredibly time-consuming, burdensome,
irrelevant and is disproportionate to the needs of the case.  It moreover would not be complete, as
TSC does not have all such information.  Being charged with a crime is not a prerequisite for being
placed in the TSDB.  Accordingly, the numbers sought have no relevance to Plaintiffs' due process
claims.  Defendants further object to the phrase "terrorism offense" which is not defined and does
not encompass the range of charges that might be brought against terrorists to neutralize a threat,
under various federal, state and foreign laws.  Additionally, the data sought could be used to
evaluate the likely watchlist status of specific individuals or categories of information, and could
thus lead to disclosure of law enforcement information or SSI.

(v)  Defendants object to this interrogatory for the same reasons they object to the previous
category, which is a prerequisite for answering this interrogatory.  The additional information

19

sought here is also objectionable on its own grounds. This information is not tracked by the TSDB or by TSC. Although an individual assessment of each TSDB entry could be in theory conducted, the assessment would be extremely burdensome and would be likely incomplete. Additionally, the even more specific data sought could be used to evaluate the likely TSDB status of specific individuals or categories of information, and could thus lead to disclosure of law enforcement information or SSI.

(vi) Defendants object to this interrogatory for the same reasons they object to the previous two categories, both of which are prerequisites for answering this one.

(vii)   Defendants object to this request as vague, burdensome, disproportionate and ultimately meaningless and impossible. TSC does not track this information; nor is it possible to gather it. The nature of prevention is that it is not possible to know what would have happened absent use of preventative tools – *e.g.*, what would have happened if someone was allowed to board a particular flight or what would have happened if FBI were not tracking encounter information in order to assist in gathering intelligence and disrupting terrorist networks. Defendants further object to the phrase "act of terrorism", which is undefined. Moreover, because specific foiled plots sometimes become public and sometimes do not, the requested information tends to reveal law enforcement privileged information and potentially information subject to an assertion of the state secrets privilege.

(viii)   Defendants object to the phrase "yearly average." The term "encounter" is also undefined and vague and could include information not collected or tracked by TSC. The information sought is irrelevant and disproportionate to the needs of the case. Encounter statistics, and arrest statistics, do not provide a basis for evaluating Plaintiffs' due process claims. Finally, the precise numbers of encounters over time is law enforcement privileged information.

(ix)  Defendants object to this request for the same reasons it objected to the previous interrogatory, which is a prerequisite for this one.  Defendants further object that the term "terrorism offense" is vague and undefined.  The interrogatory's reference to encounters "which led to an arrest" is vague, burdensome, and ultimately meaningless and likely impossible. Defendants do not know what it means for something to "lead to" an arrest and it could potentially include any terrorism-linked investigation which both includes at least one encounter with someone in the TSDB and at least one ultimate arrest.  Or it could include only an encounter which itself ends in an arrest of the listed individual.  The requested data is not relevant to the Plaintiffs' procedural due process claims or to any evaluation of the adequacy of the process.

**Response:**      Subject to and without waiving the foregoing objections, TSC responds:
TSC does not possess the data requested by subparts (iv) – (vii) and (ix) of this interrogatory.  TSC further responds:  The term "nomination" may refer to any proposed change to a TSDB record, including, without limitation, additions, deletions, downgrades, or supplemental information to an existing record.  Different types of nominations require different levels of review, which may result in actions taken by multiple individuals on a single nomination.  A nomination for the inclusion of a new individual into the TSDB is commonly referred to as an "add."  For calendar years 2008 through 2017, the following table identifies the approximate total number of nominations processed by TSC (subject to reasonable parameters regarding what constitutes an individual nomination), the approximate total number of "add" nominations accepted into TSDB (only a very small percentage of which are U.S. persons), and the approximate number of rejections of nominations (as that term is clarified above, and without counting additional rejections of the same nomination resulting from multiple levels of review).

21

| Calendar Year | Total Nominations | Total Adds | Rejections |
|---|---|---|---|
| 2008 | 248,234 | 66,862 | 916 |
| 2009 | 229,369 | 54,999 | 424 |
| 2010 | 262,411 | 64,197 | 1,346 |
| 2011 | 285,681 | 77,925 | 1,203 |
| 2012 | 344,258 | 106,468 | 1,153 |
| 2013 | 482,114 | 159,829 | 1,820 |
| 2014 | 431,086 | 115,627 | 1,218 |
| 2015 | 454,173 | 148,730 | 1,021 |
| 2016 | 518,352 | 176,014 | 2,671 |
| 2017 | 480,984 | 166,603 | 5,215 |

As to all other information requested in this interrogatory, TSC stands on its objections.

*Int. 8. For each of the last ten years, identify how many times TSDB information was distributed to: (i) a state or local authority, (ii) a foreign government, (iii) a financial institution, (iv) an airline, (iv) a car dealership, (v) a private corporation, (vi) a private individual, (vii) a fusion center, and (viii) federal/state/municipal joint law enforcement bodies or taskforces.*

**Objections:**     Defendants object to the interrogatory as vague, burdensome, irrelevant and disproportionate to the needs of the case. It is framed in the passive tense and may or may not encompass information about actions of other agencies. That is not information within TSC's custody or control and TSC is not authorized to speak on behalf of other agencies. None of the

subcategories are defined, and all of them are subject to multiple interpretations. For example, "private individuals" could encompass individuals who work at TSC or other federal agencies and "private corporations" could encompass contractors acting in an official capacity on behalf of the federal government. Moreover, the term "distributed" is undefined, vague and overbroad. It could include, for example, only external exports of TSDB data, or it could include screening conducted by and at TSC, further use of TSDB data by an end user of which TSC may or may not be institutionally aware, or any number of other possibilities. "TSDB information" could mean information within the TSDB or information about the TSDB. The overall question about "how many times" data was "distributed" makes no sense. Exported data is continuously updated, not "distributed" a certain number of times. TSC does not track the number of times that exported data is updated.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case. Incidental or indirect access to the TSDB data in ways that have not impacted the Plaintiffs is not relevant to their claims. Moreover, the request goes far beyond the uses of data that Plaintiffs allege have impacted them. Additionally, searching for information about entities with which TSC has no direct relationship would be unduly burdensome or impossible, and disproportionate to the needs of the case.

Defendants object to the form of the interrogatory; in fact, this interrogatory is at least eight individual interrogatories, and all should be counted as such against the total interrogatories available.

Defendants object to the interrogatory to the extent it seeks information that is potentially subject to an assertion of the state secrets privilege, law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the

Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). For example, to the extent it seeks information about the number of times law enforcement agencies access or use TSDB data, that information is protected by the law enforcement privilege. Generally, the identities of foreign partners who receive information from TSC are protected by the law enforcement privilege, and in some instances the state secrets privilege, except as otherwise officially acknowledged.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**        Subject to and without waiving the foregoing objections, TSC responds: The information in the TSDB is constantly being updated and updated information is made available to screening partners at intervals consistent with each individual partner's ability to ingest that information, often in real or near-real time. As evidenced by the table in the Response to Interrogatory 7, information in the TSDB is commonly updated more than one thousand times per day. TSC does not export information to private corporations (see Response 2). TSC does not export information to car dealerships or private individuals. As to all other information requested, TSC stands on its objections.

### *Int. 9. Identify the different data points by which the TSDB is searchable.*

**Objections:**        Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The phrase "data points" is not defined and could be interpreted to mean the engines that are used to search the TSDB, the persons or agencies

authorized to conduct such searches, the data fields available in the TSDB, the data fields in the
basic search engine, all of the Boolean or text searches which could be conducted, or any number
of other possibilities.  It is moreover framed in the passive voice, making it unclear whether it is
seeking information about TSC or other entities as well.

Defendants object to the request as overbroad and seeking information not relevant to any
claim or defense in this case and disproportionate to the needs of the case.  The technical
construction of the TSDB, such as how it is searchable, is not relevant to Plaintiffs' claims.
Additionally, searching for information about actions taken by other agencies or entities, including
entities with which TSC has no direct relationship, would be burdensome or impossible, and
disproportionate to the needs of the case.  Additionally, the interrogatory is misdirected, because
TSC is not responsible for nor authoritative on actions taken by other agencies and cannot speak
on their behalf.

Defendants object to the interrogatory to the extent it seeks information that is subject to
the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate
for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act
of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).   A comprehensive answer to the
broadest interpretation could theoretically require, for example, a full description of all identifiers
that could be maintained in the TSDB, law enforcement handling codes, and technical information
about how data is maintained and could be searched.  This information is also protected by law
enforcement privilege to the extent it pertains to sensitive information about TSC facilities and/or
information technology systems.

Nothing contained in the responses shall be construed as a waiver of any applicable
objection or privilege as to any Request or as a waiver of any objection or privilege generally.

Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**        Subject to and without waiving the foregoing objections, TSC responds: The TSDB is not directly searchable by any entity outside the TSC.  TSDB data is exported to screening partners, which maintain their own screening systems.  Within TSC, the TSDB is searchable by specific data fields and by Boolean or text searches.

*Int. 10. Identify all the differences between the most current version of the Watchlisting Guidance and the March 2013 Watchlist Guidance.*

**Objections:**        Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case.  Only some portions of the current version of watchlisting guidance is arguably relevant to Plaintiffs' claims, which only seek prospective relief. Additionally, any version of the watchlisting guidance contains significant information not remotely relevant to the Plaintiffs' procedural due process claims.  The interrogatory also does not define or limit the "differences" sought, which could theoretically encompass aesthetic and technical differences, format changes, and changes on topics unrelated to this litigation.

Defendants object to the interrogatory because it seeks information that is subject to the state secrets privilege, the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). Plaintiffs appear to be seeking, inter alia, information which would confirm or deny the authenticity of a purportedly leaked document that they have previously cited as the 2013 Watchlisting Guidance.  Moreover, the Watchlisting Guidance as a whole has been previously

protected under the state secrets privilege.  All versions are also subject to assertions of SSI and law enforcement privilege.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**          TSC stands on its objections with respect to this Interrogatory.


*Int. 11. In a non-privileged manner, identify all the differences between the most current*
*version of the Watchlisting Guidance and the March 2013 Watchlist Guidance.*

**Objections:**          Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. Only some portions of the current version of watchlisting guidance is arguably relevant to Plaintiffs' claims, which only seek prospective relief. Additionally, any version of the watchlisting guidance contains significant information not remotely relevant to the Plaintiffs' procedural due process claims.  The interrogatory also does not define or limit the "differences" sought, which could encompass aesthetic and technical differences, format changes, and changes on topics unrelated to this litigation.

Defendants object to the interrogatory because it seeks information that is subject to the state secrets privilege, the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). Plaintiffs appear to be seeking, inter alia, information which would confirm or deny the authenticity of a purportedly leaked document that they have previously cited as the 2013

Watchlisting Guidance.  Moreover, the Watchlisting Guidance as a whole has been previously

protected under the state secrets privilege.  All versions are also subject to assertions of SSI and

law enforcement privilege.

Nothing contained in the responses shall be construed as a waiver of any applicable

objection or privilege as to any Request or as a waiver of any objection or privilege generally.

Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver

of such privilege.

**Response:**          TSC stands on its objections with respect to this Interrogatory.

*Int. 12. Identify all evidence, information, and documents regarding how being placed on*
*the TSDB, Selectee List, and No Fly List affects the lives of persons listed.*

**Objections:**          Defendants object to the request as vague, burdensome, irrelevant and

disproportionate to the needs of the case.  The phrase "evidence, information, and documents" is

only partially defined and that definition is so broad as to encompass every byte of data or scrap

of note paper at TSC.  TSC does not collect or compile information about how the TSDB "affects

the lives of persons listed."  Indeed, that information seems uniquely in the purview of the listed

individuals.

Defendants object to the request as overbroad and seeking information not relevant to any

claim or defense in this case and burdensome and disproportionate to the needs of the case.  A

comprehensive answer could theoretically require, for example, a full analysis of any underlying

investigatory or intelligence information about everyone on the TSDB to determine whether and

how it has affected their lives, but even that burdensome search would not provide a complete

answer.  The interrogatory is not limited to alleged effects on liberty and property interests of the

28

Plaintiffs.   For example, Plaintiffs have no claims related to the No Fly List. Additionally, searching for information about actions taken by other agencies or entities, including entities with which TSC has no direct relationship, would be unduly burdensome or impossible, and disproportionate to the needs of the case.  Additionally, the interrogatory is misdirected, because TSC is not responsible for actions taken by other agencies and cannot speak on their behalf.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  A comprehensive answer could theoretically require, for example, a full analysis of any underlying investigatory or intelligence information about everyone on the TSDB, as well as a description of all end users of TSDB information, and the specific uses to which it is put and under what circumstances, including security measures.  To the extent this interrogatory seeks information about individuals, it seeks information protected by the Privacy Act as well.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**       TSC stands on its objections with respect to this Interrogatory.

*Int. 13. Identify all categories of data TSC receives or creates as a part of the process of considering a TSDB nomination, accepting or rejecting that nomination, and placing or removing a person on the TSDB, Selectee List, and the No Fly List.*

29

**Objections:**     Defendants object to the request as vague, burdensome, irrelevant and
disproportionate to the needs of the case. The phrases "categories of data" and "receives or
creates" are not defined and could be interpreted to mean virtually every byte of data at TSC, all
of which relates in some way to nominations and placements in the TSDB. It would be
burdensome or impossible to track down every type of information tangentially relevant to a
nomination.

Defendants object to the request as overbroad and seeking information not relevant to any
claim or defense in this case and disproportionate to the needs of the case. The technical
construction of the TSDB and the logistics of nomination and placement are not relevant to
Plaintiffs' claims. Moreover, Plaintiffs have no claims related to the No Fly List.

Defendants object to the interrogatory to the extent it seeks information that is subject to
the state secrets privilege, the law enforcement and investigatory files privilege, and SSI (including
SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland
Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). A
comprehensive answer to the broadest interpretation could theoretically require, for example, a
full description of all identifiers that could be maintained in the TSDB, law enforcement handling
codes, and technical information about how data is maintained. This information is also protected
by law enforcement privilege to the extent it pertains to sensitive information about TSC facilities
and/or information technology systems.

Nothing contained in the responses shall be construed as a waiver of any applicable
objection or privilege as to any Request or as a waiver of any objection or privilege generally.
Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver
of such privilege.

**Response:**     Subject to and without waiving the foregoing objections, TSC refers plaintiffs to the TREX Backup No Fly Request Form, Elhady-FBITSC-001309, which reflects the type of information included in such a nomination. As to all other information requested in this interrogatory, TSC stands on its objections.

*Int. 14. Identify the number of persons who TSC believes have committed or have attempted to commit an act of terrorism in the United States in the last ten years.*

**Objections:**     Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The phrases "have committed or have attempted to commit" and "an act of terrorism" are not defined and vague. Moreover, this is simply not data or information tracked or maintained by TSC. Even if TSC attempted to analyze all information in its control to count instances of attempted acts of terrorism, an incredibly burdensome proposition, it would not constitute a comprehensive answer to the question.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case. This type of statistical data is neither relevant nor useful to evaluating the Plaintiffs' procedural due process claims. The requested data does not provide any basis for evaluating the redress process. Nor is the TSDB limited to evaluating terrorist threats in the United States. Defendants also object to the proposed time frame, which goes beyond what is useful in evaluating Plaintiffs' claim for prospective relief.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, and the law enforcement and investigatory files privilege. A comprehensive answer to the broadest interpretation could require, for example, a full analysis of all classified and privileged information in TSC's possession about attempted terrorist attacks. Everyone in the TSDB as a known or suspected terrorist is suspected of terrorist activity.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**        Subject to and without waiving the foregoing objections, TSC responds that it does not maintain information responsive to this interrogatory, and otherwise stands on its objections.

*Int. 15. Of the persons who TSC believes have committed or who attempted to commit an act of terrorism inside the United States in the last ten years, identify the number of such persons who were on the TSDB at the they committed or attempted to commit an act of terrorism inside the United States.*

**Objections:**        Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The phrases "have committed or have attempted to commit" and "an act of terrorism" are not defined and vague. Additionally, there is a missing word or words necessary to make interrogatory sensible. Moreover, this is simply not data or information tracked or maintained by TSC. Even if TSC attempted to analyze all information in its control to count instances of attempted acts of terrorism, an incredibly burdensome proposition, it would not constitute a comprehensive answer to the question

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense the in this case and disproportionate to the needs of the case. This type of statistical data is neither relevant nor useful to evaluating the Plaintiffs procedural due process claims. The requested data does not provide any basis for evaluating the redress process. Nor is

the TSDB limited to evaluating terrorist threats in the United States.  Defendants also object to the
proposed time frame, which goes beyond what is useful in evaluating Plaintiffs' claim for
prospective relief.

Defendants object to the interrogatory to the extent it seeks information that is subject to
the state secrets privilege, and the law enforcement and investigatory files privilege.  A
comprehensive answer to the broadest interpretation could theoretically require, for example, a
full analysis of all classified and privileged information in TSC's possession about attempted
terrorist attacks or terrorist activity.  Everyone in the TSDB as a known or suspected terrorist is
suspected of terrorist activity.

Nothing contained in the responses shall be construed as a waiver of any applicable
objection or privilege as to any Request or as a waiver of any objection or privilege generally.
Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver
of such privilege.

**Response:**       Subject to and without waiving the foregoing objections, TSC refers to its
Response to Interrogatory 14, and otherwise stands on its objections.


*Int. 16. Of the persons who TSC believes have committed or who attempted to commit an act*
*of terrorism inside the United States in the last ten years, identify the number of such persons*
*who were on the Selectee List at the they committed or attempted to commit an act of*
*terrorism inside the United States.*

**Objections:**       Defendants object to the request as vague, burdensome, irrelevant and
disproportionate to the needs of the case.  The phrases "have committed or have attempted to
commit" and "an act of terrorism" are not defined and vague.  Additionally, there is a missing

word or words necessary to make interrogatory sensible. Moreover, this is simply not data or
information tracked or maintained by TSC. Even if TSC attempted to analyze all information in
its control to count instances of attempted acts of terrorism by persons on the Selectee List, an
incredibly burdensome proposition, it would not constitute a comprehensive answer to the
question.

Defendants object to the request as overbroad and seeking information not relevant to any
claim or defense in this case and disproportionate to the needs of the case. This type of statistical
data is neither relevant nor useful to evaluating the Plaintiffs' procedural due process claims. The
requested data does not provide any basis for evaluating the redress process. Nor is the TSDB
limited to evaluating terrorist threats in the United States. Defendants also object to the proposed
time frame, which goes beyond what is pertinent and proper in evaluating Plaintiffs' claim for
prospective relief.

Defendants object to the interrogatory to the extent it seeks information that is subject to
the state secrets privilege, the law enforcement and investigatory files privilege, or SSI (including
SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland
Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). A
comprehensive answer to the broadest interpretation could require, for example, a full analysis of
all classified and privileged information in TSC's possession about attempted terrorist attacks or
terrorist activity. Everyone in the TSDB as a known or suspected terrorist is suspected of terrorist
activity.

Nothing contained in the responses shall be construed as a waiver of any applicable
objection or privilege as to any Request or as a waiver of any objection or privilege generally.

34

Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**        Subject to and without waiving the foregoing objections, TSC refers to its Response to Interrogatory 14, and otherwise stands on its objections.

*Int. 17. Of the persons who TSC believes have committed or who attempted to commit an act of terrorism inside the United States in the last ten years, identify the number of such persons who were on the No Fly List at the they committed or attempted to commit an act of terrorism inside the United States.*

**Objections:**        Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The phrases "have committed or have attempted to commit" and "an act of terrorism" are not defined and vague. Additionally, there is a missing word or words necessary to make interrogatory sensible. Moreover, this is simply not data or information tracked or maintained by TSC. Even if TSC attempted to analyze all information in its control to count instances of attempted acts of terrorism by persons on the No Fly List, an incredibly burdensome proposition, it would not constitute a comprehensive answer to the question.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case. This type of statistical data is neither relevant nor useful to evaluating the Plaintiffs' procedural due process claims. For example, Plaintiffs have no claims related to the No Fly List. The requested data does not provide any basis for evaluating the redress process. Nor is the TSDB limited to evaluating terrorist threats

35

in the United States. Defendants also object to the proposed time frame, which goes beyond what is useful in evaluating Plaintiffs' claim for prospective relief.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). A comprehensive answer to the broadest interpretation could require, for example, a full analysis of all classified and privileged information in TSC's possession about attempted terrorist attacks or terrorist activity. Everyone in the TSDB as a known or suspected terrorist is suspected of terrorist activity.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**      Subject to and without waiving the foregoing objections, TSC refers to its Response to Interrogatory 14, and otherwise stands on its objections.


*Int. 18. Identify all agreements between TSC and recipients of TSDB information and the parties to those agreements.*

**Objections:**      Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The terms "agreements", "recipients" and "parties" are not defined and vague. Nor is it limited to agreements about TSDB information. Accordingly, it could be limited to formal written agreements with other agencies about the use of TSDB

36

information, or it could include informal conversations about the length of employment of a TSC employee who also happens to have access to the TSDB, or any number of other possibilities. Some interpretations would result in a disproportionately burdensome search for information.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case. Receiving or using TSDB data is not an indication that the TSDB has any effect on liberty or property interests. Moreover, the request goes far beyond the uses of data that Plaintiffs allege have impacted them. Defendants additionally object that the interrogatory is not time limited to agreements currently in effect and note that defunct or superceded agreements are not relevant.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). Such information could include, for example, information about foreign partners, or a full description of all end users of TSDB information, such as the details described in the definitions and instructions, that would harm law enforcement investigations. Generally, the identities of foreign partners who receive information from TSC are protected by the law enforcement privilege, and in some instances the state secrets privilege, except as otherwise officially acknowledged.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**      Subject to and without waiving the foregoing objections, TSC refers plaintiffs to the privilege logs produced in response to plaintiffs' requests for production of documents and to TSC's Response to Interrogatory 2.  As to all other information requested in this interrogatory, TSC stands on its objections.

*Int. 19. Identify all agreements TSC has knowledge about which regard the dissemination of TSDB information.*

**Objections:**      Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case.  The terms "agreements" and "dissemination" are not defined and vague.  Accordingly, it could be limited to formal written agreements between TSC and other agencies about the use of TSDB information, or it could include informal conversations between third parties of which TSC may or may not be institutionally aware, or any number of other possibilities.  Some interpretations would result in a disproportionately burdensome search for information. TSC cannot address the agreements of other agencies.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case.  Receiving or using TSDB data is not an indication that the TSDB has any effect on liberty or property interests.  Moreover, the request goes beyond the uses of data that Plaintiffs allege have impacted them.  Additionally, searching for information about entities with which TSC has no direct relationship would be burdensome or impossible, and disproportionate to the needs of the case.  Defendants additionally object that the interrogatory is not time limited to agreements currently in effect and note that defunct or superceded agreements are not relevant.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). Such information could include, for example, details about foreign partners, or a full description of all end users of TSDB information, such as the details described in the definitions and instructions, that would harm law enforcement investigations. Generally, the identities of foreign partners who receive information from TSC are protected by the law enforcement privilege, and in some instances the state secrets privilege, except as otherwise officially acknowledged.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**        Subject to and without waiving the foregoing objections, TSC refers plaintiffs to the privilege logs produced in response to plaintiffs' requests for production of documents and to TSC's Response to Interrogatory 2. As to all other information requested in this interrogatory, TSC stands on its objections.

*Int. 20. Identify the number of times TSC knows about where the federal government knowingly allowed a person on the No Fly List to travel by air through US airspace.*

**Objections:**        Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. This type of statistical data is neither relevant nor useful to evaluating the Plaintiffs' procedural due process claims. The requested data does not provide

any basis for evaluating the redress process. For example, Plaintiffs have no claims related to the No Fly List. Defendants also object to the unlimited time frame, which goes beyond what is useful in evaluating Plaintiffs' claim for prospective relief.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). Generally, TSC does not confirm or deny whether individuals on the No Fly List are ever permitted to travel through U.S. airspace.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**      TSC stands on its objections with respect to this Interrogatory.


*Int. 21. Identify the number of persons who TSC placed on the TSDB, Selectee List, or the No Fly List who were under the age of ten at the time of their placement.*

**Objections:**      Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. This type of statistical data is neither relevant nor useful to evaluating the Plaintiffs' procedural due process claims. The requested data does not provide any basis for evaluating the redress process. Only one of the Plaintiffs is under the age of 10, and he has presented no reason to believe he is in the TSDB. And none of the Plaintiffs have claims related to the No Fly List. Defendants also object to the unlimited time frame, which goes beyond what is useful in evaluating Plaintiffs' claim for prospective relief.

Defendants object to the interrogatory because it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). This interrogatory seeks specific information about what might reasonably be assumed to be a rare occurrence – a small child who meets the reasonable suspicion standard for inclusion in the TSDB as a No Fly, Selectee, or known or suspected terrorist. Any response would provide operationally valuable information to persons planning terrorist attacks.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, TSC notes that to be listed as a No Fly, Selectee, or known or suspected terrorist (KST), a child would have to meet all applicable standards and criteria. Otherwise, TSC stands on its objections.

*Int. 22. Identify the number of persons who TSC placed on the TSDB, Selectee List, or the No Fly List who were under the age of five at the time of their placement.*

**Objections:**     Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. This type of statistical data is neither relevant nor useful to evaluating the Plaintiffs' procedural due process claims. The requested data does not provide any basis for evaluating the redress process. Only one of the Plaintiffs is under the age of five, and he has presented no reason to believe he is in the TSDB. And none of the Plaintiffs have

41

claims related to the No Fly List. Defendants also object to the unlimited time frame, which goes beyond what is useful in evaluating Plaintiffs' claim for prospective relief.

Defendants object to the interrogatory because it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). This interrogatory seeks specific information about what might reasonably be assumed to be a rare occurrence – a small child who meets the reasonable suspicion standard for inclusion in the TSDB as a No Fly, Selectee, or known or suspected terrorist. Any response would provide operationally valuable information to persons planning terrorist attacks.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**   Subject to and without waiving the foregoing objections, TSC notes that to be listed as a No Fly, Selectee, or KST, a child would have to meet all applicable standards and criteria. Otherwise, TSC stands on its objections.


*Int. 23. Identify all the different ways a person's watchlist status is considered in any way by any federal agency.*

**Objections:**      Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The terms "considered" and "ways" are vague and undefined. The interrogatory could include only final agency actions, any type of use for

investigatory or analytical purposes, including specific statistical analyses conducted, characterizations of the thoughts of individual employees, or any number of other possibilities.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case. Incidental or indirect "consideration" of TSDB information in ways that have not impacted the Plaintiffs is not relevant to their claims. Moreover, the request goes beyond the uses of data that Plaintiffs allege have impacted them. The request is further misdirected; TSC cannot speak authoritatively on behalf of other agencies. Additionally, searching for information about entities with which TSC has no direct relationship would be unduly burdensome or impossible, and disproportionate to the needs of the case.

Defendants object to the interrogatory because it seeks information that is subject to the state secrets privilege, the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). Such information could include, for example, a full description of all end users of TSDB information, and all classified and privileged analyses conducted that even reference the TSDB status of an individual, such as the details described in the definitions and instructions.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**   Subject to and without waiving the foregoing objections, see Response to Interrogatory 3. Otherwise, TSC stands on its objections.

*Int. 24. Explain the information technology infrastructure that TSC utilizes to create, maintain, and disseminate TSDB information.*

**Objections:**      Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The phrases "information technology infrastructure" and "utilizes to create, maintain, and disseminate" are vague and undefined, as is the term "explain." The interrogatory could require simply the name(s) of the relevant system(s) or could conceivably encompass any and all types of technical information about the system(s), including but not limited to the names of system administrators, data security protocols, and relevant textbooks on systems engineering or database management in general. The broader interpretations would be unduly burdensome, wholly disconnected from Plaintiffs' claims and disproportionate to the needs of the case. This type of information is neither relevant nor useful to evaluating the Plaintiffs' procedural due process claims.

Defendants object to the interrogatory because it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). This includes, but is not limited to, sensitive information about TSC facilities and/or information technology systems. A great deal of technical information about how information is stored and shared is highly sensitive and could be used to circumvent privacy and law enforcement protections and harm investigations.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally.

44

Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, TSC responds: TSDB information is maintained in the TSDB. Tailored exports are created for each screening partner in a format suitable for ingestion into the specific partner's system. As to all other information requested in this interrogatory, TSC stands on its objections.

*Int. 25. Identify all information TSC believes indicates that the TSDB, Selectee List, or No Fly List is effective.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The terms "information" "indicates" and "effective" are vague and undefined and capable of multiple interpretations. The interrogatory could require simply a repetition of the Defendants' initial disclosures, or it could require an exhaustive analysis of how the TSDB prevents terrorist attacks or it could require a summary of the means by which TSC ensures that TSDB data is accurate and reliable. The broader interpretations would be unduly burdensome, wholly disconnected from Plaintiffs' claims and disproportionate to the needs of the case. Moreover, the interrogatory seeks information that is neither relevant nor useful to evaluating the Plaintiffs' procedural due process claims, and is misdirected to TSC, which is not an end-user of TSDB data and cannot fully address the general effectiveness of screening measures on behalf of the U.S. Government.

Defendants further object to the relevance of the No Fly List and the Selectee List. None of the Plaintiffs currently believes that they are on the No Fly List. Defendants object on the ground of relevance because the Selectee List is not relevant to Plaintiffs' property or liberty

interests. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, the deliberative process privilege, law enforcement and investigatory files privilege, or SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). The broadest interpretation of the request, for example, would entail a comprehensive analysis of counterterrorism information available to the Government, including classified, privileged and otherwise protected information.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, to the extent that "effectiveness" refers to the means by which TSC ensures that TSDB data is accurate and reliable, TSC responds as follows.

First, before an individual is added to the TSDB, the nomination undergoes a multi-step review process at the nominating agency, at the NCTC or FBI (as appropriate), and then again at the TSC to ensure compliance with interagency standards for inclusion. To include a known or suspected terrorist nomination in the TSDB, the nomination must include enough identifying information to allow screeners to be able to determine whether the individual they are screening is a match to a record in the TSDB, and enough information to establish a reasonable suspicion that the individual is a known or suspected terrorist. Nominations to the No Fly or Selectee Lists

(which are subsets of the TSDB) must satisfy specific additional criteria. The TSC reviews each nomination to ensure compliance with standards for inclusion.

Second, to maintain thorough, accurate and current terrorism information, the TSDB is subjected to rigorous and ongoing quality control measures to ensure that nominations continue to satisfy the applicable criteria for inclusion, and that the information offered in support of the nomination is reliable and up to date. Quality control measures include reviews and evaluations by the nominating agency, NCTC, and TSC to verify that each nomination meets the appropriate criteria for inclusion in the TSDB and any appropriate subset list prior to an identity being added to the TSDB. Additionally, the TSC regularly reviews data in the TSDB to ensure that the underlying information supports the nomination and performs audits to confirm the data in the TSDB is thorough, accurate, and current. At any time, a USG agency (whether or not it is the nominator) that identifies new or updated information about a watchlist record, may make a request to NCTC/TSC to modify or remove that record.

These measures, among others, ensure the accuracy of the information relied upon for placement in the TSDB, and provide a means to identify any changes to the information over time that could affect placement.

Additionally, TSC refers Plaintiffs to TSC FAQs at Elhady-FBITSC-001306-1308 and the Overview Document at Elhady-FBITSC-001947-1956.

Otherwise, TSC stands on its objections.

### Int. 26. Explain how TSC assesses the effectiveness of the TSDB.

**Objections:**       Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The terms "explain" "assesses" and "effectiveness" are vague and undefined and capable of multiple interpretations. The interrogatory could require an

exhaustive analysis of how the TSDB prevents terrorist attacks or it could require a summary of the means by which TSC ensures that TSDB data is accurate and reliable. The broader interpretations would be unduly burdensome, wholly disconnected from Plaintiffs' claims and disproportionate to the needs of the case. Moreover, this interrogatory seeks information that is neither relevant nor useful to evaluating the Plaintiffs' procedural due process claims, and is largely misdirected to TSC, which is not an end-user of TSDB data and cannot fully address the general effectiveness of screening measures on behalf of the U.S. Government.

Defendants object to the interrogatory to the extent it seeks information that is subject to the deliberative process privilege, state secrets privilege, law enforcement and investigatory files privilege, or SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). The broadest interpretation of the request, for example, would entail a comprehensive analysis of counterterrorism information available to the Government, including classified, privileged and otherwise protected information.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, TSC refers to its Response to Interrogatory 25, and otherwise stands on its objections.

*Int. 27. Explain how TSC assesses the effectiveness of the Selectee List.*

**Objections:**      Defendants object to the request as vague, burdensome, irrelevant and
disproportionate to the needs of the case. The terms "explain" "assesses" and "effectiveness" are
vague and undefined and capable of multiple interpretations. The interrogatory could require an
exhaustive analysis of how the TSDB prevents terrorist attacks or it could require a summary of
the means by which TSC ensures that TSDB data is accurate and reliable. The broader
interpretations would be unduly burdensome, wholly disconnected from Plaintiffs' claims and
disproportionate to the needs of the case. Moreover, this interrogatory seeks information that is
neither relevant nor useful to evaluating the Plaintiffs' procedural due process claims, and is
largely misdirected to TSC, which is not an end-user of TSDB data and cannot fully address the
general effectiveness of screening measures on behalf of the U.S. Government.

Defendants further object to the relevance of the Selectee List. Defendants object on the
ground of relevance because the Selectee List is not relevant to Plaintiffs' property or liberty
interests.      Any analysis of these particular lists, therefore, is unduly burdensome and
disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to
the deliberative process privilege, the state secrets privilege, law enforcement and investigatory
files privilege, or SSI (including SSI that is not appropriate for disclosure under Section 525(d) of
the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120
Stat. 1355, as reenacted). The broadest interpretation of the request, for example, would entail a
comprehensive analysis of counterterrorism information available to the Government, including
classified, privileged and otherwise protected information.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, TSC refers to its Response to Interrogatory 25, and otherwise stands on its objections.

### *Int. 28. Explain how TSC assesses the effectiveness of the No Fly List.*

**Objections:**     Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The terms "explain" "assesses" and "effectiveness" are vague and undefined and capable of multiple interpretations. The interrogatory could require simply a repetition of the previous interrogatory response, or it could require an exhaustive analysis of how the TSDB prevents terrorist attacks or it could require a summary of the means by which TSC ensures that TSDB data is accurate and reliable. The broader interpretations would be unduly burdensome, wholly disconnected from Plaintiffs' claims and disproportionate to the needs of the case.  Moreover, this interrogatory seeks information that is neither relevant nor useful to evaluating the Plaintiffs' procedural due process claims, and is largely misdirected to TSC, which is not an end-user of TSDB data and cannot fully address the general effectiveness of screening measures on behalf of the U.S. Government.

Defendants further object to the relevance of the No Fly List. None of the Plaintiffs currently believes that they are on the No Fly List. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the deliberative process privilege, the state secrets privilege, law enforcement and investigatory files privilege, or SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  The broadest interpretation of the request, for example, would entail a comprehensive analysis of counterterrorism information available to the Government, including classified, privileged and otherwise protected information.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, TSC refers to its Response to Interrogatory 25, and otherwise stands on its objections.

*Int. 29. Identify all information TSC possesses that indicates that any financial institutions have received TSDB information.*

**Objections:**        Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case.  The terms "indicates" "financial institutions" and "received" are undefined, vague and capable of multiple interpretations.  The interrogatory could include, for example, only external exports of TSDB data, or it could include instances of illicit access, screening conducted by and at TSC, further use of TSDB data by an end user of which TSC may not be institutionally aware, or any number of other possibilities. And financial institutions could encompass private, federal and/or state entities that perform financial services

51

of any kind.  The phrase "TSDB information" could mean only information contained in the TSDB or it could include any information about the TSDB.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case.  Incidental or indirect access to TSDB data in ways that have not impacted the Plaintiffs is not relevant to their claims. Moreover, the request goes beyond the uses of data that Plaintiffs allege have impacted them. Additionally, searching for information about entities with which TSC has no direct relationship would be unduly burdensome or impossible, and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, or the state secrets privilege.  A comprehensive response to the broadest interpretation of the request could include, for example, a review of all underlying information about individuals on the TSDB to determine whether such information might have been shared.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving the foregoing objections, TSC responds:  TSC does not export TSDB data to private financial institutions and is not aware of TSDB data being shared with private financial institutions through any arrangement.

*Int. 30. Identify all information TSC possesses that indicates for-profit companies have received TSDB information.*

**Objections:**     Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The terms "indicates" "for-profit companies" and "received" are undefined, vague and capable of multiple interpretations. The interrogatory could include, for example, only external exports of TSDB data, or it could include instances of illicit access, screening conducted by and at TSC, further use of TSDB data by an end user of which TSC may not be institutionally aware, or any number of other possibilities. And "for profit companies" could be limited to entities acting in private capacity or entities contracted to act on behalf of the federal government, such as federal contractors working at TSC on behalf of TSC. The phrase "TSDB information" could mean only information contained in the TSDB or it could include any information about the TSDB.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case. Incidental or indirect access to TSDB data in ways that have not impacted the Plaintiffs is not relevant to their claims. Moreover, the request goes beyond the uses of data that Plaintiffs allege have impacted them. Additionally, searching for information about entities with which TSC has no direct relationship would be unduly burdensome or impossible, and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted), or the state secrets privilege. A comprehensive response to the broadest interpretation of the request could include, for example, a

review of all underlying information about individuals on the TSDB to determine whether such information might have been shared.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving the foregoing objections, TSC responds:  TSC does not directly export TSDB data to "for profit companies" (see Responses to Interrogatories 2 and 8). As to all other information requested in this interrogatory, TSC stands on its objections.


*Int. 31. Identify the number of countries who have entered into agreements with the United States to receive TSDB information.*

**Objections:**       Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case.  The terms "agreements" and "receive" are undefined, vague and capable of multiple interpretations.  The interrogatory could include, for example, only regular, institutionalized external exports of TSDB data, or it could also include broader intelligence sharing which incidentally sometimes includes TSDB information, further use or sharing of TSDB data by an end user of which TSC may not be aware (such as informal or ad hoc conversations with foreign authorities), or other possibilities. The phrase "TSDB information" could mean only information contained in the TSDB or it could include any information about the TSDB.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case.  Incidental or indirect

access to TSDB data in ways that have not impacted the Plaintiffs is not relevant to their claims. Moreover, the request goes beyond the uses of data that Plaintiffs allege have impacted them. None of the Plaintiffs claims to have subjected to any restriction by a foreign government as result of their alleged TSDB status.  Additionally, searching for information about entities with which TSC has no direct relationship would be unduly burdensome or impossible, and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege.  Generally, the number and identities of the foreign countries with whom TSC shares information are subject to the law enforcement privilege, and in some instances the state secrets privilege, except as otherwise officially acknowledged. A comprehensive response to the broadest interpretation of the request could include, for example, a review of all underlying information about individuals on the TSDB to determine whether such information might have been shared or the disclosure of specific confidential communications with foreign governments.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving the foregoing objections, TSC responds:  TSC exports subsets of TSDB data to more than 60 foreign partners (including all Visa Waiver Program countries) with which TSC has entered into foreign partner arrangements.  Information pertaining to most of these partnerships is classified, sensitive, or otherwise not releasable.  Publically releasable information pertaining to foreign partnerships is available on the Department of State

55

Treaty Office website (see Response to Interrogatory 2).  As to all other information requested in
this interrogatory, TSC stands on its objections.


*Int. 32. Explain what TSC believes foreign governments do with TSDB information they
receive.*

**Objections:**        Defendants object to the request as vague, burdensome, irrelevant and
disproportionate to the needs of the case.  The terms "explain" "believes" "do with" and "receive"
are undefined, vague and capable of multiple interpretations.  The interrogatory could include, for
example, only specifically known uses of regular, institutionalized external exports of TSDB data,
or it could also include broader intelligence sharing which incidentally sometimes includes TSDB
information, further use or sharing of TSDB data by an end user of which TSC may not be aware
(such as informal or ad hoc conversations with foreign authorities), or other possibilities.  The
phrase "do with" could be limited to adverse actions against the listed individuals, specific types
of analyses in which data might appear, conversations they may have about the data, or even
technical information about how the data is securely stored.  The phrase "TSDB information"
could mean only information contained in the TSDB or it could include any information about the
TSDB.  The broader or more detailed interpretations of the request are unduly burdensome and
disproportionate to the needs of the case.

Defendants object to the request as overbroad and seeking information not relevant to any
claim or defense in this case and disproportionate to the needs of the case.  Incidental or indirect
access to TSDB data in ways that have not impacted the Plaintiffs is not relevant to their claims.
Moreover, the request goes beyond the uses of data that Plaintiffs allege have impacted them.
None of the Plaintiffs claims to have subjected to any restriction by a foreign government as result

of their alleged TSDB status. Additionally, searching for information about entities with which TSC has no direct relationship would be burdensome or impossible, and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, or the state secrets privilege. Generally, the identities of foreign partners who receive information from TSC are protected by the law enforcement privilege, and in some instances the state secrets privilege, except as otherwise officially acknowledged. A comprehensive response to the broadest interpretation of the request could include, for example, a review of all underlying information about individuals on the TSDB to determine whether such information might have been shared or the disclosure of specific confidential communications with foreign governments about specific individuals.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, TSC responds: TSC expects foreign partners to use TSDB information for lawful terrorist screening purposes, subject to their domestic laws and authorities. Information pertaining to most of these partnerships is classified, sensitive, or otherwise not releasable. Publically releasable information pertaining to foreign partnerships is available on the Department of State Treaty Office website. As to all other information requested in this interrogatory, TSC stands on its objections.

*Int. 33. For the last ten years, identify the yearly average number of TSC agents who had the authority to accept or reject a watchlist nomination.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The term "yearly average number" is undefined and vague and subject to multiple interpretations. It could be the average number per day, week or month over the course of a year. Or it could be the total number over the course of a year, with the numbers over the course of 10 years averaged to reach a single "yearly average", or a few other possibilities. The phrases "TSC agents" and "authority to accept or reject" are also not defined and are subject to multiple interpretations.

The requested data does not provide any insight into the TSDB that is useful in evaluating the procedural due process claim. The number of people working on a particular phase of watchlisting at TSC is not relevant to evaluating the due process available to individuals who believe they are in the TSDB.

Defendants also object to the timeframe of the request as irrelevant and unduly burdensome and disproportionate to the needs of the case. Plaintiffs seek prospective, injunctive relief. While their own past experiences are relevant to the deprivation of a liberty interest, the evaluation of the placement and redress process ten years ago is not relevant to their claims.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, TSC responds: In 2017, on average, approximately 35 individuals at TSC had some level of authority to accept or reject

58

nominations, at any given time.  Not all of these individuals, however, had the authority to accept

or reject all nominations (see Response to Interrogatory 34).  The specific circumstances of each

nomination will determine how many TSC personnel are authorized to accept or reject it.

Otherwise, TSC stands on its objections.


*Int. 34. Identify how TSC agents who TSC gives the authority to accept or reject watchlist*
*nominations are trained.*

**Objections:**        Defendants object to the request as vague, burdensome, irrelevant and

disproportionate to the needs of the case.  The phrases "TSC agents" and "authority to accept or

reject" are not defined and are subject to multiple interpretations, as is "trained."  The framing in

the passive voice introduces additional ambiguity about whether it is seeking training beyond that

conducted by or on behalf of TSC.  The interrogatory could be seeking a general summary of basic

substantive training available to all such employees, or it could be seeking all details about such

training, other training mandatory for all FBI employees, like HR training, or incidental or one-off

trainings on specific issues that arise, or any number of other possibilities.  The broadest

interpretations would be both unduly burdensome, irrelevant and disproportionate to the needs of

the case.  It bears little or no relationship to the procedural due process claim remaining in the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to

the law enforcement and investigatory files privilege, the state secrets privilege, or SSI (including

SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland

Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  A

comprehensive response to the broadest interpretation of the request could include, a detailed

description of the highly sensitive information on which agency employees are trained, including specific factual scenarios.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving the foregoing objections, TSC responds: Before starting work in the Nominations and Data Integrity Unit (NDIU), NDIU analysts are required to complete the NDIU Basic Analyst Course, a two-week, classroom-based course on NDIU policies and procedures taught by experienced NDIU trainers.  TSC reviews and updates the training materials to reflect the most current policies and procedures.  In addition, NDIU analysts are required to perform on-the-job training conducted by an experienced NDIU analyst.  Among other topics, NDIU analysts are trained on operating procedures, handling of foreign government information, and the use of intelligence and law enforcement databases.  When an NDIU analyst successfully completes the Basic Analyst Course and on the job training, the analyst is given Basic Analyst rights within the TSDB.  Basic Analysts have the ability to review nominations and recommend them for acceptance or rejection, but all such nominations must be reviewed and approved by a Senior Analyst.  In order to advance, Basic Analysts must correctly process nominations that meet a variety of different criteria to ensure they understand the intricacies of watchlisting policies, which usually takes about two months.   Basic Analysts who perform well (based on personal statistics, Senior Analyst feedback, and quality control audits) transition to Advanced Analysts, who have the authority to accept nominations into the TSDB without a Senior Analyst reviewing the nomination; however, Senior Analysts will still review Advanced Analyst

nominations if the Advanced Analyst has conducted an edit during the course of his or her review. Advanced Analysts who perform well may eventually progress to become Senior Analysts, although this is dependent on a variety of factors, such as unit need and the analyst's personal statistics and performance. Senior Analysts who are also Team Leads (responsible for reviewing the Basic and Advanced nominations processed by their teams) have the authority to reject nominations. The Quality Control Team (QC) also has the authority to accept and reject nominations, and is populated with analysts who have shown the greatest proficiency at processing records and understanding watchlisting policies and procedures. NDIU Management also maintains the authority to accept and reject nominations. Although these managers may not always have started in the unit as Basic Analysts, they receive similar training. All TSC personnel also receive comprehensive training in privacy and civil liberties. Otherwise, TSC stands on its objections.

*Int. 35. For the last ten years, identify the number of watchlist nominations that were rejected because the nomination lacked minimum derogatory information.*

**Objections:**       Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case. The interrogatory uses the term "nomination" vaguely and seeks irrelevant data. Generally, TSC uses to the term "nomination" to refer to any proposed change to TSDB information, including for example: adding a new individual, upgrading or downgrading the status of individuals already in the TSDB, adding additional identifiers, changing or correcting identifiers, and removals from the TSDB. The data sought therefore bears little or no relationship to the procedural due process claim remaining in the case. There is no "minimum derogatory information" required, for example, to add an identifier to the TSDB for an individual

who is already in it; nor is "minimum derogatory information" required to remove someone from the TSDB.  Accordingly the number of nominations rejected for such reasons bears no reasonable relationship to relevant legal questions in this case and is disproportionate to the needs of the case. In the usual course of business, TSC does not track the basis for the rejection of a nomination; accordingly it would be burdensome or impossible to attempt to compile this information by analyzing individual entries.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving the foregoing objections, TSC responds:  TSC does not, in the usual course of business, track or aggregate the basis for the rejection of a nomination for inclusion in the TSDB.  When a nomination for inclusion in the TSDB is rejected, TSC records require only that such a rejected nomination be identified as having insufficient "minimum criteria."  The "minimum criteria" necessary for inclusion in the TSDB is sufficient biographic information and sufficient derogatory information.  In some cases, the TSC personnel reviewing a nomination may provide additional details about the basis for the rejection of a nomination in a free-form part of the record.  The TSC, however, does not require its personnel to provide this information.  Because this information is not required, any additional details provided (if they are at all) may, may not, or may partially address the basis for the rejection.  Therefore, because such information is not required, any purported statement about the basis for a rejection

cannot be considered to represent the actual basis for the decision.  A search for any such

information would be unduly burdensome.  For these reasons, TSC is not able to provide an answer

to this interrogatory.


For the Responses:

TIMOTHY P. GROH
Deputy Director for Operations
Terrorist Screening Center


For the Objections:                                        Respectfully submitted,


Dated: February 21, 2018                          CHAD READLER
                                                                  Acting Asst. Attorney General, Civil Division

                                                                  ANTHONY J. COPPOLINO
                                                                  Deputy Director, Federal Programs Branch

                                                                  /s/    Amy E. Powell
                                                                  AMY POWELL
                                                                  Trial Attorney, Federal Programs Branch
                                                                  Civil Division, Department of Justice
                                                                  310 New Bern Avenue, Suite 800
                                                                  Federal Building
                                                                  Raleigh, NC 27601-1461
                                                                  Phone: 919-856-4013
                                                                  Email:  amy.powell@usdoj.gov

                                                                  *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was sent via electronic mail to

Counsel of Record in this case.

/s/    Amy E. Powell
AMY POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

February 21, 2018

# Exhibit C

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

**ANAS ELHADY,** *et al.,*                                    )
                                                             )          **Case No. 16-cv-00375**
      Plaintiffs,                )          **Hon. Anthony J. Trenga**
                                                             )
v.                                                           )
                                                             )
**CHARLES H. KABLE,** Director of the                        )
Terrorist Screening Center; in his official                  )
capacity, *et al.;*                                          )
                                                             )
      Defendants.                )
                                /

## DEFENDANTS' OBJECTIONS TO PLAINTIFFS' FIRST
## SET OF INTERROGATORIES TO FBI

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants Charles H. Kable, Director of the Terrorist Screening Center ("TSC"); Kelli Ann Burriesci, Principal Deputy Director of TSC; Timothy P. Groh, Deputy Director for Operations at TSC; Deborah Moore, Director of Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP"); Russell Travers, Director of the National Counterterrorism Center ("NCTC"); David Pekoske, Administrator of the Transportation Security Administration ("TSA"); Christopher Wray, Director of the Federal Bureau of Investigation ("FBI"); and Kevin K. McAleenan, Acting Commissioner of U.S. Customs and Border Protection ("CBP"); hereby submit objections to the discovery requests titled, "Plaintiffs' First Set of Interrogatories to Defendant Wray," served January 24, 2018.  Defendants will refer to these hereafter as the First Set of Interrogatories to FBI.

The Defendants' responses are provided in accordance with Federal Rule 26(b)(1), which permits the discovery of any information, not privileged, that is both (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case.  The Defendants do not, by

1

providing such information, waive any objection to its admissibility on the grounds of relevance, proportionality, accessibility, materiality, or other appropriate ground. The inadvertent production by the Defendants of information protected by any privilege or protection shall not constitute a waiver of the applicable privilege or protection as to any information disclosed. The Defendants reserve the right to supplement or amend their responses should additional or different information become available.

## OBJECTIONS AS TO DEFINITIONS AND INSTRUCTIONS

1.      Defendants object to the Plaintiffs' Definition 1 (of "you" and "your" and "Defendant") to the extent that such definitions purport to apply to the Defendant or anyone else individually.  In responding to the Interrogatories, Defendant responds in each and every response on behalf of the FBI, based upon information in the agency's possession, custody, or control.

2.      Defendants object to other definitions because they define terms not actually used in this set of requests for production.  Defendants reserve all objections to such definitions if they are used in future discovery requests.

3.      Defendants object to the definition of TSC.  Plaintiffs have been repeatedly reminded of the publicly available information that Christopher Piehota is not the Director of the TSC.  The other agency Defendants are similarly misdefined.  *See generally* Dkt. No. 58 (Notice of Substitution of Defendants).

4.      Defendants object to the Definition of Plaintiffs to the extent this is intended to expand the total number of interrogatories available or affect only some of the Plaintiffs.  The

interrogatories are made on behalf of only a subset of the Plaintiffs but count against the permissible number of total interrogatories.

5.      Defendants object to Defendants object to the Plaintiffs' Definition 7 (of "TSDB" "Terrorism Screening Database" or "watch list") as vague to the point of meaningless. The actual database at issue is known as the "Terrorist Screening Database", or "TSDB", but Plaintiffs define it using a colloquial term without legal definition -- "the terrorism watch list" -- without giving the defined terms further content or definition. Defendants will assume those terms refer to the Terrorist Screening Database and will respond as such with respect to each and every interrogatory that uses these terms.

6.      Defendants object to Definition 14, which exceeds Defendants' obligations under the Federal Rules.   It is not clear that this definition applies to any of the interrogatories, which generally request identification of a "number" or some other noun which is not an "act, instance, occurrence, statement, event, transaction, or conduct." To the extent it were intended to apply, defendants object on grounds of vagueness.  Moreover, the identification of documents, witnesses and other extraneous information about an "act" would require another interrogatory or request for production.

7.      Defendants object to Instruction 1 insofar as it implies that the witness is speaking on his own behalf or that of any other individual.  In responding to the Interrogatories, Defendant responds in each and every response on behalf of the FBI, based upon information in the agency's possession, custody, or control.

8.      Defendants object to Instruction 5 insofar as it applies to privileged communications between counsel, or between parties and their counsel, to the extent it conflicts

3

with the Parties' Joint Discovery Plan, as approved by the court, which specifically provides that: "If any discovery request is susceptible of a construction that calls for the production of such documents, those documents need not be produced or identified on any privilege log." It also conflicts with the Federal Rules of Civil Procedure and ordinary practice by supposing that privilege is waived if not asserted on such a log and by requiring identification of privileged documents beyond what is ordinarily required on a privilege log. With respect to each and every request, Defendants respond consistently with the Discovery Plan and the Federal Rules.

9.      Defendants object to Instruction 5 to the extent it imposes obligations in excess of those imposed by the Federal Rules, which do not require a particular form of a privilege log. As set forth in the discovery plan, Defendants reserve the right NOT to produce a specific privilege log when such a log would itself reveal privileged or protected information. Further, on its face, Instruction 5 appears to seek production or a log of documents, and is therefore inapplicable to these interrogatories. With respect to each and every request, Defendants respond consistently with the Discovery Plan and the Federal Rules.

10.     Defendants object to Instruction 6 to the extent it imposes obligations in excess of those imposed by the Federal Rules, which do not require identification of documents that no longer exist. Such an exercise is likely impossible, but in any event burdensome, disproportionate and not required by the Federal Rules. Further, on its face, Instruction 6 appears to seek production or an index of documents, and is therefore inapplicable to these interrogatories. Defendants will comply with the Federal Rules.

## OBJECTIONS

*Int. 1. Identify every incident in the last 15 years that the FBI considers an act of terrorism or an attempt to commit an act of terrorism. Limit your response to acts of terrorism and*

4

*attempted acts of terrorism occurring within the United States. Provide a prose description of each incident.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The interrogatory does not define "act of terrorism" or "attempt" or "prose description." Terrorism has several different legal definitions, depending on context, and the interrogatory could seek information about acts of domestic terrorism or international terrorism, acts of terrorism as punishable under various federal or state laws in the United States or the under laws of another country, or it could include related criminal or noncriminal activity directly or indirectly related to such acts or attempts or it could include nonpublic information about suspected terrorist activity, regardless of whether or not such activity culminated in violent attacks inside the United States. The request is also vague in that it seeks a response as to what the FBI "considers" to be an act of terrorism or attempted terrorism; the FBI does not maintain records reflecting "considered" criminal and terrorist acts. It also fails to define "acts . . . occurring with the United States;" the locations of an act could based solely on where the harm occurred, or it be based on where harm was intended to occur, where one or more of the conspirators or accomplices were located during the course of the act, where instrumentalities of the crime were located, or where necessary actions or processes forming part of the act or offense took place. FBI does not compile any of these specific categories of data and attempting to compile them would be unduly burdensome, likely impossible, and certainly disproportionate to the needs of the case.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case. Specific acts of terrorism and attempted terrorism within the United States do not provide a useful category of data

or benchmark to assess the propriety of the process available to plaintiffs. The effectiveness of the TSDB is not at issue; rather, the plaintiffs' challenge the adequacy of the process available for individuals who believe they are in the TSDB. Even if effectiveness of the TSDB were at issue, this information would not provide a useful metric for evaluating it. Defendants also object to the timeframe of the request as irrelevant and burdensome and disproportionate to the needs of the case. Plaintiffs seek forward-looking, injunctive relief. While their own past experiences are relevant to the deprivation of a liberty interest, the evaluation of the placement and redress process ten years ago is not remotely relevant to their claims.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). A comprehensive answer could include, for example, classified and privileged details about known and charged terrorist activity, as well as details about suspected terrorist plots, foiled terrorist plots, and ongoing investigations, regardless of whether or not such information has become public.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** The FBI stands on its objections.

6

***Int. 2. For all incidents responsive to Interrogatory 1, identify the total number—to the best of the FBI's ability—of persons the FBI believes perpetrated those incidents.***

**Objections:** Defendants hereby incorporate all of the objections to Interrogatory 1. Defendants further object to the further information sought in this interrogatory as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The phrase "perpetrated those incidents" is undefined, vague and susceptible to multiple interpretations.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case. The effectiveness of the TSDB is not at issue; rather, the plaintiffs' challenge the adequacy of the process available for individuals who believe they are in the TSDB. Even if effectiveness of the TSDB were at issue, this information would not provide a useful metric for evaluating it.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege and the law enforcement and investigatory files privilege. A comprehensive answer could include, for example, classified and privileged details about known and charged terrorist activity, as well as details about suspected terrorist plots, foiled terrorist plots, and ongoing investigations, regardless of whether or not such information has become public.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** The FBI stands on its objections.

***Int. 3. For all persons identified in Interrogatory 2, identify the total number of persons who were in the TSDB at the time they committed or attempted to commit a violent act of terrorism.***

**Objections:**   Defendants hereby incorporate all of the objections to Interrogatories 1 and 2. Defendants further object to the additional information sought in this interrogatory as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process.   Interrogatory 3 introduces the modifier "violent" to act of terrorism, still without defining any of those terms, but the additional term suggests that Plaintiffs may or may not be seeking a different subset of the previous information requested.

Defendants object to the request as seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case.  The effectiveness of the TSDB is not at issue; rather, the plaintiffs' challenge the adequacy of the process available for individuals who believe they are in the TSDB.  Even if effectiveness of the TSDB were at issue, this information would not provide a useful metric for evaluating it.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege and the law enforcement and investigatory files privilege.   A comprehensive answer could include, for example, classified and privileged details about known and charged terrorist activity, as well as details about suspected terrorist plots, foiled terrorist plots, and ongoing investigations, regardless of whether or not such information has become public. Defendants further object to the interrogatory because it seek information about the TSDB status of particular individuals or categories of individuals at a specific point in time. That information is subject to the law enforcement privilege and is SSI (including SSI that is not appropriate for

disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** The FBI stands on its objections.

*Int. 4. Explain how the FBI receives TSDB information and how and to what entities the FBI disseminates TSDB information*

**Objections:** Defendants object to the form of this interrogatory, which is in fact two interrogatories, not one, and should count as such against the total number of interrogatories. Defendants further object to the interrogatory as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The terms "explain", "receives", "and entities" and "TSDB information" are undefined and vague. The request may or may not seek information about, for example, FBI offices that have access to watchlist information exported from TSC, and individuals or companies working for the federal government. The term "disseminates" could include only external exports of TSDB data, or it could include instances of illicit access, screening conducted by and at FBI, further use or discussion of TSDB data of which FBI may or may not be institutionally aware, or any number of other possibilities. The broader readings are unduly burdensome and disproportionate to the needs of the case.

9

Defendants further object to the request as vague, confusing and overbroad insofar as it applies to TSC, which is administered by FBI.   TSC maintains the TSDB, rather than "receiving" TSDB information.  In responding, FBI will therefore exclude TSC from its response.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case.   Incidental or indirect access to TSDB data in ways that never have and never arguably could impact the Plaintiffs is not remotely relevant to their claims.   Investigative uses of TSDB data are not relevant to Plaintiffs' claims.   Moreover, the request goes beyond the uses of data that Plaintiffs allege have impacted them.   The term "how" suggests that Plaintiffs may be seeking information about the technical sharing of data and the form in which it is shared and even data security protocols.   Additionally, searching for information about entities with which FBI has no direct relationship would be burdensome or impossible, and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).   Such information could include, for example, a full description of all uses of TSDB information, such as the details described in the definitions and instructions, sensitive technical information and/or the investigative uses of TSDB data.   Specific confidential communications with foreign liaisons are privileged as well.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally.

10

Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege

**Response:**  Subject to and without waiving the foregoing objections, the FBI responds that it regularly receives exports of TSDB data from TSC.  The FBI disseminates data received from the TSDB in furtherance of national security and criminal investigations, in accordance with applicable law and FBI policies pertaining to required and permissive information sharing, to provide information as consistently and fully as possible to other agencies with relevant responsibilities to protect the United States from terrorism and other threats to the national security.

*Int. 5. Identify all restrictions and differential measures, including but not limited to restrictions on the ability to obtain licenses or security clearances, secure employment opportunities (for example, employment opportunities in the sterile areas of airports), that are imposed on individuals placed on the watchlist.*

**Objections:**  Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process.  The interrogatory does not specify by whom or what entities the "restrictions and differential measures" about which it seeks information, "are imposed."  Further, to the extent the interrogatory is deemed limited to "restrictions and differential measures" imposed by defendants, the terms are not defined and therefore could be interpreted to include only final agency actions, or, more broadly to include investigative activity, ordinary security screening, or any number of other possibilities.  Moreover, the request for such measures "imposed on people on the watchlist" is vague, ambiguous and overbroad; grammatically, it includes ANY measures imposed on people on the watchlist, regardless of whether such measures are actually

11

related to the TSDB.  On its face, the interrogatory does not define any required degree of relationship between TSDB status and the agency action taken.  Accordingly, to the extent this interrogatory is deemed limited to actions by the FBI, it could seek identification of agency actions only taken with respect to people in the TSDB, actions taken solely as a result of TSDB status, actions taken after investigation that was motivated in part by TSDB status, or any of a number of other possibilities.  The broader readings are both burdensome and irrelevant, as they do not even arguably evidence any deprivation of a liberty interest.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case.  The interrogatory is not limited to uses of data that Plaintiffs allege have impacted them.  Additionally, searching for information about actions taken by other agencies or entities, including entities with which FBI has no direct relationship, would be burdensome or impossible, and disproportionate to the needs of the case.  Additionally, the interrogatory is misdirected, because FBI is not responsible for nor authoritative on actions taken by other agencies and cannot speak on their behalf.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  A comprehensive answer could theoretically require, for example, a full description of all end users of TSDB information, and the specific uses to which it is put and under what circumstances, including investigatory uses, analytical uses, and security precautions.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally.

12

Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver
of such privilege.

**Response:**  Subject to and without waiving the foregoing objections, the FBI responds that it
does not impose any restrictions on individuals placed on the No Fly or Selectee Lists.


***Int. 6. Identify all information the FBI believes indicates that the TSDB, Selectee List, or No
Fly List is effective.***

**Objections:**  Defendants object to the request as vague, burdensome, irrelevant and
disproportionate to the discovery needed for the sole remaining claim in the case concerning
procedural due process.   The terms "information" "indicates" and "effective" are vague and
undefined and capable of multiple interpretations.   The interrogatory could require simply a
repetition of the Defendants' initial disclosures, or it could require an exhaustive analysis of how
the TSDB prevents terrorist attacks or it could require a summary of the means by which TSC
ensures that TSDB data is accurate and reliable. The broader interpretations would be extremely
burdensome, wholly disconnected from Plaintiffs' claims and disproportionate to the needs of the
case. This type of information is neither relevant nor useful to evaluating the Plaintiffs procedural
due process claims.  Insofar as the request is directed at the accuracy and reliability of data or its
uses in screening, it is largely misdirected to FBI, which is only one of several nominating
agencies, does not conduct screening, and cannot completely address the general effectiveness of
screening measures on behalf of the United States.

Defendants further object to the relevance of the effectiveness of the TSDB, the No Fly
List, and the Selectee List.  The effectiveness of the TSDB, the No Fly List, and the Selectee List
has no bearing on the propriety of the process available to plaintiffs or any relevance to any claim

or defense at issue in this case.  None of the Plaintiffs currently believes that they are on the No Fly List.  The Selectee List is not relevant to Plaintiffs' property or liberty interests.  Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

To the extent this interrogatory is directed at TSC as well, Defendants object to the interrogatory as duplicative and exclude TSC from the response.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, law enforcement and investigatory files privilege, or SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  The broadest interpretation of the request, for example, would entail a comprehensive analysis of counterterrorism information available to the Government, including classified, privileged and otherwise protected information.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving the foregoing objections, the FBI responds only that, to the extent "effective," refers to the means by which TSC ensures that TSDB data is accurate and reliable, the FBI refers plaintiffs to the Response to Interrogatory Number 25 in the First Set of Interrogatories to TSC, to TSC FAQs at Elhady-FBITSC-001306-1308, and to the Overview Document at Elhady-FBITSC-001947-1956.  The FBI believes that the TSDB is a highly

14

valuable counter-terrorism resource in furtherance of the FBI's mission to protect the national security of the United States.

### *Int. 7. Identify all uses of TSDB information by any entity.*

Objections:   Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process.   The FBI does not maintain records or information regarding all uses of the TSDB by any entity.  Defendants refer plaintiffs to TSC Responses to Plaintiffs' Interrogatory Nos. 1 - 3.  The terms "uses" and "entity" are not defined and vague.  Further, to the extent the interrogatory is deemed limited to uses of TSDB data by the FBI, the request may or may not seek information about, for example, FBI offices that have access to watchlist information, and individuals or companies working for the federal government, other agencies, or even entities with whom FBI has no direct relationship.  And "uses" could include only final agency action by FBI, or could include investigative activity, ordinary security screening, incidental consideration of such data untethered to any final action, further use or discussion of TSDB data of which FBI may or may not be institutionally aware, or any number of other possibilities.  The broader readings would be unduly burdensome and disproportionate to the needs of the case.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case.  Incidental or indirect access to TSDB data in ways that never have and never arguably could impact the Plaintiffs is not remotely relevant to their claims.  Investigative uses of TSDB data are not relevant to Plaintiffs' claims.  Moreover, the request goes beyond the uses of data that Plaintiffs allege have impacted them.  Additionally, searching for information about entities with which FBI has no direct relationship would be burdensome or impossible, and disproportionate to the needs of the case.

To the extent Plaintiffs seek information about uses by non-FBI entities, FBI is neither knowledgeable nor authoritative, and cannot speak on behalf of other agencies.

.   Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).   Such information could include, for example, a full description of all uses of TSDB information, such as the details described in the definitions and instructions, sensitive technical information and/or the investigative uses of TSDB data.  Generally, the identities of foreign partners who receive information from TSC are protected by the law enforcement privilege, and in some instances the state secrets privilege, except as otherwise officially acknowledged. Specific confidential communications with foreign liaisons are privileged as well.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any. Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, the FBI responds that FBI personnel use TSDB data in furtherance of national security and criminal investigations, consistent with applicable law and FBI policies.

*Int. 8. Identify the categories and/or criteria by which the TSDB is searchable.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process.   The phrase "categories and/or criteria" is not defined and could be

16

interpreted to mean the engines that are used to search the TSDB, the persons or agencies authorized to conduct such searches, the data fields available in the TSDB, the data fields in the basic search engine, all of the Boolean or text searches which could be conducted, or any number of other possibilities.  It is moreover framed in the passive voice, making it unclear whether it is seeking information about FBI or other entities as well.  FBI cannot respond on behalf of other entities.

To the extent this interrogatory is intended to encompass TSC as well, it is apparently duplicative with interrogatories directed to TSC, and Plaintiffs are directed to those responses.

Defendants object to the request as overbroad and seeking information not relevant to any claim or defense in this case and disproportionate to the needs of the case.  The technical construction of the TSDB, such as how it is searchable, is not relevant to Plaintiffs' claims. Additionally, searching for information about actions taken by other agencies or entities, including entities with which FBI has no direct relationship, would be burdensome or impossible, and disproportionate to the needs of the case.  Additionally, the interrogatory is misdirected, because FBI is not responsible for actions taken by other agencies and cannot address their capabilities.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  A comprehensive answer to the broadest interpretation could theoretically require, for example, a full description of all identifiers that could be maintained in the TSDB, law enforcement handling codes, and technical information about how data is maintained and could be searched.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, the FBI refers plaintiffs to the Responses to Interrogatory Numbers 9 and 24 in the Plaintiffs' First Set of Interrogatories to TSC.

*Int. 9. Identify the number of agents of the FBI who can nominate a person to the TSDB, Selectee List, or No Fly List.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The phrase "agents of the FBI" and "can nominate" are not defined and are subject to multiple interpretations. For example, the request could be limited to employees holding the job title of "Special Agent" or could be broader, to include anyone acting as an agent of the FBI, as principal, such as contractors and task force personnel. It could be seeking anyone with the technical capability and authority or only the number of people who actually would ordinarily have occasion to do so. The broader readings are unduly burdensome and disproportionate to the needs of the case.

The requested data does not provide any insight into the TSDB that is useful in evaluating the procedural due process claim. The number of people working on a particular phase of watchlisting at FBI is not remotely relevant to evaluating the due process available to individuals who believe they are in the TSDB.

18

Defendants also object to the timeframe of the request as irrelevant and burdensome and disproportionate to the needs of the case. Plaintiffs seek forward-looking, injunctive relief. While their own past experiences are relevant to the deprivation of a liberty interest, the evaluation of the placement and redress process ten years ago is not remotely relevant to their claims.

Defendants further object to the relevance of the No Fly List and the Selectee List. None of the Plaintiffs currently believes that they are on the No Fly List. The Selectee List is not relevant to Plaintiffs' property or liberty interests. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, any FBI personnel assigned to participate in an FBI national security investigation may submit a request to TSC that an individual be added to the TSDB, Selectee List or No Fly List. Typically this function is performed by the FBI Case Agent for a particular investigation. Because the figure sought by this interrogatory is fluid and constantly subject to change due to personnel movements, the FBI is not able to identify a specific number in response to this interrogatory.

*Int. 10. Explain how the persons identified in Interrogatory 9 are trained to nominate a person to the TSDB, Selectee List, or No Fly List. Include the approximate number of hours agents are trained to submit such nominations.*

**Objections:** Defendants hereby incorporate their objections to Interrogatory 9. Defendants further object to this request as vague, burdensome, irrelevant and disproportionate to the

19

discovery needed for the sole remaining claim in the case concerning procedural due process. The phrase "are trained to nominate" is vague and subject to multiple interpretations. And the second sentence uses the phrase "are trained to submit such nominations" which suggests it might be seeking a subset of the training hours responsive to the first sentence. The interrogatory could seek only information about the actual technical process of making nominations or it could include any terrorism-related education and training. The framing in the passive voice introduces additional ambiguity about whether it is seeking training beyond that conducted by or on behalf of FBI. The interrogatory could be seeking a general summary of basic substantive training available to all such employees, or it could be seeking all details about such training, other training mandatory for all FBI employees, like HR training, or incidental or one-off trainings on specific issues that arise, or any number of other possibilities. The broadest interpretations would be both incredibly burdensome, irrelevant and disproportionate to the needs of the case. It bears little or no relationship to the procedural due process claim remaining in the case.

Defendants further object to the relevance of the No Fly List and the Selectee List. None of the Plaintiffs currently believes that they are on the No Fly List. The Selectee List is not relevant to Plaintiffs' property or liberty interests. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, the state secrets privilege, or SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). A comprehensive response to the broadest interpretation of the request could include, a detailed

20

description of the highly sensitive information on which agency employees are trained, including specific factual scenarios.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** Subject to and without waiving the foregoing objections, the FBI responds that formal guidance and training materials regarding the manner in which to request the addition of an individual to the TSDB and subsets of the TSDB, the Selectee List, or No Fly List, are available to all FBI personnel through TSC.  TSC also presents live training periodically to investigative and support personnel at FBI Headquarters and in the FBI's 56 Field Offices nationwide upon request.  In addition, FBI Agents new to this process receive on-the-job training and guidance from their Training Agents, from supervisory personnel, and from other experienced FBI employees. All Task Force Officers assigned to an FBI Joint Terrorism Task Force are required to complete a week-long course at the FBI Academy entitled "Joint Terrorism Task Force Operations," to familiarize them with the standard paperwork, policies, procedures, operations, case investigative techniques, and databases they will employ during the course of counterterrorism investigations, including those concerning watchlisting.  This course includes instruction provided by TSC regarding watchlisting policy and guidelines. The FBI does not require personnel to report hours spent receiving informal instruction from other FBI personnel or reviewing or receiving formal TSC guidance or training concerning watchlisting.

***Int. 11. Since January 1, 2010, identify the total number of nominations agents of the FBI have made to the TSDB, Selectee List, or No Fly List.***

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The interrogatory uses the term "nomination" vaguely, and to seek irrelevant data. Generally, TSC uses to the term "nomination" to refer to any proposed change to TSDB information, including for example: adding a new individual, upgrading or downgrading individuals already in the TSDB, adding additional identifiers, changing or correcting identifiers, and removals from the TSDB. This data is not relevant to their procedural due process claim. The term "agents" is also vague and subject to multiple interpretations.

Defendants further object to the relevance of the No Fly List and the Selectee List. None of the Plaintiffs currently believes that they are on the No Fly List. The Selectee List is not relevant to Plaintiffs' property or liberty interests. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Defendants also object to the timeframe of the request as irrelevant and burdensome and disproportionate to the needs of the case. Plaintiffs seek forward-looking, injunctive relief. While their own past experiences are relevant to the deprivation of a liberty interest, the evaluation of the placement process ten years ago is not remotely relevant to their claims.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** The FBI stands on its objections.

*Int. 12. Identify each entity that has access to the National Crime Information Center.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The terms "entity" and "access" are not defined and are subject to multiple interpretations. It could include ad hoc or intermittent or indirect access by entities or individuals with whom the FBI has no direct relationship. Searching for information about entities with which FBI has no direct relationship would be burdensome or impossible, and disproportionate to the needs of the case. The requested information is not relevant to Plaintiffs' procedural due process claims because they have not established or alleged any arguable nexus between the NCIC and the deprivation of a liberty interest in connection with the claims at issue in this case. The request goes beyond the uses of data that Plaintiffs allege have impacted them. To the extent Plaintiffs seek information about uses by non-FBI entities, FBI is neither knowledgeable nor authoritative, and cannot speak on behalf of other agencies.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**  Subject to and without waiving the foregoing objections, FBI responds: The FBI provides a host computer and telecommunication lines to a single point of contact in each of the 50 states, the District of Columbia, Puerto Rico, the U.S. Virgin Islands, Guam, and Canada, as well as federal criminal justice agencies, through which the National Criminal Information Center (NCIC) may be accessed. Those jurisdictions, in turn, operate their own computer systems, providing access to nearly all local criminal justice agencies and authorized non-criminal justice agencies nationwide.  Currently, there exist more than 18,000 city, university and college, county, state, tribal, and federal law enforcement agencies which are eligible to access NCIC.

*Int. 13. Identify all information the FBI possesses about handling codes assigned to persons on the TSDB, Selectee List, or No Fly List.*

**Objections:**   Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process.  The demand to "identify all information . . . about" a subject matter does not adequately identify the information sought.   The interrogatory could be seeking the handling codes themselves as well their meaning, or it could simply be seeking a definition of what "handling code" means in a particular context and what types of handling codes exist.  The phrase "handling codes assigned to persons on the TSDB" does not specify whether those codes are related to TSDB status or just codes that incidentally are assigned to some such persons. Compiling and defining different types of codes would be unduly burdensome and disproportionate to the needs of the case.

The requested information is not relevant to Plaintiffs' procedural due process claims. FBI's internal codes are not remotely relevant to the remaining claims.  To the extent Plaintiffs

seek information about non-FBI codes, FBI is neither knowledgeable nor authoritative, and cannot speak on behalf of other agencies.

Defendants further object to the relevance of the No Fly List and the Selectee List. None of the Plaintiffs currently believes that they are on the No Fly List. The Selectee List is not relevant to Plaintiffs' property or liberty interests. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). FBI's internal handling codes, as well as other agencies' codes, are of no arguable relevance to the litigation but do tend to reveal law enforcement privileged or even classified information and could be used to deduce additional sensitive information.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:** The FBI stands on its objections.

*Int. 14. Since January 1, 2010, identify the total number of nominations agents of the FBI have made to the TSDB, Selectee List, or No Fly List that TSC has rejected.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning

procedural due process. The interrogatory uses the term "nomination" vaguely, and to seek irrelevant data. Generally, TSC uses to the term "nomination" to refer to any proposed change to TSDB information, including for example: adding a new individual, upgrading or downgrading individuals already in the TSDB, adding additional identifiers, changing or correcting identifiers, and removals from the TSDB. This data is not remotely relevant to their procedural due process claim. The term "agents" is also vague and subject to multiple interpretations.

Defendants further object to the relevance of the No Fly List and the Selectee List. None of the Plaintiffs currently believes that they are on the No Fly List. The Selectee List is not relevant to Plaintiffs' property or liberty interests. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Defendants also object to the timeframe of the request as irrelevant and burdensome and disproportionate to the needs of the case. Plaintiffs seek forward-looking, injunctive relief. While their own past experiences are relevant to the deprivation of a liberty interest, the evaluation of the placement process ten years ago is not remotely relevant to their claims.

Defendants object to the interrogatory to the extent it seeks information that is subject to the law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**   Subject to and without waiving the foregoing objections, the FBI stands on its objections and further avers that determining whether a response could be calculated and actually endeavoring to calculate, if possible, would both be unreasonably burdensome.

***Int. 15. Identify the number of FBI nomination to the TSDB, Selectee List, or No Fly List that the FBI has determined were submitted to TSC against FBI policy or practices. For each incident identified, explain what policy or practice was violated.***

**Objections:**   Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the needs of the case.  The interrogatory uses the term "nomination" vaguely, and to seek irrelevant data.  Generally, TSC uses to the term "nomination" to refer to any proposed change to TSDB information, including for example: adding a new individual, upgrading or downgrading individuals already in the TSDB, adding additional identifiers, changing or correcting identifiers, and removals from the TSDB.  This data is not remotely relevant to their procedural due process claim.

Defendants further object to the phrase "against FBI policy or practices" which could include any nomination containing clerical errors or any nomination which ultimately was determined not to meet the standards for inclusion in the TSDB, or could refer only to more serious violations of FBI norms and rules, or any of a number of other possibilities.  The information sought, particularly for the broadest interpretation, would be incredibly burdensome and disproportionate to the needs of the case.

Defendants further object to the relevance of the No Fly List and the Selectee List. None of the Plaintiffs currently believes that they are on the No Fly List. The Selectee List is not relevant

27

to Plaintiffs' property or liberty interests. Any analysis of these particular lists, therefore, is unduly burdensome and disproportionate to the needs of the case.

Defendants also object to the timeframe of the request as irrelevant and burdensome and disproportionate to the needs of the case. Plaintiffs seek forward-looking, injunctive relief. While their own past experiences are relevant to the deprivation of a liberty interest, the evaluation of the placement process ten years ago is not relevant to their sole remaining claim.

Defendants object to the interrogatory to the extent it seeks information that is subject to the state secrets privilege, law enforcement and investigatory files privilege, and SSI (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). For example, if such information exists, a description of how the "policy or practice" was violated in a particular instance could theoretically require revealing sensitive underlying information about the particular nomination, including classified information, sensitive personnel information subject to the Privacy Act, or other privileged or protected information.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**     Subject to and without waiving the forgoing objections, the FBI responds that the number is zero.


For the Objections:                          Respectfully submitted,

                                             CHAD READLER
Dated: February 22, 2018                     Acting Asst. Attorney General, Civil Division


28

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

/s/   Amy E. Powell
AMY POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was sent via electronic mail to

Counsel of Record in this case.

*/s/    Amy E. Powell*
AMY POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

February 22, 2018

For the Responses:

I declare under penalty of perjury that the foregoing responses to the Interrogatories directed to

the FBI are true and correct to the best of my information and belief.

Matthew DeSarno
Deputy Assistant Director
Federal Bureau of Investigation
Washington, DC

February 22, 2018

# Exhibit D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **ANAS ELHADY,** *et al.*, | ) | |
| | ) | **Case No. 16-cv-00375** |
| Plaintiffs, | ) | **Hon. Anthony J. Trenga** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHARLES H. KABLE,** Director of the | ) | |
| Terrorist Screening Center; in his official | ) | |
| capacity, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants Charles H. Kable, Director of the Terrorist Screening Center ("TSC"); Kelli Ann Burriesci, Principal Deputy Director of TSC; Timothy P. Groh, Deputy Director for Operations at TSC; Deborah Moore, Director of Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP"); Russell Travers, Director of the National Counterterrorism Center ("NCTC"); David Pekoske, Administrator of the Transportation Security Administration ("TSA"); Christopher Wray, Director of the Federal Bureau of Investigation ("FBI"); and Kevin K. McAleenan, Acting Commissioner of U.S. Customs and Border Protection ("CBP"); hereby submit objections and responses to the discovery requests titled, "Plaintiffs' Fourth Requests for Production of Documents to Defendant Deborah Moore," served January 24, 2018. Defendants will refer to these hereafter as the Fifth Request for Production of Documents.[1]  The Defendants' responses are provided in accordance

---

[1] Plaintiffs have previously served RFPs on September 26, 2017 (to TSC only) and October 6, 2017 (to TSC and FBI only), November 29, 2017 (to all Defendants), and January 19, 2018 (to

with Federal Rule 26(b)(1), which permits the discovery of any information, not privileged, that is both (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case.  The Defendants do not, by providing such information, waive any objection to its admissibility on the grounds of relevance, proportionality, accessibility, materiality, or other appropriate ground. The inadvertent production by the Defendants of information or documents protected by any privilege or protection shall not constitute a waiver of the applicable privilege or protection as to any information or documents disclosed. The Defendants reserve the right to supplement or amend their responses should additional or different information become available.

## OBJECTIONS AS TO DEFINITIONS AND INSTRUCTIONS

1.     Defendants object to the Plaintiffs' Definition of the term "communications" which includes non-documentary material, such as "conversations" and "telephone calls" not subject to production under Federal Rule 34.

2.     Defendants object to the Plaintiffs' Definition 8 (of "you" and "your" and "Defendant") to the extent that such definitions purport to apply to the Defendant individually.  In responding to the Requests for Production, Defendant responds in each and every response on behalf of their respective agencies, based upon information in the agency's possession, custody, or control.

2.     Defendants object to other definitions (including, but not limited to, Definitions 4, 5, and 6) because they define terms not actually used in this set of requests for production. Defendants reserve all objections to such definitions if they are used in future discovery requests.

---

DHS TRIP).  Accordingly, this is the fifth set of requests for production of documents and the third one directed to DHS TRIP.

3.      Defendants object to Instructions 1 and 6 insofar as they apply to privileged communications between counsel, or between parties and their counsel, to the extent they conflict with the Parties' Joint Discovery Plan, as approved by the court, which specifically provides that: "If any discovery request is susceptible of a construction that calls for the production of such documents, those documents need not be produced or identified on any privilege log." They also conflict with the Federal Rules of Civil Procedure and ordinary practice by supposing that privilege is waived if not asserted on such a log and by requiring identification of privileged documents beyond what is ordinarily required on a privilege log. With respect to each and every request, Defendants respond consistently with the Discovery Plan and the Federal Rules.

4.      Defendants object to Instruction 2 and 4 to the extent they impose obligations in excess of those imposed by the Federal Rules, which do not require production of redacted documents for any and all requests and do not require a particular form of a privilege log. Privileged or protected information is not always readily segregable and the placement or number of redactions may themselves reveal privileged or protected information. The redaction process may also be burdensome and disproportionate to the needs of the case. As set forth in the discovery plan, Defendants reserve the right NOT to produce a specific privilege log when such a log would itself reveal privileged or protected information.

5.      Defendants object to Instruction 5 to the extent it imposes obligations in excess of those imposed by the Federal Rules, which do not require identification of documents that no longer exist. Such an exercise is likely impossible, but in any event burdensome, disproportionate and not required by the Federal Rules. Defendants will comply with the Federal Rules.

3

## <u>OBJECTIONS</u>

***RFP 1: Any and all documents DHS TRIP utilize [sic] as templates for processing DHS TRIP complaints.***

**<u>Objections:</u>** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process.  The request does not define the phrase "utilize as templates for processing" and it could refer only to drafts of final correspondence to send to travelers related to ongoing processing, or it could include templates of final determination correspondence, internal memoranda, blank forms or checklists used solely internally, or any of a number of other possibilities.  The request on its face seeks records wholly unrelated to the TSDB or the redress process available for people who believe they have encountered enhanced screening or inspection. Processing all templates currently used by DHS TRIP would be burdensome and disproportionate to the needs of the case.  Plaintiffs have sought (and will receive) the DHS TRIP correspondence they actually received in response to their own inquiries.  There is no possible utility or relevance to the litigation in providing the template correspondence, or correspondence sent to people not in the case or with very different allegations.

Defendants further object to the request as potentially duplicative with RFPs 2, 3, 5, and 6, depending on how the vague terms are interpreted.

Defendants further object to this request because the requested material tends to reveal predecisional and deliberative material, which is subject to the deliberative process privilege and not relevant to any claim or defense of any party.  The request on its face seeks draft documents reflecting predecisional information.  As such, the request is overbroad and imposes an undue

4

burden and expense upon the Defendants.  Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants object to the request for templates that would tend to reveal information subject to the law enforcement and investigatory files privilege, attorney-client communications, attorney work product, and Sensitive Security Information ("SSI") (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  Privileged or protected information that cannot be produced from such records includes, but is not limited to, any information that could reveal or indicate status in the TSDB, including information which, together with information already in the public sphere, tends to reveal such information.  It also includes, but is not limited to, information would tend to reveal deviations from standard templates for discernable reasons.  Defendants also object to the extent this seeks information subject to the state secrets privilege, such as classified threat assessment documents.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**      Defendants stand on their objections.

***RFP 2: All templates DHS utilizes to prepare a package of information about a DHS TRIP case for a government entity that needs to review the case.***

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The request does not define the term "template" or the phrase "utilizes to prepare a package of information about a DHS TRIP case" or "a government entity that needs to review the case." It could refer only to referral templates, or it could include draft correspondence or communications, internal memoranda, blank forms or checklists used solely internally, or any of a number of other possibilities. The phrase "government entity" could only external agencies that receive referrals as part of the DHS TRIP process, or it include subcomponents of DHS TRIP, TSA counsel, or any of a number of other possibilities. The request may or may not include templates used by other agencies other than DHS TRIP as well.

The request on its face seeks records wholly unrelated to the TSDB or the redress process available for people who believe they have encountered enhanced screening or inspection. Plaintiffs have sought (and will receive) the DHS TRIP correspondence they actually received in response to their own inquiries. There is no possible utility or relevance to the litigation in providing the templates used solely internally within the government, particularly when those templates are unrelated to the TSDB or any other allegation in the case.

Defendants further object to the request as potentially duplicative with RFPs 1, 3, 5, and 6, depending on how the vague terms are interpreted.

Defendants further object to this request because the requested material tends to reveal predecisional and deliberative material, which is protected by the deliberative process privilege and not relevant to any claim or defense of any party, and not relevant to the subject matter of the

action.  On its face, this request seeks a draft of documents about inter-agency deliberations made prior to reaching a decision.  As such, the request is overbroad and imposes an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce these privileged documents reflecting draft or predecisional positions.

Defendants object to the request for templates that would tend to reveal information subject to the law enforcement and investigatory files privilege, attorney-client communications, attorney work product, and Sensitive Security Information ("SSI") (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  Privileged or protected information that cannot be produced from such records includes, any information that could reveal or indicate status in the TSDB, including information which, together with information already in the public sphere, tends to reveal such information.  It also includes, but is not limited to, information that would tend to reveal deviations from standard templates for discernable reasons. Defendants also object to the extent this seeks information subject to the state secrets privilege, such as classified threat assessment documents.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.


**Response:**      Defendants stand on their objections.

***RFP 3: All presentation templates DHS TRIP utilizes to present information regarding a DHS TRIP complaint during meetings with agencies DHS TRIP consults with.***

**<u>Objections:</u>**  Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process.  The request does not define the term "presentation templates" or the phrase "utilizes to present information" or "consults with."  It could refer only to actual blank presentation templates, like those available through Powerpoint, or it could include draft presentations, internal memoranda, blank forms or checklists used solely internally, or any of a number of other possibilities.  The "agencies DHS TRIP consults with" could encompass only external agencies that receive referrals as part of the DHS TRIP process, or it could include subcomponents of DHS TRIP, TSA counsel, or any of a number of other possibilities.

The request on its face seeks records wholly unrelated to the TSDB or the redress process available for people who believe they have encountered enhanced screening or inspection. Processing all templates currently used by DHS TRIP in communicating with other agencies would be burdensome and disproportionate to the needs of the case.  Plaintiffs have sought (and will receive) the DHS TRIP correspondence they actually received in response to their own inquiries. There is no possible utility or relevance to the litigation in providing the templates used solely internally within the government, particularly when those templates are unrelated to the TSDB or any other allegation in the case.

Defendants further object to the request as potentially duplicative with RFPs 1, 2, 5, and 6, depending on how the vague terms are interpreted.

Defendants further object to this request because the requested material tends to reveal predecisional and deliberative material protected by the deliberative process privilege.  On its face,

this request seeks a draft of documents about inter-agency deliberations made prior to reaching a decision.  Such materials are not relevant to any claim or defense of any party, and not relevant to the subject matter of the action.  As such, the request is overbroad and imposes an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce privileged documents reflecting draft or predecisional positions.

Defendants object to the request for templates that would tend to reveal information subject to the law enforcement and investigatory files privilege, attorney client communications, attorney work product, and Sensitive Security Information ("SSI") (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  Privileged or protected information that cannot be produced from such records includes, any information that could reveal or indicate status in the TSDB, including information which, together with information already in the public sphere, tends to reveal such information.  It also includes, but is not limited to, information that would tend to reveal deviations from standard templates for discernable reasons. Defendants also object to the extent this seeks information subject to the state secrets privilege, such as classified threat assessment documents.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**     Defendants stand on their objections.

**RFP 4:** *All monthly reports Deborah Moore has received.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The request does not define "monthly reports" or "received". Accordingly, the request could be limited to the error reports discussed at the deposition or it could include reports on topics like website usage, surveys, or any other random report that happens to come in on a monthly basis, regardless of whether it is directed to and created for Deborah Moore in her capacity as Director of DHS TRIP. Defendants further object to the timeframe of the request, particularly because it includes any reports currently possessed, regardless of whether or not the reports were created five years ago, ten years ago, or in some other timeframe.

The request on its face seeks records wholly unrelated to the TSDB or the redress process available for people who believe they have encountered enhanced screening or inspection. Processing all "monthly reports" ever received by Deborah Moore would be burdensome and disproportionate to the needs of the case. Defendants will not search for or produce any monthly reports not directed to and created for Deborah Moore in her capacity as Director of DHS TRIP.

Defendants further object to this request because the requested material tends to reveal predecisional and deliberative material protected by the deliberative process privilege. Such materials are not relevant to any claim or defense of any party, and not relevant to the subject matter of the action. As such, the request is overbroad and imposes an undue burden and expense upon the Defendants. Defendants will neither search for nor produce privileged documents reflecting draft or predecisional deliberations. Defendants object to the request to the extent it seeks information subject to the law enforcement and investigatory files privilege, attorney client communications, attorney work product, and Sensitive Security Information ("SSI") (including

10

SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**      Subject to and without waiving the foregoing objections, DHS TRIP has conducted a reasonable search for monthly error reports and website survey reports responsive to this request, and is producing them in redacted form, consistent with the above objections.  *See attached* Elhady-DHSTRIP-000910-001818.  Otherwise, Defendants stand on their objections.


***RFP 5: All templates DHS utilizes to create memos for the TSA administrator regarding a DHS TRIP complaint submitted by US persons on the No Fly List.***

**Objections:**   Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The request does not define the term "template" or the phrase "utilizes to create memos."  It could refer only to templates regarding the final determination regarding No Fly List inquiries, or it could include draft correspondence or communications, internal memoranda, blank forms or checklists used solely internally, or any of a number of other possibilities.  Further, the request is not limited to templates DHS TRIP utilizes and applies broadly to DHS.

The request on its face seeks records wholly unrelated to the TSDB or the redress process available for people who believe they have encountered enhanced screening or inspection.

11

Plaintiffs have sought (and will receive) the DHS TRIP correspondence they actually received in response to their own inquiries.  There is no possible utility or relevance to the litigation in providing the templates used solely internally within the government for a different type of complaint, particularly when those templates are unrelated to any allegation in the case.

Defendants further object to the request as potentially duplicative with RFPs 1, 2, 3, and 6, depending on how the vague terms are interpreted.

Defendants further object to this request because the requested material tends to reveal predecisional and deliberative material, which is not relevant to any claim or defense of any party, and protected by the deliberative process privilege.  On its face, Plaintiffs are seeking a draft of a document that would itself be predecisional and deliberative.  As such, the request is also overbroad and imposes an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce these privileged documents reflecting draft or predecisional positions.

Defendants object to the request for templates that would tend to reveal information subject to the law enforcement and investigatory files privilege, attorney client communications, attorney work product, and Sensitive Security Information ("SSI") (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  Privileged or protected information that cannot be produced from such records includes, any information that could reveal or indicate status in the TSDB, including information which, together with information already in the public sphere, tends to reveal such information.  It also includes, but is not limited to, information that would tend to reveal deviations from standard templates for discernable reasons.

Defendants also object to the extent this seeks information subject to the state secrets privilege, such as classified threat assessment documents.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**    Defendants stand on their objections.

*RFP 6: All templates Deborah Moore referenced during her deposition.*

**Objections:** Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The request does not define the term "templates" and it could refer only to drafts of final correspondence to send to travelers related to ongoing processing, or it could include templates of final determination correspondence, internal memoranda, blank forms or checklists used solely internally, or any of a number of other possibilities.  And because questions asked at the deposition were frequently vague or confusing, Defendants hereby incorporate objections made at the deposition as well.  The request conceivably seeks hundreds of documents, most of which are wholly unrelated to the TSDB or the redress process available for people who believe they have encountered enhanced screening or inspection.   Processing all templates currently used by DHS TRIP documents would be burdensome and disproportionate to the needs of the case.  Plaintiffs have sought (and will receive) the DHS TRIP letters they actually received in response to their own inquiries.  There is no possible utility or relevance to the litigation in

providing the template correspondence, or correspondence sent to people not in the case or with very different allegations.

Defendants further object to the request as potentially duplicative with RFPs 1, 2, 3, and 5, depending on how the vague terms in each are interpreted.

Defendants further object to this request because the requested material tends to reveal predecisional and deliberative material, which is subject to the deliberative process privilege and not relevant to any claim or defense of any party. The request on its face seeks draft documents reflecting predecisional information. As such, the request is overbroad and imposes an undue burden and expense upon the Defendants. Defendants will neither search for nor produce documents reflecting draft or predecisional positions.

Defendants object to the request for templates that would tend to reveal information subject to the law enforcement and investigatory files privilege, attorney-client communications, attorney work product, and Sensitive Security Information ("SSI") (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted). Privileged or protected information that cannot be produced from such records includes, any information that could reveal or indicate status in the TSDB, including information which, together with information already in the public sphere, tends to reveal such information. It also includes, but is not limited to, information that would tend to reveal deviations from standard templates for discernable reasons. Defendants also object to the extent this seeks information subject to the state secrets privilege, such as classified threat assessment documents.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally.

Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**      Defendants stand on their objections.

*RFP 7: All documents regarding any attempt DHS TRIP has made to schedule meetings with the TSA administrator regarding DHS TRIP complaints submitted by US persons on the No Fly List.*

**Objections:**   Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The request does not define the term "attempt to schedule meetings" or the phrase "regarding DHS TRIP complaints submitted by U.S persons on the No Fly List."   It could refer only to Outlook meeting requests that specifically reference final determinations for DHS TRIP complaints submitted by US persons on the No Fly List or it could include informal communications tangentially related or possibly including No Fly List inquiries, or it could include draft letters or communications, internal memoranda, or any of a number of other possibilities.  A complete search for such records would be likely burdensome or impossible, because meeting requests may or may not be in writing and may or may not reference specific subject matters. Defendants further object to the timeframe of the request, which is untethered to plaintiffs' claims for relief or allegations.

The request on its face seeks records wholly unrelated to the TSDB or the redress process available for people who believe they have encountered enhanced screening or inspection.

Plaintiffs have sought (and will receive) the DHS TRIP letters they actually received in response to their own inquiries.  There is no possible utility or relevance to the litigation in providing details of meetings within the government for a different type of complaint, particularly when those meetings are unrelated to any allegation in the case.

Defendants further object to this request because the requested material tends to reveal predecisional and deliberative material, which is not relevant to any claim or defense of any party, and protected by the deliberative process privilege.  On its face, Plaintiffs are seeking information about internal agency processes.  As such, the request is also overbroad and imposes an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce these privileged documents reflecting draft or predecisional positions or processes.

Defendants object to the request for templates that would tend to reveal information subject to the law enforcement and investigatory files privilege, attorney client communications, attorney work product and Sensitive Security Information ("SSI") (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).  Privileged or protected information that cannot be produced from such records includes, any information that could reveal or indicate status in the TSDB, communications with counsel, or Privacy-Act protected information.

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally.  Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**      Defendants stand on their objections.

***RFP 8: All documents regarding any statistical reports DHS TRIP has produced, received, or possesses since 2013.***

**<u>Objections:</u>**  Defendants object to the request as vague, burdensome, irrelevant and disproportionate to the discovery needed for the sole remaining claim in the case concerning procedural due process. The request does not define "statistical reports" or "produced, received, or possesses".  Accordingly, the request could be limited to the error reports discussed at the deposition or it could include topics like reports on topics website usage, surveys,  or any other random report that happens to be in the possession of DHS TRIP personnel and includes a number, regardless of whether it is created by or for DHS TRIP.

The request on its face seeks records wholly unrelated to the TSDB or the redress process available for people who believe they have encountered enhanced screening or inspection. Processing all "statistical reports" possessed with in the last (5) years would be burdensome and disproportionate to the needs of the case.  Defendants further object to the timeframe of the request, particularly because it includes any reports currently possessed, regardless of whether or not the reports were created five years ago, ten years ago, or in some other timeframe.

Defendants further object to this request because the requested material tends to reveal predecisional and deliberative material protected by the deliberative process privilege.  Such materials are not relevant to any claim or defense of any party, and not relevant to the subject matter of the action.  As such, the request is overbroad and imposes an undue burden and expense upon the Defendants.  Defendants will neither search for nor produce privileged documents reflecting draft or predecisional deliberations. Defendants object to the request to the extent it seeks

17

information subject to the law enforcement and investigatory files privilege, attorney client communications, attorney work product, and Sensitive Security Information ("SSI") (including SSI that is not appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Public Law No. 109-295, 120 Stat. 1355, as reenacted).

Nothing contained in the responses shall be construed as a waiver of any applicable objection or privilege as to any Request or as a waiver of any objection or privilege generally. Inadvertent disclosure of information subject to a claim of privilege shall not be deemed a waiver of such privilege.

**Response:**     Subject to and without waiving the foregoing objections, Defendant refers Plaintiffs to the response to RFP 4, above.  Otherwise, Defendants stand on their objections.

Dated: February 23, 2018                              Respectfully submitted,

CHAD A. READLER
Acting Asst. Attorney General, Civil Division

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/     Amy E. Powell*
AMY POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was sent via electronic mail to

Counsel of Record in this case.

*/s/___Amy E. Powell_____*
AMY POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

February 23, 2018

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

_____
                                                    )
**Anas ELHADY, et al.,**                             )
                                                    )
    **Plaintiffs,**                  )
                                                    )
**v.**                                               )    **Case No. 1:16-cv-375 (AJT/JFA)**
                                                    )
**Charles H. Kable, et al.,**                        )
                                                    )
    **Defendants.**                  )
_____)

## DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS TO OFFICIAL CAPACITY TSC DEFENDANTS

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 26 and 36, Defendants Charles H. Kable, Director of the Terrorist Screening Center ("TSC"); Kelli Ann Burriesci, Principal Deputy Director of TSC; and Timothy P. Groh, Deputy Director for Operations at TSC (collectively, the "TSC Defendants"), hereby submit initial objections to the discovery requests titled "Plaintiffs' First Requests for Admission to Defendant Mabeus," "Plaintiffs' First Requests for Admission to Defendant Grigg," and "Plaintiffs' First Requests for Admission to Defendant Piehota," all served September 11, 2017. All of these Defendants were sued in their official capacities; accordingly, pursuant to Fed. R. Civ. P. 25(d), the current officeholders are automatically substituted. Because the TSC Defendants all work for the same agency, they respond collectively here on behalf of TSC.

The Defendants' responses are provided in accordance with Federal Rule 26(b)(1), which permits the discovery of any information, not privileged, that is both (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case. The Defendants do not, by

providing such information, waive any objection to its admissibility on the grounds of relevance, proportionality, accessibility, materiality, or other appropriate ground. The inadvertent production by the Defendants of information or documents protected by any privilege or protection shall not constitute a waiver of the applicable privilege or protection as to any information or documents disclosed. The Defendants reserve the right to supplement or amend their responses should additional or different information become available.

### **OBJECTIONS AS TO ALL RFAS**

1. TSC Defendants object to these Requests for Admission ("RFAs") as duplicative. There is no basis or reason for sending separate, nearly identical[1] discovery requests to multiple official capacity defendants within the same agency component. Accordingly, the TSC Defendants are not responding individually, but collectively, in their official capacities.

2. TSC Defendants object to Plaintiff's Requests for Admission to the extent, as set forth in response to specific requests below, they are improper attempts to use requests for admission as discovery devices.  *See, e.g., Wigler v. Elec. Data Sys. Corp.*, 108 F.R.D. 204, 206 (D. Md. 1985) ("Rule 36 is not a discovery tool in the truest sense, but, rather, is a procedure for obtaining admissions for the record of facts already known."); *Erie Ins. Prop. & Cas. Co. v. Johnson*, 272 F.R.D. 177, 184 (S.D.W. Va. 2010) ("requests for admission are intended to narrow the scope of issues for trial, not to lead to the discovery of admissible evidence."); *see also*

---

[1] There is at least one RFA that is not directed at all TSC Defendants, and others are ordered slightly differently with respect to different Defendants. That will throw off the numbering with respect to some of the requests, as described in the footnotes below.  Moreover, Plaintiffs forwarded the RFAs in Word and PDF, and there are minor differences between the Word and PDF versions; where they differ, Defendants assume that the pdf versions are the final.

*Workman v. Chinchinian*, 807 F. Supp. 634, 646-47 (E.D. Wash. 1992); *U.S. S.E.C. v. Nutmeg Group, LLC*, 285 F.R.D. 403 (N.D. Ill. 2012).

3.   TSC Defendants object to the Plaintiffs' Definition 1 (of "you" and "your" "Official-Capacity Defendants" and "Defendant") to the extent that such definitions purport to apply to the TSC Defendants individually.  In responding to the Requests for Admission, the TSC Defendants respond in each and every response as the TSC, based upon information in the agency's possession, custody, or control.

4.   TSC Defendants object to the Plaintiffs' Definition 7 (of "TSDB" "Terrorism Screening Database" or "watch list") as vague to the point of meaningless.  The actual database at issue is known as the "Terrorist Screening Database", or "TSDB", but Plaintiffs define it using a colloquial term without legal definition, "the terrorism watch list," without giving the terms further content or definition.   Defendants will assume those terms refer to the Terrorist Screening Database and will respond as such with respect to each and every RFA that uses these terms.

5.   TSC Defendants object to other definitions (including, but not limited to, Definitions 6, 9, 10, 11, 12, 13, 14) because they define terms not actually used in this set of requests for admission.  Defendants reserve all objections to such definitions if they are used in future discovery requests.

*RFA 1 – Admit that you develop and/or maintain the federal government's consolidated Terrorism Screening Database.*

**Objections:** Defendants object to the terms "develop and/or maintain" as vague and ambiguous, as it could refer to purely technical responsibilities or suggest substantive decision-making or any of several other possible interpretations.

**Response**: Admit to the extent that the TSC is the U.S. Government's consolidated counterterrorism watchlisting component responsible for the management of the TSDB.  The TSC is responsible for maintaining and operating the TSDB. Otherwise, deny.


*RFA 2: Admit that you accept the nominations of individuals to the [TSDB]*

**Objections:** Defendants object to the terms "accept" and "nominations of individuals" as undefined and vague in this context.  It could imply, for example, that TSDB approves all proposed nominations to the TSDB, that all nominations involve unique individuals, that TSC Defendants review all nominations for sufficiency, or any of several other possible interpretations.

**Response**: Admit that the TSC receives and reviews TSDB nominations submitted by NCTC and the FBI.


*RFA 3: Admit that you oversee or permit the dissemination of information in the Terrorism Screening Database either directly or indirectly to state authorities.*

**Objections:** TSC Defendants object to the phrase "oversee or permit" as compound, vague and ambiguous.  TSC Defendants further object to the phrases "dissemination of information,"  "state authorities," and "indirectly" as vague and ambiguous.  In combination, these phrases could suggest that TSC chooses how and when information is shared with states, that all information is shared with all states, that some information is shared with some states or undefined "state

authorities," that TSC has a merely passive role in the dissemination of such information, that

TSC actively shares it, that TSC has the authority to prohibit such sharing, or any of several

other possible interpretations.  It is plain that Plaintiffs are not using a RFA appropriately to

obtain admission of facts already known, but using a RFA improperly as a discovery device.

TSC Defendants additionally object on grounds of relevance; none of the Plaintiffs claim that

they have been subject to action by state authorities based on watchlist status.  Moreover, TSC

Defendants object to this request to the extent it seeks privileged information regarding the FBI's

counterterrorism mission, including but not limited to information subject to the state secrets

privilege and the law enforcement privilege, such as sensitive information about how and when

and to what extent intelligence information is shared with other law enforcement authorities.

**Response**: Admit to the extent that the TSC exports a subset of TSDB information to the FBI's

National Crime Information Center (NCIC) for domestic law enforcement screening. Otherwise,

deny.


***RFA 4:         Admit that you oversee or permit the dissemination of information in the***

***Terrorism Screening Database either directly or indirectly to local authorities.***

**Objections:**  TSC Defendants object to the phrase "oversee or permit" as compound, vague and

ambiguous.  TSC Defendants further object to the phrases "dissemination of information," "local

authorities," and "indirectly" as vague and ambiguous.  In combination, these phrases could

suggest that TSC chooses how and when information is shared with local authorities, that all

information is shared with local authorities, that some information is shared with some undefined

"local authorities," that TSC has a merely passive role in the dissemination of such information,

that TSC actively shares it, that TSC has the authority to prohibit such sharing, or any of several

other possible interpretations.  It is plain that Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device. TSC Defendants additionally object on grounds of relevance because, although one of the 25 plaintiffs alleges that he was subjected to adverse action by a local police officer, he does not plausibly allege that such action was based on his alleged watchlist status.  Moreover, TSC Defendants object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission, including but not limited to information subject to the state secrets privilege and the law enforcement privilege, such as sensitive information about how and when and to what extent intelligence information is shared with other law enforcement authorities.

**Response**: Admit to the extent that the TSC exports a subset of TSDB information to the FBI's National Crime Information Center (NCIC) for domestic law enforcement screening. Otherwise, deny.


*RFA 5:*        *Admit that you oversee or permit the dissemination of information in the Terrorism Screening Database either directly or indirectly to foreign governments.*

**Objections:** TSC Defendants object to this request on grounds of relevance; none of the Plaintiffs allege that they have been subjected to any adverse action by any foreign government related to watchlist status.  TSC Defendants also object to the phrase "oversee or permit" as compound, vague and ambiguous.  TSC Defendants further object to the phrases "dissemination of information" and "indirectly" as vague and ambiguous.  In combination, these phrases could suggest that TSC chooses how and when information is shared with other governments, that all information is shared with all foreign governments through some automated process, that some information is shared with some foreign governments, that TSC has a merely passive role in the

dissemination of such information, that TSC actively shares it, that TSC has the authority to

prohibit such sharing, or any of several other possible interpretations.  It is plain that Plaintiffs

are not using a RFA appropriately to obtain admission of facts already known, but using a RFA

improperly as a discovery device.  Moreover, TSC Defendants object to this request to the extent

it seeks privileged information regarding the FBI's counterterrorism mission and U.S.

intelligence activities and diplomacy, including but not limited to information subject to the state

secrets privilege and the law enforcement privilege, and Sensitive Security Information such as

sensitive information about how and when and to what extent intelligence information is shared

with foreign governments.

 **Response**: TSC Defendants stand on their objections to this request and decline to admit or

deny.


***RFA 6:        Admit that you permit the dissemination of information in the Terrorism***

***Screening Database either directly or indirectly to the European Union.***[2]

**Objections:** Defendants object on grounds of relevance because none of the Plaintiffs allege that

they have been subject to any action by the EU.  TSC Defendants also object to the terms/phrases

"permit," "dissemination of information," and "indirectly" as vague and ambiguous.  In

combination, these phrases could suggest that TSC chooses how and when information is shared

with the EU, that all information is shared with all parts of the EU through some automated

process, that some information is shared with some parts of the EU, that TSC has a merely

passive role in the dissemination of such information, that TSC actively shares it, that TSC has

---

[2] This RFA was not included in the RFAs directed specifically to the TSC Director.  Accordingly, the numbers for the remaining RFAs differ with respect to Mr. Kable, but are in accord with those submitted to Ms. Burriesci and Mr. Groh.

the authority to prohibit such sharing, or any of several other possible interpretations.  It is plain

that Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but

using a RFA improperly as a discovery device.  Moreover, TSC Defendants object to this request

to the extent it seeks privileged information regarding the FBI's counterterrorism mission and

U.S. intelligence activities and diplomacy, including but not limited to information subject to the

state secrets privilege and the law enforcement privilege, and Sensitive Security Information

such as sensitive information about how and when and to what extent intelligence information is

shared with the EU.

**Response:**  TSC Defendants stand on their objections to this request and decline to admit or

deny.


***RFA 7:***      ***Admit that you oversee or permit the dissemination of information in the***

***Terrorism Screening Database either directly or indirectly to corporations, private entities***

***and/or individuals.*** [3]

**Objections:** TSC Defendants object to the phrase "oversee or permit" as compound, vague and

ambiguous.  TSC Defendants further object to the phrases "dissemination of information,"

"corporations, private entities and/or individuals," and "indirectly" as vague and ambiguous.  In

combination, these phrases could suggest that TSC chooses how and when information is shared

with anyone anywhere, that all information is shared with all private entities, that some

information is shared with some such entities, that TSC has a merely passive role in the

dissemination of such information, that TSC actively shares it, that TSC has the authority to

prohibit such sharing, or any of several other possible interpretations.  Moreover, the use of the

---

[3] This RFA is RFA 7 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is
RFA 6 with respect to the TSC Director.

word "individuals" potentially includes individuals acting in an official capacity.  It is plain that
Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but
using a RFA improperly as a discovery device.  Moreover, TSC Defendants object to this request
to the extent it seeks privileged information regarding the FBI's counterterrorism mission,
including but not limited to information subject to the law enforcement privilege, such as
sensitive information about how and when and to what extent intelligence information is shared
with other law enforcement authorities.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.


*RFA 8:*        *Admit that you oversee or permit the dissemination of information in the
Terrorism Screening Database either directly or indirectly to financial institutions.*[4]

**Objections:** TSC Defendants object to the phrase "oversee or permit" as compound, vague and
ambiguous.  TSC Defendants further object to the phrases "dissemination of information" and
"indirectly" as vague and ambiguous.  In combination, these phrases could suggest that TSC
chooses how and when information is shared with financial institutions, that all information is
shared with all financial institutions, that some information is shared with some such entities,
that TSC has a merely passive role in the dissemination of such information, that TSC actively
shares it, that TSC has the authority to prohibit such sharing, or any of several other possible
interpretations.   It is plain that Plaintiffs are not using a RFA appropriately to obtain admission
of facts already known, but using a RFA improperly as a discovery device.  Moreover, TSC
Defendants object to this request to the extent it seeks privileged information regarding the FBI's
counterterrorism mission, including but not limited to information subject to the law enforcement

---

[4] This RFA is RFA 8 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is
RFA 7 with respect to the TSC Director,

privilege, such as sensitive information about how and when and to what extent intelligence

information is shared.

**Response**: Deny.


*RFA 9:*           *Admit that you oversee or permit the dissemination of information in the*

*Terrorism Screening Database either directly or indirectly to private contractors.[5]*

**Objections:** TSC Defendants object to the phrase "oversee or permit" as compound, vague and

ambiguous.  TSC Defendants further object to the phrases "dissemination of information,"

"indirectly," and "private contractors" as vague and ambiguous.  In combination, these phrases

could suggest that TSC chooses how and when information is shared with private contractors for

governmental entities, that all information is shared with all such contractors at all such entities,

that some information is shared with some such contractors at some such entities, that TSC may

share information with "private contractors" unaffiliated with governmental entities, that TSC

has a merely passive role in the dissemination of such information, that TSC actively shares it,

that TSC has the authority to prohibit such sharing, or any of several other possible

interpretations.   It is plain that Plaintiffs are not using a RFA appropriately to obtain admission

of facts already known, but using a RFA improperly as a discovery device.  With no working

definition of "private contractors" this RFA is vague to the point of incomprehensibility.  TSC

Defendants additionally object on grounds of relevance; none of the Plaintiffs allege that they

have been or would be subject to any action by "private contractors."  Moreover, TSC

Defendants object to this request to the extent it seeks privileged information regarding the FBI's

counterterrorism mission, including but not limited to information subject to the law enforcement

---

[5] This RFA is RFA 9 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 8 with respect to the TSC Director.

privilege, such as sensitive information about how and when and to what extent intelligence

information is shared with law enforcement.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.


***RFA 10: Admit that you oversee or permit the dissemination of information in the Terrorism***

***Screening Database either directly or indirectly to airlines.[6]***

**Objections:**  TSC Defendants object to the phrase "oversee or permit" as compound, vague and

ambiguous.  TSC Defendants further object to the phrases "dissemination of information" and

"indirectly" as vague and ambiguous.  In combination, these phrases could suggest that TSC

chooses how and when information is shared with airlines, that all information is shared with all

airlines, that some information is shared with some such entities, that TSC has a merely passive

role in the dissemination of such information, that TSC actively shares it, that TSC has the

authority to prohibit such sharing, or any of several other possible interpretations.   It is plain that

Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but

using a RFA improperly as a discovery device.  Moreover, TSC Defendants object to this request

to the extent it seeks privileged information regarding the FBI's counterterrorism mission and

TSA's mission regarding the security of transportation, including but not limited to information

subject to the law enforcement privilege and Sensitive Security Information protected by statute,

such as sensitive information about how and when and to what extent TSDB information is

shared with airline employees.

**Response**: Admit to the extent that subsets of the TSDB are provided to TSA for aviation

security screening purposes. Otherwise, deny.

---

[6] This RFA is RFA 10 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is
RFA 9 with respect to the TSC Director.

***RFA 11:***      ***Admit that you oversee or permit the dissemination of information in the Terrorism Screening Database either directly or indirectly to sellers of firearms.***[7]

**Objections:** TSC Defendants object on grounds of relevance, as none of the Plaintiffs alleges that they have been denied access to firearms. TSC Defendants also object to the phrase "oversee or permit" as compound, vague and ambiguous. TSC Defendants further object to the phrases "dissemination of information" and "indirectly" as vague and ambiguous. In combination, these phrases could suggest that TSC chooses how and when information is shared with sellers of firearms, that all information is shared with all sellers, that some information is shared with some such entities, that TSC has a merely passive role in the dissemination of such information, that TSC actively shares it, that TSC has the authority to prohibit such sharing, that TSDB information could be used in state or federal background checks, or any of several other possible interpretations. It is plain that Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device. Moreover, TSC Defendants object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission, including but not limited to information subject to the law enforcement privilege and Sensitive Security Information protected by statute, such as sensitive information about how and when and to what extent TSDB information is shared with law enforcement.

**Response**: Deny.

---

[7] This RFA is RFA 11 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 10 with respect to the TSC Director.

***RFA 12: Admit that you accepted the nomination of individuals to the Terrorism Screening
Database that have not been charged or convicted with a terrorism-related offense.[8]***

**Objections:** Defendants object to the terms "accept" and "nominations of individuals" as
undefined and vague in this context.  It could imply, for example, that TSDB approves all such
proposed nominations to the TSDB or that all such nominations involve unique individuals or
that TSC Defendants review all nominations for sufficiency on a case-by-case basis, or any of
several other possible interpretations.  TSC Defendants further object to the phrase "terrorism-
related offense" as undefined and vague in this context.  Moreover, TSC Defendants object on
grounds of relevance; this information is not necessary to determine the adequacy of the redress
process available to individuals who believe they are on a watchlist due to screening experiences.
It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery
Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged
information regarding the FBI's counterterrorism mission, including but not limited to
information potentially subject to the state secrets privilege and the law enforcement privilege
and Sensitive Security Information protected by statute, such as sensitive information about
precisely how and under what circumstances individuals suspected of terrorism may be placed in
the TSDB.

**Response**: Deny insofar as inclusion in the TSDB is not a determination that someone has
committed a crime.  Rather, it is an assessment based on analysis of available information that
the person meets the applicable criteria for inclusion. Otherwise, TSC Defendants stand on their
objections to this request and decline to admit or deny.

---

[8] This RFA is RFA 12 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is
RFA 11 with respect to the TSC Director.

***RFA 13:  Admit that you accepted the nomination of individuals to the Terrorism Screening Database that are not the subject of a formal ongoing federal investigation pertaining to a terrorism-related offense.[9]***

**Objections:** Defendants object to the terms "accept" and "nominations of individuals" as undefined and vague in this context.  It could imply, for example, that TSDB approves all such proposed nominations to the TSDB or that all such nominations involve unique individuals or that TSC Defendants review all nominations for sufficiency on a case-by-case basis, or any of several other possible interpretations.  TSC Defendants further object to the phrases "terrorism-related offense" and "formal ongoing federal investigation" as undefined and vague in this context.  Additionally, TSC Defendants object on grounds of relevance; the precise standards for FBI counterterrorism investigations are not relevant to the adequacy of the process received by Plaintiffs with respect to their alleged watchlist status.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission, including but not limited to information potentially subject to the state secrets privilege and the law enforcement privilege and sensitive security information protected by statute, such as sensitive information about precisely how and under what circumstances individuals suspected of terrorism may be placed in the TSDB.  It is plain that Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

---

[9] This RFA is RFA 13 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 12 with respect to the TSC Director.

**RFA 14 -** *Admit that the United States disseminates or makes available in any manner the TSDB and/or its contents to foreign countries knowing that foreign countries may restrict the ability of TSDB listees to enter foreign countries that receive the TSDB.*[10]

**Objections:** TSC Defendants object on grounds of relevance; none of the Plaintiffs allege that they have been or would be subject to any action by foreign governments.  Defendants also object to the terms "disseminate or makes available in any manner" and "TSDB and/or its contents" and "knowing that foreign countries may" as undefined and vague in this context.  In combination, these phrases could suggest that all information is shared with all foreign countries, that some information is shared with some such entities, that TSC knows the TSDB information may be used by the foreign countries, that TSC merely knows that foreign countries may restrict entry of any foreigner, or any of several other possible interpretations.  It is plain that Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object to this request to the extent it seeks information about other U.S. Government activities – information not within the custody or control of TSC Defendants.  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission, including but not limited to information subject to the state secrets privilege and the law enforcement privilege, such as sensitive information about precisely how and under what circumstances intelligence information may be shared with foreign law enforcement or other authorities and precisely the nature of certain confidential communications with foreign governments.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

---

[10] This RFA is RFA 14 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 13 with respect to the TSC Director.

***RFA 15 -***        ***Admit that the United States knows that foreign governments have utilized the TSDB to make decisions regarding whether to allow entry to listees and/or to grant listees visas.[11]***

**Objections:**  TSC Defendants object on grounds of relevance; none of the Plaintiffs allege that they have been or would be subject to any such action by foreign governments or even that they have ever been denied a foreign visa for any reason.  TSC Defendants also object to the phrase "utilized the TSDB to make decisions" as vague and ambiguous.  It could suggest that some or all foreign governments rely on U.S. intelligence assessments in this situation, or that they are permitted to consider such information by agreement, or that TSC is simply aware that they could in theory use such information for leads, investigation, or other foreign processes, or any of several other possible interpretations. It is plain that Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object to this request to the extent it seeks information about other U.S. Government activities – information not within the custody or control of TSC Defendants.  TSC Defendants object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission, including but not limited to information potentially subject to the state secrets privilege and the law enforcement privilege, such as sensitive information about precisely how and under what circumstances intelligence information may be shared with foreign law enforcement or other authorities and precisely the nature of certain confidential communications with foreign governments.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

---

[11] This RFA is RFA 15 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 14 with respect to the TSC Director.

*RFA 16 -       Admit that foreign governments question individuals on the TSDB at the request of the United States.*[12]

**Objections:** TSC Defendants object on grounds of relevance; none of the Plaintiffs allege that they have been or would be subject to any such action by foreign governments.  TSC Defendants also object to the request as ambiguous as it could suggest that individuals are questioned because of their TSDB status, or that their TSDB status is irrelevant to the requests of the United States, or that such requests are always made of all foreign governments with respect to all individuals on the TSDB, or any of several other plausible interpretations.  Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object to this request to the extent it seeks information about other U.S. Government activities – information not within the custody or control of TSC Defendants.  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission, including but not limited to information potentially subject to the state secrets privilege and the law enforcement privilege, such as sensitive information about precisely how and under what circumstances intelligence information may be shared with foreign law enforcement or other authorities and precisely the nature of certain confidential communications with foreign governments.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

*RFA 17 –       Admit that the TSDB is reviewed prior to issuing and/or renewing a Hazmat License.*[13]

---

[12] This RFA is RFA 16 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 15 with respect to the TSC Director.

[13] This RFA is RFA 17 with respect to the Principal Deputy Director and the Deputy Director Operations; it is RFA 16 with respect to the TSC Director.

**Objections:** TSC Defendants object on grounds of vagueness and ambiguity, as the proposed admission does not have a subject noun and could refer to many different actors.  Moreover, it could be interpreted to mean that watchlist status is determinative in such situations or merely known by (unspecified) people who may or may not make a decision with respect to Hazmat licenses.  Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object to this request to the extent it seeks information about other U.S. Government activities – information not within the custody or control of TSC Defendants.  TSC Defendants additionally object on grounds of relevance; none of the Plaintiffs allege that they have been or would be denied a Hazmat License.  In any event, such licenses are subject to an entirely separate redress scheme, which could itself be reviewed in an appropriate court if challenge were brought by an appropriate plaintiff.  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission to protect the security of transportation, including but not limited to information potentially subject to the law enforcement privilege and Sensitive Security Information protected by statute, such as sensitive information about precisely how and under what circumstances intelligence information may be shared with authorities making Hazmat License determinations.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

*RFA 18 –       Admit that a person can be placed on the watch list without any information that indicates that the person intends to harm an airport, an airplane, or to otherwise interfere or injure commercial aviation operations.*[14]

---

[14] This RFA is RFA 18 with respect to the Principal Deputy Director of TSC, RFA 24 with respect to the TSC Director, and RFA 25 with respect to the Deputy Director of Operations.

**Objections:** TSC Defendants object on grounds of vagueness and ambiguity; the request could be interpreted to simply state that a known terrorist need not have a known aviation target to be placed in the TSDB, or as an intelligence assessment that known or suspected terrorists are not necessarily at risk of attacking such aviation targets, or any of several other possible interpretations. It is plain that Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device. TSC Defendants further object on grounds of relevance; details regarding the substantive standard for inclusion in the TSDB are not necessary or useful to evaluate the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences. It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51). TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission to protect the security of transportation, including but not limited to information potentially subject to the state secrets privilege and the law enforcement privilege and sensitive security information protected by statute, such as how and under what circumstances individuals suspected of terrorism may be placed in the TSDB.

Response**:** Admit to the extent that inclusion in the TSDB does not require information about a specific aviation-related target. Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.

***RFA 18b –*** ***Admit that you oversee or permit the dissemination of information in the [TSDB] either directly or indirectly to municipal courts for use in the determination of bail.***[15]

---

[15] This RFA is RFA 17 with respect to the TSC Director, RFA 18 with respect to the Deputy Director of Operations, and RFA 25 with respect to the Principal Deputy Director.

**Objections:**  TSC Defendants object to the phrase "oversee or permit" as compound, vague and ambiguous.  TSC Defendants further object to the phrases "dissemination of information" and "indirectly" as vague and ambiguous.  In combination, these phrases could suggest that TSC chooses how and when information is shared with municipal courts, that all information is shared with all municipal courts, that some information is shared with some such entities, that TSC has a merely passive role in the dissemination of such information, that TSC actively shares it, that TSC has the authority to prohibit such sharing,  that TSDB information could be in theory presented by relevant witnesses, or any of several other possible interpretations.  It is plain that Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  Additionally, TSC Defendants object on grounds of relevance, as none of the Plaintiffs alleges that they have been denied bail in municipal courts on grounds of their alleged watchlist status; moreover, bail determinations are subject to their own proceedings and due process requirements, and this court is not reviewing the adequacy of process available to criminal defendants in hypothetical bail hearings.  Rather, that issue would be before a court reviewing a bail determination.  Furthermore, TSC Defendants object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission, including but not limited to information subject to the law enforcement privilege and Sensitive Security Information protected by statute, such as sensitive information about how and when and to what extent TSDB information is shared with law enforcement.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

***RFA 19 –       Admit that a person listed on the watchlist may have his or her Federal Aviation Administration license revoked or denied.[16]***

**Objections:** TSC Defendants object on grounds of vagueness and ambiguity, as the proposed admission does not have a subject noun.  Moreover, it could be interpreted to mean that watchlist status is determinative in such situations or merely known by (unspecified) people who may or may not make a decision with respect to FAA licenses.  Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object to this request to the extent it seeks information about other U.S. Government activities – information not within the custody or control of TSC Defendants.  TSC Defendants additionally object on grounds of relevance; none of the Plaintiffs allege that they have been or would be denied a FAA License.  In any event, such licenses are subject to an entirely separate redress scheme, which could itself be reviewed in an appropriate court if challenge were brought by an appropriate plaintiff.  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission to protect the security of transportation, including but not limited to information potentially subject to the law enforcement privilege and Sensitive Security Information protected by statute, such as sensitive information about precisely how and under what circumstances intelligence information may be shared with authorities making FAA License determinations.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

---

[16] This RFA is RFA 19 with respect to the TSC Principal Deputy Director and the Deputy Director of Operations; it is RFA 18 with respect to the TSC Director.

***RFA 20: Admit that an immediate relative of a person on the watchlist can be listed on the watch list due to his or her status as an immediate relative.[17]***

**Objections:** Defendant objects to the phrase "immediate relative" as vague and ambiguous. TSC Defendants further object on grounds of vagueness and ambiguity; the request could be interpreted to mean that familial relationships alone are determinative of watchlist status, that they are factor to be considered, that they are sufficient to determine that an individual is a known or suspected terrorist or that such individuals otherwise are identified in the TSDB or subjected to heightened screening.  It is plain that Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device. TSC Defendants further object on grounds of relevance; details regarding the substantive standard for inclusion in the TSDB are not necessary or useful to evaluate the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission to protect the security of transportation, including but not limited to information potentially subject to the state secrets privilege and the law enforcement privilege and Sensitive Security Information protected by statute, such as sensitive information about how and under what circumstances individuals suspected of terrorism may be placed in the TSDB.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

---

[17] This RFA is RFA 20 as directed to the TSC Principal Deputy Director and the Deputy Director of Operations; it is RFA 19 as directed to the TSC Director.

***RFA 21: Admit that a person can be listed on the watch list for being a friend, colleague, or fellow community member of an individual who is on the watchlist.*** [18]

**Objections:**  TSC Defendants object on grounds of vagueness and ambiguity; the request could be interpreted to mean that such relationships alone are determinative of watchlist status, that they are factor to be considered, that they are sufficient to determine that an individual is a known or suspected terrorist or that such individuals otherwise are identified in the TSDB or subjected to heightened screening.  It is plain that Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device. TSC Defendants further object on grounds of relevance; details regarding the substantive standard for inclusion in the TSDB are not necessary or useful to evaluate the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission to protect the security of transportation, including but not limited to information potentially subject to the law enforcement privilege and Sensitive Security Information protected by statute, such as sensitive information about how and under what circumstances individuals suspected of terrorism may be placed in the TSDB.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

---

[18] This RFA is RFA 21 as directed to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 20 as directed the Director of TSC.

***RFA 22:        Admit that you have the authority to continue to include an individual on the watch list even if that individual is an American citizen who has been acquitted of terrorism charges or terrorism charges are otherwise dismissed.[19]***

**Objections:** TSC Defendants object on grounds of relevance; none of the Plaintiffs have been acquitted of terrorism charges and details regarding a purely hypothetical application of the substantive standard for inclusion in the TSDB are not necessary to evaluate the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  This hypothetical application of the TSDB standards in a situation not present here and without any factual context does not present an appropriate use of Rule 36.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51). TSC Defendants also object on grounds of vagueness and ambiguity; the request could be interpreted to mean that a dismissal or acquittal is not determinative of watchlist status, that it is not even a factor to be considered, or any of several other possible interpretations.  It is plain that Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.   TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission to protect the security of transportation, including but not limited to information potentially subject to the state secrets privilege and the law enforcement privilege and Sensitive Security Information protected by statute, such as sensitive information about precisely how and under what circumstances a person suspected of terrorism may be placed in the TSDB.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

---

[19] This RFA is RFA 22 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 21 with respect to the TSC Director.

**RFA 23 –**     *Admit that American citizens that you have chosen not to investigate are referred to as "non-investigatory subjects"*[20]

**Objections**: TSC Defendants object as to vagueness of the terms "investigate," which is undefined, and "you" as TSC is not  charged with conducting criminal or counterterrorism investigations.  Moreover, the phrase, "chosen not to investigate" is vague as it could reflect an affirmative decision not to open an criminal or counterterrorism investigation, an ongoing preliminary investigation, or merely lack of current information to consider someone a subject of an criminal or counterterrorism investigation, none of which are decisions made by TSC.  The phrase "referred to" is also vague because it does not define who refers to them in that way, under what circumstances, or whether it reflects some official definition of those terms.  TSC Defendants further object to this request to the extent it seeks information not within the custody or control of TSC Defendants.  It is plain that Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object on grounds of relevance; this definition is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission, including but not limited to information potentially subject to the state secrets privilege and the law enforcement privilege, such as sensitive information about precisely how the FBI conducts counterterrorism investigations.

---

[20] This RFA is RFA 23 with respect to the Principal Deputy Director and the Director of Operations; it is RFA 22 with respect to the TSC Director.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

**RFA 24 –       Admit that American citizens that you are not investigating have been placed on the watch list.[21]**

**Objections:**  TSC Defendants object as to vagueness of the terms investigating," which is undefined, and "you" as TSC is not charged with conducting criminal or counterterrorism investigations.  Moreover, the phrase, "are not investigating" is vague as it could reflect an affirmative decision not to open an criminal or counterterrorism investigation, an ongoing preliminary criminal or counterterrorism investigation, or merely lack of current information to consider someone a subject of an criminal or counterterrorism investigation, none of which are decisions made by TSC.  TSC Defendants further object to this request to the extent it seeks information not within the custody or control of TSC Defendants.  It is plain that Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object on grounds of relevance; the existence or nonexistence of an investigation at the time of watchlisting is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission, including but not limited to information potentially subject to the state secrets privilege and the law enforcement privilege, such as sensitive information about how and under what circumstances individuals suspected of terrorism may be placed in the TSDB.

---

[21] This RFA is RFA 24 with respect to the Principal Deputy Director and Deputy Director for Operations; it is RFA 23 with respect to the TSC Director.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

## RFAs Related to Plaintiff Anas Elhady

*RFA 26 –* *Admit that you accepted the nomination of Anas Elhady to the federal watch list.[22]*

**Objections:** Plaintiffs do not know whether they are currently on the TSDB; therefore, they are not using an RFA appropriately to obtain admission of facts already known but using an RFA improperly as a discovery device. TSC Defendants further object on grounds of relevance; Plaintiffs' actual current or past watchlist status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences. It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51). TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

*RFA 27 –* *Admit that you never provided Plaintiff Anas Elhady with notice of the factual basis for his placement on the federal watchlist.[23]*

---

[22] This RFA is RFA 26 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 25 with respect to the TSC Director. .

[23] This RFA is RFA 27 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 26 with respect to the TSC Director

**Objections:** TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.

***RFA 28 –       Admit that you never provided Plaintiff Anas Elhady notice of his placement on the federal watchlist.[24]***

**Objections:** TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it

---

[24] This RFA is RFA 28 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 27 with respect to the TSC Director.

seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.


**RFAs With Respect to Plaintiff Osama Hussein Ahmed**

*RFA 29 –        Admit that you accepted the nomination of Plaintiff Osama Hussein Ahmed to the federal watchlist.[25]*

**Objections:**  Plaintiffs do not know whether they are currently in the TSDB; therefore, Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object on grounds of relevance; Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

---

[25] This RFA is RFA 29 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 28 with respect to the TSC Director.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.


***RFA 30 --      Admit that you never provided Plaintiff Osama Hussein Ahmed with notice of
the factual basis for his placement on the federal watchlist.[26]***

**Objections:**  TSC Defendants object on grounds of relevance.  Defendants cannot respond to
this request without confirming or denying the Plaintiff's status with respect to the TSDB.
Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress
process available to persons who believe they are in the TSDB due to their alleged screening
experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the
Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it
seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission
regarding the security of transportation, including but not limited to information subject to the
law enforcement privileges and the state secrets privilege, and Sensitive Security Information
protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications
to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this
request and decline to admit or deny.


***RFA 31 –      Admit that you never provided Plaintiff Osama Hussein Ahmed with notice of
his placement on the federal watchlist.[27]***

---

[26] This RFA is RFA 30 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is
RFA 29 with respect to the TSC Director.
[27] This RFA is RFA 31 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is
RFA 30 with respect to the TSC Director,

**Objections:** TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.


**RFAs With Respect to Plaintiff Ahmad Ibrahim Al Halabi**

*RFA 32 –       Admit that you accepted the nomination of Plaintiff Ahmad Ibrahim Al Halabi to the federal watchlist.*[28]

**Objections:**  Plaintiffs do not know whether they are currently in the TSDB; therefore, Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object on grounds of relevance; Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening

---

[28] This RFA is RFA 32 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 31 with respect to the TSC Director.

experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the

Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it

seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission

regarding the security of transportation, including but not limited to information subject to the

law enforcement privileges and the state secrets privilege, and Sensitive Security Information

protected by statute.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.


**RFA 33 –**       ***Admit that you never provided Plaintiff Ahmad Ibrahim Al Halabi with notice***

***of the factual basis for his placement on the federal watchlist.[29]***

**Objections:**  TSC Defendants object on grounds of relevance.  Defendants cannot respond to

this request without confirming or denying the Plaintiff's status with respect to the TSDB.

Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress

process available to persons who believe they are in the TSDB due to their alleged screening

experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the

Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it

seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission

regarding the security of transportation, including but not limited to information subject to the

law enforcement privileges and the state secrets privilege, and Sensitive Security Information

protected by statute.

---

[29] This RFA is RFA 33 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is
RFA 32 with respect to the TSC Director.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.


***RFA 34 –         Admit that you never provided Plaintiff Ahmad Ibrahim Al Halabi with notice of his placement on the federal watchlist.[30]***

**Objections:** TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.


<u>**RFAs With Respect to Plaintiff Michael Edmund Coleman**</u>

---

[30] This RFA is RFA 34 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 33 with respect to the TSC Director.

**RFA 35 –**    *Admit that you accepted the nomination of Plaintiff Michael Edmund Coleman to the federal watchlist.[31]*

**Objections:**  Plaintiffs do not know whether they are currently in the TSDB; therefore, Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object on grounds of relevance; Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

**RFA 36 --**    *Admit that you never provided Plaintiff Michael Edmund Coleman with notice of the factual basis for his placement on the federal watchlist.[32]*

**Objections:**  TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening

---

[31] This RFA is RFA 35 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 34 with respect to the TSC Director.
[32] This RFA is RFA 36 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 35 with respect to the TSC Director.

experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.

### RFA 37 –    *Admit that you never provided Plaintiff Michael Edmund Coleman with notice of his placement on the federal watchlist.*[33]

**Objections:** TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

---

[33] This RFA is RFA 37 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 36 with respect to the TSC Director.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.

## RFAs With Respect to Plaintiff Wael Hakmeh

*RFA 38 –*        ***Admit that you accepted the nomination of Plaintiff Wael Hakmeh to the federal watchlist.[34]***

**Objections:**  Plaintiffs do not know whether they are currently in the TSDB; therefore, Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object on grounds of relevance; Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

---

[34] This RFA is RFA 38 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 37 with respect to the TSC Director.

***RFA 39 --     Admit that you never provided Plaintiff Wael Hakmeh with notice of the
factual basis for his placement on the federal watchlist.[35]***

**Objections:** TSC Defendants object on grounds of relevance.  Defendants cannot respond to
this request without confirming or denying the Plaintiff's status with respect to the TSDB.
Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress
process available to persons who believe they are in the TSDB due to their alleged screening
experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the
Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it
seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission
regarding the security of transportation, including but not limited to information subject to the
law enforcement privileges and the state secrets privilege, and Sensitive Security Information
protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications
to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this
request and decline to admit or deny.

***RFA 40 –     Admit that you never provided Plaintiff Wael Hakmeh with notice of his
placement on the federal watchlist.[36]***

**Objections:** TSC Defendants object on grounds of relevance.  Defendants cannot respond to this
request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs'
actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process

---

[35] This RFA is RFA 39 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is
RFA 38 with respect to the TSC Director.
[36] This RFA is RFA 40 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is
RFA 39 with respect to the TSC Director.

available to persons who believe they are in the TSDB due to their alleged screening

experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the

Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it

seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission

regarding the security of transportation, including but not limited to information subject to the

law enforcement privileges and the state secrets privilege, and Sensitive Security Information

protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications

to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this

request and decline to admit or deny.


### RFAs With Respect to Plaintiff Murat Frljuckic

*RFA 41 –* ***Admit that you accepted the nomination of Plaintiff Murat Frljuckic to the***

*federal watchlist.*[37]

**Objections:**  Plaintiffs do not know whether they are currently in the TSDB; therefore, Plaintiffs

are not using a RFA appropriately to obtain admission of facts already known, but using a RFA

improperly as a discovery device.  TSC Defendants further object on grounds of relevance;

Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress

process available to persons who believe they are in the TSDB due to their alleged screening

experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the

Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it

seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission

---

[37] This RFA is RFA 41 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 40 with respect to the TSC Director.

regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

*RFA 42-        Admit that you never provided Plaintiff Murat Frljuckic with notice of the factual basis for his placement on the federal watchlist.[38]*

**Objections:**  TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.

---

[38] This RFA is RFA 42 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 41 with respect to the TSC Director.

***RFA 43 –***     ***Admit that you never provided Plaintiff Murat Frljuckic with notice of his placement on the federal watchlist.[39]***

**Objections:** TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.


**RFAs With Respect to Plaintiff Adnan Khalil Shaout**

***RFA 44 –***     ***Admit that you accepted the nomination of Plaintiff Adnan Khalil Shaout to the federal watchlist.[40]***

**Objections:**  Plaintiffs do not know whether they are currently in the TSDB; therefore, Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA

---

[39] This RFA is RFA 43 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 42 with respect to the TSC Director.
[40] This RFA is RFA 44 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 43 with respect to the TSC Director.

improperly as a discovery device.  TSC Defendants further object on grounds of relevance; Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.


***RFA 45 –*** ***Admit that you never provided Plaintiff Adnan Khalil Shaout with notice of the factual basis for his placement on the federal watchlist.[41]***

**Objections:**  TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the

---

[41] This RFA is RFA 45 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 44 with respect to the TSC Director.

law enforcement privileges and the state secrets privilege, and Sensitive Security Information
protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications
to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this
request and decline to admit or deny.

*RFA 46 –*       *Admit that you never provided Plaintiff Adnan Khalil Shaout with notice of his
placement on the federal watchlist.[42]*

**Objections**: TSC Defendants object on grounds of relevance.  Defendants cannot respond to this
request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs'
actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process
available to persons who believe they are in the TSDB due to their alleged screening
experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the
Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it
seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission
regarding the security of transportation, including but not limited to information subject to the
law enforcement privileges and the state secrets privilege, and Sensitive Security Information
protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications
to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this
request and decline to admit or deny.

---

[42] This RFA is RFA 46 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is
RFA 45 with respect to the TSC Director.

**RFAs With Respect to Plaintiff Saleem Ali**

*RFA 47 –*     *Admit that you accepted the nomination of Plaintiff Saleem Ali to the federal watchlist.*[43]

**Objections:**  Plaintiffs do not know whether they are currently in the TSDB; therefore, Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object on grounds of relevance; Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.


*RFA 48 –*     *Admit that you never provided Plaintiff Saleem Ali with notice of the factual basis for his placement on the federal watchlist.*[44]

**Objections:**  TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB.  Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress

---

[43] This RFA is RFA 47 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 46 with respect to the TSC Director.
[44] This RFA is RFA 48 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 47 with respect to the TSC Director.

process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.


***RFA 49 –*** ***Admit that you never provided Plaintiff Saleem Ali with notice of his placement on the federal watchlist.***[45]

**Objections:** TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the

---

[45] This RFA is RFA 49 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 48 with respect to the TSC Director.

law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.


## RFAs With Respect to Plaintiff Shahir Anwar

*RFA 50 –*        *Admit that you accepted the nomination of Plaintiff Shahir Anwar to the federal watchlist.[46]*

**Objections:**  Plaintiffs do not know whether they are currently in the TSDB; therefore, Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object on grounds of relevance; Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.

---

[46] This RFA is RFA 50 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 49 with respect to the TSC Director.

***RFA 51 –       Admit that you never provided Plaintiff Shahir Anwar with notice of the factual basis for his placement on the federal watchlist.[47]***

**Objections:** TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB.  Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.

***RFA 52 –       Admit that you never provided Plaintiff Shahir Anwar with notice of his placement on the federal watchlist.[48]***

**Objections:** TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process

---

[47] This RFA is RFA 51 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 50 with respect to the TSC Director.
[48] This RFA is RFA 52 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 51 with respect to the TSC Director.

available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.


## RFAs With Respect to Plaintiff Samir Anwar

*RFA 53 –      **Admit that you accepted the nomination of Plaintiff Samir Anwar to the federal watchlist.**[49]*

**Objections:**  Plaintiffs do not know whether they are currently in the TSDB; therefore, Plaintiffs are not using a RFA appropriately to obtain admission of facts already known, but using a RFA improperly as a discovery device.  TSC Defendants further object on grounds of relevance; Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission

---

[49] This RFA is RFA 53 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 52 with respect to the TSC Director.

regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: TSC Defendants stand on their objections to this request and decline to admit or deny.


***RFA 54 –*** ***Admit that you never provided Plaintiff Samir Anwar with notice of the factual basis for his placement on the federal watchlist.***[50]

**Objections:**  TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.

---

[50] This RFA is RFA 54 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 53 with respect to the TSC Director.

***RFA 55 –      Admit that you never provided Plaintiff Samir Anwar with notice of his***

***placement on the federal watchlist.[51]***

**Objections:** TSC Defendants object on grounds of relevance.  Defendants cannot respond to this request without confirming or denying the Plaintiff's status with respect to the TSDB. Plaintiffs' actual current or past TSDB status, if any, is irrelevant to the adequacy of the redress process available to persons who believe they are in the TSDB due to their alleged screening experiences.  It is also beyond the scope of proper discovery as proposed by Defendants in the Joint Discovery Plan (Dkt No. 51).  TSC Defendants further object to this request to the extent it seeks privileged information regarding the FBI's counterterrorism mission and TSA's mission regarding the security of transportation, including but not limited to information subject to the law enforcement privileges and the state secrets privilege, and Sensitive Security Information protected by statute.

**Response**: Admit to the extent that the TSC does not issue any notices or other communications to travelers regarding TSDB status.  Otherwise, TSC Defendants stand on their objections to this request and decline to admit or deny.

---

[51] This RFA is RFA 55 with respect to the Principal Deputy Director and the Deputy Director for Operations; it is RFA 54 with respect to the TSC Director.

# Exhibit F

# FBI/TSC PRIVILEGE LOG

## ANAS ELHADY ET AL. v. KABLE, et al.,

## CIVIL ACTION NO. 16-375 (E.D. VA.)

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCA0001 | 2 | 5/13/2013 | Addendum to the NDIU Standard Operating Procedure Operations Manual | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0002 | 2 | 5/29/2013 | Addendum to the NDIU Standard Operating Procedure Operations Manual | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.

The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.

This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.

This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence |

2

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0003 | 131 | 02/17/2014 | TSC-Nominations and Data Integrity Unit (NDIU) Operations Manual, Appendix 1 | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.

The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.

This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.

This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCA0004 | 7 | 2/17/2014 | TSC-Nominations and Data Integrity Unit (NDIU) Standard Operating Procedure (SOP) Operations Manual (OM), Appendix 1 | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0005 | 20 | 2/17/2014 | TSC-Nominations and Data Integrity Unit (NDIU) | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting |

4

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | Training Materials | | policies and processes that would provide valuable insight to terrorist adversaries. <br><br> The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. <br><br> This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate. <br><br> This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0006 | 20 | 2/17/2014 | TSC-Nominations and Data Integrity Unit (NDIU) Training PowerPoint | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0007 | 13 | 2/02/2014 | TSC-Nominations and Data Integrity Unit (NDIU) Training Materials | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| | | | | | This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate. |
| | | | | | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0008 | 121 | 9/15/2015 | TSC-Nominations and Data Integrity Unit (NDIU) Nominations and Quality Assurance Review SOP | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0009 | 21 | 9/19/2017 | NDIU SOP Known or Suspected Terrorist SME Job Aid | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0010 | 99 | N/A | TSC-Nominations and Data Integrity Unit (NDIU) Nominations and Quality Assurance Review SOP | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0011 | 125 | 08/04/2016 | TSC-Nominations and Data Integrity Unit (NDIU) Nominations and Quality Assurance Review SOP | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0012 | 101 | | TSC-Nominations and Data Integrity Unit (NDIU) Nominations and Quality Assurance Review SOP | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate. |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0013 | 13 | 2/17/2014 | TSC-Nominations and Data Integrity Unit (NDIU) Training Powerpoint | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.

The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.

This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.

This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0014 | 32 | 12/08/2015 | TSC- Redress Program Standard Operating Procedure | LEP, SSI | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate. |
| TSCA0015 | 12 | 2/23/2017 | Terrorist Review and Screening and Examination Unit SOP | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0016 | 37 | 1/13/2017 | Watchlist Submission Form User Guide | Classified, LEP, SSI, SSP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; |

14

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0017 | 140 | 9/1/2015 | Terrorist Screening Operations Center (TSOC) SOP | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate. |

15

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0018 | 57 | 9/6/2013 | Terrorist Screening Operations Unit (TSOU) Operational Encounter Management SOP | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.

The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.

This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.

This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably |

16

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0019 | 151 | 2015 | Watch Listing Guidance 2015 | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.

The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.

This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.

This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0030-0225 | Various | Various | Agreements with Foreign Partners re: Sharing of Information | LEP, SSP, Classified, FGI | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments.<br><br>Information obtained from a foreign government or international organization where there is an agreement or understanding that the information received will be treated confidentially. |
| TSCA0229 | 29 | January 2009 | HSPD 6 Foreign Partner Terrorism Screening Information Sharing Strategy Document | Classified, SSP, LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0230 | 2 | | Terrorist Screening Center (TSC) Handling Codes | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCA0231 | 2 | | Terrorist Screening Center Law Enforcement Information Sheet | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCA0232 | 3 | | Document regarding certain classified terrorist screening procedures | Classified, SSP, LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCA0233 | 2 | | Terrorist Screening Center Identity Intelligence Unit Info Sheet and FAQ | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCA0234 | 203 | 4/1/2015 | Counterterrorism Policy Directive and Policy Guide | Classified, SSP, LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.

This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |

| DOCUMENT NUMBER | PAGES | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCA0235 | 61 | 8/21/2015 | Foreign Dissemination of Classified Information Policy Guide | Classified, SSP, LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |

**Exhibit G**

# FBI/TSC PRIVILEGE LOG

## ANAS ELHADY ET AL. v. KABLE, et al.,

## CIVIL ACTION NO. 16-375 (E.D. VA.)

## November 30, 2017

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCB0002 | Elhady-FBITSC-PRIV00002 | | Watchlist Submission Form Interface Page | LEP, SSI | This document includes detailed information about watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate. |
| TSCB0004 | Elhady-FBITSC-PRIV00004-PRIV00018 | | TSC - Nominations and Data Integrity Unit (NDIU) Training Materials | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, |

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCB0005 | Elhady-FBITSC-PRIV00019-PRIV00070 | | TSC - Nominations and Data Integrity Unit (NDIU) Training Materials | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security |

2

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCB0006 | Elhady-FBITSC-PRIV00071-PRIV00077 | | TSC - Nominations and Data Integrity Unit (NDIU) Training Materials | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, |

3

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCB0007 | Elhady-FBITSC-PRIV00078-PRIV00130 | | TSC - Nominations and Data Integrity Unit (NDIU) Training Materials | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. |
| | | | | | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| | | | | | This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate. |
| | | | | | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCB0008 | Elhady-FBITSC-PRIV00131-PRIV00272 | | TSC New Staff Orientation | CLASSIFIED, SSP, LEP, SSI | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. |

4

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate. |
| TSCB0009 | Elhady-FBITSC-PRIV00273-PRIV00298 | | TSC Power Point regarding Watchlisting and Information Sharing | CLASSIFIED, LEP, SSP, SSI | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |

5

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCB0010 | Elhady-FBITSC-PRIV00299-PRIV00319 | 1/12/2017 | TSC Power Point regarding Watchlisting and Information Sharing | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the |

6

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCB0012 | Elhady-FBITSC-PRIV00320-PRIV00346 | | Terrorist Screening Overview | SSI, LEP, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCB0013 | Elhady-FBITSC-PRIV00347-PRIV00354 | | Nominations and Data Integrity Unit training PowerPoint re: HSPD-6 and USG Restricted Information | SSI, LEP, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. |

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate. |
| | | | | | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| | | | | | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCB0014 | Elhady-FBITSC-PRIV00355-PRIV00356 | 5/18/2016 | SOP re: nomination procedures | LEP, SSP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| | | | | | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |

8

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | |
| TSCB0015 | Elhady-FBITSC-PRIV00357-PRIV00395 | | TSC training PowerPoint re: Nominations and Encounter Processes | CLASSIFIED, SSP, SSI, LEP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCB0016 | Elhady-FBITSC-PRIV00396-PRIV00423 | | TSC Overview Training PowerPoint | SSP, SSI, LEP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security |

9

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCB0017-0037 | Elhady-FBITSC-PRIV00424 PRIV00444 | | Nomination Interface, Pages 1-21 | LEP, SSI | This document includes detailed information about watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>These documents contain information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate. |

11

# Exhibit H

# FBI/TSC PRIVILEGE LOG

## ANAS ELHADY ET AL. v. KABLE, et al.,

## CIVIL ACTION NO. 16-375 (E.D. VA.)

## DECEMBER 22, 2017, PART 1 OF 2

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCC0001 | Elhady-FBITSC-PRIV000445-Elhady-FBITSC-PRIV001912 | 2012-2017 | TSDB Director's Monthly Statistical Reports | LEP, SSI, SSP | These documents, in conjunction with other requested and/or available information, include watchlisting information that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>These documents contain Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate.<br><br>These documents contain information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |

1

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCC0002 | Elhady-FBITSC-PRIV001913-PRIV002703 | 2012-2017 | TSDB Weekly Statistical Reports | LEP, SSI, SSP | These documents, in conjunction with other requested and/or available information, include watchlisting information that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>These documents contain Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate.<br><br>These documents contain information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCC0003 | Elhady-FBITSC-PRIV002704-PRIV002719 | 12/30/2008 | MOU between TSC and Department of Homeland Security re: the Secure Flight Program | LEP, SSP | This document, in conjunction with other requested and/or available information, comprises a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, |

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | impede, impair, or hinder an investigation and/or an investigative interest of the FBI. <br><br> The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |
| TSCC0004 | Elhady-FBITSC-PRIV002720-PRIV002758 | 5/1/2008 | MOU between TSC and Department of Homeland Security re: the Secure Flight Program, Appendix 1 | LEP, SSI, SSP | This document, in conjunction with other requested and/or available information, comprises a detailed, comprehensive discussion of watchlisting processes that would provide valuable insight to terrorist adversaries. <br><br> The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. <br><br> This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting and security screening; it will be referred to TSA for review, as appropriate.. <br><br> The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |
| TSCC0005 | Elhady-FBITSC- | 12/4/2008 | MOU between TSC and Department of Homeland | LEP, SSI, SSP | This document, in conjunction with other requested and/or available information, comprises a detailed, comprehensive |

3

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | PRIV002759-PRIV002842 | | Security re: the Secure Flight Program, Appendix 2 | | discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about security screening and watchlisting; it will be referred to TSA for review, as appropriate..<br><br>The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |
| TSCC0006 | Elhady-FBITSC-PRIV002843-PRIV002851 | 12/30/2008 | MOU between TSC and Department of Homeland Security re: the Secure Flight Program, Appendix 3 | LEP, SSI, SSP | This document, in conjunction with other requested and/or available information, comprises a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

4

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about security screening and watchlisting; it will be referred to TSA for review, as appropriate.. <br><br> The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |
| TSCC0007 | Elhady-FBITSC-PRIV002852-PRIV002855 | 1/23/2012 | Letter of Understanding between TSC and DHS re: Sharing of terrorist screening and biometric information | LEP, SSP | This document includes a discussion of a particular, non-public watchlisting policy and process that would provide valuable insight to terrorist adversaries. <br><br> The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. <br><br> The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |
| TSCC0008 | Elhady-FBITSC-PRIV002856-PRIV002858 | 9/22/2014 | Letter of Understanding between TSC and the National Geospatial Intelligence Agency | LEP | This document includes a discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. <br><br> The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative |

5

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCC0009 | Elhady-FBITSC-PRIV002859-PRIV002866 | 6/17/2011 | MOU between TSC and National Institute for Occupational Safety and Health | LEP | This document includes a discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. <br><br> The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCC0010 | Elhady-FBITSC-PRIV002867-PRIV002989 | Oct. 2007 | GAO Report re: Terrorist Watch List Screening | SSI, LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. <br><br> This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about security screening and watchlisting; it will be referred to TSA for review, as appropriate. |
| TSCC0011 | Elhady-FBITSC-PRIV002990-PRIV003098 | March 2014 | DOJ OIG Audit of the FBI's Management of Terrorist Watchlist Nominations | Classified, SSI, SSP | Information which is properly classified pursuant to Executive Order, the disclosure of which could reasonably be expected to cause damage to the national security or the conduct of the government's international relations. |

6

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about security screening and watchlisting; it will be referred to TSA for review, as appropriate.. The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |

# Exhibit I

# FBI/TSC PRIVILEGE LOG

## ANAS ELHADY ET AL. v. KABLE, et al.,

## CIVIL ACTION NO. 16-375 (E.D. VA.)

## DECEMBER 22, 2017 – PART 2 OF 2

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCD0001 | Elhady-FBITSC-PRIV003099-3104 | 05/2014 | PowerPoint re: Visa Review and International Liaison Unit Functions at the Terrorist Screening Center | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0002 | Elhady-FBITSC-PRIV003105-003117 | 05/11/2017 | Visa Review: Standard Operation Procedures | LEP, SSP | This document includes watchlisting information that, in conjunction with other requested and/or available information, would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCD0003 | Elhady-FBITSC-PRIV003118-003129 | 09/16/2003 | MOU on the Integration and Use of Screening Info | Classified, LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. |

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | to Protect against Terrorism | | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. |
| TSCD0004 | Elhady-FBITSC-PRIV003130-003140 | 01/2007 | Addendum B to the MOU on the Integration and Use of Screening Info to Protect against Terrorism | LEP, SSI, SSP | This document, in conjunction with the other portions of the MOU, comprises a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |

2

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCD0005 | Elhady-FBITSC-PRIV003141-003143 | 07/25/2006 | TSC Screening Procedures | Classified, LEP, SSP | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0006 | Elhady-FBITSC-PRIV003144 | 11/25/2013 | Email:  Watchlisting Policy Exception | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0007 | Elhady-FBITSC-PRIV003145-003149 | | Identities Intelligence Strategic Plan 2015-2017 | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0008 | Elhady-FBITSC-PRIV003150-003184 | | TSC Training Powerpoint re: Foreign Government Information | Classified, LEP, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCD0009 | Elhady-FBITSC-PRIV003185 | 04/07/15 | Flowchart: Nomination Priority Standard Model | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0010 | Elhady-FBITSC-PRIV003186-003210 | | PowerPoint re: Biometric Identity Intelligence Resource | Classified, LEP, SSI, SSP | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. |
| TSCD0011 | Elhady-FBITSC-PRIV003211-003227 | | TSC Powerpoint re: NDIU Project | LEP, SSI, SSP | This document, in conjunction with other requested and/or available information, includes a detailed discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. |
| TSCD0012 | Elhady-FBITSC-PRIV003278-003248 | | TSDB Overview PowerPoint | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. |

4

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCD0013 | Elhady-FBITSC-PRIV003249-003257 | | TSC Final Examination: NDIU Basic Analyst Course (BAC) | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0014 | Elhady-FBITSC-PRIV003258-003266 | | NDIU BAC Final Examination Answer Key | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0015 | Elhady-FBITSC-PRIV003267-003268 | 5/26/2014 | NDIU: Nomination Prioritization Standard | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0016 | Elhady-FBITSC-PRIV003269-003290 | | TSC Overview PowerPoint | LEP, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. |

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCD0017 | Elhady-FBITSC-PRIV003291-003293 | | TSC Document re: Foreign Partnerships | Classified, LEP, SSP | This document includes watchlisting information that would provide valuable insight to terrorist adversaries.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0018 | Elhady-FBITSC-PRIV003294-003303 | | TSC Overview Powerpoint | LEP, SSP | This document includes watchlisting information that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability |

6

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCD0019 | Elhady-FBITSC-PRIV003304-003310 | | TSC Overview PowerPoint | Classified, LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. |
| TSCD0020 | Elhady-FBITSC-PRIV003311-003320 | | TSC Overview PowerPoint | Classified, LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. |
| TSCD0021 | Elhady-FBITSC-PRIV003321-003472 | | TSC Overview PowerPoint | Classified, LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. |
| TSCD0022 | Elhady-FBITSC-PRIV003473-003487 | | TSC Overview PowerPoint | LEP, SSI, SSP | This document includes watchlisting information that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. |

8

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCD0023 | Elhady-FBITSC-PRIV003488-003515 | | TSC Overview PowerPoint | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.

The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.

This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate.

This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCD0024 | Elhady-FBITSC-PRIV003516-003518 | 12/6/2017 | PowerPoint re: Biographic Criteria | LEP, SSI | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.

This document contains information subject to the protections of Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to security information related to security screening and/or watchlisting procedures; it will be referred to TSA for review, as appropriate. |

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCD0026 | Elhady-FBITSC-PRIV003520-003535 | | TSC Overview PowerPoint | LEP, SSI, SSP | This document includes watchlisting information that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCD0027 | Elhady-FBITSC-PRIV003536-003546 | | TSC Overview Powerpoint | LEP, SSI, SSP | This document includes watchlisting information that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |

10

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCD0028 | Elhady-FBITSC-PRIV003547-003566 | | TREX Training PowerPoint | Classified, LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. |
| TSCD0029 | Elhady-FBITSC-PRIV003567-003625 | | TSC Overview PowerPoint | LEP, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |

11

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCD0030 | Elhady-FBITSC-PRIV003626-003647 | | TREX Training PowerPoint | Classified, LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. |
| TSCD0031 | Elhady-FBITSC-PRIV003648-003669 | | TREX Training PowerPoint | Classified, LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. |
| TSCD0032 | Elhady-FBITSC-PRIV003670-003671 | 9/3/2010 | Memorandum re: National Security Threat Task Force Use of TSDB | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0033 | Elhady-FBITSC-PRIV003672-003673 | 9/3/2010 | Memorandum re: Office of Intelligence and Analysis Use of TSDB | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0034 | Elhady-FBITSC-PRIV003674-003682 | 9/2010 | Memorandum of Understanding between State Dept., Bureau of Consular Affairs and TSC | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0036 | Elhady-FBITSC-PRIV003690-003691 | 4/2012 | Amendment 1 to the MOU between State Dept., Bureau of Consular Affairs and the TSC | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0037 | Elhady-FBITSC-PRIV003692-003699 | 9/2006 | Memorandum of Understanding between the Department of State and TSC | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

13

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCD0039 | Elhady-FBITSC-PRIV003702-003714 | 12/2007 | Addendum A to the MOU between the Department of State and the TSC | LEP, SSP | This document, in conjunction with other requested and/or available information, includes watchlisting information that would provide valuable insight to terrorist adversaries. <br><br> The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. <br><br> This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCD0040 | Elhady-FBITSC-PRIV003715-003719 | 7/2008 | Addendum B to the MOU between the Department of State and the TSC | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0042 | Elhady-FBITSC-PRIV003724-003726 | 3/2014 | Addendum C to the MOU between the Department of State and the TSC | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0043 | Elhady-FBITSC-PRIV003727-003801 | 2012-2017 | TSC monthly statistical reports | LEP, SSI, SSP | These documents, in conjunction with other requested and/or available information, include watchlisting information that would provide valuable insight to terrorist adversaries. <br><br> The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

14

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | These documents contain Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; they will be referred to TSA for review, as appropriate.<br><br>These documents contain information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCD0044 | Elhady-FBITSC-PRIV003802-003806 | 10/3/2008 | DOJ Memo from Deputy Attorney General to Heads of Department Components re: Department of Justice Protocol Regarding Terrorist Watchlist Nominations | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0045 | Elhady-FBITSC-PRIV003807-003816 | March 2012 | MOU between TSC and USAID re: Use of Terrorist Identity Information | LEP, SSP , OGA[1] | This document, in conjunction with other requested and/or available information, includes watchlisting information that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |

---

[1] OGA refers to a document of another government agency that may have privilege interests in the document.  Where OGA is noted, the other government agency has been contacted for input into the document, but has not responded as of 12/22/2017.

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCD0046 | Elhady-FBITSC-PRIV003817-003827 | April 2007 | MOU between TSC and DHS re: Screening for Immigration Benefits | LEP, SSP | This document, in conjunction with other requested and/or available information, includes watchlisting information that would provide valuable insight to terrorist adversaries.

The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.

The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |
| TSCD0047 | Elhady-FBITSC-PRIV003828-003839 | September 2014 | MOU between TSC and the Special Inspector General for Afghanistan Reconstruction | LEP, | This document, in conjunction with other requested and/or available information, includes watchlisting information that would provide valuable insight to terrorist adversaries.

The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0048 | Elhady-FBITSC-PRIV003840--003851 | April and May 2015 | Modification to the MOU between TSC and USAID re: Use of Terrorist Identity Information | LEP, SSP, OGA | This document, in conjunction with other requested and/or available information, includes watchlisting information that would provide valuable insight to terrorist adversaries.

The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

16

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |
| TSCD0049 | Elhady-FBITSC-PRIV003852-004243 | July 12, 2010 | Memorandum from TSC attaching various MOUs between TSC and DHS and other TSC and DHS documents | LEP, SSP, SSI | This document, in conjunction with other requested and/or available information, includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments.<br><br>These documents contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; they will be referred to TSA for review, as appropriate. |
| TSCD0050 | Elhady-FBITSC-PRIV004244-004325 | 11/9/2004 | DHS report re: terrorist screening | LEP, SSP | This document includes a detailed, comprehensive discussion of watchlisting and screening policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCD0051 | Elhady-FBITSC-PRIV004326-004332 | 4/9/2015 | U.S. Government Redress Implementation Plan | LEP, | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0052 | Elhady-FBITSC-PRIV004333-004342 | 11/13/2012 | Foreign government document re: terrorism screening | SSP, LEP, FGI, OGA | This document includes a detailed discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. Information obtained from a foreign government or international organization where there is an agreement or understanding that the information received will be treated confidentially. |
| TSCD0053 | Elhady-FBITSC-PRIV004343-004357 | March 2005 | State Department memorandum and report re: terrorist screening information sharing | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0054 | Elhady-FBITSC-PRIV004358-004371 | March 2014 | Foreign government document re: watchlisting policy | CLASSIFIED, SSP, LEP, FGI, OGA | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries. The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |

18

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>Information obtained from a foreign government or international organization where there is an agreement or understanding that the information received will be treated confidentially. |
| TSCD0055 | Elhady-FBITSC-PRIV004372-004377 | March 2006 | MOU between TSC and TSA re: Screening | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0056 | Elhady-FBITSC-PRIV004378-004383 | June 2006 | MOU between TSC and NSA | LEP, SSP, other statutory privilege | This document, in conjunction with other requested and/or available information, includes a detailed discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |
| TSCD0057 | Elhady-FBITSC-PRIV004384-004399 | February 2012 | MOU between TSC and the Department of Defense re: Information Sharing | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

19

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCD0058 | Elhady-FBITSC-PRIV004400-004404 | December 2006 | Addendum B to the MOU between TSC and TSA re: Use of Terrorist Information | LEP | This document, in conjunction with other requested and/or available information, includes a detailed discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0059 | Elhady-FBITSC-PRIV004405-004412 | July 19, 2005 | Interconnection Security Agreement between TSA and TSC | LEP, SSI | This document, in conjunction with other requested and/or available information, includes a detailed discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>These documents contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; they will be referred to TSA for review, as appropriate.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0060 | Elhady-FBITSC-PRIV004413-004418 | September 2006 | MOU between TSC and the Overseas Private Investment Corporation re: Terrorist Screening | LEP, SSP, OGA | This document, in conjunction with other requested and/or available information, includes watchlisting information that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | |
| TSCD0061 | Elhady-FBITSC-PRIV004419-004424 | January 2006 | MOU between TSC and the Nuclear Regulatory Commission re: Terrorist Screening | LEP, SSP | This document, in conjunction with other requested and/or available information, includes watchlisting information that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |
| TSCD0062 | Elhady-FBITSC-PRIV004425-004426 | October 2, 2014 | Letter from DHS to TSC re: agreement to the addition of Appendix to the WLS MOU. | LEP, SSP | This document, in conjunction with other requested and/or available information, includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |

21

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCD0063 | Elhady-FBITSC-PRIV004427-004443 | May 12, 2006 | MOU between TSC and TSA re: Use of Terrorist Information | LEP | This document, in conjunction with other requested and/or available information, includes a detailed discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0064 | Elhady-FBITSC-PRIV004444-004445 | February 25, 2005 | Letter from TSC to DoD component re: terrorism screening | LEP | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |
| TSCD0065 | Elhady-FBITSC-PRIV004446-004488 | | An Updated Strategy for Comprehensive Terrorist-Related Screening Procedures | LEP, SSP | This document, in conjunction with other requested and/or available information, includes a detailed, comprehensive discussion of watchlisting and screening policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCD0066 | Elhady-FBITSC-PRIV004489-004498 | April 9, 2008 | TSA Aviation Security Directive No. SD 1544-01-20F | LEP, SSI | This document includes a detailed discussion of watchlisting and screening policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>These documents contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; they will be referred to TSA for review, as appropriate. |
| TSCD0067 | Elhady-FBITSC-PRIV004499-004521 | July 2012 | FBI TSC Privacy Impact Assessment | LEP, SSP | This document, in conjunction with other requested and/or available information, includes a detailed discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>The state secrets privilege protects matters that, if disclosed, would harm national security, the nation's defense capabilities, reveals intelligence gathering methods, or disrupt relations with foreign governments. |
| TSCD0070 | Elhady-FBITSC-PRIV004548-004561 | November 2012 | Memorandum of Agreement between TSA and the Port Authority of NY and NJ re: Vetting | LEP | This document includes watchlisting information that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

23

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCD0071 | Elhady-FBITSC-PRIV004562-004626 | May 2009 | DHS OIG – Role of the No Fly and Selectee Lists in Securing Commercial Aviation | SSI, LEP | This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. |

# Exhibit J

# FBI/TSC PRIVILEGE LOG

## ANAS ELHADY ET AL. v. KABLE, et al.,

## CIVIL ACTION NO. 16-375 (E.D. VA.)

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| TSCE0001 | Elhady-FBITSC-PRIV004627 | 12/8/2017 | 2018 Watchlist Submission Job Aid | LEP, SSI | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. |
| TSCE0002 | Elhady-FBITSC-PRIV004628-Elhady-FBITSC-PRIV004668 | | Watchlist Submission Form User Guide | LEP, SSI, SSP | This document includes a detailed, comprehensive discussion of watchlisting policies and processes that would provide valuable insight to terrorist adversaries.<br><br>The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI.<br><br>This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate.<br><br>This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the |

1

| DOCUMENT NUMBER | Bates No | DATE (if available) | TITLE OR DESCRIPTION | APPLICABLE PRIVILEGES | BASIS FOR CLAIMS |
|---|---|---|---|---|---|
| | | | | | Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. |
| TSCE0003 | Elhady-FBITSC-PRIV004669-Elhady-FBITSC-PRIV004678 | 12/8/2017 | Watchlist Submission Form FAQ | LEP, SSI | The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. <br><br> This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. |
| TSCE0004 | Elhady-FBITSC-PRIV004679-Elhady-FBITSC-PRIV004696 | | TREX Training Powerpoint | Classified, SSP, LEP, SSI | This document contains information that is subject to an assertion of the state secrets privilege because its disclosure reasonably could be expected to harm national security, including by harming the Government's ability to detect and prevent terrorist attacks, revealing intelligence sources and methods, and/or disrupting relations with foreign governments. <br><br> The disclosure of this sensitive law enforcement information would impede or impair the effectiveness of an investigative technique, method or procedure and/or could cause harm to, impede, impair, or hinder an investigation and/or an investigative interest of the FBI. <br><br> This document contains Sensitive Security Information, pursuant to 49 U.S.C. § 114(r), including but not limited to information about watchlisting; it will be referred to TSA for review, as appropriate. |

2

# Exhibit K

Plaintiffs' Grouped Documents To Compel From Defendants' Privilege Logs

| | | | | | |
|---|---|---|---|---|---|
| **Nominations Documents On Government Privilege Log** | | | | | |
| **PRIVLOG DATE** | **DOCUMENT #** | **BATES** | **DOCUMENT DATE (if available)** | **DOCUMENT TITLE OR DESCRIPTION** | **CLAIMED PRIVILEGES** |
| 11/15/2017 | TSCA0019 | | 2015 | Watch Listing Guidance 2015 | LEP, SSI, SSP |
| 11/15/2017 | TSCA0001 | | 5/13/2013 | Addendum to the NDIU Standard Operating Procedure Operations Manual | LEP, SSI, SSP |
| 11/15/2017 | TSCA0002 | | 5/29/2013 | Addendum to the NDIU Standard Operating Procedure Operations Manual | LEP, SSI, SSP |
| 11/15/2017 | TSCA0003 | | 2/17/2014 | TSC - Nominations and Data Integrity Unit (NDIU) Operations Manual, Appendix 1 | LEP, SSI, SSP |
| 11/15/2017 | TSCA0004 | | 2/17/2014 | TSC - Nominations and Data Integrity Unit (NDIU) Standard Operating Procedure (SOP) Operations Manual (OM), Appendix 1 | LEP, SSI, SSP |
| 11/15/2017 | TSCA0005 | | 2/17/2014 | TSC - Nominations and Data Integrity Unit (NDIU) Training Materials | LEP, SSI, SSP |
| 11/15/2017 | TSCA0006 | | 2/17/2014 | TSC - Nominations and Data Integrity Unit (NDIU) Training PowerPoint | LEP, SSI, SSP |
| 11/15/2017 | TSCA0007 | | 2/2/2014 | TSC - Nominations and Data Integrity Unit (NDIU) Training Materials | LEP, SSI, SSP |
| 11/15/2017 | TSCA0008 | | 9/15/2015 | TSC - Nominations and Data Integrity Unit (NDIU) Nominations and Quality Assurance Review SOP | LEP, SSI, SSP |
| 11/15/2017 | TSCA0009 | | 9/19/2017 | NDIU SOP Known or Suspected Terrorist SME Job Aid | LEP, SSI, SSP |
| 11/15/2017 | TSCA0010 | | N/A | TSC - Nominations and Data Integrity Unit (NDIU) Nominations and Quality Assurance Review SOP | LEP, SSI, SSP |
| 11/15/2017 | TSCA0011 | | 8/4/2016 | TSC - Nominations and Data Integrity Unit (NDIU) Nominations and Quality Assurance Review SOP | LEP, SSI, SSP |
| 11/15/2017 | TSCA0012 | | | TSC - Nominations and Data Integrity Unit (NDIU) Nominations and Quality Assurance Review SOP | LEP, SSI, SSP |
| 11/15/2017 | TSCA0013 | | 2/17/2014 | TSC - Nominations and Data Integrity Unit (NDIU) Training Powerpoint | LEP, SSI, SSP |
| 11/30/2017 | TSCB0002 | Elhady-FBITSC-PRIV00002 | | Watchlist Submission Form Interface Page | LEP, SSI |
| 11/30/2017 | TSCB0004 | Elhady-FBITSC-PRIV00004-Elhady-FBITSC-PRIV00018 | | TSC - Nominations and Data Integrity Unit (NDIU) Training Materials | LEP, SSI, SSP |
| 11/30/2017 | TSCB0005 | Elhady-FBITSC-PRIV00019-Elhady-FBITSC-PRIV00070 | | TSC - Nominations and Data Integrity Unit (NDIU) Training Materials | LEP, SSI, SSP |
| 11/30/2017 | TSCB0006 | Elhady-FBITSC-PRIV00071-Elhady-FBITSC-PRIV00077 | | TSC - Nominations and Data Integrity Unit (NDIU) Training Materials | LEP, SSI, SSP |
| 11/30/2017 | TSCB0007 | Elhady-FBITSC-PRIV00078-Elhady-FBITSC-PRIV00130 | | TSC - Nominations and Data Integrity Unit (NDIU) Training Materials | LEP, SSI, SSP |
| 11/30/2017 | TSCB0013 | Elhady-FBITSC-PRIV00347-Elhady-FBITSC-PRIV00354 | | Nominations and Data Integrity Unit training PowerPoint re: HSPD-6 and USG Restricted Information | LEP, SSI, SSP |

**Plaintiffs' Grouped Documents To Compel From Defendants' Privilege Logs**

| | | | | | | |
|---|---|---|---|---|---|---|
| 11/30/2017 | TSCB0014 | Elhady-FBITSC-PRIV00355-Elhady-FBITSC-PRIV00356 | 5/18/2016 | SOP re: nomination procedures | | LEP, SSP |
| 11/30/2017 | TSCB0016 | Elhady-FBITSC-PRIV00396-Elhady-FBITSC-PRIV00423 | | TSC Overview Training PowerPoint | | LEP, SSI, SSP |
| 11/30/2017 | TSCB0017-0037 | Elhady-FBITSC-PRIV00424-Elhady-FBITSC-PRIV00444 | | Nomination Interface, Pages 1-21 | | LEP, SSI |
| 12/22/2017 p2 | TSCD0006 | Elhady-FBITSC-PRIV003144 | 11/25/2013 | Email:  Watchlisting Policy Exception | | LEP |
| 12/22/2017 p2 | TSCD0009 | Elhady-FBITSC-PRIV003185 | 4/7/2015 | Flowchart: Nomination Priority Standard Model | | LEP |
| 12/22/2017 p2 | TSCD0012 | Elhady-FBITSC-PRIV003228-Elhady-FBITSC-PRIV003248 | | TSDB Overview PowerPoint | | LEP, SSI, SSP |
| 12/22/2017 p2 | TSCD0013 | Elhady-FBITSC-PRIV003249-Elhady-FBITSC-PRIV003257 | | TSC Final Examination: NDIU Basic Analyst Course (BAC) | | LEP |
| 12/22/2017 p2 | TSCD0014 | Elhady-FBITSC-PRIV003258-Elhady-FBITSC-PRIV003266 | | NDIU BAC Final Examination Answer Key | | LEP |
| 12/22/2017 p2 | TSCD0015 | Elhady-FBITSC-PRIV003267-Elhady-FBITSC-PRIV003268 | 5/26/2014 | NDIU: Nomination Prioritization Standard | | LEP |
| 12/22/2017 p2 | TSCD0016 | Elhady-FBITSC-PRIV003269-Elhady-FBITSC-PRIV003290 | | TSC Overview PowerPoint | | LEP, SSP |
| 12/22/2017 p2 | TSCD0018 | Elhady-FBITSC-PRIV003294-Elhady-FBITSC-PRIV003303 | | TSC Overview Powerpoint | | LEP, SSP |
| 12/22/2017 p2 | TSCD0022 | Elhady-FBITSC-PRIV003473-Elhady-FBITSC-PRIV003487 | | TSC Overview PowerPoint | | LEP, SSI, SSP |
| 12/22/2017 p2 | TSCD0023 | Elhady-FBITSC-PRIV003488-Elhady-FBITSC-PRIV003515 | | TSC Overview PowerPoint | | LEP, SSI, SSP |
| 12/22/2017 p2 | TSCD0024 | Elhady-FBITSC-PRIV003516-Elhady-FBITSC-PRIV003518 | 12/6/2017 | PowerPoint re: Biographic Criteria | | LEP, SSI |
| 12/22/2017 p2 | TSCD0026 | Elhady-FBITSC-PRIV003520-Elhady-FBITSC-PRIV003535 | | TSC Overview PowerPoint | | LEP, SSI, SSP |
| 12/22/2017 p2 | TSCD0027 | Elhady-FBITSC-PRIV003536-Elhady-FBITSC-PRIV003546 | | TSC Overview Powerpoint | | LEP, SSI, SSP |
| 12/22/2017 p2 | TSCD0029 | Elhady-FBITSC-PRIV003567-Elhady-FBITSC-PRIV003625 | | TSC Overview PowerPoint | | LEP, SSP |
| 12/22/2017 p2 | TSCD0044 | Elhady-FBITSC-PRIV003802-Elhady-FBITSC-PRIV003806 | 10/3/2008 | DOJ Memo from Deputy Attorney General to Heads of Department Components re: Department of Justice Protocol Regarding Terrorist Watchlist Nominations | | LEP |
| 2/16/2018 | TSCE0001 | Elhady-FBITSC-PRIV004627 | 12/8/2017 | 2018 Watchlist Submission Job Aid | | LEP, SSI |
| 2/16/2018 | TSCE0002 | Elhady-FBITSC-PRIV004628-Elhady-FBITSC-PRIV004668 | | Watchlist Submission Form User Guide | | LEP, SSI, SSP |
| 2/16/2018 | TSCE0003 | Elhady-FBITSC-PRIV004669-Elhady-FBITSC-PRIV004678 | 12/8/2017 | Watchlist Submission Form FAQ | | LEP, SSI |

Plaintiffs' Grouped Documents To Compel From Defendants' Privilege Logs

## Dissemination Documents On Government Privilege Log

| PRIVLOG DATE | DOCUMENT # | BATES | DOCUMENT DATE (if available) | DOCUMENT TITLE OR DESCRIPTION | CLAIMED PRIVILEGES |
|---|---|---|---|---|---|
| 11/30/2017 | TSCB0010 | Elhady-FBITSC-PRIV00299-Elhady-FBITSC-PRIV00319 | 1/12/2017 | TSC Power Point regarding Watchlisting and Information Sharing | LEP, SSI, SSP |
| 12/22/2017 p1 | TSCC0003 | Elhady-FBITSC-PRIV002704-Elhady-FBITSC-PRIV002719 | 12/30/2008 | MOU between TSC and Department of Homeland Security re: the Secure Flight Program | LEP, SSP |
| 12/22/2017 p1 | TSCC0004 | Elhady-FBITSC-PRIV002720-Elhady-FBITSC-PRIV002758 | 5/1/2008 | MOU between TSC and Department of Homeland Security re: the Secure Flight Program, Appendix 1 | LEP, SSI, SSP |
| 12/22/2017 p1 | TSCC0005 | Elhady-FBITSC-PRIV002759-Elhady-FBITSC-PRIV002842 | 12/4/2008 | MOU between TSC and Department of Homeland Security re: the Secure Flight Program, Appendix 2 | LEP, SSI, SSP |
| 12/22/2017 p1 | TSCC0006 | Elhady-FBITSC-PRIV002843-Elhady-FBITSC-PRIV002851 | 12/30/2008 | MOU between TSC and Department of Homeland Security re: the Secure Flight Program, Appendix 3 | LEP, SSI, SSP |
| 12/22/2017 p2 | TSCD0001 | Elhady-FBITSC-PRIV003099-Elhady-FBITSC-PRIV003104 | 05/2014 | PowerPoint re: Visa Review and International Liaison Unit Functions at the Terrorist Screening Center | LEP |
| 12/22/2017 p2 | TSCD0002 | Elhady-FBITSC-PRIV003105-Elhady-FBITSC-PRIV003117 | 05/11/2017 | Visa Review: Standard Operation Procedures | LEP, SSP |
| 12/22/2017 p2 | TSCD0034 | Elhady-FBITSC-PRIV003674-Elhady-FBITSC-PRIV003682 | 9/2010 | Memorandum of Understanding between State Dept., Bureau of Consular Affairs and TSC | LEP |
| 12/22/2017 p2 | TSCD0036 | Elhady-FBITSC-PRIV003690-Elhady-FBITSC-PRIV003691 | 4/2012 | Amendment 1 to the MOU between State Dept., Bureau of Consular Affairs and the TSC | LEP |
| 12/22/2017 p2 | TSCD0037 | Elhady-FBITSC-PRIV003692-Elhady-FBITSC-PRIV003699 | 9/2006 | Memorandum of Understanding between the Department of State and TSC | LEP |
| 12/22/2017 p2 | TSCD0039 | Elhady-FBITSC-PRIV003702-Elhady-FBITSC-PRIV003714 | 12/2007 | Addendum A to the MOU between the Department of State and the TSC | LEP, SSP |
| 12/22/2017 p2 | TSCD0040 | Elhady-FBITSC-PRIV003715-Elhady-FBITSC-PRIV003719 | 7/2008 | Addendum B to the MOU between the Department of State and the TSC | LEP |
| 12/22/2017 p2 | TSCD0042 | Elhady-FBITSC-PRIV003724-Elhady-FBITSC-PRIV003726 | 3/2014 | Addendum C to the MOU between the Department of State and the TSC | LEP |
| 12/22/2017 p2 | TSCD0046 | Elhady-FBITSC-PRIV003817-Elhady-FBITSC-PRIV003827 | April 2007 | MOU between TSC and DHS re: Screening for Immigration Benefits | LEP, SSP |
| 12/22/2017 p2 | TSCD0049 | Elhady-FBITSC-PRIV003852-Elhady-FBITSC-PRIV004243 | 7/12/2010 | Memorandum from TSC attaching various MOUs between TSC and DHS and other TSC and DHS documents | LEP, SSI, SSP |
| 12/22/2017 p2 | TSCD0053 | Elhady-FBITSC-PRIV004343-Elhady-FBITSC-PRIV004357 | March 2005 | State Department memorandum and report re: terrorist screening information sharing | LEP |
| 12/22/2017 p2 | TSCD0070 | Elhady-FBITSC-PRIV004548-Elhady-FBITSC-PRIV004561 | November 2012 | Memorandum of Agreement between TSA and the Port Authority of NY and NJ re: Vetting | LEP |

Plaintiffs' Grouped Documents To Compel From Defendants' Privilege Logs

## Dissemination Documents On Government Privilege Log: Seeking Only Further Dissemination Info

| PRIVLOG DATE | DOCUMENT # | BATES | DOCUMENT DATE (if available) | DOCUMENT TITLE OR DESCRIPTION | CLAIMED PRIVILEGES |
|---|---|---|---|---|---|
| 11/15/2017 | TSCA0030-0225 | | Various | Agreements with Foreign Partners re: Sharing of Information | Classified, LEP, SSP, |
| 11/15/2017 | TSCA0229 | | January 2009 | HSPD 6 Foreign Partner Terrorism Screening Information Sharing Strategy Document | Classified, SSP, LEP |
| 11/15/2017 | TSCA0235 | | 8/21/2015 | Foreign Dissemination of Classified Information Policy Guide | Classified, SSP, LEP |
| 11/30/2017 | TSCB0009 | Elhady-FBITSC-PRIV00273-Elhady-FBITSC-PRIV00298 | | TSC Power Point regarding Watchlisting and Information Sharing | Classified, LEP, SSI, SSP |
| 12/22/2017 p1 | TSCC0007 | Elhady-FBITSC-PRIV002852-Elhady-FBITSC-PRIV002855 | 1/23/2012 | Letter of Understanding between TSC and DHS re: Sharing of terrorist screening and biometric information | LEP, SSP |
| 12/22/2017 p1 | TSCC0008 | Elhady-FBITSC-PRIV002856-Elhady-FBITSC-PRIV002858 | 9/22/2014 | Letter of Understanding between TSC and the National Geospatial Intelligence Agency | LEP |
| 12/22/2017 p1 | TSCC0009 | Elhady-FBITSC-PRIV002859-Elhady-FBITSC-PRIV002866 | 6/17/2011 | MOU between TSC and National Institute for Occupational Safety and Health | LEP |
| 12/22/2017 p2 | TSCD0003 | Elhady-FBITSC-PRIV003118-Elhady-FBITSC-PRIV003129 | 09/16/2003 | MOU on the Integration and Use of Screening Info to Protect against Terrorism | Classified, LEP, SSI, SSP |
| 12/22/2017 p2 | TSCD0004 | Elhady-FBITSC-PRIV003130-Elhady-FBITSC-PRIV003140 | 01/2007 | Addendum B to the MOU on the Integration and Use of Screening Info to Protect against Terrorism | LEP, SSI, SSP |
| 12/22/2017 p2 | TSCD0008 | Elhady-FBITSC-PRIV003150-Elhady-FBITSC-PRIV003184 | | TSC Training Powerpoint re: Foreign Government Information | Classified, LEP, SSP |
| 12/22/2017 p2 | TSCD0017 | Elhady-FBITSC-PRIV003291-Elhady-FBITSC-PRIV003293 | | TSC Document re: Foreign Partnerships | Classified, LEP, SSP |
| 12/22/2017 p2 | TSCD0032 | Elhady-FBITSC-PRIV003670-Elhady-FBITSC-PRIV003671 | 9/3/2010 | Memorandum re: National Security Threat Task Force Use of TSDB | LEP |
| 12/22/2017 p2 | TSCD0033 | Elhady-FBITSC-PRIV003672-Elhady-FBITSC-PRIV003673 | 9/3/2010 | Memorandum re: Office of Intelligence and Analysis Use of TSDB | LEP |
| 12/22/2017 p2 | TSCD0045 | Elhady-FBITSC-PRIV003807-Elhady-FBITSC-PRIV003816 | March 2012 | MOU between TSC and USAID re: Use of Terrorist Identity Information | LEP, SSP, OGA |
| 12/22/2017 p2 | TSCD0047 | Elhady-FBITSC-PRIV003828-Elhady-FBITSC-PRIV003839 | September 2014 | MOU between TSC and the Special Inspector General for Afghanistan Reconstruction | LEP |
| 12/22/2017 p2 | TSCD0048 | Elhady-FBITSC-PRIV003840-Elhady-FBITSC-PRIV003851 | April and May 2015 | Modification to the MOU between TSC and USAID re: Use of Terrorist Identity Information | LEP, SSP, OGA |
| 12/22/2017 p2 | TSCD0052 | Elhady-FBITSC-PRIV004333-Elhady-FBITSC-PRIV004342 | 11/13/2012 | Foreign government document re: terrorism screening | LEP, SSP, FGI, OGA |
| 12/22/2017 p2 | TSCD0054 | Elhady-FBITSC-PRIV004358-Elhady-FBITSC-PRIV004371 | March 2014 | Foreign government document re: watchlisting policy | CLASSIFIED, SSP, LEP, FGI, OGA |
| 12/22/2017 p2 | TSCD0056 | Elhady-FBITSC-PRIV004378-Elhady-FBITSC-PRIV004383 | June 2006 | MOU between TSC and NSA | LEP, SSP, other statutory privilege |

Plaintiffs' Grouped Documents To Compel From Defendants' Privilege Logs

| 12/22/2017 p2 | TSCD0057 | Elhady-FBITSC-PRIV004384-Elhady-FBITSC-PRIV004399 | February 2012 | MOU between TSC and the Department of Defense re: Information Sharing | LEP |
| 12/22/2017 p2 | TSCD0058 | Elhady-FBITSC-PRIV004400-Elhady-FBITSC-PRIV004404 | December 2006 | Addendum B to the MOU between TSC and TSA re: Use of Terrorist Information | LEP |
| 12/22/2017 p2 | TSCD0059 | Elhady-FBITSC-PRIV004405-Elhady-FBITSC-PRIV004412 | 07/19/2005 | Interconnection Security Agreement between TSA and TSC | LEP, SSI |
| 12/22/2017 p2 | TSCD0060 | Elhady-FBITSC-PRIV004413-Elhady-FBITSC-PRIV004418 | September 2006 | MOU between TSC and the Overseas Private Investment Corporation re: Terrorist Screening | LEP, SSP, OGA |
| 12/22/2017 p2 | TSCD0061 | Elhady-FBITSC-PRIV004419-Elhady-FBITSC-PRIV004424 | January 2006 | MOU between TSC and the Nuclear Regulatory Commission re: Terrorist Screening | LEP, SSP |
| 12/22/2017 p2 | TSCD0062 | Elhady-FBITSC-PRIV004425-Elhady-FBITSC-PRIV004426 | 10/2/2014 | Letter from DHS to TSC re: agreement to the addition of Appendix to the WLS MOU. | LEP, SSP |
| 12/22/2017 p2 | TSCD0063 | Elhady-FBITSC-PRIV004427-Elhady-FBITSC-PRIV004443 | 05/12/2006 | MOU between TSC and TSA re: Use of Terrorist Information | LEP |

| Screening Policy Documents On Government Privilege Log | | | | | |
| --- | --- | --- | --- | --- | --- |
| PRIVLOG DATE | DOCUMENT # | BATES | DOCUMENT DATE (if available) | DOCUMENT TITLE OR DESCRIPTION | CLAIMED PRIVILEGES |
| 11/15/2017 | TSCA0015 | | 2/23/2017 | Terrorist Review and Screening and Examination Unit SOP | LEP, SSI, SSP |
| 11/15/2017 | TSCA0017 | | 9/1/2015 | Terrorist Screening Operations Center (TSOC) SOP | LEP, SSI, SSP |
| 11/15/2017 | TSCA0018 | | 9/6/2013 | Terrorist Screening Operations Unit (TSOU) Operational Encounter Management SOP | LEP, SSI, SSP |
| 11/15/2017 | TSCA0230 | | | Terrorist Screening Center (TSC) Handling Codes | LEP |
| 11/15/2017 | TSCA0231 | | | Terrorist Screening Center Law Enforcement Information Sheet | LEP |
| 11/15/2017 | TSCA0233 | | | Terrorist Screening Center Identity Intelligence Unit Info Sheet and FAQ | LEP |
| 11/30/2017 | TSCB0012 | Elhady-FBITSC-PRIV00320-Elhady-FBITSC-PRIV00346 | | Terrorist Screening Overview | LEP, SSI, SSP |
| 12/22/2017 p2 | TSCD0050 | Elhady-FBITSC-PRIV004244-Elhady-FBITSC-PRIV004325 | 11/9/2004 | DHS report re: terrorist screening | LEP, SSP |
| 12/22/2017 p2 | TSCD0055 | Elhady-FBITSC-PRIV004372-Elhady-FBITSC-PRIV004377 | March 2006 | MOU between TSC and TSA re: Screening | LEP |
| 12/22/2017 p2 | TSCD0064 | Elhady-FBITSC-PRIV004444-Elhady-FBITSC-PRIV004445 | 02/25/2005 | Letter from TSC to DoD component re: terrorism screening | LEP |
| 12/22/2017 p2 | TSCD0065 | Elhady-FBITSC-PRIV004446-Elhady-FBITSC-PRIV004488 | | An Updated Strategy for Comprehensive Terrorist- Related Screening Procedures | LEP, SSP |
| 12/22/2017 p2 | TSCD0066 | Elhady-FBITSC-PRIV004489-Elhady-FBITSC-PRIV004498 | 4/9/2008 | TSA Aviation Security Directive No. SD 1544-01-20F | LEP, SSI |
| 12/22/2017 p2 | TSCD0071 | Elhady-FBITSC-PRIV004562-Elhady-FBITSC-PRIV004626 | May 2009 | DHS OIG – Role of the No Fly and Selectee Lists in Securing Commercial Aviation | SSI, LEP |

Plaintiffs' Grouped Documents To Compel From Defendants' Privilege Logs

## Redress Policy Documents On Government Privilege Log

| PRIVLOG DATE | DOCUMENT # | BATES | DOCUMENT DATE (if available) | DOCUMENT TITLE OR DESCRIPTION | CLAIMED PRIVILEGES |
|---|---|---|---|---|---|
| 11/15/2017 | TSCA0014 | | 12/8/2015 | TSC - Redress Program Standard Operating Procedure | LEP, SSI |
| 12/22/2017 p2 | TSCD0051 | Elhady-FBITSC-PRIV004326-Elhady-FBITSC-PRIV004332 | 4/9/2015 | U.S. Government Redress Implementation Plan | LEP, |

## Audit Report Documents On Government Privilege Log

| PRIVLOG DATE | DOCUMENT # | BATES | DOCUMENT DATE (if available) | DOCUMENT TITLE OR DESCRIPTION | CLAIMED PRIVILEGES |
|---|---|---|---|---|---|
| 12/22/2017 p1 | TSCC0010 | Elhady-FBITSC-PRIV002867-Elhady-FBITSC-PRIV002989 | Oct. 2007 | GAO Report re: Terrorist Watch List Screening | SSI, LEP |
| 12/22/2017 p1 | TSCC0011 | Elhady-FBITSC-PRIV002990-Elhady-FBITSC-PRIV003098 | March 2014 | DOJ OIG Audit of the FBI's Management of Terrorist Watchlist Nominations | Classified, SSI, SSP |
| 12/22/2017 p2 | TSCD0067 | Elhady-FBITSC-PRIV004499-Elhady-FBITSC-PRIV004521 | July 2012 | FBI TSC Privacy Impact Assessment | LEP, SSP |

## Statistical Report Documents On Government Privilege Log

| PRIVLOG DATE | DOCUMENT # | BATES | DOCUMENT DATE (if available) | DOCUMENT TITLE OR DESCRIPTION | CLAIMED PRIVILEGES |
|---|---|---|---|---|---|
| 12/22/2017 p1 | TSCC0001 | Elhady-FBITSC-PRIV000445-Elhady-FBITSC-PRIV001912 | 2012-2017 | TSDB Director's Monthly Statistical Reports | LEP, SSI, SSP |
| 12/22/2017 p1 | TSCC0002 | Elhady-FBITSC-PRIV001913-Elhady-FBITSC-PRIV002703 | 2012-2017 | TSDB Weekly Statistical Reports | LEP, SSI, SSP |
| 12/22/2017 p2 | TSCD0043 | Elhady-FBITSC-PRIV003727-Elhady-FBITSC-PRIV003801 | 2012-2017 | TSC monthly statistical reports | LEP, SSI, SSP |

# Exhibit L

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division


------------------------------:
                              :
ANAS ELHADY, et al.,          :
            Plaintiffs,       :
                              :
     -vs-                     :      Case No. 1:16-cv-375
                              :
                              :
CHARLES H. KABLE, et al.,     :
            Defendants.       :
                              :
------------------------------:


HEARING ON MOTIONS

February 16, 2018

Before:  John F. Anderson, Mag. Judge


APPEARANCES:

Gadeir I. Abbas, Counsel for the Plaintiffs

Amy Powell, Lauren A. Wetzler, Anthony J. Coppolino, and
Antonia Konkoly, Counsel for the Defendants

1    Codes.  We have very little idea about how those handling codes

2    actually work.  And so, that's like a classic 30(b)(6)

3    deposition topic where there is a general area of relevant

4    interest that requires back and forth between a deponent and

5    the questioner to gather the factual information that will

6    ultimately be relevant to the plaintiffs' claims.

7              THE COURT:  Okay.  Thank you.

8              Well, you know, this is, again, an interesting issue,

9    and I appreciate the parties' briefing on this.

10             I think in -- for the most part, that the Government

11   has done an admirable job in trying to condense this into a

12   list of topics that construed fairly broadly -- and I want to

13   make that clear -- cover the information for the most part that

14   is not well described in the 23 topics that have been set out

15   in the Rule 30(b)(6).

16             A couple of tweaks to that.  And I don't want to, you

17   know -- I'm not going to try and reword them, but I want to

18   make it clear that in the conversations, like in paragraph 6,

19   the TSC sharing of information with other entities, I think it

20   is going to be appropriate to get on a very high level that

21   there is security protocols, and not the specific security

22   protocols, but some issue that deals with how that information

23   is stored and only shared in a secure environment.  Something

24   on a very high level there.  Not necessarily, you know, the

25   details on a granular basis, how that goes.

1          The dealing with the other issues that have come up

2   -- so I think that kind of takes care of the technical issue

3   there.

4          You know, I agree with the Government at this time

5   that the questioning about the 2003 Watchlist Guidance isn't

6   that direct -- 21, that they have done there, I don't think is

7   appropriate.

8          I think questions about, you know -- and I'm trying

9   to find:  The measures undertaken to assure the accuracy and

10  the reliability.  You know, I'm concerned that the Government

11  may take the position that this is a snapshot of what's done

12  exactly today, and not what -- to some extent what the history

13  is of this.

14         I mean, I'm -- I think there needs to be some

15  discussion as to how this has evolved over time, if it has

16  evolved over time.  And what period of time.

17         So I don't, you know, I don't think that just -- in

18  their role in doing things, this isn't their -- this has to be

19  put in some context of a continuum, not just on the day that

20  the deposition gets taken.

21         So, you know, I for the most part am -- well, I guess

22  I really am going to be granting the motion for a protective

23  order to limit the topics to the eight that have been set out.

24         You know, the legal authority issue is one that

25  troubled me a little bit.  You know, I -- and it's one of these

1    things where I'm not -- I don't really think that's the right

2    topic for a 30(b)(6) deposition.  But I do think it's something

3    that the plaintiffs are entitled to know even during the

4    discovery phase.

5              So what I'm going to do is I'm going to give leave

6    for the plaintiff to serve one additional interrogatory that

7    asks a question somewhat like that.  And then, you know, a

8    written response can be prepared that outlines, or objects, or

9    whatever appropriate, but I don't think that's something that

10   needs to be done in a 30(b)(6) deposition.

11             All right.  You know, I've got one motion to

12   continue, and then I've got another joint motion for an

13   extension of the discovery deadlines.

14             You know, I do think it's appropriate to allow the

15   Groh deposition to be taken on March 1.

16             I am confused about the one that got filed last

17   night.  Who's going to address that?

18             MR. ABBAS:  I am happy to go first, or if you would

19   like to go first --

20             THE COURT:  All right.  I mean, this is -- first of

21   all, it's got different dates in it that, you know, you're

22   asking for.  I don't understand that.  I don't understand how

23   you anticipate this would impact the other timing in the case.

24             You know, you've got -- one part you say you want to

25   go until the 23rd.  Another part you say you want to go until

1  served.  There are no new document requests being served.

2  There are, you know, no -- that we're now -- we can fight over

3  what has been served, but we can't start serving new document

4  requests and things like that.  Okay?

5          MS. POWELL:  Okay.

6          THE COURT:  Thank you.

7          NOTE:  The hearing concluded at 11:51 a.m.

8     -------------------------------------------------

9

10         C E R T I F I C A T E  of  T R A N S C R I P T I O N

11

12         I hereby certify that the foregoing is a true and

13  accurate transcript that was typed by me from the recording

14  provided by the court.  Any errors or omissions are due to the

15  inability of the undersigned to hear or understand said

16  recording.

17

18         Further, that I am neither counsel for, related to,

19  nor employed by any of the parties to the above-styled action,

20  and that I am not financially or otherwise interested in the

21  outcome of the above-styled action.

22

23                        /s/ Norman B. Linnell

24                        Norman B. Linnell

25                        Court Reporter - USDC/EDVA

# Exhibit M



Planet Depos®
We Make It *Happen*™

# Transcript of Timothy P. Groh, Designated Representative

**Date:** March 1, 2018
**Case:** El Hady, et al. -v- Kable, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

Transcript of Timothy P. Groh, Designated Representative     1 (1 to 4)
Conducted on March 1, 2018

**Page 1**

```
         UNITED STATES DISTRICT COURT

         EASTERN DISTRICT OF VIRGINIA

              ALEXANDRIA DIVISION

- - - - - - - - - - - - x

ANAS EL HADY, ET        :

AL.,                    :

        Plaintiffs,  :   Case No. 16-cv-00375

        v.              :

CHARLES H. KABLE,       :

Director of the         :

Terrorist Screening     :

Center; in his          :

official capacity,      :

et al.,                 :

        Defendants.  :

- - - - - - - - - - - - x

Videotaped Deposition of Terror Screening Center

  By and through its Designated Representative

         TIMOTHY P. GROH

           Washington, D.C.

        Thursday, March 1, 2018

             9:07 a.m.
```

**Page 2**

Deposition of TIMOTHY P. GROH, held at the offices of:

Department of Homeland Security
20 Massachusetts Avenue, N.W.
Washington, D.C. 20001

Pursuant to Notice, before Carla L. Andrews, Notary Public in and for the District of Columbia.

Job No.: 180014
Pages: 1 - 389

**Page 3**

```
A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFFS:

    GADEIR ABBAS, ESQUIRE

    LENA MASRI, ESQUIRE

    CAROLYN HOMER, ESQUIRE

    Council on American-Islamic Relations

    453 New Jersey Avenue, SE

    Washington, D.C. 20003

    202-742-6423


ON BEHALF OF THE DEFENDANT CHARLES H. KABLE:

    ANTONIA KONKOLY, ESQUIRE

    United States Attorney's Office

    2100 Jamieson Avenue

    Alexandria, Virginia 22314-5702

    703-299-3799
```

**Page 4**

```
APPEARANCE CONTINUED:

    AMY POWELL, ESQUIRE (via phone)

    U.S. DEPARTMENT OF JUSTICE

    310 New Bern Avenue

    Federal Building, Suite 800

    Raleigh, North Carolina 27601

    202-514-9836


    DENA M. ROTH, ESQUIRE

    U.S. DEPARTMENT OF JUSTICE

    20 Massachusetts Avenue, N.W.

    Room 7112

    Washington, D.C. 20529-2099


    JENNIFER GREENBAND, ESQUIRE

    KEVIN HOULIHAN, ESQUIRE (via phone)

    U.S. Department of Justice

    601 12th Street, South

    Arlington, Virginia 20598
```

---

**Page 5**

1  APPEARANCES (CONTINUED):

2      JAYME KANTOR, ESQUIRE

3      YEORA PARK, ESQUIRE

4      U.S. Department of Justice

5      935 Pennsylvania Avenue, N.W.

6      Suite 10140

7      Washington, D.C.  20535

8      202-324-7194

9  ALSO PRESENT:

10      KEVIN BOGUCKI, Terror Screening Center

11      Law Unit

12      MELISSA PACHIKARA, FBI

13      JOSEPH CLARK, U.S. Customs and Border

14      Protection

15      JOE DONOHOE, Videographer

16

17

18

19

20

21

22

---

**Page 6**

1          C O N T E N T S

2  EXAMINATION OF TIMOTHY P. GROH          PAGE

3  By Mr. Abbas                  7

4

5          E X H I B I T S

6      (Attached to transcript)

7  DEPOSITION EXHIBIT                PAGE

8  A -- Overview of Watchlisting Process   325

9      and Procedures

10  B -- Defendants' Objections to        350

11      Interrogatories

12

13

14

15

16

17

18

19

20

21

22

---

**Page 7**

1            P-R-O-C-E-E-D-I-N-G-S

2

3          THE VIDEOGRAPHER:  Here begins disk

4  number one in the videotaped deposition of Timothy

5  Paul Groh in the matter of Elhady, et al. versus

6  Kable, et al, in the District Court for the Eastern

7  District of Virginia, Case No. 16 CV-375.  Today's

8  date is March 1, 2018, and the time on the video

9  monitor is 9:07 a.m.  The videographer for today is

10  Joe Donohoe representing Planet Depos.  This

11  videotaped deposition is taking place at 20

12  Massachusetts Avenue, Northwest, Washington, D.C.

13          Would counsel please voice-identify

14  themselves and state whom they represent?

15          MR. ABBAS:  This is Gadeir Abbas.  I am

16  here for the plaintiffs.

17          MS. KONKOLY:  Antonia Konkoly, for the

18  Department of Justice.

19          MR. BOGUCKI:  Kevin Bogucki, Terror

20  Screening Center Law Unit.

21          MS. GREENBAND:  Jennifer Greenband,

22  Transportation Security Administration.

---

**Page 8**

1          MS. KANTOR:  Jayme Kantor, FBI.

2          MS. PARK:  Yeora Park, TSC.

3          MS. PACHIKARA:  Melissa Pachikara, FBI.

4          MR. CLARK:  Joseph Clark, U.S. Customs

5  and Border Protection.

6          MS. ROTH:  Dena Roth, Department of

7  Justice.

8          MS. HOMER:  And Carolyn Homer, for the

9  plaintiffs.

10          THE VIDEOGRAPHER:  The court reporter

11  today is Carla Andrews representing Planet Depos.

12          Would the court reporter please swear in

13  the witness?

14  Thereupon,

15          TIMOTHY P. GROH,

16  was called as a witness and, after being duly sworn

17  by the notary, was examined and testified as

18  follows:

19          EXAMINATION BY COUNSEL

20              FOR PLAINTIFFS

21  BY MR. ABBAS:

22      Q.  Good morning, Mr. Groh.

Transcript of Timothy P. Groh, Designated Representative
Conducted on March 1, 2018

13

1  stated in my previous answer, established and gave
2  rise to it.  But there have been many subsequent
3  executive orders and other direction from the
4  attorney general that modifies that.  So I think
5  there's a whole constellation of authorities that
6  govern what we do.
7        BY MR. ABBAS:
8    Q.   Does another agency control the Terror
9  Screening Center?
10        MS. KONKOLY: Objection.  Vague.
11        THE WITNESS:  Again, what do you mean by
12  control?
13        BY MR. ABBAS:
14    Q.   Can another federal government agency
15  tell the Terror Screening Center what to do?
16        MS. KONKOLY: Objection.  Vague.
17        THE WITNESS:  The Terror Screening Center
18  is an interagency body, which works to facilitate
19  the mission of many other agencies.  So to say that
20  can another agency order us -- is that what you are
21  saying?  Tell us to do something we don't want to
22  do?

14

1        BY MR. ABBAS:
2    Q.   Sure.  Let me ask you that.  Can another
3  agency command the Terror Screening Center to do
4  something?
5        MS. KONKOLY: Objection.  Vague.
6        THE WITNESS:  The Terror Screening Center
7  is administered by the FBI, so that our chain of
8  command goes through the FBI.
9        BY MR. ABBAS:
10    Q.   So the FBI can tell the Terror Screening
11  Center what to do?
12        MS. KONKOLY: Objection.
13  Mischaracterized prior testimony.
14        BY MR. ABBAS:
15    Q.   I will withdraw my question.  Can the FBI
16  tell the Terror Screening Center what to do?
17        MS. KONKOLY: Objection.  Vague.  Go
18  ahead.
19        THE WITNESS:  Generally, yes.
20        BY MR. ABBAS:
21    Q.   Please elaborate on why you attach the
22  qualification generally to your answer.

15

1    A.   Because in the service of our other
2  partners, both from the nominations and the
3  encounter side of things, we work to facilitate
4  their mission.  Our policies and procedures
5  generally are governed by whatever the current Watch
6  Listing Guidance is, which is promulgated by an
7  interagency -- you know, the Watch Listing Advisory
8  Council, which certainly includes many, many other
9  parties other than the FBI.  Generally, that council
10  works through consensus.  If there is ultimately a
11  disagreement, then that's going to be handled
12  through other processes.  And the FBI, of course, is
13  also part of that.
14    Q.   As an aside, Mr. Groh, at times you will
15  hear me say Arizona.  At times you will hear me say
16  Indiana.  I am just making notes to myself in the
17  transcript.  So please excuse me.  What agencies are
18  a part of the Watch Listing Advisory Council?
19        MS. KONKOLY: Objection.  A complete
20  answer to that question would implicate law
21  enforcement and potentially state secrets
22  privileges.  But you can answer to the extent that

16

1  you can without waiving either of those.
2        THE WITNESS:  Sure.  It is basically made
3  up of agencies that are involved in either
4  nominating identities to the Terror Screening
5  Database or that then screen from our database.
6  That would certainly include our colleagues from
7  both of those pools of organizations.  It does
8  include, of course, TSA.  It does include the FBI.
9        BY MR. ABBAS:
10    Q.   You can go ahead.
11    A.   And it includes, for instance, members of
12  the intelligence community.  But I can't get into
13  more detail as to specifics with that.
14    Q.   I am going -- I don't think you answered
15  the question.  What agencies comprise the Watch
16  Listing Advisory Council?
17        MS. KONKOLY: I am going to assert the
18  same objection that a comprehensive answer to that
19  question would implicate the law enforcement
20  privilege.  I believe the witness has already
21  answered to the extent that he can without waiving
22  the privilege.  To the extent there is anything

61

1  question.  When did the inclusion standards of the
2  TSDB first come into being?
3        MS. KONKOLY:  Objection.  Vague.
4  Objection.  Beyond the scope of the protective
5  order.  You can answer to the extent that you can.
6        THE WITNESS:  I don't know precisely when
7  the first time the definition was written down going
8  back to my previous answers about when the Watch
9  Listing Guidance was first promulgated.  But I don't
10 believe that there was ever a different standard
11 used.  So whenever the TSDB actually started
12 operating, that would have been the time the
13 reasonable suspicion standard began to be used.
14       BY MR. ABBAS:
15    Q.    And it has always been the same?
16       MS. KONKOLY:  Objection.
17 Mischaracterizes prior testimony.
18       BY MR. ABBAS:
19    Q.    I am sorry.  Let me withdraw that
20 question.  The TSDB inclusion standard has always
21 been the same, correct?
22       MS. KONKOLY:  Objection.

62

1  Mischaracterizes prior testimony.
2        THE WITNESS:  To the best of my
3  knowledge, the overall standard has been the same.
4        BY MR. ABBAS:
5     Q.    And what do you mean by -- the overall is
6  a little squishy.  The TSDB inclusion standard has
7  always been the same, correct?
8     A.    The reasonable suspicion standard has
9  always been, to my knowledge, the same.
10    Q.    Is there another TSDB inclusion standard?
11       MS. KONKOLY:  Objection.  Vague.
12 Objection.  Potential --
13       BY MR. ABBAS:
14    Q.    And I am sorry.  Let me withdraw that
15 question.  Is there another TSDB inclusion standard
16 other than the reasonable suspicion standard that
17 you mentioned?
18       MS. KONKOLY:  Objection.  Vague.
19 Objection.  Potentially calls for law enforcement or
20 state secrets-privileged information.  You can
21 answer to the extent that you can.
22       THE WITNESS:  So there are certainly

63

1  additional standards for outside of the KST
2  standard.  For instance, the criteria for no fly and
3  selectee subcompoents of the TSDB.
4        BY MR. ABBAS:
5     Q.    Can you be on the selectee list and not
6  on -- I am sorry.  Can you be on the selectee list
7  and not on the Terror Screening Database?  Let me
8  start again.  Can a person be on a selectee list but
9  not in the Terror Screening Database?
10    A.    No.
11    Q.    Can a person be on the No-Fly List but
12 not on the Terror Screening Database?
13    A.    No.
14    Q.    So everyone on a selectee list and the
15 No-Fly List is also in the Terror Screening
16 Database, correct?
17    A.    That is correct.
18    Q.    Can a person be included on the terror --
19 I am sorry.  Has the -- can a person be included in
20 the Terror Screening Database and not satisfy TSDB's
21 inclusion standard?
22       MS. KONKOLY:  Objection.  I am going to

64

1  object on the ground of vagueness.  Also,
2  potentially calls for law enforcement sensitive
3  information and potentially state secrets.  You can
4  answer to the extent that you can.
5        THE WITNESS:  Can you restate the precise
6  question?
7        MR. ABBAS:  Can you read back the
8  question?
9        (The read was read.)
10       MS. KONKOLY:  Same objection.
11       THE WITNESS:  What do you mean by the
12 TSDB inclusion standard?  Sorry.
13       BY MR. ABBAS:
14    Q.    You testified that the TSDB inclusion
15 standard is a reasonable suspicion standard,
16 correct?
17    A.    Correct.
18    Q.    We will -- I will ask you some more
19 questions about the consent of that reasonable
20 suspicion standard.  But right now I just want to
21 know how can a person be in the terror screening data --
22 I am sorry.  Can TSC include a person in the Terror

Transcript of Timothy P. Groh, Designated Representative    17 (65 to 68)
Conducted on March 1, 2018

65

1 Screening Database that does not satisfy the TSDB
2 inclusion standard?
3      MS. KONKOLY: Objection. Vague.
4 Objection. Potentially calls for law enforcement or
5 state secrets information. But you can answer to
6 the extent that you can.
7      THE WITNESS: There are limited purposes
8 for which individuals who do not meet the reasonable
9 suspicion standard can be included in the Terror
10 Screening Database in order to facilitate screening
11 processes specifically for the Department of
12 Homeland Security and Department of State.
13      BY MR. ABBAS:
14      Q.    So the Terror Screening Center does not
15 apply the TSDB inclusion standards to every person
16 that is in the TSDB?
17      MS. KONKOLY: Objection. Vague. Calls
18 for -- objection. Vague.
19      THE WITNESS: I would clarify that you
20 keep use the word TSDB inclusion standard. That's
21 not a word I have used. I would say that is the
22 reasonable suspicion standard that's applied to

66

1 known or suspected terrorists.
2      BY MR. ABBAS:
3      Q.    So we are going to argue -- not argue. I
4 am going to ask you questions about the content of
5 the reasonable suspicion standard. And I am using
6 the inclusion standard, because I don't think it is
7 a reasonable suspicion standard. But is the
8 standard that TSC applies to determine whether
9 someone is included in the TSDB, you refer to that
10 as the reasonable suspicion standard, correct?
11      A.    That is correct.
12      Q.    Okay. I refer to that as the inclusion
13 standard.
14      A.    Okay. I am just saying that my concern
15 about that is precision is important here.
16      Q.    Of course.
17      A.    It is going to be confusing going
18 forward. And we may have to keep clarifying this
19 because this is complex stuff. So we have got to be
20 precise.
21      Q.    And I appreciate you working together
22 with me as we are trying to clarify the language. I

67

1 have not worked at the TSC, so I don't know your
2 language.
3      A.    I understand.
4      Q.    Does the TSC -- let me try asking the
5 question a different way. Does the TSC apply the
6 same standard to every person in the Terror
7 Screening Database?
8      MS. KONKOLY: Objection. Vague.
9 Objection. Calls for information that's potentially
10 -- a full answer may call for information protected
11 by the law enforcement or state secrets privilege.
12 But you can answer to the extent that you can.
13      THE WITNESS: I believe, as I just
14 testified, the answer to that is no.
15      BY MR. ABBAS:
16      Q.    Why doesn't the Terror Screening Center
17 apply the same standards to every person in the
18 Terror Screening Center? I am sorry. Let me start
19 that again. Why doesn't the Terror Screening Center
20 apply the same standard to each person in the Terror
21 Screening Database?
22      MS. KONKOLY: Objection. Vague.

68

1 Objection. Calls for information potentially
2 protected by the law enforcement or state secrets
3 privilege. You can answer to the extent that you
4 can.
5      THE WITNESS: Because we were directed by
6 the Watch Listing Advisory Council in certain
7 instances for certain purposes to apply a different
8 standard.
9      BY MR. ABBAS:
10      Q.    When did the Watch Listing Advisory
11 Council tell the Terror Screening Center to
12 establish exceptions to what you are calling the
13 reasonable suspicion standard of the TSDB?
14      MS. KONKOLY: Objection. Vague.
15 Objection. Potentially calls for law enforcement
16 sensitive information. You can answer to the extent
17 that you can answer. And SSI.
18      THE WITNESS: I think I can only give a
19 general answer to that to say that was after 2009.
20      BY MR. ABBAS:
21      Q.    Okay. Are the exceptions to the TSDB
22 inclusion standards memorialized in the document?

Transcript of Timothy P. Groh, Designated Representative                18 (69 to 72)
Conducted on March 1, 2018

---

69

1       MS. KONKOLY: Objection. Vague.
2   Objection. Potentially calls for information within
3   the law enforcement or state secrets privileges.
4   You can answer to the extent that you can.
5       THE WITNESS: I think they would be
6   memorialized in various documents.
7       BY MR. ABBAS:
8   Q.   What documents memorialized the various
9   exceptions to the TSDB's inclusion standard?
10      MS. KONKOLY: I am going to object on the
11  basis of law enforcement privilege and potentially
12  state secrets. I am going to instruct the witness
13  not to answer that question.
14      MR. ABBAS: I am just asking for the
15  titles of the documents. Are you asserting the --
16  what privileges are you asserting over the titles of
17  the document that memorialized the exceptions to the
18  TSDB inclusion standards?
19      MS. KONKOLY: Law enforcement,
20  potentially state secrets. I am instructing him not
21  to answer.
22      MR. ABBAS: Over the names of the

---

70

1   documents?
2       MS. KONKOLY: My objection is on the
3   record.
4       BY MR. ABBAS:
5   Q.   Is the watch listing -- does the Watch
6   Listing Guidance articulate the exceptions to the
7   TSDB inclusion standards?
8       MS. KONKOLY: Objection. I am going to
9   object on the basis of law enforcement privilege,
10  potentially state secrets. And I am going to
11  instruct the witness not to answer that question.
12      BY MR. ABBAS:
13  Q.   How many exceptions are there to the TSDB
14  inclusion standard?
15      MS. KONKOLY: I am going to again object
16  on the basis of the law enforcement privilege,
17  potentially the state secrets privilege. And I am
18  going to, again, instruct the witness not to answer
19  that question.
20      MR. ABBAS: How many -- you are asserting
21  the privilege over how many -- he said that there
22  are various exceptions. I want to know whether

---

71

1   there is two exceptions or 40 exceptions. You are
2   asserting the state secrets privilege and the law
3   enforcement privilege over the number of exceptions
4   to the TSDB inclusion standards?
5       MS. KONKOLY: My objection is on the
6   record.
7       MR. ABBAS: I am clarifying. Are you
8   objecting? Are you asserting the state secrets
9   privilege and the law enforcement privilege over the
10  number of exceptions to the TSDB inclusion standard?
11      MS. KONKOLY: My objection is on the
12  record. And yes, I am.
13      BY MR. ABBAS:
14  Q.   Could the president order the Terror
15  Screening Center to place a person in the TSDB who
16  did not satisfy the TSDB inclusion standard?
17      MS. KONKOLY: Objection. Calls for a
18  legal conclusion. Objection. Vague. Objection.
19  Calls for speculation. Objection. Potentially law
20  enforcement or state secrets. But you can answer if
21  you can.
22      THE WITNESS: I think, subject to the

---

72

1   Constitution and laws of the United States, the
2   president ultimately is a part of the Executive
3   Branch who can give orders to the TSC, which could
4   include what you are describing.
5       BY MR. ABBAS:
6   Q.   Is the TSDB inclusion standard -- never
7   mind. Are there more than five exceptions to the
8   TSDB inclusion standards?
9       MS. KONKOLY: I am going to object on the
10  basis of the law enforcement privilege, potentially
11  the state secrets privilege. And I am going to
12  instruct the witness not to answer that question.
13      BY MR. ABBAS:
14  Q.   Are there more than 10 exceptions to the
15  TSDB inclusion standards?
16      MS. KONKOLY: I am going to again object
17  on the basis of the law enforcement privilege,
18  potentially state secrets, and instruct the witness
19  not to answer.
20      BY MR. ABBAS:
21  Q.   The Watch Listing Advisory Council
22  created exceptions to the TSDB inclusion standards

---

73

1  in 2009, correct?
2          MS. KONKOLY: Objection.
3  Mischaracterizes prior testimony. Objection.
4  Vague.
5          THE WITNESS: I am just testifying that
6  it was after 2009 -- during or after 2009.
7          BY MR. ABBAS:
8      Q.   So you are not sure as to the year. But
9  it was at least after 2009 that the exceptions were
10 created?
11    **A.   That's correct.**
12     Q.   Prior to 2009, were there any exceptions
13 to the TSDB inclusion standard?
14         MS. KONKOLY: Objection. Vague.
15 Objection. Scope of the protective order. You can
16 answer to the extent that you know.
17         THE WITNESS: I don't believe so.
18         BY MR. ABBAS:
19     Q.   Why did the Terror Screening Center
20 create exceptions -- I am sorry. Your testimony is
21 that the Watch Listing Advisory Council created the
22 exceptions to the TSDB inclusion standards, correct?

74

1          MS. KONKOLY: Objection. Vague.
2          THE WITNESS: I mean, just given the word
3  created, but effectively agree that there would be
4  exceptions.
5          BY MR. ABBAS:
6      Q.   What was the rationale of the Watch
7  Listing -- I'm sorry. What was the rationale of the
8  Watch Listing Advisory Council when it created
9  exceptions to the TSDB inclusion standard?
10         MS. KONKOLY: Objection. That calls for
11 information protected by the law enforcement
12 privilege, potentially state secrets privilege. I
13 am instructing the witness not to answer.
14         BY MR. ABBAS:
15     Q.   On how many occasions has the Watch
16 Listing Advisory Council created exceptions to the
17 TSDB inclusion standard?
18         MS. KONKOLY: Objection. Calls for
19 information protected by the law enforcement
20 privilege, potentially the state secrets privilege.
21 I am instructing the witness not to answer.
22         MR. ABBAS: The number of times that the

75

1  Watch Listing Advisory Council has issued new
2  exceptions to the TSDB inclusion standard, you are
3  asserting the law enforcement privilege and the
4  state secrets privilege over the number of times
5  that the TSDB inclusion standards have had
6  exceptions made to them?
7          MS. KONKOLY: My objection is on the
8  record and yes.
9          BY MR. ABBAS:
10     Q.   Has the -- I am sorry. Has the Watch
11 Listing Advisory Council issued -- I am sorry. Has
12 the Watch Listing Advisory Council created
13 exceptions to the TSDB inclusion standards on
14 multiple occasions?
15         MS. KONKOLY: Objection. Calls for
16 information within the law enforcement privilege,
17 potentially the state secrets privilege. And I am
18 going to instruct him not to answer that question.
19         MR. ABBAS: Whether or not the Watch
20 Listing Advisory Council has done so on multiple
21 occasions? That's potentially a state secret if
22 they have done it twice or three or more than once?

76

1  You have told me that they have done it once. Why
2  can't Mr. Groh tell me if it has happened more than
3  once? What's the --
4          MS. KONKOLY: My objection is on the
5  record. The instruction stands. You are welcome to
6  ask your next question.
7          BY MR. ABBAS:
8      Q.   Are there persons listed in the Terror
9  Screening Database for whom the TSC lacks reasonable
10 suspicion that they are a known or suspected
11 terrorist?
12         MS. KONKOLY: Objection. Potentially
13 calls for law enforcement, potentially state
14 secrets. You can answer that if you can.
15         THE WITNESS: I would say that, yes, with
16 a caveat that those individuals are in there for
17 limited purposes. And so being in the database is
18 not the same as being available to all potential
19 screeners.
20         BY MR. ABBAS:
21     Q.   What are the limited purposes that TSC --
22 I am sorry. Let me start all over. What are the

Case 1:16-cv-00375-AJT-JFA   Document 139-1   Filed 03/15/18   Page 355 of 417 PageID# 5022
Transcript of Timothy P. Groh, Designated Representative                    20 (77 to 80)
Conducted on March 1, 2018

77

1 limited purposes for which the TSC will allow an
2 individual to be included in the TSDB who does not
3 satisfy the TSDB inclusion standard?
4     MS. KONKOLY: Objection. Asked and
5 answered. Objection. Calls for information
6 protected by the law enforcement privilege,
7 potentially the state secrets privilege. You can
8 answer that if you can.
9     THE WITNESS: So as I previously stated,
10 it is for screening conducted by the Department of
11 Homeland Security and by the Department of State.
12     BY MR. ABBAS:
13   Q.   What screening does the Department of
14 Homeland Security and the Department of State do via
15 these TSDB inclusion standard exceptions?
16     MS. KONKOLY: Objection. An answer to
17 that would call for information protected by the law
18 enforcement privilege and potentially the state
19 secrets privilege. I am instructing the witness not
20 to answer.
21     BY MR. ABBAS:
22   Q.   So you can tell me which agency, but you

78

1 can't tell me what the agency does with the
2 information. And just tell me what TSC's knowledge
3 is of what those two agencies do with the exceptions
4 to the TSB inclusion standard?
5     MS. KONKOLY: I will add the objection
6 that that would call for information within
7 the purview of other agencies. And Dr. Groh could
8 not bind -- Mr. Groh could not bind them. But I am
9 instructing the witness not to answer on the basis
10 of privileges I have asserted here, which are on the
11 record.
12     BY MR. ABBAS:
13   Q.   Is there a document that memorializes how
14 DHS utilizes this TSDB inclusion standard exception
15 for their screening purposes?
16     MS. KONKOLY: I am going to object to
17 scope potentially but also the fact that that answer
18 would call for information within the purview of
19 another agency. And so, therefore, Mr. Groh can't
20 bind TSA. You can answer, however, as to your
21 understanding.
22     THE WITNESS: Yes. There are -- I am

79

1 aware of certain documents. I assume there are
2 other documents.
3     MR. ABBAS: Arizona.
4     BY MR. ABBAS:
5   Q.   What documents memorialized what
6 screening DHS does via these TSDB inclusion standard
7 exceptions?
8     MS. KONKOLY: Objection. Calls for
9 information protected by the law enforcement
10 privilege, potentially state secrets privilege. On
11 that basis, I am going to instruct the witness not
12 to answer. However, I will also add the objection
13 that the answer would call for information within
14 the purview of other agencies in any event.
15     MR. ABBAS: Can you read back the
16 question. I forgot it already. I apologize.
17     (The record was read.)
18     MS. KONKOLY: I am asserting the same
19 privilege and issuing the same instruction not to
20 answer that question.
21     MR. ABBAS: You are asserting the law
22 enforcement privilege and state secrets privilege

80

1 over the name of the documents that memorialized the
2 agreement. I am sorry. Memorialized how DHS
3 utilizes the TSDB inclusion standard exceptions.
4     MS. KONKOLY: Yes, Gadeir. My objection
5 is on the record.
6     BY MR. ABBAS:
7   Q.   How many documents memorialized how
8 DHS -- I'm sorry. How many documents memorialized
9 how DHS utilizes the TSDB inclusion standard
10 exceptions for their screening?
11     MS. KONKOLY: Objection on the basis of
12 the law enforcement privilege. Potentially state
13 secrets. Also, it would call for information within
14 the purview of another agency. I am instructing the
15 witness not to answer.
16     MR. ABBAS: Over the number of documents?
17     MS. KONKOLY: Gadeir, my objection is on
18 the record.
19     MR. ABBAS: I am just clarifying. I am
20 just making sure of that.
21     MS. KONKOLY: I understood the question,
22 and my objection is on the record.

Transcript of Timothy P. Groh, Designated Representative     21 (81 to 84)
Conducted on March 1, 2018

81

1        MR. ABBAS: So you have asserted the law
2  enforcement privilege and the state secrets
3  privilege over the names of the documents and the
4  number of documents that memorialize the ways that
5  DHS utilizes the TSDB inclusion standard exceptions
6  for their screeening.
7        MS. KONKOLY: Yes, Gadeir. I understood
8  your question. And I stated my objection and
9  instruction for the record.
10       MR. ABBAS: Thank you.
11       BY MR. ABBAS:
12   Q.    What are the purposes of the Terror
13  Screening Database?
14       MS. KONKOLY: Objection. Vague.
15  Objection. Potentially calls for information within
16  the law enforcement or the state secrets,
17  potentially SSI. But you can answer that to the
18  extent that you can.
19       THE WITNESS: The TSDB's purpose is to
20  consolidate what once were disparate watch-listed --
21  disparate watch lists to provide a common operating
22  picture for the intelligence community screeners and

82

1  the law enforcement community in order to better
2  prevent terrorism.
3        BY MR. ABBAS:
4    Q.   Is the purpose of the Terror Screening
5  Database to prevent terrorism?
6        MS. KONKOLY: Objection. Vague.
7  Objection. Potentially calls for law enforcement
8  sensitive information. You can answer if you can.
9        BY MR. ABBAS:
10   Q.   I am sorry. I am going to withdraw that
11  question. I forgot to ask a few questions regarding
12  the inclusion standards. So I apologize for jumping
13  around. I just missed something. Does the TSC
14  allow the FBI to utilize the TSDB to coerce
15  individuals into becoming informants?
16       MS. KONKOLY: Objection. Misleading.
17  Objection. Vague. Objection. Calls for law
18  enforcement and potentially state secrets privileged
19  information. You can answer to the extent that you
20  can.
21       THE WITNESS: No.
22       MR. ABBAS:

83

1    Q.   Does -- is it TSC's understanding that
2  the FBI utilizes the TSDB for investigative
3  purposes?
4        MS. KONKOLY: Objection insofar as it
5  calls for an answer that goes to information owned
6  by another agency. But you can answer as to your
7  understanding.
8        THE WITNESS: Yes, we support FBI
9  investigations.
10   Q.   Does the TSDB support FBI investigations
11  by helping the FBI recruit informants?
12       MS. KONKOLY: Objection. Misleading.
13  Objection. Potentially law enforcement, potentially
14  state secrets. You can answer to the extent that
15  you can.
16       THE WITNESS: We support investigations.
17  From time to time investigations lead to the
18  recruitment of informants. But I wouldn't say there
19  is any direct relationship between recruit
20  informants and the TSDB.
21       BY MR. ABBAS:
22   Q.   Does TSC have any knowledge that the FBI

84

1  utilizes the TSDB to recruit informants?
2        MS. KONKOLY: Objection. Potentially law
3  enforcement or state secrets. Objection. Vague.
4  Objection. Potentially calls for information within
5  the purview of another agency. You can answer to
6  the extent that you can.
7        THE WITNESS: As I previously stated, we
8  support investigations generally. The FBI does
9  recruit informants, but I don't think it is fair to
10  draw kind of a direct relationship between the
11  presence of TSDB and being used to coerce people to
12  becoming informants.
13       BY MR. ABBAS:
14   Q.   Is the recruitment of informants an
15  appropriate use of the TSDB in the view of Terror
16  Screening Center?
17       MS. KONKOLY: Objection. Vague.
18  Objection. Potentially law enforcement privileged.
19  Potentially goes to information in the purview of
20  another agency. You can answer to the extent that
21  you can.
22       THE WITNESS: My opinion -- inasmuch as

Transcript of Timothy P. Groh, Designated Representative

29 (113 to 116)

Conducted on March 1, 2018

113

1  dissemination of encounter information with TSDB
2  listees?  I am going to say that question again.  I
3  am going to try it again.  Does TSC have agreements
4  or understandings with Federal Government agencies
5  that receive TSDB listee encounter information?
6        MS. KONKOLY:  Is that the end of the
7  question?
8        MR. ABBAS:  Yes.
9        MS. KONKOLY:  Objection.  Vague.
10 Objection potentially law enforcement.  Objection.
11 Compound.  You can answer to the extent that you
12 can.
13       THE WITNESS:  Generally, yes.  I would
14 say some of that is governed by via the Watch
15 Listing Advisory Council from a substantive
16 perspective.  But then there is -- I would say there
17 are other technical agreements with, you know, how
18 that can happen.
19 BY MR. ABBAS:
20    Q.   Are those technical agreements that you
21 are referring to memorialized in documents?
22       MS. KONKOLY:  Objection.  Vague.

114

1  Objection.  Potentially law enforcement.  You can
2  answer to the extent that you can.
3        THE WITNESS:  Typically, those will be
4  memorialized in a memorandum of understanding with
5  whoever those partner agencies are.
6        MR. ABBAS:  Arizona.
7        THE WITNESS:  What happens if I say
8  Arizona?
9        MR. ABBAS:  We go to lunch.
10       There is five minutes left on the tape.
11 Why don't we stop now and take 10 minutes while he
12 switches tape.
13       THE VIDEOGRAPHER:  We are going off the
14 record.  The time is 11:13 a.m.
15       (A recess was held.)
16       THE VIDEOGRAPHER:  Here begins disk
17 number two in the videotaped deposition of Timothy
18 Paul Groh.  The time on the video monitor is
19 11:27 a.m.  We have been on the record for 1 hour 51
20 minutes and 35 seconds.  And we are back on the
21 record.
22       MS. KONKOLY:  And I was just noting in

115

1  the break that before we start, defendants have
2  consulted regarding a certain line of questioning as
3  to the members of the Watch Listing Advisory
4  Council.  And we have determined that there is
5  certain information that we can clarify and disclose
6  on the public record.  So Mr. Groh is prepared to do
7  that.
8        THE WITNESS:  So you had asked me
9  previously who sits on the council.  And so we are
10 prepared to advise that also on the council is
11 Department of Homeland Security.  And the National
12 Counter-Terrorism Center is the co-chair of the
13 Watch Listing Advisory Council together with the
14 TSC.
15    Q.   So the Watch Listing Advisory Council is
16 co-chaired by TSC and NCTC?
17    A.   Correct.
18    Q.   And DHS, TSC, and CBP are all members of
19 the Watch Listing Advisory Council?
20       MS. KONKOLY:  Asked and answered.  That
21 would be in the record earlier as to who we were
22 able to disclose.

116

1        MR. ABBAS:  I am not certain that's in
2  the record.
3        THE WITNESS:  So I would say DHS and, of
4  course, CBP, and TSA subcomponents of DHS.
5  BY MR. ABBAS:
6     Q.   And the FBI is also a member of the Watch
7  Listing Advisory Council?
8     A.   Yes.
9     Q.   All of the defendants in this action are
10 members of the Watch Listing Advisory Council?
11       MS. KONKOLY:  Objection.  Calls for a
12 legal conclusion.
13 BY MR. ABBAS:
14    Q.   Oh, you don't know the defendants.
15 That's fine.  That's fair.
16    A.   I don't remember precisely.
17    Q.   I withdraw the question.  Yeah, that's
18 fine.  So we are going to get back to TSDB purposes.
19 And I know -- I think I apologized right before the
20 break that I am probably going to cover some ground
21 that I have already covered.  And that's just
22 because I have a bad memory.

Transcript of Timothy P. Groh, Designated Representative      38 (149 to 152)
Conducted on March 1, 2018

149

1          MS. KONKOLY: Objection insofar as that
2   answer calls for information protected by the law
3   enforcement privilege.  You can answer to the extent
4   you can.
5          THE WITNESS: So the National
6   Counter-Terrorism Center maintains what's known as
7   TIDE, the Terrorist Identities Datamart Environment.
8   And the FBI maintains Sentinel.  And a distinction
9   is made between records that relate to what we would
10  define as domestic terrorism and what we would
11  define as international terrorism.
12         BY MR. ABBAS:
13     Q.   Does TSC possess complete access to
14  NCTC's TIDE database?
15         MS. KONKOLY: Objection.  Vague.
16  Objection insofar as it calls for law enforcement
17  sensitive information.  You can answer if you can.
18         THE WITNESS: When you say -- I have to
19  qualify complete.  There may be some administrative
20  functions or other pieces that we don't have access
21  to.  But I would say generally the parts that would
22  contain derogatory information supporting TSDB, yes,

150

1   we have access.
2          BY MR. ABBAS:
3      Q.   And so thanks for that clarification.
4   Let me just rephrase.  TSC has complete access to
5   the substantive derogatory information.  I'm sorry.
6   Let me start all over.  TSC has complete access to
7   the derogatory information contained in NCTC's TIDE
8   database, correct?
9      **A.   Yes.**
10         MS. KONKOLY: Objection insofar as it
11  calls for a law enforcement privilege.  And asked
12  and answered, but.
13         BY MR. ABBAS:
14     Q.   Does -- so Sentinel is the FBI's
15  database?
16     **A.   Yes.**
17     Q.   TSC -- and that database contains
18  derogatory information that forms the basis of the
19  TSDB?
20         MS. KONKOLY: Objection.  Vague.
21         THE WITNESS: For domestic terrorism
22  cases.

151

1          BY MR. ABBAS:
2      Q.   Does TSC have access to all derogatory
3   information contained in the FBI's Sentinel
4   database?
5          MS. KONKOLY: Objection insofar as it
6   calls for information protected by the law
7   enforcement privilege.  You can answer to the extent
8   that you can.
9          THE WITNESS: Yes.
10         BY MR. ABBAS:
11     Q.   Does TSC -- okay.  So does TSC tell
12  other -- I'm sorry.  Does TSC direct recipients of
13  TSDB information about how the recipients of TSDB
14  information should utilize TSDB information?
15         MS. KONKOLY: Objection.  Vague.
16  Objection insofar as it calls for information
17  protected by law enforcement.  You can answer to the
18  extent that you can.
19         THE WITNESS: No.  We provide the
20  information, and then they exercise their mission
21  pursuant to their own authorities.  They make their
22  own decisions with what to do with it.

152

1          MR. ABBAS: So it is 12:10 now.  I am
2   happy to keep on going, but lunch is whenever you
3   want it to be.  So when --
4          THE WITNESS: I usually don't eat lunch.
5   But I assume that members of the team here probably
6   do.
7          MS. KONKOLY: We have only been going
8   about 40 minutes since we came back.  I would like
9   to keep going.
10         MR. ABBAS: But I would like to set a
11  time for lunch.  Like do you want to set it for 1,
12  1:15?  I am happy to set it as you want to set it.
13  But I would like to set a time for lunch.
14         MS. KONKOLY: 1:30 would get us halfway.
15  Maybe we could take a short break in between.
16         MR. ABBAS: 1:30 feels a little far away.
17  I think I could probably -- I will need a break by
18  one.
19         MS. KONKOLY: Okay.  We can say one.
20         BY MR. ABBAS:
21     Q.   Beyond establishing a common operating
22  picture, does TSC maintain TSDB for any other

Case 1:16-cv-00375-AJT-JFA   Document 139-1   Filed 03/15/18   Page 359 of 417 PageID#
5026
Transcript of Timothy P. Groh, Designated Representative       39 (153 to 156)
Conducted on March 1, 2018

153

1  purposes?
2        MS. KONKOLY: Objection. Vague.
3  Objection. Insofar as it calls for information
4  protected by the law enforcement privilege. You can
5  answer to the extent that you can.
6        THE WITNESS: I think I did already. I
7  think, you know, the general -- it is a common
8  operating picture. But inasmuch as that's not
9  identical to facilitating the missions of our
10 partner agencies and, in general, preventing
11 terrorism, I would just add those two things.
12       BY MR. ABBAS:
13   Q.   How does TSC's TSDB detect and stop
14 terrorism?
15       MS. KONKOLY: Objection. Vague.
16 Objection. Calls for speculation. Objection
17 insofar as it calls for information protected by the
18 law enforcement or potentially the state secrets or
19 SSI privileges. You can answer to the extent you
20 can.
21       THE WITNESS: It provides a mechanism for
22 agencies effectively through an established set of

154

1  practices and procedures to share information in a
2  way that was not available -- in many ways that were
3  not available before so they can each exercise their
4  authorities to accomplish their missions, but also
5  kind of through the aggregation of those
6  responsibilities to effectively use existing
7  authorities to detect and stop terrorism. Sometimes
8  it is the detection. And sometimes it is the actual
9  interdiction or, you know, the actual prevention of
10 terrorist activities or at least supports
11 investigations that will accomplish those goals.
12       BY MR. ABBAS:
13   Q.   But TSC doesn't determine how
14 investigations are run, correct?
15   A.   Correct.
16   Q.   TSC does not conduct its own
17 investigations, correct?
18   A.   Correct.
19   Q.   And TSC does not decide who is arrested
20 or charged with a crime?
21   A.   Absolutely not.
22   Q.   TSC does not decide who screens at the

155

1  airports?
2        MS. KONKOLY: Objection insofar as that
3  calls for law enforcement or SSI information. But
4  you can answer.
5        THE WITNESS: If you mean how they are
6  screened at the airport, I mean, obviously they --
7  putting people on the list, that may affect
8  somebody's potential screening. But -- but, you
9  know, we do not tell TSA how to screen, if that's
10 what you mean.
11       BY MR. ABBAS:
12   Q.   Can -- when TSC disseminates -- I am
13 sorry. When TSC disseminates TSDB information to
14 TSA, does that information compel TSA to screen the
15 listee in a particular manner?
16       MS. KONKOLY: Objection insofar as that
17 calls for information protected by SSI or law
18 enforcement. Also to the extent that it calls for
19 information within the purview of the Transportation
20 Security Administration. It goes to TSC. But you
21 can answer to the extent that you can and vague.
22       THE WITNESS: Yeah, inasmuch as -- I

156

1  mean, we certainly do not set standards for TSA on
2  how they -- on how they screen.
3        BY MR. ABBAS:
4    Q.   It is up to them?
5    A.   Yes.
6    Q.   Is there anything an agency can do with
7  TSDB information that would cause TSC to stop giving
8  the agency TSDB information?
9        MS. KONKOLY: Objection. Vague. Calls
10 for speculation.
11       THE WITNESS: If -- if the TSC believed
12 an agency was violating the law or the Constitution,
13 then we would certainly raise that, you know,
14 through the Watch Listing Advisory Council. Or if
15 it was exigent through the chain of command of the
16 FBI, I can expect that that would be raised to
17 competent authority to address that.
18       BY MR. ABBAS:
19   Q.   Does the TSC consider it to be part of
20 its role in the watch listing process to decide who
21 receives TSDB information?
22       MS. KONKOLY: Objection. Vague.

Transcript of Timothy P. Groh, Designated Representative       40 (157 to 160)
Conducted on March 1, 2018

---

157

1     THE WITNESS: Again, through the Watch
2  Listing Advisory Council, I think everybody that
3  sits on the council plays a role in deciding what is
4  -- what would be effective, appropriate, efficient,
5  legal, all of those things. So I think all of those
6  uses of information would be the kinds of things we
7  would discuss in that forum.
8     BY MR. ABBAS:
9     Q.   Does the TSC impose any limits on its --
10 let me start over. Does the TSC impose any limits
11 on agencies that receive -- let me start all over
12 one more time. Does TSC impose any limits on
13 recipients of TSDB information that limit those
14 recipients from further sharing TSDB information?
15    MS. KONKOLY: Objection. Vague, compound
16 insofar as it implicates law enforcement privilege,
17 but you can answer.
18    THE WITNESS: I think it goes back to the
19 aforementioned. I mean, we have an understanding of
20 the sort of use of that information through the
21 Watch Listing Advisory Council. There also may be
22 in some of those technical MOU's I described

---

158

1  earlier, there may be more specific parameters that
2  we agree. But that's a bilateral agreement between
3  the agencies.
4        And, again, if we thought that somebody
5  was not living up to that agreement, we would either
6  address it directly with that organization or
7  through the aforementioned processes.
8     MR. ABBAS: Arizona.
9     BY MR. ABBAS:
10    Q.   Who decides which foreign governments
11 receive TSDB information?
12    MS. KONKOLY: Objection. Vague.
13 Objection insofar as that calls for the law
14 enforcement -- information protected by the law
15 enforcement or potential state secrets. But you can
16 answer to the extent that you can.
17    THE WITNESS: I don't believe I can
18 answer that without violating a privilege.
19    MR. ABBAS: What's the privilege? What's
20 the privilege over who decides what foreign
21 governments receive TSDB information?
22    MS. KONKOLY: The law enforcement or

---

159

1  potentially state secrets.
2     BY MR. ABBAS:
3     Q.   Does -- can TSC refuse to disseminate
4  TSDB information to foreign governments that engage
5  in a pattern of human rights abuses?
6     MS. KONKOLY: Objection. Calls for
7  speculation. Objection. Vague. Objection insofar
8  as that calls for information protected by the law
9  enforcement or the state secrets privilege. You can
10 answer to the extent you can.
11    THE WITNESS: I think the only thing I
12 can say about that is the potential for that is
13 absolutely a consideration in that aforementioned
14 decision.
15    BY MR. ABBAS:
16    Q.   Does TSC disseminate TSDB information to
17 foreign governments that engage in patterns of
18 torture?
19    MS. KONKOLY: Objection. Vague.
20 Objection. Calls for speculation, legal conclusion,
21 also insofar as it implicates information protected
22 by the law enforcement or potentially state secrets.

---

160

1  You can answer to the extent that you can.
2     THE WITNESS: Boy, that's a loaded word
3  that I hesitate to understand what your definition
4  of that is. And so I think that's probably so vague
5  that I can't answer it.
6     BY MR. ABBAS:
7     Q.   We will go with a more general term.
8  Human rights abuses.
9     MR. ABBAS: Can you read -- I forget the
10 question. Can you read it back just to me so that I
11 will see it again?
12    (The record was read.)
13    MR. ABBAS: So I will rephrase the
14 question.
15    BY MR. ABBAS:
16    Q.   Does TSC disseminate TSDB information to
17 foreign governments that engage in a pattern of
18 human rights abuses?
19    MS. KONKOLY: Objection. Asked and
20 answered. Objection. Vague. Objection. Calls for
21 a legal conclusion. Objection insofar as that
22 information calls for information protected by

---

Transcript of Timothy P. Groh, Designated Representative

61 (241 to 244)

Conducted on March 1, 2018

241

1 enforcement or SSI privileges.  You can answer to
2 the extent you can.  I will also interpose that I
3 believe that question has been asked and answered.
4      THE WITNESS:  I am sorry.  Repeat that
5 one more time for me.
6      MR. ABBAS:  Can you read it back.
7      (The record was read.)
8      THE WITNESS:  I am trying to determine
9 what the word access means in this question.  For
10 instance, when you describe TSA, you know, and
11 denials of boardings on aircraft, obviously an
12 airline is aware that one of their passengers has to
13 some degree been denied boarding.  So I don't know
14 what you mean.  You mean the ability to search TSDB
15 information or that could be in some downstream
16 process somehow?
17      Q.   Both.  So, yeah, I would agree with you
18 that the airlines have some kind of access to TSDB
19 information, because certainly when a boarding press
20 printing result doesn't issue because of a person's
21 status on the No-Fly List, the airline gets that
22 indication whether or not the passenger does.  But

242

1 beyond airlines, what other non-governmental
2 entities receive access to information -- I am
3 sorry.  What other non-airline -- I am sorry.  Aside
4 from airlines, what other non-governmental entities
5 receive access of any kind to TSDB information?
6      MS. KONKOLY:  Objection.  Vague.
7 Objection.  Compound.  Objection insofar as that
8 information calls -- that answer calls for
9 information protected by the law enforcement
10 privilege.  You can answer to the extent you can.
11      THE WITNESS:  Outside the example we have
12 excluded, I am not aware of any.
13      BY MR. ABBAS:
14      Q.   Do -- are there other non-governmental --
15 are there other non-governmental entities who learn
16 of TSDB information via the utilization of TSDB
17 information?
18      MS. KONKOLY:  Objection.  Vague.
19 Objection insofar as the answer would call for
20 information protected by the law enforcement
21 privilege.  You can answer to the extent that you
22 can.

243

1      THE WITNESS:  Again, subject to just -- I
2 think it is the same as the previous answer.  Not
3 that I am aware of, excluding some interaction with
4 airlines.  And even in that case, I would say that
5 the example you described with a boarding pass or
6 such that there are other ways that somebody can
7 receive additional screening or be denied boarding.
8 So, you know, that information is used in that case.
9 And I think often people assume they know what's
10 going on.  But it is sometimes more complicated than
11 that.  But subject to that exclusion, none that I am
12 aware of.
13      BY MR. ABBAS:
14      Q.   Federal Government employees have access
15 to TSDB information, correct?
16      MS. KONKOLY:  Objection.  Misleading.
17 Objection.  Vague.
18      Q.   Let me -- it's not a trick question.
19 There are some Federal Government employees that
20 have access to TSDB information, correct?
21
22      **A.   Yes.**

244

1      Q.   Are there contractors to the Federal
2 Government who are not Federal Government employees
3 who also have access to TSDB information?
4      **A.   Yes.**
5      Q.   Are there contractors at TSC who are not
6 employees of TSC who have access to TSDB
7 information?
8      **A.   I would call them contract employees of**
9 **TSDB.  But yes, they are contractors, not Federal**
10 **Government employees.**
11      Q.   They are not -- so there are
12 non-employees that TSC -- I am sorry.  There are
13 persons who are not TSC -- I am sorry.  Let me start
14 over again.  There are persons who work for
15 companies that contract with the Federal Government
16 who have access via their employer to TSDB
17 information?
18      MS. KONKOLY:  Objection.  Vague.
19 Objection.  Asked and answered.
20      THE WITNESS:  They work -- I wouldn't say
21 they have -- they have access because their employer
22 has a contract.  But they don't have access via

Transcript of Timothy P. Groh, Designated Representative
Conducted on March 1, 2018

---

245

1  their own employer.  They have access because they
2  work at the TSC.
3         BY MR. ABBAS:
4     Q.   Which companies does -- which contracting
5  companies does TSC have agreements with?
6         MS. KONKOLY:  Objection insofar as that
7  question calls for information protected by the law
8  enforcement privilege.  But you can answer if you
9  can.
10        THE WITNESS:  It is what it is.
11        BY MR. ABBAS:
12    Q.   It is what it is.
13    **A.   So yeah, I think that's the prime -- the**
14 **two primary companies.  One called STOPSO.**
15    Q.   Can you spell that?
16    **A.   That's their acronym S-T-O-P-S-O.  The**
17 **second would be Sotera Defense.**
18    Q.   Can you spell that?
19    **A.   S-O-T-E-R-A.**
20    Q.   S-O?
21    **A.   T-E-R-A, I believe.**
22    Q.   STOPSO and Sotera?

---

246

1     **A.   Yes.**
2     Q.   I'm sorry.  Go ahead.
3     **A.   No, go ahead.**
4     Q.   No, no, no.  Please.
5     **A.   No, no.  I am good.**
6     Q.   Is STOPSO an acronym or is that just like
7  a cute name?
8     **A.   I am trying to remember exactly.  It's**
9  **strategic --**
10    Q.   Oh, you think it is an acronym?
11    **A.   I think it is an acronym, yes.**
12    Q.   Got it.  Strategic Operation Solutions?
13    **A.   That sounds right.**
14    Q.   Is STOPSO a U.S. company?
15    **A.   Yes.**
16    Q.   Is Sotera a U.S. company?
17    **A.   Yes.**
18    Q.   How long has TSC had a contract with
19 STOPSO?  Well, I am sorry.  Let me back up.  Does
20 TSC have an agreement with STOPSO?
21    **A.   Yes.**
22        MR. ABBAS:  Arizona.

---

247

1         BY MR. ABBAS:
2     Q.   How long has TSC had an agreement with
3  STOPSO?
4     **A.   The current contract is, I believe, in**
5  **its fourth year.  There may -- I believe that STOPSO**
6  **has for some time before that.  But I don't know**
7  **offhand exactly when their first interaction with**
8  **TSC was.  I believe there was a period before the**
9  **current contract.  But the current one is in the**
10 **fourth year.**
11    Q.   In the fourth year?
12    **A.   Yes.**
13    Q.   Got it.  How much does TSC pay STOPSO?
14        MS. KONKOLY:  Objection insofar as that
15 question calls for information protected by the law
16 enforcement privilege or proprietary information.
17 But you can answer to the extent that you can.
18        MR. ABBAS:  So hold on.  I want to
19 understand the objections.  So the amount of money
20 that TSC spends on STOPSO is proprietary
21 information?
22        MS. KONKOLY:  I don't know if it is.  I

---

248

1  am raising the potential objection and allowing the
2  witness to instruct if he can or to answer if he
3  can.
4         MR. ABBAS:  Are you instructing him not
5  --
6         MS. KONKOLY:  No.
7         MR. ABBAS:  -- to provide proprietary
8  information?
9         MS. KONKOLY:  I did not make an
10 instruction not to answer.  I said you can answer to
11 the extent that you can.
12        MR. ABBAS:  And I want to understand the
13 law enforcement privilege assertion.  Why was --
14        MS. KONKOLY:  It was to the extent that.
15 And I am telling the witness that he can answer to
16 the extent that he can.
17        BY MR. ABBAS:
18    Q.   Sure.  Okay.
19    **A.   I don't -- I don't recall exactly what --**
20 **I don't manage the contract, per se.  And I don't**
21 **recall exactly what -- what we are paying them in**
22 **any given period of time.**

---

249

1    Q.   Is it millions of dollars?
2    **A.   Yes.**
3         MS. KONKOLY:  Objection.  Calls for
4 speculation.
5    BY MR. ABBAS:
6    Q.   Is it over $10 million?
7         MS. KONKOLY:  I am going to object again
8 that this calls for speculation.  I am also going to
9 note that these questions are outside the scope of
10 the protective order entered by the court.  I will
11 allow the witness to answer this question.  But if
12 this proceeds too much further, I have to --
13        MR. ABBAS:  These are dissemination
14 questions.  The size of the contract bears on how
15 many people STOPSO has working -- STOPSO.
16        MS. KONKOLY:  Objection stands.  You can
17 answer to the extent that you can.
18        THE WITNESS:  I believe it is likely more
19 than $10 million.  Beyond that, I would be wildly
20 speculating.
21        BY MR. ABBAS:
22   Q.   Are all these STOPSO contractors located

250

1 at the Terror Screening Center's headquarters in
2 Vienna, Virginia?
3    **A.   Yes.  Every one that we employ from
4 STOPSO would work at TSC.**
5    Q.   How many contractors from -- how many
6 contractors from STOPSO are working at the Terror
7 Screening Center's headquarters in Vienna, Virginia?
8         MS. KONKOLY:  Objection.  Calls for
9 speculation.
10        THE WITNESS:  First, let me clarify.
11 There is one other -- there is -- the contract calls
12 for them to also work at one other site beyond the
13 TSC in Vienna.  So there is one additional.  Beyond
14 that, I can't tell you -- I don't know exactly how
15 many of the contractors work for STOPSO.  They also
16 have arrangements with some subcontractors through
17 that arrangement that I really don't know a lot of
18 particulars about.  They all work at the TSC.
19        BY MR. ABBAS:
20   Q.   So TSC contracts with STOPSO, and then
21 STOPSO contracts with other people.  And they all
22 are in Vienna, Virginia at the Terror Screening

251

1 Center Headquarters?
2    **A.   And one other small site.**
3    Q.   Where is that other small site?
4    **A.   I don't think I can say.**
5         MS. KONKOLY:  Objection insofar as that
6 answer calls for information protected by the law
7 enforcement privilege.
8         BY MR. ABBAS:
9    Q.   Is that other site a Terror Screening
10 Center office?
11        MS. KONKOLY:  Objection insofar as the
12 answer would call for information protected by the
13 law enforcement privilege.  You can answer if you
14 can.
15        THE WITNESS:  Yes.
16        BY MR. ABBAS:
17   Q.   What is your best estimate of how many
18 contractors work out of the TSC Headquarters in
19 Vienna, Virginia whether they work ultimately for
20 STOPSO or one of the subcontractors of STOPSO?
21        MS. KONKOLY:  Objection.  Compound.
22 Objection.  Calls for speculation.

252

1         THE WITNESS:  Approximately 300.
2         BY MR. ABBAS:
3    Q.   There's 300 STOPSO contractors or STOPSO
4 subcontractors that work at the Terror Screening
5 Center?
6    **A.   300 STOPSO contractors or Sotera.**
7    Q.   So you are not sure how many -- is it
8 about half and half between STOPSO and Sotera?
9         MS. KONKOLY:  Objection.  Calls for
10 speculation.
11        THE WITNESS:  Yeah, I couldn't tell you.
12        BY MR. ABBAS:
13   Q.   I mean, is it -- like is it really
14 lopsided where STOPSO has three people and Sotera
15 has 297 people?  Is it split somewhere down -- I
16 mean, give me what your sense is.
17        MS. KONKOLY:  Calls for speculation.
18        THE WITNESS:  My sense, which is an
19 estimate, is it is maybe two thirds STOPSO or
20 subcontractors and about one third Sotera.  Sotera
21 handles IT development.  STOPSO handles most other
22 things.

Transcript of Timothy P. Groh, Designated Representative
Conducted on March 1, 2018

64 (253 to 256)

253

BY MR. ABBAS:
2    Q.   What's -- what are those other things
3  that STOPSO handles?
4    **A.   They work together with the government**
5  **employees for all the things we have been talking**
6  **about.**
7    Q.   Is a STOPSO -- are there STOPSO
8  contractors that can accept nominations on behalf of
9  TSC to the TSDB?
10       MS. KONKOLY:  Objection insofar as that
11  question calls for information protected by the law
12  enforcement privilege.  You can answer if you can.
13       THE WITNESS:  Not for U.S. persons.
14       BY MR. ABBAS:
15    Q.   So with regards to U.S. persons, the only
16  individuals who can accept the nomination of a U.S.
17  person to the TSDB are TSC employees, correct?
18    **A.   Yes.  I would say government employees**
19  **just to add that qualification.  Some of our**
20  **personnel actually work for other government**
21  **agencies that are detailed to the TSC.**
22    Q.   Got it.  What else does -- what else do

254

1  STOPSO contractors do?  I am sorry.  Let me ask you
2  this.  Why?  Why is it that STOPSO contractors can
3  accept the nominations of non-U.S. persons to the
4  TSDB, whereas U.S.-person nominations can only be
5  accepted by Federal Government employees?
6       MS. KONKOLY:  Objection insofar as that
7  answer would call for information protected by the
8  law enforcement privilege.  But you can answer if
9  you can.
10       THE WITNESS:  Well, I think it would
11  require me to draw a legal conclusion.
12       BY MR. ABBAS:
13    Q.   Has that always been -- has it always
14  been the case that STOPSO contractors cannot accept
15  the nominations of U.S. persons to the TSDB?
16       MS. KONKOLY:  Objection as to scope.
17       THE WITNESS:  I don't know if -- I don't
18  know if it has always -- if it never changed along
19  the way.
20       BY MR. ABBAS:
21    Q.   Is it TSC's testimony today that STOPSO
22  contractors have never been able to accept the

255

1  nominations of U.S. persons to the TSDB?
2       MS. KONKOLY:  Objection.
3  Mischaracterizes his prior testimony.  Objection as
4  to scope of the approved topics for this deposition.
5  You can answer to the extent you can.
6       THE WITNESS:  I think I just answered.  I
7  don't know that that role has always been the case.
8  I know what it is now.
9       MR. ABBAS:  Indiana.
10       BY MR. ABBAS:
11    Q.   Who made the rule that STOPSO contractors
12  cannot accept the nominations of U.S. persons to the
13  TSDB?
14       MS. KONKOLY:  Objection insofar as that
15  information -- as that question calls for
16  information protected by the law enforcement
17  privilege.  You can answer to the extent that you
18  can.
19       THE WITNESS:  I presume TSC management.
20       BY MR. ABBAS:
21    Q.   And you don't know when TSC management
22  made the decision to forbid STOPSO contractors from

256

1  accepting U.S.-person TSDB nominations?
2    **A.   It may have always been the case, so I**
3  **don't know that it was decision.**
4       MR. ABBAS:  Sure.  Indiana.
5       BY MR. ABBAS:
6    Q.   Do the STOPSO -- I know -- so right now
7  today, STOPSO contractors do not have the authority
8  to accept TSDB nominations of U.S. persons, correct?
9    **A.   Not the final authority.**
10    Q.   They can make a recommendation about
11  whether a nomination of a U.S. person to the TSDB
12  should be accepted?
13    **A.   Effectively, yes.**
14    Q.   Has -- what does Sotera do for the Terror
15  Screening Center?
16       MS. KONKOLY:  Objection.  Vague.
17       BY MR. ABBAS:
18    Q.   Well, hold on.  Let me withdraw that
19  question.  Sotera is a U.S. company that contracts
20  with the Terror Screening Center, correct?
21    **A.   Yes.**
22    Q.   There is an agreement between Sotera and

257

1  the Terror Screening Center that governs the
2  services that Sotera provide TSC, correct?
3  **A.  Yes, the contract.**
4     Q.   When did Sotera and TSC enter into a
5  contract?
6        MS. KONKOLY:  Objection.  Scope.  You can
7  answer if you know.
8        THE WITNESS:  Most recently it was
9  sometime last year.  And I believe they were the
10 incumbent.  So it was awarded to them after a
11 competition.  So they had -- they had a previous
12 contract.  And I am not sure before that contract.
13       BY MR. ABBAS:
14    Q.   When was the -- so as far as you know,
15 how long has Sotera and TSC been in a contract
16 together?
17 **A.  I would have to say at least likely six**
18 **years.  It was probably a five-year period of**
19 **performance before.  And it was re-competed last**
20 **year almost exactly a year, maybe a little bit more.**
21    Q.   What other companies competed for the
22 contract that Sotera competed for?

259

1        look at those contracts.  I can't tell you if he had
2        some role in some final review of that.  Also, who
3        would have been involved would have been our --
4        would have been the FBI's IT -- IT branch from a
5        technical perspective.  So it is not entirely TSC.
6        BY MR. ABBAS:
7           Q.   Who -- so let's back up to STOPSO.  Did
8        TSC decide to hire STOPSO?
9           MS. KONKOLY:  Objection.  Scope.  You can
10       answer if you know.
11          MR. ABBAS:  These are all dissemination
12       questions?
13          MS. KONKOLY:  And the objection stands.
14       He can answer if he knows.
15          THE WITNESS:  I am not an expert on
16       procurement.  It would have gone through, I think,
17       the departmental.  So for Department of Justice, it
18       would have gone through Department of Justice
19       procurement and then ultimately the FBI procurement
20       process.  Beyond that, I am not able to tell you.  I
21       didn't participate in it.
22          MR. ABBAS:  Indiana.

258

1        MS. KONKOLY:  Objection.  Scope.  You can
2  answer if you know.
3        THE WITNESS:  I don't remember.  I wasn't
4  on the selection.
5        BY MR. ABBAS:
6     Q.   Who was on the Selection Committee?
7        MS. KONKOLY:  Objection.  Scope.
8  Objection.  Privacy Act.
9        THE WITNESS:  I don't recall.
10       BY MR. ABBAS:
11    Q.   Yeah.  And I don't want names.  I really
12 don't.  Was the -- who is the head of the Terror
13 Screening Center?
14 **A.  Charles Kable.**
15    Q.   Was Charles Kable involved with deciding
16 which company was going to provide the services that
17 Sotera ultimately provided to TSC?
18       MS. KONKOLY:  I am going to object.  This
19 question is outside of the scope of the agreed-upon
20 topics.  You can answer if you know.
21       THE WITNESS:  I don't believe he was on
22 the Technical Review Committee.  The folks actually

260

1        BY MR. ABBAS:
2           Q.   Who decided that TSC was worth a contract
3        with Sotera?
4           MS. KONKOLY:  Again, objection as to this
5        being outside of the scope of the designated topics.
6        You can answer if you know.
7           THE WITNESS:  It would ultimately be
8        awarded by the contracting officer for that
9        particular contract.
10          BY MR. ABBAS:
11          Q.   Who is the contracting officer for the
12       Sotera contract?
13          MS. KONKOLY:  Objection.  Privacy Act.
14          BY MR. ABBAS:
15          Q.   I am not asking for a name.  Just like --
16       I'm sorry.  What agency was -- is the contracting
17       officer for the Sotera agreement employed by?
18          MS. KONKOLY:  Objection.  Scope.  This is
19       not within the designated topics for this
20       deposition.  You can answer if you happen to know.
21          THE WITNESS:  I believe the FBI.
22          BY MR. ABBAS:

Transcript of Timothy P. Groh, Designated Representative    66 (261 to 264)
Conducted on March 1, 2018

261

1    Q.    And the contracting officer, that's what
2 you called him or her?
3    **A.    It is a term of art.  It is a designated**
4 **position, yes.**
5    Q.    And likely does the term of art mean that
6 that's the person who has the kind of final
7 authority to enter the agency into the contract?
8    **A.    I believe that's generally the case.**
9    Q.    And so with regards to the Sotera
10 contracts, there was an FBI contracting officer that
11 had the authority to enter TSC into that contract?
12       MS. KONKOLY: Objection as to scope.  You
13 can answer if you happen to know.
14       THE WITNESS: I believe that's how it
15 works.
16       BY MR. ABBAS:
17    Q.    With regard to the STOPSO contract, was
18 it also an FBI contracting officer who entered TSC
19 into the contract with STOPSO?
20       MS. KONKOLY: Objection as to scope.  You
21 can answer if you know.
22       THE WITNESS: That would be the normal

262

1 course of things.  I have no reason to believe that
2 wouldn't have what happened.
3       BY MR. ABBAS:
4    Q.    Why is the FBI deciding who TSC contracts
5 with?
6       MS. KONKOLY: Objection.  Calls for
7 speculation.  Objection as to this being outside of
8 the scope of the designated topics for this
9 deposition.  Objection.  Calls for a legal
10 conclusion.  You can answer if you know.
11       THE WITNESS: The TSC is administered by
12 the FBI.  And the TSC is not large enough to provide
13 all of those different services.
14       BY MR. ABBAS:
15    Q.    How many employees does TSC have?
16    **A.    Do you mean government, contract, both?**
17    Q.    So you said that there is about 300
18 contractors that provide services to the Terror
19 Screening Center, correct?
20    **A.    Yes.**
21    Q.    So let's put them to the side.  How many
22 individuals does the Terror Screening Center employ?

263

1    **A.    Approximately 200 total individuals**
2 **outside of contractors.**
3    Q.    And other agencies assign their employees
4 to the Terror Screening Center like on detail.  Is
5 that what the language is?
6    **A.    Fair enough, yes.**
7       MS. KONKOLY: Objection.  Vague.
8       THE WITNESS: And I included that in the
9 200.
10       BY MR. ABBAS:
11    Q.    Oh, okay, okay.  And I just want to -- I
12 am only talking about the people that -- when a
13 Terror Screening Center employee gets a check, like
14 their paycheck, does it say the Terror Screening
15 Center?  Does it say Charles Kable on it?
16    **A.    No.  Nobody is paid by the Terror**
17 **Screening Center.**
18    Q.    Who pays Terror Screening Center
19 employees?
20       MS. KONKOLY: Objection.  Outside of
21 scope.  You can answer if you happen to know.
22       THE WITNESS: If -- well, their home

264

1 agency indicates.  If they are an FBI employee, the
2 FBI.  If they were a DHS employee, it would come
3 from whatever DHS component that they worked for.
4       BY MR. ABBAS:
5    Q.    Right.  But Charles Kable is not on
6 assignment.  You are not on assignment?
7    **A.    Uh-huh.**
8    Q.    You know, you are a Terror Screening
9 Center employee, correct?
10    **A.    My check says FBI.**
11    Q.    So for Terror Screening Center employees,
12 their checks say FBI?
13    **A.    Yes.**
14    Q.    Charles Kable's check says?
15    **A.    Would say FBI.**
16    **A.    Would say FBI.  The persons at the Terror**
17 Screening Center that accept nominations of U.S.
18 persons to the TSDB, do their checks as well say FBI
19 on them?
20    **A.    If they are FBI employees.**
21    Q.    So there are some persons who accept
22 nominations of U.S. -- I am going to start again.  I

Transcript of Timothy P. Groh, Designated Representative                    67 (265 to 268)
Conducted on March 1, 2018

265

1   am not going to.  I am actually going to change
2   directions.  Do STOPSO contractors have access to
3   TSDB information that regards U.S. persons in the
4   TSDB?
5          MS. KONKOLY:  Objection.  Vague.
6   Objection insofar as the answer would call for
7   information protected by the law enforcement
8   privilege.  You can answer if you can.
9          THE WITNESS:  Yes.
10         BY MR. ABBAS:
11    Q.   Do Sotera employees - do Sotera
12  contractors have access to TSDB information
13  regarding U.S. persons on the TSDB there?
14         MS. KONKOLY:  Objection.  Vague.
15  Objection insofar as the answer calls for
16  information protected by the law enforcement
17  privilege.  You can answer if you can.
18         THE WITNESS:  Some would, yes.
19         BY MR. ABBAS:
20    Q.   Does TSC have a view as to whether TSDB
21  listees like being in the Terror Screening Center
22  database?

266

1          MS. KONKOLY:  Objection.  Vague.
2   Objection.  Calls for speculation.
3          THE WITNESS:  I almost don't know how to
4   answer that.  Do they like being in the TSDB?  One,
5   I don't -- if they know.
6          BY MR. ABBAS:
7     Q.   Sure.
8     **A.   Then, sure, I could speculate that people**
9   **might not like that idea.**
10    Q.   Why?  Why does TSC believe that persons
11  in the TSDB would not like being in the TSDB?
12         MS. KONKOLY:  Objection.  Vague.
13  Objection.  Calls for speculation.
14         THE WITNESS:  I can think of a variety of
15  different reasons that people --
16         BY MR. ABBAS:
17    Q.   I would like all of the reasons.  I would
18  like all of the variety of reasons you can think of?
19    **A.   Okay.  Then how much time have we got**
20  **left?**
21    Q.   We will spend 20 minutes.
22    **A.   So I would say --**

267

1          MS. KONKOLY:  And let just put an
2   objection that that's vague and calls for
3   speculation.  It is not within the scope of the
4   topics here.  You can answer to the extent you feel
5   you can.
6          THE WITNESS:  In the first instance, I
7   think someone that is involved in terrorism who is
8   trying to further whatever their ultimate aim is
9   would be disheartened to know that their -- that
10  they had been detected and that they might need --
11  you know, that their intentions might be thwarted by
12  virtue of the additional scrutiny that they may
13  receive.
14         BY MR. ABBAS:
15    Q.   Are there any other reasons why TSC
16  believes a person on the TSDB would not like being
17  in the TSDB?
18         MS. KONKOLY:  Objection.  Vague.  Calls
19  for speculation.  Outside the scope.  You can
20  answer.
21         THE WITNESS:  Well, it is hard for me to
22  know what is in other people's minds as to what the

268

1   potential consequences of what they believe might or
2   might not happen by virtue of being watch listed.
3   They might believe that it subjects them to all
4   kinds of potential surveillance.  They might believe
5   that, you know, they could actually be followed,
6   might be arrested.  Just any number of -- boy, the
7   hypotheticals are endless of what people might
8   believe from that.
9          BY MR. ABBAS:
10    Q.   Is -- the inclusion standard for the TSDB
11  is that there is reasonable suspicion that you are a
12  known or suspected terrorist; is that correct?
13         MS. KONKOLY:  Objection.  Vague.
14  Objection insofar as a complete answer would call
15  for information protected by the law enforcement
16  privilege.  You can answer to the extent you can.
17         THE WITNESS:  The standard to be a known
18  or suspected terrorist is reasonable suspicion,
19  which would include being on the TSDB.
20         BY MR. ABBAS:
21    Q.   Is that a -- is that a positive
22  description of a person that they are reasonably

Transcript of Timothy P. Groh, Designated Representative

68 (269 to 272)

Conducted on March 1, 2018

269

1  suspected of being a known or suspected for
2  terrorist?
3        MS. KONKOLY: Objection. Calls for
4  speculation.
5        THE WITNESS: I think it leaves open the
6  possibility that the information -- I take it, it's
7  exactly what it means. It means the person is
8  suspected. It is certainly not proof beyond a
9  reasonable doubt. It is not conclusive.
10       BY MR. ABBAS:
11    Q.   But you disseminate it to 60 foreign
12 partners and more than 100,000 people inside the
13 United States?
14       MS. KONKOLY: Objection. Argumentative.
15       MR. ABBAS: That's fair. I withdraw the
16 question.
17       BY MR. ABBAS:
18    Q.   Identify all the consequences that TSC is
19 aware of that are experienced by TSDB listees?
20       MS. KONKOLY: Objection. Calls for
21 speculation. Objection insofar as the answer
22 implicates information protected by law enforcement

270

1  privilege or SSI or any information within the
2  purview of another agency. You can answer to the
3  extent that you can.
4        THE WITNESS: The consequences of being
5  in TSDB, I don't know that any of them are
6  automatic. We pass it downstream to the partners,
7  and then they make that decision thereafter. So I
8  can't say that as a consequence of being in TSDB
9  there is necessarily any consequence other than
10 reporting. And in many cases, individuals listed in
11 TSDB would be unaware of that.
12       BY MR. ABBAS:
13    Q.   I mean, you know, the screening agencies
14 clearly impose some type of consequence on persons
15 in the TSDB. And TSC has awareness of how some
16 agencies utilize TSDB information, correct?
17       MS. KONKOLY: Objection.
18       THE WITNESS: Sure. But for --
19       MS. KONKOLY: Argumentative, not a
20 question. You can answer if you can.
21       THE WITNESS: But for different
22 components. But you are saying just being listed in

271

1  the TSDB. So we understand selectee, right? But,
2  you know, people believe the consequences of that
3  are. No fly what they believe the consequences of
4  that are. Those are subcomponents of the TSDB. But
5  your question was for being part of TSDB in general.
6  And so I would say that there are no automatic
7  consequences for being part of the TSDB in general.
8        BY MR. ABBAS:
9     Q.   Does TSC have information about how
10 entities that receive TSDB information utilize the
11 disseminated TSDB information to the detriment of
12 TSDB listees?
13       MS. KONKOLY: Objection. Vague.
14 Objection insofar as that question calls for
15 information within the purview of other agencies or
16 would then -- that would be protected by the law
17 enforcement privilege or SSI. You can answer to the
18 extent that you can.
19       THE WITNESS: Well, I think it comes down
20 to what you mean by detriment. If you are a
21 terrorist, there are a lot of detriments to
22 intelligence being collected and reported back to

272

1  investigative agencies and intelligence agencies. I
2  think in -- for many individuals, they are likely
3  unaware of any TSDB status.
4        BY MR. ABBAS:
5     Q.   Is TSC aware of any consequences to
6  listees when their status as TSDB listees is
7  disseminated to other entities?
8        MS. KONKOLY: Objection. Vague.
9  Objection insofar as that calls for information
10 within the purview of other entities and/or insofar
11 as the answer calls for information protected by the
12 law enforcement privilege. You can answer to the
13 extent you can. And if I didn't say vague, I want
14 to make sure I got that.
15       THE WITNESS: Certainly we are aware that
16 TSA, for instance, subjects people to additional
17 screening for a variety of reasons, one of which
18 might be that they are listed on the selectee list.
19 And boarding is denied as a consequence sometimes
20 when it happens as a consequence of being on the
21 No-Fly List. So with respect to those two
22 components, yes, clearly State Department Customs

Transcript of Timothy P. Groh, Designated Representative

69 (273 to 276)

Conducted on March 1, 2018

273

1 and Border Protection as they are doing their border
2 authorities would obviously use the fact that
3 somebody is listed in TSDB to make further inquiry.
4 And they might make a decision based on that, that's
5 triggered really by the pointer that somebody is
6 included in TSDB.
7    Q.   Pointer.  What do you mean pointer?
8    **A.   That mere presence in the TSDB is not**
9 **going to -- they will make their own determination**
10 **based on information.  TSDB will help them find**
11 **information.  But mere presence in the TSDB does not**
12 **have automatic consequences outside of the aviation**
13 **security context for anyone with a possible**
14 **exception of if they have an active warrant.**
15    Q.   Does -- does TSC believe that USCIS, for
16 instance, adjudicates immigration applications
17 differently with regards to TSDB listees than it
18 does with persons who are not TSDB listees?
19    MS. KONKOLY:  Objection insofar as that
20 answer calls for information within the purview of
21 CIS.  You can answer to the extent that you know.
22 But your answer does not bind any other agency.

274

1 And, also, insofar as it would call for any law
2 enforcement-protected information, you can answer to
3 the extent you can.
4    THE WITNESS:  Fundamentally the answer is
5 no.  But I would go back to our effort to provide
6 that common operating picture to make it easier for
7 them to discover information that they need to have
8 in order to make their -- to make their decisions
9 per their authorities.  I just want to clarify.
10 Derogatory information isn't contained in TSDB.
11    BY MR. ABBAS:
12    Q.   Right.  Yeah, that's my next question.
13 So when TSC disseminates TSDB information to CBP, it
14 is literally -- it is just a list of names, correct?
15    MS. KONKOLY:  Objection.
16    BY MR. ABBAS:
17    Q.   I am sorry.  Let me withdraw.  It is a
18 compilation of identifying information?
19    MS. KONKOLY:  Objection insofar as the
20 answer calls for information protected by the law
21 enforcement privilege.  You can answer to the extent
22 that you can.

275

1    THE WITNESS:  It is identifying
2 information -- biographic and biometric information.
3    BY MR. ABBAS:
4    Q.   And it does not contain any of the
5 derogatory information that TSC relied upon to
6 accept the nomination to the TSDB, correct?
7    **A.   Correct.**
8    Q.   So when CBP -- does CBP -- so a secure
9 flight is TSA's way of matching TSDB information to
10 passenger information, correct?
11    MS. KONKOLY:  Objection insofar as that
12 calls for information from the purview of TSA.  You
13 can answer to the extent you understand.
14    THE WITNESS:  I don't believe I can
15 answer that one.
16    MS. KONKOLY:  Okay.
17    BY MR. ABBAS:
18    Q.   Does TSC understand -- is it TSC's
19 understanding that CBP utilizes TSDB information to
20 screen persons that cross U.S. borders?
21    MS. KONKOLY:  Objection insofar as that
22 question calls for information within the purview of

276

1 TSA.  You can answer as to your understanding.  The
2 answer isn't binding.
3    THE WITNESS:  Yes, I believe that CBP
4 uses TSDB information amongst lots of other
5 information as they do border screening.
6    BY MR. ABBAS:
7    Q.   I am sorry.  Does CBP have any access to
8 the derogatory information that was -- that TSC
9 relied upon to accept a nomination to the TSDB?
10    MS. KONKOLY:  Objection insofar as that
11 answer calls for information within protections of
12 the law enforcement privilege and to the extent it
13 calls for information within another agency's
14 purview.  You can answer to the extent you can.
15    THE WITNESS:  I believe they have access
16 to the derogatory information.
17    BY MR. ABBAS:
18    Q.   How?  How does CBP have access to the
19 derogatory information that TSC relies upon to
20 accept nominations to the TSDB?
21    MS. KONKOLY:  Objection insofar as that
22 answer calls for information protected by the law

Transcript of Timothy P. Groh, Designated Representative      70 (277 to 280)
Conducted on March 1, 2018

277

1 enforcement privilege. Also, objection insofar as
2 that answer calls for information within another
3 agency's purview. You can answer to the extent that
4 you can.
5      THE WITNESS: I don't think I can answer
6 that on their behalf.
7      BY MR. ABBAS:
8   Q.  I mean, TSC has the database that holds
9 the derogatory information that TSC relies upon to
10 accept TSDB nominations, correct?
11      MS. KONKOLY: Objection.
12 Mischaracterizes prior testimony. Objection insofar
13 as --
14      BY MR. ABBAS:
15   Q.  I am going to withdraw it. Where does
16 the derogatory information that underlies TSDB
17 nominations live?
18      MS. KONKOLY: Objection insofar as the
19 answer to that question calls for information
20 protected by law enforcement privilege. You can
21 answer to the extent that you can. Also, vague.
22      THE WITNESS: So we have talked about it

278

1 previously. In the case of international terrorism,
2 it primarily or fully resides in TIDE. And in the
3 context of domestic terrorism information, it would
4 reside in Sentinel.
5      BY MR. ABBAS:
6   Q.  Right, Sentinel. And the FBI controls
7 Sentinel, correct?
8   **A.  Sentinel is the FBI's case management**
9 **system, yes.**
10   Q.  Does TSC always have access to the
11 underlying derogatory information that regards
12 nominations to the TSDB?
13      MS. KONKOLY: Objection insofar as that
14 answer calls for law enforcement privileged
15 information. Objection. You can answer to the
16 extent that you can.
17      THE WITNESS: Yes.
18      BY MR. ABBAS:
19   Q.  Does TSC facilitate the dissemination of
20 Sentinel information to other agencies?
21      MS. KONKOLY: Objection. Vague.
22 Objection insofar as the answer calls for

279

1 information protected by the law enforcement
2 privilege. You can answer to the extent that you
3 can.
4      THE WITNESS: I mean, Sentinel -- as the
5 FBI manages its investigations there when the FBI
6 does a nomination, it begins in Sentinel. It goes
7 through the various processes. It ends up in
8 TSDB -- you know, the biographic information. So in
9 as much as Sentinel feeds nominations into TSDB, I
10 suppose that would be true. But beyond that, I
11 don't know if you have a question beyond that.
12      BY MR. ABBAS:
13   Q.  No, I think that does that. Does TSC
14 believe that the Terror Screening Center database is
15 an effective counterterrorism program?
16      MS. KONKOLY: Objection. Vague.
17 Objection as to scope. Objection insofar as the
18 answer calls for law enforcement-protected
19 information or information within the purview of
20 another agency. You can answer to the extent that
21 you can.
22      THE WITNESS: Yes.

280

1      BY MR. ABBAS:
2   Q.  What is the basis of TSC's belief that
3 the TSDB is an effective counterterrorism program?
4      MS. KONKOLY: Objection. Vague.
5 Objection insofar as the answer calls for
6 information protected by the law enforcement
7 privilege or information within the purview of
8 another agency. You can answer to the extent that
9 you can.
10      THE WITNESS: So I think there are many
11 layers to that. And that is, you know, a central
12 question of my position. I think that you begin by
13 looking at what doesn't happen, which is one way of
14 evaluating. I think you also look at what does
15 happen. And any time there is a terrorist event of
16 any kind, then that will cause us to do an after
17 action to determine if the individual or individuals
18 involved in that were known to us, if they were
19 watch-listed. If they were not, why not; what
20 screening opportunities either way might we have
21 had; what screening opportunities did we have, how
22 were those handled. Was anything missed? Were

Transcript of Timothy P. Groh, Designated Representative    71 (281 to 284)
Conducted on March 1, 2018

---

281

1  things properly disseminated?  So there is that
2  constant after action going on.
3        Beyond that, we look to make sure that
4  our data is current, accurate, thorough.  So there
5  are consistent audits.  There are internal reviews.
6  There is extensive oversight on the part of the
7  inspector general from DOJ, the inspector general
8  from Homeland Security, and other inspectors
9  general.
10       There is oversight by the Privacy
11 Liberties Oversight Board.  So there are constant
12 audits that sometimes are the result of an event,
13 sometimes are the result of a periodic review.
14 There is the anecdotal feedback we get as we
15 disseminate as to whether or not that information
16 was useful to our screening partners and to
17 investigative and intelligence agencies.
18       MR. ABBAS:  How much time do we have left
19 before the tape ends?
20       THE VIDEOGRAPHER:  Three minutes.
21       BY MR. ABBAS:
22   Q.   You said that TSC creates these

---

282

1  after-action reports?
2   **A.   We conduct an after action.  We review it**
3  **after each incident.  It doesn't necessarily result**
4  **in a written report.**
5    Q.   Every time there is an active terrorism
6  inside the United States?
7   **A.   And often internationally.**
8    Q.   And often internationally.  So let's do
9  domestic first and then we will do international.
10 Every time there is a domestic terrorism event, TSC
11 reviews that incident to determine whether the
12 perpetrator was in the TSDB or not, correct?
13  **A.   That's the beginning of the analysis,**
14 **yes.**
15       MR. ABBAS:  Indiana, Arizona.
16       BY MR. ABBAS:
17   Q.   Do those after-action reports -- I am
18 sorry.  Do those after-action reviews get
19 memorialized in documents?
20       MS. KONKOLY:  Objection insofar as the
21 answer calls for any information protected by the
22 law privilege.  You can answer to the extent that

---

283

1  you can.
2        THE WITNESS:  They are sometimes
3  memorialized, not always.  Sometimes via email and
4  sometimes in significant cases there may be a
5  written product that might be something we have done
6  or something the FBI has done or something an IG or
7  inspector general has done.  And there have been
8  reports published by the inspector general on such
9  major events anyway.
10       BY MR. ABBAS:
11   Q.   But, certainly, the Terror Screening
12 Center has as its goal the inclusion of persons who
13 intend to commit acts of terrorism, correct?
14  **A.   Absolutely.**
15   Q.   And in pursuit of that goal, TSC reflects
16 on instances when perpetrators of terrorism are not
17 in the TSDB, correct?
18  **A.   Yes, together with our other partners.**
19   Q.   How many perpetrators of terrorism inside
20 the United States were not in the TSDB at the time
21 they committed their act of terrorism?
22       MS. KONKOLY:  Objection.  That question

---

284

1  calls for information protected by the law
2  enforcement privilege and potentially the state
3  secrets.  I am going to instruct the witness not to
4  answer that question.
5        BY MR. ABBAS:
6    Q.   Does TSC know how many persons who have
7  committed an act of terrorism inside the United
8  States have not been in the TSDB at the time they
9  committed their act of terrorism?
10       MS. KONKOLY:  Objection insofar as that
11 answer calls for information protected by the law
12 enforcement or the state secret privilege, but you
13 can answer to the extent that you can.
14       THE WITNESS:  I don't know the answer off
15 the top of my head, but the TSC could determine
16 that.
17       MR. ABBAS:  Let's stop there.  Can we
18 take a 10-minute break?  I am feeling winded.
19       MS. KONKOLY:  I would like to keep it as
20 short as possible to get out of here as soon as
21 possible.
22       MR. ABBAS:  Ten minutes is very

Transcript of Timothy P. Groh, Designated Representative

Conducted on March 1, 2018

---

325

1    A.   Okay.

2         MR. ABBAS:  I am sorry.  It is like in
3    support of -- I am sorry.  We are going to go
4    through some documents in a little bit.  We need
5    five minutes.  Can we go off the record?

6         THE VIDEOGRAPHER:  We are going off the
7    record.  The time is 5:07 p.m.

8         (A recess was held.)

9         THE VIDEOGRAPHER:  We are back on the
10   record.  The time is 5:17 p.m.  And we have been on
11   the record for 5 hours and 51 minutes.

12        MR. ABBAS:  Five hours and 51 minutes?

13        THE VIDEOGRAPHER:  Correct.

14        (Exhibit A, marked for identification.)

15        BY MR. ABBAS:

16   Q.   The document in front of you has been
17   marked as Exhibit A.  Are you familiar with this
18   document?

19   **A.   It appears to be what we could call a**
20   **transparency document.**

21   Q.   Who decided to create this document?

22        MS. KONKOLY:  Objection.  Vague.

---

326

1         THE WITNESS:  The Watch Listing Advisory
2    Council.

3         BY MR. ABBAS:

4    Q.   What I suspected.  Why did the Watch
5    Listing Advisory Council decide to create this
6    document?

7         MS. KONKOLY:  Objection.  Vague.
8    Objection insofar as an answer would call for law
9    enforcement sensitive information.  You can answer
10   to the extent you can.

11        THE WITNESS:  Because we had -- it is a
12   -- the watch listing community, the watch listing
13   enterprise is broad.  And we wanted to -- because
14   there are so many, as you see, privileges and other
15   information-sharing restrictions related to what we
16   do, we thought it was important to agree on things
17   that we could provide in an unclassified public
18   setting about what we do.

19        BY MR. ABBAS:

20   Q.   Have you disseminated -- I'm sorry.  Has
21   the Terror Screening Center or any of the member
22   agencies of the Watch Listing Advisory Council

---

327

1    publicly disseminated this document in any way?

2         MS. KONKOLY:  Objection insofar as that
3    question calls for information within the purview of
4    other agencies.

5         THE WITNESS:  I am not aware of a
6    particular public release of this document.

7         BY MR. ABBAS:

8    Q.   Are you aware that this document has been
9    provided to the plaintiffs in response to
10   plaintiff's discovery requests?

11   **A.   Yes.**

12   Q.   Was this document prepared for the
13   purposes of litigation?

14        MS. KONKOLY:  You can answer.

15        THE WITNESS:  It was prepared for many
16   purposes, not to exclude litigation.

17        BY MR. ABBAS:

18   Q.   Was one of the purposes, Exhibit A, the
19   overview of the U.S. Government's watch listing
20   process and procedures?  Is one of the purposes of
21   this -- is one of the reasons this document was
22   created for purposes of use in this litigation?

---

328

1         MS. KONKOLY:  Objection insofar as it
2    calls for information in the purview of other
3    agencies.  You can answer.

4         THE WITNESS:  You mean for this
5    particular lawsuit?

6         BY MR. ABBAS:

7    Q.   Yes.

8    **A.   No, not in particular for this lawsuit.**

9    Q.   Was this document created for general
10   litigation purposes?

11        MS. KONKOLY:  Objection insofar as it
12   calls for information in the purview of other
13   agencies and a legal conclusion.

14        THE WITNESS:  It was -- as I said before,
15   it was created to provide agencies with the
16   information as so much of what we do is interrelated
17   and interlocked with other agencies.  It was created
18   -- and the process of creating this took some time.

19        BY MR. ABBAS:

20   Q.   How long?  How long did it take to create
21   this document?

22   **A.   At least six months, maybe as much as a**

---

329

1  year.
2      Q.   When was this document created?
3      A.   My recollection is it was probably
4  finalized at the end of the last calendar year.
5      Q.   Was -- was the creation of this document
6  communicated in a statement of conclusions that the
7  Watch Listing Advisory Council issued?
8          MS. KONKOLY: Objection insofar as that
9  would call for any law enforcement sensitive
10 information.  You can answer if you can.
11         THE WITNESS: I would expect the
12 discussion about this document would appear in those
13 statements of conclusion.
14         BY MR. ABBAS:
15     Q.   Great.  I would like you to turn to page
16 four.  Oh, Arizona.  So the top paragraph of page
17 four describes the reasonable suspicion standard.
18 Can you just review that top paragraph.  I have some
19 questions about that.  Let me know when you have
20 finished reviewing that paragraph.
21     A.   (Witness reading.)
22     Q.   Oh, you are done?

330

1      A.   Yes.
2      Q.   So it is my understanding that this
3  paragraph -- this first paragraph on page four of
4  Exhibit A elaborates on the meaning of the
5  reasonable suspicion standard that you have referred
6  to as the TSDB inclusion standard, correct?
7      A.   Yes.
8      Q.   And it identifies what -- as to what the
9  reasonable suspicion is of; is that correct?
10     A.   Yes.
11     Q.   And the TSDB inclusion standard is a
12 reasonable suspicion of -- is a reasonable suspicion
13 that the individual is engaged in conduct
14 constituting terrorism or terrorism activities,
15 correct?  That would -- reasonable suspicion of that
16 would satisfy the TSDB inclusion standard, correct?
17         MS. KONKOLY: Objection.  Calls for a
18 legal conclusion.  The document speaks for itself.
19 You can answer.
20         THE WITNESS: So I am sorry.
21         BY MR. ABBAS:
22     Q.   Let me just try it again.  That was bad.

331

1  So you see in the third line where it says
2  reasonable suspicion that the individuals engaged,
3  has been engaged, or intends to engage in conduct
4  constituting in preparation for, in aid, or
5  furtherance of, or related to terrorism and/or
6  terrorism activities, correct?
7      A.   Yes.
8      Q.   So it is reasonable suspicion of a
9  variety of different things, correct?
10     A.   Yes.
11     Q.   One of those things is pretty easy to
12 understand.  Reasonable suspicion that the
13 individual is now engaged in terrorism or terrorist
14 activities?
15     A.   Yes.
16     Q.   That's straightforward.  Engaging in
17 terrorist and terrorism activities is a crime,
18 correct?
19         MS. KONKOLY: Objection.  Calls for a
20 legal conclusion.
21         MR. ABBAS: He is the deputy director of
22 the Terror Screen Center.

332

1          MS. KONKOLY: Okay.  He can answer.
2          THE WITNESS: You know, I don't think
3  there is any federal statute that says that.  So if
4  you are going to -- you know, I think the elements
5  of crime are much more particularized than that.
6  Now, I think they generally will -- might, but you
7  are not in a charging document for probable cause.
8  You are going to have be more specific.
9      Q.   Is it the Terror Screening Center's view
10 that individuals engaged in terrorism or terrorist
11 activities are engaged in criminal activity?
12         MS. KONKOLY: Objection.  Calls for a
13 legal conclusion.  You can answer.
14         THE WITNESS: So there is no federal
15 criminal statute that is that brief.  The federal
16 criminal statutes have elements that you have to
17 meet the elements.
18         BY MR. ABBAS:
19     Q.   So what does this --
20     A.   And your description does not — does not
21 give the elements of any particular federal crime
22 that I am aware.

Case 1:16-cv-00375-AJT-JFA   Document 139-1   Filed 03/15/18   Page 374 of 417 PageID#
5041
Transcript of Timothy P. Groh, Designated Representative          84 (333 to 336)
Conducted on March 1, 2018

333

1  Q.  So what does terrorism mean in this
2  paragraph.  In paragraph -- in the first paragraph
3  on page four, what does terrorism or terrorist
4  activities mean?
5  **A.  Terrorist activities are going to be --**
6  Q.  Let me withdraw the question.
7  **A.  Okay.**
8  Q.  Does the Terror Screening Center define
9  the terms terrorism and/or terrorist activities in
10 any material that it possesses?
11     MS. KONKOLY:  I am going to object
12 insofar as that question implicates information
13 protected by law enforcement or potentially state
14 secrets privilege.  You can answer to the extent
15 that you can.
16     THE WITNESS:  This -- this paragraph
17 cites to the standard that we apply.  The actual
18 application of this in practice is the subject of
19 training materials of other -- of other things that
20 analysts use to where we train the analysts in order
21 to apply the standard.
22     BY MR. ABBAS:

334

1  Q.  Does TSC define the phrase terrorism
2  and/or terrorist activities as it appears on page
3  four of Exhibit A in any materials?
4      MS. KONKOLY:  Objection insofar as that
5  question calls for information protected by the law
6  enforcement and potentially state secrets privilege.
7  You can answer to the extent that you can.
8      THE WITNESS:  There is no definition
9  other than this definition that defines those words.
10     BY MR. ABBAS:
11 Q.  What definition are you referring to?
12 **A.  The one on the page that you just read.**
13 Q.  I don't see a definition of terrorism and
14 or terrorist activities on page four of Exhibit A.
15     MS. KONKOLY:  Objection.  Argumentative.
16 Objection.  Not a question.
17     BY MR. ABBAS:
18 Q.  You are right.  I withdraw it.  Can you
19 identify what definition of terrorism and/or
20 terrorist activities you are the referring to on
21 page four of Exhibit A?
22 **A.  I am referring to the definition of the**

335

1  reasonable suspicion standard.
2  Q.  Got it.  Okay.  So you agree that the
3  first paragraph of page four of Exhibit A defines
4  the reasonable suspicion standard of the TSDB,
5  correct?
6  **A.  Yes.**
7  Q.  Is there -- within the reasonable -- the
8  definition of reasonable suspicion standard of the
9  TSDB, there appears the phrase, quote, terrorism and
10 or terrorist activities, unquote.  Did you see that
11 part of the reasonable suspicion standard
12 definition?
13 **A.  I do.**
14 Q.  Is the phrase terrorism and/or terrorist
15 activities defined by TSC in any documents that it
16 has?
17     MS. KONKOLY:  Objection insofar as it has
18 -- well, let me assert the objection.  Objection
19 insofar as that question calls for information
20 protected by law enforcement privilege, potentially
21 state secrets privilege.  If you think you can
22 answer, you can.  If you would like to consult, we

336

1  can do that.
2      THE WITNESS:  I can't think of a place
3  where that is further defined.  In our previous
4  conversation, though, you were trying to equate that
5  to a criminal charge.  And I object to equating the
6  language here to the elements of something that we
7  found in the United States code.
8      BY MR. ABBAS:
9  Q.  Duly noted.  Does the -- does the Terror
10 Screening Center -- in any material that TSC
11 possesses or is aware of, is the phrase conduct
12 constituting defined by the Terror Screening Center?
13 **A.  No.**
14 Q.  In any material that TSC maintains or is
15 aware of, is "in preparation for" as it appears in
16 that reasonable suspicion standard definition
17 defined by TSC.
18     MS. KONKOLY:  Objection insofar as the
19 question calls for any information protected by law
20 enforcement other privileges.  But you can answer to
21 the extent that you can.
22     THE WITNESS:  Along this line of

Transcript of Timothy P. Groh, Designated Representative
Conducted on March 1, 2018

85 (337 to 340)

337

1 questions, I think I would like to consult.
2        MR. ABBAS:  I am going to do it for every
3 little kind of phrase in that.  So if you guys want
4 to do like a global consultation.
5        MS. KONKOLY:  Sure.
6        THE VIDEOGRAPHER:  We are going off the
7 record.  The time is 5:31 p.m.
8        (A recess was held.)
9        MS. KONKOLY:  So the witness has a
10 correction to make to some of the lines of
11 questioning that we have just been engaged in?
12        THE WITNESS:  So indeed the standards --
13 the different causes that you have identified within
14 this, they are further defined in the Watch Listing
15 Guidance.  And then in the interrogatories, I made
16 reference to the training materials, which I started
17 to review to a few minutes ago for the NDIU analyst
18 -- that two-week class in there.  And that is then
19 part of those training materials that is applied to
20 the actual application that I was talking about of
21 the standards.
22        So this is the standard.  There is not

338

1 another standard.  But to further break down the
2 practical application of these standards is found in
3 the guidance and the training materials for each one
4 of those clauses.
5    Q.    What is conduct constituting -- what's --
6 what does TSC consider conduct constituting
7 terrorism and/or terrorist activities?
8        MS. KONKOLY:  And I am going to object on
9 the basis of the answer implicating law enforcement
10 sensitive information.  Also calling for a legal
11 conclusion.  You can answer to the extent that you
12 can.
13        THE WITNESS:  I think without getting
14 into the guidance itself that's privileged, I think
15 the words have to stand for themselves generally.  I
16 think it is a -- well, no, I will just leave it at
17 that.
18        BY MR. ABBAS:
19    Q.    What is conduct in preparation for
20 terrorism?  I'm sorry.  What does TSC consider
21 conduct in preparation for terrorism and/or
22 terrorist activities?

339

1        MS. KONKOLY:  I am going to object
2 insofar as that answer would implicate law
3 enforcement, potentially state secrets information.
4 Also calls for a legal conclusion.  You can answer
5 to the extent that you can.
6        THE WITNESS:  Again, I don't think that I
7 can further answer that without getting into
8 privileged materials.
9        MR. ABBAS:  And what are the privileges?
10        MS. KONKOLY:  I said law enforcement and
11 potential state secrets.
12        BY MR. ABBAS:
13    Q.    What does Terror Screening Center
14 consider as conduct in aid of terrorism and/or
15 terrorist activities?
16        MS. KONKOLY:  I am going to again object.
17 It calls for a legal conclusion.  But, also, insofar
18 as it calls for information protected by the law
19 enforcement privilege and potentially the state
20 secrets privilege.  You can answer if you can.
21        THE WITNESS:  I feel the same.
22        BY MR. ABBAS:

340

1    Q.    How do you feel?
2    **A.    That I can't answer further beyond what's**
3 **on this page without getting into privileged**
4 **materials.  And, quite candidly, that's why this is**
5 **what's on this page.**
6    Q.    What does TSC consider as conduct in
7 furtherance of terrorism and/or terrorist
8 activities?
9        MS. KONKOLY:  Again, I object that it
10 calls for a legal conclusion.  Object on the basis
11 that an answer would call for information protected
12 by the law enforcement privilege and potentially
13 state secrets privilege.  If you think you can
14 answer, you can.
15        THE WITNESS:  The same.
16        BY MR. ABBAS:
17    Q.    Is learning Arabic in furtherance of
18 terrorism and/or terrorist activities?
19        MS. KONKOLY:  Objection.  Calls for
20 speculation.  Objection.  Calls for a legal
21 conclusion.  Objection insofar as the answer would
22 implicate law enforcement sensitive information.

Transcript of Timothy P. Groh, Designated Representative
Conducted on March 1, 2018

341

1  You can answer that if you can.
2       THE WITNESS:  I think that would be as
3  one of many factors.  In context, I would say that
4  by itself, no.  But in context of additional
5  factors, it could be relevant.
6       BY MR. ABBAS:
7    Q.   So learning Arabic could be conduct in
8  furtherance of terrorism and/or terrorist
9  activities?
10      MS. KONKOLY:  Objection.
11 Mischaracterizes prior testimony.  Asked and
12 answered.
13      THE WITNESS:  Not by itself.
14      BY MR. ABBAS:
15   Q.   I know not by itself, but learning Arabic
16 could be conduct in furtherance of terrorism and
17 terrorist activities?
18      MS. KONKOLY:  Objection.
19 Mischaracterizes --
20      MR. ABBAS:  I'm sorry.  I am going to
21 withdraw it.  You are right.  He answered it.
22      BY MR. ABBAS:

342

1    Q.   What is conduct related to -- I am sorry.
2  What does TSC consider conduct related to terrorism
3  and/or terrorist activities?
4       MS. KONKOLY:  Objection.  Calls for a
5  legal conclusion.  Objection insofar as it
6  implicates information protected by the law
7  enforcement privilege or potentially the state
8  secrets privilege.  If you think you can answer, you
9  can.
10      THE WITNESS:  I don't think I can answer
11 that any further without getting into privileged
12 information.
13      BY MR. ABBAS:
14   Q.   Is -- is having a relative who is under
15 investigation for a terrorism-related reason conduct
16 related to terrorism and/or terrorist activities?
17      MS. KONKOLY:  Objection.  That calls for
18 a legal conclusion and for speculation.  It also
19 calls for information protected by the law
20 enforcement privilege, potentially state secrets.  I
21 am going to instruct the witness not to answer.
22      MR. ABBAS:  And, again, I am not asking

343

1  for legal information.  I am asking how the TSC
2  applies the standard that it has adopted for TSDB
3  inclusion.
4       MS. KONKOLY:  And my objections are on
5  the record.  And they stand as does the instruction.
6       BY MR. ABBAS:
7    Q.   If a person has a relative who is in the
8  TSDB, can their association with that person be a
9  basis of their inclusion in the FBI?
10      MS. KONKOLY:  Objection.  Calls for
11 speculation; potentially calls for a legal
12 conclusion.  Objection that that question calls for
13 information protected by the law enforcement
14 privilege, potentially state secrets.  And I am
15 going to again instruct the witness not to answer.
16      MR. ABBAS:  On what grounds are you going
17 to instruct the witness not to answer?
18      MS. KONKOLY:  Law enforcement,
19 potentially state secrets.
20      BY MR. ABBAS:
21   Q.   Is international travel conduct in
22 furtherance of terrorism and/or terrorist

344

1  activities?
2       MS. KONKOLY:  Objection.  Calls for
3  speculation.  Objection.  Calls for legal conclusion
4  insofar as it -- I am also objecting insofar as it
5  implicates information protected by the law
6  enforcement potentially state secrets privilege.
7  You can answer if you think you can.
8       THE WITNESS:  I would again say that's a
9  factor.  And it is -- but it would be -- simply
10 standing alone, the fact that somebody has travelled
11 internationally, I don't think generally would.  But
12 you know, it is dependent upon a combination
13 totality of the circumstances.  And it could
14 certainly be relevant.
15      BY MR. ABBAS:
16   Q.   Does the TSDB inclusion standard -- I am
17 sorry.  When a person is nominated to the TSDB, must
18 the nomination include the prospective listee's date
19 of birth?
20      MS. KONKOLY:  Objection insofar as that
21 calls for law enforcement-privileged information.
22 You can answer if you can.

Transcript of Timothy P. Groh, Designated Representative

Conducted on March 1, 2018

345

1    THE WITNESS:  It does not necessarily
2  require the provision of a date of birth, although
3  that will affect a screenability for various
4  partners.
5    BY MR. ABBAS:
6    Q.   Most TSDB entries include date of birth
7  information --
8    MS. KONKOLY:  Objection. Calls for
9  speculation.
10    BY MR. ABBAS:
11    Q.   -- correct?
12    **A.   I don't know if I can actually -- I would**
13 **be speculating to say that that's true.**
14    Q.   For U.S. persons, does the TSC require
15 that the nominating agency identify the date of
16 birth for the person that they are nominating to be
17 included in the TSDB?
18    MS. KONKOLY:  Objection insofar as that
19 calls for law enforcement sensitive privileged
20 information.  You can answer if you can.
21    THE WITNESS:  I think it is more likely
22 that U.S. persons will have date of birth, but it is

346

1  not required.
2    BY MR. ABBAS:
3    Q.   So there are some U.S. persons who are
4  included in the TSDB for which TSDB does not have
5  any date of birth information in the TSDB?
6    MS. KONKOLY:  Objection insofar as that
7  calls for information protected by law enforcement
8  privilege.  Speculation.  You can answer if you can.
9    THE WITNESS:  I would speculate that it
10 is possible that there is.  I don't know of a
11 particular one.
12    BY MR. ABBAS:
13    Q.   For the individuals in the TSDB who have
14 date of birth information, TSC obviously knows how
15 old they are, correct?
16    **A.   Yes.**
17    Q.   Are there children on the TSDB?  I am
18 sorry.  Are there children in the TSDB?
19    MS. KONKOLY:  Objection insofar as that
20 calls for information protected by the law
21 enforcement privilege, potentially state secrets.
22 You can answer if you think you can.

347

1    THE WITNESS:  I don't think I can answer.
2  I think that's privileged.
3    BY MR. ABBAS:
4    Q.   You don't know whether or not there is
5  children on the Terror Screen Database?
6    MS. KONKOLY:  Objection.
7  Mischaracterizes his testimony.  He said he can't
8  answer without providing privileged information.
9    MR. ABBAS:  What's privileged?  What's
10 the -- what's privileged?  I'm unclear.
11    MS. KONKOLY:  I asserted -- I asserted
12 law enforcement, potentially state secret.
13    MR. ABBAS:  It is a state secret whether
14 the Terror Screening Database --
15    MS. KONKOLY:  In an individual case,
16 state secret could apply to an individual case.  And
17 I am asserting those privileges.
18    BY MR. ABBAS:
19    Q.   How many children are in the Terror
20 Screening Database?
21    MS. KONKOLY:  Objection.  Calls for
22 information implicating the law enforcement

348

1  privilege, potentially the state secrets.  And I
2  will just instruct you not to answer that.
3    BY MR. ABBAS:
4    Q.   Is there anything about the TSDB
5  inclusion standards that constrains TSC's ability to
6  list children in the TSDB?
7    MS. KONKOLY:  Objection insofar as that
8  calls for information implicating the law
9  enforcement privilege and potentially state secrets.
10 You can answer if you can.
11    THE WITNESS:  I think the age of an
12 individual just like those other factors we talked
13 about is relevant.  But no single factor is
14 dispositive.
15    BY MR. ABBAS:
16    Q.   Does TSC provide its personnel guidance
17 as to how to consider the age of a prospective TSDB
18 listee when TSC personnel consider accepting or
19 rejecting a nomination?
20    MS. KONKOLY:  Objection insofar as that
21 calls for information protected by law enforcement
22 privilege or potentially state secrets.  If you

Transcript of Timothy P. Groh, Designated Representative
Conducted on March 1, 2018

349

1 think you can answer, you can without waiving the
2 privilege.
3       THE WITNESS:  I don't think I can answer
4 that in particular.
5       MR. ABBAS:  Because of the law
6 enforcement privilege?
7       MS. KONKOLY:  I have asserted the
8 privileges.  They are on the record.
9       BY MR. ABBAS:
10   Q.   Does TSC have any information that a
11 child has ever been placed in the TSDB?
12       MS. KONKOLY:  Objection.  Calls for
13 information implicated by the law enforcement
14 privilege and potentially the state secrets
15 privilege.  I will instruct him not to answer.
16       BY MR. ABBAS:
17   Q.   How about this?  Does TSC have any
18 information that an adult has ever been placed in
19 the Terror Screening Database?
20   **A.   Yes.**
21   Q.   Has TSC placed an adult in the Terror
22 Screening Database?

350

1   **A.   Yes.**
2   Q.   Has the TSC placed a child in the Terror
3 Screening Database?
4       MS. KONKOLY:  Objection.  Calls for
5 information protected by law enforcement privilege
6 and potentially the state secrets privilege.  I will
7 instruct you not to answer.
8       MR. ABBAS:  I mean, we will find out that
9 later.
10       MS. KONKOLY:  Okay.
11       (Exhibit B, marked for identification.)
12       BY MR. ABBAS:
13   Q.   I am going to introduce Exhibit B.
14 Exhibit B is the defendant's answers to Plaintiff's
15 first set of interrogatories to TSC.  Mr. Groh, we
16 are not going to go through the whole document.  It
17 is a very, very long.  And there is a lot of
18 gobbledygook at the beginning especially.  I want to
19 --
20   **A.   I object to the description of this**
21 **gobbledygook.**
22   Q.   Well, I want to take your attention to

351

1 almost the very back, the second to last page.  It
2 is page 63.  Do you see your signature on page 63?
3   **A.   I appear -- I see what appears to be my**
4 **signature.**
5   Q.   That's your signature?
6   **A.   Yes, it is.**
7   Q.   And why is your signature on this
8 document?
9       MS. KONKOLY: Objection.  Calls for a
10 legal conclusion.  You can answer as to your
11 understanding.
12       THE WITNESS:  As the same reason that I
13 am here.  I am representing the TSC.  And what is in
14 this -- in the response to the interrogatories is
15 true.
16       BY MR. ABBAS:
17   Q.   So you participated in the -- you have
18 read these answers previously, correct?
19   **A.   I have.**
20   Q.   And they are accurate as far as you know?
21   **A.   Yes.**
22   Q.   I would like you to turn to page 14.  Do

352

1 you see at the bottom half of 14, interrogatory
2 number six?
3   **A.   I do.**
4   Q.   So I am going to ask you to review
5 interrogatory number six.  That's the interrogatory
6 in bold italics.  And there is a section of
7 objections.  I would say that's legal gobbledegook.
8 You are welcome to review it.  The part that I am
9 going to ask you about is on page 16.  It is the
10 response.  But you can go ahead and review that
11 actual interrogatory, objections, and response.  Let
12 me know when you are done, and then I am going to
13 ask you a few questions.
14   **A.   (Witness reading.)**
15   Q.   You are done.  Okay.  So I am looking at
16 page 16, the response paragraph.  In your response,
17 you say that you export subsets of TSDB data to
18 partner agencies and foreigner partners for use by
19 those partners in a variety of lawful terrorist
20 screening functions.  Do you see where I am?
21   **A.   Yes.**
22   Q.   What do you mean by lawful terrorist

Transcript of Timothy P. Groh, Designated Representative   95 (377 to 380)
Conducted on March 1, 2018

---

377

1          MS. KONKOLY:  Objection.
2   Mischaracterized his prior testimony.
3          THE WITNESS:  Yes.
4          BY MR. ABBAS:
5     Q.    Can a -- can TSC commence a removal
6   action at the end of the DHS TRIP redress process.
7   I'm sorry.  Let me rephrase that question.  Does the
8   DHS TRIP redress process -- is one of the outcomes
9   -- is one of the possible outcomes of the DHS TRIP
10  redress process a removal action?
11    **A.    Yes.**
12          MR. ABBAS:  Well, I am pressing.  How
13  many more minutes do we have?  Thirteen?
14          THE VIDEOGRAPHER:  Twelve.
15          BY MR. ABBAS:
16    Q.    Does TSC commence all removal actions
17  from the TSDB?
18          MS. KONKOLY:  Objection insofar as an
19  answer would implicate any law enforcement
20  privileged information.  You can answer to the
21  extent that you can.
22          THE WITNESS:  When you say commence --

---

378

1          MS. KONKOLY:  And vague.
2          BY MR. ABBAS:
3     Q.    That's fair.  I will withdraw.  Let me
4   try to rephrase.  Does -- TSC personnel are the ones
5   that execute the key strokes to execute a removal
6   action regarding a person that's listed in the TSDB?
7          MS. KONKOLY:  Objection.  Vague.
8          THE WITNESS:  Yes.
9          BY MR. ABBAS:
10    Q.    And that removal action can come about as
11  a result of TSC's auditing processes?
12    **A.    Yes, it could.**
13    Q.    Does TSC keep statistical information
14  regarding how -- the outcomes of its auditing
15  process?
16    **A.    Yes.**
17    Q.    Does the executive leadership of TSC
18  receive statistical information regarding the
19  performance of the TSDB?
20          MS. KONKOLY:  Objection.  Vague.
21          THE WITNESS:  You know, regarding the
22  performance, we receive a lot of different

---

379

1   statistical information about TSDB.  I would say it
2   generally relates to performance, but I don't know
3   in particular what you mean by that.
4          BY MR. ABBAS:
5     Q.    You are an executive at TSC, correct?
6     **A.    I am.**
7     Q.    Is there like an executive team that runs
8   TSC?
9     **A.    Yes.**
10    Q.    What are the names of the positions that
11  are part of the executive team of TSC?
12    **A.    I believe we are named as defendants.  So**
13  **the three executives of TSC are myself, the director**
14  **Mr. Kable, and the principal deputy director Ms.**
15  **Burriesci.**
16    Q.    And those three comprise the executive
17  leader at the TSC?
18    **A.    They are three executives.  We have other**
19  **people on our team that are not executives that work**
20  **in the front office.**
21    Q.    Sure.  Do the three of you review
22  statistical information regarding the TSDB?

---

380

1     **A.    Yes.**
2     Q.    In what form -- what documents -- how
3   does the statistical information regarding the TSDB
4   get presented to the executive leadership team of
5   TSC?
6     **A.    There are a number of different periodic**
7   **reports, everything from daily to weekly to monthly**
8   **reports that we look at in all different aspects of**
9   **our operations across TSDB and across encounters.**
10    Q.    Arizona.  Is there like a standard
11  monthly report that you receive that includes the
12  statistical information regarding the TSDB?
13    **A.    Probably multiple ones.**
14    Q.    Do they -- are they titled?
15    **A.    Generally, yes.**
16    Q.    What are the titles of the reports that
17  TSC's executive leadership team receives that regard
18  statistical information?
19          MS. KONKOLY:  Objection insofar as the
20  answer would implicate any law enforcement sensitive
21  information.  You can answer to the extent that you
22  can.

---

Transcript of Timothy P. Groh, Designated Representative
Conducted on March 1, 2018

385

1      MS. KONKOLY: Objection. Calls for law
2   enforcement --
3      MR. ABBAS: I withdraw the question.
4      BY MR. ABBAS:
5   Q.   Have you, Mr. Groh, as an executor of the
6   Terror Screening Center ever recommended raising the
7   bar for the TSDB's inclusion standard?
8      MS. KONKOLY: Objection. Vague.
9   Objection insofar as that would call for
10  deliberative process privileged information.  You
11  can answer if you can.
12     THE WITNESS: I have not personally
13  advocated for changing the reasonable suspicion
14  standard.
15     BY MR. ABBAS:
16  Q.   Are you aware of any prior members of
17  TSC's executive leadership team who have recommended
18  raising the bar for the TSDB's inclusion standard?
19     MS. KONKOLY: Objection. I think that
20  calls for deliberative process, protected
21  information.  If you think there is a way to answer
22  without waiving that privilege, you can.

386

1      THE WITNESS: No, I don't think I could
2   waive that.  Yeah, I think the privilege applies.
3      BY MR. ABBAS:
4   Q.   Two minutes.  Has Charles Kable -- and
5   that's the name of the Terror Screening Center,
6   right?
7   **A.   It is Charles Kable.**
8   Q.   Has Charles Kable ever recommended
9   raising the bar for the TSDB's inclusion standard?
10     MS. KONKOLY: I am going to object that
11  that appears to call for deliberative process
12  privileged information.  If you think you can answer
13  without waiving that privilege, you can.
14     THE WITNESS: I do not.
15     BY MR. ABBAS:
16  Q.   When is the next meeting of the Watch
17  Listing Advisory Council?
18  **A.   Within the next two weeks.**
19     MR. ABBAS: Can I come?  I think that's
20  it.  We are done.  Thanks so much.  I really
21  appreciate it.
22     THE VIDEOGRAPHER: We are going off the

387

1   record.  The time is 6:44 p.m.
2      (At 6:44 p.m., the deposition was
3   concluded.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

388

1      ACKNOWLEDGMENT OF DEPONENT
2
3
4      I, TIMOTHY P. GROH, do hereby acknowledge
5   that I have read and examined the foregoing
6   testimony and the same is a true, correct and
7   complete transcription of the testimony given by me
8   and any corrections appear on the attached errata
9   sheet signed by me.
10
11  _____   _____
12  (SIGNATURE)           (DATE)
13
14
15
16
17
18
19
20
21
22

Transcript of Timothy P. Groh, Designated Representative
Conducted on March 1, 2018

389

1          CERTIFICATE OF NOTARY PUBLIC

2

3          I, Carla L. Andrews, the officer before

4   whom the foregoing deposition was taken, do hereby

5   certify that the witness, whose testimony appears in

6   the foregoing deposition was duly sworn by the

7   Notary, that the testimony of said witness was taken

8   by me in stenotype and thereafter reduced to

9   typewritten form under my supervision, that said

10  deposition is a true record of the testimony given

11  by said witness; that I am neither counsel for,

12  related to, nor employed by any of the parties to

13  the action in which this deposition was taken, and

14  further that I am not a relative or employee of any

15  attorney or counsel employed by the parties thereto

16  nor financially or otherwise interested in the

17  outcome of the action.

18  _____

19

20          Carla L. Andrews, Notary Public

21          for the District of Columbia

22 My Commission Expires:  January 14, 2019

# Exhibit N



# Transcript of Deborah Moore

**Date:** December 20, 2017
**Case:** El Hady -v- Knaedle

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

1    VIRGINIA:

2         DISTRICT COURT FOR THE EASTERN DISTRICT OF

3                      VIRGINIA

4    - - - - - - - - - - - x

5    ANAS EL HADY, ET AL.,    :

6         Plaintiffs,      :

7    v.                      :    Civil Action No.

8    CHARLES KABLE, ET       :    16-CV-375 (E.D. Va)

9    AL.,                    :

10        Defendants.       :

11   - - - - - - - - - - - x

12

13             Deposition of DEBORAH MOORE

14                 Arlington, Virginia

15             Wednesday, December 20, 2017

16                    9:30 a.m.

17

18

19

20   Job No.: 171201

21   Pages: 1 - 309

22   Reported By: Tasiana T. Basdekis, RPR

1      Deposition of DEBORAH MOORE, held at the

2  offices of:

3

4

5          TSA HEADQUARTERS

6          East Tower

7          601 12th Street South

8          Arlington, Virginia 20598

9

10

11

12

13      Pursuant to notice, before Tasiana T. Basdekis,

14  RPR, Notary Public in and for the Commonwealth of

15  Virginia.

16

17

18

19

20

21

22

Transcript of Deborah Moore
Conducted on December 20, 2017                    3

```
 1                A P P E A R A N C E S

 2   ON BEHALF OF THE PLAINTIFF, EL HADY:

 3        GADEIR ABBAS, ESQUIRE

 4        LENA MASRI, ESQUIRE

 5        COUNCEIL ON AMERICAN-ISLAMIC RELATIONS

 6        453 New Jersey Avenue SE

 7        Washington, District of Columbia 20003

 8        (202) 742-6423

 9

10   ON BEHALF OF THE DEFENDANT, KABLE:

11        AMY E. POWELL, ESQUIRE

12        U.S. DEPARTMENT OF JUSTICE

13        310 New Bern Avenue

14        Federal Building Suite 800

15        Raleigh, North Carolina 27601

16        (202) 514-9836

17

18

19

20

21

22
```

```
1      A P P E A R A N C E S   C O N T I N U E D

2

3         JENNIFER GREENBAND, ESQUIRE

4         KEVIN HOULIHAN, ESQUIRE

5         U.S. DEPARTMENT OF JUSTICE

6         601 12th Street South

7         Arlington, Virginia 20598

8

9         JAYME KANTOR, ESQUIRE

10        YEORA PARK, ESQUIRE

11        U.S. DEPARTMENT OF JUSTICE

12        935 Pennsylvania Ave. NW

13        Suite 10140

14        Washington, District of Columbia 20535

15        (202) 324-7194

16

17    ALSO PRESENT:

18        DEBBY CAVAZOS, Videographer

19

20

21

22
```

```
1                    C O N T E N T S

2

3    EXAMINATION OF DEBORAH MOORE            PAGE

4       By Mr. Abbas                          6

5

6

7                    E X H I B I T S

8                     (Attached)

9    PLAINTIFF'S FOR IDENTIFICATION          PAGE

10   1    DHS TRIP Statistics                 91

11   2    DHS TRIP Correspondence to Murat

12        Frijuckic                          282

13   3    DHS TRIP Correspondence to Yaseen

14        Kadura Date 5/8/2013               290

15   4    DHS TRIP Correspondence to Yaseen

16        Kadura Date 9/4/2015               300

17   5    One Page of a DHS TRIP Close Out

18        Letter                            304

19

20

21

22
```

Transcript of Deborah Moore
Conducted on December 20, 2017                    6

| | | |
|---|---|---|
| 1 | P R O C E E D I N G S | |
| 2 | THE VIDEOGRAPHER:  Here begins tape number | 09:48:21 |
| 3 | one in the videotaped deposition of Deborah Moore | 09:48:22 |
| 4 | in the matter of Anas El Hady, et al., v. Charles | 09:48:26 |
| 5 | Cable [sic], et al., in the District Court for the | 09:48:30 |
| 6 | Eastern District of Virginia, Case No. 16-CV-375 | 09:48:32 |
| 7 | (E.D. Va). | 09:48:32 |
| 8 | Today's date is December 20th, 2017.  The | 09:48:41 |
| 9 | time on the video monitor is 9:48.  The | 09:48:44 |
| 10 | videographer for today is Debbie Cavazos, | 09:48:47 |
| 11 | representing Planet Depos. | 09:48:50 |
| 12 | This video deposition is taking place at | 09:48:50 |
| 13 | 601 South 12th Street, Arlington, Virginia, 20598. | 09:48:53 |
| 14 | Could counsel please voice-identify | 09:48:58 |
| 15 | themselves and state whom they represent? | 09:49:00 |
| 16 | MR. ABBAS:  This is Gadeir Abbas appearing | 09:49:00 |
| 17 | for the Plaintiffs.  I'll be taking the | 09:49:03 |
| 18 | deposition. | 09:49:05 |
| 19 | MS. POWELL:  Amy Powell of the Department | 09:49:06 |
| 20 | of Justice, for the Defendants. | 09:49:08 |
| 21 | THE VIDEOGRAPHER:  The court reporter | 09:49:12 |
| 22 | today is Tasiana Basdekis, representing Planet | 09:49:12 |

Transcript of Deborah Moore
Conducted on December 20, 2017                    24

| | | |
|---|---|---|
| 1 | MS. POWELL:  Without revealing internal -- | 10:11:05 |
| 2 | MR. ABBAS:  Yep. | 10:11:05 |
| 3 | MS. POWELL:  -- government deliberations. | 10:11:06 |
| 4 | THE WITNESS:  Yes.  Yes. | 10:11:06 |
| 5 | BY MR. ABBAS: | 10:11:09 |
| 6 | Q  Are you aware of any court cases where a | 10:11:09 |
| 7 | federal court told DHS TRIP to amend its No Fly | 10:11:14 |
| 8 | List redress procedures? | 10:11:20 |
| 9 | MS. POWELL:  Objection.  Calls for a legal | 10:11:22 |
| 10 | conclusion and mischaracterizes legal precedent. | 10:11:23 |
| 11 | THE WITNESS:  Yes. | 10:11:27 |
| 12 | Q  Did the change to DHS TRIP coincide with | 10:11:29 |
| 13 | an adverse ruling regarding DHS TRIP's processes | 10:11:34 |
| 14 | for redress for U.S. persons on the No Fly List? | 10:11:39 |
| 15 | A  Yes. | 10:11:46 |
| 16 | Q  Did the -- is it your understanding that | 10:11:47 |
| 17 | it was just a coincidence that the -- | 10:11:50 |
| 18 | MS. POWELL:  Objection. | 10:11:53 |
| 19 | Q  -- timing of -- | 10:11:53 |
| 20 | MS. POWELL:  Asked and answered. | 10:11:55 |
| 21 | MR. ABBAS:  Well, I'm just trying to | 10:11:57 |
| 22 | clarify. | 10:11:59 |

| | | |
|---|---|---|
| 1 | Q  Is it your testimony today that it was | 10:12:01 |
| 2 | just a coincidence that the federal court made a | 10:12:02 |
| 3 | decision ordering DHS TRIP to alter its | 10:12:06 |
| 4 | administrative process for U.S. persons on the No | 10:12:11 |
| 5 | Fly List at the same time as you decided to | 10:12:15 |
| 6 | increase transparency for people seeking redress | 10:12:17 |
| 7 | from the No Fly List? | 10:12:22 |
| 8 | MS. POWELL:  Same objection.  I'm | 10:12:24 |
| 9 | instructing the witness not to answer as to | 10:12:26 |
| 10 | internal government deliberations. | 10:12:28 |
| 11 | THE WITNESS:  I'm sorry.  I need the | 10:12:32 |
| 12 | question repeated. | 10:12:35 |
| 13 | MR. ABBAS:  Can you read it back? | 10:12:35 |
| 14 | (Whereupon the record was read.) | 10:12:36 |
| 15 | THE WITNESS:  No.  I wouldn't use the word | 10:13:02 |
| 16 | coincidence; however, this is beyond what I'm | 10:13:07 |
| 17 | comfortable discussing. | 10:13:11 |
| 18 | MS. POWELL:  I instructed her not to | 10:13:14 |
| 19 | answer as to internal government deliberations. | 10:13:15 |
| 20 | MR. ABBAS:  Well, that's fine.  I'm asking | 10:13:17 |
| 21 | about what her testimony is going to be and what | 10:13:19 |
| 22 | her understanding is, which is not an internal | 10:13:22 |

Transcript of Deborah Moore
Conducted on December 20, 2017                    59

| | | |
|---|---|---|
| 1 | THE WITNESS:  Estimating? | 11:12:53 |
| 2 | BY MR. ABBAS: | 11:12:54 |
| 3 | Q  Yep. | 11:12:55 |
| 4 | A  10 percent, 5 percent. | 11:12:58 |
| 5 | Q  Not more than 25 percent? | 11:13:01 |
| 6 | A  No. | 11:13:03 |
| 7 | Q  Okay.  So you believe that it's in the 10 | 11:13:04 |
| 8 | percent to 5 percent range for out-of-scope | 11:13:11 |
| 9 | complaints; correct? | 11:13:14 |
| 10 | A  I believe that to be correct, yes. | 11:13:15 |
| 11 | Q  But you're -- it sounds like you're | 11:13:17 |
| 12 | certain that it's less than 25 percent? | 11:13:21 |
| 13 | MS. POWELL:  Objection.  Asked and | 11:13:23 |
| 14 | answered. | 11:13:24 |
| 15 | THE WITNESS:  I'm not certain.  Without | 11:13:25 |
| 16 | the numbers in front of me, I can't be certain. | 11:13:26 |
| 17 | But my estimate is 5 to 10. | 11:13:28 |
| 18 | Q  Got it.  Great.  Excellent. | 11:13:32 |
| 19 | Who determines whether a complaint that | 11:13:34 |
| 20 | DHS TRIP receives is out of scope? | 11:13:48 |
| 21 | A  At the first phase, during the intake, the | 11:13:53 |
| 22 | intake staff can determine, usually, if it's out | 11:13:57 |

Transcript of Deborah Moore
Conducted on December 20, 2017                           60

| | | |
|---|---|---|
| 1 | of scope.  If it's clearly someone complaining | 11:14:02 |
| 2 | about baggage mishandling, they can determine. | 11:14:06 |
| 3 | In the second phase -- | 11:14:10 |
| 4 | Q  Let me ask you -- and I apologize for | 11:14:10 |
| 5 | interrupting. | 11:14:13 |
| 6 | When you say intake staff, are you | 11:14:14 |
| 7 | referring to the analysts? | 11:14:15 |
| 8 | A  No.  We have contract staff that assist | 11:14:17 |
| 9 | us. | 11:14:20 |
| 10 | Q  Very important.  Okay.  So there are | 11:14:21 |
| 11 | contractors that DHS TRIP has that perform | 11:14:24 |
| 12 | functions that regard DHS TRIP; correct? | 11:14:29 |
| 13 | A  Correct. | 11:14:33 |
| 14 | Q  How many contractors does DHS TRIP | 11:14:33 |
| 15 | utilize? | 11:14:38 |
| 16 | A  Usually six. | 11:14:39 |
| 17 | Q  What company does DHS TRIP contract with? | 11:14:44 |
| 18 | MS. POWELL:  Hang on a second. | 11:14:48 |
| 19 | MR. ABBAS:  Company.  I mean, that's for | 11:14:51 |
| 20 | sure not SSI. | 11:14:53 |
| 21 | MS. POWELL:  Okay. | 11:14:55 |
| 22 | Go ahead and answer, if you know. | 11:14:56 |

Transcript of Deborah Moore
Conducted on December 20, 2017                    61

| | | |
|---|---|---|
| 1 | THE WITNESS:  I believe the name of the | 11:14:59 |
| 2 | company is Dynamis. | 11:15:00 |
| 3 | BY MR. ABBAS: | 11:15:02 |
| 4 | Q  Can you spell it? | 11:15:02 |
| 5 | A  I believe it's D-Y-N-A-M-I-S. | 11:15:03 |
| 6 | Q  D-Y-N-A-M-I-S? | 11:15:07 |
| 7 | A  Yes. | 11:15:10 |
| 8 | Q  And there are six contractors? | 11:15:11 |
| 9 | A  Currently, I believe six. | 11:15:13 |
| 10 | Q  And what role do those contractors play? | 11:15:16 |
| 11 | A  They support the intake process. | 11:15:22 |
| 12 | Q  What does -- what do the contractors do to | 11:15:30 |
| 13 | support the intake process? | 11:15:33 |
| 14 | A  They receive the surface mail that we -- | 11:15:35 |
| 15 | the applications we receive by mail.  Open the | 11:15:40 |
| 16 | mail and review it. | 11:15:42 |
| 17 | They review -- they do the matching of the | 11:15:44 |
| 18 | identity documents, upload the identity documents | 11:15:52 |
| 19 | that we've received via e-mail to the appropriate | 11:15:54 |
| 20 | case. | 11:15:57 |
| 21 | They do the review to ensure the data has | 11:15:59 |
| 22 | been properly entered, the quality review. | 11:16:01 |

Transcript of Deborah Moore
Conducted on December 20, 2017                          137

| | | |
|---|---|---|
| 1 | A   The basis would be my experience in the | 13:53:37 |
| 2 | Department of Homeland Security. | 13:53:39 |
| 3 | Q   But your experience doesn't regard | 13:53:40 |
| 4 | counter-terrorism in the Department of Homeland | 13:53:42 |
| 5 | Security; correct? | 13:53:46 |
| 6 | MS. POWELL:  Objection. | 13:53:46 |
| 7 | Q   And you're not a -- | 13:53:46 |
| 8 | MS. POWELL:  That's not what she said. | 13:53:46 |
| 9 | Q   -- counter-terrorism expert; correct? | 13:53:50 |
| 10 | A   I'm not a counter-terrorism expert. | 13:53:50 |
| 11 | Q   Great.  Okay. | 13:53:52 |
| 12 | So is there anything else, besides your | 13:53:54 |
| 13 | experience, that's the basis of your conclusion | 13:53:56 |
| 14 | that to apply the No Fly List's revised processes | 13:53:59 |
| 15 | to U.S. persons on the Selectee List would | 13:54:03 |
| 16 | significantly undermine the government's | 13:54:07 |
| 17 | counter-terrorism efforts? | 13:54:08 |
| 18 | A   No. | 13:54:09 |
| 19 | Q   So it's just your experience in DHS that | 13:54:10 |
| 20 | form the basis of that conclusion? | 13:54:14 |
| 21 | A   Yes. | 13:54:16 |
| 22 | Q   Was it your decision to not apply the | 13:54:17 |

Transcript of Deborah Moore
Conducted on December 20, 2017                                    138

| | | |
|---|---|---|
| 1 | revised No Fly List procedures to U.S. persons on | 13:54:21 |
| 2 | the Selectee List? | 13:54:26 |
| 3 | MS. POWELL:  Objection.  Misleading and | 13:54:29 |
| 4 | vague, but you can answer, if you can. | 13:54:32 |
| 5 | THE WITNESS:  It was not solely my | 13:54:35 |
| 6 | decision.  I did not make a decision in isolation. | 13:54:37 |
| 7 | BY MR. ABBAS: | 13:54:37 |
| 8 | Q  Was it your decision though? | 13:54:42 |
| 9 | I understand that you consulted other | 13:54:44 |
| 10 | people, but was it your decision in determining | 13:54:45 |
| 11 | the scope of application of the revised No Fly | 13:54:48 |
| 12 | List redress procedures? | 13:54:54 |
| 13 | MS. POWELL:  Same objection, and asked and | 13:54:55 |
| 14 | answered. | 13:54:57 |
| 15 | THE WITNESS:  No.  I wouldn't say that it | 13:54:59 |
| 16 | was my decision. | 13:55:01 |
| 17 | Q  Whose decision was it?  Let me withdraw | 13:55:03 |
| 18 | the question. | 13:55:07 |
| 19 | Who told you to apply the No Fly List | 13:55:07 |
| 20 | procedures just to people on the No Fly List? | 13:55:13 |
| 21 | MS. POWELL:  Objection. | 13:55:13 |
| 22 | Q  If it wasn't your decision. | 13:55:17 |

Transcript of Deborah Moore
Conducted on December 20, 2017                    139

| | | |
|---|---|---|
| 1 | MS. POWELL:  Foundation and misleading. | 13:55:18 |
| 2 | THE WITNESS:  I worked in large part with | 13:55:23 |
| 3 | the Screening Coordination Office, which, as I | 13:55:29 |
| 4 | said, is the overseer of the TRIP program at | 13:55:30 |
| 5 | large, and also is the redress -- if the -- I | 13:55:34 |
| 6 | can't remember the exact title, but the redress | 13:55:40 |
| 7 | official for the department. | 13:55:45 |
| 8 | BY MR. ABBAS: | 13:55:45 |
| 9 | Q  So that official told you how to revise | 13:55:46 |
| 10 | DHS TRIP?  What revisions to make and how to apply | 13:55:50 |
| 11 | them? | 13:55:54 |
| 12 | MS. POWELL:  Objection.  Foundation and | 13:55:54 |
| 13 | misleading and vague and compound. | 13:55:56 |
| 14 | THE WITNESS:  Generally, I would agree | 13:56:00 |
| 15 | with that. | 13:56:02 |
| 16 | Q  So I'm still a little lost, and I'm really | 13:56:04 |
| 17 | trying to get clarity. | 13:56:07 |
| 18 | Who decided to revise DHS TRIP in 2014 in | 13:56:09 |
| 19 | the manner that it was revised?  Whose -- I'm | 13:56:16 |
| 20 | sorry.  Let me withdraw that. | 13:56:19 |
| 21 | Whose authority was it to revise DHS TRIP | 13:56:20 |
| 22 | in the manner that it was revised in 2014? | 13:56:23 |

| | | |
|---|---|---|
| 1 | A   My understanding is that it was within the | 13:56:26 |
| 2 | Screening Coordination Office's authority. | 13:56:30 |
| 3 | Q   So you didn't have the authority to | 13:56:32 |
| 4 | determine what process DHS TRIP utilizes -- | 13:56:34 |
| 5 | MS. POWELL:  Objection. | 13:56:40 |
| 6 | Q   -- to process DHS TRIP complaints? | 13:56:41 |
| 7 | MS. POWELL:  Misleading, compound, vague. | 13:56:43 |
| 8 | THE WITNESS:  The Office of Screening | 13:56:48 |
| 9 | Coordination is in charge of policy and | 13:56:54 |
| 10 | overseeing, overall, the DHS TRIP activities | 13:56:58 |
| 11 | function. | 13:57:05 |
| 12 | My work is to administer the program to | 13:57:05 |
| 13 | make sure it is fair and robust and in alignment | 13:57:09 |
| 14 | with policy direction. | 13:57:14 |
| 15 | Q   Was the policy to revise DHS TRIP in 2014 | 13:57:15 |
| 16 | written down and sent to you? | 13:57:23 |
| 17 | MS. POWELL:  Objection.  Compound and | 13:57:28 |
| 18 | vague, but you can answer. | 13:57:31 |
| 19 | THE WITNESS:  Yes. | 13:57:37 |
| 20 | Q   So there's a document that you got from | 13:57:39 |
| 21 | your superiors that told you what revisions to | 13:57:41 |
| 22 | make to DHS TRIP? | 13:57:45 |

Transcript of Deborah Moore
Conducted on December 20, 2017                              141

```
 1        MS. POWELL:  Objection.  Misleading.          13:57:46

 2        THE WITNESS:  Yes.                             13:57:52

 3   BY MR. ABBAS:                                       13:57:53

 4      Q  What's the name of that document?            13:57:53

 5      A  It's the implementation plan of the U.S.     13:57:57

 6   Government for No Fly individuals.                  13:58:03

 7      Q  Who authored that document?                  13:58:12

 8      A  I don't know exactly who authored it.  It    13:58:17

 9   was a U.S. Government -- it was released by the     13:58:22

10   White House.                                        13:58:27

11      Q  The implementation plan for the No Fly       13:58:29

12   List individuals was released by the White House?  13:58:34

13      A  Yes.                                          13:58:36

14      Q  And that implementation plan for No Fly      13:58:36

15   List individuals is what amended the DHS TRIP      13:58:40

16   process with regards to U.S. persons on the No Fly 13:58:42

17   List?                                               13:58:45

18        MS. POWELL:  Objection.  Misleading.          13:58:45

19        THE WITNESS:  In large part, yes.             13:58:48

20      Q  What's the small part, if there's -- what   13:58:50

21   other -- if -- it sounds like there's something    13:58:53

22   else.                                               13:58:56
```

Transcript of Deborah Moore
Conducted on December 20, 2017                              142

| | | |
|---|---|---|
| 1 | A   The document is a high-level framework, so | 13:58:56 |
| 2 | the specifics of how the changes were implemented | 13:59:01 |
| 3 | did not come from that document, but came from my | 13:59:04 |
| 4 | office. | 13:59:07 |
| 5 | Q   Okay.  So what did -- what came -- what | 13:59:09 |
| 6 | was dictated to you in the implementation plan for | 13:59:12 |
| 7 | No Fly List individuals that your superiors sent | 13:59:15 |
| 8 | you and ordered you to follow? | 13:59:18 |
| 9 | MS. POWELL:  Objection.  Compound, vague. | 13:59:21 |
| 10 | THE WITNESS:  The process for how we were | 13:59:25 |
| 11 | to handle -- how we are to handle U.S. person on | 13:59:28 |
| 12 | the No Fly List was dictated. | 13:59:33 |
| 13 | Q   And what was the content of the | 13:59:36 |
| 14 | implementation plan for No Fly List individuals? | 13:59:40 |
| 15 | A   The content describes three broad phases | 13:59:44 |
| 16 | for how these applications are to be handled, | 13:59:49 |
| 17 | along with description of the requirements for who | 13:59:53 |
| 18 | can -- who qualifies -- which applicants qualify | 13:59:58 |
| 19 | for the enhanced process. | 14:00:00 |
| 20 | Q   What are the three broad phases? | 14:00:03 |
| 21 | Yep.  Take your time.  And if you'd like a | 14:00:07 |
| 22 | break, we're happy to.  It's up to you. | 14:00:09 |

| | | |
|---|---|---|
| 1 | Fly List or not. | 14:36:55 |
| 2 | Q   Sure.  So you -- but as -- to qualify for | 14:36:56 |
| 3 | the revised DHS TRIP process, someone must be on | 14:37:01 |
| 4 | the No Fly List? | 14:37:05 |
| 5 | A   Yes. | 14:37:06 |
| 6 | Q   And there are other qualifications, but | 14:37:07 |
| 7 | that's one of them; correct? | 14:37:09 |
| 8 | A   Yes. | 14:37:10 |
| 9 | Q   But DHS TRIP does not determine whether | 14:37:10 |
| 10 | someone is or is not on the No Fly List; is that | 14:37:13 |
| 11 | correct? | 14:37:16 |
| 12 | A   That's correct. | 14:37:16 |
| 13 | Q   So who determines whether someone is or is | 14:37:17 |
| 14 | not on the No Fly List? | 14:37:20 |
| 15 | A   The Terrorist Screening Center. | 14:37:21 |
| 16 | Q   Okay.  So if DHS TRIP personnel receives a | 14:37:23 |
| 17 | complaint that DHS TRIP personnel believes is | 14:37:29 |
| 18 | TSDB-regarding, that complaint gets referred to | 14:37:34 |
| 19 | TSC, and then TSC decides whether that person is | 14:37:37 |
| 20 | on the No Fly List or not? | 14:37:42 |
| 21 | MS. POWELL:  Objection.  Compound and | 14:37:43 |
| 22 | vague. | 14:37:44 |

| | | |
|---|---|---|
| 1 | THE WITNESS:  Generally, as I understand | 14:37:48 |
| 2 | your description, I would say yes. | 14:37:50 |
| 3 | BY MR. ABBAS: | 14:37:52 |
| 4 | Q  Okay. | 14:37:52 |
| 5 | And DHS TRIP just accepts what TSC says | 14:37:53 |
| 6 | about a person's Watchlist status; is that | 14:37:59 |
| 7 | correct? | 14:38:02 |
| 8 | MS. POWELL:  Objection.  Vague. | 14:38:02 |
| 9 | THE WITNESS:  TSC is the owner of the No | 14:38:06 |
| 10 | Fly List, so, yes, if they tell us this person is | 14:38:09 |
| 11 | on the No Fly List, yes, we accept it. | 14:38:14 |
| 12 | Q  Okay.  So DHS TRIP personnel do not make | 14:38:16 |
| 13 | their own determination about a person's Watchlist | 14:38:21 |
| 14 | status? | 14:38:22 |
| 15 | MS. POWELL:  Objection.  Vague. | 14:38:23 |
| 16 | THE WITNESS:  Correct.  We don't make the | 14:38:25 |
| 17 | determination. | 14:38:27 |
| 18 | Q  Although DHS TRIP personnel do have access | 14:38:28 |
| 19 | to the Secure Flight database, which would | 14:38:31 |
| 20 | indicate whether someone is or is not a match to | 14:38:34 |
| 21 | an identity on the No Fly List; correct? | 14:38:37 |
| 22 | A  Correct. | 14:38:40 |

1    Q  Okay.  Okay.  All right.                        14:38:40

2        So the first phase is a letter informing       14:38:47

3    the person that they're on the No Fly List and      14:38:51

4    that they can seek additional information;          14:38:53

5    correct?                                            14:38:55

6        MS. POWELL:  Objection.  Vague.                 14:38:56

7        THE WITNESS:  The letter that we send at        14:38:58

8    the end of the first phase tells the -- informs     14:39:00

9    the person that they're on the No Fly List and      14:39:03

10   that they can seek further information.             14:39:05

11   Q  Okay.  And then the second phase is only         14:39:08

12   if they seek additional information; correct?       14:39:13

13   A  It initiates if they've contacted us and         14:39:15

14   let us know, within the period of time, that they   14:39:18

15   would like us to provide additional information.    14:39:21

16   Q  And then if they ask for additional              14:39:28

17   information, DHS TRIP provides them with an         14:39:30

18   unclassified summary and allows the applicant to   14:39:36

19   submit additional information?                      14:39:40

20   A  We work with the Terrorist Screening            14:39:41

21   Center to develop the -- they develop the          14:39:46

22   unclassified summary.                               14:39:48

Transcript of Deborah Moore
Conducted on December 20, 2017                    170

```
1        Once it's developed, we may consult other      14:39:50

2   agencies to determine if the information in the     14:39:56

3   unclassified summary is sufficient for and reason   14:39:59

4   -- for the person to reasonably respond.            14:40:04

5        And if we are informed that other agencies     14:40:06

6   feel that changes need to be made, we work, again   14:40:08

7   with TSC, to modify to ensure.                      14:40:11

8     Q  So it sounds like that DHS TRIP has a          14:40:15

9   really critical facilitating role between the       14:40:18

10  various agencies that have a stake in a DHS TRIP    14:40:21

11  complaint submitted by someone on the No Fly List;  14:40:25

12  is that correct?                                    14:40:29

13    A  Yes.                                           14:40:29

14    Q  Beyond facilitating, does DHS TRIP draft      14:40:32

15  the unclassified summary that U.S. persons on the   14:40:39

16  No Fly List receive as a result of the revised DHS  14:40:43

17  TRIP process?                                       14:40:47

18       MS. POWELL:  Objection.  Vague.               14:40:48

19       THE WITNESS:  TSC drafts the unclassified     14:40:51

20  summary.                                            14:40:54

21    Q  Does T -- I'm sorry.                           14:40:56

22       Does DHS TRIP assess, in any manner, the      14:40:57
```

Transcript of Deborah Moore
Conducted on December 20, 2017                              308

```
1         Thank you so much, Dr. Moore.  I really          18:44:25

2   appreciate it.                                         18:44:25

3      A  Oh, thank you.  Nice to meet you as well.        18:44:26

4         THE VIDEOGRAPHER:  This marks the end of         18:44:26

5   the deposition.  We're going off the record at        18:44:28

6   6:44.                                                  18:44:31

7         (Off the record at 6:44 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22
```

Transcript of Deborah Moore
Conducted on December 20, 2017                    309

```
1      CERTIFICATE OF SHORTHAND REPORTER- NOTARY PUBLIC

2         I, TASIANA T. BASDEKIS, Registered

3    Professional Reporter and Notary Public, the

4    officer before whom the foregoing deposition was

5    taken, do hereby certify that the foregoing

6    transcript is a true and correct record of the

7    testimony given; that said testimony was taken by

8    me stenographically and thereafter reduced to

9    typewriting under my supervision; that reading and

10   signing was not requested; and that I am neither

11   counsel for or related to, nor employed by any of

12   the parties to this case and have no interest,

13   financial or otherwise, in its outcome.

14         IN WITNESS WHEREOF, I have hereunto set my

15   hand and affixed my notarial seal this 2 day of

16   January, 2018.

17

18   My commission expires September 30, 2021.

19

20   _____

21   NOTARY PUBLIC IN AND FOR

22   THE COMMONWEALTH OF VIRGINIA
```

# Exhibit O

UNCLASSIFIED

## OVERVIEW OF THE U.S. GOVERNMENT'S WATCHLISTING PROCESS AND PROCEDURES
### AS OF: January 2018

The U.S. Government (USG) is committed to protecting the United States from terrorist threats and attacks and seeks to do this in a manner that protects the freedoms, privacy and civil rights and liberties of U.S. persons and other individuals with rights under U.S. law.[1]  Following the attacks of September 11, 2001, to further protect the homeland, the President through Homeland Security Presidential Directive-6 (HSPD-6), September 16, 2003, directed the USG to consolidate its approach to terrorism screening and watchlisting, facilitate information sharing, and called for the protection of privacy and civil liberties while managing the process. Thereafter, Congress likewise mandated greater sharing of terrorist information among federal departments and agencies, while still protecting privacy and civil liberties.[2]

As part of this effort, to facilitate information sharing, the USG integrated terrorist identity information from federal departments and agencies into a single database – the Terrorist Screening Database (TSDB) - for use by various government agencies in support of their screening and vetting activities.  The Terrorist Screening Center (TSC) was established to manage the TSDB.  The TSC was created by the Attorney General, Secretaries of Homeland Security and State, and the Director of Central Intelligence pursuant to Homeland Security Presidential Directive-6 (HSPD-6) of September 16, 2003.

The USG recognizes the importance of transparency and the need for a general understanding of its approach to terrorism screening and watchlisting.  This includes the process for nominating someone to the TSDB, ensuring records are accurate and updated, and how agencies use the information for screening and vetting.  This process also includes appropriate mechanisms to ensure timely and fair review of redress requests to correct erroneous information.

The overall watchlisting processes and procedures are the subject of continual internal reviews by agency officials charged with ensuring overall fairness and effectiveness, a process that includes review by legal counsel and agency privacy and civil liberties officers.  In addition to these internal agency reviews, the overall watchlisting processes and procedures are also evaluated by external authorities on a regular basis, to include the Offices of Inspectors General, the Government Accountability Office, Congress, and independent bodies, such as the Privacy and Civil Liberties Oversight Board.

This paper provides an overview of the terrorist watchlisting process.

---

[1] Unless noted, a U.S. person is defined in Executive Order 12333.

[2] Intelligence Reform and Terrorism Prevention Act, Pub. L. No. 108-458 § 1016 (2004) (codified at 6 U.S.C. § 485).

Elhady-FBITSC-001947

UNCLASSIFIED

## BACKGROUND

The TSC is a multi-agency center that consolidates the USG terrorist watchlists into a single database and provides for the appropriate and lawful use of terrorist information in screening and vetting processes.  Prior to the creation of the TSC in 2003, nine USG agencies maintained twelve different terrorist watchlists.

The TSC is administered by the Federal Bureau of Investigation ("FBI") in coordination with:

> ➢ The Department of Homeland Security ("DHS"),
> ➢ The Department of State ("State"),
> ➢ The Department of Justice ("DOJ"), and
> ➢ The Office of the Director of National Intelligence ("ODNI").

### TSDB Overview

The TSDB, commonly referred to as the Terrorist Watchlist, contains both biographic and biometric identifying information (e.g., name, date of birth, photographs, iris scans, and/or fingerprints) of known and suspected terrorists.  The TSDB does not contain classified national security information.  TSDB information is "For Official Use Only//Law Enforcement Sensitive//Sensitive Security Information," which means the information is protected from disclosure and is accessible only to persons who have a "need to know" such as federal law enforcement officials for their screening and vetting activities.

The TSDB includes subset categories of known or suspected terrorists who may be subject to additional security screening before being permitted to board an aircraft or who are prohibited from boarding flights on U.S. carriers as well as flights into, out of, over or within U.S. airspace.  These categories, commonly referred to as the Selectee and No Fly Lists are used by the Transportation Security Administration (TSA) to secure commercial air travel against the threat of terrorism.  It is important to note that individuals may be subjected to additional security screening for reasons other than a match against a watchlist record.  For example, passengers may be selected for random screening measures during the security screening process.

As a result of the dynamic intelligence environment, regular reviews of the data, and the redress process, the TSDB does change.  The TSDB is continuously reviewed and updated.  Identities are added, have their status changed or are removed.  Therefore, the USG does not regularly release the numbers of identities on the TSDB, or in its subset lists.  There are no quotas or numerical goals.  The vast majority of the identities in the TSDB are foreign nationals who are not located in the U.S. and have no known nexus to the United States.

Elhady-FBITSC-001948

UNCLASSIFIED

## WATCHLIST AND SCREENING

### Nominations to the TSDB

The procedure for submitting information about individuals for inclusion into the TSDB is referred to as the nomination process.  Inclusion on the watchlist results from an assessment based on analysis of available intelligence and investigative information that the individual meets the applicable criteria for inclusion on the watchlist.  The standard for inclusion in the TSDB is generally one of **reasonable suspicion** which is defined later in this document.

Nominations to the TSDB are made by USG agencies and foreign partners based on credible information from:

- ➢ law enforcement,
- ➢ immigration records,
- ➢ homeland security and intelligence communities,
- ➢ State through U.S. embassies and consulates abroad, and
- ➢ foreign partners with which the USG has arrangements to share terrorist screening information.

Nominating agencies provide identities which meet the standard for inclusion in the TSDB to:

- ➢ the National Counterterrorism Center (NCTC), for identities with a nexus to international terrorism; and
- ➢ the Federal Bureau of Investigation (FBI), for identities with a nexus to domestic terrorism.

Before an individual is added to the TSDB, the nomination undergoes a multi-step review process at the nominating agency, at the NCTC or FBI (as appropriate), and then again at the TSC to ensure compliance with interagency standards for inclusion.  If the nomination has an international nexus to terrorism it is reviewed by NCTC, otherwise it is reviewed by the FBI.  The NCTC maintains classified national security information concerning international terrorists within its Terrorist Identities Datamart Environment ("TIDE").  Pursuant to Section 1021 of the Intelligence Reform and Terrorism Prevention Act of 2004, the NCTC serves as the primary organization in the USG for analyzing and integrating all intelligence possessed or acquired by the USG pertaining to terrorism and counterterrorism, excepting intelligence pertaining exclusively to domestic terrorists and domestic counterterrorism.

To include a known or suspected terrorist nomination in the TSDB, the nomination must include enough identifying information to allow screeners to be able to determine whether the individual they are screening is a match to a record in the TSDB, and enough information to establish a reasonable suspicion that the individual is a known or suspected terrorist.

Elhady-FBITSC-001949

UNCLASSIFIED

The USG continuously evaluates its standards for inclusion in the TSDB and its subset lists.  To meet the reasonable suspicion standard for inclusion in the TSDB as a known or suspected terrorist, the nominator must rely upon articulable intelligence or information which, based on the totality of the circumstances and, taken together with rational inferences from those facts, creates a reasonable suspicion that the individual is engaged, has been engaged, or intends to engage, in conduct constituting in preparation for, in aid or in furtherance of, or related to, terrorism and/or terrorist activities.

Mere guesses or "hunches" or the reporting of suspicious activity alone are not sufficient to establish reasonable suspicion.

Nominations must not be based solely on the individual's race, ethnicity, or religious affiliation, nor solely on beliefs and activities protected by the First Amendment, such as freedom of speech, free exercise of religion, freedom of the press, freedom of peaceful assembly, and the freedom to petition the government for redress of grievances.

**Nominations to the No Fly and Selectee Lists**

Nominations to the No Fly or Selectee Lists (which are subsets of the TSDB) must satisfy criteria distinct from that used for mere inclusion in the TSDB.   TSC is responsible for determining if the associated information meets criteria for inclusion on both lists.

Any individual, regardless of citizenship, may be included on the No Fly List when the TSC determines the individual meets at least one of the following criteria where the individual poses:

(1) a threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) or domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to an aircraft (including a threat of piracy, or a threat to airline, passenger, or civil aviation security);

(2) a threat of committing an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to the homeland;

(3) a threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) against any U.S. Government facility abroad and associated or supporting personnel, including U.S. embassies, consulates and missions, military installations (as defined by 10 U.S.C. 2801(c)(4)), U.S. ships, U.S. aircraft, or other auxiliary craft owned or leased by the U.S. Government; *or*,

(4) a threat of engaging in or conducting a violent act of terrorism and who is operationally capable of doing so.

For security reasons, the criteria for inclusion on the Selectee List are not public.  This is because disclosure of the Selectee criteria could give known or suspected terrorists information that may assist in developing strategies to circumvent security screening.

Elhady-FBITSC-001950

The TSC reviews each nomination to ensure compliance with standards for inclusion.  At the conclusion of the TSC's review, TSC personnel either accept or reject the nomination for inclusion into the TSDB and, if appropriate, inclusion on either the Selectee or No Fly subsets.

Being subject to additional screening, does not necessarily mean a person is in the TSDB.  To ensure the safety and security of the traveling public, TSA may designate individuals for additional security screening before they are permitted to enter the sterile area of an airport or to board an aircraft.  For example, an individual may be designated for additional screening in order to resolve a walk-through metal detector alarm, because of random selection, or for other reasons.

**Use of the TSDB**

Agencies and officials authorized or required to conduct terrorist screening or to use information for diplomatic, military, intelligence, law enforcement, immigration, transportation security, visa, and protective processes are given access to terrorism information to facilitate their respective public missions.[3]

The largest end users of the TSDB are[4]:

- State (visa and passport screening);
- DHS
    a. Customs and Border Protection ("CBP") (vetting and inspection of travelers seeking entry to the United States or between ports of entry, at preclearance facilities abroad, and during the processing of trusted traveler applications.);
    b. Transportation Security Administration ("TSA") (air passenger screening and transportation security credential vetting);
    c. U.S. Citizenship and Immigration Services ("USCIS")  (immigration screening);
    d. U.S. Immigration and Customs Enforcement ("ICE") (investigations);
- Department of Defense ("DOD")  (base access screening); and
- FBI (investigations and domestic law enforcement screening).

**Encounters**

An encounter is an event in which an individual is identified during a screening process to be a potential positive or inconclusive match to an individual who is in the TSDB.  An encounter can be a face-to-face interaction (e.g. inspection at a U.S. port of entry, visa interview, or traffic stop by local law enforcement), electronic (e.g., Electronic System for Travel Authorization (ESTA) application or a visa application), or paper-based (e.g. review of visa petition). When an encounter occurs, the agency and/or the encountering officer contacts the TSC to confirm whether the individual matches the record in the TSDB.   If the individual is confirmed to match

---

[3] HSPD-6

[4] This is not inclusive of *all* users.

Elhady-FBITSC-001951

UNCLASSIFIED

the identity in the TSDB, each encountering agency will take appropriate action according to internal procedures and policies and consistent with  the application of its expertise and the regulatory and statutory standards applicable to each screening and vetting activity to serve its agency mission.

## QUALITY ASSURANCE REVIEWS AND REMOVAL PROCESS

### Quality Assurance Reviews

To maintain thorough, accurate and current terrorism information, the TSDB is subjected to rigorous and ongoing quality control measures to ensure:

> ➢ Nominations continue to satisfy the  criteria for inclusion; and
> ➢ Information offered in support of the nomination is reliable and up- to-date.

Quality control measures include reviews and evaluations by the nominating agency, NCTC, and TSC to verify that each nomination meets the appropriate criteria for inclusion in the TSDB and any appropriate subset list prior to an identity being added to the TSDB.  These reviews and evaluations also provide a means to identify any changes to the information over time that could affect inclusion.

For example, nominating agencies conduct annual reviews of all nominations of U.S. persons to the TSDB.  Nominations of non-U.S. persons receive reviews, as well.  Each nominating agency must have internal procedures to prevent, identify and correct any errors.  These procedures include the review of retractions and/or corrections of information that may have been used to support a nomination.

Additionally, the TSC regularly reviews data in the TSDB to ensure that the underlying information supports the nomination and performs audits to confirm the data in the TSDB is thorough, accurate, and current.  The TSC also conducts a biannual review for all U.S. person records in the TSDB, to include all U.S. persons on the Selectee List or No Fly List.  Additionally, for all persons, there is a review following each screening encounter when there is a potential match to an identity in the TSDB.  Available information is reviewed to evaluate that the record still meets the standard for inclusion and to determine an appropriate encounter response, when applicable.

At any time, a USG agency (whether or not it is the nominator) that identifies new or updated information about a watchlist record, may make a request to NCTC/TSC to modify or remove that record.

The multiple reviews described above conducted by the nominating agencies, NCTC, and TSC help ensure that terrorist identity information used to support the law enforcement and screening functions is thorough, accurate, and current.

### Removal Process

Elhady-FBITSC-001952

If it is determined during the quality assurance reviews that a change should be made to a record in the TSDB, the TSC, coordinating with the nominating agency and any other relevant agencies, takes steps to clarify the record.  Additions, modifications, and removals are executed to ensure that the watchlisting process and procedures remain compliant with applicable law.  Examples of situations where a record may be removed from the TSDB in the normal course of business include:

- ➢ When there is a misidentification,
- ➢ To promptly adjust or delete erroneous information,
- ➢ When new information becomes available to update the record including information that refutes or discredits the original information that supported the individual's watchlist status.

**Oversight**

Relevant USG departments' and agencies' Inspectors General and the U.S. Government Accountability Office regularly review terrorist watchlist, screening, and redress processes.  The Privacy and Civil Liberties Oversight Board (an independent bipartisan agency within the Executive Branch) and the U.S. Congress also provide oversight.  The U.S. Congress conducts oversight through its committees including, but not limited to, the House and Senate Intelligence Committees, the House and Senate Homeland Security Committees, the House and Senate Appropriations Committees, and the House and Senate Judiciary Committees.  The TSC also has both an embedded legal unit and a dedicated privacy attorney to provide continuous advice and counsel.

**REDRESS PROCESS**

**Overview**

The DHS Traveler Redress Inquiry Program (DHS TRIP) is a resource for individuals who believe they have been unfairly or incorrectly delayed, denied boarding, or identified for additional screening or inspection at airports or U.S. ports of entry.

The DHS TRIP website http://www.dhs.gov/dhs-trip, provides a single point of contact for travelers to resolve travel-related screening difficulties.  The website provides the user with detailed information about the redress process and what to expect regarding his or her inquiry.  DHS TRIP assigns a unique Redress Control Number (RCN) to each inquiry submitted, allowing travelers to check the status of their inquiry on the website at any time.

As part of the redress process, DHS TRIP provides the traveler with a mechanism to submit any information that may be relevant to the travel difficulties experienced. The DHS TRIP process provides additional or detailed information that can assist the USG in making its determination.

Elhady-FBITSC-001953

UNCLASSIFIED

Travelers may apply at the DHS website or may choose to apply for redress by submitting copies of their completed DHS TRIP Traveler Inquiry Form and copies of their identification documents by U.S. mail to:

> DHS-Traveler Redress Inquiry Program
> 601 S. 12th St. TSA-901
> Arlington, VA20598-6901

To resolve redress inquires, DHS TRIP works with DHS component agencies and other USG agencies such as:

- ➢ CBP,
- ➢ TSA,
- ➢ USCIS
- ➢ National Protection and Programs Directorate's Office of Biometric Identity Management,
- ➢ ICE,
- ➢ U.S. Coast Guard
- ➢ State,
- ➢ Department of Justice,  including the FBI and TSC

The TSC supports DHS TRIP by helping to resolve inquiries which may appear to be related to data in the TSDB.  Through the DHS TRIP process, approximately <u>98% of DHS TRIP inquiries are found to be cleared of any connection with terrorist watchlisted identities</u>.  When a traveler's inquiry may concern data in the TSDB, DHS TRIP works with the TSC's Redress Office, a separate component within the TSC that processes inquiries related to the use of TSDB data by screening agencies.

Upon receipt of a complaint from the DHS TRIP program office, the TSC Redress Office independently reviews the available information about the traveler and documentation provided by the traveler to determine: whether (or not) the traveler is a positive match to an identity in the TSDB.  If the traveler is a positive match to an identity in the TSDB, the analyst will review, whether or not the identity in the TSDB continues to satisfy the criteria for inclusion or should be removed or have its status otherwise modified.   When a traveler seeking redress through DHS TRIP is a positive match to an identity in the TSDB, the TSC's Redress Office contacts NCTC and the nominating agency to assist in the resolution of the complaint. Part of that process includes the nominator participating to ensure that any new or exculpatory information that they may have is considered as part of the redress review.

After reviewing the available information, to include any information submitted by the traveler, the TSC's Redress Office determines whether the traveler's record should remain in the TSDB, be modified, or be removed, unless the legal authority to make such a determination resides, in

Elhady-FBITSC-001954

whole or in part, with another government agency.[5]  In such cases, the TSC Redress Office prepares a recommendation for the decision-making agency and implements the determination.

When changes to a record's status are warranted, TSC's Redress Office ensures such corrections are made and verifies that such modifications or removals are carried over to the various screening systems that receive TSDB data.  DHS TRIP sends a determination letter advising the traveler of the results of the adjudication of the redress inquiry.

Because of security concerns, the USG's general policy is neither to confirm nor deny a person's watchlist status.  In certain instances, however, a U.S. person denied boarding because of their presence on the No Fly list may be apprised of their status through the DHS TRIP process.[6] When a U.S. citizen or Lawful Permanent Resident applying for redress is, in fact, on the No Fly List, DHS TRIP may inform the applicant of his or her status on the list.  These requesters will be provided an opportunity to request and receive additional information regarding their status. Such additional information will include, where possible when national security and law enforcement interests at stake are taken into account, an unclassified summary of information supporting the individual's No Fly List status.  The amount and type of information provided will vary on a case-by-case basis, depending on the facts and circumstances.  In some circumstances, an unclassified summary may not be provided when the national security and law enforcement interests at stake are taken into account.  Requesters are then provided an opportunity to submit any information that they consider potentially relevant to their status on the No Fly List.  TSC then reviews this submission and takes appropriate action, including potentially removing the individual from the No Fly List.

Where TSC determines that an individual seeking redress should remain on the No Fly List, TSC provides a recommendation to the TSA Administrator.  The TSA Administrator will review the available information, including the recommendation from TSC, and will either issue a final order maintaining the person on the No Fly List or removing the person from the No Fly list, or remand the case back to TSC with a request for additional information or clarification.  If a final order is issued, it will state the basis for the TSA Administrator's decision (to the extent feasible in light of the national security and law enforcement interests at stake) and will notify the person of the ability to seek judicial review.

DHS TRIP encourages all aviation travelers to include their DHS Redress Control Number, provided in DHS TRIP response letters, in all future travel reservations.

---

[5] The TSA Administrator or his/her designee, in coordination with other relevant agencies, makes final determinations concerning listing on the No Fly List.  The Administrator reviews the information the traveler submits to DHS TRIP, as well as other available information that is being relied upon to support the No Fly listing, and will issue a final determination.  TSA will provide the individual with a final written determination and will notify the individual of the ability to seek further judicial review under 49 U.S.C. § 46110.

[6] Cite to Notice Re: Revisions to DHS TRIP Procedures, Document 197, Latif v. Holder (D. Or. 2014), Civil Case No. CV 10-00750-BR.  For purposes of this revised redress process, a U.S. person is defined as a U.S citizen or U.S. Legal Permanent Resident.

Elhady-FBITSC-001955

UNCLASSIFIED

It is important to note that the USG cannot ensure future travel will be delay-free.  Individuals may also receive additional inspection, screening, or inquiry for a variety of reasons unrelated to the TSDB, including but not limited to:

- The particular circumstances of the individual's travel
- Grounds for possible inadmissibility to the United States
- Enforcement of the Immigration and Nationality Act (INA);
- Random selection; or
- Airline selection

The U.S. Government is committed to ensuring that the redress process is fair and responsive, as part of its commitment to protect the American public from terrorist threats, while at the same time, safeguarding privacy and civil liberties.

## **CONCLUSION**

This document explains the robust processes and procedures by many agencies working in concert to provide for the appropriate and lawful use of terrorism screening information to protect the United States.

The U.S. Government is committed to ensuring that the watchlisting process is implemented consistent with law and is subject to numerous reviews, oversight, and provides the opportunity to seek redress, while also ensuring the information is appropriately used to vigorously protect the American public from terrorist threats, while safeguarding privacy and civil liberties.

Elhady-FBITSC-001956