# Exhibit 15



# Transcript of Matthew J. DeSarno, Designated Representative

**Date:** April 9, 2018
**Case:** El Hady, et al. -v- Kable, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING | INTERPRETATION | TRIAL SERVICES

Page 5

C O N T E N T S

| EXAMINATION OF MATTHEW J. DESARNO | PAGE |
|---|---|
| By MR. ABBAS | 7 |
| By MS. POWELL | 6 |
| By MR. ABBAS | 7 |
| By MS. POWELL | 20 |
| By MR. ABBAS | 2 |
| By MS. POWELL | 84 |
| By MR. ABBAS | 85 |
| By MS. POWELL | 259 |
| By MR. ABBAS | 260 |
| By MS. POWELL | 323 |
| By MR. ABBAS | 323 |
| By MS. POWELL | 324 |
| By MR. ABBAS | 325 |
| By MS. POWELL | 383 |
| By MR. ABBAS | 384 |
| By MS. POWELL | 390 |
| By MR. ABBAS | 39 |
| By MS. POWELL | 393 |
| By MR. ABBAS | 393 |

Page 6

| By MS. POWELL | 394 |
|---|---|
| By MR. ABBAS | 394 |

E X H I B I T S
(Attached)

| DESARNO DEPOSITION EXHIBIT | | PAGE |
|---|---|---|
| Exhibit A | Notice of 30(b)(6) Deposition of Defendant BI | 44 |
| Exhibit B | Overview of the U.S. Government's Watchlisting Process and Procedures | 237 |

Page 7

P R O C E E D I N G S

Whereupon,
  MATTHEW J. DESARNO,
being first duly sworn or affirmed to testify to the truth, the whole truth, and nothing but the truth, was examined and testified as follows:
  EXAMINATION BY COUNSEL FOR THE PLAINTIFFS
BY MR. ABBAS:
  Q. Please state your full legal name for the record.
  A. Matthew J. DeSarno.
  Q. Mr. DeSarno, why are you here today?
  A. I'm here for a deposition related to the -- testifying on behalf of the FBI related to a watchlisting suit.
  Q. You understand that your testimony today is binding on the agency?
  A. Yes.
  Q. What is the Watchlisting Advisory Council?
  A. The Watchlisting Advisory Council is an advisory council made up of the member agencies

Page 8

involved in the U.S. government watchlisting process. The advisory council meets I believe quarterly to discuss gaps in the watchlisting process, improvements to the watchlisting process, and to provide recommendations to the Homeland Security Council as part of the NCS for proposed modifications to watchlisting guidelines.
  Q. Who created the Watchlisting Advisory Council?
     MS. POWELL: Objection; vague.
     MR. ABBAS: I withdraw my question.
BY MR. ABBAS:
  Q. What is the FBI's role in the Watchlisting Advisory Council?
  A. The FBI is one of the member agencies who sits on the Council. And we send a representative to the advisory council meetings.
  Q. Are all representatives to the Watchlisting Advisory Council coequal?
  A. Meaning do they all have equal vote; is that the question?
  Q. That was not the question.

261

1 answer.
2     Q.  What does it mean to have reasonable
3 suspicion that a person is a suspected terrorist?
4         MS. POWELL: Objection; misleading and a
5 comprehensive answer would require disclosure of
6 law enforcement sensitive information.
7         MR. ABBAS: I'll withdraw the question.
8 BY MR. ABBAS:
9     Q.  Does a suspected terrorist as defined by
10 the watchlisting guidance have to be engaged in
11 criminal conduct?
12        MS. POWELL: Objection; vague, and
13 misleading, and a comprehensive answer would
14 require disclosure of law enforcement sensitive
15 information, but I do think there's a general
16 answer you can give.
17        THE WITNESS: I mean, the inclusion
18 standard as stated in this paragraph on page 4 of
19 Exhibit B clearly indicates that there's no
20 requirement for criminal activity to be included
21 in the watchlisting.
22

