# Exhibit 20

**Final Order on Sensitive Security Information**

I.    Introduction

Plaintiffs filed suit against various federal agencies in the U.S. District Court for the Eastern District of Virginia. During the course of the litigation, the federal government withheld certain information responsive to discovery requests and deposition questions because they contain Sensitive Security Information (SSI). On March 15, 2018, Plaintiffs filed a motion to compel certain information that is SSI. TSA issues this Final Order addressing the SSI sought by Plaintiffs.

II.    Authority to Make Final SSI Determinations

The Administrator of TSA is authorized by 49 U.S.C. § 114(r), formerly 49 U.S.C. § 114(s), and 49 C.F.R. part 1520 to determine whether information pertaining to transportation security constitutes SSI. That authority is delegated from the Administrator to the Chief of the SSI Program pursuant to a Management Directive signed by the Administrator on November 4, 2015. That Management Directive is in effect as of the date of this Final Order.

III.    Review of Documents and Information

Pursuant to 49 U.S.C. § 114(r) and 49 C.F.R. part 1520, the SSI Program, under my supervision, has reviewed the documents designated as SSI in Exhibit K to Plaintiffs' first motion to compel and certain information sought in Plaintiffs' first and second motions to compel. These documents were referred to TSA for SSI review after Defendants identified them during discovery, pursuant to 49 C.F.R. § 1520.9(a)(3). In conducting this review, I have determined that 47 documents contain information that falls within the definition of SSI found at 49 C.F.R. § 1520.5.[1] I have also determined that certain information responsive to discovery requests (requests for admission and interrogatories) and deposition questions, which is described in detail below, falls within the definition of SSI found at 49 C.F.R. § 1520.5. I have further determined that the release of this specific information would be detrimental to the security of transportation.

IV.    Sensitive Security Information Sought by Plaintiffs

    *A. Status of Individuals on the Expanded Selectee List, Selectee List, and No Fly List*

49 C.F.R. § 1520.5(b)(9)(ii) expressly prohibits the disclosure of "[i]nformation and sources of information used by a passenger or property screening program or system, including an automated screening system." This subsection "is intended to cover . . . lists of individuals identified as threats to transportation or national security." Protection of Sensitive Security Information, 69 Fed. Reg. 28066-01, 28071 (May 18, 2004) (interim final rule adding 49 C.F.R. § 1520.5(b)(9)(ii)).

---

[1] The following documents contain SSI: TSCA0001-13, 15, 17-19, TSCB0004-7, 9, 10, 12, 16, 17-37, TSCC0001, 2, 4-6, 10, 11, TSCD0022-24, 26-27, 43, 49, 51, 59, 66, 71, and TSCE0001-3..

The Terrorist Screening Center ("TSC") maintains the Terrorist Screening Database ("TSDB"), the U.S. government's consolidated database of identifying information about those known or reasonably suspected of being involved in terrorist activity. TSC exports the No Fly and Selectee lists, subsets of the TSDB, to TSA. TSA also receives and screens passengers against all records in the TSDB that contain a full name and a full date of birth (the "Expanded Selectee list"). Individuals on the No Fly list are prohibited from boarding while individuals on the Selectee and Expanded Selectee lists receive enhanced screening prior to boarding. TSA uses the status of individuals on the No Fly, Selectee, and Expanded Selectee lists when vetting passengers attempting to board commercial aircraft. TSA uses this information to enhance the security of air travel within the United States, to facilitate the secure travel of the public, and to support the federal government's counterterrorism efforts by assisting in the detection of known or suspected terrorists identified on the No Fly, Selectee, and Expanded Selectee lists who seek to travel by air.

The information I have reviewed includes individuals' status on the No Fly, Selectee, and Expanded Selectee lists, and information that could be used to ascertain an individual's current and historical status on those lists. The No Fly, Selectee, and Expanded Selectee lists remain effective tools in the government's efforts to secure transportation because, among other reasons, their contents are generally not disclosed.[2] Withholding whether or not an individual is on a federal watch list used by TSA for passenger pre-board screening protects the operational counterterrorism and intelligence collection objectives of the federal government and the personal safety of those involved in counterterrorism investigations. If the government revealed the status of individuals as being either on or off the No Fly, Selectee, and Expanded Selectee lists, terrorists and others who seek to circumvent the purpose of those lists would be able to do so, since they would be armed with the knowledge of who would be required to undergo additional screening and who would not. Terrorists could use the information to attempt to evade enhanced security screening at airports and to gain access to the commercial aviation system to perpetrate an attack. Such circumvention of security screening systems would be detrimental to the security of transportation.

