**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **ANAS ELHADY,** *et al.*, | ) |
| | ) **Case No. 16-cv-00375** |
| Plaintiffs, | ) **Hon. Anthony J. Trenga** |
| | ) |
| v. | ) |
| | ) |
| **CHARLES H. KABLE,** Director of the Terrorist Screening Center; in his official capacity, *et al.;* | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF MARK AMRI'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO CONDUCT LIMITED DISCOVERY REGARDING TSA'S PUNITIVE SCREENING**

Plaintiff Mark Amri, by and through his undersigned counsel, hereby file his Reply to Defendants' Opposition to Plaintiff's Motion for Leave to Conduct Limited Discovery. Though Defendants' response offers up an affidavit and Defendant TSA's assurance that Amri's screening was done "pursuant to standard TSA security protocols," the gloss the defendants put on the facts reveals itself upon closer inspection. For the reasons below as well as those stated in the motion itself, Plaintiff Mark Amri respectfully requests that this Court grant his motion.

**OVERVIEW**

If the defendants are to be believed, the repetitive screenings Amri experienced were attributable to clustered, inexplicable bouts of TSA incompetence. The positive explosives test via their vaunted explosive trace detection (ETD) testing machines—a technology TSA describes as "highly effective" and "proven"—was a false positive, says TSA. *See* 187-4 at ¶¶. 8 & 13. TSA officials who screeners should have notified, in accordance with what TSA calls its standard

1

practices, were not notified and thus an additional body search was needed. *Id.* at ¶ 14. And the umpteenth pat-down TSA performed on Amri, an American citizen the defendants had deemed too dangerous for air travel when this case first began, was done by a trainee! *Id.* at para 15. This level of incompetence is not plausible, not consistent with the defendants' characterizations of a carefully-calibrated watchlisting system, and warrants adversarial inquiry.

Limited discovery would seek facts that are both inculpatory and exculpatory of the defendants. For instance, while the defendants do offer what they call a "true and accurate receipt of the positive explosives test," a positive ETD test result is consistent with the punitive screening scheme Amri believes TSA created for him. The more important document that TSA has not produced is the ETD receipt of the swab prior to TSA personnel collecting their trace sample from Amri.

Tellingly, TSA does not offer a receipt of the negative result of the swab that should also exist, if the defendants' assertions are to be believed. That negative ETD result should have been produced in the moments immediately preceding the production of the positive explosives test receipt. As the Joseph Declaration indicates, the first step for TSA screeners conducting ETD testing is to "place a lightweight swab into the ETD technology to ensure a negative result." *Id.* at para. 7. If the defendants had such a receipt, it would be an obvious and compelling fact for them to document in their opposition. They chose not to, and that choice raises the inference that the Joseph Declaration obfuscates more than it illuminates.

Defendants offer no explanation for why TSA personnel who screened Amri in Dallas on March 6th needed to stay in phone contact with other unknown officials as they applied what the Joseph Declaration describes as their standard procedures. Defendants offer no

2

explanation for the lurking group of officials watching Amri's humiliation from a distance. And the defendants concede the plausibility of Amri's allegations, noting that TSA "takes seriously Mr. Amri's allegations and has investigated them." Doc. 187 at 6.

But for a serious abuse of discovery such as Amri believes he experienced, no court should take defendants at their word. This presumption against taking defendants at their word is especially important in the context of this case, which challenges a watchlisting system run amok—used to recruit informants, strand citizens overseas, and otherwise burden the lives of listees in countless ways via secret standards applied by unknown government officials in a manner carefully designed to be accountability-free. For these reasons, sensible but adversarial discovery to uncover why Amri was screened over and over again on his way to offer testimony against TSA on March 6, 2018 is a measured action this Court can take to determine exactly what happened.

## CONCLUSION

WHEREFORE Plaintiff Mark Amri respectfully requests this Court GRANT his Motion for Leave to Conduct Additional Discovery for the limited purpose of determining whether TSA's screening of him on March 6, 2018 was a discovery abuse.

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS

BY:   /s/ Gadeir Abbas
LENA F. MASRI (P73461)
GADEIR I. ABBAS (VA: 81161)
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420

*Gadeir Abbas is licensed in VA, not in D.C. Practice limited to federal matters.*

AKEEL & VALENTINE, PLLC

BY:    /s/ Shereef Akeel
SHEREEF H. AKEEL (P54345)
*Attorney for Plaintiffs*
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on May 2, 2018, I electronically filed the forgoing Joint Stipulation of Dismissal with the Clerk of the Court using the CM/ECF system, which will send notification to the registered participants of the ECF System as listed on the Court's Notice of Electronic Filing. of such filing to the following counsel of record in this matter:

                                                  /s/ Gadeir Abbas