**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **ANAS ELHADY,** *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>)<br>v. )<br>)<br>**CHARLES H. KABLE,** Director of the )<br>Terrorist Screening Center; in his official )<br>capacity, *et al.*; )<br>)<br>Defendants. ) | **Case No. 16-cv-00375**<br>**Hon. Anthony J. Trenga**<br>**Mag. John F. Anderson** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**FOURTH MOTION TO COMPEL**
**RE: "QUIET SKIES" DOCUMENTS AND INFORMATION**

i

**INDEX OF EXHIBITS**

| Exhibit | Description | Date |
|---|---|---|
| A | Jana Winter, "Welcome to the Quiet Skies," *Boston Globe*, available at http://apps.bostonglobe.com/news/nation/graphics/2018/07/tsa-quiet-skies/?p1=HP_SpecialTSA | July 28, 2018 |
| B | *TSA's Quiet Skies Program*, Federal Air Marshal Service Information Bullet – Quiet Skies Selectees | March 13, 2018 |
| C | Quiet Skies Surveillance Checklist | unknown |
| D | Excerpts of 30(b)(6) TSA Deposition | March 20, 2018 |
| E | Excerpts of Deposition of Plaintiff El-Shwedhi | Nov. 29, 2017 |
| F | Excerpts of Deposition of Plaintiff Mark Amri | March 8, 2018 |
| G | Excerpts of TSC Responses to Second Set of RFPs No. 4. | Dec. 22, 2017 |
| H | Defendants' Responses to Third Set of RFPs No. 1. | Jan. 4, 2018 |
| I | Excerpts of TSC Responses to First Set of Interrogatories No. 23. | Feb. 21, 2018 |
| J | Excerpts of TSC Responses to Second Set of Interrogatories No. 1. | Feb. 23, 2018 |

**ARGUMENT**

The federal government continues to hide watchlist secrets from Plaintiffs. Last weekend, on July 28, 2018, the Boston Globe revealed a shadowy TSA surveillance program known as "Quiet Skies." *See* MTC4, Ex. A (Boston Globe article). According to a leaked TSA document published by the Boston Globe, the Quiet Skies program works to identify "unknown or partially known terrorists" and subject them to "enhanced screenings." *See* MTC4, Ex. B ("TSA's Quiet Skies Program"). These monitored individuals are known as "Quiet Skies Selectees" and are chosen based on "risk-based passenger targeting rules." *See id.* Rules include analysis of their international travel and associations with others listed in the Terrorist Screening Database. *See id.* They are subjected to the same screening procedures as TSDB Selectees. *See id.* They are *also* subjected to near-constant travel monitoring by Federal Air Marshals, who possess a checklist regarding each person's luggage, conversations, electronics usage, bathroom visits, sleeping habits, physical behaviors, and more. *See* MTC4, Ex. C (monitoring checklist as published by the Boston Globe). These Federal Air Marshals document any "significant derogatory information" gleaned about the Quiet Skies Selectees, and share that information with other intelligence agencies. *See* MTC4, Ex. B. No exaggeration is needed: Quiet Skies is a huge, previously-unknown component of the watchlisting system the Plaintiffs challenge.

Throughout discovery, Plaintiffs have sought to determine, at the very least, the broad outlines of the watchlisting system. And yet, throughout discovery, Defendants have kept TSA's Quiet Skies program hidden. Even though all indicators show that Quiet Skies is responsible for engulfing thousands of innocent Americans within the watchlisting system,

the program appears in no document produced to Plaintiffs nor in any answers to Plaintiffs' discovery questions. It was conveniently left out and not referenced; deposition questions which would have unmasked it were blocked. With this latest news, the Court should conclude that Defendants continue to improperly withhold basic watchlist information.

Quiet Skies is a secret and massive expansion of the Government's sprawling watchlist enterprise. It does not target "known or suspected terrorists," but rather "unknown or partially known terrorists" – a standard with no definition, no explanation, no justification, and apparently no recourse. *See* MTC4, Ex. B (Quiet Skies program description). The program compiles lists of individuals the TSA wants to treat as suspected terrorists, but for whom the TSA lacks the "minimum derogatory information" necessary to support a TSDB nomination. Quiet Skies is, in short, TSA's unregulated shadow watchlist.

