UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **ANAS ELHADY,** *et al.,* )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>**CHARLES H. KABLE,** Director of the )<br>Terrorist Screening Center; in his official )<br>capacity, *et al.;* )<br>)<br>Defendants. ) | **Case No. 16-cv-00375**<br>**Hon. Anthony J. Trenga**<br>**Hon. Mag. John F. Anderson** |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF
### MOTION TO COMPEL RE: PRIVATE DISSEMMINATION

Pursuant to Fed R. Civ. P 37(a)(3)(B) and E.D. Va. L.R. 37, Plaintiffs hereby move to compel responsive discovery from Defendants and to otherwise compel the Defendants to comply with the Court's January 4, 2019 order directing Defendants to "provide a further detailed, complete, and specific response to Plaintiffs' Interrogatory Number 30 and related questions at the TSC's Rule 30(b)(6) deposition." *See* Dkt. 258.  Defendants provided that response on Friday February 8, 2019.  *See* Exhibit A, Supplemental Interrogatory Response re: Private Dissemination ("Court-Ordered Supplement").  This motion regards the scope and substance of the Defendants' response, which Judge Trenga ordered the plaintiffs to address "expeditiously to the Magistrate Judge." *Id.*

This dispute regards an expansive category of facts about the federal government's dissemination of TSDB data to private entities that Defendants have steadfastly kept hidden from the Plaintiffs—despite multiple lines of discovery efforts aimed at assessing private sector dissemination.  Having carefully reviewed the Terrorist Screening Center's

1

supplemental information, it is clear why the federal government has been so obstinate about this area: the scope of private dissemination is very bad for the agencies that administer the watchlisting system.

**For the first time anywhere, the federal government has disclosed that approximately 1,441 private entities have ongoing access to the terrorist watchlist**. *See* Exhibit A (Court-Ordered Supplement). Prior to Judge Trenga's Order (Dkt. 258), Defendant's answers regarding private dissemination were much different. In response to a question about whether the defendants provide even one private entity with such access, the FBI's 30(b)(6) designee waved off the inquiry: "not that I'm aware of." *See* Exhibit B, FBI Dep. at 114.

The parties have engaged in robust discussions and correspondence regarding this dispute. While the dispute has not narrowed yet, Plaintiffs' counsel anticipates that the parties will continue to confer in an effort to narrow this dispute until the day this matter is heard by the Court.

## OVERVIEW

On January 4, 2019, Judge Trenga outlined the procedure for the parties' resolution of any remaining discovery matters while they tee up Plaintiffs' constitutional procedural due process claim for summary judgment. *See* Dkt. 258. In large part, Judge Trenga deferred the adjudication of the vast majority of discovery disputes, denying Plaintiffs' Motion to Compel "without prejudice" but directing Plaintiffs to motion again within the context of summary judgment briefing, where Judge Trenga can "better assess whether there are outstanding issues of material fact whose resolution justifies disclosure to the Plaintiffs." *See* Dkt. 258.

Judge Trenga did, however, fully resolve the motion to compel with respect to one category of information: Defendants' dissemination of TSDB data to private entities. Judge Trenga concluded that "Defendants should provide a further detailed, complete, and specific response to Plaintiffs' Interrogatory 30 and related questions at TSC's Rule 30(b)(6) deposition." *Id.* at 2-3. In a footnote, Judge Trenga made clear that such response must also encompass any "indirect dissemination" of TSDB data to private entities. *Id.* at n. 1. To emphasize the breadth and specificity that Judge Trenga expected Defendants to provide, the order established an expectation that the information would be "subject to the outstanding protective order and shall also be limited to "attorneys' eyes only." *Id.* at 2.

On February 8, 2019, only Defendant TSC made an attempt to comply with Judge Trenga's order, providing Plaintiffs with the agency's supplemental response to Interrogatory 30. *See* Exhibit A (Court-Ordered Supplement). Instead of providing Plaintiffs with the "detailed, complete, and specific" information Judge Trenga ordered them to, the TSC's supplemental response speaks in vagaries via legal-wordsmithing that hides much. Instead of providing privileged information subject to a protective order and information that is "attorneys' eyes only," Defendant TSC provided only a non-privileged, general overview for which Defendants have placed no limitation on how Plaintiffs handle the document or place it on the Court's docket.

