# Exhibit B



# Transcript of Matthew J. DeSarno, Designated Representative

**Date:** April 9, 2018
**Case:** El Hady, et al. -v- Kable, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING | INTERPRETATION | TRIAL SERVICES

## Page 1

```
 1           UNITED STATES DISTRICT COURT
 2            EASTERN DISTRICT OF VIRGINIA
 3                 ALEXANDRIA DIVISION
 4    --------------------------------X
 5    ANAS ELHADY, ET AL.,            :
 6              Plaintiffs,           :
                                           Case No.:
 7         v.                         :
                                           16-CV-00375
 8    CHARLES H. KABLE, DIRECTOR OF   :
 9    THE TERRORIST SCREENING CENTER; :
10    IN HIS OFFICIAL CAPACITY, ET AL.,:
11              Defendants.           :
12    --------------------------------X
13    Deposition of The Federal Bureau of Investigations
14         by and through its representative,
15                 MATTHEW J. DESARNO
16                  Washington, D.C.
17                Monday, April 9, 2018
18                    10:06 a.m.
19
20    Job No.: 184986
21    Pages: 1-399
22    Reported by: Matthew Goldstein, RPR
```

## Page 2

```
 1       Deposition of MATTHEW J. DESARNO, held at:
 2
 3
 4            Department of Justice
 5            20 Massachusetts Avenue, NW
 6            Washington, D.C. 20001
 7
 8
 9
10
11       Pursuant to Notice, before Matthew Goldstein,
12    RPR, Notary Public in and for the District of
13    Columbia.
```

## Page 3

```
 1              A P P E A R A N C E S
 2    ON BEHALF OF THE PLAINTIFFS, ANAS ELHADY, ET
 3    AL.:
 4       GADEIR ABBAS, ESQUIRE
 5       LENA MASRI, ESQUIRE
 6       CAROLYN HOMAN, ESQUIRE
 7       COUNCIL ON AMERICAN-ISLAMIC RELATIONS
 8       453 New Jersey Avenue, S.E.
 9       Washington, D.C. 20003
10       202.488.0833
11
12    ON BEHALF OF THE DEFENDANTS, CHARLES H. KABLE,
13    DIRECTOR OF THE TERRORIST SCREENING CENTER;
14    IN HIS OFFICIAL CAPACITY, ET AL.:
15       AMY E. POWELL, ESQUIRE
16       U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION
17       20 Massachusetts Avenue, NW
18       Washington, D.C. 20530
19       202.514.9836
```

## Page 4

```
 1    A P P E A R A N C E S   C O N T I N U E D
 2       ALSO PRESENT:
 3       JAYME KANTOR, ESQ -
 4       FEDERAL BUREAU OF INVESTIGATION
 5
 6       CIPORA KLIONSKY, ESQ -
 7       FEDERAL BUREAU OF INVESTIGATION
 8
 9       KEVIN BOGUCKI, ESQ -
10       TERRORIST SCREENING CENTER
11
12       JENNIFER GREENBAND, ESQ -
13       TRANSPORTATION  SECURITY ADMINISTRATION
```

---

Page 5

C O N T E N T S

EXAMINATION OF MATTHEW J. DESARNO                    PAGE

| | |
|---|---|
| By MR. ABBAS | 7 |
| By MS. POWELL | 116 |
| By MR. ABBAS | 117 |
| By MS. POWELL | 120 |
| By MR. ABBAS | 121 |
| By MS. POWELL | 184 |
| By MR. ABBAS | 185 |
| By MS. POWELL | 259 |
| By MR. ABBAS | 260 |
| By MS. POWELL | 323 |
| By MR. ABBAS | 323 |
| By MS. POWELL | 324 |
| By MR. ABBAS | 325 |
| By MS. POWELL | 383 |
| By MR. ABBAS | 384 |
| By MS. POWELL | 390 |
| By MR. ABBAS | 391 |
| By MS. POWELL | 393 |
| By MR. ABBAS | 393 |

Page 6

| | |
|---|---|
| By MS. POWELL | 394 |
| By MR. ABBAS | 394 |

E X H I B I T S
(Attached)

| DESARNO | DEPOSITION EXHIBIT | PAGE |
|---|---|---|
| Exhibit A | Notice of 30(b)(6) Deposition of Defendant FBI | 44 |
| Exhibit B | Overview of the U.S. Government's Watchlisting Process and Procedures | 237 |

---

Page 7

P R O C E E D I N G S

Whereupon,

MATTHEW J. DESARNO,

being first duly sworn or affirmed to testify to the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR THE PLAINTIFFS

BY MR. ABBAS:

