IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Anas ELHADY, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 1:16-cv-375 (AJT/JFA) |
| CHARLES H. KABLE, et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' FIFTH MOTION TO COMPEL**

On January 4, 2019, Judge Trenga largely denied, without prejudice, a sprawling discovery motion brought by Plaintiffs, seeking the compelled production of large swaths of documents and other information protected by, *inter alia*, the state secrets and law enforcement privileges. Dkt. No. 258 ("January 4 Order"). The January 4 Order granted Plaintiffs' motion in one respect, requiring Defendants to "provide a further detailed, complete, and specific response" to a single interrogatory (Interrogatory 30) directed to the Terrorist Screening Center ("TSC") and related TSC deposition questioning. *Id.* at 2. On February 8, 2019, the TSC complied with this aspect of the January 4 Order by providing the required supplemental response. Plaintiffs now move to compel "an expansive category" of additional facts related to this interrogatory—including information that is not in the control or possession of the TSC, the party to whom the request was directed—as well as yet another deposition, nearly a year after discovery closed. Mem. in Support of Pls.' 5th MTC to Compel Re: Private Dissemination ("Pls.' 5th MTC"), Dkt. No 262. Because Defendants' supplemental interrogatory response complied fully with the January 4 Order, and because, since then, Defendants have offered Plaintiffs even further information addressing a number of specific concerns they raised during the meet and confer process, this motion should be denied.

1

## BACKGROUND

On January 4, 2019 Judge Trenga ruled on what was, prior to the present motion, the last remaining outstanding discovery dispute in this case: a motion by Plaintiffs to compel numerous documents and other pieces of information related to terrorism screening policies and practices. *See* Pls.' 1st MTC, Dkt. No. 139. After examining the documents at issue *in camera*, Judge Trenga concluded that "the outstanding issues appear ripe for adjudication, without the need to disclose to the Plaintiffs the sought after documents," and he thus denied the motion without prejudice with respect to all of the documents. January 4 Order at 2. However, he granted Plaintiffs' motion with respect to Plaintiffs' Interrogatory 30, directed to the TSC, and related questions at the TSC's Rule 30(b)(6) deposition, ordering Defendants to provide a "further detailed, complete, and specific response" addressing "documents or information [TSC] possesses concerning indirect dissemination to [private] entities." *Id.* n.1.

Defendants provided the required supplemental interrogatory response on February 8, 2019, *see* Pls.' 5th MTC Ex. A ("Supp. Resp."). In particular, the supplemental response describes access to TSDB information by TSC contract employees; the process by which private entities can gain access to search the National Crime Information Center ("NCIC"),[1] which contains the Known or Suspected Terrorist File, a subset of the TSDB; the types of private entities that are allowed access to search NCIC; the number of Originating Agency Identifiers ("ORIs")[2] issued to private entities, which are required to receive access to search NCIC; the measures used to keep any KST hit information confidential with respect to private entities that receive access to search NCIC; and TSC's understanding of the Department of Homeland Security's ("DHS") indirect dissemination of

---

[1] The NCIC is a nationwide, computerized information system administered by the Federal Bureau of Investigation ("FBI").

[2] An ORI is a multi-character alphanumeric identifier assigned by NCIC to an agency or entity in order to identify it in transactions on the NCIC System.

TSDB information.³ *See* Supp. Resp. at 1-5. Plaintiffs filed the present motion on February 15, 2019. Pls.' 5th MTC.

Subsequent to both the initiation of the meet and confer process as well as the filing of this motion, Defendants continued to confer with Plaintiffs in an effort to resolve this matter without further motion practice. On February 15, 2019, defense counsel provided Plaintiffs with additional detailed information in response to three specific questions that Plaintiffs had posed during their meet and confer phone call regarding certain operational or legal aspects of the NCIC.⁴ Defendants' Exhibit ("DEX") A, B. In further response to a line of questioning raised by Plaintiffs' counsel on the same phone call, on February 19, 2019 TSC also produced an addendum to the supplemental interrogatory response. DEX C. The sworn addendum explains that five memoranda of understanding ("MOUs") between TSC and various federal agencies—all of which were identified on privilege logs during the course of discovery—"envision some screening by government agencies of personnel connected to private entities against the TSDB," and provides a general description of the specific screening contemplated by each of these MOUs, respectively. *Id.*

---

³ As discussed additionally below, Plaintiffs never served any interrogatories on any DHS component, including the Transportation Security Administration ("TSA") or U.S. Customs and Border Protection ("CBP"). The operative discovery request, Interrogatory 30, was directed to and served on TSC only. *See, e.g.*, Dkt. No. 178 at 3-7 (setting forth in detail the procedural background of discovery in this case).

