# EXHIBIT D



# Transcript of Matthew J. DeSarno, Designated Representative

**Date:** April 9, 2018
**Case:** El Hady, et al. -v- Kable, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF VIRGINIA
 3                   ALEXANDRIA DIVISION
 4    ----------------------------------X
 5    ANAS ELHADY, ET AL.,              :
 6                    Plaintiffs,       :
                                          Case No.:
 7       v.                             :
                                          16-CV-00375
 8    CHARLES H. KABLE, DIRECTOR OF     :
 9    THE TERRORIST SCREENING CENTER;   :
10    IN HIS OFFICIAL CAPACITY, ET AL.,:
11                    Defendants.       :
12    ----------------------------------X
13    Deposition of The Federal Bureau of Investigations
14         by and through its representative,
15                  MATTHEW J. DESARNO
16                  Washington, D.C.
17                Monday, April 9, 2018
18                      10:06 a.m.
19
20    Job No.: 184986
21    Pages: 1-399
22    Reported by: Matthew Goldstein, RPR
```

```
 1       Deposition of MATTHEW J. DESARNO, held at:
 2
 3
 4           Department of Justice
 5           20 Massachusetts Avenue, NW
 6           Washington, D.C. 20001
 7
 8
 9
10
11       Pursuant to Notice, before Matthew Goldstein,
12   RPR, Notary Public in and for the District of
13   Columbia.
14
15
16
17
18
19
20
21
22
```

```
 1        A P P E A R A N C E S
 2   ON BEHALF OF THE PLAINTIFFS, ANAS ELHADY, ET
 3   AL.:
 4   GADEIR ABBAS, ESQUIRE
 5   LENA MASRI, ESQUIRE
 6   CAROLYN HOMAN, ESQUIRE
 7   COUNCIL ON AMERICAN-ISLAMIC RELATIONS
 8   453 New Jersey Avenue, S.E.
 9   Washington, D.C. 20003
10   202.488.0833
11
12   ON BEHALF OF THE DEFENDANTS, CHARLES H. KABLE,
13   DIRECTOR OF THE TERRORIST SCREENING CENTER;
14   IN HIS OFFICIAL CAPACITY, ET AL.:
15   AMY E. POWELL, ESQUIRE
16   U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION
17   20 Massachusetts Avenue, NW
18   Washington, D.C. 20530
19   202.514.9836
20
21
22
```

```
 1   A P P E A R A N C E S   C O N T I N U E D
 2        ALSO PRESENT:
 3        JAYME KANTOR, ESQ -
 4        FEDERAL BUREAU OF INVESTIGATION
 5
 6        CIPORA KLIONSKY, ESQ -
 7        FEDERAL BUREAU OF INVESTIGATION
 8
 9        KEVIN BOGUCKI, ESQ -
10        TERRORIST SCREENING CENTER
11
12        JENNIFER GREENBAND, ESQ -
13        TRANSPORTATION  SECURITY ADMINISTRATION
14
15
16
17
18
19
20
21
22
```

```
 1                C O N T E N T S

 2   EXAMINATION OF MATTHEW J. DESARNO           PAGE

 3

 4   By MR. ABBAS                                   7

 5   By MS. POWELL                                116

 6   By MR. ABBAS                                 117

 7   By MS. POWELL                                120

 8   By MR. ABBAS                                 121

 9   By MS. POWELL                                184

10   By MR. ABBAS                                 185

11   By MS. POWELL                                259

12   By MR. ABBAS                                 260

13   By MS. POWELL                                323

14   By MR. ABBAS                                 323

15   By MS. POWELL                                324

16   By MR. ABBAS                                 325

17   By MS. POWELL                                383

18   By MR. ABBAS                                 384

19   By MS. POWELL                                390

20   By MR. ABBAS                                 391

21   By MS. POWELL                                393

22   By MR. ABBAS                                 393
```

Transcript of Matthew J. DeSarno, Designated Representative
Conducted on April 9, 2018                                              6

```
1   By MS. POWELL                                              394

2   By MR. ABBAS                                               394

3                      E X H I B I T S

4                         (Attached)

5   DESARNO           DEPOSITION EXHIBIT                      PAGE

6
    Exhibit A      Notice of 30(b)(6) Deposition                44
7                  of Defendant FBI

8   Exhibit B      Overview of the U.S.                        237
                   Government's Watchlisting
9                  Process and Procedures

10

11

12

13

14

15

16

17

18

19

20

21

22
```

1            MS. POWELL:  Objection; calls for a
2    legal conclusion.
3            THE WITNESS:  I don't know.
4    BY MR. ABBAS:
5        Q.  Okay.
6        A.  That's a legal call.  I don't know.
7        Q.  Fair.  Okay.
8            Is it the FBI's position that the status
9    of individuals on the watchlist is SSI
10   information?
11           MS. POWELL:  Objection; calls for a
12   legal conclusion.  There is, in fact, a TSA reg on
13   this.
14           MR. ABBAS:  Go ahead.
15           THE WITNESS:  Yeah, I don't have -- I
16   don't know the answer to that.  That's a legal
17   question.
18   BY MR. ABBAS:
19       Q.  Who aside from law enforcement agencies
20   have access to NCIC?
21       A.  I don't know of any people that are not
22   affiliated with a law enforcement agency that have

```
 1   access to NCIC.
 2        Q.   Do any private entities have access to
 3   NCIC?
 4        A.   I'm not aware of any private entities
 5   that have carte blanche access to NCIC or have law
 6   enforcement access to NCIC.
 7        Q.   Does any private entity have any type of
 8   access to NCIC?
 9        A.   Not that I'm aware of.
10        Q.   Okay.
11        A.   I'm not aware of any.
12        Q.   So when you said "carte blanche," that's
13   where I'm -- is there some access that private
14   entities are given?
15        A.   Not that I'm aware of inside NCIC, no.
16   But as I testified previously, NCIC pulls in from
17   a lot of different systems and some of those may
18   have some private access to a specific system that
19   NCIC's pulling from, but I don't know of any
20   private entities that have access to NCIC.
21        Q.   Does the NCIC provide access to any
22   private databases?
```

1     A.   Not specifically through NCIC.  I know
2  that in some states, you can access through a
3  portal -- through your state portal, you can
4  access a suite of tools which include NCIC and may
5  include something like LexisNexis or some public
6  records type system in the same portal, but I
7  don't think that they're part of NCIC, though.
8     Q.   Does the FBI regulate in any way which
9  private databases are made available through NCIC?
10          MS. POWELL:  Objection; mischaracterizes
11 prior testimony.
12          THE WITNESS:  They're not made available
13 through NCIC.
14 BY MR. ABBAS:
15    Q.   You indicated that some --
16    A.   Different states have different
17 interfaces to the system.  Some of those
18 interfaces include a menu of -- a menu of choices
19 and some of those choices are likely public
20 records checks and private systems as well.
21    Q.   Who decides what private systems are
22 included in those menu of choices that you're

```
 1  referring to?
 2       A.    The FBI does not decide that.
 3       Q.    So state and local authorities do?
 4       A.    Yes, likely.
 5       Q.    Okay.  Great.
 6             MR. ABBAS:  30 minutes for lunch?
 7             MS. POWELL:  Yes.
 8             (Luncheon recess from the record.)
 9          A F T E R N O O N   S E S S I O N
10                    (1:00 p.m.)
11             THE REPORTER:  So this is the court
12  reporter and we have been on the record for two
13  and hours nine minutes.
14             MS. POWELL:  I propose asking a couple
15  of clarifying questions with respect to prior
16  testimony.
17   MATTHEW J. DESARNO,
18       having been previously sworn, resumed the
19       stand and testified further as follows:
20       EXAMINATION BY COUNSEL FOR THE DEFENDANTS
21  BY MS. POWELL:
22       Q.    First, Mr. DeSarno, you previously
```

1  DISTRICT OF COLUMBIA )

2

3        I, Matthew Goldstein, RPR, Notary Public

4  within and for the District of Columbia, do hereby

5  certify:

6

7        That I reported the proceedings in the

8  within entitled matter, and that the within

9  transcript is a true record of said proceedings.

10 Reading was requested.

11

12       I further certify that I am not related

13 to any of the parties to the action by blood or

14 marriage, and that I am in no way interested in

15 the outcome of this matter.

16

17       IN WITNESS WHEREOF, I have hereunto set

18 my hand this 15th day of April, 2018.

19
                         *Matthew Goldstein*
20       _____

21              Matthew Goldstein, RPR

22

```
 1   referring to?
 2        A.   The FBI does not decide that.
 3        Q.   So state and local authorities do?
 4        A.   Yes, likely.
 5        Q.   Okay.  Great.
 6             MR. ABBAS:  30 minutes for lunch?
 7             MS. POWELL:  Yes.
 8             (Luncheon recess from the record.)
 9           A F T E R N O O N   S E S S I O N
10                    (1:00 p.m.)
11             THE REPORTER:  So this is the court
12   reporter and we have been on the record for two
13   and hours nine minutes.
14             MS. POWELL:  I propose asking a couple
15   of clarifying questions with respect to prior
16   testimony.
17    MATTHEW J. DESARNO,
18       having been previously sworn, resumed the
19       stand and testified further as follows:
20       EXAMINATION BY COUNSEL FOR THE DEFENDANTS
21   BY MS. POWELL:
22        Q.   First, Mr. DeSarno, you previously
```

1  testified that the FBI knows how many user
2  accounts there are for NCIC. Can you explain what
3  that means?
4      A.  So that's how many individual ORIs
5  exist, which an ORI is an originating record
6  identifier. So an ORI can belong to a department
7  or to a specific station to a terminal so the FBI
8  can track the ORIs. And then it's up to the
9  individual departments to issue access to the ORI
10 and they have a responsibility to have an
11 auditable process.
12     Q.  All right.
13         MR. ABBAS: Can I ask him a question on
14 that?
15         MS. POWELL: Sure.
16 EXAMINATION BY COUNSEL FOR THE PLAINTIFFS (CONT'D)
17 BY MR. ABBAS:
18     Q.  So the FBI doesn't know how many
19 individual persons as part of their state and
20 local law enforcement responsibilities query the
21 NCIC; correct?
22     A.  I guess that's correct. I mean, I would

1        MR. ABBAS:  Okay.
2  EXAMINATION BY COUNSEL FOR THE DEFENDANTS (CONT'D)
3  BY MS. POWELL:
4     Q.   And the second question was you
5  previously testified that the TSDB is a tool to
6  prevent terrorist attacks by providing a common
7  operating picture and we objected to the provision
8  of any specific examples.  With that objection
9  remaining in place and without sharing any
10 privileged information, can you provide any other
11 information about how the FBI uses it to prevent
12 terrorist attacks?
13    A.   Sure.  So TSDB information combined in
14 some cases with encounter information and other
15 investigative information or intelligence, that
16 body of information and evidence and intelligence
17 combined with other potentially -- with other
18 sources can inform investigative strategy,
19 disruption strategy, prevention of terrorism
20 strategy.  So when taken together and combined
21 with other information, it can help us to be more
22 preventive in our work.

```
 1   answered.
 2            MR. ABBAS:  It was not answered.
 3            MS. POWELL:  Yeah, it was.
 4            MR. ABBAS:  Go ahead.  It's a yes or no.
 5            THE WITNESS:  No.
 6   BY MR. ABBAS:
 7       Q.   Okay.  Great.  That was different than
 8   the last answer.
 9            MS. POWELL:  Do you want to take a break
10   at some point soon?
11            MR. ABBAS:  We can take a break now.
12   Five minutes, ten minutes?  Let's do ten minutes.
13            MS. POWELL:  Yeah.
14            (Recess from the record.)
15            THE REPORTER:  This is the court
16   reporter.  We have now used three hours and 20
17   minutes?
18            MR. ABBAS:  Great.  Three hours and 40
19   minutes left.
20   EXAMINATION BY COUNSEL FOR THE DEFENDANTS (CONT'D)
21   BY MS. POWELL:
22       Q.   I wanted to start off with one
```

1  clarifying question, Mr. DeSarno.
2           You previously testified about -- in
3  response to questions about FBI access to TSS.  Do
4  you have anything to add to your prior testimony?
5       A.   Just that all access to TSS is
6  controlled by the TSC.  So any access or requests
7  to access TSS or the information therein has to go
8  through the TSC and the TSC controls that.
9  EXAMINATION BY COUNSEL FOR THE PLAINTIFFS (CONT'D)
10 BY MR. ABBAS:
11      Q.   Director Kable, as the head of TSC,
12 ultimately controls who has access to TSS;
13 correct?
14           MS. POWELL:  Objection; vague.
15           THE WITNESS:  The TSC does.  If Director
16 Kable has -- the director has ultimate
17 responsibility over the TSC.
18 BY MR. ABBAS:
19      Q.   And Director Kable has a supervisor.
20 What is Director Kable's supervisor's name again?
21      A.   His boss?
22      Q.   Yes.