UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ANAS ELHADY, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 1:16cv375 |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES KABLE, et al. | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' SIXTH MOTION TO COMPEL

On February 22, 2019, Magistrate Judge Anderson ordered that "[c]ounsel for plaintiffs shall have the opportunity to view the list of private entity names [in possession of an Originating Agency Identifier ("ORI")][1] at a government facility by Monday, February 25, 2019." Dkt. No. 271. The Government has provided access to this List and a great deal more. The Government accommodated Plaintiffs' counsels' multiple viewings and multiple other demands incident to the viewing, agreed to provide substantial additional information about the List informally, further agreed to incorporate much of that information into the supplement ordered by the Court, and answered Plaintiffs' questions regarding how certain specific entities on the List fell within the description that Defendants previously provided to the Court.[2]

---

[1] An ORI is a multi-character alphanumeric identifier assigned by the National Crime Information Center ("NCIC") to an agency or entity in order to identify it in transactions on the NCIC System. Plaintiffs appear to misuse the term to refer to entities which have an ORI, or in a more limited fashion to non-governmental entities that have an ORI.

[2] As Defendants have previously explained in a sworn discovery response provided to Plaintiffs and filed on the docket of this case, no private entity can receive an ORI unless it can demonstrate that it is either (a) an authorized railroad or college/university police department, pursuant to 28 U.S.C. § 534(e), or (b) is providing services on behalf of or in support of (i) a criminal justice agency (CJA), as set forth in 28 C.F.R. § 20.3(b)(7), or (ii) a noncriminal justice agency performing criminal justice dispatching functions or data processing/information services for CJAs, as set forth in 28 C.F.R. § 20.3(b)(6), and submits the required documentation demonstrating its eligibility. *See* Dkt. No. 262-2

The Court should deny Plaintiffs' latest motion to compel because the relief they seek is not warranted and would be extremely burdensome. Defendants have provided Plaintiffs with a complete and accurate description of the types of entities on the List. Plaintiffs' latest filings fail to demonstrate any reasonable basis for concluding that the descriptions—provided in sworn statements by high ranking Government officials—or the answers provided to them about specific entities by counsel are somehow incomplete or inaccurate.[3] To the extent that Plaintiffs' supplement to their original motion (the "March 4 Supplement") raises *new* questions about specific entities, not previously raised by Plaintiffs' counsel during the viewings, Defendants continue to work with Plaintiffs' counsel to correct their misimpressions. Plaintiffs' skepticism as to the veracity of the Government's testimony cannot be a basis for the additional burdensome discovery they seek. Plaintiffs have all the information needed to litigate this case and are not entitled to reopen discovery on the eve of summary judgment briefing based on any remaining dispute about the OIR list. The District Court will have all the information it needs to decide this case, and the Parties

---

(Defendant Terrorist Screening Center's ("TSC")'s Supplemental Response to Interrogatory 30). Henceforth, Defendants will refer to these entities collectively as "qualified private entities."

[3] Plaintiffs' motion, as filed March 1, 2019, was also misleading because it failed to acknowledge information Defendants had provided to Plaintiffs, and had agreed—prior to Plaintiffs' filing—to summarize in admissible form. Thus, although Plaintiffs' March 4 Supplement acknowledges that Defendants provided additional, admissible information to them essentially simultaneously with their filing of this motion, neither of Plaintiffs' filings explains that Plaintiffs were aware, prior to that filing, that specific information of which they were already aware would be shortly forthcoming in admissible form.

Defendants do appreciate that Plaintiffs' March 4 Supplement acknowledges the Government's substantial efforts to answer Plaintiffs' questions, and further acknowledges that many of those answers addressed concerns raised by Plaintiffs' counsel as to specific entities that Plaintiffs' counsel had flagged during the viewings, and therefore, are no longer at issue. However, both the March 1 Motion and the March 4 Supplement fail to acknowledge other substantial efforts made by the Government, prior to the filing of the March 1 Motion, to address concerns as to other entities Plaintiffs' counsel still consider to be "material gaps," as well as efforts made to accommodate Plaintiffs' scheduling needs.

should be focused on summary judgment, which is the appropriate posture for Plaintiffs to raise any arguments they may have about access to the NCIC.

## PROCEDURAL BACKGROUND

Discovery ended on February 23, 2018, with the exception of a one-month extension in order for Plaintiffs to take several depositions that were originally noticed at the last possible date at the very end of discovery. Dkt. Nos. 116, 123. The Court entertained several motions to compel filed thereafter, addressing disputes that arose during discovery. On January 4, 2019 (following two rounds of briefing), Judge Trenga largely denied, without prejudice, a sprawling discovery motion filed by Plaintiffs on March 15, 2018, Dkt. No. 139, seeking the compelled production of large swaths of documents and other information protected by, *inter alia*, the state secrets and law enforcement privileges. Dkt. No. 258 ("January 4 Order"). The January 4 Order granted Plaintiffs' motion in one respect, requiring Defendants to "provide a further detailed, complete, and specific response" to a single interrogatory (Interrogatory 30)[4] directed to the Terrorist Screening Center ("TSC") and related TSC deposition questioning. *Id.* at 2. On February 8, 2019, the TSC provided the required supplemental response. In light of that response, which contained information that was new to Plaintiffs, Plaintiffs filed a Fifth Motion to Compel, which involved, *inter alia*, Plaintiffs' request that they be afforded a copy of the List. *See* Dkt. No. 262.

On February 22, 2019, Magistrate Judge Anderson heard argument on Plaintiffs' Fifth Motion to Compel. Magistrate Judge Anderson granted Plaintiffs' request respecting the List only in part. He ordered that Plaintiffs' counsel be provided an opportunity to view the List, at a government facility, in order "to be able to . . . assure yourself that the categories that have been laid out in the supplemental answer to interrogatories are consistent with what have been indicated here

---

[4] Interrogatory 30 states: "Identify all information TSC possesses that indicates for-profit companies received TSDB information." *See* Pls.' 5th MTC, Ex. A, Dkt. No. 262-1.

today." Tr. p. 42-43, attached hereto as Defendants' Exhibit ("DEX") 1.  As of the date of the

hearing, the Government had already provided substantial additional information about "private"

access to search NCIC, and the parties had already agreed that the Government would provide that

information in admissible form.  Tr. 41-42.  The Magistrate Judge directed the Government to

provide the additional supplement with this information, as well as answering certain questions

posed by the Court, on or before March 1, 2019.  Dkt. No. 271, Tr. 41-42.

Beginning on the afternoon of February 22, 2019, the parties conferred at length regarding

the arrangements and conditions for the Court-ordered viewing.  *See* DEX 2, DEX 3, DEX 4, DEX

5, DEX 6, DEX 7.  As relevant to the instant filing, Plaintiffs' counsel immediately noted that they

were "anticipating being alarmed" once they saw the List.  DEX 2.  On the afternoon of Sunday,

February 24, Plaintiffs requested that Defendants make the List available on multiple occasions, as

an accommodation to the schedules of the three primary counsel for the Plaintiffs; specifically, as

relevant here, they stated:

> […regarding] the number of times you all have to make the list available to us.  This
> seems like a very resolvable part of our disagreements. … [I]n the interests of
> resolving this part of our dispute, we're willing to agree to three substantial blocks of
> time with the list on three separate days this week.  This will allow *all of Plaintiffs'*
> *attorneys* time with the list, separately or in subgroups or altogether.
>
> We'd propose Monday, Wednesday, and Thursday afternoon during which either or
> all *Lena, Carolyn, and I* will be able to view the list.

Defendants' Exhibit ("DEX") 3 (emphasis added).

Defendants responded that in light of Plaintiffs' counsels' other commitments and different

geographical locations, they would be willing to offer, as an accommodation, a second viewing, in

addition to the viewing ordered by the Court.  Plaintiffs' counsel Gadeir Abbas responded that he

would view the list on Monday, and "Carolyn [Homer] and Lena [Masri] will view the list on

Wednesday."  *Id.*  At no point in these communications did Plaintiffs mention Shareef Akeel or any

purported need of his to view the List as well; indeed, to the contrary, they expressly described Mr.

4

Abbas, Ms. Homer, and Ms. Masri as "all" of Plaintiffs' attorneys who had a need to see the list. *Id.*

This lack of mention was wholly unsurprising because, although Mr. Akeel has appeared on the

pleadings in this matter, he has not, to the best of Defendants' knowledge, been actively involved in

the litigation. He has not appeared in court nor taken, defended, or attended any of the numerous

depositions in this case; nor has he participated in even one of the many dozens of meet and confer

conferences the parties have held over the course of this litigation. Plaintiffs did not respond to

questions about the belated need for his involvement. *See* DEX 5, DEX 11.

With respect to one urgent issue concerning notetaking that needed to be resolved prior to

the viewing that the court ordered to take place on February 25, 2019, the Government requested an

emergency telephonic hearing so that the issue could be resolved prior to the commencement of the

viewing in just a few hours. Dkt. No. 273. The Court ruled on that motion without holding a

telephonic hearing, Dkt. No. 274, and the Monday viewing for Mr. Abbas went forward as

scheduled, for about four hours. During this session, Mr. Abbas asked numerous questions about

the entities on the List, and Defendants subsequently researched and provided answers to those

questions to the extent possible in order to help the Plaintiffs understand how those entities fall

within the descriptions previously provided. Mr. Abbas also requested a separate copy of the List in

alphabetical order by state, which Defendants provided. Some answers to Mr. Abbas's questions

were provided during the Monday viewing, and others were provided in writing to his co-counsel at

the Wednesday viewing.

On Tuesday afternoon, counsel for the Plaintiffs emailed a list of specific discovery

demands. DEX 5. Throughout the week, counsel for the parties continued to discuss those and

other issues, including meeting and conferring on specific requests for information related to

particular List entities, the terms of the Court's protective order, computer access at the viewing, and

other issues.

As described above, Ms. Homer and Ms. Masri scheduled a viewing for Wednesday, February 27, 2019, and upon request, defense counsel rearranged their schedules to permit a full six hours of access by Ms. Homer and Ms. Masri on Wednesday.  DEX 2.  At the viewing, Defendants provided explanations regarding the long list of questions posed on Monday regarding specific entities and began responding to the list of discovery demands.[5]

On Wednesday morning—for the very first time—Plaintiffs' counsel requested during a meet and confer that a *third* viewing be arranged specifically for Mr. Akeel.  DEX 6.  Defendants declined to set up a third viewing in light of the Court's order, the late-breaking nature of the request, and the current burdens on the Defendants including the impending summary judgment deadline, *id.*; Plaintiffs, on the other hand, declined to answer questions about the need for Mr. Akeel's involvement.  DEX 6, DEX 11.

On Thursday, February 28, 2019, Defendants provided a detailed response to the Tuesday list of discovery demands.  DEX 7.  Defendants declined to entertain further document discovery, but pointed Plaintiffs to specific previously provided or publicly available information and documents that answered many of their questions, provided additional detailed information in response to several questions, and offered to add "discrete, non-law enforcement privileged pieces of information . . . to the supplemental response."  *Id.*  Defendants urged Plaintiffs to identify information they wanted added to the supplement, and specifically asked, again, that Plaintiffs identify what if anything, Plaintiffs intended to seek by motion.  *Id.*  Plaintiffs made no substantive response.  On Friday, March 1, 2019, Defendants asked again what Plaintiffs intended to move for

---

[5] Because many of the answers related to specific entities on the List, and in accordance with the Court's February 25 order, Plaintiffs' counsel were not permitted to keep a copy of the written responses. However, they had access to the written answers for the entire duration of the February 27 viewing.

and Plaintiffs acknowledged that the supplement might narrow their motion but still did not indicate

what relief they intended to seek.  DEX 8.

Also on Friday, March 1, 2019, Defendants provided an extensive supplement, including

sworn statements by TSC and CJIS officials.  DEX 9, DEX 10.  March 1, 2019 TSC Second

Addendum to Supplemental Response ("TSC Second Addendum") and March 1, 2019 CJIS

Supplemental Response ("CJIS Supp'l Response").  These supplements fully comply with the

Court's direction to provide additional information about the level of TSC's knowledge of

information-sharing with the Department of Homeland Security ("DHS"), and to provide in

admissible form the information already exchanged between the parties.  They also provide a more

precise estimate of the number of private entities at issue (approximately 533), and consistent with

discussions between the parties, provide additional information about the private entities on the List,

general information about the security of NCIC, and assurances that all entities on the List meet the

standards previously articulated.[6]

Plaintiffs filed their motion on March 1 without the benefit of Defendants' supplements, but

Defendants emphasize that Plaintiffs' counsel were fully aware of most, if not all, of the information

in those supplements prior to their filing, from defense counsels' verbal and/or written

representations.  Even after the March 1 filling, the parties continued to confer regarding specific

---

[6] Further, the CJIS Supp'l Response provides a "more specific description of 'other entities similarly performing criminal justice services,'"—*i.e.*, of the "miscellaneous" category previously described in the Rago Declaration—to include: "a private police department for an airport; a private police department for a transportation authority; private police departments for two private incorporated communities; law enforcement divisions of certain SPCAs; an inmate transport service; an entity that provides forensic services to detect and identify criminals; and court constable services."  CJIS Supp'l Resp. at 8; *cf.* February 20, 2019 Rago Decl. (containing the following description of the qualified private entities: "private correctional facilities; private security services for governmental facilities and hospitals; companies providing criminal justice dispatching services or data processing/information services to governmental criminal justice agencies; private probation and pretrial service companies; private city attorneys; and other entities similarly performing criminal justice services." Dkt. No. 268-5, Rago Decl. ¶ 4).

entities raised in the March 1 motion, all of which had previously been addressed with counsel in the course of the List viewings.  Following the filing of Plaintiffs' March 4 Supplement, the parties continued to confer regarding specific entities raised for the first time in that filing.  *See* DEX 11; DEX 12; DEX 13. While this process is still ongoing as of the time of this filing, by the March 8 hearing, Defendants are committed to having answered as many of Plaintiffs' questions about the nature of specific entities, and the purposes for which they have been granted NCIC access, as possible.

## STANDARD OF REVIEW

Unless otherwise limited by the court, Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense."  Although discoverable information "need not be admissible," *id.*, discovery requests must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2).  Rule 26(b)(2)(C)(i), (ii) further provides that the Court must limit discovery outside that scope, and also where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and where "the party seeking discovery has had ample opportunity to obtain the information."  The Advisory Committee Notes to the 2015 Amendment emphasize that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them."

Rule 37 of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails

to produce or make available for inspection requested documents under Rule 34. Fed. R. Civ. P.

37(a)(3)(B)(iv). District courts have substantial discretion in the handling of a motion to compel.

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995).

## ARGUMENT

### I.     Defendants Complied Fully With the Court Order.

As outlined above, Defendants have fully complied with the Court Order, and have

provided Plaintiffs with a great deal of information beyond that ordered by the Court.  Consistent

with the Court's order, the Government provided Plaintiffs' counsel with access to the List by

Monday, February 25, 2019.  Indeed, the Government went further to accommodate counsels'

schedules and demands by setting up a second viewing for two additional counsel on Wednesday,

providing computer access, providing the List in more than one format, and answering any and all

questions about the nature of specific private entities on the List.

In the circumstances presented, Plaintiffs' request for an additional viewing to be arranged

especially for Mr. Akeeel is belated and overly burdensome.  If Mr. Akeel had an actual need to view

the List, Plaintiffs had every opportunity, over the course of the parties' extensive discussions, to

request he be included in the parties' arrangements.  However, as explained above, Plaintiffs failed to

do so until the *sixth* day of the relevant discussions, which was also two days after the court-ordered

viewing occurred on Monday, February 25.  Moreover, Plaintiffs did not respond to Defendants'

request for more specific information about why Mr. Akeel's access to the List was necessary.

As the attached correspondence amply demonstrates, Defendants have made every effort to

accommodate Plaintiffs.  They arranged for two viewings by three of Plaintiffs' counsel, although

the Court's February 22 Order only contemplated one viewing, and have permitted Plaintiffs'

counsel a total of 16 attorney hours of viewing (i.e. 4 hours for one attorney, 6 hours each for two

other attorneys).  Because the List is law enforcement sensitive, defense counsel were required to sit

with Plaintiffs' counsel in the designated conference room during these viewings; thus, defense counsel have devoted 10 hours to this aspect of the viewing alone—which time does not account for defense counsels' additional and substantial work in conferring with their clients in order to provide, to the maximal extent possible, additional information in response to the numerous questions Plaintiffs have posed throughout this process.

The Government has fully accommodated Plaintiffs' demands for additional access and information. However, the viewing ordered by the Court should not be allowed to serve as an opportunity to further prolong the proceedings, nor to undertake further discovery. Plaintiffs' belated and burdensome request that a third viewing be arranged especially for counsel who has had only peripheral involvement in this litigation is wholly unjustified.

## II.    Plaintiffs' March 1 Motion Mischaracterizes the List, Which Has Been Accurately Described on the Public Record.

Plaintiffs base their supposed entitlement to additional discovery in part on their mischaracterization of the List and the entities on it. And, even after reviewing TSC and CJIS's supplemental responses served later on March 1, Plaintiffs' March 4 Supplement repeats many of those mischaracterizations. For example, Plaintiffs claimed that "the terrorist watchlist is available to individual people, possibly from their personal devices in the comforts of their living rooms." Pls' Mtn at 3, without acknowledging that they had been previously informed, in the CJIS Supplemental Response, that NCIC access requires a secure machine-to-machine connection to the specialized network, and is not available or accessible on the Internet. Plaintiffs continue to insist that internet research of some of the entity names suggest that some qualified private entities may have the means to access the NCIC from a personal laptop. Pls. Supp'l at 2. The picture Plaintiffs attempt to paint, *i.e.* that ORI users can somehow skirt the strict controls required to access the NCIC, is inaccurate. As stated in the CJIS Supp'l Response, "NCIC is not web-based and is not available or accessible on the internet. It is a machine-to-machine interface." Further, the CJIS

10

Security Policy, *see infra*, (specifically, Section 5.13 and Appendix G) to which Defendants have referred Plaintiffs on numerous occasions, sets forth the strict requirements necessary for a mobile device to be compatible with the CSA network. Plaintiffs' speculation is insufficient to cast doubt on these sworn statements and other documentation.

Plaintiffs' March 4 Supplement also poses the rhetorical question of whether FBI will revoke an ORI to a university police force under certain circumstances, for example, if a state authority takes adverse action against it. Pls. Supp'l at 3. But, again, Plaintiffs already have the information sought. The CJIS Supp'l Response clearly states that if a college or university changes its private security service provider, it will notify the state CJIS Systems Agency ("CSA") of the change, and the ORI will be retired. Dkt. 281, Ex. A at 7. The same is true if the service provider no longer meets the standards for a university police force under 28 U.S.C. § 534(e).

In another example in Plaintiffs' March 4 Supplement, Plaintiffs continue to insist that an ORI was granted to a large religious organization that Plaintiffs' internet research apparently suggests may be based in one state, even though the List itself placed the entity that Plaintiffs' researched (identified explicitly as a police department) in another state. Defendants have confirmed that the ORI was in fact properly issued to the police department of a campus of higher education, in one specific location, consistent with what is reflected on the List.

Plaintiffs are also simply wrong to speculate that this information could be used for private process serving. Plaintiffs have been specifically informed, by email dated March 6, 2019, that private civil process serving is not within the regulatory definition of the administration of criminal justice and that the use of NCIC for such services would not be permitted. DEX 13.

In sum, Defendants have answered nearly all of Plaintiffs' questions about the nature of the criminal justice services provided by qualified private entities. Most of these questions were posed and answered before Plaintiffs filed their motion; others only arose after the motion was filed and

11

some of those are still being addressed.  But in each instance prior to Plaintiffs' filing of their March 1 motion, Defendants demonstrated that the entities fall within the categories of private qualified entities described in the response and supplement.

### III.    Plaintiffs Are Not Entitled to New Discovery.

Plaintiffs' motion makes six new, untimely discovery demands, which are similar but not identical to the ones emailed on Tuesday, February 26, 2019.  Each of them is unwarranted in light of the substantial information already provided, the posture of the case, and the issues presented. Several of them implicate privileged information, and seem likely to entail another round of searching, logging, redacting, and briefing further motions to compel.

Perhaps most importantly, all of this information is at best tangential to Plaintiffs' sole remaining procedural due process claim—that their alleged placement in the TSDB does not comport with the Due Process Clause.  To evaluate Plaintiffs' procedural due process claim, the Court will need to determine whether Plaintiffs have established the deprivation of a liberty interest, and if so, whether the existing redress process satisfies due process, balancing the parties' respective interests. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Mohamed v. Holder*, 2015 WL 4394958, at *5 (E.D. Va. July 16, 2015).  When Plaintiffs assert that information about "dissemination" is "dispositive," the Government can only speculate that they are referring to a "stigma-plus" theory of procedural due process.  Injury to reputation alone does not suffice to give rise to a liberty interest protected under the Due Process Clause.  *See Paul v. Davis*, 424 U.S. 693, 711 (1976); *Shirvinski*, 673 F.3d at 315; *Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012).  Instead, the "stigma-plus" test requires that plaintiffs demonstrate (1) they suffered a stigma from governmental action; plus (2) they experienced an alteration or extinguishment of "a right or status previously recognized by state law." *Paul*, 424 U.S. at 711.  The Supreme Court has held that even false charges made by the Government will not satisfy the stigma prong unless they are "made public" or there is "public

12

disclosure." *Bishop v. Wood*, 426 U.S. 341, 348 (1976).  No Plaintiff in this case appears to have any plausible allegation of injury based on dissemination to private entities that receive NCIC data.

In February 2018 in response to an interrogatory, Defendants confirmed, consistent with publicly available information, that a subset of the TSDB is exported to the NCIC Known or Suspected Terrorist ("KST") File, and that the NCIC is available for law enforcement entities to search.  *See* DEX 16.  This description of the NCIC is also confirmed on the publicly available website.  *See* https://www.fbi.gov/services/cjis/ncic.  Defendants do not dispute, therefore, that this portion of the TSDB is widely available for law enforcement to search, through the NCIC.[7] Defendants do dispute, however, that such access constitutes "public disclosure" under applicable standards.  And—more fundamentally for present purposes—the argument does not hinge, for either party, on the fact that 533 non-governmental entities acting as or on behalf of law enforcement have access to the NCIC.  Such entities are required to meet specific standards, use the NCIC in the same way that other law enforcement entities do, and are subject to the same stringent security controls and audits.  Defendants have provided a great deal of information about those standards and security controls to Plaintiffs, during the regular discovery period; during the DeSarno deposition;[8] in the parties' conferrals regarding Plaintiffs' first motion to compel last Spring, *see*

---

[7] Indeed, the importance of the TSDB is premised in large part on hard-earned lessons of September 11, 2001—that various parts of the law enforcement and intelligence communities need to share information about potential terrorist activity to maintain a common operating picture and prevent catastrophic attacks.

[8] At the March 16, 2018 hearing on the 30(b)(6) topics, where the Court granted in part and denied in part the Government's motion for a protective order, the Court limited the NCIC topic in the DeSarno deposition to "some limited testimony about the NCIC database. Just generally what it is, what kind of TSDB and Sentinel information are incorporated into that database. You know, how many individuals have access to the database, you know, that is -- it would take a long time to count that up, I imagine.  I mean, I think a general understanding -- a general statement as to who generally has access to that database, state police authorities, probation officers, you know, people like that. I mean, just something in general as how that goes would be appropriate. But, you know, not a granular level of, you know, a general number or anything like that as to broad categories of who generally has access to that information."  DEX 15.  And indeed, DAD DeSarno in fact provided extensive, detailed testimony on this subject, well beyond what the court held was relevant. *See, e.g.,*

13

DEX 14; in the February 8, 2019 supplement, and in the March 1, 2019 supplements. *See generally* CJIS Security Policy, *available at* https://www.fbi.gov/file-repository/cjis-security-policy_v5-7_20180816.pdf/view; TSC First Supplemental Response to Interrogatory 30, February 8, 2019, Dkt. No. 262-1. ("TSC First Supp'l Response"); Feb. 20, 2019 Rago Decl., Dkt. No. 268-5; TSC Second Addendum; CJIs Supp'l Response.  And at the viewings, Plaintiffs were able to see the List for themselves and ask questions, which were answered both timely and thoroughly.

Plaintiffs argue, contrary to all available facts, that "Defendants share their list with anyone or anything that asks." Pls' Mot. at 4.  It is hard to see how that characterization has a good faith basis in fact, particularly given the information plaintiffs had been provided at the time of their filing.  But even if it were true, Plaintiffs have not tied any private entity access to the NCIC to a procedural due process violation, because Plaintiffs have not alleged a "stigma-plus" claim tied to private dissemination.  As a result of the alleged private dissemination, they must have either been deprived of a right or interest protected by state law, or have a harm that "rise[s] to the level of a constitutional deprivation" under the Fifth Amendment.  *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  The Amended Complaint and the depositions of Plaintiffs speculate at length about how various encounters with public and private entities may have been the result of the TSDB in some fashion, but Defendants have been unable to identify any claim that Plaintiffs may have suffered any cognizable injury at the hands of a nongovernmental entity acting pursuant to these

---

DeSarno Tr. 87-103, 113-19, 122-23, 128-30, 137-59, 363. In addition, after meeting and conferring in April 2018, Defendants sent Plaintiffs links to publicly available documents that discuss NCIC dissemination policies. See National Crime Information Center, available at https://www.fbi.gov/services/cjis/ncic; National Crime Information Center Audit, available at https://www.fbi.gov/file-repository/ncic-audit.pdf/view.  Any impact of DeSarno's limited knowledge about private access to NCIC does not invalidate his extensive testimony on security generally.  And Defendants' subsequent efforts to correct the record on this one question are now quite substantial.

NCIC regulations and policies.  And in response to questions during meet and confers, Plaintiffs

have not responded with any examples that they can tie to such alleged dissemination.

Moreover, none of the specific relief requested is warranted or relevant, much less necessary

for the parties to present this case for summary judgment at this late stage:

1.      "*Defendants [sic] commitment to reducing all information they prepared and vetted about the private*

*dissemination list, executive-level information about private dissemination practices, and individual entries on that list*

*to an admissible form.  Defendants provided many specific descriptions to Counsel during meet-and-confer that are not*

*incorporated into their discovery supplement. This information would remain AEO.*"  As of the hearing on

February 22, 2019, Defendants had already committed to providing the supplement memorializing

information already provided up to that point, and the Court ordered it completed by March 1,

2019.  Defendants have now provided that contemplated supplement, along with substantially more

information.  Although Defendants requested that Plaintiffs identify specific pieces of additional

information they wanted added to the supplement, DEX 6, Plaintiffs never did so.  Defendants

nonetheless attempted to paraphrase some of the privileged information previously provided to

Plaintiffs' counsel at the viewing in a non-privileged form.  DEX 12; DEX 13.  Plaintiffs therefore

now have all of the non-privileged information they requested—and more.  But to the extent

Plaintiffs are asking for information that would identify specific individual entities, the previously

filed CJIS declaration explains that such information is subject to the law enforcement privilege, *see*

Feb. 20, 2019 Rago Decl., Dkt. No. 268-5 ¶ 7, and the Court has already ruled that the names of

entities are sensitive and were only available at a viewing on February 25, 2019.  Plaintiffs' continued

efforts to revisit that ruling are unwarranted and unnecessary in light of the substantial information

they have already been provided.

2.      "*Blank ORI application, or if more than one is in use, all blank ORI applications.*"  As

Defendants expressly explained in a February 28, 2019 email to Plaintiffs' counsel,

> [t]here is no form FBI document for this. [Applicants] have to provide the information . . . previously described, via documentation, to support the ORI request.  Also, a private entity seeking an ORI pursuant to an agreement with a CJA does not contact CJIS directly.  Instead, the request for an ORI must first be made to the state CJIS Systems Officer (at the state CJIS Systems Agency – 'CSA'-, which is typically the state's lead law enforcement agency).  The state CSA must approve of the request and pass it along to FBI CJIS. The state could deny the request and CJIS never even sees it. And typically, where the private entity is in an agreement with a CJA, it is the CJA reaching out to the state CSA, making the request, not the private entity.

DEX 6.  This general process is consistent with the February 8, 2019 Supplement and the March 1, 2019 Supplements.  DEX 9; DEX 10.

     3.     *"Basic statistics regarding the number of ORI applications received, accepted, rejected, and modified."*  As a threshold matter, the instant motion is the first time this demand was made, to the best of Defendants' recollection.  The Court should not countenance this failure to meet and confer, and should deny the relevant aspects of the MTC on this ground alone. *See, e.g., Kolon Indus., Inc. v. E.I. Dupont De Nemours & Co.*, No. 3:11-CV-622, 2012 WL 12894840, at *3-4 (E.D. Va. Feb. 23, 2012) (denying motion to compel on grounds of noncompliance with conferral obligation); *Motley v. Host Hotels & Resorts, Inc.*, No. fPX 15-2062, 2017 WL 1406297, at *5-6 (D. Md. Apr. 20, 2017), *aff'd,* 707 F. App'x 139 (4th Cir. 2017) (similar); *Crofts v. Issaquah Sch. Dist.*, No. C17-1365RAJ, 2018 WL 1577544, at *1 (W.D. Wash. Mar. 30, 2018) (similar).

     The requested information also exceeds the scope of current dispute, because it is not limited to nongovernment ORIs, and even if it were so limited, it sheds no arguable light on the Plaintiffs' due process claim.

     Further, it would be extremely burdensome to calculate the number of ORIs issued specifically as to private entities during a specific time period.  As Defendants have explained previously, CJIS's initial attempt to isolate the number of ORIs issued to private entities was difficult and imprecise, resulting in a list of 1,441 individual ORIs, but which inadvertently included some government entities, and contained many more duplicate entries.  TSC First Supp'l Response at 4,

16

Rago Decl. at ¶ 4; CJIS Supp'l Response at 2.  Further, even if there were an efficient way to isolate

the number of ORI applications that the CJIS Division "modified," it would not account for

modifications that state CSAs made at the initial state of the application review.  Finally, CJIS does

not track the number of ORI denials.

      4.      *"Boilerplate government contracts Defendants use with ORI's, as well as 10 executed contracts*

*regarding ORI's that, in Plaintiffs' view, are of top-tier concern."*  In response to a request for a "blank

boilerplate contract," Defendants responded by email:

> There is no boilerplate contract but my understanding is that the CJIS security
> policy, which we have already provided and is available on a public website, has the
> security addendum and a relevant sample agreement. We have provided you links to
> this document several times now https://www.fbi.gov/services/cjis/cjissecurity-
> policy-resource-center. Upon review of our records, it appears that we referenced
> these policies generally at the deposition and pointed you to relevant policies on the
> CJIS website by email on April 12, 2018.

DEX 6.  Plaintiffs have provided no explanation, to Defendants or to the Court, why the

information they currently have—including the standardized security addendum—is insufficient for

their purposes.

     Additional document discovery of government agreements with these entities is

unwarranted, burdensome and disproportionate to the needs of the case.  Additional document

discovery was not contemplated by either the Court's January 4, 2019 Order or the Magistrate

Judge's February 22, 2019 Order.  While these documents are maintained by FBI, they are not all

easily accessible, and they are likely to contain confidential business information that would need to

be coordinated with the private entities, as well as the state CSAs, and law enforcement privileged

information that should not be produced.[9]  *See In Re the City of New York*, 607 F.3d 923, 936-37 (2d

---

[9] Although recent documents related to ORIs are maintained in the Central Record System, older
documents are available only in paper form and access is likely to be laborious and time-consuming;
the compilation of some older documents likely might not be possible during the timeframe for
briefing summary judgment.

Cir. 2010) (describing protective orders associated with law enforcement sensitive information as a "deeply flawed procedure that cannot fully protect the secrecy of information in this case; it merely mitigates—to some degree—the possibility of unauthorized disclosure.").

5.      *"A log of every ORI's signed acknowledgment form that Defendants assert establishes meaningful and effective limits on access and use of TSDB information."* As Defendants confirmed in an email to Plaintiffs, such a log is not a pre-existing document that could be processed for release.  But Defendants have already described in detail the types of documentation that must be provided in order to receive an ORI.  The Feb. 20, 2019 Rago Declaration expressly explains that a private entity applying for an ORI under 28 CFR § 20.33(a)(7), must submit the following information:

- A description of the criminal justice duties (as defined at 28 CFR § 20.3(b)) that the private entity will be performing on behalf of the governmental entity;

- A copy of the required contract between the governmental CJA and the private entity, including the contract's signature page(s).  The agreement must:
    - Incorporate the CJIS Security Addendum;
    - Specify the criminal justice services (as defined at 28 CFR § 20.3(b)) the private entity will be providing to the governmental CJA; and
    - Specify a representative from the CJA that will assume NCIC operational responsibility and agree to act as the Agency Coordinator ("AC").  The AC manages the agreement between the private entity and the governmental CJA.  The tasks of the AC include responsibility for supervision and ensuring the integrity of the NCIC system by requiring training, continuing education, and certification testing of all personnel who have or will have access to the NCIC system.

Feb. 20, 2019 Rago Decl., Dkt. No. 268-5 ¶ 5.

The creation of an index of thousands of specific documents is unwarranted, burdensome and disproportionate to the needs of the case.   .  This is especially unwarranted when considering that none of the qualified entities have access to the TSDB itself, rather, they have search capabilities to a subset of TSDB information that is contained in the KST File of the NCIC, and even with that access, entities possessing ORIs can only access information the NCIC pursuant to a properly formed query on a specific individual.  Feb. 20, 2019 Rago Decl., Dkt. No. 268-5 ¶ 8.

6.     *"Executive-level information regarding what Defendants know about whether any rules that may exist on access and use of TSDB information are followed."*  This vague, but apparently broad, demand does not appear to be limited to nongovernmental entities with access to NCIC, or even to NCIC. Rather, Plaintiffs are asking for all information about restrictions on TSDB information, a topic that has been covered exhaustively in documents, declarations, depositions, and motions practice already.

If Plaintiffs intended to ask solely for information about nongovernmental access to NCIC, Defendants have provided extensive information about the applicable standards, rules, audit capabilities and enforcement capabilities for NCIC generally, including those governing access by nongovernmental organizations.  *See* CJIS Security Policy, *available at* https://www.fbi.gov/file-repository/cjis-security-policy_v5-7_20180816.pdf/view; *see generally* Rago Supp.  As explained in the Rago Supplement:

> all qualified private entities accessing NCIC are bound by the CJIS Security Policy and CJIS Security Addendum, and are also subject to training and certification criteria, as well as audit review. Under 28 C.F.R. § 20.38, the FBI CJIS Division can cancel an ORI, effectively revoking NCIC access, if misuse is identified. A state CSA can do the same if it finds wrongdoing. Typically, however, when the CJIS Division finds a misuse or a concern, the state CSO cooperates with efforts to identify the misuse, correct it, and report back to CJIS regarding corrective measures. Individual users within an entity have been disciplined and can also face federal criminal charges for misuse or unauthorized use of a government computer system/government property.

Rago Supp. p. 5-6.  This is consistent with the information already provided to Plaintiffs during a meet-and-confer, including the CJIS website, which contains substantial additional information about CJIS policies and audit capabilities.  DEX 6; https://www.fbi.gov/services/cjis/cjis-security-policy-resource-center.  Plaintiffs have not explained, to Defendants or the Court, why they need additional information beyond that already provided.  Their generic concerns about "potential for abuse" do not evidence a need for additional discovery on a topic already covered.  If they have concerns about the inadequacies of the existing policies, they can explain those at summary judgment.

It is difficult to evaluate the burden imposed by a discovery demand without a more specific request than "executive level information" on a general topic, but Defendants maintain that any further discovery at this late date is disproportionate to the needs of the case. Moreover, detailed information about specific security precautions would likely involve law enforcement privileged information. And detailed information about individual matters would likely involve both law enforcement privileged information, confidential business information, and Privacy Act protected information. Absent a more specific request, it is impossible to evaluate the applicable privileges.

## IV. Plaintiffs' Request for an *In Camera* Hearing is Not Justified.

Plaintiffs request an *in camera* hearing where counsel for all parties and the Court may have the private entities list in front of them. Defendants defer to the Court to decide whether it would benefit from such a discussion; however, for their part, Defendants respectfully submit that such a closed hearing should not be necessary. Defendants are filing this response to Plaintiffs' sealed motion on the public docket, and—as demonstrated throughout this filing—the parties can adequately address the issues raised by Plaintiffs' motion in a public setting without identifying any of the individual entities.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' Motion to Compel.

Dated: March 6, 2019                    Respectfully submitted,

                                        G. ZACHARY TERWILLIGER
                                        United States Attorney

                                        JOSEPH H. HUNT
                                        Assistant Attorney General
                                        Civil Division

                                        ANTHONY J. COPPOLINO
                                        Deputy Director, Federal Programs Branch

20

AMY POWELL
DENA M. ROTH
ANTONIA KONKOLY
CHRISTOPHER HEALY
Trial Attorneys, Federal Programs Branch
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW, Room 7324
Washington, DC 20530
Tel: (202) 514-2395
amy.powell@usdoj.gov
dena.m.roth@usdoj.gov
antonia.konkoly@usdoj.gov
christopher.healy@usdoj.gov


/s/ Lauren A. Wetzler
LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 6, 2019, I filed the foregoing via the CM/ECF system, which will send a Notification of Electronic Filing to all counsel of record.

/s/ *Lauren A. Wetzler*
LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov