# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| Anas ELHADY, et al., ) ) Plaintiffs, ) ) v. ) ) CHARLES H. KABLE, et al., ) ) Defendants. ) | Case No. 1:16-cv-375 (AJT/JFA) |

## DECLARATION OF DEBORAH O. MOORE

I, Deborah O. Moore, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1. I am the Branch Manager of the Transportation Security Redress Branch in the Office of Civil Rights and Civil Liberties, Ombudsman and Traveler Engagement at the Transportation Security Administration (TSA) of the Department of Homeland Security (DHS). I have held this position since June 16, 2013. As part of my official duties, I am responsible for the management of the DHS Traveler Redress Inquiry Program (DHS TRIP). The statements made within this Declaration are based upon my personal knowledge and information made available to me in my official capacity.

2. Below I provide a brief history of DHS TRIP. I then describe the current DHS TRIP redress process applicable to individuals in the Terrorist Screening Database (TSDB) and the effect that additional procedures would have on DHS TRIP's operations. Finally, I briefly describe each Plaintiff's redress history with DHS TRIP.

    **A. DHS TRIP Background**

3. In 2007, Congress directed the Secretary of Homeland Security (Secretary) to establish a timely and fair redress process for travelers who believe they have been delayed or prohibited from boarding a commercial aircraft because they have been wrongly

identified as a threat under the regimes utilized by the TSA, U.S. Customs and Border Protection (CBP), or any other office or component of DHS. *See* 49 U.S.C. § 44926(a). Congress further directed the Secretary to establish an "Office of Appeals and Redress" to implement, coordinate, and execute the redress process. *Id.* § 44926(b). This office is required to include representatives from TSA, CBP, and such offices and components of DHS as the Secretary determines appropriate. *Id.* Additionally, Congress directed the Administrator of TSA to create a process to enable airline passengers who are delayed or prohibited from boarding a flight because TSA's "passenger prescreening system determined that they might pose a security threat to appeal such determination and correct information contained in the system" as necessary. *Id.* § 44903(j)(2)(C)(iii)(I).

4. In February 2007, DHS TRIP was officially launched as the central processing point for redress inquiries. On December 10, 2007, the Secretary designated the TSA Office of Transportation Security and Redress, currently known as the Transportation Security Redress Branch, as both the lead agent to manage DHS TRIP and the statutorily-required "Office of Appeals and Redress."

5. Multiple federal agencies play a role in the regimes utilized by DHS components to identify possible threats to transportation and national security. DHS TRIP serves an important function by providing the traveling public with a single point of contact for a wide variety of complaints and inquiries regarding travel difficulties, such as the following: delayed or denied airline boarding; delayed or denied entry into the United States at a port of entry; or being told that personal information on travel documents was incomplete or inaccurate.

6. DHS TRIP receives approximately 19,000 inquiries annually. For approximately 15,000 of those inquiries, the applicant submits all required documentation and DHS TRIP issues a final determination letter. DHS TRIP administratively closes approximately 4,000 of those inquiries due to the applicant's failure to submit required documentation.

    **B.     DHS TRIP Procedures**

7. Travelers who have experienced a screening-related travel difficulty, including those who believe that they experienced such problems because they were wrongly identified as a threat, may submit a Traveler Inquiry Form to DHS TRIP. The Traveler Inquiry Form prompts travelers to describe their particular experience, produce documentation related to the subject inquiry as necessary, provide at least one piece of government-issued photo identification documentation, and provide a contact to which a response may be directed. Travelers may also provide any comments or additional information that they deem relevant to the inquiry, including any exculpatory information.

8. When a traveler files an inquiry with DHS TRIP online, the system automatically provides the traveler a Redress Control Number (RCN), which helps the traveler monitor the progress of the inquiry. The RCN matches the traveler to the results of his or her redress case within the DHS TRIP case management system. An additional feature of the RCN is that once a traveler's case is closed, he or she may use the RCN when making future air travel reservations. In conjunction with TSA's Secure Flight Program, airlines have modified their reservation systems to allow an individual with a RCN to enter it into the reservation system to prevent the individual from being misidentified.

9. Upon receipt of a Traveler Inquiry Form, DHS TRIP reviews the information submitted by the traveler and evaluates each inquiry to determine which DHS components or other

governmental agencies have equities in the issues underlying the claimed travel difficulties. In addition to reviewing the traveler's submission, DHS TRIP also reviews relevant government databases, including TECS[1] and Secure Flight.[2] DHS TRIP will then refer the inquiries to the appropriate DHS TRIP components and any other governmental agencies with equities.

10. If a traveler experienced problems because he or she was "misidentified" – *i.e.*, the traveler's name is the same as or similar to the name of a different individual who is included in the Terrorist Screening Database (TSDB) – then DHS TRIP, in coordination with all relevant government agencies, attempts to prevent future misidentification by updating or correcting information in the traveler's record, or taking other action as warranted.

11. In the small fraction of cases in which DHS TRIP determines that a traveler is an exact or possible match to an identity in the TSDB, DHS TRIP refers the matter to the Redress Office at the Terrorist Screening Center (TSC). The TSC maintains the TSDB, of which the No Fly List, Selectee List, and Expanded Selectee List are subsets. Approximately 98 percent of DHS TRIP inquiries have no connection with any identity in the TSDB.

12. When a traveler's redress inquiry is referred to the TSC Redress Office and the traveler is a confirmed match to the TSDB, TSC reviews the available derogatory and exculpatory information about the traveler, including any information provided by the traveler as a part of the inquiry, to make a new determination as to whether the individual continues to

---

[1] TECS is the principal system used by CBP officers at the border to assist with screening and determinations regarding admissibility of arriving persons.

[2] Secure Flight is TSA's risk-based passenger prescreening program that enhances security by identifying low and high-risk passengers before they arrive at the airport by matching their names against trusted traveler lists and watchlists.


satisfy the standard for inclusion in the TSDB and its subsets. The Redress Office consults with other agencies, as appropriate. Upon the conclusion of that review, the TSC Redress Office notifies DHS TRIP of the outcome of the review.[3] When appropriate, the DHS TRIP redress process will result in removal of a traveler from the TSDB and/or one of its subsets.

13. Once all relevant agencies have reviewed a traveler's redress inquiry and record and completed their review, DHS TRIP issues a determination letter to the traveler.

14. In light of national security and law enforcement interests, the determination letter generally provides the results of the individual's redress inquiry without disclosing whether the traveler was, or is, included in a federal watchlist used by TSA for passenger pre-boarding screening (including the TSDB and its subsets) or revealing other sensitive information. DHS TRIP does not disclose Sensitive Security Information (SSI),[4] law enforcement sensitive information, or classified information to applicants.

15. In the event that an individual is, in fact, in the TSDB, the underlying information used to determine that placement is usually derived from sensitive information, such as law enforcement information, SSI, and classified information. Disclosure of an individual's TSDB status and reasons therefore would significantly undermine the government's counterterrorism efforts. Accordingly, DHS TRIP does not reveal an individual's TSDB status or reasons for such status, if any, when providing a final determination.[5]

---

[3] DHS TRIP provides additional procedures to U.S. citizens and lawful permanent residents on the No Fly List, further explained below, which may result in the TSA Administrator removing the individual from or maintaining the individual on the No Fly List.

[4] *See* 49 U.S.C. § 114(r) and 49 C.F.R. part 1520.

[5] In certain limited circumstances, a U.S. citizen or lawful permanent resident who is denied boarding may learn of his or her status on the No Fly List after filing an inquiry with DHS TRIP about the denial of boarding, as further explained below.

16. The redress procedures that apply to individuals in the TSDB provide those individuals with a means to impart exculpatory information that, in turn, is reviewed at multiple levels. During that process multiple federal officials carefully review the available information, including exculpatory information that is possessed by the nominator and/or submitted by the traveler, to assess whether continued placement on the TSDB is warranted. This redress process is robust and results in changes to TSDB status, as appropriate, including complete removal from the TSDB if the standard for inclusion in the TSDB is no longer satisfied.

### C.     Impact of Additional Procedures

17. In 2014, the government revised the DHS·TRIP procedures for U.S. citizens and lawful permanent residents (collectively, U.S. persons) who make redress inquiries regarding the denial of aircraft boarding. To qualify for additional procedures, the individual must be a U.S. person who (a) purchases an airline ticket; (b) is denied boarding that flight; (c) subsequently files a redress inquiry regarding the denial of boarding with DHS TRIP; (d) provides all information and documentation required by DHS TRIP; and (e) is determined to be appropriately on the No Fly List. A U.S. person who satisfies all of these criteria will be informed that he or she is on the No Fly List and provided an opportunity to request additional information, which may include, to the extent consistent with national security and law enforcement interests, an unclassified summary of information supporting the individual's placement on the No Fly List.

18. In addition to the harms to national security described in the Declaration of Hao-y Tran Froemling, providing the same or similar procedures to individuals selected for enhanced screening due to TSDB status would impose a substantial administrative burden on DHS

TRIP. The current process for U.S. persons on the No Fly List is time intensive and requires the full attention of several full time DHS TRIP employees, including an Enhanced Redress and Appeals Manager. U.S. persons on the No Fly List who request additional information represent a very small portion of the total number of applicants to DHS TRIP. Notwithstanding the small size of this population, a significant proportion of DHS TRIP's resources are required to address these redress inquiries, leaving DHS TRIP with limited resources to address all other redress inquiries. Expanding the scope of application of the enhanced procedures would result in substantial delays for all redress applicants.

19. In particular, providing unclassified summaries of information supporting placement on the No Fly List is an extremely time-intensive process that requires review by, and inter-agency coordination among, numerous DHS TRIP employees, TSA Intelligence Analysts, TSA Chief Counsel attorneys, DHS offices, TSC, TSDB nominators, and other agencies with equities. Aside from the harm to national security in confirming who is in the TSDB, requiring this process for more than the limited subset of U.S. persons on the No Fly list who qualify for the enhanced redress procedures described above would result in a great strain on DHS TRIP's limited resources and difficulty meeting its statutory mandate to provide a timely and fair redress process.

20. Based on the number of inquiries recently submitted to DHS TRIP, if the enhanced redress process for U.S. persons on the No Fly List were applied to U.S. persons who receive enhanced screening as a result of TSDB status, DHS TRIP estimates its workload for enhanced redress cases would dramatically increase by more than 1,400 percent. This would lead to an impact in DHS TRIP's ability to provide a fair and timely process for all

applicants, including the 98 percent of applicants who are cleared of any connection to the TSDB.

### D.    Plaintiffs' DHS TRIP History

21. Below I describe the redress history for each Plaintiff.[6] In summary, plaintiffs Osama Hussein Ahmed, Ahmad Ibrahim Al Halabi, Saleem Ali, Mark Amri, Samir Anwar, Shahir Anwar, John Doe No. 2, John Doe No. 4, Anas Elhady, Ausama El-Huzayel, Zuhair El-Shwehdi, Murat Frljuckic, Yaseen Kadura, Muhammad Yahya Khan, Adnan Khalil Shaout, Hassan Shibly, and Donald Thomas submitted inquiries to DHS TRIP and DHS TRIP issued final determination letters in response to those inquiries.[7]

22. DHS TRIP has no record of receiving any inquiry from plaintiffs Ibrahim Awad, Baby Doe 2, John Doe No. 3, Hassan Fares, or Wael Hakmeh.[8]

23. DHS TRIP administratively closed an inquiry from plaintiff Michael Edmund Coleman due to his failure to provide all required documentation and has no record of receiving any subsequent inquiry from him.

24. Osama Hussein Ahmed completed a DHS TRIP traveler inquiry form on April 20, 2011, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about October 4, 2011.[9]

---

[6] For purposes of the information described in this section, DHS TRIP conducted searches of its Redress Management System (RMS) on February 8, 2019 and February 15, 2019.

[7] Unless otherwise specified, the final determination letters received by each plaintiff contained the information described in paragraph 14.

[8] DHS TRIP is unable to receive inquiries via email that exceed 10 megabytes (MB). In the event an inquiry in excess of 10 MB is submitted via email, DHS TRIP will not receive the email. DHS TRIP encourages applicants to send separate e-mails with attachments using the same subject line if the size exceeds 10 MB. Documentation may also be submitted to DHS TRIP via US Mail.

[9] The determination letter sent to Plaintiff Ahmed was mistakenly dated August 24, 2011, due to the date not being updated.

25. Ahmad Ibrahim Al Halabi first submitted a DHS TRIP inquiry on May 9, 2012, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about October 15, 2012. Al Halabi submitted a second DHS TRIP inquiry on July 1, 2014, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about September 30, 2014. Al Halabi submitted a third DHS TRIP inquiry on October 14, 2015, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about February 26, 2016.

26. Saleem Ali submitted a DHS TRIP inquiry on March 15, 2011, related to travel difficulties. DHS TRIP issued a final determination letter in response to that inquiry on or about March 30, 2011.

27. Mark Amri submitted a DHS TRIP inquiry on March 4, 2016, related to a denial of boarding. DHS TRIP issued a final determination letter in response to that inquiry on or about September 1, 2016, which stated, "At this time the U.S. Government knows of no reason, related to your inquiry, that you should be unable to fly."

28. Samir Anwar completed a DHS TRIP traveler inquiry form on July 9, 2014, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about August 7, 2014.

29. Shahir Anwar completed a DHS TRIP traveler inquiry form on November 3, 2014, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about March 23, 2015.

30. DHS TRIP has conducted a search of its records and found no DHS TRIP inquiry submitted for plaintiff Ibrahim Awad.

31. Michael Edmund Coleman submitted a DHS TRIP inquiry on October 1, 2015, related to travel delays. DHS TRIP administratively closed this inquiry on or about November 2, 2015, due to plaintiff Coleman's failure to submit required documentation. DHS TRIP has no record of receiving any other inquiry from Plaintiff Coleman.

32. DHS TRIP has conducted a search of its records and found no DHS TRIP inquiry submitted for plaintiff Baby Doe 2.

33. John Doe No. 2 completed a DHS TRIP traveler inquiry form on December 21, 2015, related to travel delays. DHS TRIP issued a final determination letter in response to that inquiry on or about January 21, 2016.

34. DHS TRIP has conducted a search of its records and found no DHS TRIP inquiry submitted for plaintiff John Doe No. 3.

35. John Doe No. 4 submitted a DHS TRIP inquiry on August 3, 2016, related to a denial of boarding. DHS TRIP issued a final determination letter in response to that inquiry on or about September 21, 2016, which stated, "At this time the U.S. Government knows of no reason, related to your inquiry, that you should be unable to fly."

36. Anas Elhady submitted a DHS TRIP inquiry on January 27, 2015, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about May 11, 2015.

37. Ausama El-Huzayel submitted a DHS TRIP inquiry on April 24, 2016, related to a denial of boarding. DHS TRIP issued a final determination letter in response to that inquiry on or about December 6, 2016, which stated, "At this time the U.S. Government knows of no reason, related to your inquiry, that you should be unable to fly."

38. Zuhair El-Shwehdi completed a DHS TRIP traveler inquiry form on August 18, 2016, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about November 21, 2016.

39. DHS TRIP has conducted a search of its records and found no DHS TRIP inquiry submitted for plaintiff Hassan Fares.

40. Murat Frljuckic first completed a DHS TRIP inquiry on November 7, 2012, related to enhanced screening.[10] DHS TRIP issued a final determination letter in response to that inquiry on or about January 4, 2013. Frljuckic submitted a second DHS TRIP inquiry on August 18, 2014, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about October 31, 2014.

41. DHS TRIP has conducted a search of its records and found no DHS TRIP inquiry submitted for plaintiff Wael Hakmeh.

42. Yaseen Kadura completed a DHS TRIP traveler inquiry form on November 21, 2012, related to a denial of boarding. DHS TRIP initially issued a final determination letter in response to that inquiry on or about May 8, 2013. DHS TRIP issued a superseding final determination letter on or about September 4, 2015, which stated, "At this time the U.S. Government knows of no reason Mr. Kadura should be unable to fly."

43. Muhammad Yahya Khan first submitted a DHS TRIP inquiry on January 7, 2014, related to enhanced screening. DHS TRIP administratively closed this inquiry on or about February 26, 2014, due to plaintiff Khan's failure to submit required documentation. Plaintiff Khan submitted a second DHS TRIP inquiry on April 13, 2015. DHS TRIP issued a final determination letter in response to that inquiry on or about July 14, 2015.

---

[10] Frljuckic emailed his inquiry without required documentation on January 8, 2012. He provided the required documentation on November 7, 2012.

44. Adnan Khalil Shaout first submitted a DHS TRIP inquiry on June 28, 2011, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about January 5, 2012. Shaout submitted a second inquiry to DHS TRIP on July 24, 2014, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about August 19, 2014. Shaout submitted a third inquiry to DHS TRIP on September 16, 2015, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about November 5, 2015.

45. Hassan Shibly first submitted an inquiry to DHS TRIP on November 30, 2009, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about March 8, 2011.[11] Shibly subsequently submitted a DHS TRIP inquiry on August 26, 2013, related to travel difficulties. DHS TRIP issued a final determination letter in response to that inquiry on or about November 15, 2013.

46. Donald Thomas submitted a DHS TRIP inquiry on April 22, 2016, related to enhanced screening. DHS TRIP issued a final determination letter in response to that inquiry on or about September 1, 2016.

---

[11] Shibly submitted another inquiry related to this inquiry.

DATED:    March 1, 2019
                Arlington, VA

_____
DEBORAH O. MOORE
Director, DHS TRIP & Branch Manager
Transportation Security Redress Branch
Civil Rights and Liberties, Ombudsman & Traveler Engagement
Transportation Security Administration