# Elhady Plaintiffs
# MSJ Exhibit 47

UNCLASSIFIED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| GULET MOHAMED, <br><br> Plaintiff, <br><br> v. <br><br> ERIC H. HOLDER, JR., *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No. 1:11-CV-50 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DECLARATION OF G. CLAYTON GRIGG

I, G. Clayton Grigg, hereby declare the following:

1. (U) I am the Deputy Director for Operations of the Terrorist Screening Center ("TSC"). I became the Deputy Director for Operations at TSC in September 2013. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 1997 and have served in a variety of criminal investigative, counterterrorism, and senior management positions.

2. (U) The TSC is a multi-agency center that was created by the Attorney General pursuant to Homeland Security Presidential Directive ("HSPD")-6 on September 16, 2003. The TSC is administered by the FBI and receives support from, *inter alia*, the U.S. Department of Homeland Security ("DHS"), the Department of State ("DOS"), the Department of Justice, and the Office of the Director of National Intelligence. TSC is

UNCLASSFIED

1

Elhady-FBITSC-000333

staffed by officials from multiple agencies, including FBI, DHS, DOS, Transportation Security Administration ("TSA"), and U.S. Customs and Border Protection ("CBP").

3. (U) Each paragraph in this declaration is marked with a "U" because the information is unclassified.

4. (U) I make this declaration in support of the dispositive motions filed by the government in this case. The matters stated herein are based on my personal knowledge and my review and consideration of information available to me in my official capacity, including information furnished by TSC personnel, including FBI Special Agents, as well as other government agency employees or contract employees acting in the course of their official duties.

## OVERVIEW OF U.S. TERROR WATCHLISTS

5. (U) Since the attacks of September 11, 2001, Congress and the President have mandated that federal executive departments and agencies share terrorism information with those in the counterterrorism community responsible for protecting the homeland, such as CBP officers who conduct inspections at U.S. ports of entry, TSA personnel responsible for aviation security, and domestic law enforcement officers.

6. (U) Prior to the creation of the TSC in 2003, nine U.S. Government agencies maintained twelve different watchlists intended to accomplish a variety of purposes.[1] Two of these lists, the No Fly and Selectee Lists, were originally maintained by the TSA, which was formerly within the Department of Transportation and is now part of DHS. The No Fly

---

[1] (U) *See*, Government Accountability Office, *Terrorist Watch Lists Should Be Consolidated to Promote Better Integration and Sharing*, GAO-03-322, April 2003.

List is defined as a list of individuals who are prohibited from boarding an aircraft. The Selectee List is defined as a list of individuals who must undergo additional security screening before being permitted to board an aircraft.

7. (U) Created pursuant to HSPD-6 and administered by the TSC, The Terrorist Screening Database ("TSDB") is the U.S. Government's consolidated terrorist watchlist. The TSDB contains no substantive derogatory intelligence information or classified national security information. Instead, the TSDB contains only sensitive but unclassified terrorist identity information consisting of biographic identifying information such as name or date of birth, or biometric information such as photographs, iris scans, and fingerprints. This facilitates the appropriate sharing of TSDB identifying information with government screening and law enforcement officers, such as CBP officers at ports of entry, and state and local law enforcement officers throughout the United States. The TSDB is a sensitive but unclassified system that is updated continuously. The terrorist identity information contained in the TSDB is deemed For Official Use Only ("FOUO") because it is derived from classified national security and unclassified but sensitive law enforcement information. The No Fly and Selectee Lists, along with the watchlist status of an individual on either list are treated as Sensitive Security Information (SSI). *See* 49 CFR 1520.5(b)(9)(ii).

8. (U) The National Counterterrorism Center (NCTC) maintains substantive derogatory or intelligence information concerning international terrorists in its Terrorist Identities Datamart Environment (TIDE). Pursuant to Section 1021 of the Intelligence Reform and Terrorism Prevention Act of 2004, the NCTC serves as the primary organization in the U.S. Government for analyzing and integrating all intelligence possessed or acquired by

Elhady-FBITSC-000335

UNCLASSIFIED

the U.S. Government pertaining to terrorism and counterterrorism, excepting purely domestic counterterrorism information.[2] The NCTC also ensures that appropriate agencies have access to and receive intelligence needed to accomplish their assigned missions and serves as the central and shared knowledge bank on known and suspected terrorists and international terror groups, as well as their goals, strategies, capabilities, and networks of contacts and support. Substantive derogatory information regarding purely domestic terrorists is maintained by the FBI.

9. (U) The TSC, through the TSDB, makes terrorist identity information accessible to various screening agencies and entities through the regular export of updated subsets of TSDB data. For example, the No Fly and Selectee Lists are subsets of TSDB information that are available for aviation security screening purposes.

10. (U) The TSDB is supported by a 24 hours a day/7 days a week/365 days a year operations center and is continuously updated with information concerning encounters with known[3] or suspected[4] terrorists.

---

[2] (U) Because of the codification of NCTC in the Intelligence Reform and Terrorism Prevention Act (IRTPA) of 2004, Executive Order 13354, which originally created NCTC, was revoked by amendments to Executive Order 12333 in July 2008.

[3] (U) A known terrorist is an individual whom the U.S. Government knows is engaged, has been engaged, or who intends to engage in terrorism and/or terrorist activity, including an individual (a) who has been charged, arrested, indicted, or convicted for a crime related to terrorism by U.S. Government or foreign authorities; or (b) identified as a terrorist or member of a designated foreign terrorist organization pursuant to statute, Executive Order or international legal obligation pursuant to a United Nations Security Council Resolution.

[4] (U) A suspected terrorist is an individual who is reasonably suspected to be, or have been, engaged in conduct constituting, in preparation for, in aid of, or related to terrorism and/or terrorist activities based on an articulable and reasonable suspicion.

UNCLASSFIED

Elhady-FBITSC-000336

## NOMINATIONS TO AND PLACEMENT IN THE TSDB AND NO FLY AND SELECTEE LISTS SUBSETS

11. (U) The procedure for submitting information about individuals for the purpose of including them in the TSDB is referred to as the nomination process. The TSDB contains both international and domestic terrorist identity information. Generally, nominations of known or suspected international terrorists are submitted by federal departments and agencies (including the FBI), and are processed through NCTC. Generally, the FBI is responsible for all nominations of known or suspected domestic terrorists, and submits those domestic terrorist identity nominations directly to the TSC. Although the FBI is a nominating agency for both domestic and international terrorist information, it forwards relevant information on known or suspected international terrorists through NCTC. The nomination of an individual to the TSDB, or to any of its subset lists, includes terrorist identity information, such as name and date of birth, which is deemed FOUO for watchlisting purposes. This identifying information is usually derived from the classified intelligence or law enforcement sensitive information about an individual.

12. (U) Identifying information is added to and removed from the TSDB and subset No Fly and Selectee Lists through an ongoing nomination and review process. Based upon their statutory authority, files from NCTC, which pertain to international terrorism, contain nominations to the TSDB and are sent to the TSC. These files contain the nominee's identifying biographic and biometric information. FBI case agents also submit, with respect to domestic terrorist information, recommendations to nominate an individual to the TSDB and subset No Fly and Selectee Lists. This is accomplished by completing the relevant forms with an attached electronic communication with additional detail that

Elhady-FBITSC-000337

**UNCLASSIFIED**

provides a summary of the underlying information that demonstrates that a person, regardless of citizenship, meets the standards for inclusion on either list. TSC refers to the underlying information as "derogatory information."

13. (U) Upon receiving a nomination, TSC personnel review it to determine (a) whether the biographic information associated with the nomination is sufficient to support the screening processes of the receiving screening entities (*e.g.*, TSA, CBP), who in turn use that identifying data to match to or distinguish that individual from a watchlisted terrorist in the TSDB; and (b) whether the nomination is supported by derogatory information that meets the criteria for inclusion in the TSDB, as well as any additional heightened derogatory requirements for nominations to the No Fly or Selectee Lists. Before placing a new nomination into the TSDB, TSC personnel use a multi-faceted review process that involves coordination with NCTC and the nominating agency, as necessary, to ensure that the nominations meet the criteria for inclusion and are not based on impermissible grounds.

14. (U) As part of TSC's review of a nomination, No-Fly-Selectee (NFS) subject matter experts ("SME") review every nomination to the No Fly or Selectee Lists. Employees assigned to and stationed at the TSC that serve as NFS SMEs include personnel from TSA, FBI and DHS. NFS SMEs are required to undergo specific trainings and coursework and demonstrate proficiency before being qualified and designated as subject matter experts. NFS SMEs review (a) records being newly recommended for posting to or exclusion from Selectee or No Fly; (b) records identified as possibly qualifying for No Fly or Selectee but are not currently posted to that status; (c) US Persons on No Fly/Selectee that have not been reviewed by an NFS SME in the past six months; (d)

**UNCLASSFIED**

Elhady-FBITSC-000338

records of all US Persons on the No Fly List whenever there is an encounter generated based on an attempt at boarding or a denial of boarding of a commercial aircraft by such an individual; and (e) other records on an ad hoc basis in accordance with special projects and/or requests.

15. (U) With limited exceptions,[5] reasonable suspicion is the standard used to evaluate all TSDB placement determinations, including evaluation of the heightened derogatory criteria required for placement on the No Fly or Selectee Lists. For inclusion in the TSDB, there must be reasonable suspicion to establish that the individual is a known or suspected terrorist. For inclusion on the No Fly or Selectee Lists, there must be reasonable suspicion to establish that the individual meets one (or more) of the heightened derogatory criteria necessary for inclusion on the No Fly List (as discussed fully in paragraph 17, below), or the criteria necessary for inclusion on the Selectee List.

16. (U) Generally, nominations to the TSDB must satisfy minimum identifying criteria to allow screeners to be able to discern a match, and substantive derogatory criteria to establish a reasonable suspicion that the individual is a known or suspected terrorist. To meet this standard, the nominator must rely upon "articulable" intelligence or information which, based on the totality of the circumstances and taken together with rational inferences from those facts, creates a reasonable suspicion that the individual is a known or suspected terrorist. Mere guesses or "hunches," or the reporting of suspicious activity alone are not sufficient to establish reasonable suspicion. Additionally, nominations must not be based solely on the individual's race, ethnicity, national origin, religious

---

[5] (U) Limited exceptions to the reasonable suspicion requirement exist for the sole purpose of supporting immigration and border screening processes by the Department of State and the Department of Homeland Security.

Elhady-FBITSC-000339

affiliation, or activities protected by the First Amendment, such as free speech, the exercise of religion, freedom of the press, freedom of peaceful assembly, and petitioning the government for redress of grievances.

17. (U) A nominating agency may nominate an individual for inclusion in the TSDB and recommend that the individual also be included on either the No Fly List or the Selectee List only if there is reasonable suspicion that the individual meets additional heightened derogatory criteria required for each of these subset lists that goes above and beyond the criteria required for inclusion in the broader TSDB.[6] Individuals are added to and removed from the No Fly List through an ongoing nomination and review process.

18. (U) An individual may be placed on the No Fly List when the TSC determines, pursuant to interagency approved policies and procedures (the "Watchlisting Guidance"), that the individual meets at least one of the following criteria: the individual poses a threat of (1) committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) or an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to an aircraft; (2) committing an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to the homeland; (3) committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) against any U.S. Government facility abroad and associated or supporting personnel, including U.S. embassies, consulates and missions, military installations, U.S. ships, U.S. aircraft, or other auxiliary craft owned or leased by the U.S. Government; or, (4) engaging in or conducting a violent act of terrorism and who is operationally capable of doing so.

---

[6] (U) See, U.S. Department of Homeland Security, Privacy Office, *Report on Effects on Privacy and Civil Liberties: DHS Privacy Office Report Assessing the Impact of the Automatic Selectee and No Fly Lists on Privacy and Civil Liberties as Required Under Section 4012(b) of the Intelligence Reform and Terrorism Prevention Act of 2004*, Public Law 108-458, April 27, 2006.

Elhady-FBITSC-000340

19. (U) Upon conclusion of the TSC's review, TSC personnel will either accept or reject the nomination of an individual for inclusion into the TSDB and, if appropriate, inclusion on either the Selectee List or No Fly List. If a nomination is accepted, the TSC will create a TSDB record including only the "terrorist identifiers" (*i.e.*, name, date of birth, etc.) and export it to the appropriate screening agency data systems. Because the TSDB is a sensitive but unclassified system, it does not include the substantive derogatory information or classified national security information used to nominate the person to the watchlist. This allows for law enforcement screening officers, such as CBP officers at ports of entry and state and local law enforcement, to use the identifying information from the TSDB even though they may not possess Secret or Top Secret security clearances.

## **REVIEWS AND AUDITS**

20. (U) To uphold the Presidential directive to maintain "thorough, accurate and current" information within the TSDB, *see* HSPD-6, the TSDB is subject to rigorous and ongoing quality control measures to ensure not only that nominations continue to satisfy the applicable criteria for inclusion; but also that the information offered in support of the nomination is reliable and up to do date, and that the appropriate procedures are followed in the course of evaluating, processing and maintaining that information. These quality control measures include regular reviews and audits by both the nominating agency, as required by the interagency approved Watchlisting Guidance policies and procedures, and by TSC to ensure that each nomination meets the appropriate criteria for inclusion in the TSDB and on any appropriate subset list. This ensures the accuracy of the

Elhady-FBITSC-000341

UNCLASSIFIED

information relied upon for placement in the TSDB, and provides a means to identify any changes to the information over time that could affect placement.

21. (U) As previously discussed, per interagency approved Watchlisting Guidance policies and procedures, a nominating agency is responsible for ensuring that its watchlist nominations satisfy the applicable criteria for inclusion, and that it has internal procedures in place to ensure that the nominations process is properly performed. In addition to those safeguards, nominating agencies are required by the Watchlisting Guidance to conduct periodic reviews of nominations of U.S. Persons[7] to the TSDB. Nominators are also required by the Watchlisting Guidance to have internal procedures that facilitate the prevention, identification and correction of any errors in information that is shared as part of the watchlisting process. These procedures include the review of retractions and/or corrections of information that may have been used to support a nomination. When retractions or new information becomes available, the nominators are required to promptly send a watchlist modification or deletion request, as appropriate. Finally, in cases where modification or deletion of a record relating to international terrorism is required, the nominating agency must promptly provide notice of any errors or outdated information to NCTC, unless there is an articulated reason why such notification could not be made immediately. NCTC in turn will process and transmit such corrections to TSC for appropriate action. For nominations relating to domestic terrorism, the FBI must follow applicable FBI procedures to request that a FBI-nominated TSDB record be modified or deleted.

---

[7] (U) "U.S. persons" here refers to a U.S. citizen or Lawful Permanent Resident (LPR).

UNCLASSFIED

Elhady-FBITSC-000342

22. (U) In cases relating to international terrorism, an additional level of review is completed by NCTC, which, as required by interagency approved Watchlisting Guidance policies and procedures, employs its own quality control processes to ensure that all standards and appropriate procedures have been employed, the data is accurate, and the presentation of the material is clear, concise, and complies with established definitions and conventions. NCTC also ensures that the information documented in TIDE and provided to the TSC is accurately transcribed and that a process for review and/or auditing of TIDE records has been established.

23. (U) Similarly, in cases relating to domestic terrorism, the TSC's Terrorist Review and Examination Unit ("TREX") performs an equivalent review process; TREX employs quality control processes to assure the currency, accuracy and thoroughness of FBI domestic terrorist watchlisting nominations.

24. (U) In all cases, the final level of review of nominations is conducted by the TSC, which has a critical role in providing quality control of watchlist data. TSC personnel, including (as applicable) SMEs, review nominations, evaluate whether the nominations meet watchlisting standards, and conduct, as appropriate, a review of underlying intelligence information before accepting or rejecting a nomination. TSC conducts this last level of review before any record is sent to various screening systems. As with NCTC and the nominating agencies, TSC has processes in place for the review and/or auditing of TSC nominations and TSC records.

25. (U) In addition to reviewing nominations as they are nominated to the TSDB, the TSC performs proactive and reactive quality assurance checks to ensure the data in the TSDB is current, accurate, and thorough. Examples of these quality assurance checks include,

Elhady-FBITSC-000343

but are not limited to, (a) at least a biannual review for all US Person records in the TSDB; (b) at least a biannual review for all US Persons on the Selectee List or No Fly List by a NFS SME; (c) a review of the available derogatory and biographic information for subjects in TSDB following a screening encounter to ensure appropriate watchlisting as well as an appropriate encounter response when applicable; and (d) regular audits of individual analyst work to ensure appropriate procedures and practices are being executed during the review of TSDB nominations.

26. (U) In sum, there are several mechanisms in place to ensure that watchlist placements are accurate and justified. Through multiple independent reviews, the nominating agencies, NCTC, and the TSC help to ensure the currency, accuracy, and thoroughness of information that is used to support nominations to the TSDB and the No Fly and Selectee Lists. The regular checks and audits of records listed in the TSDB help to ensure that all appropriate changes in status are reported to and promptly implemented by the TSC.

### REDRESS PROCESS

27. (U) The DHS Traveler Redress Inquiry Program (DHS TRIP) provides the public with a single point of contact for individuals who have inquiries or seek resolution regarding difficulties they experienced during travel screening at transportation hubs (such as airports and train stations) or during their inspection at a U.S. port of entry. DHS TRIP, which is available at http://www.dhs.gov/files/programs/gc_1169676919316.shtm, provides a means of redress for travelers who have, for example, been delayed or denied airline boarding, delayed or denied entry into or exit from the United States at a port of entry, or have been repeatedly referred for additional (secondary) screening at an airport.

Elhady-FBITSC-000344

**UNCLASSIFIED**

As part of the redress process, DHS TRIP invites the traveler to submit any information that may be relevant to the travel difficulties experienced.

28. (U) Since there are many reasons why a traveler may seek redress, DHS TRIP works with DHS component agencies, such as CBP, TSA and U.S. Immigration and Customs Enforcement, in addition to other government agencies, including the Department of State and the TSC, as appropriate, to make an accurate determination about the traveler's redress matter.

29. (U) The TSC supports DHS TRIP by helping to resolve complaints that appear to be related to data in the TSDB. This interagency redress process is described in the *Memorandum of Understanding on Terrorist Watchlist Redress Procedures*, which was executed on September 19, 2007, by the Secretaries of State, Treasury, Defense and Homeland Security, the Attorney General, the Director of the FBI, the Director of NCTC, the Director of the Central Intelligence Agency, the Director of National Intelligence, and the Director of the TSC.

30. (U) Even though approximately 98% of DHS TRIP complaints do not relate to the TSDB, when a traveler's inquiry may appear to concern data in the TSDB, the matter is referred to the TSC's Redress Unit, a separate section within the TSC that processes inquiries related to the use of TSDB data by screening agencies.[8] Upon receipt of a DHS TRIP complaint, the Redress Unit assigns the matter to a Redress Analyst to research and review the available information about the inquiry, including the information and documentation provided by the traveler, to determine (1) whether the traveler is an exact

---

[8] (U) The TSC does not accept redress inquiries directly from the public, nor does it respond directly to redress inquiries.

**UNCLASSFIED**

13

Elhady-FBITSC-000345

Case 1:16-cv-00375-AJT-MSN Document 387-1 Filed 02/09/19 Page 15 of 16 PageID# 15375
Case 1:16-cv-00375-AJT-JFA Document 158-7 Filed 12/14/17 Page 15 of 16 PageID# 1840

UNCLASSIFIED

match to an identity in the TSDB; and, if an exact match exists, (2) whether the identity should continue to be in the TSDB or whether the status should be changed (for example, from No Fly to Selectee).

31. (U) In cases where the traveler is an exact match to an identity in the TSDB, the TSC's Redress Unit will, upon request, provide copies of the complaint form and other relevant information to the nominating agency to assist in the resolution of the complaint. The Redress Unit will then work with the nominating agency to determine whether the traveler's current status in the TSDB is appropriate based on the most current, accurate, and thorough information available. The Redress Unit asks the nominating agency to provide updated information or analysis, and may ask the nominating agency for recommendations regarding maintaining the individual's watchlisting status.

32. (U) After reviewing the available information and considering any recommendation from the nominating agency, the TSC's Redress Unit will determine whether the record should remain in the TSDB, or have its TSDB status modified or removed, unless the legal authority to make such a determination resides, in whole or in part, with another government agency. In such cases, the Redress Unit will only prepare a recommendation for the decision-making agency and will implement any determination once made. When changes to a record's status are warranted, the Redress Unit will ensure such corrections are made, and verify that such modifications or removals were carried over to the various screening systems that receive TSDB data (*e.g.*, the Selectee and No Fly Lists).

Elhady-FBITSC-000346

33. (U) After the TSC's Redress Unit completes its review of the matter, it notifies DHS TRIP of the recommendation so DHS TRIP may send a determination letter to the traveler.

## PROCESS FOR U.S. PERSONS PROHIBITED FROM BOARDING FLIGHTS WHEN LOCATED ABROAD

34. (U) The TSC and the FBI, in coordination with the Department of State, DHS, TSA and CBP, developed policy on how to respond following an encounter with a U.S. Person who was prohibited from boarding a flight originating outside the continental United States that was bound for the United States, due to their possible inclusion on the No Fly List. The goal of the policy is to proactively and quickly resolve the travel issues of U.S. Persons located abroad who have been prohibited from boarding flights returning to the United States.

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of December, 2014 in Virginia.

_____
G. CLAYTON GRIGG
Deputy Director for Operations
Terrorist Screening Center