# Elhady Plaintiffs
# MSJ Exhibit 49

**UNCLASSIFIED**

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| AYMAN LATIF, et al., | Case 3:10-cv-00750-BR |
|---|---|
| _Plaintiffs,_ | |
| v. | Declaration of G. Clayton Grigg |
| ERIC H. HOLDER, JR., et al., | |
| _Defendants._ | |

## DECLARATION OF G. CLAYTON GRIGG

I, G. Clayton Grigg, hereby declare the following:

1.  (U) I am the Deputy Director for Operations of the Terrorist Screening Center ("TSC"). I
    became the Deputy Director for Operations at TSC in September 2013. I have been a
    Special Agent with the Federal Bureau of Investigation ("FBI") since 1997 and have
    served in a variety of criminal investigative, counterterrorism, and senior management
    positions.

2.  (U) The TSC is a multi-agency center that was created by the Attorney General pursuant
    to Homeland Security Presidential Directive ("HSPD")-6 on September 16, 2003. The
    TSC is administered by the FBI and receives support from, _inter alia_, the U.S.
    Department of Homeland Security ("DHS"), the Department of State ("DOS"), the
    Department of Justice, and the Office of the Director of National Intelligence. TSC is
    staffed by officials from multiple agencies, including FBI, DHS, DOS, Transportation
    Security Administration ("TSA"), and U.S. Customs and Border Protection ("CBP").

**UNCLASSFIED**

1

Elhady-FBITSC-000128

**UNCLASSIFIED**

3. (U) Each paragraph in this declaration is marked with a "U" because the information is unclassified.

4. (U) I make this declaration in support of the dispositive motions filed by the government in this case. The matters stated herein are based on my personal knowledge and my review and consideration of information available to me in my official capacity, including information furnished by TSC personnel, including FBI Special Agents, as well as other government agency employees or contract employees acting in the course of their official duties.

## (U) OVERVIEW OF U.S. TERROR WATCHLISTS

5. (U) Following the attacks of September 11, 2001, Congress and the President mandated that federal executive departments and agencies share terrorism information with those in the counterterrorism community responsible for protecting the homeland, such as CBP officers who conduct inspections at U.S. ports of entry, TSA personnel responsible for aviation security, and domestic law enforcement officers.

6. (U) Prior to the attacks of September 11, 2001, nine U.S. Government agencies maintained twelve different watchlists intended to accomplish a variety of purposes.[1] Two of those original lists, the No Fly and Selectee Lists, are used by the TSA to secure commercial air travel against the threat of terrorism.[2] Individuals on the No Fly List are prohibited from boarding a U.S. commercial aircraft or from flying into, out of, or over

---

[1] (U) See, Government Accountability Office, *Terrorist Watch Lists Should Be Consolidated to Promote Better Integration and Sharing*, GAO-03-322, April 2003.
[2] (U) 49 U.S.C. § 114(h)(3). *See also* 49 U.S.C. § 44903(j)(2)(A) (requiring TSA to use a sanctioned screening system to "evaluate all passengers before they board an aircraft" and to ensure that "individuals selected by the system and their carry-on and checked baggage are adequately screened.").

**UNCLASSFIED**

2

Elhady-FBITSC-000129

**UNCLASSIFIED**

United States airspace.[3]  Individuals on the Selectee List must undergo enhanced security

screening before entering the secure area of an airport or boarding an aircraft.[4]

7.  (U) The Terrorist Screening Database ("TSDB") was created by the TSC pursuant to

HSPD-6 to consolidate the U.S. Government's terrorist watchlists into a single database,

and to provide for the appropriate and lawful use of terrorist information in screening

processes.  To accomplish this, the TSDB contains no substantive derogatory intelligence

information or classified national security information.  Instead, it generally contains only

sensitive but unclassified terrorist identity information consisting of biographic

identifying information such as name or date of birth, or biometric information such as

photographs, iris scans, and fingerprints.  The identity of persons in the TSDB is treated

as unclassified "For Official Use Only" so that the database can be shared with screening

and law enforcement officers throughout the Federal Government who may lack the

necessary clearance for access to classified information.  The TSDB nonetheless contains

sensitive national security and law enforcement information concerning the identity of

known or suspected terrorists.  The National Counterterrorism Center ("NCTC")'s

Terrorist Identities Datamart Environment ("TIDE") database contains classified national

security information about particular individuals, including those in the TSDB.[5]

8.  (U) The TSDB is continuously updated and receives terrorist identity information for

possible inclusion from two sources: (1) the NCTC, which provides information about

known and suspected international terrorists; and (2) the FBI, which provides information

about known and suspected purely domestic terrorists.

---

[3] (U) *See* 49 C.F.R. § 1560.105.
[4] (U) *See Id.*
[5] (U) As a general matter, identity information on the No Fly and Selectee Lists, along with the watchlist status of an individual on either list, is treated as Sensitive Security Information (SSI).  *See* 49 CFR 1520.5(b)(9)(ii).

**UNCLASSFIED**

Elhady-FBITSC-000130

UNCLASSIFIED

9. (U) The NCTC maintains substantive derogatory or intelligence information concerning international terrorists in TIDE. Pursuant to Section 1021 of the Intelligence Reform and Terrorism Prevention Act of 2004, the NCTC serves as the primary organization in the U.S. Government for analyzing and integrating all intelligence possessed or acquired by the U.S. Government pertaining to terrorism and counterterrorism, excepting purely domestic counterterrorism information.[6] The NCTC also ensures that appropriate agencies have access to and receive intelligence needed to accomplish their assigned missions and serves as the central and shared knowledge bank on known and suspected terrorists and international terror groups, as well as their goals, strategies, capabilities, and networks of contacts and support. Because NCTC's mission focuses on international counterterrorism information, the FBI maintains the substantive derogatory information related to known and suspected purely domestic terrorists included in the TSDB.

10. (U) The TSC, through the TSDB, provides terrorist identity information to various law enforcement and screening agencies and entities through the regular export of updated subsets of data in accordance with each receiving agency's authorities and regulations. For example, the No Fly and Selectee Lists are maintained as subsets within the TSDB, and are provided to TSA for aviation security screening purposes.

11. (U) The TSDB is supported by a 24 hours a day/7 days a week/365 days a year operations center and is continuously updated with information provided from nominating agencies, as well as screeners following an encounter with a known or suspected terrorist.

---

[6] (U) Because of the codification of NCTC in the Intelligence Reform and Terrorism Prevention Act (IRTPA) of 2004, Executive Order 13354, which originally created NCTC, was revoked by amendments to Executive Order 12333 in July 2008.

UNCLASSFIED

Elhady-FBITSC-000131

**UNCLASSIFIED**

## (U) NOMINATIONS TO AND INCLUSION IN THE TSDB AND NO FLY AND SELECTEE LISTS SUBSETS

12. (U) Terrorist identity information is added to and removed from the TSDB (and the subset No Fly and Selectee Lists) through an ongoing nomination and review process. As previously stated, the TSDB contains both international and domestic terrorist identity information. In general, nominations of known and suspected international terrorists are submitted by federal departments and agencies (including the FBI) for inclusion in TIDE, and are processed through NCTC. Since the FBI is responsible for the nominations of known and suspected purely domestic terrorists, those nominations are submitted directly to the TSC.

13. (U) The FBI submits its TSDB nominations through the Terrorist Records Examination Unit ("TREX") within the TSC. TREX coordinates the transmission of domestic terrorist nominations to the TSDB and international terrorist nominations to NCTC for inclusion in TIDE.

14. (U) Nominations to the TSDB are accomplished by completing the relevant electronic forms that provide a summary of the underlying substantive information that demonstrates that a person, regardless of citizenship, meets the criteria and standard for inclusion in the TSDB. TSC refers to this underlying substantive information as "derogatory information." As part of a TSDB nomination, departments and agencies can recommend that an individual be added to the No Fly or Selectee Lists, so long as there is sufficient derogatory information provided to satisfy the heightened requirements for inclusion.

**UNCLASSFIED**

Elhady-FBITSC-000132

**UNCLASSIFIED**

15. (U) Inclusion in the TSDB is not a determination that someone has committed a crime.

Rather, it is an assessment based on analysis of available intelligence and investigative

information that the person meets the applicable criteria for inclusion. Interagency-

approved policies and procedures (the "Watchlisting Guidance"),[7] are used to conduct

this assessment. With limited exceptions,[8] nominations to the TSDB must satisfy

minimum identifying criteria to allow screeners to be able to discern a match, and

minimum substantive derogatory criteria to establish a reasonable suspicion that the

individual is a known[9] or suspected[10] terrorist. To meet this standard, the nominator must

rely upon "articulable" intelligence or information which, based on the totality of the

circumstances and taken together with rational inferences from those facts, creates a

reasonable suspicion that the individual is known or suspected to be or has been

knowingly engaged in conduct constituting, in preparation of, in aid of, or related to

terrorism and/or terrorist activities. Mere guesses or "hunches," or the reporting of

suspicious activity alone, are not sufficient to establish reasonable suspicion.

Additionally, nominations must not be based solely on the individual's race, ethnicity,

national origin, religious affiliation, or activities protected by the First Amendment, such

---

[7] (U) The Watchlisting Guidance reflects an extensive and comprehensive effort by the watchlisting and screening community to establish and describe a standardized process by clarifying and elaborating on the substantive criteria utilized and providing analysts with specific operational and technical guidance for use in the nomination, review, and redress process.

[8] (U) Limited exceptions to the reasonable suspicion requirement exist for the sole purpose of supporting immigration and border screening processes by the Department of State and the Department of Homeland Security.

[9] (U) A known terrorist is an individual whom the U.S. Government knows is engaged, has been engaged, or who intends to engage in terrorism and/or terrorist activity, including an individual (a) who has been charged, arrested, indicted, or convicted of a crime related to terrorism by U.S. Government or foreign authorities; or (b) identified as a terrorist or member of a designated foreign terrorist organization pursuant to statute, Executive Order or international legal obligation pursuant to a United Nations Security Council Resolution.

[10] (U) A suspected terrorist is an individual who is reasonably suspected to be, or have been, engaged in conduct constituting, in preparation for, in aid of, or related to terrorism and/or terrorist activities based on an articulable and reasonable suspicion.

**UNCLASSFIED**

Elhady-FBITSC-000133

**UNCLASSIFIED**

as free speech, the exercise of religion, freedom of the press, freedom of peaceful assembly, and petitioning the government for redress of grievances.

16. (U) Nominations that recommend an individual also be included on either the No Fly or Selectee List are evaluated by the TSC to determine if the derogatory information provided by the nominating agency establishes a reasonable suspicion that the individual meets additional heightened derogatory criteria that goes above and beyond the criteria required for inclusion in the broader TSDB.

17. (U) Any individual, regardless of citizenship, may be included on the No Fly List when the TSC determines the individual meets at least one of the following criteria: the individual poses (1) a threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) or domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to an aircraft (including a threat of piracy, or a threat to airline, passenger, or civil aviation security); (2) a threat of committing an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to the homeland; (3) a threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) against any U.S. Government facility abroad and associated or supporting personnel, including U.S. embassies, consulates and missions, military installations (as defined by 10 U.S.C. 2801(c)(4)), U.S. ships, U.S. aircraft, or other auxiliary craft owned or leased by the U.S. Government; or, (4) a threat of engaging in or conducting a violent act of terrorism and who is operationally capable of doing so.

18. (U) Upon receiving a TSDB nomination, TSC personnel review it to determine: (a) whether the biographic information associated with the nomination is sufficient to support the screening processes of the receiving screening entities (*e.g.*, TSA, CBP), that

**UNCLASSFIED**

7

Elhady-FBITSC-000134

**UNCLASSIFIED**

use the data to match to or distinguish an individual being screened from a known or suspected terrorist in the TSDB; and (b) whether the nomination is supported by derogatory information that meets the criteria for inclusion in the TSDB, as well as any additional heightened derogatory requirements for nominations to the No Fly or Selectee Lists.

19. (U) Before accepting a new nomination into the TSDB, TSC personnel use a multi-faceted review process that involves coordination with NCTC and the nominating agency, as necessary, to verify that the nomination meets the criteria for inclusion and is not based on impermissible grounds. No Fly-Selectee ("NFS") subject matter experts ("SMEs") at the TSC are used to review nominations for possible inclusion on the No Fly or Selectee Lists. Employees assigned to the TSC from TSA, FBI, and DHS serve as NFS SMEs, and are required to undergo specific trainings and coursework, and demonstrate proficiency before being designated as No Fly-Selectee subject matter experts.

20. (U) At the conclusion of the TSC's review, TSC personnel will either accept or reject the nomination for inclusion into the TSDB and, if appropriate, inclusion on either the Selectee List or No Fly List. If a nomination is accepted, the TSC will create a TSDB record including only the "terrorist identifiers" (*i.e.*, name, date of birth, etc.) and mark it for export to the appropriate screening agency data systems. As mentioned above, because the TSDB is a sensitive but unclassified system, it does not contain the substantive derogatory information or classified national security information used to nominate the person. Maintaining the TSDB as a sensitive but unclassified system allows for law enforcement screening officers, such as CBP officers at ports of entry and state

**UNCLASSFIED**

Elhady-FBITSC-000135

Case 3:10-cv-00750-BR   Document 253   Filed 05/28/15   Page 9 of 20
Case 1:16-cv-00375-AJT-JFA   Document 307-19   Filed 03/12/19   Page 10 of 21 PageID#
15401
## UNCLASSIFIED

and local law enforcement, to use the identifying information from the TSDB even though they may not possess Secret or Top Secret security clearances.

21. (U) Although an effect of being included on the No Fly List is denial of boarding on a commercial aircraft, the List serves security objectives beyond safeguarding civil aviation. In keeping with Congress's mandate to identify travelers who may pose "a threat to civil aviation or national security," 49 U.S.C. § 114(h)(1), the No Fly List criteria focus on the threat of committing violent acts of terrorism not only to commercial aircraft, but also to potential targets within and outside of the United States. A known or suspected terrorist may be a danger to national security even if he has no intention of detonating a bomb on or hijacking a plane. By extending the No Fly criteria to known or suspected terrorists who pose a threat of committing a violent act of terrorism with respect to the homeland or with respect to U.S. facilities or personnel overseas, the Government can deny boarding to travelers who pose threats to key national security interests outside the civil aviation sector. Similarly, by extending the criteria to known or suspected terrorists who are "operationally capable" of engaging in a violent act of terrorism, the U.S. Government can ensure that known or suspected terrorists who pose a threat of committing a violent act of terrorism are not permitted to fly simply by virtue the absence of information linking them to a particular target.

## (U) REVIEWS AND AUDITS

22. (U) To carry out the Presidential directive to maintain "thorough, accurate and current" information within the TSDB, *see* HSPD-6, the database is subjected to rigorous and ongoing quality control measures to seek to ensure not only that nominations continue to

Elhady-FBITSC-000136

Case 3:10-cv-00750-BR   Document 253   Filed 05/28/15   Page 10 of 20
Case 1:16-cv-00375-AJT-JFA   Document 307-19   Filed 03/12/19   Page 11 of 21 PageID#
15408
UNCLASSIFIED

satisfy the applicable criteria for inclusion, but also that the derogatory information offered in support of the nomination is accurate, reliable, and up-to-date. This guarantees that the appropriate procedures are followed in the course of evaluating, processing and maintaining the information maintained in the TSDB. These quality control measures, as required by the interagency-approved Watchlisting Guidance policies and procedures, include regular reviews and audits by both the nominating agency, NCTC, and TSC to verify that each nomination meets the appropriate criteria for inclusion in the TSDB and any appropriate subset list and to provide a means to identify any changes to the information over time that could affect inclusion.

23. (U) As previously discussed, under interagency approved Watchlisting Guidance policies and procedures, a nominating agency is responsible for verifying that its watchlist nominations satisfy the applicable criteria for inclusion, and that it has established internal procedures to confirm that the nominations process is properly performed. In addition to those safeguards, nominating agencies are required by the Watchlisting Guidance to conduct periodic reviews of nominations of U.S. Persons[11] to the TSDB and to have internal procedures that facilitate the prevention, identification, and correction of any errors in information that is shared as part of the watchlisting process. These procedures include the review of retractions or corrections of information that may have been used to support a nomination.

24. (U) When retractions or new information becomes available, the nominating agency is required promptly to send a TSDB modification or deletion request, as appropriate. In cases where modification or deletion of a record relating to international terrorism is

---

[11] (U) "U.S. Persons" here refers to a U.S. citizen or Lawful Permanent Resident (LPR).

Elhady-FBITSC-000137

Case 3:10-cv-00750-BR    Document 253    Filed 05/28/15    Page 11 of 20
Case 1:16-cv-00375-AJT-JFA    Document 307-19    Filed 03/12/19    Page 12 of 21    PageID#
15409
UNCLASSIFIED

required, the nominating agency must promptly provide notice of any errors or outdated information to NCTC, unless there is an articulated reason why such notification could not be made immediately.  NCTC processes and transmits such corrections to TSC for appropriate action.  For actions relating to domestic terrorism, the FBI is also required to request that a FBI-nominated TSDB record be modified or deleted.

25. (U) Upon receipt of records relating to international terrorism, NCTC completes an additional level of review, as required by interagency approved Watchlisting Guidance policies and procedures, by employing its own quality control processes to verify that all standards and appropriate procedures have been employed, the data is accurate, and the presentation of the material is clear, concise, and complies with established definitions and conventions.  NCTC also confirms that the information is accurately documented in TIDE and provided to the TSC.  Lastly, NCTC established a process for the review and/or auditing of TIDE records.

26. (U) Similarly, TREX performs equivalent review and quality control and auditing processes to help maintain the currency, accuracy and thoroughness of TSDB nominations submitted by the FBI.

27. (U) For all nominations, the final level of review is conducted by the TSC, which has a critical role in providing quality control of TSDB data.  TSC personnel, including the NFS SMEs, review nominations, evaluate whether the nominations meet all applicable standards, and conduct, as appropriate, a review of underlying derogatory information before accepting or rejecting a nomination or exporting a record to the various screening systems.  Analysts are trained to use the operational and technical instructions provided in the Watchlisting Guidance in considering and applying the No Fly criteria to the

Elhady-FBITSC-000138

Case 3:10-cv-00750-BR    Document 253    Filed 05/28/15    Page 12 of 20
Case 1:16-cv-00375-AJT-JFA    Document 307-19    Filed 03/12/19    Page 13 of 21 PageID#
15410
UNCLASSIFIED

specific circumstances that do or do not support a No Fly determination in a particular

case. The focus at all times is on information that reasonably demonstrates that the

particular criterion for the No Fly List is met in each case.

28. (U) In addition to reviewing nominations as they are submitted to the TSDB, the TSC

also performs proactive and reactive quality assurance audits to confirm the data in the

TSDB is thorough, accurate, and current. Examples of these quality assurance checks

include, but are not limited to: (a) at least a biannual review of all U.S. Person records in

the TSDB; (b) at least a biannual review of all U.S. Person records on the Selectee List or

No Fly List by a NFS SME; (c) a review of the available derogatory and biographic

information for subjects in TSDB following a screening encounter to verify the records

still meet standards for inclusion and to determine an appropriate encounter response,

when applicable; and (d) regular audits of individual analyst work to confirm appropriate

procedures and practices are being executed during the review of TSDB records.

29. (U) The multiple independent reviews conducted by the nominating agencies, NCTC, and

TSC described above seek to ensure the thoroughness, accuracy, and currency of the

terrorist identity and derogatory information used to support the law enforcement and

screening functions by the various agencies that receive such data. The regular

assessments and audits of records in the TSDB and its export lists, such as the No Fly and

Selectee Lists, further confirm that all appropriate modifications and removals are

promptly reported to and implemented by the TSC.

UNCLASSFIED

Elhady-FBITSC-000139

Case 3:10-cv-00750-BR   Document 253   Filed 05/28/15   Page 13 of 20
Case 1:16-cv-00375-AJT-JFA   Document 307-19   Filed 03/12/19   Page 14 of 21 PageID#
15441

**UNCLASSIFIED**

## (U) REDRESS PROCESS

30. (U) The DHS Traveler Redress Inquiry Program ("DHS TRIP") provides the public with
a single point of contact for individuals who have inquiries or seek resolution regarding
difficulties they experienced during travel screening at transportation hubs (such as
airports and train stations) or during their inspection at a U.S. port of entry.  DHS TRIP
provides a means of seeking redress for travelers who have, for example, been delayed or
denied airline boarding, delayed or denied entry into or exit from the United States at a
port of entry, or have been repeatedly referred for additional (secondary) screening at an
airport.  As part of the redress process, DHS TRIP invites the traveler to submit any
information that may be relevant to the travel difficulties experienced.

31. (U) Since there are many reasons why a traveler may seek redress, DHS TRIP works with
DHS component agencies, such as CBP, TSA, and U.S. Immigration and Customs
Enforcement, in addition to other government agencies such as the Department of State,
FBI, and the TSC, as appropriate, to make an accurate determination about the traveler's
redress matter.

32. (U) The TSC supports DHS TRIP at this stage by helping to resolve inquiries that appear
to be related to data in the TSDB.  This interagency redress process is described in the
*Memorandum of Understanding on Terrorist Watchlist Redress Procedures* (Exhibit A),
which was executed in September 2007, by the Secretaries of State, Treasury, Defense
and Homeland Security, the Attorney General, the Director of the FBI, the Director of
NCTC, the Director of the Central Intelligence Agency, the Director of National
Intelligence, and the Director of the TSC.

**UNCLASSFIED**

13

Elhady-FBITSC-000140

Case 3:10-cv-00750-BR   Document 253   Filed 05/28/15   Page 14 of 20
Case 1:16-cv-00375-AJT-JFA   Document 307-19   Filed 03/12/19   Page 15 of 21 PageID#
15412

**UNCLASSIFIED**

33. (U) Even though approximately 98% of DHS TRIP inquiries do not relate to the TSDB,

when a traveler's inquiry may appear to concern data in the TSDB, DHS TRIP refers the

matter to the TSC's Redress Office, a separate component within the TSC that processes

inquiries related to the use of TSDB data by screening agencies.[12]  Upon receipt of a

DHS TRIP inquiry, the Redress Office assigns the matter to a Redress Analyst to

research and review the available information about the traveler, including the

information and documentation provided by the traveler, to determine: (1) whether the

traveler is an exact match to an identity in the TSDB; and, if an exact match exists, and

(2) whether the identity in the TSDB continues to satisfy the criteria for inclusion or

should be removed, or whether any modification of the identity's record should occur (for

example, whether the identity should be removed from No Fly List and placed instead on

the Selectee List).

34. (U) In cases in which a traveler seeking redress through DHS TRIP is an exact match to

an identity in the TSDB, the TSC's Redress Office will contact NCTC and the

nominating agency to assist in the resolution of the complaint and provide the

information submitted by the traveler, along with any other relevant information.  The

Redress Office will then work with the nominating agency and NCTC to determine

whether the traveler should continue to remain in the TSDB by asking for updated

intelligence, information or analysis, and a recommendation about maintaining the

traveler in the TSDB or on the No Fly or Selectee List, if applicable.

---

[12] (U) The TSC does not accept redress inquiries directly from the public, nor does it respond directly to redress inquiries.

**UNCLASSFIED**

Elhady-FBITSC-000141

Case 3:10-cv-00750-BR    Document 253    Filed 05/28/15    Page 15 of 20
Case 1:16-cv-00375-AJT-JFA   Document 307-19   Filed 03/12/19   Page 16 of 21 PageID#
15410
**UNCLASSIFIED**

35. (U) After reviewing the available derogatory information and considering any
recommendation from the nominating agency, the TSC's Redress Office will determine
whether the traveler's record should remain in the TSDB, or be modified or removed,
unless the legal authority to make such a determination resides, in whole or in part, with
another government agency. In such cases, the Redress Office will only prepare a
recommendation for the decision-making agency and will implement any determination
once made. When changes to a record's status are warranted, the Redress Office will
ensure such corrections are made, and verify that such modifications or removals were
carried over to the various screening systems that receive TSDB data (*e.g.*, TSA's Secure
Flight program, which implements the Selectee and No Fly Lists). After the TSC's
Redress Office completes its review of the matter, it notifies DHS TRIP of the outcome
of its review.

## (U) REDRESS PROCEDURES FOR U.S. PERSONS DENIED BOARDING BECAUSE THEY WERE ON THE NO FLY LIST

36. (U) Pursuant to prior U.S. Government policy, DHS TRIP determination letters sent to a
U.S. Person who remained on the No Fly List following review by the TSC Redress
Office would not disclose to the traveler whether or not he or she was included on the No
Fly List. In order to improve the redress process, the U.S. Government has revised the
DHS TRIP procedures for U.S. Persons who make redress inquiries regarding denials of
aircraft boarding.

37. (U) Under the new redress procedures, a U.S. Person who (a) purchases an airline ticket
for a flight to, from, or over the United States; (b) is denied boarding on that flight; (c)
subsequently applies for redress through DHS TRIP about the denial of boarding; (d)

**UNCLASSFIED**

15

Elhady-FBITSC-000142

Case 3:10-cv-00750-BR   Document 253   Filed 05/28/15   Page 16 of 20
Case 1:16-cv-00375-AJT-JFA   Document 307-19   Filed 03/12/19   Page 17 of 21 PageID#
15414
UNCLASSIFIED

provides all information and documentation required by DHS TRIP; and (e) is

determined to be appropriately included on the No Fly List following the TSC Redress

Office's review of the redress inquiry, will receive a letter stating that he or she is on the

No Fly List and providing the option to receive or submit additional information.

38. (U)  If a U.S. Person who received a letter stating that he or she is on the No Fly List

requests additional information, DHS TRIP will provide a second, more detailed

response.  This second letter will identify the specific criteria or criterion under which the

individual has been placed on the No Fly List and, consistent with the Court's June 24,

2014 decision in *Latif v. Holder*, No. 10-750 (D. Or.), will include an unclassified

summary of information supporting the individual's No Fly List status.  The amount and

type of information provided will vary on a case-by-case basis, depending on the facts

and circumstances.  In some circumstances, an unclassified summary may not be

provided when the national security and law enforcement interests at stake are taken into

account.

39. (U) This second letter provides the option to seek additional review of status on the No

Fly List and invites the submission of any information believed to be relevant to

determining whether continued status on the List is appropriate.  Upon DHS TRIP's

receipt of a U.S. Person's timely response to the second letter, DHS TRIP forwards the

response and any enclosed information to the TSC Redress Office.  As discussed further

below, after reviewing the materials forwarded by DHS TRIP and other available

information, TSC provides DHS TRIP with a recommendation to the TSA Administrator

as to whether the person should remain on the No Fly List and the reasons for that

recommendation.  The TSA Administrator will then review the recommendation from

Elhady-FBITSC-000143

Case 3:10-cv-00750-BR    Document 253    Filed 05/28/15    Page 17 of 20
Case 1:16-cv-00375-AJT-JFA    Document 307-19    Filed 03/12/19    Page 18 of 21 PageID#
15446
**UNCLASSIFIED**

TSC and will either issue a final order maintaining the person on the No Fly List or

removing the person from the List, or remand the case back to TSC with a request for

additional information or clarification. If a final order is issued, it will state the basis for

the TSA Administrator's decision (to the extent feasible in light of the national security

and law enforcement interests at stake) and will notify the person of the ability to seek

judicial review under 49 U.S.C. § 46110 or as otherwise provided by law.

40. (U) As the foregoing shows, the TSA Administrator makes the final decision as to

whether a U.S. Person who has filed a DHS TRIP redress inquiry will be maintained on

the No Fly List, and TSC remains involved at each stage of the new redress process.

Once DHS TRIP receives a request for additional information from a U.S. Person who

has been notified of his or her inclusion on the No Fly List, DHS TRIP informs TSC's

Redress Office, which in turn advises NCTC and the relevant nominating agencies that a

redress applicant has requested additional information concerning his or her inclusion on

the No Fly List. The Redress Office will request that the nominating agency prepare an

unclassified summary of information supporting the person's inclusion on the No Fly

List, to the extent providing such a summary is consistent with national security and law

enforcement interests.

41. (U) As noted, the amount and type of information that can be provided will vary from

case to case. Where possible, the nominating agency will prepare an unclassified

summary of information supporting the person's No Fly List status. In other cases, it

may not be possible to provide an unclassified summary without compromising national

security or law enforcement interests. In all cases, however, the nominating agency must

convey to the Redress Office the reasons that can be relied upon to support inclusion on

**UNCLASSFIED**

17

Case 3:10-cv-00750-BR Document 253 Filed 05/28/15 Page 18 of 20
Case 1:16-cv-00375-AJT-JFA Document 307-19 Filed 03/12/19 Page 19 of 21 PageID#
154416
**UNCLASSIFIED**

the No Fly List. The nominating agency also must provide the Redress Office with the

national security and law enforcement reasons for its determination regarding the extent

to which information supporting the No Fly List listing can be disclosed.

42. (U) The TSC Redress Office will provide DHS TRIP with the specific criterion or

criteria under which the U.S. Person is included on the No Fly List, and, if applicable, the

unclassified summary of information supporting the inclusion provided by the

nominating agency and approved for disclosure to the person. DHS TRIP will include

this information in the second response letter to the person. The letter will invite the

applicant to submit additional information he or she wishes the Government to consider

in connection with any further administrative appeal.

43. (U) Upon receipt of an individual's timely response to the second letter, DHS TRIP will

forward the response to the TSC Redress Office for additional review. The TSC Redress

Office will follow the procedures outlined above to again request that the nominating

agency conduct a review of an applicant's submission and all other available information.

Following completion of this additional review, the TSC Principal Deputy Director

("PDD") will provide DHS TRIP with a recommendation memorandum to the TSA

Administrator as to whether the individual should be removed from or maintained on the

No Fly List and the reasons for that recommendation. The memorandum provided to the

TSA Administrator will include the derogatory information supporting the PDD's

recommendation, which may include classified information or law enforcement sensitive

information.

44. (U) The TSA Administrator will review the PDD's recommendation memorandum and

any other relevant information and will either issue a final order, pursuant to 49 U.S.C. §

**UNCLASSFIED**

Elhady-FBITSC-000145

Case 3:10-cv-00750-BR  Document 253  Filed 05/28/15  Page 19 of 20
Case 1:16-cv-00375-AJT-JFA  Document 307-19  Filed 03/12/19  Page 20 of 21 PageID#
1557
UNCLASSIFIED

46110, maintaining the U.S. Person on the No Fly List or removing him or her from the

No Fly List, or remand the case back to the TSC with a request for additional information

or clarification.

45. (U)  Upon issuance of a final order by the TSA Administrator, DHS TRIP will provide

TSC and the U.S. Person with a copy of the order.  The final order will state whether or

not the U.S. Person has been maintained on or removed from the No Fly List.  If the final

order removes the person from the No Fly List, the TSC Redress Office will ensure that

all necessary updates to the TSDB are made, and that those updates are carried over to

the various screening systems that receive TSDB data.  If the final order maintains the

person on the No Fly List, the order will inform the person that he or she may seek

judicial review pursuant to 49 U.S.C. § 46110 or as otherwise provided by law.

46. (U)  The Plaintiffs in this case who remained on the No Fly List as of November 2014

were provided with the substance of the revised DHS TRIP procedures during late 2014

and early 2015.  The exact procedures applied to Plaintiffs differed from what is

described above in one respect.  To expeditiously comply with this Court's order, DHS

TRIP combined the first and second letters referenced above into one letter that informed

each Plaintiff of his status on the No Fly List, the specific criterion under which he was

placed, and, to the extent possible, the unclassified reasons for his inclusion on the List.

The letter also informed each Plaintiff of his opportunity to respond and seek additional

review.  Each Plaintiff then submitted a response providing the reasons supporting his

belief that his inclusion on the No Fly List was in error.

47. (U)  Upon receipt of these response letters from DHS TRIP, the TSC Redress Office

reviewed the submissions as well as other available information and considered the

**UNCLASSFIED**

Elhady-FBITSC-000146

Case 3:10-cv-00750-BR   Document 253   Filed 05/28/15   Page 20 of 20
Case 1:16-cv-00375-AJT-JFA   Document 307-19   Filed 03/12/19   Page 21 of 21 PageID#
UNCLASSIFIED

reasons offered by each Plaintiff in support of his belief that his inclusion on the No Fly List was in error. After careful consideration, and in coordination with relevant federal agencies, the TSC Redress Office determined that each Plaintiff should remain on the No Fly List and provided DHS TRIP with recommendation memoranda from the PDD to the TSA Administrator. Upon reviewing these recommendations, the TSA Administrator determined in each case that maintaining the Plaintiffs on the No Fly List was appropriate. The TSA Administrator accordingly issued final orders stating that each Plaintiff remained on the No Fly List.

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of May, 2015 in Washington, D.C.

G. CLAYTON GRIGG
Deputy Director for Operations
Terrorist Screening Center

**UNCLASSFIED**

20

Elhady-FBITSC-000147