# Elhady Plaintiffs
# MSJ Exhibit 62

**OVERVIEW OF THE U.S. GOVERNMENT'S WATCHLISTING PROCESS AND PROCEDURES**
AS OF: January 2018

The U.S. Government (USG) is committed to protecting the United States from terrorist threats and attacks and seeks to do this in a manner that protects the freedoms, privacy and civil rights and liberties of U.S. persons and other individuals with rights under U.S. law.[1] Following the attacks of September 11, 2001, to further protect the homeland, the President through Homeland Security Presidential Directive-6 (HSPD-6), September 16, 2003, directed the USG to consolidate its approach to terrorism screening and watchlisting, facilitate information sharing, and called for the protection of privacy and civil liberties while managing the process. Thereafter, Congress likewise mandated greater sharing of terrorist information among federal departments and agencies, while still protecting privacy and civil liberties.[2]

As part of this effort, to facilitate information sharing, the USG integrated terrorist identity information from federal departments and agencies into a single database – the Terrorist Screening Database (TSDB) - for use by various government agencies in support of their screening and vetting activities. The Terrorist Screening Center (TSC) was established to manage the TSDB. The TSC was created by the Attorney General, Secretaries of Homeland Security and State, and the Director of Central Intelligence pursuant to Homeland Security Presidential Directive-6 (HSPD-6) of September 16, 2003.

The USG recognizes the importance of transparency and the need for a general understanding of its approach to terrorism screening and watchlisting. This includes the process for nominating someone to the TSDB, ensuring records are accurate and updated, and how agencies use the information for screening and vetting. This process also includes appropriate mechanisms to ensure timely and fair review of redress requests to correct erroneous information.

The overall watchlisting processes and procedures are the subject of continual internal reviews by agency officials charged with ensuring overall fairness and effectiveness, a process that includes review by legal counsel and agency privacy and civil liberties officers. In addition to these internal agency reviews, the overall watchlisting processes and procedures are also evaluated by external authorities on a regular basis, to include the Offices of Inspectors General, the Government Accountability Office, Congress, and independent bodies, such as the Privacy and Civil Liberties Oversight Board.

This paper provides an overview of the terrorist watchlisting process.

---

[1] Unless noted, a U.S. person is defined in Executive Order 12333.
[2] Intelligence Reform and Terrorism Prevention Act, Pub. L. No. 108-458 § 1016 (2004) (codified at 6 U.S.C. § 485).

**BACKGROUND**

The TSC is a multi-agency center that consolidates the USG terrorist watchlists into a single database and provides for the appropriate and lawful use of terrorist information in screening and vetting processes.  Prior to the creation of the TSC in 2003, nine USG agencies maintained twelve different terrorist watchlists.

The TSC is administered by the Federal Bureau of Investigation ("FBI") in coordination with:

- ➢ The Department of Homeland Security ("DHS"),
- ➢ The Department of State ("State"),
- ➢ The Department of Justice ("DOJ"), and
- ➢ The Office of the Director of National Intelligence ("ODNI").

**TSDB Overview**

The TSDB, commonly referred to as the Terrorist Watchlist, contains both biographic and biometric identifying information (e.g., name, date of birth, photographs, iris scans, and/or fingerprints) of known and suspected terrorists.  The TSDB <u>does not contain classified national security information</u>.  TSDB information is "For Official Use Only//Law Enforcement Sensitive//Sensitive Security Information," which means the information is protected from disclosure and is accessible only to persons who have a "need to know" such as federal law enforcement officials for their screening and vetting activities.

The TSDB includes subset categories of known or suspected terrorists who may be subject to additional security screening before being permitted to board an aircraft or who are prohibited from boarding flights on U.S. carriers as well as flights into, out of, over or within U.S. airspace.  These categories, commonly referred to as the Selectee and No Fly Lists are used by the Transportation Security Administration (TSA) to secure commercial air travel against the threat of terrorism.  It is important to note that individuals may be subjected to additional security screening for reasons other than a match against a watchlist record.  For example, passengers may be selected for random screening measures during the security screening process.

As a result of the dynamic intelligence environment, regular reviews of the data, and the redress process, the TSDB does change.  The TSDB is continuously reviewed and updated.  Identities are added, have their status changed or are removed.  Therefore, the USG does not regularly release the numbers of identities on the TSDB, or in its subset lists.  There are no quotas or numerical goals.  The vast majority <u>of the identities in the TSDB are foreign nationals who are not located in the U.S. and have no known nexus to the United States.</u>

**WATCHLIST AND SCREENING**

**Nominations to the TSDB**

The procedure for submitting information about individuals for inclusion into the TSDB is referred to as the nomination process. Inclusion on the watchlist results from an assessment based on analysis of available intelligence and investigative information that the individual meets the applicable criteria for inclusion on the watchlist. The standard for inclusion in the TSDB is generally one of **reasonable suspicion** which is defined later in this document.

Nominations to the TSDB are made by USG agencies and foreign partners based on credible information from:

- law enforcement,
- immigration records,
- homeland security and intelligence communities,
- State through U.S. embassies and consulates abroad, and
- foreign partners with which the USG has arrangements to share terrorist screening information.

Nominating agencies provide identities which meet the standard for inclusion in the TSDB to:

- the National Counterterrorism Center (NCTC), for identities with a nexus to international terrorism; and
- the Federal Bureau of Investigation (FBI), for identities with a nexus to domestic terrorism.

Before an individual is added to the TSDB, the nomination undergoes a multi-step review process at the nominating agency, at the NCTC or FBI (as appropriate), and then again at the TSC to ensure compliance with interagency standards for inclusion. If the nomination has an international nexus to terrorism it is reviewed by NCTC, otherwise it is reviewed by the FBI. The NCTC maintains classified national security information concerning international terrorists within its Terrorist Identities Datamart Environment ("TIDE"). Pursuant to Section 1021 of the Intelligence Reform and Terrorism Prevention Act of 2004, the NCTC serves as the primary organization in the USG for analyzing and integrating all intelligence possessed or acquired by the USG pertaining to terrorism and counterterrorism, excepting intelligence pertaining exclusively to domestic terrorists and domestic counterterrorism.

To include a known or suspected terrorist nomination in the TSDB, the nomination must include enough identifying information to allow screeners to be able to determine whether the individual they are screening is a match to a record in the TSDB, and enough information to establish a reasonable suspicion that the individual is a known or suspected terrorist.

The USG continuously evaluates its standards for inclusion in the TSDB and its subset lists. To meet the reasonable suspicion standard for inclusion in the TSDB as a known or suspected terrorist, the nominator must rely upon articulable intelligence or information which, based on the totality of the circumstances and, taken together with rational inferences from those facts, creates a reasonable suspicion that the individual is engaged, has been engaged, or intends to engage, in conduct constituting in preparation for, in aid or in furtherance of, or related to, terrorism and/or terrorist activities.

Mere guesses or "hunches" or the reporting of suspicious activity alone are not sufficient to establish reasonable suspicion.

Nominations <u>must not</u> be based solely on the individual's race, ethnicity, or religious affiliation, nor solely on beliefs and activities protected by the First Amendment, such as freedom of speech, free exercise of religion, freedom of the press, freedom of peaceful assembly, and the freedom to petition the government for redress of grievances.

**Nominations to the No Fly and Selectee Lists**

Nominations to the No Fly or Selectee Lists (which are subsets of the TSDB) must satisfy criteria distinct from that used for mere inclusion in the TSDB. TSC is responsible for determining if the associated information meets criteria for inclusion on both lists.

Any individual, regardless of citizenship, may be included on the No Fly List when the TSC determines the individual meets at least one of the following criteria where the individual poses:

(1) a threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) or domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to an aircraft (including a threat of piracy, or a threat to airline, passenger, or civil aviation security);
(2) a threat of committing an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to the homeland;
(3) a threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) against any U.S. Government facility abroad and associated or supporting personnel, including U.S. embassies, consulates and missions, military installations (as defined by 10 U.S.C. 2801(c)(4)), U.S. ships, U.S. aircraft, or other auxiliary craft owned or leased by the U.S. Government; *or*,
(4) a threat of engaging in or conducting a violent act of terrorism and who is operationally capable of doing so.

For security reasons, the criteria for inclusion on the Selectee List are not public. This is because disclosure of the Selectee criteria could give known or suspected terrorists information that may assist in developing strategies to circumvent security screening.

The TSC reviews each nomination to ensure compliance with standards for inclusion. At the conclusion of the TSC's review, TSC personnel either accept or reject the nomination for inclusion into the TSDB and, if appropriate, inclusion on either the Selectee or No Fly subsets.

Being subject to additional screening, does not necessarily mean a person is in the TSDB. To ensure the safety and security of the traveling public, TSA may designate individuals for additional security screening before they are permitted to enter the sterile area of an airport or to board an aircraft. For example, an individual may be designated for additional screening in order to resolve a walk-through metal detector alarm, because of random selection, or for other reasons.

**Use of the TSDB**

Agencies and officials authorized or required to conduct terrorist screening or to use information for diplomatic, military, intelligence, law enforcement, immigration, transportation security, visa, and protective processes are given access to terrorism information to facilitate their respective public missions.[3]

The largest end users of the TSDB are[4]:

- State (visa and passport screening);
- DHS
    a. Customs and Border Protection ("CBP") (vetting and inspection of travelers seeking entry to the United States or between ports of entry, at preclearance facilities abroad, and during the processing of trusted traveler applications.);
    b. Transportation Security Administration ("TSA") (air passenger screening and transportation security credential vetting);
    c. U.S. Citizenship and Immigration Services ("USCIS") (immigration screening);
    d. U.S. Immigration and Customs Enforcement ("ICE") (investigations);
- Department of Defense ("DOD") (base access screening); and
- FBI (investigations and domestic law enforcement screening).

**Encounters**

An encounter is an event in which an individual is identified during a screening process to be a potential positive or inconclusive match to an individual who is in the TSDB. An encounter can be a face-to-face interaction (e.g. inspection at a U.S. port of entry, visa interview, or traffic stop by local law enforcement), electronic (e.g., Electronic System for Travel Authorization (ESTA) application or a visa application), or paper-based (e.g. review of visa petition). When an encounter occurs, the agency and/or the encountering officer contacts the TSC to confirm whether the individual matches the record in the TSDB. If the individual is confirmed to match

---

[3] HSPD-6
[4] This is not inclusive of *all* users.

5

the identity in the TSDB, each encountering agency will take appropriate action according to internal procedures and policies and consistent with the application of its expertise and the regulatory and statutory standards applicable to each screening and vetting activity to serve its agency mission.

## QUALITY ASSURANCE REVIEWS AND REMOVAL PROCESS

**Quality Assurance Reviews**

To maintain thorough, accurate and current terrorism information, the TSDB is subjected to rigorous and ongoing quality control measures to ensure:

- ➢ Nominations continue to satisfy the criteria for inclusion; and
- ➢ Information offered in support of the nomination is reliable and up- to-date.

Quality control measures include reviews and evaluations by the nominating agency, NCTC, and TSC to verify that each nomination meets the appropriate criteria for inclusion in the TSDB and any appropriate subset list prior to an identity being added to the TSDB. These reviews and evaluations also provide a means to identify any changes to the information over time that could affect inclusion.

For example, nominating agencies conduct annual reviews of all nominations of U.S. persons to the TSDB. Nominations of non-U.S. persons receive reviews, as well. Each nominating agency must have internal procedures to prevent, identify and correct any errors. These procedures include the review of retractions and/or corrections of information that may have been used to support a nomination.

Additionally, the TSC regularly reviews data in the TSDB to ensure that the underlying information supports the nomination and performs audits to confirm the data in the TSDB is thorough, accurate, and current. The TSC also conducts a biannual review for all U.S. person records in the TSDB, to include all U.S. persons on the Selectee List or No Fly List. Additionally, for all persons, there is a review following each screening encounter when there is a potential match to an identity in the TSDB. Available information is reviewed to evaluate that the record still meets the standard for inclusion and to determine an appropriate encounter response, when applicable.

At any time, a USG agency (whether or not it is the nominator) that identifies new or updated information about a watchlist record, may make a request to NCTC/TSC to modify or remove that record.

The multiple reviews described above conducted by the nominating agencies, NCTC, and TSC help ensure that terrorist identity information used to support the law enforcement and screening functions is thorough, accurate, and current.

**Removal Process**

If it is determined during the quality assurance reviews that a change should be made to a record in the TSDB, the TSC, coordinating with the nominating agency and any other relevant agencies, takes steps to clarify the record. Additions, modifications, and removals are executed to ensure that the watchlisting process and procedures remain compliant with applicable law. Examples of situations where a record may be removed from the TSDB in the normal course of business include:

- When there is a misidentification,
- To promptly adjust or delete erroneous information,
- When new information becomes available to update the record including information that refutes or discredits the original information that supported the individual's watchlist status.

**Oversight**

Relevant USG departments' and agencies' Inspectors General and the U.S. Government Accountability Office regularly review terrorist watchlist, screening, and redress processes. The Privacy and Civil Liberties Oversight Board (an independent bipartisan agency within the Executive Branch) and the U.S. Congress also provide oversight. The U.S. Congress conducts oversight through its committees including, but not limited to, the House and Senate Intelligence Committees, the House and Senate Homeland Security Committees, the House and Senate Appropriations Committees, and the House and Senate Judiciary Committees. The TSC also has both an embedded legal unit and a dedicated privacy attorney to provide continuous advice and counsel.

**REDRESS PROCESS**

**Overview**

The DHS Traveler Redress Inquiry Program (DHS TRIP) is a resource for individuals who believe they have been unfairly or incorrectly delayed, denied boarding, or identified for additional screening or inspection at airports or U.S. ports of entry.

The DHS TRIP website http://www.dhs.gov/dhs-trip, provides a single point of contact for travelers to resolve travel-related screening difficulties. The website provides the user with detailed information about the redress process and what to expect regarding his or her inquiry. DHS TRIP assigns a unique Redress Control Number (RCN) to each inquiry submitted, allowing travelers to check the status of their inquiry on the website at any time.

As part of the redress process, DHS TRIP provides the traveler with a mechanism to submit any information that may be relevant to the travel difficulties experienced. The DHS TRIP process provides additional or detailed information that can assist the USG in making its determination.

Travelers may apply at the DHS website or may choose to apply for redress by submitting copies of their completed DHS TRIP Traveler Inquiry Form and copies of their identification documents by U.S. mail to:

>   DHS-Traveler Redress Inquiry Program
>   601 S. 12th St. TSA-901
>   Arlington, VA20598-6901

To resolve redress inquires, DHS TRIP works with DHS component agencies and other USG agencies such as:

- CBP,
- TSA,
- USCIS
- National Protection and Programs Directorate's Office of Biometric Identity Management,
- ICE,
- U.S. Coast Guard
- State,
- Department of Justice, including the FBI and TSC

The TSC supports DHS TRIP by helping to resolve inquiries which may appear to be related to data in the TSDB. Through the DHS TRIP process, approximately <u>98% of DHS TRIP inquiries are found to be cleared of any connection with terrorist watchlisted identities</u>. When a traveler's inquiry may concern data in the TSDB, DHS TRIP works with the TSC's Redress Office, a separate component within the TSC that processes inquiries related to the use of TSDB data by screening agencies.

Upon receipt of a complaint from the DHS TRIP program office, the TSC Redress Office independently reviews the available information about the traveler and documentation provided by the traveler to determine: whether (or not) the traveler is a positive match to an identity in the TSDB. If the traveler is a positive match to an identity in the TSDB, the analyst will review, whether or not the identity in the TSDB continues to satisfy the criteria for inclusion or should be removed or have its status otherwise modified. When a traveler seeking redress through DHS TRIP is a positive match to an identity in the TSDB, the TSC's Redress Office contacts NCTC and the nominating agency to assist in the resolution of the complaint. Part of that process includes the nominator participating to ensure that any new or exculpatory information that they may have is considered as part of the redress review.

After reviewing the available information, to include any information submitted by the traveler, the TSC's Redress Office determines whether the traveler's record should remain in the TSDB, be modified, or be removed, unless the legal authority to make such a determination resides, in

whole or in part, with another government agency.[5]  In such cases, the TSC Redress Office prepares a recommendation for the decision-making agency and implements the determination.

When changes to a record's status are warranted, TSC's Redress Office ensures such corrections are made and verifies that such modifications or removals are carried over to the various screening systems that receive TSDB data.  DHS TRIP sends a determination letter advising the traveler of the results of the adjudication of the redress inquiry.

Because of security concerns, the USG's general policy is neither to confirm nor deny a person's watchlist status.  In certain instances, however, a U.S. person denied boarding because of their presence on the No Fly list may be apprised of their status through the DHS TRIP process.[6]  When a U.S. citizen or Lawful Permanent Resident applying for redress is, in fact, on the No Fly List, DHS TRIP may inform the applicant of his or her status on the list.  These requesters will be provided an opportunity to request and receive additional information regarding their status.  Such additional information will include, where possible when national security and law enforcement interests at stake are taken into account, an unclassified summary of information supporting the individual's No Fly List status.  The amount and type of information provided will vary on a case-by-case basis, depending on the facts and circumstances.  In some circumstances, an unclassified summary may not be provided when the national security and law enforcement interests at stake are taken into account.  Requesters are then provided an opportunity to submit any information that they consider potentially relevant to their status on the No Fly List.  TSC then reviews this submission and takes appropriate action, including potentially removing the individual from the No Fly List.

Where TSC determines that an individual seeking redress should remain on the No Fly List, TSC provides a recommendation to the TSA Administrator.  The TSA Administrator will review the available information, including the recommendation from TSC, and will either issue a final order maintaining the person on the No Fly List or removing the person from the No Fly list, or remand the case back to TSC with a request for additional information or clarification.  If a final order is issued, it will state the basis for the TSA Administrator's decision (to the extent feasible in light of the national security and law enforcement interests at stake) and will notify the person of the ability to seek judicial review.

DHS TRIP encourages all aviation travelers to include their DHS Redress Control Number, provided in DHS TRIP response letters, in all future travel reservations.

---

[5] The TSA Administrator or his/her designee, in coordination with other relevant agencies, makes final determinations concerning listing on the No Fly List.  The Administrator reviews the information the traveler submits to DHS TRIP, as well as other available information that is being relied upon to support the No Fly listing, and will issue a final determination.  TSA will provide the individual with a final written determination and will notify the individual of the ability to seek further judicial review under 49 U.S.C. § 46110.

[6] Cite to Notice Re: Revisions to DHS TRIP Procedures, Document 197, Latif v. Holder (D. Or. 2014), Civil Case No. CV 10-00750-BR.  For purposes of this revised redress process, a U.S. person is defined as a U.S citizen or U.S. Legal Permanent Resident.

It is important to note that the USG cannot ensure future travel will be delay-free. Individuals may also receive additional inspection, screening, or inquiry for a variety of reasons unrelated to the TSDB, including but not limited to:

- The particular circumstances of the individual's travel
- Grounds for possible inadmissibility to the United States
- Enforcement of the Immigration and Nationality Act (INA);
- Random selection; or
- Airline selection

The U.S. Government is committed to ensuring that the redress process is fair and responsive, as part of its commitment to protect the American public from terrorist threats, while at the same time, safeguarding privacy and civil liberties.

## CONCLUSION

This document explains the robust processes and procedures by many agencies working in concert to provide for the appropriate and lawful use of terrorism screening information to protect the United States.

The U.S. Government is committed to ensuring that the watchlisting process is implemented consistent with law and is subject to numerous reviews, oversight, and provides the opportunity to seek redress, while also ensuring the information is appropriately used to vigorously protect the American public from terrorist threats, while safeguarding privacy and civil liberties.