IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Anas ELHADY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-375 (AJT/JFA) |
| ) | |
| CHARLES H. KABLE, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO STAY**

G. ZACHARY TERWILLIGER
United States Attorney

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

AMY POWELL
DENA M. ROTH
ANTONIA KONKOLY
CHRISTOPHER HEALY
Trial Attorneys, Federal Programs Branch
United States Department of Justice
Civil Division, Federal Programs Branch

LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

BACKGROUND ............................................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.    The Standard for Granting a Stay Pending Appeal. ..........................................................2

    II.    Defendants Are Likely to Succeed on the Merits of the Appeal. .....................................4

    III.    Defendants and the Public Will Be Irreparably Harmed Absent a Stay. ........................5

    IV.    A Stay Does Not Harm Plaintiffs' Interests. .................................................................11

CONCLUSION .............................................................................................................................11

# INTRODUCTION

Defendants respectfully request that the Court stay the injunction entered in this matter, as well as all further proceedings in this Court, until the U.S. Court of Appeals for the Fourth Circuit has resolved Defendants' appeal of the Court's December 18, 19, and 27, 2019 Orders and Judgment with respect to Plaintiffs' procedural due process claims. *See* Dkt. No. 348 ("Revised Final Order"). Implementation of the Revised Final Order would cause irreversible harm to national security and law enforcement interests, and could moot aspects of the case before the Fourth Circuit could resolve the Government's appeal. The requested stay maintains the status quo, preserving the Government's ability to press its defense of the current redress system on appeal, without prejudice to Plaintiffs' ability to receive the same relief in the future if they prevail on appeal. If this motion is denied, Defendants also request a fourteen-day administrative stay to allow Defendants to seek relief in the Court of Appeals.

# BACKGROUND

Plaintiffs filed suit in 2016, and their procedural due process claim (and coextensive APA claim) – that the redress process provided to individuals on the Terrorist Screening Database ("TSDB") was constitutionally inadequate – proceeded into discovery. Upon consideration of cross-motions for summary judgment, the Court held, *inter alia*: (1) that Plaintiffs have constitutionally protected liberty interests in their freedom of movement and in their reputations that may be infringed by their inferred inclusion on the TSDB, and (2) that the current redress process does not provide constitutionally adequate notice and an opportunity to be heard. *See generally Elhady v. Kable*, 391 F. Supp. 3d 562 (E.D. Va. 2019). Following supplemental briefing on remedy, the Court ordered the Government, notwithstanding any appeals, to "promptly review the listing of any named Plaintiff currently listed in the TSDB according to additional procedures to be added to a revised DHS TRIP process that are reasonably calculated to provide the required procedural due process, together with the creation of an adequate administrative record, with particular consideration given to (l) the threshold showing necessary to determine whether any such Plaintiff is entitled to such a review and the notice and explanation given to any Plaintiff determined

not to meet that threshold; (2) the notice and opportunity to respond to any derogatory information; (3) the notice to be given Plaintiffs with respect to their TSDB status upon completion of that review; and (4) the opportunity for review and/or appeal of any adverse determination[.]" Revised Final Order, at 2.  The Court further directed that Defendants disclose to the Court the revised procedures and "the status of the named Plaintiffs with respect to any TSDB listing" at the conclusion of the ordered review, and ordered the submission of a status report within 45 days of the revised final order or by February 10, 2020 "as to these revised DHS TRIP procedures and Defendants' review of any Plaintiffs' placement on the TSDB under those revised procedures." *Id.* at 2-3.

In the Court's Original Final Order (dated December 18, 2019), the Court certified Plaintiffs' procedural due process claims for interlocutory review under 28 U.S.C. § 1292(b).  Dkt. No. 341.  In light of the short timeframe involved for appeal of such an order, Defendants requested that the Court vacate the Section 1292(b) certification, for the express purpose of affording Defendants an adequate opportunity to consider whether they wished to pursue interlocutory appeal, without prejudice to a later re-certification.  Dkt. No. 345.  The Court agreed, and issued its Revised Final Order and judgment on December 27, 2019.  Revised Final Order.  Defendants have now obtained the requisite appeal authority from the Office of the Solicitor General. Concurrently with the filing of this motion, Defendants have filed a notice of appeal under 28 U.S.C. § 1292(a)(1), and additionally seek re-certification of the Court's disposition of Plaintiffs' procedural due process claims pursuant to 28 U.S.C. § 1292(b).

## ARGUMENT

### I.     The Standard for Granting a Stay Pending Appeal.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  A stay is especially appropriate "in cases of extraordinary public moment." *Id.* at 256.  The Supreme Court

2

has explained that "[i]t takes time to decide a case on appeal," and that "if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review." *Nken v. Holder*, 556 U.S. 418, 421 (2009). Accordingly, "it has always been held, that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Id.* (citation omitted). There is, however, no automatic stay pending appeal in actions for injunctions; in such actions, a judgment – whether interlocutory or final – may be stayed only by order of the court. *See* 11 Fed. Prac. & Proc. Civ. § 2904 (3d ed. Aug. 2019 Update). Rule 62(d) authorizes the trial court to suspend or modify an injunction during the pendency of an appeal. Fed. R. Civ. P. 62(d).

A motion for a stay of an injunction pending appeal requires consideration of four factors: 1) that the moving party would likely prevail on the merits of the appeal; 2) that it will suffer irreparable injury if the stay is denied; 3) that the other parties will not be substantially harmed by the stay; and 4) that the public interest will be served by granting the stay. *See Long v. Robinson,* 432 F.2d 977, 979 (4th Cir. 1970); *see also Nken*, 556 U.S. at 434; *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 558 (E.D. Va. 2016). As the Supreme Court noted in *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987), "the traditional stay factors contemplate individualized judgments in each case, [and] the formula cannot be reduced to a set of rigid rules." 481 U.S. at 777.[1] Ultimately, the "purpose behind a court

---

[1] There are some open questions regarding the relative importance and proper application of these factors. The Supreme Court noted that there is "substantial overlap" with the preliminary injunction standard, but that the two tests may not be "one and the same." *Nken*, 556 U.S. at 434; *see also Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 423 n.5 (4th Cir. 1999) ("the standard applicable in a decision granting or denying an injunction is different from that applied to a request for stay pending appeal."). The tests evolved from the same 4-part standard, *Blackwelder Furniture Co. of Statesville, Inc. v. Seiling Mfg. Co., Inc*, 550 F.2d 189, 193 (4th Cir. 1977), but after the Supreme Court and the Fourth Circuit adopted more rigid standards for granting preliminary injunctions, *see Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342 (4th Cir. 2009), it is unclear whether these more rigid standards apply to motions to stay. *See generally Rose v. Logan*, No. BR 12-25471-RAG, 2014 WL 3616380, at *2 (D. Md. July 21, 2014) (describing split and applying both standards); *In re Barnes*, No. CV DKC 20-0027, 2020 WL 134374, at *2 (D. Md. Jan. 13, 2020) (same); *Ohio Valley Envtl. Coal., Inc. v. Pruitt*, No. CV 3:15-0271, 2017 WL 1712527, at *3 (S.D. W. Va. May 2, 2017) (describing split in application of first factor); *but see BDC Capital, Inc. v. Thoburn Ltd. P'ship*, 508 B.R. 633, 636 (E.D. Va. 2014) ("The Court applies the same standard for a stay pending appeal as for a preliminary injunction.").

3

granting a stay pending appeal is generally preventative or protective because the stay seeks to maintain the status quo pending a final determination of the merits of the suit" and it "is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 661 F. Supp. 2d 548, 559 (E.D. Va. 2009) (citing *Wash. Metro. Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 844 (D.C. Cir. 1977).

Each factor counsels in favor of staying the proceedings here.

## II. Defendants Are Likely to Succeed on the Merits of the Appeal.

First, Defendants are likely to prevail on appeal. The likelihood-of-success standard requires "more than a mere possibility of relief," *Nken*, 556 U.S. at 434, but it "does not mean that the trial court needs to change its mind or develop serious doubts concerning the correctness of its decision in order to grant a stay pending appeal." *See Woollard v. Sheridan*, 863 F. Supp. 2d 462, 477 (D. Md. 2012) (citation omitted) (denying a stay), *rev'd on other grounds sub nom. Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013); *MicroStrategy, Inc.*, 661 F. Supp. 2d at 559 ("a movant need not convince a district court that it is more likely than not that the appeal will succeed" (citation omitted)); *see also Wash. Metro. Area Transit Comm'n.*, 559 F.2d at 843 ("The court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, as in this case, may grant a stay even though its own approach may be contrary to movant's view of the merits."). Rather, "to obtain a stay pending appeal, a movant must establish a strong likelihood of success on appeal, or, failing that, demonstrate a substantial case on the merits, provided the other factors militate in movant's favor." *See ePlus Inc. v. Lawson Software, Inc.*, 946 F. Supp. 2d 503, 507 (E.D. Va. 2013) (citation omitted) (emphasis omitted).

Here, the Court's opinion diverges from the weight of authority across similar watchlisting litigation, including two circuit court opinions, *Beydoun v. Sessions*, 871 F.3d 459 (6th Cir. 2017), and *Abdi v. Wray*, 942 F.3d 1019 (10th Cir. 2019), where the appellate courts ruled that the type of travel experiences that the plaintiffs described (including repeated enhanced screening, missed connecting

4

flights, and lengthy inspections at the border), did not constitute a deprivation of a liberty interest in violation of the Fifth Amendment.  Similar district court opinions (in which the Government prevailed in whole or in part on similar issues) include: *Kovac v. Wray*, No. 3:18-CV-0110, 2019 WL 1057935, at* l8 (N.D. Tex. Mar. 5, 2019); *Kadura v. Lynch*, No. CV 14-13128, 2017 WL 914249, at *6-7 (E.D. Mich. Mar. 8, 2017); *Beydoun v. Lynch*, No. l4-CV-13812, 2016 WL 3753561 (E.D. Mich. July 14, 2016); *Bazzi v. Lynch*, No. 16-10123, 2016 WL 4525240 (E.D. Mich. Aug. 30, 2016); *Bibicheff v. Holder*, 55 F. Supp. 3d 254, 264-65 (E.D.N.Y. 2014); *Scherfen v. DHS*, No. 3: CV-08-1554, 2010 WL 456784, at *7 (M.D. Pa. Feb. 2, 2010); *Green v. TSA*, 351 F. Supp. 2d 1119, 1130 (W.D. Wash. 2005); *see also Proctor v. DHS,* 2019 WL 4413273 (9th Cir. 2019) ("enhanced security screening does not implicate a protected liberty interest").

In this context, Defendants have made a "strong showing" on the merits.  Given the weight of contrary authority, the Court should conclude at least that there is a "substantial case on the merits." *See ePlus Inc.*, 946 F. Supp. 2d at 507.  Indeed, the Court has already held as much, when it acknowledged in the December 18 Original Final Order certifying interlocutory appeal that "there is substantial ground for difference of opinion." Dkt. No. 341, at 4; *cf. Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 56 (D.D.C. 2009) (noting that the court's grant of interlocutory certification favored a stay) (subsequent history on other issues omitted).  Accordingly, Defendants have satisfied this prong.

### III.   Defendants and the Public Will Be Irreparably Harmed Absent a Stay.

Failure to stay the injunction will irreparably harm the interests of Defendants and the public.  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citation omitted); *Sarsour v. Trump*, 245 F. Supp. 3d 719, 742 (E.D. Va. 2017) (Trenga, J.).  There are at least three levels of harm to the Government and the public interest: the irreparable harm to national security and law enforcement interests caused by forced disclosures, the potential loss of appellate review if the Government is deprived of the ability to fully defend the current process, and

the interests of judicial economy. On balance, the substantial and important constitutional and policy issues at stake justify maintaining the status quo during the pendency of an appeal.

The first and most important consideration is the threat to national security. The Revised Final Order directs the Government to design and implement measures which will take into consideration the need to provide additional notice to at least some of the Plaintiffs regarding their status with respect to the TSDB, as well as considering notice and opportunity to respond to any underlying derogatory information. Revised Final Order, at 2. Although the Court has properly left the precise contours of the revised procedures to the Government, the Revised Final Order implicitly requires the Government to disclose to Plaintiffs at least some information that the Government properly considers to be privileged and to undertake procedures that the Government considers to be highly dangerous to national security.

This Court has recognized that "there is a profound, fundamental, and compelling Government interest in preventing terrorist attacks, including by maintaining and protecting information necessary to prevent such attacks." *Elhady*, 391 F. Supp. 3d at 582. Ultimately, the development of policy in this area requires careful balancing of policy resources and potential threats. *See Rahman v. Chertoff*, 530 F.3d 622, 627 (7th Cir. 2008) (explaining that political rather than judicial actors should balance the risks involved in watchlisting); *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010). The public is entitled to the considered judgment of the Executive Branch in this area and the disclosures contemplated by the Court's requirement that the Government adopt new procedures would compel the Executive Branch to act contrary to its considered judgment, without the benefit of appellate review. *See Nken*, 556 U.S. at 435-36 (recognizing the public interest and interest of the federal government may merge).

Defendants have explained at length the specific harms that would follow from various additional disclosures, with TSA, CBP, FBI and TSC each explaining the harms unique to their particular equities in disclosure of TSDB information, and the Government has previously asserted the law enforcement privilege over this information. *See generally* Decl. of Michael J. Orlando ("1st

6

Orlando MSJ Decl.") ¶¶ 19-36, Dkt. No. 299-3; Decl. of Hao-y Tran Froemling ("Froemling MSJ Decl.") ¶¶ 52-60, Dkt. No. 299-2; Decl. of Timothy P. Groh ("Groh MSJ Decl.") ¶¶ 64-67, Dkt. No. 299-4; Suppl. Decl. of Michael J. Orlando ("Suppl. Orlando Decl.") ¶¶ 4-11, Dkt. No. 331-1; Decl. of Randy Howe ("Howe MSJ Decl.") ¶ 20, Dkt. No. 301-3. For example, TSA explained that disclosure of watchlist status with respect to the subsets of the TSDB that TSA utilizes for passenger pre-board screening (No Fly List, Selectee List, Expanded Selectee List) would provide valuable information to terrorists seeking to evade security measures. Armed with the knowledge of who is – and who is not – on these lists, known terrorists could gather information about security responses, attempt to evade enhanced screening and other TSA security measures, or focus their efforts on recruiting unknown individuals or insider threats. *See generally* Froemling MSJ Decl. ¶¶ 52-60, Dkt. No. 299-2. Importantly, individuals who are selected for enhanced screening, unlike individuals who are denied boarding, are able to access sterile areas of airports and fly via commercial aviation, which remains a prime target for terrorist groups. *Id.* ¶ 55.

Similarly, FBI explained that additional disclosures related to status and underlying privileged or classified derogatory information would provide terrorists valuable insight into FBI investigations, would discourage cooperation from sensitive sources, would discourage agencies from making otherwise appropriate nominations to the TSDB, and would divert significant intelligence and investigative resources which otherwise would be spent detecting and preventing terrorist attacks. 1st Orlando MSJ Decl. ¶¶ 19-36, Dkt. No. 299-3; Suppl. Orlando Decl. ¶¶ 4-11, Dkt. No. 331-1. Requiring some notice of TSDB status to persons subjected to enhanced screening or additional scrutiny at border inspections based on alleged watchlisting, or requiring notice of the reasons for including an individual in the TSDB, could jeopardize the integrity and secrecy of investigations, and provide a roadmap to terrorist organizations and other adversaries to avoid detection of their activities by revealing sensitive FBI sources and methods, by revealing what types of intelligence information is sufficient to trigger an investigation, and by assisting adversaries in identifying which individuals are or are not likely the subjects of ongoing investigations. 1st Orlando MSJ Dec. ¶¶ 21,

7

24-25, 33, Dkt. No. 299-3; Groh MSJ Decl. ¶¶ 65-66, Dkt. No.299-4. Mr. Orlando notes that the current revised redress process for No Fly individuals already presents some risk of harm to national security; expanding it to TSDB listees who might qualify would be exponentially more harmful, and "would have a devastating effect on the usefulness of the TSDB and a potentially calamitous effect on the national security." 1st Orlando MSJ Decl. ¶ 36, Dkt. No. 299-3; *see also* Groh MSJ Decl. ¶¶ 64-67, Dkt. No. 299-4; Howe MSJ Decl. ¶ 20, Dkt. No. 301-3. Accordingly, the Court should not require the Government to adopt procedures that would necessitate any such disclosures without first giving the Government a chance to appeal.

Precisely because disclosure of sensitive or privileged information is irreparable, courts have often upheld stays where the injunction in question would mandate such disclosure. *See, e.g.*, *Ctr. For Int'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003) (concluding that defendant made a strong showing of irreparable harm, and granting stay, where disclosure of documents would render appeal moot); *Ctr. For Nat'l Sec. Studies v. DOJ*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002) (granting stay in FOIA case where disclosure of information sought would "effectively moot any appeal").[2] As these cases recognize, there is no way to "un-ring a bell,"—and thus, here, no way for Defendants to effectively claw back any disclosures to the Plaintiffs following an appeal.

Second, to rewrite the redress procedures applied to these Plaintiffs may effectively moot portions of the Government's appeal. "Corrective action by an agency is one type of subsequent development that can moot a previously justiciable issue." *Nat'l Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982). This possibility of forced mootness that would prevent the Court of Appeals from fully reviewing a district court decision underlies the

---

[2] *Cf. In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) ("Secrecy is a one-way street: Once information is published [or disclosed], it cannot be made secret again," and thus an order of disclosure is "'effectively unreviewable on appeal from a final judgment'") (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)); *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) ("Disclosure followed by appeal after final judgment is obviously not adequate in [privilege] cases— the cat is out of the bag.").

8

general rule that remand orders to the agency are appealable by the Government. *W. Virginia Highlands Conservancy, Inc. v. Norton*, 343 F.3d 239, 244 (4th Cir. 2003) ("if a district court order remanding a case to an administrative agency will be effectively unreviewable after a resolution of the merits, the order is a final decision." (citation omitted)); *Cty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1012 (D.C. Cir. 1999) ("Because an agency must conduct its proceedings and render its decision pursuant to the legal standard that the district court articulates in its remand order, "[u]nless another party appeals [the agency's subsequent] decision, the correctness of the district court's legal ruling will never be reviewed by the court of appeals, notwithstanding the agency's conviction that the ruling is erroneous." (alterations in original)). The same concerns justify a stay of the ruling here, where compliance with the order to "review the listing of any named Plaintiff currently listed in the TSDB according to additional procedures" that would incorporate the principles articulated by the Court would require disclosures and revised procedures that moot all or some of the Government's appeal. *Cf. Shipbuilders Council of Am. v. United States Coast Guard*, 578 F.3d 234, 239 (4th Cir. 2009) (courts permit an agency to appeal where it is bound on remand by a standard articulated by the district court and would not have a chance to appeal from any further judgment, "making the district court's determination effectively unreviewable by the agency on remand.").

Third, judicial economy is best served by a stay. If the Government proceeds now to develop alternative procedures applicable to these Plaintiffs, it will do so without the benefit of the judgment of the Court of Appeals. If the Government prevails in the Court of Appeals, the considerable time and effort invested in devising alternate procedures (that the Government believes threaten national security and law enforcement interests) would be unnecessary, as would the time and resources of the Court and the parties in ongoing proceedings to evaluate those procedures. Moreover, the investment of time and resources in revised procedures and their application to Plaintiffs is substantial. *Cf.* Suppl. Orlando Decl. ¶¶ 5-11 (describing resource commitment necessary to effectuate additional disclosures in individual cases). That is particularly concerning here, where it necessarily diverts resources from the counterterrorism mission of agents and officials.

9

*Cf. Al Maqaleh*, 620 F. Supp. 2d at 57 (finding that diversion of at least some of the military's resources from its core mission to comply with a court order was "harm . . . sufficient to weigh in favor of a stay" pending appeal).

Even if the Government loses in the Court of Appeals, further or different standards may be articulated by the Court of Appeals that would require a different revision of the procedures; any revision of the procedures may be guided by the Court of Appeals opinion with respect to the risks of harms from disclosure, the severity of the Plaintiffs' alleged deprivations, findings on who may have standing or what injuries may be relevant. The Government has prevailed in other watchlisting-related litigation across the country and continues to defend the current redress process for people who believe they are on the TSDB. Accordingly, the Government is in uncharted territory – devising new rules applicable to these Plaintiffs, while its existing process has been upheld by other courts. In this situation, any balancing judgments the Government reaches under this Court's order will inevitably be affected in some way by the further judgment of the Court of Appeals. And given the divergence of authority on the question, it is ultimately in the interests of the parties, the public, and the Court to await that judgment.

Finally, the weighty and novel issues involved favor the issuance of a stay. Although the Court has appropriately limited its order to procedures to be applied to the Plaintiffs, this case involves substantial constitutional questions that affect national security. On balance, the equities in such a case favor a pause for the Government to fully defend the public interest in the current system and to allow the Court of Appeals to weigh in. *See, e.g., Klayman v. Obama*, 957 F. Supp. 2d 1, 43 (D.D.C. 2013) ("in light of the significant national security interests at stake in this case and the novelty of the constitutional issues, I will stay my order pending appeal." (subsequent history on other issues omitted)); *Al Maqaleh*, 620 F. Supp. 2d at 58 (granting the Government a stay pending appeal where "[t]he constitutional issues presented are consequential and fundamental").

### IV.  A Stay Does Not Harm Plaintiffs' Interests.

Plaintiffs will not be prejudiced by a stay. The gravamen of the Court's Revised Final Order is to provide additional process to those Plaintiffs who demonstrate that they have been deprived of a liberty interest. Nothing in a stay of the injunction would prejudice Plaintiffs' ability to receive the exact same relief if the Government exhausts the appeals process and is directed to proceed. Plaintiffs may argue that they are prejudiced because some of them may be listed in the TSDB during the pendency of the appeal.[3] But nothing in the injunction directs Plaintiffs' removal from the TSDB or guarantees Plaintiffs a particular outcome of a revised redress process. Accordingly, the injunction does not prevent these alleged harms and staying it does not cause such harms.

The equities tip sharply in favor of maintaining the status quo during the pendency of an appeal so that the Government can defend the merits of a policy designed to protect national security, which has been upheld by courts in other circuits. The compelling national security interests implicated in this case will be best served by allowing for full appellate review of the issues by the Fourth Circuit.

### CONCLUSION

For the foregoing reasons, the Court should stay the injunctive relief in its December 27, 2019 Revised Final Order, including the direction to "review the listing of any named Plaintiff currently listed in the TSDB according to additional procedures" and the direction to disclose revised procedures and status to the Court. Should that request be denied, the Court should issue a fourteen-day administrative stay to allow Defendants to seek relief in the Court of Appeals.

---

[3] Defendants maintain that Plaintiffs have not generally demonstrated an ongoing deprivation, and the vast majority do not claim ongoing travel delays. Dkt No. 299 (Defs' MSJ), at 35-38. Although the Court held that at least some of the Plaintiffs would have standing to seek this remedy, *see Elhady*, 391 F. Supp. 3d at 575, the Court did not hold that they all showed ongoing deprivations and did not rule on who has demonstrated a right to post-deprivation notice based on their screening experiences. The Court recognized at least some validity to the Government's argument when it directed Defendants to consider "the threshold showing necessary to determine whether any such Plaintiff is entitled to" a revised redress process. Revised Final Order, at 2.

Dated: January 31, 2020                                    Respectfully submitted,

G. ZACHARY TERWILLIGER
United States Attorney

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs
Branch

AMY POWELL
DENA M. ROTH
ANTONIA KONKOLY
CHRISTOPHER HEALY
Trial Attorneys, Federal Programs Branch
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW, Room 11204
Washington, DC 20530
Tel: (202) 514-2395
amy.powell@usdoj.gov
dena.m.roth@usdoj.gov
antonia.konkoly@usdoj.gov
christopher.healy@usdoj.gov

*/s/ Lauren A. Wetzler*
LAUREN A. WETZLER
Chief, Civil Division
Assistant United States Attorney
2100 Jamieson Ave.,
Alexandria, VA. 22314
Tel: (703) 299-3752
Fax: (703) 299-3983
Lauren.Wetzler@usdoj.gov