UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **ANAS ELHADY,** *et al.*, | ) |
| | ) **Case No. 16-cv-00375** |
| Plaintiffs, | ) Hon. Anthony J. Trenga |
| | ) Mag. Hon. John F. Anderson |
| v. | ) |
| | ) |
| **CHARLES H. KABLE,** Director of the | ) |
| Terrorist Screening Center; in his official | ) |
| capacity, *et al.*; | ) |
| | ) |
| Defendants. | ) |

### PLAINTIFFS' OPPOSITION TO THE GOVERNMENT'S MOTION TO STAY

Plaintiffs oppose the Government's Motion to stay. "[A] stay is considered extraordinary relief for which the moving party bears a heavy burden." *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 558 (E.D. Va. 2016) (4th Circuit redistricting panel). The four factors the Court looks to is "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Here, the Government cannot meet its heavy burden on any of the factors, much less all four.

**I.    The Government Is Not Likely to Succeed on Appeal**

The Government claims that they are likely to prevail on the merits of their appeal. Dkt. 352 at 4-5. The Government essentially claims for an arguability standard, suggesting "a movant need not convince a district court that it is more likely than not that the appeal will

1

succeed." Dkt. 352 at 4 (quoting *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 661 F. Supp. 2d 548, 559 (E.D. Va. 2009)). But the standard is actually a stringent one, requiring the showing to be "strong" that the appellant is "likely" to succeed. *Nken*, 556 U.S. at 434. Nor do the Government's cases say otherwise. Rather, the Government's cases only state that this factor does not absolutely foreclose a stay pending appeal when there is both a substantial case on the merits and the other factors "militate in movant's favor." Dkt. 352 at 4 (quoting *ePlus Inc. v. Lawson Software, Inc.,* 946 F. Supp. 2d 503, 507 (E.D. Va. 2013) (applying Federal Circuit law)). And, in determining the weight of the other factors, it remains true that "[t]he first two factors," i.e., likelihood of success and irreparable injury, that control. *Nken*, 556 U.S. at 434.

By ruling in Plaintiffs' favor, this Court expressed its view that Plaintiffs are the ones likely to succeed on appeal. The Court already considered and rejected all of the cases the Government cites other than *Abdi v. Wray*, 942 F.3d 1019 (10th Cir. 2019), and *Proctor v. DHS*, 777 Fed App'x 235 (9th Cir. 2019) (unpublished opinion), in making its ruling.

*Abdi*[1] specifically limited its holding to the circumstances in that case, where the restraint on liberty alleged was limited. *Id.* at *7 n.3. Specifically, the Court of Appeals distinguished that case from this one by stating the plaintiffs here had suffered significantly more restraints on liberty:

> In *Elhady*, the plaintiffs produced evidence of more significant travel obstacles than are at issue here—for example, being detained at gunpoint at a border check, handcuffed in public view, and interrogated for seven to ten hours, on three separate occasions, *see id.* at 571-72—that actually deterred the plaintiffs from traveling at all, internationally or domestically, *see id*. at 577-79. Without

---

[1] Plaintiffs' counsel here were also counsel in *Abdi,* and there is simply no comparing the duration and severity of the aggregated consequences outlined in undisputed facts here and the limited—in time and severity—consequences faced by the plaintiff in *Abdi.* However, just as in this case and so many others, the federal government's response to litigation challenging the No Fly List was to remove Imam Abdi—the appellant in *Abdi*—from the No Fly List and, ultimately, from the TSDB altogether.

2

expressing any views on the claims at issue in *Elhady*, we note that those circumstances are distinguishable from the case we consider here.

Meanwhile, in *Proctor,* The Government fixates on a single sentence in that 398 word unpublished decision, devoid of any context or analysis. 777 Fed App'x at 236. Context only establishes *Proctor's* irrelevance. *Proctor* involved a pro se case involving vastly different scenarios where these issues were not raised by the pro se appellant and the Government described the security measures the appellant faced as "incidental or negligible" of the type that "every traveler might face," in its own brief. *See* Response to Notice of Supplemental Authority, *El Ali v. Barr*, 18-cv-2415, Dkt. 57 (D. Md. Oct. 3, 2019). Neither case casts doubt on the Court's reasoned opinion here.

## II. The Government Has Not Shown Irreparable Injury to Itself or the Public

The Government claims that it will be irreparably harmed if it is not provided a stay, Dkt. 352 at 5-10, and then goes on to claim that a stay would not harm Plaintiffs' interests, *id.* at 11. Yet this Court already balanced Plaintiffs' constitutional interests against the Government's national security concerns. *Elhady v. Kable*, 391 F. Supp. 3d 562, 577-82 (E.D. Va. 2019), and found Plaintiffs' interests prevailed. Indeed, the Government's evidence in support of its motion basically constitutes the same record upon which the Court granted Plaintiffs' Motion for Summary Judgment. The Government's claim was found wanting then. It should be found wanting now.

Meanwhile, the Government's showing of irreparable injury as to the order it seeks to stay is wholly inadequate.

The Order so far issued by the Court required the Government to "promptly review the listing of any named Plaintiff currently listed in the TSDB according to additional procedures to be added to a revised DHS TRIP process that are reasonably calculated to

provide the required due process, together with the creation of an adequate administrative record…." Dkt. 341 at 4. The Order also required that Defendants "shall disclose those revised procedures to the Court for its review as to their constitutional adequacy, as well as the status of the named Plaintiffs with respect to any TSDB listing after a review under those revised proceedings." Dkt. 341 at 4-5. Before the Government can possibly show that these additional procedures would cause irreparable injury, they first have to provide to the Court what those procedures are.

The Government complains that it is irreparably harmed because it will be impossible "for Defendants to effectively claw back any disclosures to the Plaintiffs following an appeal." Dkt. 352 at 8. But even if the Government could show that compliance with an order would require disclosure of any information "to the Court" that would create a national security concern if disclosed to Plaintiffs (which it has not), it has not shown that a lesser remedy, such as an ex parte or attorneys-eyes-only disclosure, would be insufficient to cure the remedy. *See Fikre v. FBI*, 13-cv-899, Dkts. 131, 139 (D. Or.) (granting Government's request to allow it to disclose plaintiff's TSDB status to his attorneys on an AEO so the status could be used by Government in case); *see also id.* at Dkt. 147 (Motion to Dismiss) (under seal). Meanwhile, the Government has placed nothing in the record establishing that any of the Plaintiffs are even reasonably suspected of having any involvement in criminal or wrongful activity. *Elhady*, 391 F. Supp.3d at 581.

And the Government's suggestion of "forced mootness," Dkt. 352 at 8-9, is implausible. Of course, should the Government modify its TSDB procedures because an injunction forces it to, the Government can still appeal the injunction so as to return to its prior ways. *NAACP v. N. Carolina Bd. of Elections*, 283 F. Supp. 3d 393, 406 n.12 (M.D.N.C.

2017). So the Government's claim of "forced mootness" is misplaced. The Government's mootness cases do not say otherwise. Other than disputes over disclosure of documents, the only mootness case the Government cites, *Nat'l Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982), stands for the unremarkable point that the Government's voluntary corrective action can moot a challenge to a procedural defect in rulemaking.

In any event, the Government had years to seek an interlocutory appeal of the determination that Plaintiffs' had constitutional rights at stake in this litigation. *See* Dkt. 47 (Order on Motion to Dismiss) (Dept. 5, 2017). It did not seek an interlocutory appeal then. Nor did the Government move upon losing this case on summary judgment back on September 4. Indeed, when this Court certified an appeal in December, the Government moved to vacate that certification. Dkt. 344. This is true even though the Government essentially got what it asked for in the Court's initial Remedies Order, *See* Dkt. 331 at 5 ("the proper remedy is to order the responsible agency to provide additional process, without specifically fashioning what that process should be"). Rather, only on the last workday before its status update was due, did the Government notice its appeal and move to stay in this Court. Waiting until the last minute suggests that the Government seeks to delay as much as appeal the consequences of its unconstitutional behavior. *See Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993) (irreparable injury cannot be caused by party's own delay).

### III.   Plaintiffs Will Be Substantially Injured if a Stay Is Granted

A stay continues to require Plaintiffs to live under the status quo for years. This comes both with predictable suffering, including every time a Plaintiff boards an airport or crosses a

border, *Elhady*, 391 F. Supp. 3d at 571-73 & 578-79, and places Plaintiffs in great danger, *id.* at 580 ("placement on the TSDB triggers an understandable response by law enforcement in even the most routine encounters with someone on the Watchlist that substantially increases the risk faced by that individual from the encounter"). *Hamlyn v. Rock Island Cty. Metro. Mass Transit Dist.*, 960 F. Supp. 160, 163 (C.D. Ill. 1997) (collecting cases) (constitutional injury constitutes irreparable harm when it cannot be compensated by monetary damages); *see also Newdow v. Bush,* 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("injury" to "fundamental constitutional rights" is "generally [] considered irreparable harm").

The suffering Plaintiffs face, and will continue to face, is highlighted in their own summary judgment motion. Mr. Frljuckic will continue to avoid travelling by air or crossing the border, at all, until relief is granted. Dkt. 304 at 13. Dr. Khan will continue to be separated from his family in Canada. *Id.* at 14. Mr. Anwar likewise will continue to avoid the border. *Id.* And John Doe 3 will continue to live in fear in Germany, too afraid of his own government to set foot in his county. *Id.* at 13. The toll on these people's lives—American citizens who, again, are not even evenly reasonably suspected of having any involvement in criminal or wrongful activity, *Elhady*, 391 F. Supp.3d at 581, is tremendous. It is unfair to ask them to continue suffering like this, unconstitutionally, for years so that the Government will be convenienced.

And years it will take. The case will first go to the Court of Appeals, and then perhaps to the Supreme Court, and then returned for a permanent injunction. And then, there is the further risk that any injunction also gets stayed. This would double the delay, and double the prejudice.

Plaintiffs' irreparable injury is further seen by the Government's attempt to avoid corrective behavior by mootness. Even in the Government's remedies brief, the Government took pains to argue that only Plaintiffs (and nobody else) who have "demonstrated a certainly impending future injury," should be entitled to any relief. *See* Dkt 331 (Government's Remedies Brief) at 13-15. Stalling allows the Government to continue to ward off the day of reckoning and then, at the end of that day, remove Plaintiffs from the TSDB and argue mootness. *See Fikre* Dkt. 135 (Opposition to Protective Order) (at 8-9) (noting the only plausible reasoning for the Government's actions was if the Government removed Fikre from the TSDB so it could argue that Fikre lacked standing to challenge the constitutionality of his placement).

Even now, in the absence of a stay and in light of a binding ruling on constitutionality, the Government moves at a turtle's pace. Instead of returning with any potential plan for addressing the Constitutional defects in the TSDB, the Government's 45-day status report (which has actually been 54 days since the order was first issued, Dkt. 341), does not describe any actual or proposed changes to the TSDB. Dkt. 360. Rather, it notes that it is in the process of "propos[ing], discuss[ing], and eval[uating] possible changes" with an eye toward a pre-scheduled, quarterly meeting of the Watchlist Advisory Council, to further "discuss and evaluate" proposals there. *Id.* at 3. The prospect of any real changes to the watchlist, or any relief to the Plaintiffs, is indeterminate even with a stay.

The Court should not play the role of the Government's unwitting partner in this game of endless delay. The Court should deny the Motion to Stay and require the Government to comply with its prior Order (Dkt. 341) immediately.

February 12, 2020                                  Respectfully submitted,

                                                                 COUNCIL ON AMERICAN-ISLAMIC RELATIONS

                                                                  BY:        /s/ Lena F. Masri
                                                                  LENA F. MASRI (DC 1000019)
                                                                  GADEIR I. ABBAS (VA 81161)*
                                                                  JUSTIN SADOWSKY (VA 73382)
                                                                  *Attorneys for Plaintiffs*
                                                                  453 New Jersey Ave, SE
                                                                  Washington, DC 20003
                                                                  Phone: (202) 742-6420

                                                                *\*Gadeir Abbas is licensed in VA, not in D.C. Practice limited to federal matters*