1 — 

```
 1

 2                       UNITED STATES DISTRICT COURT
                       FOR THE EASTERN DISTRICT OF VIRGINIA
 3                           ALEXANDRIA DIVISION

 4
         ANAS ELHADY, et al.,          )
 5                                      )
                    Plaintiffs,         )    Civil No. 16-375
 6                                      )
             v.                         )
 7                                      )
         CHARLES H. KABLE,              )    Alexandria, Virginia
 8       et al.,                        )    February 14, 2020
                                        )
 9                  Defendants.         )
         _____    )
10

11
                         TRANSCRIPT OF MOTION HEARING
12                 BEFORE THE HONORABLE ANTHONY J. TRENGA
                        UNITED STATES DISTRICT JUDGE
13
                         APPEARANCES:
14

15        For the Plaintiffs:     Amy Powell
                                  Christopher Healy
16                                Tony Coppolino

17
          For the Defendants:     Gadeir Abbas
18                                Justin Sadowsky

19

20
          Court Reporter:    PATRICIA A. KANESHIRO-MILLER, RMR, CRR
21

22
          Proceedings reported by stenotype shorthand.
23        Transcript produced by computer-aided transcription.

24

25
```

```
1                    P R O C E E D I N G S

2                         (10:03 a.m.)

3            THE DEPUTY CLERK:  Civil Action Number 1:16-CV-375,

4       Elhady, et al, v. Piehota, et al.

5            Counsel, will you please note your appearances for

6       the record.

7            MS. POWELL:  Amy Powell for the government, Your

8       Honor.  With me at counsel table are Christopher Healy and

9       Tony Coppolino.

10           THE COURT:  All right.

11           MS. POWELL:  With the Court's permission, Mr. Healy

12      is going to present with respect to the motion to stay, and I

13      will answer any other questions the Court has.

14           THE COURT:  All right.  Very good.  Welcome.

15           MR. ABBAS:  Good morning, Your Honor.  Here for the

16      plaintiffs, myself, Gadeir Abbas, and Justin Sadowsky.  I

17      will be presenting with regards to both motions.

18           THE COURT:  All right.  We are here on a motion to

19      stay and also on a motion to recertify the procedural due

20      process claim.

21           Mr. Abbas, let me ask you:  Are you taking any

22      position on whether the Court should recertify the other

23      issues that it had previously certified?

24           MR. ABBAS:  Yes, Your Honor.  Our position is that

25      the Court shouldn't certify any matter for any kind of appeal
```

1    until the issue of what remedy the Court is going to issue is

2    resolved completely.

3              I think that is implicit in the Court's December 27th

4    order.  The Court did enter a final judgment with regards to

5    the substantive due process, the nondelegation claim --

6              THE COURT:  Right.

7              MR. ABBAS:  -- but withheld doing so.  And Your Honor

8    did certify it previously for an appeal, but the government

9    is not intending, it appears, to comply with any kind of

10   revision that -- with the DHS TRIP processing.  So I think

11   this Court's firm intervention and injunction that executes

12   the September 4th opinion is what is needed here, and that is

13   a question that remains outstanding, what relief are the

14   plaintiffs going to get.

15             THE COURT:  I understand.  But I take your position

16   is that irrespective of whether the Court certifies or

17   doesn't recertify the procedural due process issue, you do

18   not want the Court to recertify the substantive due process

19   claim, equal protection and the nondelegation --

20             MR. ABBAS:  We do not intend to appeal any of those

21   dismissed claims.  We are not appealing.  The final day is

22   today, but we're not intending to appeal those claims.  And

23   part of it is --

24             THE COURT:  Well, there is no appeal period at this

25   point, is there?

1              MR. ABBAS:  I think that is right for substantive due

2      process, equal protection, and nondelegation --

3              THE COURT:  I vacated those certified questions.

4              MR. ABBAS:  I believe Your Honor only certified the

5      questions that regard the procedural due process claim.  And

6      I apologize --

7              THE COURT:  I will look back --

8              MR. ABBAS:  And I think the only matter now before

9      the Court is the procedural due process claim, which is --

10     because there is only one claim, we respectfully suggest that

11     it makes sense for this Court to dispose of all ancillary --

12             THE COURT:  I understand.  Let me hear first from the

13     defendants --

14             MR. ABBAS:  Sure.

15             THE COURT:  -- on the motion to stay.

16             MR. HEALY:  Thank you, Your Honor.

17             THE COURT:  Yes.

18             MR. HEALY:  Your Honor, the government has moved for

19     a stay here in order to protect its ability to defend the

20     current process at the Fourth Circuit and to prevent

21     irreversible damage to national security.  The stay would

22     allow the Fourth Circuit to rule on these important questions

23     of national security before the Government is ordered to

24     apply new and, in the government's view, dangerous procedures

25     to plaintiffs if they are on the --

1          THE COURT:  Well, aren't you collapsing the process?

2     The Court ordered that you develop and present to the Court

3     revised procedures.  The Court always has the ability to

4     enter orders, as appropriate, protecting from some of the

5     concerns you have pending the outcome of the appeal, doesn't

6     it?

7          MR. HEALY:  With respect, Your Honor, that is not our

8     reading of the Court's order --

9          THE COURT:  No, I understand.  But certainly the

10    Court has that ability.

11         MR. HEALY:  The Court would certainly have that

12    ability, Your Honor, but I believe that the order that is

13    before us requires the government both to develop procedures

14    and apply those procedures to any plaintiffs who are on the

15    TSDB, and in our view, that is irreparable harm both to --

16         THE COURT:  Well, I believe the order requires that

17    you present to the Court for its review as to their

18    constitutional adequacy.

19         MR. HEALY:  What the order says, Your Honor, with

20    respect, is that defendants promptly review the listing of

21    any named plaintiff currently listed in the TSDB according to

22    additional procedures to be added to a revised DHS TRIP

23    process.

24         THE COURT:  Right.

25         MR. HEALY:  To our reading, that --

1          THE COURT:  How does that in and of itself affect

2    national security?

3          MR. HEALY:  That in itself affects national

4    security because the --

5          THE COURT:  You're worried about the disclosures to

6    the plaintiffs.

7          MR. HEALY:  That is correct.  And we've been ordered

8    to both develop a new process and apply that process to

9    plaintiffs.  That is an order to disclose something to

10   plaintiffs, to make some particular disclosure to plaintiffs,

11   and in particular, the considerations, the particular

12   considerations that the Court offers that orders the

13   government to consider in its order include a threshold

14   showing necessary to determine whether any such plaintiff is

15   entitled to a review, the notice and explanation given to any

16   plaintiff determined not to meet that threshold, notice and

17   opportunity to respond to any derogatory information, notice

18   to be given to plaintiffs with respect to their TSDB status

19   upon completion of that review, and the opportunity for

20   review and/or appeal of any adverse determination.

21   Consideration of those particular factors and the application

22   of a revised redress process to plaintiffs would necessarily

23   require some modicum of further disclosure to plaintiffs --

24          THE COURT:  Well, if we back off the disclosure piece

25   of it, what irreparable harm would there be, requiring the

1   government to basically continue what I understand it has

2   already done substantially, which is review these procedures

3   and come up with revised procedures that they think would

4   address the Court's decision?

5           MR. HEALY:  So a couple of points on that, Your

6   Honor.  I think that if Your Honor were to change the order

7   and remove the requirement for applying new procedures to

8   plaintiffs, I think it would create a couple of problems,

9   some of them practical, some of them legal.  Number one, I

10  think it could potentially create jurisdictional problems in

11  that the Court might be engaging in an advisory opinion and

12  requiring -- and it could, in fact, have sort of

13  separation-of-powers problems by requiring the government to

14  act in the abstract to create a new process for the Court's

15  review.

16          THE COURT:  Well, it seems to me there are two

17  issues.  One is developing and proposing the procedures.  The

18  other is the implementation of the procedures.  I don't

19  understand why you can't proceed with one, with the Court

20  reserving on the second issue pending the outcome --

21          MR. HEALY:  Right, and my first point is right now we

22  have been ordered to do both --

23          THE COURT:  I understand.

24          MR. HEALY:  -- that is point one.

25          Point two, we don't believe it is reasonable to

8

```
 1    expect that multiple agencies will expend months coming up

 2    with a draft policy that we simply don't think is legally

 3    necessary or required.  And I understand Your Honor has a

 4    different point of view on that and has ordered us otherwise

 5    on that question.

 6              But with respect to the likelihood of success on the

 7    merits here, courts have gone both ways on this question, and

 8    in particular there are two circuit court opinions now that

 9    disagree with Your Honor's conclusion and that goes to -- the

10    required showing is whether or not we have a substantial case

11    on the merits for the purposes of a stay on appeal, and we

12    have made that showing here.

13              THE COURT:  Well, I don't think the issue is whether

14    it is a substantial case; it is whether you have made a

15    strong showing you're going to likely prevail.

16              MR. HEALY:  Just to be clear, the standard is not

17    that Your Honor needs to disagree with your prior opinion --

18              THE COURT:  No, I understand --

19              MR. HEALY:  -- or change your mind.  The question is

20    whether we have a substantial case.  And there are two

21    circuit court opinions that would militate in our favor, as

22    well as numerous district court opinions that go the other

23    way.  And so there is at least a substantial question on the

24    merits, and a strong showing on the merits, that we would

25    prevail on appeal.  And it is at least -- would be a good use
```

1    of both judicial resources and defendants' resources to wait

2    until we have the input from the Fourth Circuit until we are

3    ordered to go down that road.

4         THE COURT:  Well, the Watchlisting Advisory Council,

5    that's what they're there for, correct, to review these

6    procedures and consider issues relating to these procedures?

7         MR. HEALY:  Among other aspects, it is one of the

8    reasons --

9         THE COURT:  Right.

10        MR. HEALY:  -- that they're there, yes.

11        THE COURT:  That is what their job is, apparently.

12        MR. HEALY:  Yes, but this would be a very large and

13   time-consuming undertaking.  And it is one that, as you have

14   seen in our status report, is being undertaken, and we are

15   complying -- in the process of complying with the order.  But

16   going down that road will take a lot of time and effort.  And

17   the fact is that as this appeal proceeds in the Fourth

18   Circuit, the Fourth Circuit may disagree with Your Honor's

19   conclusion and rule in our favor, in which case all of that

20   effort will be for nought, or they may agree with Your Honor

21   and not rule in our favor and, instead, apply different

22   particular factors that the government should consider, in

23   which case we will have to start from this process again.  So

24   I think all of that goes to irreparable harm, goes to

25   likelihood of success on the merits, and also goes to the

1    balancing that Your Honor has to do when facing a motion to

2    stay, to look at the irreparable harm to defendants and to

3    the public interest and balance that with the harm to the

4    plaintiffs.  And harm to the plaintiffs here, if any has been

5    shown, is minimal.  And the reason that that is so is because

6    of the fact that what we have been ordered to do is create

7    more process.  None of that process necessarily will result

8    in the change of any particular plaintiff's watchlist status.

9    So I would refer Your Honor to the Al Maqaleh case that is

10   cited on page 10, where the DEC did that kind of balancing

11   and said, okay, the plaintiffs in that particular case were

12   detained.  This was a habeas case, and that was unequivocally

13   a continuing harm to plaintiff, but the national security

14   interests in that case were such that a stay on appeal was

15   merited.  And so for those reasons I think the state here is

16   similarly merited.

17         One last point, I think that there is a practical

18   consideration here in that defendants, with respect to the

19   policy process, the policy process that we would implement

20   now, absent a stay, absent final ruling and the exhaustion of

21   the appeals process from the Fourth Circuit, might look

22   significantly different than the process right now while we

23   are in the midst of an appeal.

24         With respect to irreparable harm, there are all the

25   reasons that Your Honor has already seen with respect to

1    irreparable harm under summary judgment.  However, plaintiffs

2    indicate that they believe that the balance of harms has

3    already been decided in their favor on summary judgment.  And

4    with respect, the question before the Court here is just a

5    different one.  The question at summary judgment was the

6    balance of the interests to the party for the purpose of

7    remedying a prudential deprivation of liberty interests under

8    due process; whereas, here the question is whether national

9    security would be irreparably harmed if the government is

10   ordered to continue through with this national security

11   process -- with this process of changing the DHS TRIP

12   procedures.

13        We have already explained why such disclosures would

14   risk harm to national security.  The question now before the

15   Court is whether an appeal should proceed before defendants

16   have had the chance to get the final word from the Fourth

17   Circuit on that.  This is not simply with respect to

18   disclosures that Your Honor's order would require to any

19   plaintiffs who are on the TSDB, but also disclosures that

20   would be required to those plaintiffs who are not on the

21   TSDB.  The order specifically contemplates particular

22   consideration given to notice and any explanation given to

23   any plaintiff determined not to meet the threshold showing

24   for notice.  So that itself, as described in the Groh

25   Declaration, at paragraph 66, that was attached to our

1    opening summary judgment motion, describes why notification

2    to a particular plaintiff that that person is not on the list

3    would also inform adversaries about the kinds of persons that

4    are of interest or not of interest to the government.

5            THE COURT:  That's the piece that I don't quite

6    understand because the critical component of that requirement

7    criteria is coming up with what would trip the qualification

8    to have your status reviewed.  I know the government keeps

9    talking about how it would be a problem if anybody who thinks

10   they may be on the list without any demonstration of any

11   consequence could simply ask and find out if they're on the

12   list or not.  So it seems to me that a critical component of

13   this revised procedure would be to come up with what

14   criteria, what impact would be sufficient as a threshold

15   matter to allow or qualify that person to have their status

16   reviewed.

17           MR. HEALY:  So I think this presents a very difficult

18   question, Your Honor.

19           THE COURT:  I understand.

20           MR. HEALY:  But I think that the reason that this

21   would present harm is a significant one.  Even if, let's say,

22   there were a threshold where you only trip this process if

23   you're stopped five times in the last six months, let's just

24   create a hypothetical.

25           THE COURT:  Enhanced screening.

1      MR. HEALY:  Enhanced screening, yes.

2      Some people who go through that threshold might be on

3   the list, some might not be on the list.  If some of those

4   individuals go through the process and learn their status and

5   some go through that process and do not learn their status,

6   the same harms apply to that narrower universe of persons.

7   So I think that there is still harm with respect to a

8   threshold.  You're narrowing the universe slightly, but there

9   may be many people who would learn their non-status through

10   notification under that procedure even if they trip the

11   threshold in a way that would harm national security.

12      Next point, Your Honor, is that defendants would be

13   irreparably harmed given the fact that moving forward would

14   likely moot the case on appeal.  Plaintiffs suggest in their

15   opposition that the government may appeal an injunction that

16   forces to modify its redress procedures.  As I've explained

17   before, we believe that's exactly what we are faced with

18   here, which is the reason that we have appealed.  There is a

19   real risk that the government will be forced to take the very

20   action if this case is not appealed -- is not stayed, rather,

21   that it would be arguing on appeal should not be required,

22   and that would likely moot the case.  So that is also an

23   irreparable harm.

24      THE COURT:  Run that by me again.  Why would it

25   potentially moot the case?

1          MR. HEALY:  Because if the government is complying

2     with procedures and making disclosures that they are arguing

3     in the Court of Appeals is not required, that might actually

4     provide plaintiffs with the redress that they're seeking and

5     moot out the case.  It would essentially -- could waive our

6     arguments that doing these things is simply not possible and

7     not -- can't be done consistently with national security.

8          THE COURT:  All right.

9          MR. HEALY:  I'm sure, as Your Honor understands, the

10    question of what process, if any, could be provided to the

11    plaintiffs consistent with national security concerns is a

12    deeply difficult question.  Any objective standard for a

13    threshold determination that would trigger more notice would

14    likewise provide further information to adversaries about who

15    the government does or does not consider a threat.  We've

16    been ordered, in essence, to come up with a revised redress

17    process that the defendants in their considered judgment

18    believe would risk disclosures that would harm our ability to

19    fight terrorism.  At the very least, and particularly given

20    the weight of the case law in defendant's favor on the legal

21    question, the gravity of this issue merits a stay.

22          Thank you.

23          THE COURT:  Let me hear also from the defendants on

24    the certification issue.

25          MS. POWELL:  I don't have a great deal to add to our

15

1    papers, Your Honor.  I don't think plaintiffs engaged with

2    the 1292(b)(2) standard.

3          THE COURT:  What do you think certifying the question

4    as to what is already before the Fourth Circuit --

5          MS. POWELL:  So we think that the current notice of

6    appeal is adequate to appeal all of these issues, to be

7    clear, Your Honor.  And we have asked for the 1292(b)(2)

8    certification as well as sort of a belts-and-suspenders

9    approach to make sure that all the issues can be before the

10   Fourth Circuit in case they disagree.

11         THE COURT:  Okay.

12         MS. POWELL:  The only point I would emphasize in our

13   briefs is that plaintiffs simply haven't engaged with that

14   standard, an independent basis for jurisdiction.  Thus, even

15   if we were wrong about the other bases for jurisdiction, as

16   plaintiffs argue, that would be more reason to certify under

17   1292(b)(2), so that the Fourth Circuit could weigh in on this

18   meaningful divergence of legal opinion over how to analyze

19   these issues, which necessarily hangs over all of the

20   remaining issues in this case.

21         THE COURT:  All right.  Mr. Abbas.

22         MR. ABBAS:  This is what the government asks for.

23   The government asked in its remedy brief to have the

24   opportunity to adjust its watchlisting practices in light of

25   this Court's September 4th decision.  We lost.  We asked in

1    our remedies briefing for specific injunctions regarding

2    this, that, and the other.  We didn't get that.  They got an

3    opportunity from this Court to propose a revised set of

4    watchlisting practices in light of the Court's unequivocal

5    September decision.  And instead of doing that, they filed an

6    appeal that I believe the reason they want the certification

7    is because the appeal is defective and we're going to be back

8    before the Court fully, but this Court has the discretions to

9    grant the certification for interlocutory appeal if it so

10   chooses.  We're not arguing that the Court lacks the

11   authority to certify.  We're saying that it is not -- it

12   doesn't make sense given the circumstances of the case.

13          The question of what to do --

14          THE COURT:  Well, you don't want it certified

15   because, in your view, without the certification there's not

16   a valid appeal.

17          MR. ABBAS:  Yes, Your Honor, exactly.  The whole

18   matter will be before this Court.  And I think that's

19   especially important because we're not appealing anything

20   else.  There is no separate -- you know, the opposing counsel

21   makes the point in their reply that, oh, you know, if they're

22   going to file an appeal on the dismissed counts, the equal

23   protection, the substantive due process, the nondelegation

24   claim, then there is going to be something in the Fourth

25   Circuit anyways, so the interlocutory certification will put

1    more of it in the Fourth Circuit.  But that is not what is

2    going on.  Here, the only claim that exists and the only

3    claim that is live after today is the procedural due process

4    claim.  And what the government is proposing is to split that

5    procedural due process claim into two pieces.  The liability

6    piece, send it to the Fourth Circuit.  The remedies piece

7    stays with the district court.  And then they want to stay

8    the remedies piece.  They're just trying to take it out of

9    this Court's hands.  That's what is going on.

10        And there has never been a factual record about a

11   watchlist case as the factual record that is before this

12   Court.  That's something that the Tenth Circuit noted

13   explicitly, that the case -- that the plaintiff in *Abdi*, the

14   appellant in *Abdi*, the facts were not analogous, were not

15   comparable to the facts assembled here.  When the government

16   says that the harm to plaintiffs is minimal, they're

17   overlooking undisputed facts that show Hassan Shibly, because

18   of their illegal watchlist, Hassan Shibly was handcuffed in

19   front of his grandmother, and she was so shooken she had to

20   be rushed to the hospital.  That's the harm to the

21   plaintiffs.

22        What the government has been doing for years now is

23   they have been a moving target in many ways.  The

24   disclosure -- their reluctance to disclose the watchlist

25   status to this Court or to anybody else, their reluctance is,

1    particular to this case, probably because it is unhelpful to

2    their litigation position.  In a case in Oregon, the *Fikre*

3    matter that is pending before a federal court in Oregon,

4    they -- they -- of their own volition, they asked the Court's

5    permission to disclose watchlist status to the Court and to

6    the attorneys only.  And so the -- they're operating a secret

7    government watchlist that is disseminated to every single law

8    enforcement agency, to more than 500 private companies, to

9    more than 60 foreign countries, and without this Court's firm

10   intervention, without firm deadlines on what they're going to

11   -- they're going to keep on evading a final decision about

12   their illegal watchlist.

13        They say that it is a very large and time-consuming

14   undertaking.  We did not -- the plaintiffs did not ask the

15   federal government to build a global secret terrorist

16   watchlist.  The defendants did that.  And in making that

17   choice, they're subject to the Constitution.  This Court has

18   said that the way that they're operating their global

19   watchlist is illegal.  And so even if it's a time-consuming

20   undertaking, they have to do it, it is the federal

21   government.  And you know, there's been a little bit of

22   opaqueness with regard to this Watchlisting Advisory Council.

23   Sometimes it is like an independent actor, other times it is

24   not.  But the undisputed facts are that this is the FBI's

25   decision.  The FBI controls the watchlist.  The FBI is

 1    operating the database.  The FBI chooses what the inclusion

 2    standard is.  The FBI decides what information to provide the

 3    other participants in the watchlisting process.  So only the

 4    FBI is a defendant, and so it is unfair for the government to

 5    be pointing at nonparties and blaming nonparties for the

 6    delays when it is within the authority's -- it is within the

 7    authority of the defendants that are before this Court to

 8    execute the relief that this Court has granted.  So, in

 9    addition to the DHS revisions that this Court proposed, there

10    are discrete injunctive elements that if the Court -- I'm

11    sorry -- if the federal government refuses to make any

12    alterations, there are a few discrete injunctive elements

13    that this Court could issue in short order.  One of those is

14    with regard to the inclusion standard.  This Court said, "The

15    vagueness of the standard for inclusion in the TSDB, coupled

16    with the lack of any meaningful restraint on what constitutes

17    grounds for placement on the watchlist, constitutes in

18    essence the absence of any ascertainable standard for

19    inclusion and exclusion."

20         This Court found that the inclusion standard

21    essentially is not an inclusion standard.  So it could enjoin

22    the use of the current inclusion standard, and it's up to the

23    government to come up with something new, and then if they

24    come up with something new, it will be reviewed in normal

25    course.

20

```
 1              THE COURT:  All right.
 2              MR. ABBAS:  Thank you, Your Honor.
 3              THE COURT:  Counsel, I will give you the last word.
 4              MR. HEALY:  Just a couple of quick points, Your
 5     Honor.
 6              Number one, the threshold question here is a hard
 7     one, and it's exactly the type of question that the Fourth
 8     Circuit might rule on.  So that isn't exactly a response to
 9     something that plaintiff said, but it is another point I
10     wanted to add.
11              With respect to the question of what plaintiff
12     contends is a defective appeal, that question is not before
13     this Court.  We don't think that question has anything to do
14     with the disputes before the Court.
15              Plaintiff's counsel mentioned that he believes the
16     facts of Abdi were not comparable.  Numerous of the injuries
17     claimed in Abdi are exactly the same as numerous injuries
18     claimed in this case.  Yes, the Tenth Circuit distinguished
19     some facts of this case, but the legal questions before the
20     Court were very much the same, and so I don't think that that
21     is any reason not to grant a stay.
22              Fikre, the case that Mr. Abbas mentioned, was a
23     completely different circumstance in which the plaintiff in
24     that case had been notified of his no-fly-list status already
25     prior to the case -- you know, entirely before the
```

1    circumstance that Mr. Abbas is mentioning.  Here, we have 20

2    plaintiffs who have never been given notice of any status

3    whatsoever, and so it presents a different circumstance.

4         With that and for the other reasons I have already

5    mentioned, this Court should grant the stay.

6         Thank you.

7         THE COURT:  Thank you.

8         I have reviewed the pleadings and issues in this case

9    and the argument here.  The Court is in a position to rule on

10   these.

11        Here, the defendants have filed a motion to stay this

12   Court's Order dated December 18, 2019, and also to recertify

13   the Court's procedural due process claims pursuant to

14   28 U.S.C. 1292(b).

15        In the Court's December 18th and December 27th order,

16   the Court also directed the defendants to promptly review the

17   listing of any named plaintiff currently listed in the TSDB,

18   Terrorism Screening Database, according to different

19   procedures to be added to a revised DHS TRIP process that are

20   reasonably calculated to provide the required procedural due

21   process, together with the creation of an adequate

22   administrative record, with particular consideration given to

23   the following factors:  The threshold showing necessary to

24   determine whether any plaintiff is entitled to such a review

25   and the notice and explanation given to any plaintiff

determined not to meet that threshold; secondly, the notice and opportunity to respond to any derogatory information; the notice to be given plaintiffs with respect to their TSBD status upon completion of that review; and fourth, the opportunity for review and/or appeal of any adverse determination.

The Court further directed that the defendants disclose to the Court the revised procedures and the status of the named plaintiffs with respect to any TSDB listing at the conclusion of the ordered review, and further ordered that the submission of a status report within 45 days of the revised final order as to the revised DHS TRIP procedures and defendants' review of the plaintiffs' placement on the TSDB under those revised procedures.

On January 31, 2020, the defendants filed a notice of appeal from the Court's Orders dated December 18th and the judgment entered on December 19th, and also its order dated December 27, 2019, together with all prior orders and decisions that merge into those orders.  The plaintiffs have opposed both motions.

On February 10th, the defendants filed a status report concerning the government's progress in developing the revised procedures with respect to the plaintiffs in this action.  In that status report, the government advised that this review and development is being conducted at the agency

1    level and coordinated through the Watchlisting Advisory

2    Council; and the government has taken the following steps to

3    comply with the Court's revised final order:

4         First, the government has identified which, if any,

5    of the plaintiffs are currently on the TSDB, and the

6    Terrorist Screening Center has assessed the current status of

7    any such individuals based on available information and has

8    made whatever changes are necessary, if any.

9         Secondly, the government has commenced an

10   inter-agency deliberative process to propose and evaluate

11   options for revised procedures to be applied to a review of

12   any plaintiffs' watchlist status, taking into consideration

13   the four issues enumerated by the Court, as well as other

14   concerns described in the Court's summary judgment opinion.

15   Towards that end, members of the Watchlisting Advisory

16   Council have begun the intra- and inter-agency deliberative

17   process of evaluating the feasibility and policy implications

18   of changes to the redress process and have already conducted

19   multiple meetings to propose, discuss, and evaluate possible

20   changes to the redress process or other changes to the

21   watchlisting system, with a view towards better enabling the

22   Watchlisting Advisory Council participants to present and

23   evaluate options for addressing the revised final order, and

24   agencies have formulated specific proposals for

25   consideration.

1          Third, the Watchlisting Advisory Council is scheduled

2    to convene for its first quarterly meeting within the next

3    few weeks, at which it is anticipated they will discuss and

4    evaluate specific proposals generated by ongoing deliberative

5    process.  And if the revised final order is not stayed, the

6    defendants will be in a better position to estimate the

7    completion of this process once the scheduled Watchlisting

8    Advisory Meeting has taken place.

9          In evaluating the motion for a stay, the Court has

10   considered the well-settled requirements for such a stay:

11   First, whether the moving party has made a strong showing

12   that it's likely to succeed on the merits; second, whether

13   the applicant will be irreparably harmed/injured absent a

14   stay; third, whether the issuance of the stay will

15   substantially injure the other parties interested in the

16   proceedings; and fourth, where the public interest lies.

17          Based on the record, the Court concludes, first, that

18   the government has not made a sufficiently strong showing

19   that it will succeed on the merits.  In that regard, the

20   Court emphasizes the important nature of this claim -- United

21   States citizens who have neither been convicted nor charged

22   with any crimes being placed on a secret government watchlist

23   that is distributed to tens of thousands of law enforcement

24   and non-law enforcement agencies both domestically and

25   abroad, with no real opportunity to contest on what basis

they were placed on that list.  Although the consequences of
being placed on that list vary in degree and severity, there
is no doubt that a person who is on that list, whether he
knows it or not, has had his life affected in significant
ways.  In assessing the government's prospects on appeal, the
Court has reviewed the Tenth Circuit case of *Abdi v. Wray*,
which considered whether a particular plaintiff in that case
had demonstrated a protectable liberty interest triggering
procedural due process protections beyond those provided in
the current DHS TRIP.  Finding that the plaintiff had not
sufficiently demonstrated injury from his placement on the
watchlist, the Court specifically distinguished the facts in
that case from those presented in this case with respect to
at least some of the named plaintiffs without opining on the
merits of this case.

It is also worth noting that, as the government
conceded in the *Mohammed* case, the no-fly-list component of
the watchlist represents an unprecedented application of
Executive Branch authority in the name of national security
through secret administrative proceedings based on
undisclosed information.  Much could be said about the
watchlist itself, and the liberty interest analysis under
*Mathews v. Eldridge* has not been squarely addressed by either
the Fourth Circuit or the Supreme Court within the precise
context of anything akin to the watchlist.

1          With respect to the second factor, whether the

2     government will experience irreparable harm in the absence of

3     a stay, the Court begins by observing that the Court's

4     ordered appealed from does not by its term impose any

5     immediate consequences on the government that threaten

6     national security or any other significant government

7     interest.  Rather, the order simply directs the government to

8     prepare and propose to the Court revised procedures in light

9     of its resolution of those legal issues.  One can say that

10    the government is impacted by the effort necessary to engage

11    in that process, but central to the Court's willingness to

12    enter an appealable interlocutory order, under

13    28 U.S.C. 2201, which was discretionary on the part of the

14    Court, was the specific authorization, under Section 2202, to

15    continue to deal with any remaining claims or any further or

16    necessary relief based on the declarations and orders issued;

17    and that an appeal as to the legal merits could proceed in

18    tandem with the development of revised procedures with the

19    Court having the ability to fashion, as necessary,

20    appropriate orders pertaining to those revised procedures

21    that protects any significant government national security

22    interests pending the outcome of the appeals.  And there is

23    always the possibility that defendants, upon conducting their

24    review, might conclude they could implement revised

25    procedures independent of the outcome of the issues on

1    appeal.

2            This case has been pending for far longer than what

3    typically happens in this court, and there is an interest in

4    moving forward in a way that allows this case to resolve

5    itself sufficiently.  For those reasons, the Court concludes,

6    for the reasons just mentioned, that the defendants have not

7    made a sufficient showing it would suffer irreparable harm

8    were the final order not stayed and they were required to

9    continue what they have already substantially started.

10           On the other hand, the Court finds that a stay would

11   seriously, if not irreparably, harm plaintiffs since it would

12   delay the adoption of constitutionally adequate procedures

13   for the Court's resolution of those issues affirmed on

14   appeal.

15           Finally, for all of the reasons stated above, the

16   Court finds that the public interest is served by not

17   granting the stay.  There is a public interest in resolving

18   these very important issues as expeditiously as possible, and

19   until the government proposes revised procedures for the

20   Court to review following which it can enter orders which

21   themselves can be appealed and consolidated with the pending

22   issues on appeal, the matter will only drag on even longer

23   than it has.

24           So for all the above reasons, the Court denies the

25   motion to stay.

1          The Court will, however, recertify the procedural due

2     process issue, which essentially duplicates the issue already

3     presented by way of the revised final order.  The Court,

4     also, is going to review its prior order, and if it has not

5     vacated that certification, it is going to recertify the

6     remaining issues, and the plaintiffs can determine whether to

7     appeal those issues as it deems appropriate.  These

8     certifications, again, will more efficiently consolidate this

9     litigation going forward.

10          Finally, the Court, as inherent in the Court's

11     rulings, will require the government to comply with the

12     Court's revised final orders, the revised procedures, and

13     will at this point require the government to submit its

14     proposed revised procedures within 90 days absent a

15     sufficient cause for further extensions.  The defendants have

16     been considering these issues for years, and under the

17     circumstances, the Court believes 90 days is sufficient time

18     for the defendants to complete their deliberative review.  To

19     the extent the defendants believe that these revised

20     procedures or any other information required to be submitted

21     to the Court should be placed under seal or submitted

22     ex parte or in camera should accompany those submissions with

23     an appropriate order.

24          So, for all those reasons, the Court denies the

25     motion to stay, the Court grants the motion to recertify.

```
 1        And the Court will issue an order.

 2              Anything further?

 3              MR. ABBAS:  No, Your Honor.  Thank you.

 4              MS. POWELL:  Two quick questions, Your Honor.

 5              THE COURT:  Yes.

 6              MS. POWELL:  One, a point of clarification.  Is the

 7        Court not ordering us currently to apply the revised

 8        procedures?

 9              THE COURT:  Yes.

10              MS. POWELL:  And second, defendants also asked for a

11        14-day administrative stay.

12              THE COURT:  I don't see any need for that.  Nothing

13        is going to happen within 14 days.  You can apply to the

14        Fourth Circuit.

15              All right.  Thank you.

16              Counsel is excused.

17              (Proceedings concluded)

18

19

20

21

22

23

24

25
```

30

1           CERTIFICATE OF OFFICIAL COURT REPORTER

2

3           I, Patricia A. Kaneshiro-Miller, certify that the

4    foregoing is a correct transcript from the record of

5    proceedings in the above-entitled matter.

6

7

8    /s/ Patricia A. Kaneshiro-Miller
                                        February 18, 2020
9    -----------------------------------   ---------------------

10   PATRICIA A. KANESHIRO-MILLER                  DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 30:8

## 1

**10** [1] - 10:10
**10:03** [1] - 2:2
**10th** [1] - 22:21
**1292(b)** [1] - 21:14
**1292(b)(2** [3] - 15:2, 15:7, 15:17
**14** [2] - 1:8, 29:13
**14-day** [1] - 29:11
**16-375** [1] - 1:5
**18** [2] - 21:12, 30:8
**18th** [2] - 21:15, 22:16
**19th** [1] - 22:17
**1:16-CV-375** [1] - 2:3

## 2

**20** [1] - 21:1
**2019** [2] - 21:12, 22:18
**2020** [3] - 1:8, 22:15, 30:8
**2201** [1] - 26:13
**2202** [1] - 26:14
**27** [1] - 22:18
**27th** [2] - 3:3, 21:15
**28** [2] - 21:14, 26:13

## 3

**31** [1] - 22:15

## 4

**45** [1] - 22:11
**4th** [2] - 3:12, 15:25

## 5

**500** [1] - 18:8

## 6

**60** [1] - 18:9
**66** [1] - 11:25

## 9

**90** [2] - 28:14, 28:17

## A

**a.m** [1] - 2:2
**Abbas** [6] - 1:17, 2:16, 2:21, 15:21, 20:22, 21:1
**ABBAS** [12] - 2:15, 2:24, 3:7, 3:20, 4:1, 4:4, 4:8, 4:14, 15:22, 16:17, 20:2, 29:3
**Abdi** [5] - 17:13, 17:14, 20:16, 20:17,
25:6
**ability** [6] - 4:19, 5:3, 5:10, 5:12, 14:18, 26:19
**above-entitled** [1] - 30:5
**abroad** [1] - 24:25
**absence** [2] - 19:18, 26:2
**absent** [4] - 10:20, 24:13, 28:14
**abstract** [1] - 7:14
**accompany** [1] - 28:22
**according** [2] - 5:21, 21:18
**act** [1] - 7:14
**action** [1] - 13:20, 22:24
**Action** [1] - 2:3
**actor** [1] - 18:23
**add** [2] - 14:25, 20:10
**added** [2] - 5:22, 21:19
**addition** [1] - 19:9
**additional** [1] - 5:22
**address** [1] - 7:4
**addressed** [1] - 25:23
**addressing** [1] - 23:23
**adequacy** [1] - 5:18
**adequate** [3] - 15:6, 21:21, 27:12
**adjust** [1] - 15:24
**administrative** [3] - 21:22, 25:20, 29:11
**adoption** [1] - 27:12
**adversaries** [2] - 12:3, 14:14
**adverse** [2] - 6:20, 22:5
**advised** [1] - 22:24
**advisory** [1] - 7:11
**Advisory** [7] - 9:4, 18:22, 23:1, 23:15, 23:22, 24:1, 24:8
**affect** [1] - 6:1
**affected** [1] - 25:4
**affects** [1] - 6:3
**affirmed** [1] - 27:13
**agencies** [3] - 8:1, 23:24, 24:24
**agency** [4] - 18:8, 22:25, 23:10, 23:16
**agree** [1] - 9:20
**aided** [1] - 1:23
**akin** [1] - 25:25
**AI** [1] - 10:9
**al** [4] - 1:4, 1:8, 2:4
**ALEXANDRIA** [1] - 1:3
**Alexandria** [1] - 1:7
**allow** [2] - 4:22, 12:15
**allows** [1] - 27:4
**alterations** [1] - 19:12
**Amy** [2] - 1:15, 2:7
**analogous** [1] - 17:14
**analysis** [1] - 25:22
**analyze** [1] - 15:18
**ANAS** [1] - 1:4
**ancillary** [1] - 4:11
**answer** [1] - 2:13
**ANTHONY** [1] - 1:12
**anticipated** [1] - 24:3
**anyways** [1] - 16:25

**apologize** [1] - 4:6
**appeal** [32] - 2:25, 3:8, 3:20, 3:22, 3:24, 5:5, 6:20, 8:11, 8:25, 9:17, 10:14, 10:23, 11:15, 13:14, 13:15, 13:21, 15:6, 16:6, 16:7, 16:9, 16:16, 16:22, 20:12, 22:5, 22:16, 25:5, 26:17, 27:1, 27:14, 27:22, 28:7
**appealable** [1] - 26:12
**appealed** [4] - 13:18, 13:20, 26:4, 27:21
**appealing** [2] - 3:21, 16:19
**appeals** [2] - 10:21, 26:22
**Appeals** [1] - 14:3
**APPEARANCES** [1] - 1:13
**appearances** [1] - 2:5
**appellant** [1] - 17:14
**applicant** [1] - 24:13
**application** [2] - 6:21, 25:18
**applied** [1] - 23:11
**apply** [7] - 4:24, 5:14, 6:8, 9:21, 13:6, 29:7, 29:13
**applying** [1] - 7:7
**approach** [1] - 15:9
**appropriate** [4] - 5:4, 26:20, 28:7, 28:23
**argue** [1] - 15:16
**arguing** [3] - 13:21, 14:2, 16:10
**argument** [1] - 21:9
**arguments** [1] - 14:6
**ascertainable** [1] - 19:18
**aspects** [1] - 9:7
**assembled** [1] - 17:15
**assessed** [1] - 23:6
**assessing** [1] - 25:5
**attached** [1] - 11:25
**attorneys** [1] - 18:6
**authority** [3] - 16:11, 19:7, 25:19
**authority's** [1] - 19:6
**authorization** [1] - 26:14
**available** [1] - 23:7

## B

**balance** [3] - 10:3, 11:2, 11:6
**balancing** [2] - 10:1, 10:10
**based** [3] - 23:7, 24:17, 25:20, 26:16
**bases** [1] - 15:15
**basis** [2] - 15:14, 24:25
**BEFORE** [1] - 1:12
**begins** [1] - 26:3
**begun** [1] - 23:16
**believes** [2] - 20:15, 28:17
**belts** [1] - 15:8
**belts-and-suspenders** [1] - 15:8
**better** [2] - 23:21, 24:6
**beyond** [1] - 25:9
**bit** [1] - 18:21
**blaming** [1] - 19:5
**Branch** [1] - 25:19

2

**brief** [1] - 15:23
**briefing** [1] - 16:1
**briefs** [1] - 15:13
**build** [1] - 18:15

# C

**calculated** [1] - 21:20
**camera** [1] - 28:22
**case** [36] - 8:10, 8:14, 8:20, 9:19, 9:23, 10:9, 10:11, 10:12, 10:14, 13:14, 13:20, 13:22, 13:25, 14:5, 14:20, 15:10, 15:20, 16:12, 17:11, 17:13, 18:1, 18:2, 20:18, 20:19, 20:22, 20:24, 20:25, 21:8, 25:6, 25:7, 25:13, 25:15, 25:17, 27:2, 27:4
**Center** [1] - 23:6
**central** [1] - 26:11
**certainly** [2] - 5:9, 5:11
**CERTIFICATE** [1] - 30:1
**certification** [7] - 14:24, 15:8, 16:6, 16:9, 16:15, 16:25, 28:5
**certifications** [1] - 28:8
**certified** [4] - 2:23, 4:3, 4:4, 16:14
**certifies** [1] - 3:16
**certify** [5] - 2:25, 3:8, 15:16, 16:11, 30:3
**certifying** [1] - 15:3
**chance** [1] - 11:16
**change** [3] - 7:6, 8:19, 10:8
**changes** [4] - 23:8, 23:18, 23:20
**changing** [1] - 11:11
**charged** [1] - 24:21
**CHARLES** [1] - 1:7
**choice** [1] - 18:17
**chooses** [2] - 16:10, 19:1
**Christopher** [2] - 1:15, 2:8
**circuit** [2] - 8:8, 8:21
**Circuit** [19] - 4:20, 4:22, 9:2, 9:18, 10:21, 11:17, 15:4, 15:10, 15:17, 16:25, 17:1, 17:6, 17:12, 20:8, 20:18, 25:6, 25:24, 29:14
**circumstance** [3] - 20:23, 21:1, 21:3
**circumstances** [2] - 16:12, 28:17
**cited** [1] - 10:10
**citizens** [1] - 24:21
**Civil** [2] - 1:5, 2:3
**claim** [12] - 2:20, 3:5, 3:19, 4:5, 4:9, 4:10, 16:24, 17:2, 17:3, 17:4, 17:5, 24:20
**claimed** [2] - 20:17, 20:18
**claims** [4] - 3:21, 3:22, 21:13, 26:15
**clarification** [1] - 29:6
**clear** [2] - 8:16, 15:7
**CLERK** [1] - 2:3
**collapsing** [1] - 5:1
**coming** [2] - 8:1, 12:7
**commenced** [1] - 23:9
**companies** [1] - 18:8
**comparable** [2] - 17:15, 20:16

**complete** [1] - 28:18
**completely** [2] - 3:2, 20:23
**completion** [3] - 6:19, 22:4, 24:7
**comply** [3] - 3:9, 23:3, 28:11
**complying** [3] - 9:15, 14:1
**component** [3] - 12:6, 12:12, 25:17
**computer** [1] - 1:23
**computer-aided** [1] - 1:23
**conceded** [1] - 25:17
**concerning** [1] - 22:22
**concerns** [3] - 5:5, 14:11, 23:14
**conclude** [1] - 26:24
**concluded** [1] - 29:17
**concludes** [2] - 24:17, 27:5
**conclusion** [3] - 8:9, 9:19, 22:10
**conducted** [2] - 22:25, 23:18
**conducting** [1] - 26:23
**consequence** [1] - 12:11
**consequences** [2] - 25:1, 26:5
**consider** [4] - 6:13, 9:6, 9:22, 14:15
**consideration** [6] - 6:21, 10:18, 11:22, 21:22, 23:12, 23:25
**considerations** [2] - 6:11, 6:12
**considered** [3] - 14:17, 24:10, 25:7
**considering** [1] - 28:16
**consistent** [1] - 14:11
**consistently** [1] - 14:7
**consolidate** [1] - 28:8
**consolidated** [1] - 27:21
**constitutes** [2] - 19:16, 19:17
**Constitution** [1] - 18:17
**constitutional** [1] - 5:18
**constitutionally** [1] - 27:12
**consuming** [3] - 9:13, 18:13, 18:19
**contemplates** [1] - 11:21
**contends** [1] - 20:12
**contest** [1] - 24:25
**context** [1] - 25:25
**continue** [4] - 7:1, 11:10, 26:15, 27:9
**continuing** [1] - 10:13
**controls** [1] - 18:25
**convene** [1] - 24:2
**convicted** [1] - 24:21
**coordinated** [1] - 23:1
**Coppolino** [2] - 1:16, 2:9
**correct** [3] - 6:7, 9:5, 30:4
**Council** [6] - 9:4, 18:22, 23:2, 23:16, 23:22, 24:1
**counsel** [6] - 2:5, 2:8, 16:20, 20:3, 20:15, 29:16
**countries** [1] - 18:9
**counts** [1] - 16:22
**couple** [3] - 7:5, 7:8, 20:4
**coupled** [1] - 19:15
**course** [1] - 19:25
**COURT** [43] - 1:2, 2:10, 2:14, 2:18, 3:6, 3:15, 3:24, 4:3, 4:7, 4:12, 4:15, 4:17, 5:1, 5:9, 5:16, 5:24, 6:1, 6:5, 6:24, 7:16, 7:23, 8:13, 8:18, 9:4, 9:9, 9:11, 12:5,

12:19, 12:25, 13:24, 14:8, 14:23, 15:3, 15:11, 15:21, 16:14, 20:1, 20:3, 21:7, 29:5, 29:9, 29:12, 30:1
**court** [6] - 8:8, 8:21, 8:22, 17:7, 18:3, 27:3
**Court** [71] - 1:20, 2:13, 2:22, 2:25, 3:1, 3:4, 3:16, 3:18, 4:9, 4:11, 5:2, 5:3, 5:10, 5:11, 5:17, 6:12, 7:11, 7:19, 11:4, 11:15, 14:3, 16:3, 16:8, 16:10, 16:18, 17:12, 17:25, 18:5, 18:17, 19:7, 19:8, 19:9, 19:10, 19:13, 19:14, 19:20, 20:13, 20:14, 20:20, 21:5, 21:9, 21:16, 22:7, 22:8, 23:13, 24:9, 24:17, 24:20, 25:6, 25:12, 25:24, 26:3, 26:8, 26:14, 26:19, 27:5, 27:10, 27:16, 27:20, 27:24, 28:1, 28:3, 28:10, 28:17, 28:21, 28:24, 28:25, 29:1, 29:7
**Court's** [22] - 2:11, 3:3, 3:11, 5:8, 7:4, 7:14, 15:25, 16:4, 17:9, 18:4, 18:9, 21:12, 21:13, 21:15, 22:16, 23:3, 23:14, 26:3, 26:11, 27:13, 28:10, 28:12
**courts** [1] - 8:7
**create** [5] - 7:8, 7:10, 7:14, 10:6, 12:24
**creation** [1] - 21:21
**crimes** [1] - 24:22
**criteria** [2] - 12:7, 12:14
**critical** [2] - 12:6, 12:12
**CRR** [1] - 1:20
**current** [5] - 4:20, 15:5, 19:22, 23:6, 25:10

# D

**damage** [1] - 4:21
**dangerous** [1] - 4:24
**database** [1] - 19:1
**Database** [1] - 21:18
**DATE** [1] - 30:10
**dated** [3] - 21:12, 22:16, 22:17
**days** [4] - 22:11, 28:14, 28:17, 29:13
**deadlines** [1] - 18:10
**deal** [2] - 14:25, 26:15
**DEC** [1] - 10:10
**December** [7] - 3:3, 21:12, 21:15, 22:16, 22:17, 22:18
**decided** [1] - 11:3
**decides** [1] - 19:2
**decision** [5] - 7:4, 15:25, 16:5, 18:11, 18:25
**decisions** [1] - 22:19
**Declaration** [1] - 11:25
**declarations** [1] - 26:16
**deems** [1] - 28:7
**deeply** [1] - 14:12
**defective** [2] - 16:7, 20:12
**defend** [1] - 4:19
**defendant** [1] - 19:4
**defendant's** [1] - 14:20
**Defendants** [1] - 1:9, 1:17
**defendants** [22] - 4:13, 5:20, 10:2,

10:18, 11:15, 13:12, 14:17, 14:23, 18:16, 19:7, 21:11, 21:16, 22:7, 22:15, 22:21, 24:6, 26:23, 27:6, 28:15, 28:18, 28:19, 29:10
**defendants'** [2] - 9:1, 22:13
**degree** [1] - 25:2
**delay** [1] - 27:12
**delays** [1] - 19:6
**deliberative** [4] - 23:10, 23:16, 24:4, 28:18
**demonstrated** [2] - 25:8, 25:11
**demonstration** [1] - 12:10
**denies** [2] - 27:24, 28:24
**deprivation** [1] - 11:7
**DEPUTY** [1] - 2:3
**derogatory** [2] - 6:17, 22:2
**described** [2] - 11:24, 23:14
**describes** [1] - 12:1
**detained** [1] - 10:12
**determination** [3] - 6:20, 14:13, 22:6
**determine** [2] - 6:14, 21:24, 28:6
**determined** [3] - 6:16, 11:23, 22:1
**develop** [3] - 5:2, 5:13, 6:8
**developing** [2] - 7:17, 22:22
**development** [2] - 22:25, 26:18
**DHS** [7] - 3:10, 5:22, 11:11, 19:9, 21:19, 22:12, 25:10
**different** [7] - 8:4, 9:21, 10:22, 11:5, 20:23, 21:3, 21:18
**difficult** [2] - 12:17, 14:12
**directed** [2] - 21:16, 22:7
**directs** [1] - 26:7
**disagree** [4] - 8:9, 8:17, 9:18, 15:10
**disclose** [4] - 6:9, 17:24, 18:5, 22:8
**disclosure** [4] - 6:10, 6:23, 6:24, 17:24
**disclosures** [6] - 6:5, 11:13, 11:18, 11:19, 14:2, 14:18
**discrete** [2] - 19:10, 19:12
**discretionary** [1] - 26:13
**discretions** [1] - 16:8
**discuss** [2] - 23:19, 24:3
**dismissed** [2] - 3:21, 16:22
**dispose** [1] - 4:11
**disputes** [1] - 20:14
**disseminated** [1] - 18:7
**distinguished** [2] - 20:18, 25:12
**distributed** [1] - 24:23
**district** [2] - 8:22, 17:7
**DISTRICT** [3] - 1:2, 1:2, 1:12
**divergence** [1] - 15:18
**DIVISION** [1] - 1:3
**domestically** [1] - 24:24
**done** [2] - 7:2, 14:7
**doubt** [1] - 25:3
**down** [2] - 9:3, 9:16
**draft** [1] - 8:2
**drag** [1] - 27:22
**due** [15] - 2:19, 3:5, 3:17, 3:18, 4:1, 4:5, 4:9, 11:8, 16:23, 17:3, 17:5, 21:13,

21:20, 25:9, 28:1
**duplicates** [1] - 28:2

## E

**EASTERN** [1] - 1:2
**efficiently** [1] - 28:8
**effort** [3] - 9:16, 9:20, 26:10
**either** [1] - 25:23
**Eldridge** [1] - 25:23
**elements** [2] - 19:10, 19:12
**ELHADY** [1] - 1:4
**Elhady** [1] - 2:4
**emphasize** [1] - 15:12
**emphasizes** [1] - 24:20
**enabling** [1] - 23:21
**end** [1] - 23:15
**enforcement** [3] - 18:8, 24:23, 24:24
**engage** [1] - 26:10
**engaged** [2] - 15:1, 15:13
**engaging** [1] - 7:11
**enhanced** [2] - 12:25, 13:1
**enjoin** [1] - 19:21
**enter** [4] - 3:4, 5:4, 26:12, 27:20
**entered** [1] - 22:17
**entirely** [1] - 20:25
**entitled** [3] - 6:15, 21:24, 30:5
**enumerated** [1] - 23:13
**equal** [3] - 3:19, 4:2, 16:22
**especially** [1] - 16:19
**essence** [2] - 14:16, 19:18
**essentially** [3] - 14:5, 19:21, 28:2
**estimate** [1] - 24:6
**et** [4] - 1:4, 1:8, 2:4
**evading** [1] - 18:11
**evaluate** [4] - 23:10, 23:19, 23:23, 24:4
**evaluating** [2] - 23:17, 24:9
**ex** [1] - 28:22
**exactly** [5] - 13:17, 16:17, 20:7, 20:8, 20:17
**exclusion** [1] - 19:19
**excused** [1] - 29:16
**execute** [1] - 19:8
**executes** [1] - 3:11
**Executive** [1] - 25:19
**exhaustion** [1] - 10:20
**exists** [1] - 17:2
**expect** [1] - 8:1
**expeditiously** [1] - 27:18
**expend** [1] - 8:1
**experience** [1] - 26:2
**explained** [2] - 11:13, 13:16
**explanation** [3] - 6:15, 11:22, 21:25
**explicitly** [1] - 17:13
**extensions** [1] - 28:15
**extent** [1] - 28:19

## F

**faced** [1] - 13:17
**facing** [1] - 10:1
**fact** [4] - 7:12, 9:17, 10:6, 13:13
**factor** [1] - 26:1
**factors** [3] - 6:21, 9:22, 21:23
**facts** [7] - 17:14, 17:15, 17:17, 18:24, 20:16, 20:19, 25:12
**factual** [2] - 17:10, 17:11
**far** [1] - 27:2
**fashion** [1] - 26:19
**favor** [5] - 8:21, 9:19, 9:21, 11:3, 14:20
**FBI** [5] - 18:25, 19:1, 19:2, 19:4
**FBI's** [1] - 18:24
**feasibility** [1] - 23:17
**February** [3] - 1:8, 22:21, 30:8
**federal** [4] - 18:3, 18:15, 18:20, 19:11
**few** [2] - 19:12, 24:3
**fight** [1] - 14:19
**Fikre** [3] - 18:2, 20:22
**file** [1] - 16:22
**filed** [4] - 16:5, 21:11, 22:15, 22:21
**final** [7] - 3:4, 3:21, 10:20, 11:16, 18:11, 22:12, 23:3, 23:23, 24:5, 27:8, 28:3, 28:12
**finally** [2] - 27:15, 28:10
**firm** [3] - 3:11, 18:9, 18:10
**first** [6] - 4:12, 7:21, 23:4, 24:2, 24:11, 24:17
**five** [1] - 12:23
**fly** [2] - 20:24, 25:17
**following** [3] - 21:23, 23:2, 27:20
**FOR** [1] - 1:2
**forced** [1] - 13:19
**forces** [1] - 13:16
**foregoing** [1] - 30:4
**foreign** [1] - 18:9
**formulated** [1] - 23:24
**forward** [3] - 13:13, 27:4, 28:9
**four** [1] - 23:13
**Fourth** [16] - 4:20, 4:22, 9:2, 9:17, 9:18, 10:21, 11:16, 15:4, 15:10, 15:17, 16:24, 17:1, 17:6, 20:7, 25:24, 29:14
**fourth** [2] - 22:4, 24:16
**front** [1] - 17:19
**fully** [1] - 16:8

## G

**Gadeir** [2] - 1:17, 2:16
**generated** [1] - 24:4
**given** [11] - 6:15, 6:18, 11:22, 13:13, 14:19, 16:12, 21:2, 21:22, 21:25, 22:3
**global** [2] - 18:15, 18:18
**government** [42] - 2:7, 3:8, 4:18, 5:13, 6:13, 7:1, 7:13, 9:22, 11:9, 12:4, 12:8, 13:15, 13:19, 14:1, 14:15, 15:22, 15:23, 17:4, 17:15, 17:22, 18:7, 18:15, 18:21,

4

19:4, 19:11, 19:23, 22:24, 23:2, 23:4,
23:9, 24:18, 24:22, 25:16, 26:2, 26:5,
26:6, 26:7, 26:10, 26:21, 27:19, 28:11,
28:13
**Government** [1] - 4:23
**government's** [3] - 4:24, 22:22, 25:5
**grandmother** [1] - 17:19
**grant** [3] - 16:9, 20:21, 21:5
**granted** [1] - 19:8
**granting** [1] - 27:17
**grants** [1] - 28:25
**gravity** [1] - 14:21
**great** [1] - 14:25
**Groh** [1] - 11:24
**grounds** [1] - 19:17

### H

**habeas** [1] - 10:12
**hand** [1] - 27:10
**handcuffed** [1] - 17:18
**hands** [1] - 17:9
**hangs** [1] - 15:19
**hard** [1] - 20:6
**harm** [20] - 5:15, 6:25, 9:24, 10:2, 10:3,
10:4, 10:13, 10:24, 11:1, 11:14, 12:21,
13:7, 13:11, 13:23, 14:18, 17:16, 17:20,
26:2, 27:7, 27:11
**harmed** [2] - 11:9, 13:13
**harmed/injured** [1] - 24:13
**harms** [2] - 11:2, 13:6
**Hassan** [2] - 17:17, 17:18
**HEALY** [22] - 4:16, 4:18, 5:7, 5:11,
5:19, 5:25, 6:3, 6:7, 7:5, 7:21, 7:24,
8:16, 8:19, 9:7, 9:10, 9:12, 12:17,
12:20, 13:1, 14:1, 14:9, 20:4
**Healy** [3] - 1:15, 2:8, 2:11
**hear** [2] - 4:12, 14:23
**HEARING** [1] - 1:11
**Honor** [28] - 2:8, 2:15, 2:24, 3:7, 4:4,
4:16, 4:18, 5:7, 5:12, 5:19, 7:6, 8:3,
8:17, 9:20, 10:1, 10:9, 10:25, 12:18,
13:12, 14:9, 15:1, 15:7, 16:17, 20:2,
20:5, 29:3, 29:4
**Honor's** [3] - 8:9, 9:18, 11:18
**HONORABLE** [1] - 1:12
**hospital** [1] - 17:20
**hypothetical** [1] - 12:24

### I

**identified** [1] - 23:4
**illegal** [3] - 17:18, 18:12, 18:19
**immediate** [1] - 26:5
**impact** [1] - 12:14
**impacted** [1] - 26:10
**implement** [2] - 10:19, 26:24
**implementation** [1] - 7:18
**implications** [1] - 23:17
**implicit** [1] - 3:3

**important** [4] - 4:22, 16:19, 24:20,
27:18
**impose** [1] - 26:4
**include** [1] - 6:13
**inclusion** [7] - 19:1, 19:14, 19:15,
19:19, 19:20, 19:21, 19:22
**independent** [3] - 15:14, 18:23, 26:25
**indicate** [1] - 11:2
**individuals** [2] - 13:4, 23:7
**inform** [1] - 12:3
**information** [7] - 6:17, 14:14, 19:2,
22:2, 23:7, 25:21, 28:20
**inherent** [1] - 28:10
**injunction** [2] - 3:11, 13:15
**injunctions** [1] - 16:1
**injunctive** [2] - 19:10, 19:12
**injure** [1] - 24:15
**injuries** [2] - 20:16, 20:17
**injury** [1] - 25:11
**input** [1] - 9:2
**instead** [2] - 9:21, 16:5
**intend** [1] - 3:20
**intending** [2] - 3:9, 3:22
**inter** [2] - 23:10, 23:16
**inter-agency** [2] - 23:10, 23:16
**interest** [10] - 10:3, 12:4, 24:16, 25:8,
25:22, 26:7, 27:3, 27:16, 27:17
**interested** [1] - 24:15
**interests** [4] - 10:14, 11:6, 11:7, 26:22
**interlocutory** [3] - 16:9, 16:25, 26:12
**intervention** [2] - 3:11, 18:10
**intra** [1] - 23:16
**irreparable** [9] - 5:15, 6:25, 9:24, 10:2,
10:24, 11:1, 13:23, 26:2, 27:7
**irreparably** [4] - 11:9, 13:13, 24:13,
27:11
**irrespective** [1] - 3:16
**irreversible** [1] - 4:21
**issuance** [1] - 24:14
**issue** [11] - 3:1, 3:17, 7:20, 8:13,
14:21, 14:24, 19:13, 28:2, 29:1
**issued** [1] - 26:16
**issues** [17] - 2:23, 7:17, 9:6, 15:6,
15:9, 15:19, 15:20, 21:8, 23:13, 26:9,
26:25, 27:13, 27:18, 27:22, 28:6, 28:7,
28:16
**itself** [5] - 6:1, 6:3, 11:24, 25:22, 27:5

### J

**January** [1] - 22:15
**job** [1] - 9:11
**JUDGE** [1] - 1:12
**judgment** [8] - 3:4, 11:1, 11:3, 11:5,
12:1, 14:17, 22:17, 23:14
**judicial** [1] - 9:1
**jurisdiction** [2] - 15:14, 15:15
**jurisdictional** [1] - 7:10
**Justin** [2] - 1:18, 2:16

### K

**KABLE** [1] - 1:7
**Kaneshiro** [2] - 30:3, 30:8
**KANESHIRO** [2] - 1:20, 30:10
**Kaneshiro-Miller** [2] - 30:3, 30:8
**KANESHIRO-MILLER** [2] - 1:20, 30:10
**keep** [1] - 18:11
**keeps** [1] - 12:8
**kind** [3] - 2:25, 3:9, 10:10
**kinds** [1] - 12:3
**knows** [1] - 25:4

### L

**lack** [1] - 19:16
**lacks** [1] - 16:10
**large** [2] - 9:12, 18:13
**last** [3] - 10:17, 12:23, 20:3
**law** [4] - 14:20, 18:7, 24:23, 24:24
**learn** [2] - 13:4, 13:5, 13:9
**least** [4] - 8:23, 8:25, 14:19, 25:14
**legal** [6] - 7:9, 14:20, 15:18, 20:19,
26:9, 26:17
**legally** [1] - 8:2
**level** [1] - 23:1
**liability** [1] - 17:5
**liberty** [3] - 11:7, 25:8, 25:22
**lies** [1] - 24:16
**life** [1] - 25:4
**light** [3] - 15:24, 16:4, 26:8
**likelihood** [2] - 8:6, 9:25
**likely** [4] - 8:15, 13:14, 13:22, 24:12
**likewise** [1] - 14:14
**list** [10] - 12:2, 12:10, 12:12, 13:3,
20:24, 25:1, 25:2, 25:3, 25:17
**listed** [2] - 5:21, 21:17
**listing** [3] - 5:20, 21:17, 22:9
**litigation** [2] - 18:2, 28:9
**live** [1] - 17:3
**look** [3] - 4:7, 10:2, 10:21
**lost** [1] - 15:25

### M

**Maqaleh** [1] - 10:9
**Mathews** [1] - 25:23
**matter** [7] - 2:25, 4:8, 12:15, 16:18,
18:3, 27:22, 30:5
**meaningful** [2] - 15:18, 19:16
**meet** [3] - 6:16, 11:23, 22:1
**meeting** [1] - 24:2
**Meeting** [1] - 24:8
**meetings** [1] - 23:19
**members** [1] - 23:15
**mentioned** [4] - 20:15, 20:22, 21:5,
27:6
**mentioning** [1] - 21:1
**merge** [1] - 22:19

merited [2] - 10:15, 10:16
merits [10] - 8:7, 8:11, 8:24, 9:25, 14:21, 24:12, 24:19, 25:15, 26:17
midst [1] - 10:23
might [7] - 7:11, 10:21, 13:2, 13:3, 14:3, 20:8, 26:24
militate [1] - 8:21
Miller [2] - 30:3, 30:8
MILLER [2] - 1:20, 30:10
mind [1] - 8:19
minimal [2] - 10:5, 17:16
modicum [1] - 6:23
modify [1] - 13:16
Mohammed [1] - 25:17
months [2] - 8:1, 12:23
moot [4] - 13:14, 13:22, 13:25, 14:5
morning [1] - 2:15
MOTION [1] - 1:11
motion [11] - 2:12, 2:18, 2:19, 4:15, 10:1, 12:1, 21:11, 24:9, 27:25, 28:25
motions [2] - 2:17, 22:20
moved [1] - 4:18
moving [4] - 13:13, 17:23, 24:11, 27:4
MR [34] - 2:15, 2:24, 3:7, 3:20, 4:1, 4:4, 4:8, 4:14, 4:16, 4:18, 5:7, 5:11, 5:19, 5:25, 6:3, 6:7, 7:5, 7:21, 7:24, 8:16, 8:19, 9:7, 9:10, 9:12, 12:17, 12:20, 13:1, 14:1, 14:9, 15:22, 16:17, 20:2, 20:4, 29:3
MS [8] - 2:7, 2:11, 14:25, 15:5, 15:12, 29:4, 29:6, 29:10
multiple [2] - 8:1, 23:19

# N

name [1] - 25:19
named [4] - 5:21, 21:17, 22:9, 25:14
narrower [1] - 13:6
narrowing [1] - 13:8
national [14] - 4:21, 4:23, 6:2, 6:3, 10:13, 11:8, 11:10, 11:14, 13:11, 14:7, 14:11, 25:19, 26:6, 26:21
nature [1] - 24:20
necessarily [3] - 6:22, 10:7, 15:19
necessary [7] - 6:14, 8:3, 21:23, 23:8, 26:10, 26:16, 26:19
need [1] - 29:12
needed [1] - 3:12
needs [1] - 8:17
never [2] - 17:10, 21:2
new [6] - 4:24, 6:8, 7:7, 7:14, 19:23, 19:24
next [2] - 13:12, 24:2
no-fly-list [2] - 20:24, 25:17
non [2] - 13:9, 24:24
non-law [1] - 24:24
non-status [1] - 13:9
nondelegation [4] - 3:5, 3:19, 4:2, 16:23
none [1] - 10:7

nonparties [1] - 19:5
normal [1] - 19:24
note [1] - 2:5
noted [1] - 17:12
nothing [1] - 29:12
notice [12] - 6:15, 6:16, 6:17, 11:22, 11:24, 14:13, 15:5, 21:2, 21:25, 22:1, 22:3, 22:15
notification [2] - 12:1, 13:10
notified [1] - 20:24
noting [1] - 25:16
nought [1] - 9:20
number [2] - 7:9, 20:6
Number [1] - 2:3
numerous [3] - 8:22, 20:16, 20:17

# O

objective [1] - 14:12
observing [1] - 26:3
OF [3] - 1:2, 1:11, 30:1
offers [1] - 6:12
OFFICIAL [1] - 30:1
once [1] - 24:7
one [15] - 4:10, 7:9, 7:17, 7:19, 7:24, 9:7, 9:13, 10:17, 11:5, 12:21, 19:13, 20:6, 20:7, 26:9, 29:6
ongoing [1] - 24:4
opaqueness [1] - 18:22
opening [1] - 12:1
operating [3] - 18:6, 18:18, 19:1
opining [1] - 25:14
opinion [5] - 3:12, 7:11, 8:17, 15:18, 23:14
opinions [3] - 8:8, 8:21, 8:22
opportunity [7] - 6:17, 6:19, 15:24, 16:3, 22:2, 22:5, 24:25
opposed [1] - 22:20
opposing [1] - 16:20
opposition [1] - 13:15
options [2] - 23:11, 23:23
order [26] - 3:4, 4:19, 5:8, 5:12, 5:16, 5:19, 6:9, 6:13, 7:6, 9:15, 11:18, 11:21, 19:13, 21:15, 22:12, 22:17, 23:3, 23:23, 24:5, 26:7, 26:12, 27:8, 28:3, 28:4, 28:23, 29:1
Order [1] - 21:12
ordered [12] - 4:23, 5:2, 6:7, 7:22, 8:4, 9:3, 10:6, 11:10, 14:16, 22:10, 26:4
ordering [1] - 29:7
Orders [1] - 22:16
orders [8] - 5:4, 6:12, 22:18, 22:19, 26:16, 26:20, 27:20, 28:12
Oregon [2] - 18:2, 18:3
otherwise [1] - 8:4
outcome [4] - 5:5, 7:20, 26:22, 26:25
outstanding [1] - 3:13
overlooking [1] - 17:17
own [1] - 18:4

# P

page [1] - 10:10
papers [1] - 15:1
paragraph [1] - 11:25
part [2] - 3:23, 26:13
parte [1] - 28:22
participants [2] - 19:3, 23:22
particular [13] - 6:10, 6:11, 6:21, 8:8, 9:22, 10:8, 10:11, 11:21, 12:2, 18:1, 21:22, 25:7
particularly [1] - 14:19
parties [1] - 24:15
party [2] - 11:6, 24:11
Patricia [2] - 30:3, 30:8
PATRICIA [2] - 1:20, 30:10
pending [6] - 5:5, 7:20, 18:3, 26:22, 27:2, 27:21
people [2] - 13:2, 13:9
period [1] - 3:24
permission [2] - 2:11, 18:5
person [3] - 12:2, 12:15, 25:3
persons [2] - 12:3, 13:6
pertaining [1] - 26:20
piece [5] - 6:24, 12:5, 17:6, 17:8
pieces [1] - 17:5
Piehota [1] - 2:4
place [1] - 24:8
placed [4] - 24:22, 25:1, 25:2, 28:21
placement [3] - 19:17, 22:13, 25:11
plaintiff [15] - 5:21, 6:14, 6:16, 10:13, 11:23, 12:2, 17:13, 20:9, 20:11, 20:23, 21:17, 21:24, 21:25, 25:7, 25:10
plaintiff's [2] - 10:8, 20:15
plaintiffs [36] - 2:16, 3:14, 4:25, 5:14, 6:6, 6:9, 6:10, 6:18, 6:22, 6:23, 7:8, 10:4, 10:11, 11:1, 11:19, 11:20, 13:14, 14:4, 14:11, 15:1, 15:13, 15:16, 17:16, 17:21, 18:14, 21:2, 22:3, 22:9, 22:19, 22:23, 23:5, 25:14, 27:11, 28:6
Plaintiffs [2] - 1:5, 1:15
plaintiffs' [2] - 22:13, 23:12
pleadings [1] - 21:8
point [12] - 3:25, 7:21, 7:24, 7:25, 8:4, 10:17, 13:12, 15:12, 16:21, 20:9, 28:13, 29:6
pointing [1] - 19:5
points [2] - 7:5, 20:4
policy [4] - 8:2, 10:19, 23:17
position [6] - 2:22, 2:24, 3:15, 18:2, 21:9, 24:6
possibility [1] - 26:23
possible [3] - 14:6, 23:19, 27:18
potentially [2] - 7:10, 13:25
Powell [2] - 1:15, 2:7
POWELL [8] - 2:7, 2:11, 14:25, 15:5, 15:12, 29:4, 29:6, 29:10
powers [1] - 7:13
practical [2] - 7:9, 10:17

6

**practices** [2] - 15:24, 16:4
**precise** [1] - 25:24
**prepare** [1] - 26:8
**present** [5] - 2:12, 5:2, 5:17, 12:21, 23:22
**presented** [2] - 25:13, 28:3
**presenting** [1] - 2:17
**presents** [2] - 12:17, 21:3
**prevail** [2] - 8:15, 8:25
**prevent** [1] - 4:20
**previously** [2] - 2:23, 3:8
**private** [1] - 18:8
**problem** [1] - 12:9
**problems** [3] - 7:8, 7:10, 7:13
**procedural** [10] - 2:19, 3:17, 4:5, 4:9, 17:3, 17:5, 21:13, 21:20, 25:9, 28:1
**procedure** [2] - 12:13, 13:10
**procedures** [31] - 4:24, 5:3, 5:13, 5:14, 5:22, 7:2, 7:3, 7:7, 7:17, 7:18, 9:6, 11:12, 13:16, 14:2, 21:19, 22:8, 22:12, 22:14, 22:23, 23:11, 26:8, 26:18, 26:20, 26:25, 27:12, 27:19, 28:12, 28:14, 28:20, 29:8
**proceed** [2] - 7:19, 11:15, 26:17
**Proceedings** [2] - 1:22, 29:17
**proceedings** [3] - 24:16, 25:20, 30:5
**proceeds** [1] - 9:17
**process** [46] - 2:20, 3:5, 3:17, 3:18, 4:2, 4:5, 4:9, 4:20, 5:1, 5:23, 6:8, 6:22, 7:14, 9:15, 9:23, 10:7, 10:19, 10:21, 10:22, 11:8, 11:11, 12:22, 13:4, 13:5, 14:10, 14:17, 16:23, 17:3, 17:5, 19:3, 21:13, 21:19, 21:21, 23:10, 23:17, 23:18, 23:20, 24:5, 24:7, 25:9, 26:11, 28:2
**processing** [1] - 3:10
**produced** [1] - 1:23
**progress** [2] - 22:22
**promptly** [2] - 5:20, 21:16
**proposals** [2] - 23:24, 24:4
**propose** [4] - 16:3, 23:10, 23:19, 26:8
**proposed** [2] - 19:9, 28:14
**proposes** [1] - 27:19
**proposing** [2] - 7:17, 17:4
**prospects** [1] - 25:5
**protect** [1] - 4:19
**protectable** [1] - 25:8
**protecting** [1] - 5:4
**protection** [3] - 3:19, 4:2, 16:23
**protections** [1] - 25:9
**protects** [1] - 26:21
**provide** [4] - 14:4, 14:14, 19:2, 21:20
**provided** [2] - 14:10, 25:9
**prudential** [1] - 11:7
**public** [4] - 10:3, 24:16, 27:16, 27:17
**purpose** [1] - 11:6
**purposes** [1] - 8:11
**pursuant** [1] - 21:13
**put** [1] - 16:25

## Q

**qualification** [1] - 12:7
**qualify** [1] - 12:15
**quarterly** [1] - 24:2
**questions** [6] - 2:13, 4:3, 4:5, 4:22, 20:19, 29:4
**quick** [2] - 20:4, 29:4
**quite** [1] - 12:5

## R

**rather** [2] - 13:20, 26:7
**reading** [2] - 5:8, 5:25
**real** [2] - 13:19, 24:25
**reason** [6] - 10:5, 12:20, 13:18, 15:16, 16:6, 20:21
**reasonable** [1] - 7:25
**reasonably** [1] - 21:20
**reasons** [9] - 9:8, 10:15, 10:25, 21:4, 27:5, 27:6, 27:15, 27:24, 28:24
**recertify** [4] - 2:19, 2:22, 3:17, 3:18, 21:12, 28:1, 28:5, 28:25
**record** [6] - 2:6, 17:10, 17:11, 21:22, 24:17, 30:4
**redress** [6] - 6:22, 13:16, 14:4, 14:16, 23:18, 23:20
**refer** [1] - 10:9
**refuses** [1] - 19:11
**regard** [4] - 4:5, 18:22, 19:14, 24:19
**regarding** [1] - 16:1
**regards** [2] - 2:17, 3:4
**relating** [1] - 9:6
**relief** [3] - 3:13, 19:8, 26:16
**reluctance** [2] - 17:24, 17:25
**remaining** [3] - 15:20, 26:15, 28:6
**remains** [1] - 3:13
**remedies** [3] - 16:1, 17:6, 17:8
**remedy** [2] - 3:1, 15:23
**remedying** [1] - 11:7
**remove** [1] - 7:7
**reply** [1] - 16:21
**report** [4] - 9:14, 22:11, 22:22, 22:24
**reported** [1] - 1:22
**REPORTER** [1] - 30:1
**Reporter** [1] - 1:20
**represents** [1] - 25:18
**require** [4] - 6:23, 11:18, 28:11, 28:13
**required** [8] - 8:3, 8:10, 11:20, 13:21, 14:3, 21:20, 27:8, 28:20
**requirement** [2] - 7:7, 12:6
**requirements** [1] - 24:10
**requires** [2] - 5:13, 5:16
**requiring** [3] - 6:25, 7:12, 7:13
**reserving** [1] - 7:20
**resolution** [2] - 26:9, 27:13
**resolve** [1] - 27:4
**resolved** [1] - 3:2
**resolving** [1] - 27:17

**resources** [2] - 9:1
**respect** [17] - 2:12, 5:7, 5:20, 6:18, 8:6, 10:18, 10:24, 10:25, 11:4, 11:17, 13:7, 20:11, 22:3, 22:9, 22:23, 25:13, 26:1
**respectfully** [1] - 4:10
**respond** [2] - 6:17, 22:2
**response** [1] - 20:8
**restraint** [1] - 19:16
**result** [1] - 10:7
**review** [20] - 5:17, 5:20, 6:15, 6:19, 6:20, 7:2, 7:15, 9:5, 21:16, 21:24, 22:4, 22:5, 22:10, 22:13, 22:25, 23:11, 26:24, 27:20, 28:4, 28:18
**reviewed** [5] - 12:8, 12:16, 19:24, 21:8, 25:6
**revised** [28] - 5:3, 5:22, 6:22, 7:3, 12:13, 14:16, 16:3, 21:19, 22:8, 22:12, 22:14, 22:23, 23:3, 23:11, 23:23, 24:5, 26:8, 26:18, 26:20, 26:24, 27:19, 28:3, 28:12, 28:14, 28:19, 29:7
**revision** [1] - 3:10
**revisions** [1] - 19:9
**risk** [3] - 11:14, 13:19, 14:18
**RMR** [1] - 1:20
**road** [2] - 9:3, 9:16
**rule** [5] - 4:22, 9:19, 9:21, 20:8, 21:9
**ruling** [1] - 10:20
**rulings** [1] - 28:11
**run** [1] - 13:24
**rushed** [1] - 17:20

## S

**Sadowsky** [2] - 1:18, 2:16
**scheduled** [2] - 24:1, 24:7
**Screening** [2] - 21:18, 23:6
**screening** [2] - 12:25, 13:1
**seal** [1] - 28:21
**second** [4] - 7:20, 24:12, 26:1, 29:10
**secondly** [2] - 22:1, 23:9
**secret** [4] - 18:6, 18:15, 24:22, 25:20
**Section** [1] - 26:14
**security** [14] - 4:21, 4:23, 6:2, 6:4, 10:13, 11:9, 11:10, 11:14, 13:11, 14:7, 14:11, 25:19, 26:6, 26:21
**see** [1] - 29:12
**seeking** [1] - 14:4
**send** [1] - 17:6
**sense** [2] - 4:11, 16:12
**separate** [1] - 16:20
**separation** [1] - 7:13
**separation-of-powers** [1] - 7:13
**September** [3] - 3:12, 15:25, 16:5
**seriously** [1] - 27:11
**served** [1] - 27:16
**set** [1] - 16:3
**settled** [1] - 24:10
**severity** [1] - 25:2
**Shibly** [2] - 17:17, 17:18

**shooken** [1] - 17:19
**short** [1] - 19:13
**shorthand** [1] - 1:22
**show** [1] - 17:17
**showing** [10] - 6:14, 8:10, 8:12, 8:15, 8:24, 11:23, 21:23, 24:11, 24:18, 27:7
**shown** [1] - 10:5
**significant** [4] - 12:21, 25:4, 26:6, 26:21
**significantly** [1] - 10:22
**similarly** [1] - 10:16
**simply** [6] - 8:2, 11:17, 12:11, 14:6, 15:13, 26:7
**single** [1] - 18:7
**six** [1] - 12:23
**slightly** [1] - 13:8
**sometimes** [1] - 18:23
**sorry** [1] - 19:11
**sort** [2] - 7:12, 15:8
**specific** [4] - 16:1, 23:24, 24:4, 26:14
**specifically** [2] - 11:21, 25:12
**split** [1] - 17:4
**squarely** [1] - 25:23
**standard** [11] - 8:16, 14:12, 15:2, 15:14, 19:2, 19:14, 19:15, 19:18, 19:20, 19:21, 19:22
**start** [1] - 9:23
**started** [1] - 27:9
**state** [1] - 10:15
**States** [1] - 24:21
**STATES** [2] - 1:2, 1:12
**status** [19] - 6:18, 9:14, 10:8, 12:8, 12:15, 13:4, 13:5, 13:9, 17:25, 18:5, 20:24, 21:2, 22:4, 22:8, 22:11, 22:21, 22:24, 23:6, 23:12
**stay** [24] - 2:12, 2:19, 4:15, 4:19, 4:21, 8:11, 10:2, 10:14, 10:20, 14:21, 17:7, 20:21, 21:5, 21:11, 24:9, 24:10, 24:14, 26:3, 27:10, 27:17, 27:25, 28:25, 29:11
**stayed** [3] - 13:20, 24:5, 27:8
**stays** [1] - 17:7
**stenotype** [1] - 1:22
**steps** [1] - 23:2
**still** [1] - 13:7
**stopped** [1] - 12:23
**strong** [4] - 8:15, 8:24, 24:11, 24:18
**subject** [1] - 18:17
**submission** [1] - 22:11
**submissions** [1] - 28:22
**submit** [1] - 28:13
**submitted** [2] - 28:20, 28:21
**substantial** [4] - 8:10, 8:14, 8:20, 8:23
**substantially** [3] - 7:2, 24:15, 27:9
**substantive** [4] - 3:5, 3:18, 4:1, 16:23
**succeed** [2] - 24:12, 24:19
**success** [2] - 8:6, 9:25
**suffer** [1] - 27:7
**sufficient** [4] - 12:14, 27:7, 28:15, 28:17

**sufficiently** [3] - 24:18, 25:11, 27:5
**suggest** [2] - 4:10, 13:14
**summary** [5] - 11:1, 11:3, 11:5, 12:1, 23:14
**Supreme** [1] - 25:24
**suspenders** [1] - 15:8
**system** [1] - 23:21

**T**

**table** [1] - 2:8
**tandem** [1] - 26:18
**target** [1] - 17:23
**tens** [1] - 24:23
**Tenth** [3] - 17:12, 20:18, 25:6
**term** [1] - 26:4
**terrorism** [1] - 14:19
**Terrorism** [1] - 21:18
**terrorist** [1] - 18:15
**Terrorist** [1] - 23:6
**THE** [44] - 1:2, 1:12, 2:3, 2:10, 2:14, 2:18, 3:6, 3:15, 3:24, 4:3, 4:7, 4:12, 4:15, 4:17, 5:1, 5:9, 5:16, 5:24, 6:1, 6:5, 6:24, 7:16, 7:23, 8:13, 8:18, 9:4, 9:9, 9:11, 12:5, 12:19, 12:25, 13:24, 14:8, 14:23, 15:3, 15:11, 15:21, 16:14, 20:1, 20:3, 21:7, 29:5, 29:9, 29:12
**themselves** [1] - 27:21
**thinks** [1] - 12:9
**third** [2] - 24:1, 24:14
**thousands** [1] - 24:23
**threat** [1] - 14:15
**threaten** [1] - 26:5
**threshold** [12] - 6:13, 6:16, 11:23, 12:14, 12:22, 13:2, 13:8, 13:11, 14:13, 20:6, 21:23, 22:1
**time-consuming** [3] - 9:13, 18:13, 18:19
**today** [2] - 3:22, 17:3
**together** [2] - 21:21, 22:18
**Tony** [2] - 1:16, 2:9
**towards** [2] - 23:15, 23:21
**transcript** [1] - 30:4
**TRANSCRIPT** [1] - 1:11
**Transcript** [1] - 1:23
**transcription** [1] - 1:23
**TRENGA** [1] - 1:12
**trigger** [1] - 14:13
**triggering** [1] - 25:8
**trip** [3] - 12:7, 12:22, 13:10
**TRIP** [6] - 3:10, 5:22, 11:11, 21:19, 22:12, 25:10
**trying** [1] - 17:8
**TSBD** [1] - 22:3
**TSDB** [10] - 5:15, 5:21, 6:18, 11:19, 11:21, 19:15, 21:17, 22:9, 22:13, 23:5
**two** [6] - 7:16, 7:25, 8:8, 8:20, 17:5, 29:4
**type** [1] - 20:7

**typically** [1] - 27:3

**U**

**U.S.C** [2] - 21:14, 26:13
**under** [10] - 11:1, 11:7, 13:10, 15:16, 22:14, 25:22, 26:12, 26:14, 28:16, 28:21
**undertaken** [1] - 9:14
**undertaking** [3] - 9:13, 18:14, 18:20
**undisclosed** [1] - 25:21
**undisputed** [2] - 17:17, 18:24
**unequivocal** [1] - 16:4
**unequivocally** [1] - 10:12
**unfair** [1] - 19:4
**unhelpful** [1] - 18:1
**UNITED** [2] - 1:2, 1:12
**United** [1] - 24:20
**universe** [2] - 13:6, 13:8
**unprecedented** [1] - 25:18
**up** [8] - 7:3, 8:1, 12:7, 12:13, 14:16, 19:22, 19:23, 19:24

**V**

**vacated** [2] - 4:3, 28:5
**vagueness** [1] - 19:15
**valid** [1] - 16:16
**vary** [1] - 25:2
**view** [5] - 4:24, 5:15, 8:4, 16:15, 23:21
**VIRGINIA** [1] - 1:2
**Virginia** [1] - 1:7
**volition** [1] - 18:4

**W**

**wait** [1] - 9:1
**waive** [1] - 14:5
**watchlist** [17] - 10:8, 17:11, 17:18, 17:24, 18:5, 18:7, 18:12, 18:16, 18:19, 18:25, 19:17, 23:12, 24:22, 25:12, 25:18, 25:22, 25:25
**watchlisting** [4] - 15:24, 16:4, 19:3, 23:21
**Watchlisting** [7] - 9:4, 18:22, 23:1, 23:15, 23:22, 24:1, 24:7
**ways** [3] - 8:7, 17:23, 25:5
**weeks** [1] - 24:3
**weigh** [1] - 15:17
**weight** [1] - 14:20
**welcome** [1] - 2:14
**well-settled** [1] - 24:10
**whatsoever** [1] - 21:3
**whereas** [1] - 11:8
**whole** [1] - 16:17
**willingness** [1] - 26:11
**withheld** [1] - 3:7
**word** [2] - 11:16, 20:3
**worried** [1] - 6:5
**worth** [1] - 25:16

**Wray** [1] - 25:6

## Y

**years** [2] - 17:22, 28:16