UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

**ANAS ELHADY, et al.,**

    Plaintiffs,

v.

**CHRIS MAGNUS,** Commissioner, U.S. Customs and Border Protection; in his official capacity, only;

    Defendant.

Case No. 16-cv-00375
Hon. Anthony J. Trenga

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AMEND COMPLAINT**

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AMEND COMPLAINT

The Government understandably does not want to defend the constitutionality of its actions in this case. Having lost initially in the District Court, it won on appeal by obtaining an opinion demanding that Plaintiffs bring narrower, more targeted claims. With the Plaintiffs having done that, the Government now suggests it wins on a technicality: because the Plaintiffs did not know to bring narrower claims when it first brought this claim, they now find themselves with no rights at all. But that was not the mandate of the Fourth Circuit.

The Government next ventures into further procedural arguments, claiming that a scheduling order that expired in 2017 prohibits amendment. But Plaintiffs' claims arise out of the 2021 *Elhady* decision, and the reasoning is based off of landmark Fourth Circuit rulings in 2018 and 2019. Plaintiffs did not know it needed, and could not know it had, the Fourth Amendment claims that form the primary basis for its Amended Complaint back in 2017. And the Government has not missed out on any discovery relevant to those claims. So any failure to meet the scheduling order should be excused by good cause.

Finally, the Government suggests the case is moot is because none of the complained-of

events occurred after 2017. But that is not a result of any change in watchlist policy, or even any change in watchlist status. Instead, it is merely a result of the fact that Plaintiffs have limited their factual allegations to those for which there was already effective discovery, in order to avoid prejudicing the Government. The Government separately suggests (but expressly declines to assert) that it may have taken Plaintiffs off the watchlist. But it has not done so. If it has done so, it should prove it to the Court. It should do so openly, rather than denying Plaintiffs their Constitutionally-protected rights to Due Process by defeating their claims with secret evidence. And even then, simply removing Plaintiffs from the watchlist in an attempt to avoid this litigation would constitute the exact kind of voluntary cessation that would not moot this case.

## ARGUMENT

### I. The Plaintiffs' Motion to Amend is consistent with the Court of Appeals' Mandate.

The Fourth Circuit "reverse[d] the district court's denial of the government's motion for summary judgment." *Elhady v. Kable*, 993 F.3d 208, 230-31 (4th Cir. 2021). Its mandate was therefore "to enter judgment in favor of the government." *Id.* at 231. And that is exactly what—by the parties' consent—the District Court did. *See* Dkts. 375-78. The mandate did not instruct the Court to dismiss the case or deny amendment. Indeed, as the Motion to Amend pointed out, the Court of Appeals expressly contemplated that plaintiffs "can proceed through other avenues, including Fourth Amendment claims." *Elhady*, 993 F.3d at 224; *see* Motion (Dkt. 379) at 1. Reading the mandate in *Elhady* to require dismissal of the action as a whole would not only be reading language into the mandate that is not there, it would be inconsistent with the opinion itself.

Nor do the cases that the Government proffers require dismissal. For instance, the Government takes language from *Invention Submission Corp. v. Dudas*, 413 F.3d 411 (4th Cir. 2005), out of context to suggest that the District Court may not "pass upon any issue which was

2

not expressly or impliedly disposed of on appeal so long as consideration of the issue raised on remand is not inconsistent with the appellate mandate." Opposition (Dkt. 382) at 10. But the reason the District Court in *Invention Submission Corp.*, and in that case alone, was not "free to" do so was because the Court of Appeals demanded dismissal of the case on jurisdictional grounds: "The language of our mandate directed the district court to dismiss this case for lack of subject matter jurisdiction and, on its face, does not authorize the district court to open the case for further adjudication." 413 F.3d at 415. Not so here. Here, the Court's mandate, on its face, only applied to the Due Process claim before it at the time. And the mandate rule has been satisfied by the District Court fully following the Court of Appeals' mandate in that regard.

Indeed, the Fourth Circuit's own distillation of the Mandate Rule—in cases cited by the Government—make clear that it is inapplicable here. As *JTH Tax v. Aime* explained, "[t]he rule has two dimensions: First, any issue conclusively decided by this court on the first appeal is not remanded, and second, any issue that could have been but was not raised on appeal is waived and thus not remanded." 984 F.3d 284, 291 (4th Cir. 2021). Here, the Fourth and Fifth Amendment issues were neither conclusively decided by the Fourth Circuit, nor could they have been raised on appeal, if only because the Government defendants were the appellants. The Government claims *South Atlantic Limited Partnership v. Riese* holds that the mandate rule forbids Courts from deciding any new issues that the parties "failed to raise," but omits the key qualifier that what cannot be raised on remand are issues "the parties failed to raise *on appeal*" 356 F.3d 576, 584 (4th Cir. 2004) (emphasis added).

Similarly, the Government's stringcite on page 11 about "issues" not raised below all involve cases where the "issues" were for claims that the Court's mandate expressly stated must be dismissed, or issues that should have but were not raised in the appeal. *See Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.,* 510 F.3d 474, 481 (4th Cir. 2007) (particular "element"

of a "claim" that had been dismissed); *JTH Tax*, 984 F.3d at 291 (new disgorgement claim precluded by the legal conclusions of the prior appeal); *Doe v. Chao*, 511 F.3d 461, 466 (4th Cir. 2007) (mandate rule forbade claim for fees denied before first appeal that should have been appealed in first appeal, and "waived" other fee claim that was not timely requested); *South Atlantic*, 356 F.3d at 586 (rejecting amendment to judgment when amendment concerned issue that should have been raised by the appellants in the first appeal). And *Ofoche v. Apogee Media Grp., Virginia, P.C.*, 815 Fed. App'x 690, 693 (4th Cir. 2020) (unpublished), is about waiver/forfeiture of an argument that is brought for the first time on appeal, and has nothing to do with the mandate rule or a motion to amend at all.

Because Plaintiffs' motion to amend does not ask this Court to deviate from the mandate, the mandate rule does not apply. Similarly, the various exceptions to the mandate that the Government asserts Plaintiffs' claims do not fit within, *see* Opp. at 11; *see also* Opp. at 12-16, are all irrelevant.

II.     **Plaintiffs have good cause to amend the Complaint.**

The Government interposes the scheduling order as a reason the Court should not permit amendment. But this argument falls by the wayside for much the same reason that the Government's Rule 15(a) arguments fail. Indeed, the Government's own Rule 15(a) arguments all but incorporate their Rule 16(b) arguments. *See* Opp. at 27 ("For all the reasons described above, Plaintiffs' proposed amendment would cause undue prejudice to Defendants. *Laber*, 438 F.3d at 427; *see also, supra* Part II [Rule 16(b) argument section].").

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." To establish "good cause," a party must generally show that "the scheduling order's deadline could not have been met with diligence." *See McMillan v. Wiley*, 813 F.Supp.2d 1238, 1254 (D. Colo. 2011).

4

Here, Plaintiffs could not "with diligence" have anticipated that their Due Process claim would fail any more than the District Court could. They could not "with diligence" have anticipated that, in closing the door to Plaintiffs' broader Due Process claims, the Fourth Circuit would simultaneously open the door to other claims (most notably, Fourth Amendment claims), and suggest Plaintiffs walk through that door. Nor could Plaintiffs "with diligence" have, on November 12, 2017, predicted the three later-decided cases that outlined Plaintiffs' new claims. *United States v. Kolsuz*, 890 F.3d 133 (4th Cir. 2018) and *United States v. Aigbekaen*, 943 F.3d 713 (4th Cir. 2019), which together held that for that for irregular searches, the border search exemption to the Constitution must be accompanied by reasonable suspicion of a border-related crime, were decided on May 18, 2018, and May 8, 2019, respectively.[1] These landmark cases that provide the basis for Plaintiffs' new claims were decided only after the November 2017 Rule 16(b) deadline.

Without any real case that so states, the Government suggests that the massive change in law caused by *Kolsuz*, *Aigbekaen*, and *Elhady*, is not enough, because Rule 16 is so strict that the passage of time alone shows a diligence sufficient to shut the door to any amendment. Opp. at 19-20. Yet Rule 15 expressly allows a party to amend their pleadings "even after judgment." Fed. R. Civ. P. 15(b)(2); *see generally* Motion at 5. This is particularly true, where, as here, Plaintiff merely seeks to bring a claim "to conform them to the evidence and to raise an unpleaded issue." Fed. R. Civ. P. 15(b). But judgment—as opposed to dismissal—almost always, if not always, occurs after the expiration of the Rule 16(b)(3)(A) scheduling order. If Rule 16(b) always shut the door to Rule 15(b) amendments in the way the Government claims, then Rule 15(b)'s express post-judgment amendment permission would be for nothing.

---

[1] *Kolsuz* made this point in dicta, while *Aigbekaen* enshrined it as a holding of the Court.

5

The Government separately complains that if the plaintiffs in *El Ali* brought Fourth Amendment claims, the plaintiffs in Elhady could have done so as well. Opp. at 13. But the Plaintiffs in *El Ali* filed their Complaint and brought their Fourth Amendment claims on August 8, 2018. So when bringing their Complaint, they already had the decision in *Kolsuz*. 8:18-cv-02415-PX (D. Md.), Dkt. 1; *see also El Ali v. Barr,* 473 F. Supp. 3d 479, 520 (D. Md. 2020) (refusing to dismiss Fourth Amendment claim due to *Kolsuz* and *Aigbekaen*). But the *Elhady* Plaintiffs did not have the same luxury prior to the Rule 16(b) deadline. So good cause exists even if one ignores the Fourth Amendment discussion in the Fourth Circuit's decision in *Elhady* itself.

### III. The Government has shown no prejudice in the absence of any need for additional discovery.

The Government's entire theory of prejudice is that additional, substantial discovery would be necessary. That is likewise the reason there would be prejudice in other cases cited by the Government where, the Government suggests, the prejudice is caused by the fact the amendment would "change the nature of the litigation." Opp. at 18 (quoting *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 604 (4th Cir. 2010). But that is irrelevant here. By limiting the claims to Government actions that were fully divulged and dissected in discovery, Plaintiffs have brought a complaint that would require no additional discovery requests from the Government at all. (Nor does the Government suggest any additional discovery it would need.) Indeed, in *Equal Rights Center* itself, the Fourth Circuit contrasted the contribution claim on which it would not allow late amendment with a claim for indemnification, which would not require any additional discovery and therefore would not cause any prejudice if added after the close of discovery. 602 F.3d at 603. Here, while Plaintiffs might benefit from some small amount of additional discovery, Defendants have not and cannot point to any beneficial new discovery it

6

would require.[2] And, on top of that, Plaintiffs stand ready to proceed to summary judgment without any additional discovery at all, if necessary, as the Motion to Amend made clear. *See* Motion at 4 ("if the choice is between no discovery and no amendment, Plaintiffs are prepared to proceed without any discovery at all.").

Changing the "nature of the litigation" without more does nothing to prejudice the Government. The Government has equal ability to argue that its conduct against Plaintiffs complies with the Fourth Amendment as it does with the Due Process Clause. *Volvo Trucks N.A. v. Andy Mohr Truck Ctr.*, 2013 WL 12177049, at *2 (S.D. Ind. Oct. 17, 2013) (having to defend on the merits is not prejudice); *Coeur D'Alene Tribe v. Asarco Inc.*, 2000 WL 34023645, at *6 (D. Idaho June 2, 2000) (same); *Essar Steel Algoma Inc. v. S. Coal Sales Corp.*, 2018 WL 6332900, at *6 (S.D.N.Y. Oct. 29, 2018) (same). Instead, prejudice is measured in additional discovery, delaying resolution of the rest of the dispute, or preventing a party from bringing a timely claim in another jurisdiction. *Essar Steel*, *id*. So there is no prejudice here.

## IV. The Government has not shown Plaintiffs' claims are moot.

Finally, the Government argues that Plaintiffs' claims are moot because "none of the allegations appears to have occurred more recently than December 2017." Opp. at 27. Where the Government goes wrong is assuming that because none of the allegations occurred after December 2017, that these types of actions do not continue to occur. And as Plaintiffs have already explained in Section III above, the reason that the allegations relate to actions from 2017 and earlier is because Plaintiffs have consciously limited their claims to those Government actions which have been fully dissected in discovery, in order to avoid prejudice to the

---

[2] The Government hints that it would have sought more discovery into the details of why it took Plaintiffs' devices and seized their persons. Opp. at 23. But of course, that information would entirely be in the hands of the Government.

Government.

The Government suggests that the Plaintiffs' strategic litigation choice indicates that none of the Plaintiffs remain on the Government watchlist. Further supporting that argument, the Government asserts that it "is prepared to provide that information for the Court's ex parte and in camera review if the Court wishes to review it in connection with Plaintiffs' motion." Opp. at 27 n.7.

Plaintiffs wholeheartedly support the idea that the Government, which has the "heavy burden" of showing mootness, *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 189 (2000), actually make a proffer to meet its burden. Respectfully, however, it would be fundamentally unfair for such a showing to be made in camera. While the Government continues its refrain of believing that notice is just not an element of due process, Due Process remains an inherent aspect of Plaintiffs' rights to proceed in court. And if this Court denies them a right to pursue their claims, Plaintiffs have a right to know why that right is being denied. "[O]nly in the rarest of circumstances should a district judge, in his or her discretion, receive ex parte argument and evidence in secret from only one side aimed at winning or ending a case over the objection of the other side." *Ibrahim v. DHS*, 2012 WL 6652362, at *6 (N.D. Cal. Dec. 20, 2012) at *6 (refusing Government's attempt to rely on ex parte watchlist information to defeat watchlist claim); *see also Vining v. Runyon*, 99 F.3d 1056, 1057 (11th Cir. 1996) (explaining how ex parte submissions violate the right to due process inherent in the adversarial system).

Further, even if the Government has taken every Plaintiff off the watchlist, this would still not moot the case because, as the Ninth Circuit held in *Fikre*, "a voluntary change in official stance or behavior moots an action only when it is 'absolutely clear' to the court, considering the 'procedural safeguards' insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not

reoccur." *Fikre v. FBI*, 904 F.3d 1033, 1039 (9th Cir. 2018) (finding Government's removal of Fikre from No Fly List did not render No Fly List claims moot). Like in Fikre, the Government's removal of Plaintiffs from the watchlist (if it has indeed so done) would simply be "individualized determination[s] untethered to any explanation or change in policy, much less an abiding change in policy." *Id.* at 1039-40. As *Fikre* explains, this cannot meet the Government's burden to show mootness. *Id.*

At absolute minimum, the Court should also request from the Government the timeline and any reasoning for Plaintiffs to be taken off the watchlist, to see whether it is consistent with purely temporary litigation strategy rather than some more enduring change of events.

## CONCLUSION

The Court should grant the Motion to Amend. In the alternative, the Court should order the Government to disclose watchlist status, timeline, and removal reasoning to the Court and to Plaintiffs.

Respectfully submitted,

CAIR LEGAL DEFENSE FUND
BY: /s/ Lena F. Masri
Lena F. Masri (VA 93291)
   lmasri@cair.com
Gadeir I. Abbas (VA 81161)*
   gabbas@cair.com
Justin M. Sadowsky (VA 73382)
   jsadowsky@cair.com
453 New Jersey Ave., S.E.
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 488-0833

*Mr. Abbas licensed in VA, not in D.C.
Practice limited to federal matters*

                                            AKEEL AND VALENTINE, PLC
                                            SHEREEF H. AKEEL (MI # P54345) ±
                                            888 W. Big Beaver Rd., Ste. 910
                                            Troy, MI 48084
                                            Phone: (248) 269-9595
                                            shereef@akeelvalentine.com

                                            Attorneys for Plaintiffs

Dated: February 24, 2022