262

1 BY MR. ABBAS:
2     Q.  So it's not reasonable for suspected
3 terrorists that are nominated to the TSDB, the
4 reasonable suspicion is not that they're engaged
5 in criminal conduct; correct?
6         MS. POWELL: Objection; misleading, and
7 mischaracterizes prior testimony.
8     Q.  If I'm wrong, tell me I'm wrong. That's
9 fine.
10        MS. POWELL: You're using different
11 definitions of the words.
12        MR. ABBAS: I'm using just the
13 government's words. I'll ask it again.
14 BY MR. ABBAS:
15    Q.  In order to be included in the TSDB,
16 there must be reasonable suspicion that a person
17 is either a known terrorist or a suspected
18 terrorist; correct?
19        MS. POWELL: Objection; misleading and
20 mischaracterizes prior testimony.
21        THE WITNESS: In order to be included,
22 there must be reasonable suspicion the individual

263

1 is engaged, has been engaged, or intends to engage
2 in conduct constituting in preparation for, in
3 aid, or in furtherance of related to terrorism
4 and/or terrorist activities.
5 BY MR. ABBAS:
6     Q.  Does being related to a person -- let me
7 ask this: Does a person who is nominated to the
8 TSDB -- let me try again.
9         Must individuals who the FBI nominates
10 to the TSDB be under investigation?
11        MS. POWELL: Objection; calls for law
12 enforcement privileged information.
13        I'm instructing the witness not to
14 answer.
15    Q.  Must an individual --
16        MR. ABBAS: On what basis?
17        MS. POWELL: The law enforcement
18 privilege.
19        MR. ABBAS: Okay.
20 BY MR. ABBAS:
21    Q.  In order to nominate an individual to
22 the TSDB, must the FBI have conducted an

264

1 assessment of that individual?
2         MS. POWELL: Objection; calls for law
3 enforcement information.
4         I'm instructing the witness not to
5 answer.
6         I do want to withdraw my blanket
7 instruction to the previous question, though.  To
8 the extent there is any non-privileged information
9 you can give about whether there's always an
10 investigation connected to a nomination, you may.
11 If you're not sure, we can consult later, but...
12    Q.  I'll go back to that question. I'll ask
13 it again.
14    A.  Okay.
15    Q.  In order for the FBI to nominate an
16 individual to the TSDB, must there be an
17 investigation regarding the prospective listee?
18    A.  No.
19        THE WITNESS: Sorry.
20        MS. POWELL: Let me sneak in the
21 objection that a comprehensive explanation of the
22 answer would require the disclosure of law

**265**

enforcement privileged information. That answer was not privileged.
BY MR. ABBAS:
Q. Why would the FBI try to place people in the TSDB that are not being investigated?
    MS. POWELL: Same objection that a comprehensive explanation of the answer would require disclosure of law enforcement privileged information. To the extent there is a non-privileged answer you can give, you can. If not, we can come back to it at a later time.
    THE WITNESS: If during the course of an investigation or during the course of either a foreign partner engagement or other agency engagement, the FBI developed information about someone who was overseas who met this inclusion standard, but did not -- did not -- the FBI decided that it was not going to open an investigation on that person, in that instance, the FBI could make a nomination if it met this standard on that overseas person.

**266**

BY MR. ABBAS:
Q. Why would the FBI place someone in the TSDB and not investigate that person?
    MS. POWELL: Objection, I think any further answer other than the example he has given you would require disclosure of law enforcement privileged information.
    MR. ABBAS: Sure.
BY MR. ABBAS:
Q. When the FBI nominates a person to the TSDB, the FBI is expressing its opinion that that person is a known or suspected terrorist; correct?
**A. The FBI is indicating that it meets this inclusion standard here that there's reasonable suspicion that the individual is engaged, has been engaged, or intends to engage in preparation, aid, or furtherance of terrorism activities.**
Q. Is it the FBI's testimony today that there are individuals known to it that are reasonably suspected of engaging or having been engaged or intending to engage in conduct constituting in preparation for, in aid, or in

**267**

furtherance of or related to terrorism and/or terrorists activities who are not under investigation -- I'm sorry, I'm just going to start all over and we'll get it this time now that I know what the question is.
    Is it the FBI's testimony today that there are individuals known to the FBI who are reasonably suspected of engaging in or having been engaged or intending to engage in conduct constituting in preparation for, in aid of, or in furtherance of, or related to terrorism or terrorist activities who the FBI chooses not to investigate?
    MS. POWELL: Again, a comprehensive answer would require law enforcement privileged information, but you can answer yes or no.
    MR. ABBAS: Yes, that's all I'm looking for.
    THE WITNESS: Overseas there are people who fit that category who are not subjects of current FBI investigations.

**268**

BY MR. ABBAS:
Q. When you say "overseas," is the -- so there are individuals that satisfy the TSDB inclusion standard who are known to the FBI that the FBI chooses not to investigate; correct?
    MS. POWELL: Asked and answered.
    MR. ABBAS: I'm making sure --
    MS. POWELL: As well as same objections.
    MR. ABBAS: I'm making sure that I have this.
    MS. POWELL: And misleading.
    THE WITNESS: Yeah, my previous answer was pretty clear. That there are people overseas who fit into this category who are not subject currently of FBI investigations.
BY MR. ABBAS:
Q. Are there U.S. persons overseas that the FBI has nominated to the TSDB who are not subject to an investigation?
    MS. POWELL: I'm instructing the witness not to answer on the grounds of law enforcement privilege to that question.

269

1    Q.  Why would the FBI not investigate people
2  that satisfy the TSDB inclusion standard?
3         MS. POWELL:  I'm instructing the witness
4  not to answer on the grounds of the law
5  enforcement privilege.
6     Q.  What is the law enforcement interest in
7  placing people in the TSDB but not investigating
8  them?
9         MS. POWELL:  Objection; misleading at
10 the very least, but also a comprehensive answer
11 would require disclosure of law enforcement
12 sensitive information and --
13        MR. ABBAS:  I think he can answer.
14        MS. POWELL:  He can answer whether or
15 not there's a law enforcement interest.
16 BY MR. ABBAS:
17    Q.  It was a what, not an if.
18        What is the law enforcement interest in
19 placing people on the TSDB but not investigating
20 them?
21        MS. POWELL:  Same objections.
22        You can answer, if there's a general

270

1  answer.
2         THE WITNESS:  Generally, I mean, the FBI
3  may not be investigating them, but someone else
4  may be investigating them if they're in another
5  country and posing -- and fit into this category
6  but are in another country, then it's likely that
7  someone is investigating them, but possibly not
8  the FBI.
9  BY MR. ABBAS:
10    Q.  Are there any persons inside the United
11 States who the FBI has nominated to be in the
12 TSDB, but the FBI is not investigating?
13        MS. POWELL:  Objection.
14        I'm instructing the witness not to
15 answer on the grounds of the law enforcement
16 privilege.
17        MR. ABBAS:  It's a yes-or-no question.
18 BY MR. ABBAS:
19    Q.  Are you familiar with the term
20 "non-investigative subjects"?
21        MS. POWELL:  You can answer yes or no.
22        THE WITNESS:  Yes.

271

1  BY MR. ABBAS:
2     Q.  What is your understanding of what the
3  term "non-investigative subjects" refers to?
4         MS. POWELL:  I'm instructing the witness
5  not to answer on the grounds of law enforcement
6  privilege.
7     Q.  Are there non-investigative subjects
8  that the FBI nominates to the TSDB?
9         MS. POWELL:  Objection; calls for law
10 enforcement privileged information.
11        I'm instructing the witness not to
12 answer.
13    Q.  The FBI conducts assessments; correct?
14    A.  Yes.
15    Q.  What is an FBI assessment?
16    A.  Generally, an assessment is a
17 pre-investigative assessment of a threat to
18 determine the nature of the threat and to either
19 mitigate the threat or develop it to the level of
20 an investigation.
21    Q.  How many assessments did the FBI conduct
22 in 2017?

272

1         MS. POWELL:  Objection; calls for law
2  enforcement privileged information.
3         I'm instructing the witness not to
4  answer.
5     Q.  How many -- we're just going to repeat
6  this a couple of times.
7         MS. POWELL:  I'm good.
8     Q.  How many FBI assessments -- how many
9  assessments did the FBI conduct so far in 2018?
10        MS. POWELL:  Objection.
11        I'm instructing the witness not to
12 answer on the grounds of law enforcement
13 privilege.
14    Q.  How many assessments did the FBI conduct
15 in 2016?
16        MS. POWELL:  Same objection.
17        I'm instructing the witness not to
18 answer.
19    Q.  How many assessments did the FBI conduct
20 in 2015?
21        MS. POWELL:  Same objection.
22        I'm instructing the witness not to