Therefore, I determine that disclosure of information that would reveal individuals' current or historical status on the No Fly, Selectee, or Expanded Selectee lists would be detrimental to the security of transportation. Such information constitutes SSI.[3] In making this determination I have considered the passage of time, intervening changes to the aviation security system, and the evolving security environment.

    *B. Watchlist Matching Information and Technical IT Details*

---

[2] In certain limited circumstances, a U.S. citizen or lawful permanent resident who is denied boarding may learn of his or her status on the No Fly List after filing an inquiry with the Department of Homeland Security Traveler Redress Inquiry Program about the denial of boarding. Notwithstanding this exception, which applies in very limited circumstances, TSA has determined previously that any other disclosures of an individual's status on the No Fly List would be detrimental to the security of transportation in that terrorists could use the information to gain access to the commercial aviation system to perpetrate an attack.

[3] The documents with information falling under this category include, but are not limited to, TSCB0005, 7, TSCC0001, 2, 4-6, 10, 11, and TSCD0051.

49 C.F.R. §§ 1520.5(b)(9)(i) and (b)(9)(ii) expressly prohibit the disclosure of "[a]ny procedures, including selection criteria and any comments, instructions, and implementing guidance pertaining thereto, for screening of persons ... that is conducted by the Federal government or any other authorized person"; and "[i]nformation and sources of information used by a passenger or property screening program or system, including an automated screening system."

Further, 49 C.F.R. §§ 1520.5(b)(4)(i), (b)(13), and (b)(15) expressly prohibit the disclosure of "[a]ny performance specification and any description of a test object or test procedure, for . . . [a]ny device used by the Federal Government or any other person pursuant to any aviation or maritime transportation security requirements of Federal law for the detection of any person. . ."; "[a]ny information involving the security of operational or administrative data systems operated by the Federal government that have been identified . . . as critical to aviation or maritime transportation safety or security, including automated information security procedures and systems, security inspections, and vulnerability information concerning those systems"; and "[i]nformation obtained or developed in the conduct of research related to aviation, maritime, or rail transportation security activities . . ., including research results."

TSA and TSC rely on applications and technical platforms for both agencies to carry out their functions. Once an identity has been accepted into the No Fly, Selectee, or Expanded Selectee list, that information is exported to TSA through the DHS Watchlist Service.[4] TSA's Secure Flight system then conducts matching of passenger information to the No Fly, Selectee, and Expanded Selectee lists, which may result in an individual being denied boarding or being required to undergo enhanced security screening.

The information I have reviewed includes the technology and platforms used by TSA and TSC, which culminate in Secure Flight determinations. This includes technical details about Secure Flight, details demonstrating how watchlist matching is conducted, descriptions of software used and connectivity details, and details regarding resolution of a potential match. Secure Flight remains a highly effective tool in the government's efforts to secure transportation because, among other reasons, this information is not disclosed. This information could be used by adversaries to defeat the Secure Flight system and to circumvent TSA security screening. The technical IT details could be used to obtain unauthorized access to or to otherwise corrupt the systems and the specific matching information, including information about potential matches, could be used to circumvent the matching process. Such actions would be detrimental to the security of transportation.

Therefore, I determine that the disclosure of information about watchlist matching and technical IT details would be detrimental to the security of transportation. Such information constitutes SSI.[5] In making this determination, I have considered the passage of time, intervening changes to the aviation security system, and the evolving security environment.

---

[4] In July 2010, DHS launched an improved method of transmitting TSDB data to DHS through a service called the DHS Watchlist Service (WLS). WLS maintains a synchronized copy of the TSDB, which contains personally identifiable information and disseminates TSDB records it receives to authorized DHS Components, including TSA.
[5] The documents with information falling under this category include, but are not limited to, TSCC0004-6, 10, and TSCD0049, 59, 66.

*C. TSA Screening Procedures and Security Measures Taken to Counteract Threats*

49 C.F.R. § 1520.5(b)(9)(i) expressly prohibits the disclosure of "[a]ny procedures, including selection criteria and any comments, instructions, and implementing guidance pertaining thereto, for screening of persons ... that is conducted by the Federal government or any other authorized person."  49 C.F.R. § 1520.5(b)(9)(ii) expressly prohibits the disclosure of "[i]nformation and sources of information used by a passenger or property screening program or system, including an automated screening system."   Finally, 49 C.F.R. § 1520.5(b)(8)(i) expressly prohibits the disclosure of "[s]ecurity measures or protocols recommended by the Federal government."

TSA has the authority to assess threats to transportation and to take appropriate countermeasures to counteract threats, including denying boarding or requiring enhanced security screening.  As explained above, individuals on the Selectee and Expanded Selectee lists receive enhanced security screening prior to boarding.  TSA also uses intelligence-driven flight by flight risk assessments to identify passengers who require enhanced screening.  Under certain circumstances, TSA and other screening agencies may take certain measures upon encountering an individual on the No Fly, Selectee, or Expanded Selectee lists.  All of these measures are intended to enhance the security of air travel and to support the government's counterterrorism efforts.

The information I have reviewed includes procedures and measures that the government may undertake upon encountering individuals on the No Fly, Selectee, and Expanded Selectee lists; the circumstances under which TSA may deny or permit boarding and may require or not require enhanced security screening prior to boarding; the total number of times individuals on the No Fly List have been permitted to fly; the actual screening procedures applied by TSA to individuals on the TSDB; and examples of TSA's intelligence-driven risk assessments to identify passengers for enhanced security screening, including components of those risk assessments. This information remains effective in the Government's efforts to secure transportation because, among other reasons, it is not disclosed.  If the Government revealed this information, individuals could ascertain whether or not they would be denied boarding or required to undergo enhanced security screening, which in turn could be used by terrorist operatives to plan an attack. Terrorists and others could also take action to evade the procedures and measures, enabling them to circumvent the procedures and measures. Such circumvention would be detrimental to the security of transportation.

Therefore, I determine that disclosing information revealing certain screening procedures and security measures described above would be detrimental to the security of transportation. Such information constitutes SSI.[6] In making this determination I have considered the passage of time, intervening changes to the aviation security system, and the evolving security environment.

*D. Criteria for the TSDB, and the Expanded Selectee, Selectee, and No Fly lists*

49 C.F.R. § 1520.5(b)(9)(ii) expressly prohibits the disclosure of "[i]nformation and sources of information used by a passenger or property screening program or system, including an

---

[6] The documents with information falling under this category include, but are not limited to, TSCA0017-19, TSCB0010, 12, 16, TSCC0010, 11, and TSCD0022, 23, 26, 27, 66, 71.

automated screening system." Further, 49 C.F.R. § 1520.5(b)(9)(i) expressly prohibits the disclosure of "[a]ny procedures, including selection criteria and any comments, instructions, and implementing guidance pertaining thereto, for screening of persons ... that is conducted by the Federal government or any other authorized person."

TSC reviews nominations to the TSDB to determine whether an individual meets the reasonable suspicion standard for placement on the TSDB, and the heightened criteria for placement on the Selectee and No Fly lists. This review includes consideration of guidance, factors, and examples pertinent to the determination. As further explained above, TSA uses the TSDB to identify individuals who may pose a risk to the transportation system and who should therefore receive enhanced security screening or be denied boarding on an aircraft.

The information I have reviewed includes the current and historical criteria for placement on the Selectee List; guidance, factors, and examples related to whether or not an individual meets the reasonable suspicion standard for placement on the TSDB, and the heightened criteria for placement on the Selectee and No Fly lists; minimum biographic criteria required for TSDB inclusion and export; and nominations information, including prioritization information, related to the timeframe for placing individuals on the TSDB and its subset lists.

All of this information remains effective in the government's efforts to secure transportation because, among other reasons, it is not disclosed. If the government revealed the Selectee List criteria, information about the application of criteria for the TSDB, the Selectee list, and the No Fly list, terrorists and others who seek to circumvent the purpose of the application of this information would be able to do so by anticipating behavior of concern to the government and changing their behavior in response. Terrorists could also use information related to minimum biographic criteria to evade placement on the TSDB. Further, disclosing changes to the criteria over time would reveal information about the evolving and dynamic threat posed by terrorists. Notwithstanding the public release of the criteria for inclusion on the No Fly List and the reasonable suspicion standard for inclusion on the TSDB, release of the current and historical criteria for the Selectee List would provide adversaries with valuable knowledge of which individuals would present terrorism concerns to the government and of sensitive information related to the threat posed. Unlike individuals on the No Fly List, individuals on the Selectee List and the TSDB are permitted to enter sensitive areas of the nation's aviation system. Terrorists could also use all of this information to assess the likelihood that other operatives and recruits may have been identified and could use that information to circumvent aviation security measures in planning an attack. Finally, adversaries could use nomination information related to the timeframe for placement on the TSDB to circumvent the purpose of the Expanded Selectee, Selectee, and No Fly Lists, since they would be armed with knowledge of the expedience with which the government could place individuals on those lists. Such circumvention would be detrimental to the security of transportation.

Therefore, I determine that the disclosure of information revealing criteria for placement on the TSDB and its subset lists, as further described above would be detrimental to the security of

transportation. Such information constitutes SSI.[7] In making this determination I have considered the passage of time, intervening changes to the aviation security system, and the evolving security environment.

### E. TSDB and Enhanced Security Screening Statistics

49 C.F.R. § 1520.5(b)(9)(ii) expressly prohibits the disclosure of "[i]nformation and sources of information used by a passenger or property screening program or system, including an automated screening system."  49 C.F.R. § 1520.5(b)(7) expressly prohibits the disclosure of "[a]ny information held by the Federal government concerning threats against transportation or transportation systems and sources and methods used to gather or develop threat information."

The government compiles data related to the number of individuals on the TSDB, and the Expanded Selectee, Selectee, and No Fly lists. This information provides an overview of the number of individuals who are required to undergo enhanced security screening at airports or who are denied boarding. The information I have reviewed includes total numbers of individuals, including U.S. citizens and lawful permanent residents, on the TSDB and its subset lists on a weekly and monthly basis; the current numbers of individuals and U.S. citizens on the Selectee and Expanded Selectee lists; total U.S. citizens on the Selectee List from 2012 to present; the total number of children under age 10 and under age 5 on the TSDB; and the number of times Secure Flight designates individuals for enhanced security screening on a daily and yearly basis.

This information remains effective in the government's efforts to secure transportation because, among other reasons, it is not disclosed. Revealing the total number of individuals on the TSDB and its subset lists on a weekly and monthly basis, including current numbers and demographic information, would give adversaries valuable operational knowledge about the government's receipt of intelligence information related to terrorism. For example, if those adversaries had attempted to avoid detection during any given timeframe, those numbers would reveal whether or not they were successful. Similarly, those numbers would reveal the flow of information from other sources related to terrorism. Terrorists could also ascertain the best populations to recruit from if demographic information, such as the number of U.S. citizens and children on the lists, were released.[8] Further, release of the number of individuals who Secure Flight designates for enhanced security screening on a daily and yearly basis would give terrorists and others knowledge about the total percentage of passengers who are designated for enhanced security screening, including by random selection.[9] Such numbers inform adversaries of the likelihood of

---

[7] The documents with information falling under this category include, but are not limited to, TSCA0001-13, 15, 19, TSCB0004, 6, 9, 12, and 17-37, TSCC0010, TSCD0024, 71, and TSCE0001-3.

[8] The government has made generalized statements about children on the TSDB. Those generalized statements are not SSI. Specific information about the total number of children on the TSDB under five and under ten is SSI in that it would provide adversaries with demographic information that would be useful in determining who to use to perpetrate an attack.

[9] This annualized number constitutes SSI because the number of passengers screened on a yearly basis is publicly available information, and, as a result, an individual with the yearly number of individuals designated for enhanced security screening would know the likelihood of being designated for enhanced security screening at airports. Annualized numbers related to the total number of individuals on the Selectee List are released because such

being designated for enhanced security screening prior to boarding an aircraft. Such knowledge could be used to circumvent TSA's measures to secure commercial aviation, and would be detrimental to the security of transportation.

Therefore, I determine that the disclosure of information about the TSDB and enhanced security screening statistics described above would be detrimental to the security of transportation. Such information constitutes SSI.[10] In making this determination I have considered the passage of time, intervening changes to the aviation security system, and the evolving security environment.

---

numbers do not reveal that likelihood and do not reveal the same trends and patterns as monthly and daily data described above.

[10] The documents with information falling under this category include, but are not limited to, TSCC0001, 2, 11, and TSCD0043.

V.    <u>Final Order</u>

This Order is issued under 49 U.S.C. § 114(r) and is final.  Pursuant to 49 U.S.C. § 46110, any person disclosing a substantial interest in this Order may, within 60 days of its issuance, apply for review by filing a petition for review in an appropriate U.S. Court of Appeals.

DATED:  Arlington, Virginia, April 23, 2018

_____
DOUGLAS E. BLAIR
Chief, SSI Program
Security Services & Assessments Division
Office of Law Enforcement &
Federal Air Marshal Service
Transportation Security Administration
U.S. Department of Homeland Security