It appears that Quiet Skies relies upon TSDB information to make decisions that will affect the Plaintiffs, their families, and anyone else they ever communicate or travel with. *See* MTC4, Ex. B. Quiet Skies also generates TSDB information by collecting silly bits of information from sustained, indiscriminate surveillance—tasking federal air marshals with recording whether travelers change clothes at an airport, whether and how long the surveillance targets sleep on their flights, and how these travelers react when they realize they are being followed around. *See* MTC4, Ex. A (Boston Globe article) & C (TSA checklist). The Government then uses the watchlist information Quiet Skies generates to produce more TSDB nominations. *See* MTC4, Ex. D, TSA Depo. at 207-210. Without disclosing "Quiet Skies," it appears that the TSA was referencing the program during this portion of its deposition:

2

>    Q      So there are circumstances where an individual's inclusion on a rules-based list identifying that individual for further screening could lead to the TSA's investigation of that individual for potential inclusion upon the watchlist?
>
>    **A**      So, generally speaking, that information of the designation for a higher-risk passenger does not directly go to watchlist.
>         However, in the course of just TSA's overall security processes, additional information comes in or passengers are then subsequently identified as -- are detecting something as they're going through screening – additional prohibited items or additional information or other investigation or other just information provided overall -- then it will go into a watchlist nomination process of does it meet the criteria for watchlist nomination.
>         So, again, it is a -- may be a factor, but multiple pieces of information would need to be reviewed as well as meet the criteria for a watchlist nomination.

MTC4, Ex. D, TSA Depo. at 207-210.  More detailed inquiry into these "rules-based lists" was blocked by TSA's counsel.  *See id.*, TSA Depo. at 211, 212, 216, 221.  The Boston Globe's revelation that the TSA has a *systematized program* for using automated rules to identify "Quiet Skies Selectees," subject them to intense scrutiny, and then nominate them to the TSDB is significant.  *See* MTC4, Ex. B.  Quiet Skies reflects a vast expansion of the watchlisting system, and its existence should have been disclosed in response to many of the discovery requests Plaintiffs made (specified below).

The revelation of the "Quiet Skies" program likely explains some of the more unnerving encounters between Plaintiffs and the Government.  For example, Plaintiff El-Shwehdi reports that once at JFK he was "shadowed" by what appeared to be a plainclothes security officer.  *See* MTC4, Ex. E, El-Shwehdi Depo. at 90-95, 186-187.  The man followed him "with a clipboard with some paper" from "near the ticket counter," through security, continuing while El-Shwehdi put back on his belt and shoes, and kept up the monitoring for the next "two hours" in the boarding area.  *Id.*  The plainclothes man even tailed El-Shwehdi

3

when he went to the bathroom, and when he went to get soup. *Id.* These detailed descriptions of constant monitoring by an undercover officer map precisely onto Quiet Skies. *See* MTC4 Exs. A-C. On other occasions, officers entered the plane as soon as it landed, singled out El-Shwehdi's seat, and removed him in public view as the first passenger off the plane. MTC4, Ex. E, El-Shwehdi Depo. at 98, 156-157, 178-180, 194-196.[1]

In light of the Boston Globe's revelations, Plaintiffs now move to compel documents and information and take a deposition of TSA about their secret Quiet Skies program. Plaintiffs seek TSA and TSC policy documents about Quiet Skies, Quiet Skies's relationship to the TSDB, the TSC's and the Watchlisting Advisory Council's role in creating and maintaining the TSA's Quiet Skies program,[2] and the use of Quiet Skies in monitoring Plaintiffs' travels. The documents and information Plaintiffs seek are responsive to at least the following discovery requests and deposition questions:

- "All directives, written policies …. and/or other documents that relate or refer to the dissemination of any information contained in the TSDB to airlines and airline personnel … to screen passengers." MTC4 Ex. G, 12/22/2017 TSC Responses to Second Set of RFPs No. 4.

- "…Any documents that describe or refer to screening and/or inspection for all Plaintiffs." MTC4 Ex. H, 1/4/2018 Defendants' Responses to Third Set of RFPs No. 1.[3]

---

[1] It's possible the "Quiet Skies" program was also behind Mark Amri's report of being screened and removed from a flight by TSA agents after he had been cleared to enter the jet bridge – and then being subjected to intense scrutiny again hours later on the rebooked flight. See MTC4, Ex. F, Amri Depo. at 62-78.

[2] Plaintiffs' pending Third Motion to Compel seeks the Watchlisting Advisory Council's "Summaries of Conclusions." *See* Dkt. 223. The Boston Globe's unmasking of Quiet Skies highlights the need for those documents, particularly to the extent they refer to Quiet Skies or any other shadow watchlist programs.

[3] During meet and confer regarding this request last winter, Plaintiffs agreed to the Government's search and production of only Defendant CBP's TECS records regarding Plaintiffs' travel. That agreement was made pursuant to Plaintiffs' contemporaneous understanding about

4

- "Identify all the different ways a person's watchlist status is considered in any way by any federal agency."  MTC4 Ex. I, 2/21/2018 TSC Responses to First Set of Interrogatories No. 23.

- "Identify all uses of TSDB information by any entity."  MTC4 Ex. J, 2/23/2018 TSC Responses to Second Set of Interrogatories No. 1.

- **Q:** "Does the TSA maintain a single list of individuals who, through the operation of rules, are designated for enhanced screening, or is this a case-by-case automatic assignment?"
  **A:** "So it is not a list direct, similar to our watchlist matching."[4]  MTC4 Ex. D, TSA Depo. at 206-207.

- **Q:** "Does the TSA annotate any individual records in Secure Flight that post-checkpoint screening of that individual is required?"
  **A:**  (instructed not to answer).  MTC4 Ex. D,  TSA Depo. at 183-184.

- **Q:** "Does the TSA apply any subdivisions between passengers designated for enhanced screening once those passengers have exited the screening area and are in the sterile area?"
  **A:** (instructed not to answer).  MTC4 Ex. D,  TSA Depo. at 221.

- **Q:** "Q Can you give me an example of the rules, or the sort of rules, that trigger enhanced screening?"
  **A:** (instructed not to answer).  MTC4 Ex. D,  TSA Depo. at 211-212.

- **Q:**  "Is the country that a flight is traveling to, if it's an international flight, one basis for a rule that would subject passengers on that flight to enhanced screening?"
  **A:** (instructed not to answer).  MTC4 Ex. D,  TSA Depo. at 212.

- **Q:** "Is being a traveling companion of someone listed on the Selectee List a basis for being subject to enhanced screening?"
  **A:** (instructed not to answer). MTC4 Ex. D,  TSA Depo. at 216; *see also id.*, TSA Depo. at 276.

---

what records existed.  The Boston Globe's revelation of the existence of Quiet Skies as a parallel or shadow TSA terrorist watch list supplies Plaintiffs with good cause to seek additional responsive records.

[4] This answer is inaccurate, given the existence of the Quiet Skies Selectee list created off of "intelligence driven, risk-based passenger targeting rules."  *See* MTC4 Ex. B.

5

Defendants should be required to provide answers to all of the above written discovery requests and deposition questions, particularly as relates to Quiet Skies.

Plaintiffs also request leave from the Court to propound additional limited discovery to Defendants, especially the TSA and TSC, regarding the "Quiet Skies" program. The TSA has already testified that "[I]nsofar as TSA has stated that this is our procedure for identifying passengers for a high-risk standard screening … the TSC would know that we do have these procedures in place." MTC4 Ex. D, TSA Depo. at 213-214. Plaintiffs would use additional discovery to seek official policy documents and information about the "Quiet Skies" program, its relationship to the TSDB, its oversight by the TSC and Watchlisting Advisory Council, and its use in monitoring Plaintiffs' travels. Plaintiffs specifically request five requests for production, five interrogatories, a deposition of the TSA related to Quiet Skies, and a deposition of the TSC related to it and the Watchlisting Advisory Council's knowledge, oversight, and dissemination of Quiet Skies information.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court GRANT their Fourth Motion to Compel, ORDER Defendants to provide Quiet Skies documents and information in response to Plaintiffs' prior discovery requests and deposition questions, GRANT leave to issue limited written discovery requests to Defendants regarding the Quiet Skies program, and GRANT Plaintiffs' requests for depositions of the TSA and TSC regarding Quiet Skies.

    Respectfully submitted,

    COUNCIL ON AMERICAN-ISLAMIC RELATIONS

    BY:     /s/ Gadeir Abbas

                                                                                      LENA F. MASRI (DC 1000019)
GADEIR I. ABBAS (VA 81161)
CAROLYN M. HOMER (DC 1049145)
*Attorneys for Plaintiffs*
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 742-6420

*Gadeir Abbas is licensed in VA, not in D.C. Practice limited to federal matters.*

AKEEL & VALENTINE, PLLC
SHEREEF H. AKEEL (P54345)
*Attorney for Plaintiffs*
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

Dated: August 1, 2018

7

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2018, I electronically filed the foregoing by using the Court's ECF system. I further certify that all participants in the case are registered ECF users and will be electronically served by the Court's ECF notification system.

        Respectfully submitted,

        COUNCIL ON AMERICAN-ISLAMIC RELATIONS

        BY:    /s/ Gadeir Abbas
        LENA F. MASRI (DC 1000019)
        GADEIR I. ABBAS (VA 81161)*
        CAROLYN M. HOMER (DC 1049145)
        *Attorneys for Plaintiff*
        453 New Jersey Ave, SE
        Washington, DC 20003
        Phone: (202) 742-6420

        *\*Gadeir Abbas is licensed in VA, not in D.C. Practice limited to federal matters.*

        AKEEL & VALENTINE, PLLC
        SHEREEF H. AKEEL (P54345)
        *Attorney for Plaintiffs*
        888 W. Big Beaver Rd., Ste. 910
        Troy, MI 48084
        Phone: (248) 269-9595
        shereef@akeelvalentine.com