## ARGUMENT

The defendants have not done what Judge Trenga told them to do. The response is not "detailed," it is not "complete," and it is not "specific." It also includes no privileged information of any kind, despite the substance of Judge Trenga's order making clear his

3

expectation that Plaintiffs' counsel would get to view private entity dissemination information at a level of granularity that might trigger an appropriate assertion of a privilege.

### I. TSC's Supplemental Response is Not "Detailed"

Defendant TSC's supplemental response is not "detailed" in the way Judge Trenga ordered. It creates more questions than it answers. It provides broad industry categories of entities with access to the TSDB (through the FBI's Known or Suspected Terrorist file as disseminated through the NCIC database), but is short on specifics. For example, the supplement indicates that private entities must obtain an "Originating Agency Identifier (ORI)" in order to access TSDB data. Exhibit B at 2. It also asserts that private entities submit applications to obtain such ORI's. Defendants, however, do not provide any other information about the application process, whether private entities of all kinds can apply or whether the federal government enlists private entities to obtain an ORI and thus expand the reach of its watchlisting system, whether defendants have ever revoked a private entity's ORI, and perhaps most importantly, the federal government's rationale in providing 1,441 private entities access to TSDB data that Defendants claim that they handle with meticulous care.

Defendants further do not provide information about how TSA or CBP is directly or indirectly providing watchlist information to private entities. A public GAO report as far back as 2007 recognized that "Within the private sector, some critical infrastructure components are presently using watch list records to screen current or prospective employees, but many components are not." *See, Terrorist Watch List Screening: Opportunities Exist to Enhance Management Oversight, Reduce Vulnerabilities in Agency Screening Processes, and Expand Use of the List*, GOVERNMENT ACCOUNTABILITY OFFICE at 6, 11, 45 (October 2007), available

4

at https://www.gao.gov/products/GAO-08-110. The report recommended further expansion of those private-sector partnerships. *See id.* Yet aside from discussing TSC's knowledge that DHS "may share certain information with 'for profit' entities in certain limited circumstances," related to airlines and airports, (Exhibit A at 4-5), Defendants do not address other forms of private-sector or event screening. Yet documents produced in this action recognized that "Pursuant to HSPD-6 and the TSC MOU, DHS is developing guidelines by which private sector entities that have substantial bearing on homeland security could submit voluntary requests for terrorist screening." *See* TSCD0065, "An Updated Strategy for Comprehensive Terrorist- Related Screening Procedures", Elhady_FBITSC-PRIV004477.

Nor does Defendants' supplemental response does not provide any details about how private entities utilize TSDB data or what they do when they encounter TSDB data. Are universities taking TSDB status into account in making admission or disciplinary decisions? Are Inova Alexandria Hospital's building security personnel screening visitors against the TSDB and denying entry to listees? Is Motorola screening its software engineers who work on cellular infrastructure equipment against the TSDB and firing listees? Plaintiffs have no idea.

**II.    TSC's Supplemental Response is Not "Complete"**

Defendant TSC's supplemental response is not complete, because it only addresses the number of private entities the TSC knows have received TSDB dissemination through the FBI. But other issues are as central to Plaintiffs' claims as the extent of the dissemination. A complete answer would establish in an admissible form the purpose of private sector dissemination, the rules and policies about private sector dissemination, the private sector's

5

adherence to those rules and policies, and the outcomes of private sector dissemination. None of those matters are addressed in any manner.

### III. TSC's Supplemental Response is Not "Specific"

Judge Trenga used the word "specific" for a particular purpose: to avoid the obfuscation that has dragged discovery in this case well past the year mark. In this situation, specificity should include the actual names of the 1,441 private sector entities who have access to TSDB data. The extent of the private sector dissemination can only truly be established if there is a sense of how large those 1,441 private entities are. It is possible that 50 of the 1,441 entities include each state's public university system, that another 100 include the 100 largest public companies, and that private investigator firms with dubious reputations make up a part of this group as well. Without the names of the private entities—each "specific" name with access—Plaintiffs cannot assess the breadth of the dissemination.

### IV. The Court's Remedy Should Take Into Account Defendant FBI's Outright Deception at the Agency's Deposition and Order the FBI to Submit to Questioning Again.

Plaintiffs request, at a minimum, that the Court compel a more fulsome supplemental response to Plaintiffs' interrogatory regarding private dissemination. Plaintiffs further request the Court order a supplemental deposition of the FBI on this question. As the Court knows, Plaintiffs have long suspected that Defendants disseminate TSDB data to a wide range of private entities. But these suspicions were based on anecdotes; the federal government has never confirmed private sector dissemination of its TSDB data in any manner. That is why, via interrogatories and deposition questioning, Plaintiffs posed direct questions about such dissemination.

On April 9, 2018, the FBI was asked the following question: "Does any private entity have any type of access to NCIC." Exhibit B – FBI Tr. at 14. The Deputy Assistant Director of the FBI's Counterterrorism Division answered directly: "Not that I'm aware of." Dep at 114. The FBI, through its high-ranking executive, flatly denied what Defendants now admit—private sector dissemination is a substantial aspect of the watchlisting system's approach to dissemination.

This is another incident of a Government agency deponent being less-than-forthcoming. In March 2018, the TSA testified: "No, we do not perform intelligence collection on passengers at the airport." *See* 8/24/2018 Transcript on Plaintiff's Motion to Compel re: Quiet Skies (citing TSA March 2018 Dep. at 184-185). Yet mere days before the March 2018 deposition, the TSA had expanded its "Quiet Skies" program for the purpose of subjecting additional passengers to heightened terrorist scrutiny and collecting detailed information on them to provide to intelligence agencies. In reviewing the media coverage, the Court ordered the TSA to sit for an additional deposition, remarking "I'm concerned that this deposition that was taken on March 20 has information in it that really wasn't accurate." 8/24/2018 Transcript at 79. The Court added: "[T]he fact that the witness at that time would say that intelligence collection on passengers is not being performed at the airport when that program as described in Exhibit B had been put into place, that clearly does involve some type of intelligence collection on passengers that is then provided to the TSA, is troublesome." 8/24/2018 8/24 Transcript at 79-80. In the follow-up deposition, the TSA admitted that the Federal Air Marshall Service does provide information to intelligence agencies, including the FBI and National Counterterrorism Center. MTC Exhibit 3, 10/4/2018 TSA Depo Tr. at 14-16.

The repeated obfuscation of Defendants' 30(b)(6) warrants an additional FBI deposition so that the issues can be explored in an adversarial setting that will allow Plaintiffs to pursue the line of questioning it tried to almost a year ago.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court GRANT their Motion to Compel re: Private Dissemination.

Respectfully submitted,

COUNCIL ON AMERICAN-ISLAMIC RELATIONS

BY:    /s/ Gadeir Abbas
LENA F. MASRI (DC 1000019) (pro hac vice)
GADEIR I. ABBAS (VA 81161)*
CAROLYN M. HOMER (DC 1049145) (pro hac vice)
*Attorneys for Plaintiffs*
453 New Jersey Ave, SE
Washington, DC 20003
    Phone: (202) 742-6420

*Gadeir Abbas is licensed in VA, not in D.C. Practice limited to federal matters.*

AKEEL & VALENTINE, PLLC
SHEREEF H. AKEEL (P54345)
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

Dated: February 15, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2018, I electronically filed the foregoing by using the Court's ECF system. I further certify that all participants in the case are registered ECF users and will be electronically served by the Court's ECF notification system.

        COUNCIL ON AMERICAN-ISLAMIC RELATIONS

        BY:   /s/ Gadeir Abbas
        LENA F. MASRI (P73461) (pro hac vice)
        GADEIR I. ABBAS (VA: 81161)
        CAROLYN M. HOMER (DC 1049145) (pro hac vice)
        *Attorneys for Plaintiff*
        453 New Jersey Ave, SE
        Washington, DC 20003
            Phone: (202) 742-6420

        *Gadeir Abbas is licensed in VA, not in D.C.*
        *Practice limited to federal matters.*