Q. Please state your full legal name for the record.

A. Matthew J. DeSarno.

Q. Mr. DeSarno, why are you here today?

A. **I'm here for a deposition related to the -- testifying on behalf of the FBI related to a watchlisting suit.**

Q. You understand that your testimony today is binding on the agency?

A. Yes.

Q. What is the Watchlisting Advisory Council?

A. **The Watchlisting Advisory Council is an advisory council made up of the member agencies**

Page 8

**involved in the U.S. government watchlisting process. The advisory council meets I believe quarterly to discuss gaps in the watchlisting process, improvements to the watchlisting process, and to provide recommendations to the Homeland Security Council as part of the NCS for proposed modifications to watchlisting guidelines.**

Q. Who created the Watchlisting Advisory Council?

MS. POWELL: Objection; vague.

MR. ABBAS: I withdraw my question.

BY MR. ABBAS:

Q. What is the FBI's role in the Watchlisting Advisory Council?

A. **The FBI is one of the member agencies who sits on the Council. And we send a representative to the advisory council meetings.**

Q. Are all representatives to the Watchlisting Advisory Council coequal?

A. **Meaning do they all have equal vote; is that the question?**

Q. That was not the question.

109

 1  So if someone is on the watchlist, I don't know
 2  that information that put them on that watchlist,
 3  I don't know whether it did or did not come from
 4  TSA. I don't know what information may have come
 5  from TSA. There may be information from TSA in
 6  lots of investigative case files and lots of
 7  watchlisting nominations. I don't know what
 8  information did or did not come from TSA.
 9  BY MR. ABBAS:
10      Q. Is it your understanding -- TSDB
11  information is not SSI protected; correct?
12          MS. POWELL: Objection; calls for a
13  legal conclusions.
14      Q. Who owns TSDB information?
15          MS. POWELL: Objection; vague.
16      Q. The FBI has no position as to who owns
17  TSDB information?
18          MS. POWELL: Objection; vague.
19          THE WITNESS: I mean, it's my opinion
20  that TSC owns TSDB information.
21  BY MR. ABBAS:
22      Q. Great. Okay.

110

 1      A. The TSC is an interagency function.
 2      Q. And the FBI possess TSDB information it
 3  gets from TSC; correct?
 4          MS. POWELL: Objection; vague,
 5  misleading.
 6          THE WITNESS: I think I previously
 7  testified to the ways that TSC pushes TSDB
 8  information to the FBI.
 9  BY MR. ABBAS:
10      Q. Okay. So TSDB status is shared by TSC
11  with the FBI and other agencies; correct?
12          MS. POWELL: Objection; vague,
13  misleading.
14          THE WITNESS: TSDB status?
15  BY MR. ABBAS:
16      Q. Yes. Whether someone is or is not in
17  the TSDB -- I'll just withdraw it.
18          The FBI knows -- has access to the
19  entire contents of the TSDB; correct?
20          MS. POWELL: Objection; mischaracterizes
21  prior testimony.
22          MR. ABBAS: I'm not referring to his

111

 1  prior testimony. If I'm wrong, tell me I'm wrong.
 2          THE WITNESS: Yeah, I would not
 3  characterize it as the FBI -- the whole FBI has
 4  access to the whole TSDB, that is not accurate.
 5  BY MR. ABBAS:
 6      Q. Does the FBI have access to the
 7  identifying information of the TSDB?
 8          MS. POWELL: Objection; vague and
 9  misleading.
10          THE WITNESS: The FBI has the access,
11  the TSDB pushes information to the FBI in
12  Sentinel, in the case management system, and in
13  NCIC. That information can be viewed if queried
14  in those systems.
15  BY MR. ABBAS:
16      Q. So when an act of terrorism happens
17  inside the United States --
18      A. Yes.
19      Q. -- the FBI has the ability to determine
20  whether the perpetrator of the act of terrorism
21  was or was not in the TSDB at the time they commit
22  an act of terrorism; correct?

112

 1      A. Yes.
 2      Q. And the FBI could query the NCIC to
 3  determine whether the perpetrator of the act of
 4  terrorism inside the United States was or was not
 5  in the TSDB at the time they committed their act
 6  of terrorism; correct?
 7          MS. POWELL: Objection; mischaracterizes
 8  prior testimony, vague.
 9          THE WITNESS: So I previously testified
10  that if an act of terrorism occurs, the FBI will
11  absolutely be interested in whether or not the
12  person was watchlisted.
13  BY MR. ABBAS:
14      Q. And you could query the NCIC to
15  determine whether the person was watchlisted;
16  correct?
17          MS. POWELL: Objection; mischaracterizes
18  prior testimony, vague, and misleading.
19          THE WITNESS: That's accurate.
20  BY MR. ABBAS:
21      Q. Okay. Is the NCIC -- does the NCIC
22  contain SSI information?

**113**

             MS. POWELL:  Objection; calls for a
legal conclusion.
             THE WITNESS:  I don't know.
BY MR. ABBAS:
    Q.   Okay.
    A.   That's a legal call.  I don't know.
    Q.   Fair.  Okay.
         Is it the FBI's position that the status
of individuals on the watchlist is SSI
information?
             MS. POWELL:  Objection; calls for a
legal conclusion.  There is, in fact, a TSA reg on
this.
             MR. ABBAS:  Go ahead.
             THE WITNESS:  Yeah, I don't have -- I
don't know the answer to that.  That's a legal
question.
BY MR. ABBAS:
    Q.   Who aside from law enforcement agencies
have access to NCIC?
    A.   I don't know of any people that are not
affiliated with a law enforcement agency that have

**114**

access to NCIC.
    Q.   Do any private entities have access to
NCIC?
    A.   I'm not aware of any private entities
that have carte blanche access to NCIC or have law
enforcement access to NCIC.
    Q.   Does any private entity have any type of
access to NCIC?
    A.   Not that I'm aware of.
    Q.   Okay.
    A.   I'm not aware of any.
    Q.   So when you said "carte blanche," that's
where I'm -- is there some access that private
entities are given?
    A.   Not that I'm aware of inside NCIC, no.
But as I testified previously, NCIC pulls in from
a lot of different systems and some of those may
have some private access to a specific system that
NCIC's pulling from, but I don't know of any
private entities that have access to NCIC.
    Q.   Does the NCIC provide access to any
private databases?

**115**

    A.   Not specifically through NCIC.  I know
that in some states, you can access through a
portal -- through your state portal, you can
access a suite of tools which include NCIC and may
include something like LexisNexis or some public
records type system in the same portal, but I
don't think that they're part of NCIC, though.
    Q.   Does the FBI regulate in any way which
private databases are made available through NCIC?
             MS. POWELL:  Objection; mischaracterizes
prior testimony.
             THE WITNESS:  They're not made available
through NCIC.
BY MR. ABBAS:
    Q.   You indicated that some --
    A.   Different states have different
interfaces to the system.  Some of those
interfaces include a menu of -- a menu of choices
and some of those choices are likely public
records checks and private systems as well.
    Q.   Who decides what private systems are
included in those menu of choices that you're

**116**

referring to?
    A.   The FBI does not decide that.
    Q.   So state and local authorities do?
    A.   Yes, likely.
    Q.   Okay.  Great.
             MR. ABBAS:  30 minutes for lunch?
             MS. POWELL:  Yes.
             (Luncheon recess from the record.)
         A F T E R N O O N   S E S S I O N
             (1:00 p.m.)
             THE REPORTER:  So this is the court
reporter and we have been on the record for two
and hours nine minutes.
             MS. POWELL:  I propose asking a couple
of clarifying questions with respect to prior
testimony.
    MATTHEW J. DESARNO,
      having been previously sworn, resumed the
      stand and testified further as follows:
      EXAMINATION BY COUNSEL FOR THE DEFENDANTS
BY MS. POWELL:
    Q.   First, Mr. DeSarno, you previously

**117**

testified that the FBI knows how many user accounts there are for NCIC. Can you explain what that means?

A. So that's how many individual ORIs exist, which an ORI is an originating record identifier. So an ORI can belong to a department or to a specific station to a terminal so the FBI can track the ORIs. And then it's up to the individual departments to issue access to the ORI and they have a responsibility to have an auditable process.

Q. All right.

MR. ABBAS: Can I ask him a question on that?

MS. POWELL: Sure.

EXAMINATION BY COUNSEL FOR THE PLAINTIFFS (CONT'D)
BY MR. ABBAS:

Q. So the FBI doesn't know how many individual persons as part of their state and local law enforcement responsibilities query the NCIC; correct?

A. I guess that's correct. I mean, I would

**118**

imagine there is some process, some probably exhaustive, burdensome process that if they needed to know how many individual users had accessed each ORI, it's probably able to be found, but the tracking exists to the ORI.

Q. And ORI stands for what?

A. Originating record identifier.

Q. Does the number of -- does the FBI know the number of NCIS -- I'm sorry --

MS. POWELL: That would be different.

Q. Does the FBI know the number of NCIC inquiries that are made of NCIC?

MS. POWELL: Objection; vague, but --

Q. Do you know how many times the NCIC has been queried?

MS. POWELL: Same objection.

THE WITNESS: Yeah, I don't know. I mean, there is -- there are audit -- there's an audit unit and there are audit -- regular audits so I would expect that there are records of that, but I don't know the answer to it.

**119**

BY MR. ABBAS:

Q. And just -- and that's fine.

And just to clarify, does the -- I asked you if you knew, but let me ask -- you're here as the FBI.

Does the FBI know how many times the NCIC database has been queried?

MS. POWELL: Objection; scope and potentially vague.

THE WITNESS: Yeah, I don't know.

BY MR. ABBAS:

Q. Does the FBI know how many times each individual -- I'm sorry.

Does the FBI know how many NCIC queries are generated by each ORI?

A. I would expect that they do, but I haven't seen that audit report. But I -- I think that that is -- can be audited and confirmed.

Q. Okay. But today sitting here, you don't know?

A. I don't know specifically.

Q. Okay.

**120**

MR. ABBAS: Okay.

EXAMINATION BY COUNSEL FOR THE DEFENDANTS (CONT'D)
BY MS. POWELL:

Q. And the second question was you previously testified that the TSDB is a tool to prevent terrorist attacks by providing a common operating picture and we objected to the provision of any specific examples. With that objection remaining in place and without sharing any privileged information, can you provide any other information about how the FBI uses it to prevent terrorist attacks?

A. Sure. So TSDB information combined in some cases with encounter information and other investigative information or intelligence, that body of information and evidence and intelligence combined with other potentially -- with other sources can inform investigative strategy, disruption strategy, prevention of terrorism strategy. So when taken together and combined with other information, it can help us to be more preventive in our work.

## 121

EXAMINATION BY COUNSEL FOR THE PLAINTIFFS (CONT'D)
BY MR. ABBAS:
    Q. In your answer, are you referring to specific instances when TSDB information combined with other information has prevented an act of terrorism?
        MS. POWELL: To the extent that's a yes-or-no question --
        MR. ABBAS: It is.
        MS. POWELL: -- you can answer.
        MR. ABBAS: It is a yes-or-no question.
        THE WITNESS: No.
BY MR. ABBAS:
    Q. Okay. Great.
        Okay. Is the -- the FBI keeps track of the number of times a person in the TSDB is encountered with -- I'm sorry.
        The FBI receives information about encounters with persons on the TSDB from other government agencies; correct?
        MS. POWELL: Objection; vague.
        THE WITNESS: In some instances, yes.

## 122

BY MR. ABBAS:
    Q. When a local police officer pulls someone over and queries the TSDB -- I'm sorry.
        When a local law enforcement pulls someone over and queries NCIC, if that person that was pulled over is in TSDB, does the FBI learn of the local law enforcement traffic stop?
        MS. POWELL: Objection; vague and potentially misleading.
        THE WITNESS: Not necessarily. If the local law enforcement officer gets a hit to the KST file, it would likely be directed to the TSC to make a notification. So depending on what's in that record typically the call would go to the 24-hour call center at the TSC. The TSC would then make an assessment as to what to do with that information.
        In many instances if this occurs inside the United States, there would be a notification to the FBI, but there are instances where it may not. The other -- I mean, the -- so that basically explains a U.S. -- a continental U.S.

## 123

traffic stop to the TSC for a decision, TSC would push to FBI if applicable.
BY MR. ABBAS:
    Q. How does the local law enforcement officer know to contact the TSC if that local law enforcement officer pulls over during a traffic stop a TSDB listee?
    **A. So if a local law enforcement officer runs NCIC, the NCIC return from the KST will tell the local law enforcement officer -- depending on the entry would tell the local law enforcement officer different things which would frequently include contact the TSC. Part of that contact is also to resolve the identity, whether or not this person that's stopped is actually a match, an identity match to a person on the TSDB.**
    Q. Why is it of interest to the FBI whether a local law enforcement officer has pulled over a person that's listed in the TSDB?
        MS. POWELL: Objection; vague, potentially mischaracterizes prior testimony, and misleading.

## 124

        MR. ABBAS: I'll withdraw the question.
BY MR. ABBAS:
    Q. Is the FBI interested in tracking encounters with TSDB listees?
        MS. POWELL: Potentially calls for law enforcement sensitive information.
        You can answer at a level of generality.
        THE WITNESS: I mean, as I testified just previously, the encounter information when combined with other investigative information can inform strategies, disruption efforts, and other investigative steps that are appropriate with regards to specific terrorism subjects.
BY MR. ABBAS:
    Q. Has an encounter with a TSDB listee ever resulted in a terrorism-related arrest?
        MS. POWELL: Objection.
        I'm going to instruct the witness not to answer on the grounds of the law enforcement privilege, also vague and potentially misleading.
    Q. Do you know whether an encounter with a person in the TSDB has ever led to a