⁴ Specifically, Defendants provided detailed answers to the following questions posed by Plaintiffs: (1) The rules cited in the [interrogatory] response are about use of "criminal records." TSDB data is not a criminal record. Why do these apply to TSDB data?; (2) How or why are university police and hospital security considered criminal justice agencies?; and (3) How do private entities apply for or receive an ORI?

**ARGUMENT**

    I.    <u>Defendants' Supplemental Response Fully Complies with the Court's Order.</u>

The Court's January 4 Order states that "Defendants should provide a further detailed, complete, and specific response to Plaintiffs' Interrogatory Number 30 and related questions at the TSC's Rule 30(b)(6) deposition." January 4 Order at 2. In particular, the Court noted that Defendants had not "identified any documents or information it possesses concerning indirect dissemination to [private] entities" in response to Plaintiffs' Interrogatory 30. *Id.* at 2 n.1.

Interrogatory 30 states: "Identify all information TSC possesses that indicates for-profit companies received TSDB information." *See* Pls.' 5th MTC, Ex. A. Although the interrogatory is directed only to information regarding for-profit entities, TSC's supplemental response addresses both direct and indirect access by private entities generally. *See id.* The response provides the required "further detailed, complete, and specific" response Judge Trenga required. January 4 Order, at 2. As described above, the supplemental response goes into detail to describe the process by which private entities may gain access to search NCIC, what kinds of entities are allowed to do so, measures to keep NCIC information confidential, the total number of ORIs, and TSC's understanding of DHS's indirect dissemination of TSDB information. *See* Supp. Resp. at 1-5. Further, as described above, subsequent to serving the supplemental response, Defendants have provided additional information to Plaintiffs in response to certain specific questions they have posed regarding the supplemental interrogatory response, including regarding, *inter alia*, non-governmental entities' ability to search NCIC.[5]

---

[5] As explained in the Rago Declaration, information in an NCIC file, such as the KST file, can only be accessed pursuant to a properly formed query (which cannot be based on name alone) on a specific individual. Thus, a user cannot perform broad searches, such as searches to look for groups of people who are listed in the KST File, or to obtain a list of all individuals listed in the KST File. Rago Decl. ¶ 8.

Plaintiffs' various objections to TSC's supplemental response lack merit. First, they object to the fact that the supplemental response "includes no privileged information of any kind." *See* Pls.' 5th MTC at 3. But the January 4 Order did not require that Defendants produce any privileged information—in fact it did not address the issue of privileges at all. *See* January 4 Order. Instead, Judge Trenga stated that the "supplemental response shall be provided subject to the outstanding protective order[6] and shall also be limited to 'attorneys' eyes only.'" *Id.* at 2. Plaintiffs appear to draw from this sentence that Defendants should be *required* to answer the interrogatory with privileged information. This is not so—Defendants were able to provide a full and complete response on the public record.

Plaintiffs claim that the information is not "detailed," and list considerably vague and open-ended information that they believe should be included in the supplemental response. *See* Pls.' 5th MTC at 4. First, they claim that Defendants' supplemental interrogatory response "d[id] not provide any other information about the application process [to obtain an ORI, such as] whether private entities of all kinds can apply or whether the federal government enlists private entities to obtain an ORI and thus expand the reach of its watchlisting system." *Id.* With respect to "whether private entities of all kinds can apply," the supplemental response itself answers this question. An ORI may *not* be obtained by any kind of entity, only those "providing services on behalf of or in support of a [criminal justice agency]," in accordance with the federal statutes and regulations cited in the response. Supp. Resp. at 3.[7] These entities are "private correctional facilities; private security services for governmental facilities and hospitals; companies providing criminal justice dispatching services or data processing/information services to governmental criminal justice agencies; private

---

[6] Notwithstanding the Court's reference to an "outstanding" protective order, Defendants note that there is no such extant order in this litigation.

[7] Pursuant to 28 U.S.C. § 534(a)(4), (e), such entities include qualified police departments of railroads as well as of private colleges and universities.

probation and pretrial services companies; private city attorneys; and other entities similarly performing criminal justice services." *Id.*

With respect to whether the federal government "enlists" private entities to obtain an ORI "and thus expand[s] the reach of its watchlisting system," Plaintiffs' question appears to indicate a fundamental misunderstanding about the Government's handling of TSDB information. The Government does not seek out ways to "expand the reach" of such information to private entities—instead the Government carefully protects that information, such that only those private entities that need the information in furtherance of the mission of criminal justice agencies and protection from terrorism, may access it, subject to strict oversight and control.

Plaintiffs further request the "government's rationale in providing 1441 entities access to TSDB data."[8] This, too, is beyond the scope of the Court's order and the interrogatory. The interrogatory requests "information TSC possesses that indicates for-profit companies received TSDB information," not information about the government's rationale for doing so. This question was also not posed in any related question at the TSC deposition referenced in the Court's Order. Discovery has ended—Plaintiffs may not seek to ask new questions one week prior to summary judgment. Moreover, the rationale for providing these entities with the ability to search NCIC is self-evident from the nature of the entities to whom access is given—search access is only provided to entities that support the government's law enforcement functions.

In their motion, Plaintiffs now also demand—despite never having served a single interrogatory on either agency during the course of discovery—information about TSA and CBP

---

[8] As explained in the supplemental response, there are not 1441 separate private entities with access; rather there are "currently 1441 ORIs issued to private entities pursuant to either 28 C.F.R. § 20.33 or 28 U.S.C. § 534. However, the number of private entities issued ORIs under these provisions is less than 1441 as in many cases multiple ORIs have been issued to the same entity." Supp. Resp. at 4.

information sharing. This information, too, is beyond the scope of Interrogatory 30—which like the TSC deposition, sought information solely from TSC[9]—and therefore also beyond the scope of the January 4 Order. Nonetheless, TSC did include information within its possession with respect to such information. *See* Pls. Mot. Ex. A at 4-5.

Plaintiffs also now request information respecting "critical infrastructure components that use the TSDB in screening prospective employees," and "other forms of private-sector or event screening." During the meet and confer process, TSC pointed out to Plaintiffs the existence of several MOUs—all of which were identified in Defendants' privilege logs—between TSC and other agencies (including the one referenced by Plaintiffs, between TSC and DHS), some of which contemplate screening personnel connected to certain private entities against the TSDB. TSC has provided Plaintiffs with a list of those MOUs, their corresponding privilege log entries, and the types of screening those MOUs contemplate. DEX C.[10]

Plaintiffs pose questions about how and in what manner private entities use TSDB data. Once again, this strays beyond the Court's Order, which is confined to Interrogatory 30 and related deposition questioning. *See* January 4 Order at 2. Plaintiffs further present rhetorical questions with respect to access to TSDB information by universities, hospitals, and cellular providers. No Plaintiffs have raised any allegations with respect to university admissions, entry to hospitals, or being fired by cellular providers, and the Court should refrain from compelling answers to such questions because they are irrelevant. With respect to the two industries that are relevant to Plaintiffs' allegations—banks and car dealerships—TSC specifically stated in its supplemental interrogatory response that it was "not aware of any mechanism, policy, or practice that would

---

[9] Plaintiffs did not serve any interrogatories on TSA or CBP.

[10] As the addendum to the supplemental response explains, "[t]hese MOUs do not contemplate any TSDB export to private entities or access by those private entities to the TSDB." DEX C at 2.

7

permit TSDB information to be shared with car dealerships or banks." Supp. Resp. at 5. Moreover, the Supplemental Response to Interrogatory 30 already explains that private entities permitted access under 28 C.F.R. § 20.33(a)(7) must be providing services on behalf of or in support of a governmental criminal justice agency and are subject to a security addendum that limits the use of the NCIC information. *See* Supp. Resp. at 3.

Finally, Plaintiffs request this court compel the actual names of the private sector entities who have access to TSDB data through NCIC because they purportedly need those names to assess the extent of dissemination. As a preliminary matter, nothing in the Court's January 4 Order expressly required TSC to state the names or identities of individual entities with some kind of access to TSDB information. Defendants understood the Order to permit them to fully and completely describe the categories of entities who may receive such information and provide descriptions of the categories. This is responsive to the Court's Order and far more useful to resolving the impending summary judgment motions than a list of specific identities. Moreover, this information is protected by the law enforcement privilege, as publication of the list of entities with access to the NCIC database could potentially be misused by someone seeking to access the NCIC for an improper purpose. Rago Decl. ¶ 7; *see In Re the City of New York*, 607 F.3d 923, 936-37 (2d Cir. 2010) (describing protective orders associated with law enforcement sensitive information as a "deeply flawed procedure that cannot fully protect the secrecy of information in this case; it merely mitigates—to some degree—the possibility of unauthorized disclosure."); *cf. Am. Ctr. for Law & Justice v. U.S. Dep't of Justice*, 334 F. Supp. 3d 13, 19–20 (D.D.C. 2018) (finding that FBI's withholding of names of support employees proper under FOIA, and citing testimony that FBI routinely protects names of employees with access to sensitive information as they may become targets of harassing inquiries or recruitment for unauthorized access to sensitive information).

## II. Plaintiffs Are Not Entitled to Another Deposition

Plaintiffs further seek permission to take a second deposition of the FBI's designated Rule 30(b)(6) witness in this litigation, Deputy Assistant Director ("DAD"), Counterterrorism Division, Matthew DeSarno, on the basis of what they claim to have been "outright deception" in his deposition. Defendants take strong exception to Plaintiffs' unfounded suggestion DAD DeSarno provided deliberately deceptive testimony, and the relief Plaintiffs now seek is unwarranted.

At DAD DeSarno's 30(b)(6) deposition, when asked if any private entity has "any type of access to NCIC," DeSarno responded "not that I'm aware of." DeSarno responded truthfully in that he was personally not aware of any private entity access to NCIC.[11] . DeSarno testified that he was not aware of any private entities having "carte blanche access to NCIC" and that he was unaware of "any people that are not affiliated with a law enforcement agency that have access to NCIC." Tr. 113-114. The supplemental responses provided by the TSC reaffirm these important limitations on private access to NCIC, *i.e.*, that only private entities providing services on behalf of or in support of a criminal justice agency, and who have submitted the necessary information, are then provided an ORI which allows NCIC information to be accessed pursuant to a properly formed query on a specific individual. Supp. Resp.; *see generally* Rago Decl.

Nonetheless, as demonstrated by the parties' email correspondence predating the filing of this motion, see DEX A, B, when Defendants saw how Plaintiffs' counsel perceived DeSarno's response to have been inaccurate, Defendants acknowledged that counsel should have more fully prepared the deponent on this topic and sought an opportunity to clarify the deponent's answer (as government counsel and witnesses did on numerous occasions throughout the 30(b)(6) depositions, including DAD SeDarno's, *see* DEX D at 116-117; 120; 184-185). Further, the supplemental

---

[11] As then-DAD of the Counterterrorism Division, NCIC's operations were not part of DAD DeSarno's executive or supervisory responsibilities.

interrogatory responses have now clarified the testimony. In these circumstances, a new deposition is clearly not warranted.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Compel in full.

Dated: February 20, 2019

Respectfully submitted,

G. ZACHARY TERWILLIGER
United States Attorney

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

AMY POWELL
DENA M. ROTH
ANTONIA KONKOLY
CHRISTOPHER HEALY
Trial Attorneys, Federal Programs Branch
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW, Room 7324
Washington, DC 20530
Tel: (202) 514-2395
amy.powell@usdoj.gov
dena.m.roth@usdoj.gov
antonia.konkoly@usdoj.gov
christopher.healy@usdoj.gov

/s/ Lauren A. Wetzler
LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov

*Attorneys for Defendants*

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2019, I filed the foregoing via the CM/ECF system, which will send a Notification of Electronic Filing to all counsel of record.

*/s/ Lauren A. Wetzler*
LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov